**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-SKC

ERIC COOMER, PH.D.,

      Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH
LLC, AND MY PILLOW, INC.,

      Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

## I.    INTRODUCTION

Plaintiff Eric Coomer, Ph.D. ("Plaintiff") seeks to impose tort liability upon all Defendants Michael J. Lindell, Frankspeech, LLC and My Pillow, Inc. for alleged defamatory statements made by Joseph Oltmann. Plaintiff seeks to connect himself to his employer Dominion Voting Systems and punish Defendants for engaging in the robust national debate relating to Dominion's performance in running and tabulating our democratic elections. Plaintiff is not Dominion Voting Systems, and Defendants' statements against Dominion Voting Systems do not support Plaintiff's claims for defamation.

For claims of defamation, there is a heightened standard to the general pleading rules and "Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself." *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989). A careful examination of Plaintiff's Complaint reveals that

1

there are not sufficient facts to allow a reasonable inference that the Defendants are liable under any of the four counts stated in the Complaint.

Plaintiff's Complaint comprises 118 numbered paragraphs filling 67 pages. Compl. (Doc. 1), the bulk of which have little or nothing to do with the Plaintiff or Defendants in this case.  In fact, the specific allegations against Mike Lindell, My Pillow and Frankspeech can be isolated to a handful of specific allegations, none of which provide any basis of liability. Furthermore, Plaintiff runs afoul of the heightened defamation pleading standard by consistently conflating all three Defendants in this case, and not alleging which individual or entities are liable for a specific allegation.

Plaintiff's lawsuit is premised on the claim that hosting, emceeing, or sponsoring events that discuss and debate national public issues, automatically give rise to tort liability when an individual at that event is accused of defamation.  A close review of Plaintiff's Complaint reveals that Plaintiff is not alleging that Defendants have authored any defamatory statement of fact relating to Plaintiff. Retaining an open democratic society requires vigilance against efforts to stifle speech, particularly speech concerning a matter of great public interest. "Debate on public issues should be uninhibited, robust, and wide open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Defendants have a constitutionally protected right to criticize those who perform election functions, including Plaintiff's employer, Dominion Voting Systems.

The substantial risk and expense of litigation in defamation cases such as this impose a heavy chilling effect on speech. They must be weeded out and terminated on early Rule 12(b)(6) motions to avoid the enormous costs (economic and otherwise) which prospectively lead to silencing and self-censorship on important public issues.  Defendants respectfully request that this Court pursuant to Federal Rule of Civil Procedure, 12(b)(6) dismiss Plaintiff's four count

Complaint, for defamation, intentional infliction of emotional distress, civil conspiracy, and injunction request.

## II.    FACTUAL ALLEGATIONS

Plaintiff's Complaint comprises 118 numbered paragraphs filling 67 pages. Compl. (Doc. 1), many of which have little or nothing to do with the Defendants in this case.  In fact, the specific allegations against Defendants Mike Lindell, My Pillow and Frankspeech can be isolated to a handful of specific allegations. It is important for this Court to identify the specific allegations made against Defendants that relates to Plaintiff, and to hold those allegations to the heightened defamation pleading standard.

The **general** allegations relating to Defendants can be summarized to the following:

- The accuracy and reliability of the 2020 election is the subject of a massive national discussion, with a minimum of 86 different lawsuits adjudicating the issue of the 2020 election reliability. Compl. ¶¶ 16-26.

- Podcaster and activist Joe Oltmann hatched and perpetuated false conspiracies against Plaintiff by repeating statements about overhearing someone identified only as "Eric, the Dominion guy" on an "Antifa conference call", who claimed to have rigged the election against former President Trump. Oltmann claimed this call happened months before the election. Oltmann further claimed that he identified Dr. Coomer as the anonymous "Eric" on the call, by Googling "Eric," "Dominion," and "Denver, Colorado." *Id*., at ¶¶ 27-28.

- Many prominent people and organizations, in direct response to the national discussion, researched and declared that the 2020 general election was secure, reliable, and accurate. *Id*. ¶¶ 17-26.

