**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-WJM

ERIC COOMER, PH.D.,

    Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH
LLC, AND MY PILLOW, INC.,

    Defendants.

---

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS AMENDED
COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

---

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants Michael Lindell ("Lindell"), My Pillow, Inc. ("MyPillow"), and Frankspeech LLC ("Frankspeech"), pursuant to Fed. R. Civ. P. 12(b)(6) hereby move this Court to dismiss Plaintiff's First Amended Complaint ("Amended Complaint" or "Am. Compl.").

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Plaintiff's Amended Complaint comprises 134 numbered paragraphs filling 74 pages. (Doc. 21). Many of the allegations, though, have little to do with Defendants. When the chaff of non-germane matters is puffed away, what remains fails to meet the heightened pleading standard applicable to Plaintiff's claims.

### I.   FACTUAL ALLEGATIONS

Concerning **Lindell,** the Amended Complaint states the following allegations arguably related to Plaintiff's claims:

- On March 11, 2021, Lindell appeared as a guest on the podcast "Conservative Daily" which is published online. The podcast that day included Lindell and two co-hosts, Max McGuire and Joe Oltmann. The Amended Complaint does not allege Defendants made any defamatory statements against Plaintiff during the March 11, 2021 interview, but alleges that Oltmann mentioned Coomer during the interview. Am. Compl. ¶ 46.

- In April 2021, Lindell gave speeches in which he said Coomer would be "the first one behind bars when we melt down the machines," had sued Lindell, was a

1

"criminal," was "disgusting" and "belong[s] behind bars," "ran into a building drunk the other day or whatever you were," was part of "the biggest crime this world has ever seen," was "evil," and "did crimes against the United States and quite frankly all of humanity." *Id*. ¶¶ 94-96.

- On May 9, 2021, Lindell also appeared on a Frankspeech show and stated:

  > Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody.

Am. Compl. ¶ 61.

- During August 2021, Lindell allegedly hosted, created, ran, and produced a Cyber Symposium in South Dakota. *Id*. ¶ 70. Lindell allegedly transported Oltmann to the symposium and "brought Oltmann onstage to defame Dr. Coomer at length, as they knew he would." *Id*. ¶¶ 79-80. However, the Amended Complaint does not allege that Lindell was present onstage while Oltmann allegedly defamed Plaintiff. *See id*. ¶¶ 81-83.

- Since the Symposium, Lindell has "maintained close relationships with various Colorado election fraud conspiracy theorists, including Joe Oltmann, Tina Peters, Sherrona Bishop, Shawn Smith, Ashe Epp, Holly Kasun, and others." *Id*. ¶ 90. As of December 22, 2021, Lindell claimed to have spent at least $25 million of his

2

      own money on efforts across the country related to election fraud. *Id*. ¶ 39.

- On May 23, 2022, Lindell said Plaintiff was "some corrupt person who was with Dominion, one of the most corrupt people." *Id*. ¶ 103.

Concerning **MyPillow**, the Amended Complaint alleges the following facts related to Plaintiff:

- Lindell is a supporter of former President Trump, who endorsed Lindell's company, MyPillow, in 2017. MyPillow has become a prominent advertiser on conservative and right-wing media platforms. *Id*. ¶ 39. Lindell's statements about Plaintiff were allegedly made "within the scope of his role as president and CEO of MyPillow." *Id*. ¶ 102.

- On May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." In the interview, Howse allegedly stated that Oltmann was speaking on behalf of MyPillow to request that viewers purchase MyPillow products from mypillow.com. *Id*. ¶ 53.

- My Pillow allegedly created, ran, and produced the Cyber Symposium in Sioux Falls, South Dakota, and promoted the event through its website. *Id*. ¶ 70.

