# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-WJM

ERIC COOMER, PH.D.,

      Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH
LLC, AND MY PILLOW, INC.,

      Defendants.

---

## DEFENDANTS' CORRECTED RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

---

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants Michael Lindell ("Lindell"), My Pillow, Inc. ("MyPillow"), and Frankspeech LLC ("Frankspeech"), pursuant to Fed. R. Civ. P. 12(b)(6) hereby move this Court to dismiss Plaintiff's First Amended Complaint ("Amended Complaint" or "Am. Compl.").

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Plaintiff's Amended Complaint comprises 134 numbered paragraphs filling 74 pages. (Doc. 21). Many of the allegations, though, have little to do with Defendants. When the chaff of non-germane matters is puffed away, what remains fails to meet the heightened pleading standard applicable to Plaintiff's claims.

## I.    FACTUAL ALLEGATIONS

Concerning **Lindell,** the Amended Complaint states the following allegations arguably related to Plaintiff's claims:

- On March 11, 2021, Lindell appeared as a guest on the podcast "Conservative Daily" which is published online. The podcast that day included Lindell and two co-hosts, Max McGuire and Joe Oltmann. The Amended Complaint does not allege Defendants made any defamatory statements against Plaintiff during the March 11, 2021 interview, but alleges that Oltmann mentioned Coomer during the interview. Am. Compl. ¶ 46.

- In April 2021, Lindell gave speeches in which he said Coomer: would be "the first one behind bars when we melt down the machines," had sued Lindell, was a "criminal," was "disgusting" and "belong[s] behind bars," "ran into a building drunk the other day or whatever you were," was part of "the biggest crime this world has ever seen," was "evil," and "did crimes against the United States and quite frankly all of humanity." *Id*. ¶¶ 94-96.

1

- On May 9, 2021, Lindell also appeared on a Frankspeech show and stated:

  > Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody.

  Am. Compl. ¶ 61.

- During August 2021, Lindell allegedly hosted, created, ran, and produced a Cyber Symposium in South Dakota. *Id*. ¶ 70. Lindell allegedly transported Oltmann to the symposium and "brought Oltmann onstage to defame Dr. Coomer at length, as they knew he would." *Id*. ¶¶ 79-80. However, the Amended Complaint does not allege that Lindell was present onstage while Oltmann allegedly defamed Plaintiff. *See id*. ¶¶ 81-83.

- Since the Symposium, Lindell has "maintained close relationships with various Colorado election fraud conspiracy theorists, including Joe Oltmann, Tina Peters, Sherronna Bishop, Shawn Smith, Ashe Epp, Holly Kasun, and others*." Id*. ¶ 90. As of December 22, 2021, Lindell claimed to have spent at least $25 million of his own money on efforts across the country related to election fraud. *Id*. ¶ 39.

- On May 23, 2022, Lindell said Plaintiff was "some corrupt person who was with Dominion, one of the most corrupt people." *Id*. ¶ 103.

Concerning **MyPillow**, the Amended Complaint alleges the following facts related to Plaintiff:

- Lindell is a supporter of former President Trump, who endorsed Lindell's company, MyPillow, in 2017. MyPillow has become a prominent advertiser on conservative and right-wing media

2

platforms. *Id.* ¶ 39. Lindell's statements about Plaintiff were allegedly made "within the scope of his role as president and CEO of MyPillow." *Id.* ¶ 102.

- On May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." In the interview, Howse allegedly stated that Oltmann was speaking on behalf of MyPillow to request that viewers purchase MyPillow products from mypillow.com. *Id.* ¶ 53.

- My Pillow allegedly created, ran, and produced the Cyber Symposium in Sioux Falls, South Dakota, and promoted the event through its website. *Id.* ¶ 70.

Concerning **Frankspeech**, the Amended Complaint alleges the following facts related to Plaintiff:

- In an article on the Frankspeech website, an unidentified author stated, "Eric Coomer is a [sic] Dominion's VP, Antifa Supporter and Trump Hater.  He travelled all the battleground states in 2019 and made sure that Dominion voting systems [sic] was in all of them.  He said in an Antifa Conference call that he makes [sic] sure Trump will not win 2020 election [sic]." *Id.* ¶ 52.

