**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-SKC

ERIC COOMER, PH.D.,

    Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH
LLC, AND MY PILLOW, INC.,

    Defendants.

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS**

---

Defendants' motions to dismiss the Amended Complaint arises out of the Constitution's protection of free speech particularly in cases concerning matters of public concern. Plaintiff's Opposition to the motion relies heavily on the argument that Plaintiff's claims are not subject to the actual malice standard, and that the Complaint should be allowed under the liberal pleading standard pursuant to FRCP 12(b)(6). Both arguments fail. The procedural pleading rule must be construed consistent with the constitutional rule and the heightened pleading requirements for defamation claims. The First Amendment, as articulated in *New York Times v. Sullivan*, demands that speech concerning matters of public concern not be chilled, punished, or burdened by government action in the form of a defamation lawsuit, unless the defendant acted with "actual malice." 376 U.S. 254 (1964). There can be no issue of greater public concern then the proprietary of this Country's elections.

Plaintiff broadly alleges Defendants defamed him – but he doesn't identify discrete, specific defamatory statements that are attributable to Defendants. Plaintiff's First Amended Complaint (FAC or Complaint) is full of conclusory allegations that attempt to lump all Defendants together for every complained of action. When closely examined, any specific statements attributed to Defendants are statements of opinion and not defamatory. More than this, and as more fully described below, all of Defendants' statements are absolutely protected by the First Amendment because, as a public issue and a public figure, Plaintiff has not pled a defamation claim for actual malice.

### A. The Constitutional "Actual Malice Standard" Applies to Plaintiff's Claims.

#### 1. The Statements Disputed in the Amended Complaint Relate to a Public Issue.

Plaintiff's lawsuit centers around a public issue and public concern, therefore the Supreme Court's actual malice standard must apply to Plaintiff's defamation claim.

> When a defamatory statement has been published concerning one who is not a public official or a public figure, but the matter involved is of public or general concern, the publisher of the statement will be liable to the person defamed if, and only if, he knew the statement to be false or made the statement with reckless disregard for whether it was true or not.

*Diversified Mgmt. v. Denver Post,* 653 P.2d 1103, 1106 (Colo. 1982) (adopting the legal standard from *Rosenbloom v. Metromedia*, 403 U.S. 29, 30 (1971)). Plaintiff's claims clearly arise from Defendants' furtherance of their right of free speech in connection with a public issue. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1109 (10th Cir.2017) (recognizing that under Colorado law, a matter is of public concern whenever it embraces an issue about which information is needed or is appropriate, "or when the public may reasonably be expected to have a legitimate interest in what is being published") (citing *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1035 (10th Cir. 2013) (quoting *Williams v. Cont'l Airlines, Inc.,* 943 P.2d 10, 17 (Colo. App. 1996)). Plaintiffs entire FAC is focused on the issues surrounding the 2020 presidential election. Plaintiff admits that Dominion Voting Systems, with Plaintiff occupying a significant position of power at Dominion, played a primary stewarding role

in the election. FAC ¶ 16. Every single defamatory allegation in the FAC involves Plaintiff's position at Dominion and the 2020 election.

Plaintiff argues that Dr. Coomer was a private individual, privately employed, and privately conducting his work. (Opp. at pg. 5). This is immaterial when analyzing the actual malice standard for a matter of public concern. "If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not 'voluntarily' choose to become involved. The public's primary interest is in the event". *Rosenbloom v. Metromedia*, 403 U.S. 29, 43 (1971). "A matter is of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *McIntyre v. Jones*, 194 P.3d 519, 525 (Colo. Ct. App. 2008).[1] Plaintiff's alleged role as a private citizen is irrelevant.

Plaintiff cites to *McIntyre v. Jones*, 194 P.3d 519 (Colo. Ct. App. 2008) as a comparable case of a "private employment" not being a public concern (Opp. 6). The case in *McIntyre v. Jones,* involved a private bookkeeper who kept the records for a homeowner association, who the board of the HOA then allegedly defamed regarding her accounting practices. *Id.*, at 520. The sole argument advanced by the respondent HOA to apply the actual malice standard (due it being a public concern) was that governance of homeowners

---

[1] *See Lewis v. McGraw-Hill Broadcasting Co.,* 832 P.2d at 1121 (statements concerning plaintiffs' $15 million lawsuit against department store and their allegations of racially discriminatory policies by store are of public concern); *see also Diversified Management, Inc. v. Denver Post, Inc.,* supra (statements concerning widespread and ongoing land-development schemes of questionable propriety involved matters of public concern); *Smiley's Too, Inc. v. Denver Post Corp.*, supra (statements concerning numerous consumer complaints against, and District Attorney's Consumer Fraud Division's investigation into, dry cleaning establishment involved matters of public concern).

