**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-WJM

ERIC COOMER, Ph.D.,
      Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
      Defendants

---

**PLAINTIFF'S *UNOPPOSED* MOTION FOR SUBSTITUTED SERVICE OF
SUBPOENA DUCES TECUM DIRECTED AT JOSEPH OLTMANN**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

      Plaintiff Eric Coomer, Ph.D., through counsel, files this *Unopposed*[1] Motion for Substituted Service of Subpoena Duces Tecum Directed at Joseph Oltmann, stating in support thereof as follows:

**CERTIFICATE OF CONFERRAL**

      Undersigned counsel contacted counsel for Defendants on September 15, 2022, wherein he described Plaintiff's efforts to serve Joseph Oltmann (Mr. Oltmann) with a subpoena and his corresponding efforts to secure cooperation from Mr. Oltmann's counsel. Plaintiff indicated that he intended to file this Motion the following day. On September 16, counsel for Defendants responded, stating "I will review and get back to you." On September 20, counsel for Defendants responded, stating he would need more time to review the motion to provide a position. Undersigned counsel responded with a

---

[1] As stated in the certificate of conferral, Plaintiff represents that this Motion is unopposed because Defendants refuse to take a position in opposition or provide Plaintiff for any basis for opposition.

more detailed email describing Plaintiff's efforts and the basis for the motion and informed Defendants' counsel that Mr. Oltmann had been livecasting his podcast from inside Lindell's personal office in Minnesota for at least the last several days.   On September 21, counsel indicated that Defendants "will not be taking a position on the substance of the motion."  Undersigned counsel replied that he would indicate the motion was unopposed unless informed otherwise, but would note Defendants take no position. Defendants consented to this characterization.

### MOTION

1.     On August 29, 2022, Plaintiff issued various Notices of Deposition to third-party witnesses, along with Deposition Subpoenas Duces Tecum.  One such notice was issued to Mr. Oltmann.  **Exhibit 1**.  As an originator of the false claims at issue in this dispute, Mr. Oltmann is an essential witness.

2.     Shortly after serving the notices, undersigned counsel contacted Mr. Oltmann's counsel of record, Andrea Hall, in related proceeding *Coomer v. Donald J. Trump for President, Inc., et. al*., Denver Dist. Ct. Case No. 2020CV034319, to inquire if she would waive service of the Deposition Subpoena Duces Tecum on her client Mr. Oltmann.   **Exhibit 2**, at p. 3-4.   There is no dispute that Ms. Hall remains Mr. Oltmann's counsel of record in that ongoing proceeding or that she is in frequent contact with him.

3.     On August 30, 2022, Ms. Hall replied that she was not authorized to accept service on behalf of her client.  Undersigned counsel requested that Ms. Hall provide an address where Mr. Oltmann could be served.  She did not respond.  *Id*.

4.     On September 2, 2022, Plaintiff's process server, Ron Humphries, attempted to serve Mr. Oltmann at the offices of PIN Business Networks located at

6200 Syracuse Way, Suite 125, where Mr. Oltmann regularly records his podcast twice a day. **Exhibit 3**. Upon entering Mr. Oltmann's place of business, Mr. Humphries informed the receptionist that he had paperwork that Mr. Oltmann needed to sign for. *Id*. An employee informed Mr. Humphries that Mr. Oltmann was finishing up his podcast and invited him to wait in a conference room. *Id*. Approximately fifteen minutes later, another employee entered the conference room and informed Mr. Humphries that Mr. Oltmann was no longer present, and that Mr. Humphries would need to leave the premises. *Id*.

5.     As noted in Plaintiff's First Amended Complaint, Mr. Oltmann has a long and well-documented history of threatening violence against his adversaries,[2] has stated on numerous occasions that he is constantly armed,[3] and that he hopes someone will come to his house so that he can attack and kill them.[4]   In light of these repeated statements, Plaintiff requested the Douglas County Sherriff's Department to attempt service of process at Mr. Oltmann's residence.