- Individuals and entities contesting the accuracy of the 2020 election include some of the biggest names in national politics and Media, including President Trump, Rudy Giuliani, Sidney Powell, including Fox News, Newsmax, and OAN. *Id*.

- As a result of the allegations of election impropriety, there has been an avalanche of audits, articles, reports and statements, including from Dominion themselves, addressing specifically contested issues. *Id*.

Against **Defendant Mike Lindell**, there are four specific Plaintiff allegations to support the Complaint:

- On March 11, 2021, Mike Lindell appeared as a guest on Oltmann's podcast "Conservative Daily" which is recorded in Colorado and published online. Oltmann's former co-host Max McGuire and Olmann co-hosted the interview. (Plaintiff does not allege Defendants made any defamatory statements against Plaintiff during the interview). *Id*., at ¶ 46.

- On May 9, 2021, Lindell also appeared on a Frankspeech show where he stated the following:

  Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody.

  *Id*., at ¶ 60.

- During August 2021, Lindell "hosted" a Cyber Symposium in North Dakota for the purpose to "[f]ind proof that this cyber data is not valid data from the November Election".

However, Lindell was not present on stage (and had previously "rushed off the stage") during the time Oltmann allegedly defamed Plaintiff at the event. *Id.*, at ¶ 69.

- Since the Symposium, Mike Lindell has "maintained close relationships with various Colorado election fraud conspiracy theorists, including Joe Oltmann, Tina Peters, Sherrona Bishop, Shawn Smith, Ashley Epp, Holly Kasun, and others." *Id.*, at ¶ 87.

Relating to **Defendant My Pillow**, there are three specific allegations to support the Complaint:

- Mike Lindell is a long-time supporter of former President Trump, who endorsed Lindell's company, MyPillow, on live national television from the White House on July 19, 2017. Since that time, MyPillow has become prominent advertisers on conservative and right-wing media platforms, including Fox News, Newsmax, and One America News Network (OAN). As of December 22, 2021, Lindell has claimed to have spent at least $25 million of his own money spreading election fraud disinformation and misinformation across the country. *Id.*, at ¶ 39.

- On May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." The interview, which was more than 40 minutes long, started with Howse informing the audience that Oltmann was appearing from Colorado, and speaking on behalf of MyPillow to request that viewers purchase MyPillow products from mypillow.com. Howse began, "Again, I want to remind you before we go to our next guest in Colorado, he's going to tell you about a live conference call with one of the leaders of Dominion voting machines. Before we go to that guest, don't forget, go to mypillow.com if you would. Use the promo code FRANK and save up to 66%." (Id., at ¶ 53).

5

- Mike Lindell hosted a "Cyber Symposium" (the Symposium) in Sioux Falls, South Dakota. Defendants promoted this event through their various platforms, including their websites frankspeech.com and mypillow.com. On the MyPillow webpage, Lindell posted a videotaped advertisement for the upcoming Symposium. *Id.*, at 69.

Relating to **Defendant Frankspeech**, there are three Plaintiff allegations to support the Complaint:

- In an article on the Frankspeech website and titled, "Who are behind Smartmatic, Sequoia, and Dominion Voting Systems?" an unidentified author states the following about Dr. Coomer: "Eric Coomer is a [sic] Dominion's VP, Antifa Supporter and Trump Hater. He travelled all the battleground states in 2019 and made sure that Dominion voting systems [sic] was in all of them. He said in an Antifa Conference call that he makes [sic] sure Trump will not win 2020 election [sic]." These statements are unequivocally false. *Id.*, at ¶ 52.

- On May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." During the interview, Oltmann coveys his story that "Eric, the Dominion guy" was on an "Antifa conference call", and someone asked Eric "What are we gonna do if f-ing Trump wins?" And Eric responds, "Don't worry about the election, Trump's not going to win. I made f-ing sure of it." Oltmann further explains in the interview that he later identified Dr. Coomer as the anonymous "Eric" on the call, by Googling "Eric," "Dominion," and "Denver, Colorado" and up pops all this information on Eric Coomer of Dominion Voting Systems. With this, Oltmann claimed he identified Dr. Coomer and Dominion Voting Systems, Inc. *Id.*, at ¶¶ 54-56.