Concerning **Frankspeech**, the Amended Complaint alleges the following facts related to Plaintiff:

- In an article on the Frankspeech website, an unidentified author stated, "Eric Coomer is a [sic] Dominion's VP, Antifa Supporter and Trump Hater. He travelled

3

all the battleground states in 2019 and made sure that Dominion voting systems [sic] was in all of them. He said in an Antifa Conference call that he makes [sic] sure Trump will not win 2020 election [sic]." *Id*. ¶ 52.

- On May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." *Id*. ¶ 53. During the interview, Oltmann stated that "Eric, the Dominion guy" was on an "Antifa conference call"; someone asked, "What are we gonna do if f-ing Trump wins?"; and "Eric" responded, "Don't worry about the election, Trump's not going to win. I made f-ing sure of it." Oltmann further stated that he later identified Coomer as the "Eric" on the call, by web searching for "Eric," "Dominion," and "Denver, Colorado," prompting him to identify Plaintiff and Dominion Voting Systems. *Id*. ¶¶ 54-56. During the interview, Oltmann omitted information related to his statements about Plaintiff. *Id*. ¶ 60.

- Lindell's May 9, 2021 statements described above appeared on Frankspeech. *Id*. ¶ 61.

- Frankspeech republished defamatory articles and podcasts by others, defamatory interviews by Frankspeech hosts, and defamatory statements by Lindell. *Id*. ¶¶ 49-50.

- Frankspeech created, ran, produced, and promoted the Cyber Symposium. *Id*. ¶ 70. Defamatory statements about Plaintiff made at the Cyber Symposium were published by Frankspeech. *Id*. ¶ 89.

- Frankspeech "ratified and endorsed" the statements of Frankspeech hosts who

4

"promoted the false claims against Dr. Coomer." *Id*. ¶ 120.

- Frankspeech is "vicariously liable" for the conduct of Lindell who "at all times relevant was acting as an agent and representative of Frankspeech." *Id*. ¶ 7.

The Amended Complaint further alleges that Defendants engaged in a "defamation blitz," identifying 19 alleged defamatory statements: (1) Dr. Coomer is "corrupt"; (2) Lindell is "up against" "corruption"; (3) Lindell has never talked about Dr. Coomer; (4) Dr. Coomer is the "president of Dominion"; (5) Dominion is a "criminal crime family"; (6) Dr. Coomer is "a criminal"; (7) MyPillow does not know who Dr. Coomer is; (8) Dr. Coomer did a "very, very stupid move"; (9) Dr. Coomer will be "behind bars"; (10) [Georgia Secretary of State] Brad Raffensperger will be "behind bars"; (11) [Colorado Secretary of State] Jena Griswold will be "behind bars"; (12) Dr. Coomer is "disgusting"; (13) Dr. Coomer "belong[s] behind bars"; (14) Dr. Coomer "ran into a building drunk the other day"; (15) Dr. Coomer has "been a part of the biggest crime this world has ever seen"; (16) Dr. Coomer "even said what [he] did or [he was] going to do"; (17) Dr. Coomer is "evil"; (18) Dr. Coomer "did crimes against the United States"; and (19) Dr. Coomer "did crimes against … quite frankly all of humanity". *Id*. ¶ 96.

The Amended Complaint asserts four causes of action: defamation, *id*. ¶¶ 117-121; intentional infliction of emotional distress, *id*. ¶¶ 122-125; civil conspiracy, *id*. ¶¶ 126-130; and permanent injunction, *id*. ¶¶ 131-132. Each fails to state a claim and must be dismissed.

## II.   LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the defendant to accept as true, for purposes of the motion, all well-pleaded factual allegations in the complaint.