- On May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." *Id.* ¶ 53. During the interview, Oltmann stated that "Eric, the Dominion guy" was on an "Antifa conference call"; someone asked, "What are we gonna do if f-ing Trump wins?"; and "Eric" responded, "Don't worry about the election, Trump's not going to win. I made f-ing sure of it." Oltmann further stated that he later identified Coomer as the "Eric" on the call, by web searching for "Eric," "Dominion," and "Denver, Colorado," prompting him to identify Plaintiff and Dominion Voting Systems. *Id.* ¶¶ 54-56. During the interview, Oltmann omitted information

related to his statements about Plaintiff. *Id.* ¶ 60.

- Lindell's May 9, 2021 statements described above appeared on Frankspeech. *Id.* ¶ 61.

- Frankspeech republished defamatory articles and podcasts by others, defamatory interviews by Frankspeech hosts, and defamatory statements by Lindell. *Id.* ¶¶ 49-50.

- Frankspeech created, ran, produced, and promoted the Cyber Symposium. *Id.* ¶ 70. Defamatory statements about Plaintiff made at the Cyber Symposium were published by Frankspeech. *Id.* ¶ 89.

- Frankspeech "ratified and endorsed" the statements of Frankspeech hosts who "promoted the false claims against Dr. Coomer." *Id.* ¶ 120.

- Frankspeech is "vicariously liable" for the conduct of Lindell who "at all times relevant was acting as an agent and representative of Frankspeech." *Id.* ¶ 7.

The Amended Complaint further alleges that Defendants engaged in a "defamation blitz," identifying 19 alleged defamatory statements: (1) Dr. Coomer is "corrupt"; (2) Lindell is "up against" "corruption"; (3) Lindell has never talked about Dr. Coomer;  (4) Dr. Coomer is the "president of Dominion"; (5) Dominion is a "criminal crime family"; (6) Dr. Coomer is "a criminal"; (7) MyPillow does not know who Dr. Coomer is; (8) Dr. Coomer did a "very, very stupid move"; (9) Dr. Coomer will be "behind bars"; (10) [Georgia Secretary of State] Brad Raffensperger will be "behind bars"; (11) [Colorado Secretary of State] Jena Griswold will be "behind bars"; (12) Dr. Coomer is "disgusting"; (13) Dr. Coomer "belong[s] behind bars"; (14)  Dr. Coomer "ran into a building drunk the other day"; (15) Dr. Coomer has "been a part of the biggest crime this world has ever seen"; (16) Dr. Coomer "even said what [he] did or [he was] going to do"; (17) Dr. Coomer is "evil"; (18) Dr. Coomer "did crimes against the United States"; and (19) Dr. Coomer "did crimes against … quite frankly all of humanity". *Id.* ¶ 96.

The Amended Complaint asserts four causes of action: defamation, *id*. ¶¶ 117-121; intentional infliction of emotional distress, *id*. ¶¶ 122-125; civil conspiracy, *id*. ¶¶ 126-130; and permanent injunction, *id*. ¶¶ 131-132. Each fails to state a claim and must be dismissed.

## II.  LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the defendant to accept as true, for purposes of the motion, all well-pleaded factual allegations in the complaint. *Al-Owhali v. Holder,* 687 F.3d 1236, 1240 (10th Cir. 2012). To survive a Rule 12(b)(6) motion, the complaint must plead factual content that allows "the reasonable inference that the defendant is liable for the misconduct alleged," and it is not enough to plead facts that allow for "the mere possibility of misconduct." *Id*. at 1239-1240 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)).

Defamation claims require additional pleading requirements. "[I]n the context of a defamation claim, Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself." *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989). A complaint must state the allegedly defamatory words, the communicator of those words, who they were published to, and the time and place of publication. *Heckman v. Zurich Holding Co. of America*, 2007 WL 677607, at *5 (D. Kan. Feb. 28, 2007) (internal citations omitted). Because defamation claims seek to punish speech, they are also subject to certain constitutional requirements, discussed below.