associations involve other members of a community, thus a matter of public interest. *See McIntyre*, 194 P.3d at 526 (Colo. Ct. App. 2008). This is a far cry from this lawsuit's facts. In this case, Plaintiff occupied a senior position at Dominion Voting Systems, a company that provided the majority of individual states in the United State with election support service; including initial project implementation through election set-up, ballot layout, machine set-up, and system testing. FAC ⁋ 16. There is no company with a greater nexus to the 2020 election than Dominion, with Plaintiff occupying a senior role at the company. This nexus existed well before any of the alleged defamatory statements. Indeed, as will be explained below, Plaintiff not only worked for Dominion behind the scenes, but put himself out as the face of Dominion in a major lawsuit that contested safety and accuracy of Dominion's voting machines. This lawsuit deals with a quintessential public issue and the actual malice standard must apply.

### 2. Plaintiff is a Limited Public Figure.

Plaintiff's status as a "public figure" provides a separate and independent reason for the requirement that he must prove "actual malice" in order to prevail on his Defamation claim. The concept of a limited purpose public figure has been clarified in several Colorado cases. *See Diversified Management, Inc. v. Denver Post, Inc.,* 653 P.2d 1103 (Colo.1982); *DiLeo v. Koltnow*, 200 Colo. 119, 613 P.2d 318 (1980). These cases apply the United States Supreme Court's definition of limited purpose public figure set out in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, (1974). The court in *Gertz* identified a limited purpose public figure as one who "voluntarily injects [herself] or is drawn into a particular controversy

5

and thereby becomes a public figure for a limited range of issues" such that the person has achieved "special prominence in the resolution of public questions." *Id.,* at 345. Limited purpose public figure status focuses on two questions: the threshold question of whether the defamatory statement involves a matter of public concern and, more importantly, whether the level of plaintiff's participation in the controversy invites scrutiny. *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157 (1979); *Gertz v. Robert Welch, Inc.,* supra.

Applying these criteria to instant case, Plaintiff is clearly a limited purpose public figure. Fort the first prong, the defamatory statements at issue here concern voter fraud and Government corruption, a clear matter of public concern. For the second prong, Plaintiff was chosen and appeared as the State of Georgia's witness in his capacity as Dominion's Director of Product Strategy and Security on vote fidelity and voting system evidence, topics relating to the 2020 election. *See Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1277 (N.D. Ga. 2020). To such an extent, beyond Dr. Coomer, the State of Georgia did not present any further cybersecurity expert to address the cybersecurity issues and risk vulnerabilities of Dominions' code voting system raised in the *Curling v. Raffensperger* lawsuit. *Id.,* at 1278. Instead, the State of Georgia relied on Dr. Coomer's testimony, to address - based on his professional experience some of the significant cybersecurity issues raised by the plaintiffs in the *Curling* lawsuit. *Id*. These facts directly contradict Plaintiff's assertion that Dr. Coomer has done nothing to inject himself into the conversation and debate surrounding the 2020 election. (See Opp. Pg. 8). Not only did Dr. Coomer inject himself into the defense for the validity of the 2020 election, Dr. Coomer served as

Dominion's main spokesperson to defend the voting machine systems. Under the standard set forth in *Lewis v. McGraw-Hill Broad. Co.,* 832 P.2d 1118 (Colo. Ct. App. 1992), Plaintiff's actions to inject himself into the 2020 election controversy exceeds the standard of a limited purpose public figure. The actual malice standard must apply.

### B. Plaintiff Does Not Plausibly Allege Defendants Made Statements with Actual Malice.

Defendants point the Court to their Memorandum in Support of the Motion to Dismiss (ECF #38) pages 1 through 4, where the entirety of FAC's allegations against Defendants are set forth. Plaintiff's FAC and Opposition Memorandum is replete with allegations against third parties, not Defendants. Plaintiff's allegations against Defendants are mostly made up of conclusory allegations of guilt by association and contain few specific defamatory allegations, as required under the FRCP, Rule 8(a). Taking away the chafe and matters of protected opinion, the only substantive allegation against Defendant Lindell and Defendant My Pillow relate to allegations that Defendants allegedly "hosted, created, ran, and produced a Cyber Symposium in South Dakota". FAC at ¶ 70. Even taking this as true, the only alleged defamatory statements at the Symposium happened in the following exchange:

> **Clements**: "Ok, and were you not also on a phone call with Eric Coomer, or some recording where he made a particularly controversial statement about our then president?"
> **Oltmann**: "Yeah, so, uh, yes."
> **Clements**: "And what was that statement?"
> **Oltmann**: "He said that, uh,-"

7

> **Waldron**: "He's in full on lawyer mode."
>
> **Oltmann**: "Yeah he is in lawyer mode, I'm like yes sir! 'Don't worry about the election. Trump's not going to win. I made f-ing sure of it.' I'm a Christian so I'm not going to use that word up here."