---

[2] *See* Plaintiff's First Amended Complaint, at ¶¶ 34-38.

[3] *See* Joe Oltmann, *Q and A with Clay Clark: Tough Questions and Hard Answers*, CONSERVATIVE DAILY PODCAST, Jan. 26, 2022, https://conservative-daily.com/cd-livestream/q-and-a-with-clay-clark-tough-questions-and-hard-answers at 48:10 (Oltmann: "Does anyone think I care about being the first one to go down?  I could promise you this.  If I go down, I'm going to take someone down with me.  I am heavily armed every day of the week, am I not Mr. Producer?  I think I am.")

[4] *See* Joe Oltmann, *Shameful Dems Attacking Election Witnesses*, CONSERVATIVE DAILY PODCAST, Dec. 3, 2020, https://www.youtube.com/watch?v=5mIW4vmojEM at 41:37: (Oltmann: "I'm going to tell you the truth.  I wish somebody would come to my house." Max McGuire: "No, don't say that." JO: "I do." MM: "You can't say that.  You can't say that because, don't say that because, God forbid something happens, a prosecutor could use that against you and say that you were looking forward to it.  It's the same reason that in most states you're not supposed to put a sign on your door that says we don't call 911, we have a gun." JO: "I didn't say that.  I said I hope somebody does.  Because at some point, if somebody wants to come at me, right, because I'm telling the truth, it would literally at least just show you what they are.  And it'll allow me to do, it'll allow me – it's pent up.  It's pent up." MM: "Don't say it.  Just don't say it." *See also* Joe Oltmann, *Daily Beast-Accessory to Murder*, CONSERVATIVE DAILY PODCAST, Apr. 21, 2022, https://conservative-daily.com/cd-livestream/daily-beast-accessory-to-murder at 1:10:00: (Oltmann: "I'm not afraid to punch a communist in the face.  I'm not afraid to, if somebody comes to my house, to let them go back out in a large bag.  I'm not afraid of that at all.  I'm super comfortable with giving people the consequence that they deserve that equals what they do to me, my family, and the people around me.")

6.     On September 13, 2022, Defendant Lindell was reportedly surrounded by FBI agents at a Hardee's drive-thru in Mankato, Minnesota, where he had his cell phone seized as part of an apparent federal criminal investigation into former Mesa County Clerk Tina Peters.[5]   Following the seizure of Lindell's phone, Mr. Oltmann stated on his Telegram page that "The FBI raided Mike.   My lawyers called me stating they are concerned the FBI will target me next."   **Exhibit 4**.   Mr. Oltmann went on to state that "I'm headed to meet up with Mike.   Pray for Mike, pray for our nation.   Support MyPillow and MyCoffee.   You can use code CD21 or any other.   But please support him." *Id*.   That same afternoon, Mr. Oltmann confirmed on his podcast that he had communicated with his lawyers about their concern that he would soon be raided by the FBI, and that he had left the state to go be with Defendant Lindell.[6]

7.     On September 14, 2022, a Douglas County Sheriff Deputy attempted to serve Mr. Oltmann at his residence but was unsuccessful.[7]   **Exhibit 5**.

---

[5] *See* Graham Kates, *MyPillow CEO Mike Lindell's phone seized by FBI at Hardee's he says*, CBS NEWS, Sep. 14, 2022, https://www.cbsnews.com/news/mike-lindell-phone-seized-by-fbi-mypillow/