- In the interview, Oltmann went on to describe how Dr. Coomer had sued him in Colorado for defamation. (Id., at ¶ 58).

With these limited allegations, the Complaint claims four causes of action against all Defendants: defamation, *id*. ¶¶ 101-105; intentional infliction of emotional distress, *id*. ¶¶ 106-109; civil conspiracy, *id*. ¶¶ 110-114; and permanent injunction, *id*. ¶¶ 115-116. All fail to state a claim and must be dismissed.

### III.   LEGAL STANDARD

### A.  THE PLEADING STANDARD FOR DEFAMATION.

Defamation has four elements, with a fifth added for situations where a "matter of public concern" is involved. *Lewis v. McGraw-Hill Broad. Co., Inc.,* 832 P.2d 1118, 1122-23 (Colo. App. 1992). The elements are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on part of the publisher; and (4) either actionability of the statement irrespective of special damages to the plaintiff caused by publication or the existence of special damages to the plaintiff caused by the publication." *McIntyre v. Jones,* 194 P.3d 519, 523-24 (Colo. App. 2008). If the alleged defamatory statement involves a matter of public concern or a public figure, the plaintiff must also prove the statement was made with "actual malice." *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29 (1971). Colorado courts have expressly adopted Rosenbloom. *See Walker v. Colorado Springs Sun, Inc.,* 538 P.2d 450 (1975); *Diversified Mgmt., Inc. v. Denver Post, Inc.,* 653 P.2d 1103, 1110 (Colo. 1982).

There can be no dispute, due to the subject matter and the individual plaintiff in this defamation lawsuit, the Plaintiff must prove that the alleged defamatory statements were made with actual malice.[1]

---

[1] In a related State Court lawsuit brough by Plaintiff, *Eric Coomer, Ph.D., Plaintiff vs. Donald J. Trump For President, Inc., et al., Defendants*, State Court of Colorado, City and County of Denver;

### 1. The Defamatory Allegations in the Complaint Relate to a Public Issue.

The First Amendment implements a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964). The protection offered by the First Amendment is at its strongest for speech on matters of public concern. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). Generally, a matter is of public concern whenever "it embraces an issue about which information is needed or is appropriate," or when "the public may reasonably be expected to have a legitimate interest in what is being published." *Shoen v. Shoen*, 292 P.3d 1224, 1229 (Colo. App. 2012).

Generally, courts have recognized that protecting elections is a matter of public concern. *See Mauff v. People*, 123 P. 101, 103 (Colo. 1912) ("It is a matter of general public concern that, at all elections, such safeguards be afforded."); see *Johnson v. Bradley*, 4 Cal. 4th 389, 409 (Cal. 1992) (the integrity of the electoral process is undoubtedly a statewide concern.); *Burroughs v. United States*, 290 U.S. 534, 545 (1934) (the importance of a presidential election "cannot be too strongly stated").

More recently, in *Curling v. Raffensperger*, 493 F. Supp. 3d 1264 (N.D. Ga. 2020), the court specifically held that the issues of voting machine security in the 2020 election were matters of public interest. Specifically, the court stated: "Amidst the many other serious concerns facing the public in this challenging era, issues surrounding election system security, reliability, fairness, and the correct counting of votes continue on the forefront of citizen concerns." *Id.* at 1268.

---

Case No: 020cv034319 the Court has recently ruled the statements concerning Eric Coomer in the context of the 2020 election is a matter of public concern.

For defamation elements, it is the matter or issue being discussed, not the specific individual referenced, that must be a matter of public interest. *See Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 43 (1971).[2]

In this case, the entire discussion surrounding Plaintiff's allegations relate to national discussion about the security and procedural safeguards of the 2020 Presidential election. Including, the forces that may be able to affect the election outcome, Plaintiff's employer, Dominion Voting Systems. This national public issue cannot suddenly become less so merely because Plaintiff is involved. The public's primary interest is in the public issue the election, and the conduct of the entities and individuals who are participating in the public issue.