5

*Al-Owhali v. Holder,* 687 F.3d 1236, 1240 (10th Cir. 2012). "The court's function on a Rule 12(b)(6) motion is to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). To survive a Rule 12(b)(6) motion, the complaint must plead factual content that allows "the reasonable inference that the defendant is liable for the misconduct alleged," and it is not enough to plead facts that allow for "the mere possibility of misconduct." *Id*. at 1239-1240 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)). In evaluating a Rule 12(b)(6) motion, the Court may consider documents attached to or referenced in the complaint if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *GFF Corp. v. Assoc'd Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Defamation claims require a plaintiff to meet certain additional pleading requirements. "[I]n the context of a defamation claim, Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself." *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989). Defamation claims present a "significant exception" to general liberal pleading standards because defamation constitutes a "traditionally disfavored" cause of action. To sufficiently plead a defamation claim, a complaint must state the allegedly defamatory words, the communicator of those words, the persons to whom those words were published, and the time and place of publication. *Heckman v. Zurich Holding Co. of America*, 2007 WL 677607, at *5 (D. Kan. Feb. 28, 2007) (internal citations

6

omitted). Because defamation claims seek to punish speech, they are also subject to certain constitutional requirements, discussed below.

### III.     ARGUMENT

#### A. Federal Law Bars the Defamation Claim.

##### 1. The Defamation Claim Fails to Survive First Amendment Scrutiny.

Plaintiff's defamation claim seeks to impose liability based on the content of speech. Accordingly, it is subject to the First Amendment's prohibition against infringement of the right to free speech, as applied in *New York Times v. Sullivan*. The claim fails to pass muster under *New York Times* and subsequent cases applying its First Amendment principles.

###### a. The Constitutional "Actual Malice Standard" Applies to Plaintiff's Claims.

Where a defamation claim involves a matter of public concern or a public figure, the plaintiff must prove the statement was made with "actual malice." *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29 (1971); *Lewis v. McGraw-Hill Broad. Co., Inc.,* 832 P.2d 1118, 1122-23 (Colo. App. 1992) ("actual malice" is an extra element for defamation claims involving a matter of public concern). Colorado courts have expressly adopted *Rosenbloom* for statements involving Colorado. *See Walker v. Colorado Springs Sun, Inc.,* 538 P.2d 450 (Colo. 1975); *Diversified Mgmt., Inc. v. Denver Post, Inc.,* 653 P.2d 1103, 1110 (Colo. 1982). At common law, actual malice was shown by ill will, evil or corrupt motive, or spite. *Carson v. Allied News Co.,* 529 F.2d 206, 209 (7th Cir. 1976). However, after *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964), the term has become a shorthand for the *New York Times* standard of liability. *Carson*, 529 F.2d at 209.

7

*New York Times v. Sullivan* defines "actual malice" as requiring that the defamer spoke "with knowledge" that the defamatory falsehood was false "or with reckless disregard of whether it was false or not." 376 U.S. at 280. Under Colorado law, actual malice means a defendant must have made the statement with knowledge of its falsity or with reckless disregard as to its truthfulness. *Lewis,* 832 P.2d at 1122-23; *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013). To prove actual malice, "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement . . . or acted with a high degree of awareness of its probable falsity." *Lewis*, 832 P.2d at 1122-23. Actual malice is a subjective standard, meaning "reckless conduct is not measured by whether a reasonably prudent man would have published or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. 727, 731 (1968).

Here, due to the subject matter of the allegedly defamatory statements and the identity of the plaintiff, the actual malice standard applies to the Plaintiff's claims.[1]

**The Statements Disputed in the Amended Complaint Relate to a Public Issue.** The First Amendment implements a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times*, 376 U.S. at 270. The protection offered by the First Amendment is at its strongest for

---

[1] In a similar lawsuit brough by Plaintiff, *Eric Coomer vs. Donald J. Trump For President, Inc., et al.*, the court recently ruled that allegedly defamatory statements concerning Eric Coomer in the context of the 2020 election are a matter of public concern and trigger the actual malice standard. Order at 66, Case No: 2020cv034319 (Denver Co., Colo. May 13, 2022).