## III.  ARGUMENT

### A.  Federal Law Bars the Defamation Claim.

#### 1.  The Defamation Claim Fails to Survive First Amendment Scrutiny.

Plaintiff's defamation claim is subject to the First Amendment's prohibition against infringement of the right to free speech, as applied in *N.Y. Times Co. v. Sullivan*, 376 U.S. 254

(1964). The claim fails to pass muster under *New York Times* and subsequent cases applying its First Amendment principles.

### a.   The Constitutional "Actual Malice Standard" Applies to Plaintiff's Claims.

Where a defamation claim involves a matter of public concern or a public figure, the plaintiff must prove the statement was made with "actual malice." *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29 (1971). Colorado courts have expressly adopted *Rosenbloom* for statements involving Colorado. *See Walker v. Colorado Springs Sun, Inc.,* 538 P.2d 450 (Colo. 1975). This "actual malice" standard requires that the defamer speak "with knowledge" of falsity "or with reckless disregard of whether it was false or not." *N.Y. Times,* 376 U.S. at 280. Under Colorado law, actual malice means a defendant must have made the statement with knowledge of its falsity or with reckless disregard as to its truthfulness. *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013). To prove actual malice, "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement . . . or acted with a high degree of awareness of its probable falsity." *Lewis v. McGraw-Hill Broad. Co.,* 832 P.2d 1118, 1123 (Colo. App. 1992). "Actual malice is a subjective standard, … [t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Here, due to the subject matter of the allegedly defamatory statements and the identity of the plaintiff, the actual malice standard applies to the Plaintiff's claims.[1]

**The Statements Disputed in the Amended Complaint Relate to a Public Issue.** The First Amendment implements a "profound national commitment to the principle that debate on

---

[1] In a similar lawsuit brough by Plaintiff, *Eric Coomer vs. Donald J. Trump For President, Inc., et al.*, the court recently ruled that allegedly defamatory statements concerning Eric Coomer in the context of the 2020 election are a matter of public concern and trigger the actual malice standard. Order at 66, Case No: 2020cv034319 (Denver Co., Colo. May 13, 2022).

public issues should be uninhibited, robust, and wide-open." *N.Y. Times*, 376 U.S. at 270. The

protection offered by the First Amendment is at its strongest for speech on matters of public

concern. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). Generally, a matter is of public concern

whenever "it embraces an issue about which information is needed or is appropriate," or when "the

public may reasonably be expected to have a legitimate interest in what is being published." *Shoen*

*v. Shoen*, 292 P.3d 1224, 1229 (Colo. App. 2012). Courts have recognized that protecting elections

is a matter of public concern. *See Mauff v. People*, 123 P. 101, 103 (Colo. 1912) ("It is a matter of

general public concern that, at all elections, such safeguards be afforded.").[2] For the elements of

defamation, for issues of public interest, the issue being discussed not referenced individuals,

makes a statement subject to the actual malice standard. *See Rosenbloom*, 403 U.S. at 43.[3]  In this

case, Plaintiff disputes statements concerning the security and accuracy of the 2020 Presidential

election. This is a quintessential public issue.

     **Plaintiff is a Limited Public Figure.** The actual malice standard also applies to Plaintiff's

claims because Plaintiff is a limited purpose public figure. Under Colorado law, a plaintiff is a

limited purpose public figure if: the defamatory statement involves a matter of public concern, and

if the level of plaintiff's participation in the controversy invites scrutiny. *Lewis*, 832 P.2d at 1122.

The Tenth Circuit has defined a "limited-purpose public figure" as a person who "voluntarily

injects himself or is drawn into a particular public controversy and thereby becomes a public figure

for a limited range of issues." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140,

1145 (10th Cir. 2000).  Plaintiff fits this description. He "is the former Director of Product Strategy

---

[2] *See also Burroughs v. United States*, 290 U.S. 534, 545 (1934) (the importance of a presidential election "cannot be too strongly stated"); *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1268 (N.D. Ga. 2020).