FAC at ⁋ 82. Plaintiff does not allege that any of the Defendants were present or involved in this exchange. This alleged defamation does not impose liability on Defendants. Further, Oltmann has disclosed to the audience that his sole knowledge on how he connected "Eric" to Plaintiff Eric Coomer, was as the result of a google search "Eric, Dominion, and Denver, Colorado" (Compl. ¶ 56). Oltmann also disclosed to the audience that Eric Coomer, the subject of his statements, has sued him in Colorado for claims for defamation arising from this story. (FAC ¶¶ 58, 106). Even if Defendants were responsible for Oltmann being on stage (which they were not), they fail to allege a claim for actual malice against Defendants. "Even a provably false statement is not actionable if 'it is plain that the speaker is expressing a subjective view ... rather than claiming to be in possession of objectively verifiable facts.' " *McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017). Oltmann disclosed the basis for his belief that Plaintiff was the speaker on the Antifa call, therefore, no liability can arise from this statement. Accordingly, the Court should dismiss the Complaint in its entirety.

### C. The Amended Complaint Attacks Statements of Opinion by Lindell, Which Do Not Support a Claim of Defamation.

In this case, the actual statements made by the Defendant Lindell relating to Plaintiff are all statements of opinion. The statements alleged in the FAC that Plaintiff is

8

"disgusting", "a traitor", or "is evil" are nonactionable opinion and rhetoric in the context of a contested political matter. Plaintiff has not and cannot plead that these statements were made with actual malice.

Actionability of opinion is threshold legal question for the Court. *TMJ Implants, Inc. v. Aetna, Inc.,* 498 F.3d 1175, 1184 (10th Cir. 2007). Plaintiff cites to *Burns v. McGraw-Hill Broadcasting Co., Inc.,* 659 P.2d 1351, 1359 (Colo. 1983) and argues that Defendants' statements of opinion are actionable since the statements imply a verifiable false fact. (Opp. Page 13). Plaintiff also argues that Defendants did not disclose all the various details relating to the Oltmann's Antifa call, therefore, the statements of opinion are not protected. Plaintiff miscites the ruling from *Burns v. McGraw-Hill Broadcasting Co., Inc.* The first step to evaluate a statement of opinion is whether "the average reader or listener or viewer perceives the comment as essentially an assertion of fact, in light of the relative specificity of the language used and the relative insufficiency of the connection of such language to supporting fact." *Burns v. McGraw-Hill Broad. Co.,* 659 P.2d 1351, 1360 (Colo. 1983). The specificity of an accusation that an individual is a "fascist" is different than a claim he committed "libel". *Id*., 1359. A statement that someone is evil, disgusting, corrupt, that their family is criminal, or will be behind bars, are sharp and unpleasant but are too general for anyone to assume any fact is implied. For a statement to be actionable as defamatory, it must express or imply a specific verifiably false fact about the plaintiff. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19-20 (1990). The allegations in the FAC are broad characterizations the sort of loose, figurative, or hyperbolic language which

9

negate any impression of a specific act. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.,* 175 F.3d 848, 853 (10th Cir. 1999).

In *Biospherics, Inc. v. Forbes, Inc.,* 151 F.3d 180, 184-85 (4th Cir. 1998), the Fourth Circuit concluding that a writer's statement that optimistic projections about a company's stock were based on "hype and hope" represented the kind of indefinite language that indicated that the writer was not stating specific facts. Similarly, in *Keohane v. Stewart*, 882 P.2d 1293, 1300-01 (Colo. 1994) (en banc), the Colorado Supreme Court concluded that letters to the editor accusing a trial judge of conspiring to "let off" the defendant could not be reasonably interpreted by a listener as stating actual facts because the remaining parts of the letter was replete with speculative and hyperbolic language and the context indicated that the writer was stating his opinion. See *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.,* 175 F.3d 848, 853 (10th Cir. 1999). This lawsuit must be dismissed under a similar analysis.

### D. Plaintiff Does Not Plead Any Basis To Hold MyPillow or Frankspeech Responsible For the Alleged Defamatory Statements.

With various legal theories (respondent superior, actual authority, and apparent authority), Plaintiff attempts to impute the statements made by Mike Lindell in his personal capacity to My Pillow and Frank Speech. (Opp. 16-18) None succeed.