[6] See Joe Oltmann, *Live with Cannon: Body Cam Footage Reveals Tarrant County Ballot Harvesting 2000 Mules Style; FBI Seizes Mike Lindell's Phone*, CONSERVATIVE DAILY PODCAST, Sep. 14, 2022, at 47:40, https://conservative-daily.com/cd-livestream/live-with-canncon-body-cam-footage-reveals-tarrant-county-ballot-harvesting-2000-mules-style-fbi-seizes-mike-lindells-phone (Oltmann: "So let me tell you what happened yesterday.   I was on an airplane coming up here and my lawyer called me.   She said Joe, you heard about the thing that happened with Mike?   And I go, yeah, I did.   And she says well we're concerned that you're next.   And I was like, okay.   I have several attorneys, and they do care about me, so they just said, hey listen, this apparatus is going to, they're going to lie, cheat, and steal.   And I was like well, then they're going to lie cheat and steal anyway.   But I'm not going to be quiet.   I'm not going to settle down.   And frankly, I'm going up to see Mike.   They say, where you going?   I said I'm going up to see Mike.   I'm headed up there.   They were like Joe, you have to be careful.   Protect your phone.   They're going through all these things I'm supposed to do, and I said I'm not going to do any of that.")

[7] Plaintiff's counsel has also retained the Arapahoe County Police Department to attempt service at Oltmann's place of business.   At this time, Plaintiff understands that an Arapahoe County sheriff deputy has made at least one failed attempt at service at that location, but Plaintiff has not yet been provided with documentation of these efforts.   Plaintiff will supplement this pleading with corresponding statements from the Arapahoe County Police Department upon receipt.

8.     Also on September 14, 2022, undersigned counsel again reached out to Ms. Hall to request that her client waive service of the subpoena.  Undersigned counsel explained that he had attempted to serve Mr. Oltmann, that he intended to file this Motion if Mr. Oltmann would not waive service, and that Mr. Oltmann had publicly stated that morning that he expected to be raided by the FBI and was leaving the state to be with Defendant Lindell.  **Exhibit 2**.  Ms. Hall responded to that email on September 16.  She again refused to waive service, and again provided no cause whatsoever for that refusal.

9.     On September 15, 2022, the Douglas County Sheriff Deputy made another attempt to serve Mr. Oltmann at his residence, again to no avail.  **Exhibit 5**.  The deputy then made a third failed attempt on September 20, 2022.  *Id.*

10.     Mr. Oltmann has a long and well- documented history of refusing to comply with court orders, and both he and Ms. Hall have been repeatedly sanctioned in *Coomer v. Donald J. Trump for President, Inc. et. al.*  For example, Mr. Oltmann has refused to provide court ordered testimony pertaining to the supposed "Antifa conference call" story that gave rise, in part, to this dispute.[8]  Similarly, Mr. Oltmann did not appear for a court ordered deposition, falsely claiming that he feared catching Covid-19.[9]  In reality, Mr. Oltmann had skipped his deposition in order to appear at Lindell's "Cyber Symposium" in South Dakota, as discussed at length in Plaintiff's First Amended

---

[8] See *Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319, Order Regarding Plaintiff's Motion for Sanctions Pursuant to CRCP 37 and CRCP 107 and Request for Order to Show Cause, Aug. 29, 2021; Order Regarding Plaintiff's Second Motion for Sanctions Against the Oltmann Defendants Pursuant to C.R.C.P. 37, Oct. 12, 2021; Sanctions Order Against Oltmann and Counsel, Mar. 22, 2022.

[9] *Id.*; *see also Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319, Defendant Joseph Oltmann's Motion for Relief from the July 7, 2021 Order Requiring Joseph Oltmann to Appear at the Courthouse for His Deposition on August 11, 2021, Aug. 9, 2021 (stating that "Mr. Oltmann's physician has provided his medical opinion that, due to Mr. Oltmann's immune status, a personal appearance poses an unwarranted medical risk.")

Complaint.[10]  To date, Mr. Oltmann has paid over thirty thousand dollars in sanctions for his conduct.[11]  State District Judge Marie Moses has made findings that his testimony is "evasive and not credible."[12]

11.     Throughout this timeframe, Mr. Oltmann would have been easily accessible to his counsel, to Defendants, and to Defendants' counsel.  On September 15, for example, Mr. Oltmann was broadcasting his daily podcast from inside Lindell's home office in Minnesota.[13]



---

[10] *See* Plaintiff's First Amended Complaint, at ¶¶ 70-89.