## 2.   Plaintiff is a Limited Public Figure.

Plaintiff is also a limited purpose public figure and falls under the requirement for actual malice. Under Colorado law, whether a plaintiff is a limited purpose public figure status turns on two questions: the threshold question of whether the defamatory statement involves a matter of public concern and, more importantly, whether the level of plaintiff's participation in the controversy invites scrutiny. *Lewis v. McGraw-Hill Broadcasting Company*, Inc., 832 P.2d 1118, 1122 (Colo. App. 1992). The Tenth Circuit has defined a "limited-purpose public figure" as a person who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000).  Plaintiff fits this description. [3]

---

[2] *See Diversified Mgmt., Inc.,* 653 P.2d at 1110 and *Walker v. Colorado Springs Sun, Inc.,* 538 P.2d 450 (1975) citing to *Rosenbloom v. Metromedia*, Inc., 403 U.S. 29, 43 (1971).

[3] Plaintiff "is the former Director of Product Strategy and Security for Dominion Voting Systems, which provides election related services to at least 30 different states during the 2020 presidential election." Compl. ¶ 16 The Complaint set forth in comprehensive detail the manner in which Plaintiff claims he was "drawn into" a public controversy by Joe Oltmann.  Id., ¶ 27-34.  The

### 3.  The Subjective Actual Malice Standard Applies to Plaintiff's Allegations.

The actual malice standard applies in this case because, as discussed above, the Defendants' statements about Plaintiff relate to a matter of public concern, namely voting machine vulnerabilities, and Plaintiff is a limited-purpose public figure. Where statements involve "a matter of public concern," the plaintiff cannot prevail absent proof "that the defendant published the defamatory statement with actual malice." See *Lewis v. McGraw-Hill Broad. Co.*, 832 P. 2d 1118, 1122-23 (Colo. App. 1992). At common law, actual malice was shown by ill will, evil or corrupt motive, or spite. *Carson v. Allied News Co.,* 529 F.2d 206 (7th Cir. 1976). However, after the seminal Supreme Court opinion in *New York Times v. Sullivan*, the term has become a shorthand for the New York Times standard of liability. *Id.*

*New York Times v. Sullivan* defines "actual malice" that the defamer made the statements "with knowledge" that  the defamatory falsehood was false "or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280(1964). Under Colorado law, for a statement to be made with actual malice, a defendant must have made the statement with knowledge of its falsity or with reckless disregard as to its truthfulness. *Lewis v. McGraw-Hill Broad. Co.,* 832 P.2d 1118, 1122-23 (Colo. App. 1992); *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013). To prove actual malice, "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement . . . or acted with a high degree of awareness of its probable falsity." *Lewis*, 832 P.2d at 1122-23. Actual malice is a subjective standard, "reckless conduct is not measured by whether a reasonably prudent man would have published or would

---

Complaint alleges that Oltmann began to discuss Dr. Coomer publicly on November 9, 2020 and that he continued to do so "on an almost daily basis."  Id., ¶¶ 28, 34.  This included not only statements on Oltmann's own podcasts, but interviews with prominent figures and publications such as Michelle Malkin, Eric Metaxas, The Gateway Pundit, One America News, and the Denver-based radio program Wake Up! With Randy Corporon.  Id. ¶¶ 28, 32.

have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731.

## B. FED. R. CIV. P. 12(B)(6)- PLAINTIFF'S FAILURE TO STATE A CLAIM

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the defendant to accept as true, for purposes of the motion, all well-pleaded factual allegations in the complaint. *Al-Owhali v. Holder,* 687 F.3d 1236, 1240 (10th Cir. 2012). "The court's function on a Rule 12(b)(6) motion is to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). A district court may consider documents attached to or referenced in the complaint if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *GFF Corp. v. Assoc'd Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997)). The pled factual content must allow "the reasonable inference that the defendant is liable for the misconduct alleged," and it is not enough to plead facts that allow for "the mere possibility of misconduct." *Id*. at 1239-1240 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Importantly, "in the context of a defamation claim, Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself." *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989).