8

speech on matters of public concern. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). Generally, a matter is of public concern whenever "it embraces an issue about which information is needed or is appropriate," or when "the public may reasonably be expected to have a legitimate interest in what is being published." *Shoen v. Shoen*, 292 P.3d 1224, 1229 (Colo. App. 2012).

Courts have recognized that protecting elections is a matter of public concern. *See Mauff v. People*, 123 P. 101, 103 (Colo. 1912) ("It is a matter of general public concern that, at all elections, such safeguards be afforded."); *Johnson v. Bradley*, 4 Cal. 4th 389, 409 (Cal. 1992) (the integrity of the electoral process is undoubtedly a statewide concern); *Burroughs v. United States*, 290 U.S. 534, 545 (1934) (the importance of a presidential election "cannot be too strongly stated"); *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1268 (N.D. Ga. 2020).

For the elements of defamation, it is the matter or issue being discussed, not the specific individual referenced, that makes a statement subject to the actual malice standard, if the issue is of public interest. *See Rosenbloom*, 403 U.S. at 43.[2]  In this case, Plaintiff disputes statements concerning the security and accuracy of the 2020 Presidential election. This is a quintessential matter in which the public may reasonably be expected to have a legitimate interest.

---

[2] *See Diversified Mgmt., Inc.,* 653 P.2d at 1110 and *Walker v. Colorado Springs Sun, Inc.,* 538 P.2d 450 (1975), citing to *Rosenbloom*, 403 U.S. at 43.

**Plaintiff is a Limited Public Figure.** The actual malice standard also applies to Plaintiff's claims because Plaintiff is a limited purpose public figure. Under Colorado law, whether a plaintiff is a limited purpose public figure status turns on two questions: the threshold question of whether the defamatory statement involves a matter of public concern and, more importantly, whether the level of plaintiff's participation in the controversy invites scrutiny. *Lewis*, 832 P.2d at 1122. The Tenth Circuit has defined a "limited-purpose public figure" as a person who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000). Plaintiff fits this description. He "is the former Director of Product Strategy and Security for Dominion Voting Systems," which "provided election related services to at least 30 different states during the 2020 presidential election." Am. Compl. ¶ 16. He "worked with elections officials" to "make sure the process was safe, secure, and fair." *Id*., ¶ 31. His "professional reputation . . . depended on working relationships with state and county officials" and his employment was "in relation to and support of elections." *Id*. at p.68 n.144. By accepting responsibility concerning election related services, security, and fairness, Plaintiff became a limited purpose public figure with respect to issues of election services, security, and fairness.

    **b. Plaintiff Does Not Plausibly Allege Defendants Made Statements with Actual Malice.**

Plaintiff has not plausibly pleaded that Defendants made any statement with knowledge of its falsity or with reckless disregard as to its truthfulness. *See New York*

*Times*, 376 U.S. at 279-280; *Lewis,* 832 P.2d at 1122-23; *Fry*, 408 P.3d at 848. It is not enough for a plaintiff to make a "generic statement accusing someone of acting with reckless disregard," *i.e.*, by merely asserting that one accused of defamation "subjectively knew" his statement was false. *Tah v. Glob. Witness Publ'g, Inc*., 991 F.3d 231, 241 (D.C. Cir. 2021). Such an assertion "cannot be read to shoehorn in every conceivable actual malice theory." *Id*. Nor is it enough for a defamation plaintiff to plead that others disagree with a politically charged statement, or that evidence contrary to a politically charged statement exists. If merely alleging disagreement or contrary evidence is sufficient to plead actual malice, then every political disagreement provides fertile ground for defamation claims. That is not the law. To plead actual malice, a defamation plaintiff must plead facts showing *personal conduct or words by the defendant exhibiting knowledge of falsity or reckless disregard as to truthfulness*. Plaintiff has not pleaded, and cannot plead, any words or conduct by the Defendants here exhibiting knowledge of falsity or reckless disregard as to truthfulness.