[3] *See Diversified Mgmt., Inc.,* 653 P.2d at 1110 and *Walker v. Colorado Springs Sun, Inc.,* 538 P.2d 450 (1975), citing to *Rosenbloom*, 403 U.S. at 43.

and Security for Dominion Voting Systems," which "provided election related services to at least 30 different states during the 2020 presidential election." Am. Compl. ¶ 16.  He "worked with elections officials" to "make sure the process was safe, secure, and fair." *Id.*, ¶ 31. His "professional reputation . . . depended on working relationships with state and county officials" and his employment was "in relation to and support of elections." *Id.* at p.68 n.144. By accepting responsibility concerning election related services, security, and fairness, Plaintiff became a limited purpose public figure with respect to issues of election services, security, and fairness.

### b.  Plaintiff Does Not Plausibly Allege Defendants Made Statements with Actual Malice.

Plaintiff has not plausibly pleaded that Defendants made any statement with knowledge of its falsity or with reckless disregard as to its truthfulness. *See Lewis,* 832 P.2d at 1122-23; *Fry*, 408 P.3d at 848. It is not enough for a plaintiff to merely assert that a defendant "subjectively knew" his statement was false. *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 241 (D.C. Cir. 2021). Such an assertion "cannot be read to shoehorn in every conceivable actual malice theory." *Id.* Nor is it enough for a defamation plaintiff to plead that others disagree, or that evidence contrary to a politically charged statement exists. To plead actual malice, a defamation plaintiff must plead facts showing *personal conduct or words by the defendant exhibiting knowledge of falsity or reckless disregard as to truthfulness*.

Where the Amended Complaint makes allegations regarding Defendants' words and actions, it pleads only conclusory accusations about their subjective knowledge and beliefs. Where it pleads specific facts concerning subjective knowledge and beliefs, it states only allegations concerning *other* people. These types of allegations are insufficient to plausibly plead conduct that *is* liable for misconduct, rather than the "mere possibility" of misconduct, under the standard of *Iqbal*. The Amended Complaint alleges no words or conduct by Defendants demonstrating

subjective knowledge of falsity or doubt concerning truthfulness. Plaintiff's assertions concerning

Defendants' subjective knowledge and beliefs are attorney argument, and do not rise to the level

of inferences or legal conclusions, which the court should not accept in any event. *See Nurriddin*

*v. Bolden*, 818 F.3d 751, 756 (2016).

### 2. The Amended Complaint Attacks Statements of Opinion by Lindell, Which Do Not Support a Claim Of Defamation.

The Amended Complaint's allegations concerning Lindell are heavy on conclusory guilt

by association and light on statements about Plaintiff. The allegations regarding Lindell's

statements concerning election fraud, but not mentioning Plaintiff, do not permit Plaintiff to bring

a defamation claim. Focusing on Lindell's alleged statements that mention Plaintiff, as required

by Fed. R. Civ. P. 8(a), shows that the Amended Complaint fails to plead that Plaintiff exceeded

the bounds of constitutionally protected statements of opinion. As described above, the Amended

Complaint's allegations[4] are without doubt sharp and unpleasant. But the First Amendment

protects sharp and unpleasant statements of opinion.

For "constitutional limits on the type of speech which may be the subject of

state defamation actions," caselaw "provides protection for statements such as parody, fantasy,

rhetorical hyperbole, and imaginative expressions, that cannot reasonably be interpreted as stating

actual facts about an individual." *Mink v. Knox*, 613 F.3d 995, 1005 (10th Cir. 2010) (cleaned up)

citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, at 20 (1990).[5] For a statement to be actionable

---

[4] That Plaintiff would be "the first one behind bars when we melt down the machines," had sued Lindell, was a "criminal," was "disgusting" and "belong[s] behind bars," "ran into a building drunk the other day or whatever you were," was part of "the biggest crime this world has ever seen," was "evil," and "did crimes against the United States and quite frankly all of humanity," was "treasonous" and a "traitor," and was "some corrupt person who was with Dominion, one of the most corrupt people."