First, Plaintiff claims Defendants are liable for Lindell's alleged statements under the doctrine of respondeat superior. Plaintiff misstates the law. "Under the doctrine of respondeat superior, a master is liable for the unauthorized torts of his servant if committed while the servant is acting within the scope of his employment." *Grease Monkey Int'l v.*

10

*Montoya*, 904 P.2d 468, 473 (Colo. 1995) (internal quotations omitted). The only correct application of respondeat superior is when there is a master servant relationship. *Id*. A servant relationship is defined as the right of the employer to control the physical activity of the employee. *Id*. In the context of a company and its officer, a corporation does not possess the right to control the physical movements or activities of their Chief Operating Officer. *Id.*, at 474. A COO is only expected to perform certain tasks. *Id*. In this case Mike Lindell is an officer of both MyPillow and Frank Speech, identical to the COO in *Grease Monkey Int'l v. Montoya* case. Liability to Defendants through respondeat superior cannot apply.

Defendants are also not liable under the doctrines of actual or apparent authority. "An agent acts with actual authority when at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *State Farm Mut. Auto. Ins. Co. v. Johnson,* 396 P.3d 651, 656 (Colo. 2017). In this case, Plaintiff's Amended Complaint does not support a finding that Defendants MyPillow or FrankSpeech manifested any intent that Lindell should make any statements related to Dr. Coomer. A company's advertisement at event as broad as the Cyber Symposium, cannot be imputed to give authority to endorse or condone any statement about a specific individual. The complaint includes conclusory statements that Lindell acted as MyPillow's agent, but rote repetition of the elements of a claim does not satisfy the requirement that a plaintiff allege plausible facts to state the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

11

(2009). Even assuming the alleged facts cited by Plaintiff (Opp. at 18) to be true, they would not make Defendants legally responsible for Lindell's personal opinions. These allegations tend to show, unsurprisingly, that the CEO of MyPillow is associated with MyPillow. Marketing campaigns use repeated motifs or characters to establish familiarity and recognition by the public, leading to identification of these personalities with particular companies. This technique does not, however, convert all public statements made by such personalities on any subject into statements attributable to the companies with which the personalities are identified. Making statements against Dr. Coomer is not within the scope of Lindell's employment as the CEO of a pillow company, and MyPillow does not "control" or "direct" Lindell's First Amendment speech.

Nor does apparent authority impose liability. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations". Restat 3d of Agency, § 2.03; *State Farm Mut. Auto. Ins. Co. v. Johnson*, 396 P.3d 651, 656 (Colo. 2017).[2] Apparent authority presupposes the lack of actual authority. Plaintiff makes no plausible allegations why any third-party would reasonably believe Lindell had authority from MyPillow to make these statements relating to Dr. Coomer. By imputing responsibility for Lindell's statements to Defendants a court would effectively compel employers to monitor and discipline their

---

[2] A principal, who either intentionally or negligently causes a third party to act on an agent's apparent authority, will be estopped to deny that authority if the third party has detrimentally relied on the principal's representation to such an extent that it would be unjust to deny that authority. *Kuehn v. Kuehn*, 642 P.2d 524, 526 (Colo. Ct. App. 1981).

employees' expressions of personal opinions to avoid potential liability and legal costs. The specter of defamation liability would demand economic dissociation from any employee who contradicts prevailing conventional wisdom. This would subvert the ethos of the First Amendment and American ideals of expressive individualism and personal autonomy. It would compel uniformity, where individuals of different political views could not share a workplace unless one group muzzled itself. The chilling impact on free speech would be unprecedented.

## CONCLUSION

For the foregoing reasons, the Complaint against the Defendants in this case should be dismissed in its entirety.

DATED:  August 25, 2022

**THE REISCH LAW FIRM, LLC**

*s/ Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
1490 W. 121st Avenue, Suite 202
Denver, CO 80234
Scott@reischlawfirm.com
Jessica@reischlawfirm.com


**PARKER DANIELS KIBORT LLC**

By: */s/ Andrew D. Parker*
Andrew D. Parker (MN Bar #195042)
Jesse H. Kibort (MN Bar #328595)
Abraham S. Kaplan (MN Bar #399507)
123 N. Third Street, Suite 888
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com

kibort@parkerdk.com
kaplan@parkerdk.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

CAIN & SKARNULIS, PLLC

Charles J. Cain
Bradley A. Kloewer, #50565
P.O. Box 1064
Salida, CO 81201
ccain@cstrial.com

Bradley A. Kloewer
101 North F Street
Suite 207
Salida, CO 81201
bkloewer@cstrial.com


**Attorneys for Plaintiff**

*s/ Andrew D. Parker*
Andrew D. Parker

14