[11] See *Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319, Sanctions Order Against Oltmann and Counsel, Mar. 22, 2022 (ordering $32,988.24 in sanctions).  Another sanctions order from the Colorado Court of Appeals arising from Oltmann's counsel's attempt to appeal the second sanctions order issued against him remains pending, and has not yet been reduced to a specific dollar amount.  *See Coomer v. Oltmann et. al.*, 2021CA1481, Order of the Court, Feb. 22, 2022 (granting appellee's request for reasonable attorney fees and costs).

[12] See *Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319, Order Regarding All Defendants' Special Motions to Dismiss Pursuant to C.R.S. § 13-20-1101, May 13, 2022, at ¶ 28.

[13] *See* Joe Oltmann, *Live with Mike Lindell! FBI Seizing More Cell Phones, Faith, Biden's Red Terror Accelerates; Politico Exposes Global COVID Partnerships*, CONSERVATIVE DAILY PODCAST, Sep. 15, 2022, https://conservative-daily.com/cd-livestream/live-with-mike-lindell-fbi-seizing-more-cell-phones-faith-bidens-red-terror-accelerates-politico-exposes-global-covid-partnerships

12. As of this writing, Mr. Oltmann's current whereabouts are unknown, but he is believed to be out of state.[14]

13. Given the foregoing, Plaintiff has determined that further attempts to serve Mr. Oltmann will unnecessarily delay progress of this case, will result in undue expense to Plaintiff, will unnecessarily put process servers or sheriff deputies at risk of physical harm, and will ultimately be futile. Substituted service of process on Mr. Oltmann's counsel, however, as well as leave from this Court to leave copies of the subpoena at Mr. Oltmann's last known residence and place of business, would end this needless and deliberate delay and allow discovery to proceed on schedule.

## LEGAL STANDARD

14. The standard for service of subpoenas is controlled by F.R.C.P. 45(b)(1-4), and by F.R.C.P. 4. Rule 4 of the Federal Rules of Civil Procedure provides:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

---

[14] Oltmann's podcast co-host recently suggested that Oltmann was "in the Adirondacks." *See* Joe Oltmann, *Live with Cordie Williams: The Megaphone Marine Discusses COVID Genocide, FBI and DOJ Corruption, Making America Great Again*, CONSERVATIVE DAILY PODCAST, Sep. 20, 2022, at 2:02 https://conservative-daily.com/cd-livestream/live-with-cordie-williams-the-megaphone-marine-discusses-covid-genocide-fbi-and-doj-corruption-making-america-great-again

(C)    delivering a copy of each to an agent authorized
by appointment or by law to receive service of
process.

15.    "The federal rules are silent regarding substituted and alternative service. Where federal rules are silent 'as to a specific procedural requirement,' the deciding court's local rules control." *Penn-Star Insurance Co. v. Business Futures, Inc. et. al.*, Order Granting Motion for Substituted Service, 21-cv-01256-RM-NYW, Colo. Dist. Ct., Sep. 14, 2021 (citing *Two Rivers Water & Farming Co. v. Am. 2030 Cap. Ltd.*, No. 19-cv-01640-CMA-STV, 2019 WL 5535227, at *2 (D. Colo. Oct. 25, 2019) (quoting *Hammond v. City of Junction City*, No. 00-2146-JWL, 2002 WL 169370, at *9 (D. Kan. Jan. 23, 2002)).  It is only when "service of process by personal service cannot be accomplished" that "other means of service may be used." *United States v. Elsberg*, No. 08-cv-00552-MSK-KLM, 2010 WL 5177439, at *3 (D. Colo. Aug. 17, 2010).  "For a substituted method of service to be valid, it must comport with due process by being calculated 'to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.*  (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

16.    Under Colorado law, the default method of service under C.R.C.P. 4 is "personal service," which includes leaving the complaint and summons at the defendant's normal place of abode with a person who is at least 18 years of age and a family member of defendant, or at the defendant's workplace with the defendant's supervisor, secretary, administrative assistant, bookkeeper, human resources representative, or managing agent.  *See* C.R.C.P. 4(e)(1).  Similarly, C.R.C.P. 45 "requires delivering a copy to the named person *or service as otherwise ordered by the court consistent with due process*."