> In practice, defamation claims present a "significant exception" to general liberal pleading standards    because defamation constitutes    a    "traditionally disfavored" cause of action. To sufficiently plead her defamation claim, plaintiff must set forth in her complaint the allegedly defamatory words, the communicator

of those words, the persons to whom those words were published and the time and
place of publication.

*Heckman v. Zurich Holding Co. of America*, 2007 WL 677607, at *5 (D. Kan. Feb. 28, 2007)

(internal citations omitted).

## IV. <u>ARGUMENT</u>

### A. PLAINTIFF CLAIM FOR DEFAMATION FAILS.

#### 1. Plaintiff's Defamation Claim Against Mike Lindell Attacks Statements of Opinion, And Does Not Support a Claim Of Defamation.

Plaintiff's allegations against Mike Lindell are made up of mostly conclusory allegations

of guilt by association and contain few specific defamatory allegations, as required under the

FRCP, Rule 8(a).

Plaintiff alleges that on May 9, 2021, Lindell appeared on a Frankspeech show where he

stated the following:

> Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making
> deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole
> operation so maybe, just maybe, that you get immunity and you only get to do, I don't
> know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You
> are a traitor to the United States of America. And you know what? I can say that,
> just like I can about Brian Kemp and Brad Raffensberger. These are things that I
> have evidence of. The evidence is there. You know, it's sitting there. Well Mike,
> 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?'
> Oh, it's getting to the Supreme Court, everybody.

Compl. at ¶ 60. These statements claiming Plaintiff is "disgusting", or a "traitor" falls directly in

the sphere of opinion and cannot be the source of a defamation claim.

For a statement to be actionable as defamatory, it must express or imply a verifiably false

fact about the plaintiff. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19-20 (1990); *Burns v.*

*McGraw Hill Broad. Co., Inc.,* 659 P.2d 1351, 1360 (Colo. 1983). Statements of opinion can only

be actionable if they imply provably false facts or rely upon stated facts that are provably false.

*See Milkovich*, 497 U.S. at 20. In deciding whether a statement expressed or implied a false statement of fact, courts consider the entire statement, the context in which it was made, and whether a reasonable person would conclude that the statements at issue expressed or implied a false fact. *See Burns*, 659 P.2d at 1360. *See Henderson v. Times Mirror Co.,* 669 F. Supp. 356, 357 (D. Colo. 1987), aff'd, 876 F.2d 108 (10th Cir. 1989) (Defendant calling plaintiff as a "sleazebag" who kind of "slimed up from the bayou" was an opinion "and a claim for defamation cannot be predicated on a mere expression of opinion"); see also *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 285 (1974) (where the Supreme Court found the use of the word "traitor" as applied to an employee who crossed a picket line, was "such exaggerated rhetoric was commonplace in labor disputes.").

In this case, the defamatory statements Plaintiff alleges against Mike Lindell are the exact category of statements dismissed by these courts. "Disgusting" and a "traitor" are statements which are understood to be nonactionable opinion and enthusiastic use of rhetoric in a hotly contested political matter. Further, because these statements cannot be connected to any specific underlying fact, Plaintiff has not and cannot prove that these statements were made with actual malice.

**2. Defendants Mike Lindell, My Pillow, And Frankspeech Are Not Connected to the Alleged Oltmann Defamatory Statements Made During the Cyber Symposium.**

Plaintiff next alleges that Mike Lindell hosted the Cyber Symposium, and conclusory alleges that My Pillow and Frankspeech engaged in sponsorship or promoted the event. (Comp., at ¶ 69). However, Plaintiff <u>does not</u> allege that Defendants were the individual/entities that created, ran, or produced the Symposium. Only that Lindell "hosted" the event. Plaintiff also does not allege that Mike Lindell invited Oltmann to the event or was even aware that Oltmann was attending or speaking at the event. The Complaint falls far short in connecting Defendants to any

liability arising from the Symposium. Furthermore, because the actual malice standard applies in this case, Plaintiff needs to establish that Defendants prior decision to host, sponsor, or promote the Symposium (without knowing Oltmann was attending) constituted actual malice.