Where the Amended Complaint makes allegations regarding Defendants' words and actions, it pleads only conclusory accusations about their subjective knowledge and beliefs. Where it pleads specific facts concerning subjective knowledge and beliefs, it states only allegations concerning *other* people. These types of allegations are insufficient to plausibly plead conduct that *is* liable for misconduct, rather than the "mere possibility" of misconduct, under the standard of *Iqbal*. While the court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences in Plaintiff's favor, the Amended Complaint alleges no words or conduct by Defendants demonstrating subjective

11

knowledge of falsity or doubt concerning truthfulness. In the context of political speech, at the very core of First Amendment protection, such allegations do not state a claim that overleaps constitutional protection for the content of speech. Plaintiff's assertions concerning Defendants' subjective knowledge and beliefs are attorney argument, and do not rise to the level of inferences or legal conclusions, which the court should not accept in any event. *See Nurriddin*, 818 F.3d at 756.

### 2. The Amended Complaint Attacks Statements of Opinion by Lindell, Which Do Not Support a Claim Of Defamation.

The Amended Complaint's allegations concerning Lindell are heavy on conclusory guilt by association and light on statements about Plaintiff. The allegations concerning Lindell's statements and activities concerning election fraud, but not mentioning Plaintiff, do not permit Plaintiff to bring a defamation claim against anyone. Focusing on Lindell's alleged statements actually mentioning Plaintiff, as required by Fed. R. Civ. P. 8(a), shows that the Amended Complaint fails to plead any statement about Plaintiff that exceeds the bounds of constitutionally protected statements of opinion.

As described above, the Amended Complaint alleges Lindell said Plaintiff would be "the first one behind bars when we melt down the machines," had sued Lindell, was a "criminal," was "disgusting" and "belong[s] behind bars," "ran into a building drunk the other day or whatever you were," was part of "the biggest crime this world has ever seen," was "evil," and "did crimes against the United States and quite frankly all of humanity," was "treasonous" and a "traitor," and was "some corrupt person who was with Dominion, one of the most corrupt people." These statements are without doubt sharp and unpleasant.

12

But the First Amendment protects sharp and unpleasant statements of opinion, which is all that these statements are.

For "constitutional limits on the type of speech which may be the subject of state defamation actions" caselaw "provides protection for statements such as parody, fantasy, rhetorical hyperbole, and imaginative expressions, that cannot reasonably be interpreted as stating actual facts about an individual." *Mink v. Knox*, 613 F.3d 995, 1005 (10th Cir. 2010) (cleaned up) citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, at 20 (1990); *see also TMJ Implants, Inc. v. Aetna, Inc.,* 498 F.3d 1175, 1184 (10th Cir. 2007); *Dilworth v. Dudley*, 75 F.3d 307, 309-10 (7th Cir. 1996) (actionability of opinion is threshold legal question for court); *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) (same). "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich,* 497 U.S. at 20.

For a statement to be actionable as defamatory, it must express or imply a verifiably false fact about the plaintiff. *See Milkovich,* 497 U.S. at 19-20 (1990); *Burns v. McGraw Hill Broad. Co., Inc.,* 659 P.2d 1351, 1360 (Colo. 1983). Statements of opinion can only be actionable if they imply provably false facts or rely upon stated facts that are provably false. *See Milkovich*, 497 U.S. at 20. In deciding whether a statement expressed or implied a false statement of fact, courts consider the entire statement, the context in which it was made, and whether a reasonable person would conclude that the statements at issue expressed or implied a false fact. *See Burns*, 659 P.2d at 1360. *See Henderson v. Times Mirror Co.,* 669 F. Supp. 356, 357 (D. Colo. 1987), *aff'd* 876 F.2d 108 (10th Cir. 1989)

13

(Defendant calling plaintiff as a "sleazebag" who kind of "slimed up from the bayou" was an opinion "and a claim for defamation cannot be predicated on a mere expression of opinion"); see also *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 285 (1974) (use of the word "traitor" as applied to an employee who crossed a picket line, was "exaggerated rhetoric . . . commonplace in labor disputes.");

Just as the statements in the claims dismissed by these other courts, the statements by Lindell alleged in the Amended Complaint all fall into the category of opinion. "Disgusting" and "traitor" are nonactionable opinion and rhetoric in the context of a contested political matter. Plaintiff has not and cannot plead that these statements were made with actual malice.