[5] *See also TMJ Implants, Inc. v. Aetna, Inc.,* 498 F.3d 1175, 1184 (10th Cir. 2007); *Dilworth v. Dudley,* 75 F.3d 307, 309-10 (7th Cir. 1996) (actionability of opinion is threshold legal question

as defamatory, it must express or imply a verifiably false fact about the plaintiff. *See Milkovich*, 497 U.S. at 19-20 (1990); *Burns v. McGraw Hill Broad. Co., Inc.,* 659 P.2d 1351, 1360 (Colo. 1983). Statements of opinion can only be actionable if they imply provably false facts or rely upon stated facts that are provably false. *See Milkovich*, 497 U.S. at 20. In deciding whether a statement expressed or implied a false statement of fact, courts consider the entire statement, the context in which it was made, and whether a reasonable person would conclude that the statements at issue expressed or implied a false fact. *See Burns*, 659 P.2d at 1360.[6] The statements by Lindell alleged in the Amended Complaint all fall into the category of opinion. "Disgusting" and "traitor" are nonactionable opinion and rhetoric in the context of a contested political matter. Plaintiff has not and cannot plead that these statements were made with actual malice.

### B. Plaintiff Does Not Plead Any Basis To Hold MyPillow or Frankspeech Responsible For Statements Alleged in the Amended Complaint.

Even if this Court were to find that Plaintiff's Amended Complaint meets the heightened pleading standard for Lindell, agency law does not impute liability to MyPillow for Lindell's statements. Under Colorado and Minnesota law, the party asserting the existence of an agency, or other special relationship, has the burden of proving it. *See Tara Woods Ltd. P'ship v. Fannie Mae,* 731 F. Supp. 2d 1103, 1117 (D. Colo. 2010), *aff'd* 566 Fed. Appx. 681 (10th Cir. 2014). A corporation cannot be held liable for executives' allegedly defamatory statements unless the

---

for court); *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) (same). "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20.

[6] *See Henderson v. Times Mirror Co.,* 669 F. Supp. 356, 357 (D. Colo. 1987), aff'd 876 F.2d 108 (10th Cir. 1989) (Defendant calling plaintiff as a "sleazebag" who kind of "slimed up from the bayou" was an opinion "and a claim for defamation cannot be predicated on a mere expression of opinion"); *see also Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 285 (1974) (use of the word "traitor" as applied to an employee who crossed a picket line, was "exaggerated rhetoric . . . commonplace in labor disputes.").

executives were acting within the scope of their employment. *Moroni Feed Co. v. Mut. Serv. Cas. Ins. Co.,* 287 F.3d 1290, 1292 (10th Cir. 2002).

Minnesota law, the place of incorporation for My Pillow, is similar. A principal is liable for the act of its agent only if the act giving rise to alleged liability was committed within the scope of the agency and was not for a purpose personal to the agent. *Semrad v. Edina Realty*, 493 N.W.2d 528, 535 (Minn. 1992). No plausible fact is alleged in Plaintiff's Amended Complaint to support a finding that Lindell's statements were within the scope of his role as President and CEO of MyPillow. No plausible factual allegation in Plaintiff's Amended Complaint supports a conclusion that political activities are among Lindell's enumerated duties in that role. Nor does the Amended Complaint allege any fact to warrant a finding that Lindell is authorized by the corporation to engage in political commentary on its behalf. Without any allegations to support an agency relationship between My Pillow and the entities or individuals who made the allegedly defamatory statement, My Pillow's advertising at the Cyber Symposium does not make it liable for any allegedly defamatory statements made at the Cyber Symposium.

Plaintiff's defamation claim against Frankspeech is similarly unavailing. Plaintiff alleges that on May 3, 2021, Frankspeech anchor Brannon Howse conducted an interview with Oltmann titled "Joe Oltmann Exposes Eric Coomer of Dominion Voting Systems." Am. Compl. ¶ 53. The interview consists of Oltmann relaying the story of participating in the "Antifa conference call" and overhearing someone identified as "Eric […] the Dominion guy" saying "don't worry about the election, Trump's not going to win. I made f-ing sure of it." *Id*. ¶¶ 52, 55.