C.R.C.P. 45(2) (emphasis added).   However, the Colorado Rules of Civil Procedure provide alternative methods of service in the event that personal service cannot be effectuated.  *See generally* C.R.C.P. 4(e).  One of these methods is substituted service. C.R.C.P. 4(f).

17.    When personal service cannot be effectuated, and where service by mail or publication is not permitted under C.R.C.P. 4(g), a party may "file a motion, supported by an affidavit of the person attempting service, for an order for substituted service." C.R.C.P. 4(f).  The motion must set forth (1) the efforts made to obtain personal service and the reason why personal service could not be obtained; (2) the identity of the person to whom the party wishes to deliver the process; and (3) the last known address of the workplace and residence, if known, of the party upon whom service is to be effectuated. *Id*.

## ARGUMENT

### A.    *Substituted Service on Mr. Oltmann's Counsel of Record is Appropriate.*

18.    Plaintiff has satisfied all of the requirements to allow for substituted service of the Deposition Subpoena on Mr. Oltmann's counsel, Andrea Hall.  As indicated by multiple declarations provided by both a private process server and local law enforcement, Plaintiff has exercised due diligence through multiple efforts to obtain personal service on Mr. Oltmann, as well as multiple communications to his counsel requesting a waiver.  *See* **Exhibits 1, 3, 5**.  Mr. Oltmann is keenly aware that Plaintiff is attempting to serve him with a subpoena, and Mr. Humphries' declaration indicates that Mr. Oltmann is deliberately eluding service of process.  *See* **Exhibits 1, 3**.  In addition, Mr. Oltmann has a well-documented history of refusing to provide testimony about his

claims, as well as knowingly misleading the court and counsel for Plaintiff in his efforts to avoid being questioned under oath.  Ms. Hall has refused to provide Plaintiff with an address where Mr. Oltmann can be served, and by his own admission, he has left the state. All of these facts suggest that further attempts to serve Mr. Oltmann will be futile, or at a minimum will force Plaintiff to incur undue expense and delay.

19.    Substituted service on Mr. Oltmann's counsel of record would quickly and easily resolve the issue.  Pursuant to C.R.C.P. 4(f), service on Ms. Hall is "appropriate under the circumstances and reasonably calculated to give actual notice to the party upon whom service is to be effected."  There is no dispute that Mr. Oltmann is and remains represented by Andrea Hall in related proceeding *Coomer v. Donald J. Trump for President, et. al.*  Ms. Hall regularly responds to emails from undersigned counsel on behalf of her client, Mr. Oltmann, and The Hall Law Office, LLC, maintains a mailing address at P.O. Box 2251, Loveland, CO 80539.  She can be reached by telephone at 970-419-8234, or by email at andrea@thehalllawoffice.com.   All of this contact information is current and up to date to the best of undersigned counsel's knowledge.