Even taking the facts in the Complaint as true, there are no allegations that My Pillow, Frankspeech, or Mike Lindell published a statement at the event that referenced Plaintiff. This omission is a failure to plead the first two elements for defamation. [4] *See McIntyre v. Jones*, 194 P.3d 519, 523-24 (Colo.App. 2008). Simply hosting or emceeing an event cannot lead to liability for defamatory statements uttered at the event by unrelated parties. Mike Lindell did not invite, was not aware, and was not present when the alleged defamation occurred, and he cannot be held liable for their publication. Plaintiff Complaint admits that Mike Lindell had left the event before Oltmann came onto the stage.

The subject of the Cyber Symposium event was about a public issue, the integrity of the Country's democratic election. A subject that is unquestionably a matter of substantial public interest. As stated by the Supreme Court "debate on public issues should be uninhibited, robust, and wide open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). In the United States today controversy over election integrity attracts the deep interest and concern of a substantial proportion of the electorate. Free political discussion of that issue is their constitutional prerogative

Hosting and sponsoring a debate on the adequacy of our Country's election systems must be encouraged and protected. Instead, Plaintiff seeks to stretch the bounds of defamation law to

---

[4] The elements are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on part of the publisher; and (4) either actionability of the statement irrespective of special damages to the plaintiff caused by publication or the existence of special damages to the plaintiff caused by the publication." McIntyre v. Jones, 194 P.3d 519, 523-24 (Colo.App. 2008).

punish Defendants for statements made at the event from individuals not connected to Defendants. This must be rejected.

### 3. Plaintiff Does Not Plead Any Basis To Hold My Pillow Responsible For The Statements By Lindell Alleged In The Complaint.

Even if this Court were to find that Plaintiff's Complaint meets heightened pleading for Defendant Mike Lindell, agency law does not impute liability to MyPillow. Under Colorado and Minnesota law, the party asserting the existence of an agency, or other special relationship, has the burden of proving it. *See Tara Woods Ltd. P'ship v. Fannie Mae,* 731 F. Supp. 2d 1103, 1117 (D. Colo. 2010), aff'd, 566 Fed. Appx. 681 (10th Cir. 2014); see also *White v. Boucher*, 322 N.W.2d 560, 566 (Minn. 1982) (existence of principal-agent relationship is a question of fact, and the party alleging the existence of the agency has the burden of proof). A corporation cannot be held liable for executives' allegedly defamatory statements unless the executives were acting within the scope of their employment. *Washington Gas-Light Co. v. Lansden*, 172 U.S. 534, 546 (1899); *Moroni Feed Co. v. Mut. Serv. Cas. Ins. Co.,* 287 F.3d 1290, 1292 (10th Cir. 2002)

Minnesota law, the place of incorporation for My Pillow is similar. A principal is liable for the act of its agent only if the act giving rise to alleged liability was committed within the scope of the agency and was not for a purpose personal to the agent. *Semrad v. Edina Realty*, 493 N.W.2d 528, 535 (Minn. 1992). In *Kasner v. Gage*, 161 N.W.2d 40, 42 (Minn. 1968), the Minnesota Supreme Court held that a corporation was not liable for an employee's theft of a competitor's business records because theft was not how the corporation competed and was accordingly not within the scope of employment. No plausible fact is alleged in Plaintiff's complaint to support a finding that Mr. Lindell's statements were within the scope of his role as President and CEO of MyPillow.

MyPillow is managed by a Board of Directors, subject to its articles of incorporation and bylaws as well as to Minnesota law, all of which limit Mr. Lindell's authority to act on behalf of MyPillow. No plausible factual allegation in Plaintiff's complaint supports a conclusion that political activities are among Mr. Lindell's enumerated duties. Nor does the complaint allege any fact to warrant a finding that Mr. Lindell is authorized by the corporation to engage in political commentary on its behalf. MyPillow's Board of Directors has never passed a resolution making such activities part of Mr. Lindell's duties. In short, Mr. Lindell has commented on politics and on the integrity of our Country's voting machines in his personal capacity – as is his constitutional right.