## B. Plaintiff Does Not Plead Any Basis To Hold My Pillow or Frankspeech Responsible For Statements Alleged in the Amended Complaint.

Even if this Court were to find that Plaintiff's Complaint meets the heightened pleading standard for Lindell, agency law does not impute liability to MyPillow for Lindell's statements. Under Colorado and Minnesota law, the party asserting the existence of an agency, or other special relationship, has the burden of proving it. *See Tara Woods Ltd. P'ship v. Fannie Mae,* 731 F. Supp. 2d 1103, 1117 (D. Colo. 2010), *aff'd* 566 Fed. Appx. 681 (10th Cir. 2014); see also *White v. Boucher*, 322 N.W.2d 560, 566 (Minn. 1982) (existence of principal-agent relationship is a question of fact, and the party alleging the existence of the agency has the burden of proof). A corporation cannot be held liable for executives' allegedly defamatory statements unless the executives were acting within the scope of their employment. *Washington Gas-Light Co. v. Lansden*, 172 U.S. 534, 546

14

(1899); *Moroni Feed Co. v. Mut. Serv. Cas. Ins. Co.,* 287 F.3d 1290, 1292 (10th Cir. 2002).

Minnesota law, the place of incorporation for My Pillow, is similar. A principal is liable for the act of its agent only if the act giving rise to alleged liability was committed within the scope of the agency and was not for a purpose personal to the agent. *Semrad v. Edina Realty*, 493 N.W.2d 528, 535 (Minn. 1992). In *Kasner v. Gage*, 161 N.W.2d 40, 42 (Minn. 1968), the Minnesota Supreme Court held that a corporation was not liable for an employee's theft of a competitor's business records because theft was not how the corporation competed and was accordingly not within the scope of employment. No plausible fact is alleged in Plaintiff's complaint to support a finding that Lindell's statements were within the scope of his role as President and CEO of MyPillow. No plausible factual allegation in Plaintiff's complaint supports a conclusion that political activities are among Lindell's enumerated duties in that role. Nor does the Amended Complaint allege any fact to warrant a finding that Lindell is authorized by the corporation to engage in political commentary on its behalf.

Without any allegations to support an agency relationship between My Pillow and the entities or individuals who made the allegedly defamatory statement, My Pillow's advertising at the Cyber Symposium does not make it liable for any allegedly defamatory statements made at the Cyber Symposium.

Plaintiff's defamation claim against Frankspeech is similarly unavailing. Plaintiff alleges that on May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." Am. Compl. ¶ 53. The interview consists of Oltmann relaying the story of participating in

the "Antifa conference call" and overhearing someone identified as "Eric […] the Dominion guy" saying "don't worry about the election, Trump's not going to win. I made f-ing sure of it." *Id*. ¶¶ 52, 55. However, importantly, in the interview Oltmann disclosed to the audience that his sole knowledge on how he connected "Eric" to Plaintiff Eric Coomer, was as the result of a Google search "Eric," "Dominion," and "Denver Colorado." *Id*. ¶ 56. Oltmann also disclosed to the audience that Coomer, the subject of his statements, has sued him in Colorado for claims for defamation arising from this story. *Id,* ¶ 58.