However, importantly, in the interview Oltmann disclosed to the audience that his sole knowledge on how he connected "Eric" to Plaintiff Eric Coomer was as the result of a Google search "Eric," "Dominion," and "Denver Colorado." *Id*. ¶ 56. Oltmann also disclosed to

the audience that Coomer, the subject of his statements, has sued him in Colorado for claims for defamation arising from this story. *Id,* ¶ 58.

Oltmann's relaying the story of the "Antifa conference call" <u>alone</u> is not defamatory to Plaintiff. The only alleged defamatory component is Oltmann's connection of "Eric the Dominion guy" to Plaintiff. However, because Oltmann disclosed to his audience the source of his conclusion to connect the Antifa call member to Plaintiff (a simple Google search), this permits the listener to form his or her own opinion about whether the facts presented plausibly connect Plaintiff to the call, and the statement is not actionable. *See Piccone v. Bartels*, 785 F.3d 766, 772-73 (1st Cir. 2015) (finding defamation claim properly defeated where speaker disclosed facts underlying his opinion that the plaintiff was "unprofessional"). [7] Frankspeech cannot be held liable for the May 3, 2021 interview, because the underlying statements were not defamatory.

### C. The Intentional Infliction of Emotional Distress Claim Fails to Plausibly Allege Actual Malice or Outrageousness.

A claim alleging intentional infliction of emotional distress (IIED) that is based on publication of statements is subject to the actual malice standard of the First Amendment. *Lewis,* 832 P.2d at 1124-25. Further, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Han Ye Lee v. Colorado Times, Inc.,* 222 P.3d 957, 963 (Colo. App. 2009). "Generally, liability for outrageous conduct exists when the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

---

[7] *See also McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) ("[W]hen the speaker 'outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."). "Even a provably false statement is not actionable if 'it is plain that the speaker is expressing a subjective view ... rather than claiming to be in possession of objectively verifiable facts." *Id*.

*Id*. As shown above, the allegations in the Amended Complaint fail to plausibly plead actual malice. Furthermore, the tenuous connections of the defamatory statements to Defendants also defeats Plaintiffs' IIED claim. Hosting or sponsoring an event where another person makes allegedly defamatory statements falls far short for the IIED "outrageous" standard. It is not outrageous to host an interview of an individual to discuss a hotly debated political issue, who claims to have firsthand knowledge of an impropriety, and who explains the factual basis for his statements. Defendants respectfully request the Court dismiss Plaintiff's claim for intentional infliction of emotional distress against all Defendants for failure to meet both the actual malice and outrageousness requirements.

### D. The Remaining Claims Fails Because They Depend Upon the Defamation and IIED Claims.

To establish a claim of civil conspiracy, Plaintiff must show "(1) two or more persons, …; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo.App. 2006). Conspiracy is a derivative claim and hinges on the viability of the defamation and IIED claims. *Colo. Cnty. Bank v. Hoffman*, 338 P.3d 390, 397 (Colo. 2013). As those claims fail, so too must the conspiracy claim. The same is true of Plaintiff's claims seeking injunctive relief and retraction.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

13

<u>**STATEMENT REGARDING PRACTICE STANDARDS:**</u>

Pursuant to Section III.D of the Practice Standards for Civil and Criminal Matters Before William J. Martinez, United States District Judge, U.S. District Court for the District of Colorado, the undersigned affirms that Defendants' counsel conferred with Plaintiff's counsel via teleconference on July 8, 2022. The parties discussed the deficiencies stated in this Motion, and were unable to reach agreement on withdrawing or further amending the operative Complaint.

DATED:  July 21, 2022                     **PARKER DANIELS KIBORT LLC**

By: *<u>/s/ Andrew D. Parker</u>*
Andrew D. Parker (MN Bar #195042)
Jesse H. Kibort (MN Bar #328595)
Abraham S. Kaplan (MN Bar #399507)
Ryan P. Malone (MN Bar #395795)
123 N. Third Street, Suite 888
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
kibort@parkerdk.com
kaplan@parkerdk.com
malone@parkerdk.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of July, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*<u>/s/ Andrew D. Parker</u>*
Andrew D. Parker