20.    In Colorado, "generally service of process on an attorney of record is improper unless the attorney has been specifically authorized by his client to accept service. *See Colony Ins. Co. v. Bristlecone Montessori Sch*., No. 20-cv-01269 CMA-STV, 2021 WL 50893, at *2 (D. Colo. Jan. 5, 2021) (quoting *State Farm Fire & Cas. Co. v. Webb*, No. 18-cv-02722-WYD-NRN, 2019 WL 1296632, at *2 (D. Colo. Mar. 21, 2019). However, courts in this District have also held that Colorado law allows a plaintiff to serve a defendant's attorney if the attorney is currently representing or has recently represented the defendant. *Two Rivers*, 2019 WL 5535227, at *3 (finding that counsel, who had represented the defendants in "a contemporaneous arbitration proceeding relating to the

same matters at issue in [the] case" had "a professional obligation to provide actual notice to Defendants of this substituted service"); *see also JDK LLC v. Hodge*, No. 15-cv-00494-NYW, 2015 WL 2455504, at *2 (D. Colo. May 22, 2015) (finding that an attorney who had represented the defendants in negotiations related to the lawsuit was an appropriate person to serve under the circumstances, despite the fact that the attorney did not then represent the defendants). Courts similarly have approved substituted service on an attorney where the attorney to be served is then representing the defendant in a different, but related, case. *See Webb*, 2019 WL 1296632, at *3.

21.     Ms. Hall is in regular contact with Mr. Oltmann, and has presumably spoken with him as recently as just days ago to warn him about a potential FBI raid, which is apparently directly tied to the seizure of Defendant Lindell's phone in that same case. Ms. Hall has been apprised of Plaintiff's efforts to serve Mr. Oltmann for weeks now and has an ethical duty to speak to him about this matter. Rule 1.4 of the Colorado Rules of Professional Conduct requires that a lawyer "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;" "reasonably consult with the client about the means by which the client's objectives are to be accomplished;" and "keep the client reasonably informed about the status of the matter." C.R.C.P. 1.4.

22.     For all of these reasons, substituted service of process on Ms. Hall would be reasonably calculated to provide actual notice of the subpoena at issue, and its corresponding obligations, to Mr. Oltmann. Plaintiff proposes serving Ms. Hall both via email and via certified mail at her place of business.

**B.    *Service at Mr. Oltmann's Residence and Place of Business.***

23.    In addition, or in the alternative, Plaintiff moves for substituted service by means of allowing sheriff deputies to leave copies of the subpoena on the door at Mr. Oltmann's residence, his place of business, or both.  As indicated in **Exhibit 3**, Mr. Oltmann conducts business from his office located at 6200 S. Syracuse Way, Suite 125, Greenwood Village, CO 80111.  At this time, Mr. Oltmann is believed to have left the state, and it is unlikely another process server will be allowed to enter the office given Mr. Humphries' prior experience. Mr. Oltmann's employees, however, still conduct business from that office and could convey the subpoena to him.

24.    Similarly, Mr. Oltmann resides 8245 Keith Court, Castle Rock, CO 80108.  Upon information and belief, at least one adult family member currently resides at the same residence.  Leaving a copy of the subpoena on the door of the residence would be appropriate under the circumstances and reasonably calculated to give Mr. Oltmann notice of the subpoena.

**CONCLUSION**

25.    For all of the reasons stated herein, Plaintiff requests the Court grant this Motion for Substituted Service of Subpoena Duces Tecum Directed at Joseph Oltmann, and allow him to serve the subpoena on Mr. Oltmann's counsel of record, Andrea Hall, and/or to leave copies of the subpoena at either Mr. Oltmann's residence, his place of business, or both.

Respectfully submitted,

_____*/s/ Charles J. Cain*_____
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com

Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064/101 N. F Street, Suite 207
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been served on Defendants' counsel via email on this 22nd day of September 2022:

R. Scott Reisch (CO Bar # 26892)
scott@reischlawfirm.com

Jessica L. Hays (CO Bar # 53905)
jessica@reischlawfirm.com

Andrew D. Parker (MN Bar #195042)
parker@parkerdk.com

Abraham S. Kaplan (MN Bar #399507)
kaplan@parkerdk.com

Jesse H. Kibort (MN Bar #328595)
kibort@parkerdk.com

Ryan Malone (MN Bar # 395795)
malone@parkerdk.com

*/s/ Charles J. Cain*
Charles J. Cain