Without any allegations to support an agency relationship between My Pillow and the entities or individuals who made the defamatory statement, My Pillow advertising at the Cyber Symposium, cannot be considered the party who made any defamatory statement or who published any statement to a third-party.

### 4. Plaintiff Does Not Plead any Basis to Hold Frankspeech Liable for the Statements Made by Oltmann Or Anonymous Authors.

To support Plaintiff's claim for defamation against Frankspeech, Plaintiff alleges that on May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." (Compl., at ¶ 53). The interview consists of Oltmann relaying the story of participating in the "Antifa conference call" and overhearing someone identified as "Eric from Dominion" saying "don't worry about the election, Trump's not going to win. I made f-ing sure of it." (Compl. ¶¶ 54-57). However, importantly, in the interview Oltmann disclosed to the audience that his sole knowledge on how he connected "Eric" to Plaintiff Eric Coomer, was as the result of a google search "Eric,"

"Dominion," and "Denver, Colorado" (Compl. ¶ 56). Oltmann also disclosed to the audience that Eric Coomer, the subject of his statements, has sued him in Colorado for claims for defamation arising from this story. (Compl. ¶ 58).

Oltmann's relaying the story of the "Antifa conference call" <u>alone</u> is not defamatory to Plaintiff. Defamatory statements must be reasonably understood to refer to the defamed individual, and "Eric from Dominion" does not meet this requirement. *See Gordon v. Boyles*, 99 P.3d 75, 80 (Colo. App. 2004). The only alleged defamatory component is Oltmann's connection of "Eric the Dominion guy" to Plaintiff. However, because Oltmann disclosed to his audience the source of his conclusion to connect the Antifa call member to Plaintiff (a simple Google search), this permits the listener to form his or her own opinion about whether the facts presented plausibly connect Plaintiff to the call, and the statement is not actionable. *See Piccone v. Bartels*, 785 F.3d 766, 772-73 (1st Cir. 2015) (finding defamation claim properly defeated where speaker disclosed facts underlying his opinion that the plaintiff was "unprofessional"). *See McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) ("[W]hen the speaker 'outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.' " (quoting *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002)); "Even a provably false statement is not actionable if 'it is plain that the speaker is expressing a subjective view ... rather than claiming to be in possession of objectively verifiable facts.' " *McKee v. Cosby,* 874 F.3d 54, 61 (1st Cir. 2017) quoting *Gray v. St. Martin's Press, Inc.,* 221 F.3d 243, 248 (1st Cir. 2000)).[5]

---

[5] This argument will also apply to any instance alleged by Plaintiff where the source of the defamation includes the context that Oltmann, or any other individual, sole source of information against Plaintiff was as the result of a Google search.

Thus, Frankspeech cannot be held liable for the May 3, 2021 interview, because the underlying statements were not defamatory.

> **5. Plaintiff's Allegation of An Unidentified Author Posting An Article On the Frankspeech Website, Is Not Actionable Defamation Under Section 230 of The Communications Decency Act.**

The remaining specific allegation against Defendant Frankspeech relates to "unidentified authors" who posted articles on Frankspeech.com. (Compl., at ¶ 52). Plaintiff does not allege that Frankspeech was involved in the creation of the content, rather Plaintiff's sole source of liability against Frankspeech is an internet host of this content.

Frankspeech is immune from liability for its publication of statements under Section 230 of the Communications Decency Act (CDA). The CDA creates a federal immunity from state law causes of action that protects providers and users of interactive computer services from being treated as publishers or speakers of information originating from third parties. See 47 U.S.C. §§ 230(c)(1), (e)(3) (2018); see also *Silver v. Quora*, Inc., 666 F. App'x 727, 729 (10th Cir. 2016).

Section 230 "creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third party." *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 984–85 (10th Cir. 2000). It does so through the interplay of two key provisions. Under § 230(c)(1), "[n]o provider ... of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). And under § 230(e)(3), "[n]o cause of action may be brought, and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. § 230(e)(3).