Oltmann's relaying the story of the "Antifa conference call" <u>alone</u> is not defamatory to Plaintiff. Defamatory statements must be reasonably understood to refer to the defamed individual, and "Eric from Dominion" does not meet this requirement. *See Gordon v. Boyles*, 99 P.3d 75, 80 (Colo. App. 2004). The only alleged defamatory component is Oltmann's connection of "Eric the Dominion guy" to Plaintiff. However, because Oltmann disclosed to his audience the source of his conclusion to connect the Antifa call member to Plaintiff (a simple Google search), this permits the listener to form his or her own opinion about whether the facts presented plausibly connect Plaintiff to the call, and the statement is not actionable. *See Piccone v. Bartels*, 785 F.3d 766, 772- 73 (1st Cir. 2015) (finding defamation claim properly defeated where speaker disclosed facts underlying his opinion that the plaintiff was "unprofessional"); *McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) ("[W]hen the speaker 'outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally

16

protected by the First Amendment.' " (quoting *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002)). "Even a provably false statement is not actionable if 'it is plain that the speaker is expressing a subjective view ... rather than claiming to be in possession of objectively verifiable facts.' " *McKee*, 874 F.3d at 61 (quoting *Gray v. St. Martin's Press, Inc.,* 221 F.3d 243, 248 (1st Cir. 2000)). Frankspeech cannot be held liable for the May 3, 2021 interview, because the underlying statements were not defamatory.

### C. The Intentional Infliction of Emotional Distress Claim Fails to Plausibly Allege Actual Malice or Outrageousness.

A claim alleging intentional infliction of emotional distress (IIED) that is based on publication of statements is subject to the actual malice standard of the First Amendment. *Lewis,* 832 P.2d at 1124-25. Further, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Han Ye Lee v. Colorado Times, Inc.,* 222 P.3d 957, 963 (Colo. App. 2009). Although there is not a precise standard, "[g]enerally, liability for outrageous conduct exists when the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id*.

As shown above, the allegations in the Amended Complaint fail to plausibly plead actual malice. Furthermore, the tenuous connections of the defamatory statements to Defendants also defeats Plaintiffs' IIED claim. Hosting or sponsoring an event where another person makes allegedly defamatory statements falls far short for IIED "outrageous" standard. It is not outrageous to host an interview of an individual who is discussing a hotly

17

debated political issue in the country and claims to have firsthand knowledge of an impropriety, and explains the factual basis for his statements. Defendants respectfully request the Court dismiss Plaintiff's claim for intentional infliction of emotional distress against all Defendants for failure to meet both the actual malice and outrageousness requirements.

### D. The Remaining Claims Fails Because They Depend Upon the Defamation and IIED Claims.

To establish a claim of civil conspiracy, Plaintiff must show "(1) two or more persons, …; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo.App. 2006). Conspiracy is a derivative claim and hinges on the viability of the defamation and IIED claims. *Colo. Cnty. Bank v. Hoffman*, 338 P.3d 390, 397 (Colo. 2013). As those claims fail, so too must the conspiracy claim. The same is true of Plaintiff's claims seeking injunctive relief and retraction.

### IV. CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

**STATEMENT REGARDING PRACTICE STANDARDS:**

Pursuant to Section III.D of the Practice Standards for Civil and Criminal Matters Before William J. Martinez, United States District Judge, U.S. District Court for the District of Colorado, the undersigned affirms that Defendants' counsel conferred with Plaintiff's counsel via teleconference on July 8, 2022. The parties discussed the deficiencies stated in this Motion, and were unable to reach agreement on withdrawing or further amending the operative Complaint.

DATED:  July 14, 2022            **PARKER DANIELS KIBORT LLC**

By: */s/ Andrew D. Parker*
Andrew D. Parker (MN Bar #195042)
Jesse H. Kibort (MN Bar #328595)
Abraham S. Kaplan (MN Bar #399507)
Ryan P. Malone (MN Bar #395795
123 N. Third Street, Suite 888
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
kibort@parkerdk.com
kaplan@parkerdk.com
malone@parkerdk.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Andrew D. Parker*
Andrew D. Parker