The purpose of this immunity is to "facilitate the use and development of the Internet by providing certain services an immunity from civil liability arising from content provided by

others." *F.T.C. v. Accusearch Inc.,* 570 F.3d 1187, 1195 (10th Cir. 2009); see also 47 U.S.C. § 230(b)(2) ("It is the policy of the United States ... to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation...."). This immunity is not unfettered, however. Section 230(c)(1), quoted above, has three component parts that limit immunity:

First, only a provider or user of "an interactive computer service" can receive immunity. *Accusearch*, 570 F.3d at 1196 (internal quotation marks omitted). An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Second, the defendant's actions as a "publisher or speaker" must form the basis for liability. *Accusearch*, 570 F.3d at 1196 (internal quotation marks omitted). Section 230 protects a publisher from liability for exercising "its editorial and self-regulatory functions." *Ben Ezra*, 206 F.3d at 986. Third, immunity is available only when "another information content provider" provided the information at issue. *Accusearch*, 570 F.3d at 1196 (internal quotation marks omitted). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

In this case to each of these prongs apply to posts on Frankspeech by unidentified authors and CDA bars Plaintiff's defamation claims against Defendant. Plaintiff does not dispute that a separate content provider uploaded the content, and that Frankspeech's role was to enable that user to access the internet.

**B. PLAINTIFF'S CLAIM FOR INTENTIOANL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED.**

An IIED claim requires Plaintiff to establish that "(1) the defendant(s) engaged in extreme and outrageous conduct; (2) recklessly or with intent of causing severe emotional distress; and (3) causing the plaintiff severe emotional distress." *Mackall v. JPMorgan Chase Bank, N.A.,* 356 P.3d 946, 955 (Colo. 2014). In addition, as to publications giving rise to IIED claims, Plaintiff must show actual malice. *Lewis,* 832 P.2d at 1124-25. Further, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Han Ye Lee v. Colorado Times, Inc.,* 222 P.3d 957, 963 (Colo.App. 2009). Although there is not a precise standard, "[g]enerally, liability for outrageous conduct exists when the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*

As argued above, the tenuous connections of the defamatory statements to Defendants alone defeats this claim. Hosting or sponsoring an event where an individual alleges a defamatory statement falls far short for IIED "outrageous" standard. Further, it is not outrageous to host an interview of an individual who is discussing the singular most debated issue in the County and claims to have firsthand knowledge of an impropriety. Particularly, when the alleged defamer fully discloses the facts underpinning his statements. Defendants respectfully requests the Court dismiss Plaintiff's claim for intentional infliction of emotional distress against all Defendants.

C. **PLAINTIFFS' CONSPIRACY CLAIM FAILS BECAUSE IT IS NOTHING BUT LEGAL CONCLUSIONS.**

To establish a claim of civil conspiracy, Plaintiff must show "(1) two or more persons, …; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo.App. 2006). Conspiracy is a derivative claim and hinges on the viability of the defamation and IIED claims. *Colo. Cnty. Bank v. Hoffman*, 338 P.3d 390, 397 (Colo. 2013). As those claims fail, as argued above, so too must the conspiracy claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint against the Defendants in this case should be dismissed in its entirety.

DATED:  May 27, 2022

**THE REISCH LAW FIRM, LLC**

*s/ Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
1490 W. 121st Avenue, Suite 202
Denver, CO 80234
Scott@reischlawfirm.com
Jessica@reischlawfirm.com


**PARKER DANIELS KIBORT LLC**

By: */s/ Andrew D. Parker*
Andrew D. Parker (MN Bar #195042)
Jesse H. Kibort (MN Bar #328595)
Abraham S. Kaplan (MN Bar #399507)
123 N. Third Street, Suite 888
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
kibort@parkerdk.com
kaplan@parkerdk.com

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

CAIN & SKARNULIS, PLLC

Charles J. Cain
Bradley A. Kloewer, #50565
P.O. Box 1064
Salida, CO 81201
ccain@cstrial.com

Bradley A. Kloewer
101 North F Street
Suite 207
Salida, CO 81201
bkloewer@cstrial.com

**Attorneys for Plaintiff**

*s/ Andrew D. Parker*
Andrew D. Parker