IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:22-cv-01129**

ERIC COOMER, PhD.,

    Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH LLC, and
MY PILLOW, INC.,

    Defendants.

---

### CD SOLUTIONS, INC.'S MOTION FOR PROTECTIVE ORDER

---

COMES NOW, Interested Party, CD Solutions, Inc. ("CDS"), a foreign corporation, through its counsel, Coombe Curry Rich & Jarvis, and hereby respectfully submits its Motion for Protective Order and in support thereof, states as follows:

### L.Civ.R .7.1 CERTIFICATION OF CONFERRAL

The undersigned hereby certifies that counsel for CDS conferred with counsel for Plaintiff regarding this Motion on Thursday, November 10, 2022, by email, and Friday, November 11, 2022, by telephone conference and Plaintiff is opposed to the relief requested herein.

## **MOTION**

This case arises from allegations of defamation from Plaintiff, Eric Coomer, PhD., former Director of Product Strategy and Security for Dominion Voting Systems, by Defendants regarding allegations of election fraud in the U.S. 2020 Presidential Election.  Allegations have been made that Defendant Michael J. Lindell has "aligned" himself with Colorado podcaster and former CEO of CDS, Joe Oltmann.  Mr. Oltmann allegedly has made statements regarding Dr. Coomer and his role with Dominion Voting Systems. Dr. Coomer alleges that Defendant, Michael J. Lindell, has made defamatory statements towards Dr. Coomer and that these statements were based on statements made by Mr. Oltmann.  Mr. Oltmann hosts a podcast called the Conservative Daily Podcast (the "podcast"), which he co-hosted for some time with Max McGuire.  Plaintiff in this matter is interested in the conversations between Mr. Oltmann and Mr. McGuire, and more specifically, the topics for the podcast and the accuracy of the claims made on the podcast.  Mr. McGuire has authorized two separate non-disclosure agreements, which will prevent him from testifying or providing documentation on a substantial number of topics for his upcoming, November 17, 2022, deposition.

Mr. Oltmann founded and was the CEO of PIN Business Network, Inc. d/b/a DoBizLo ("PIN").  On September 3, 2015, Mr. Oltmann hired Max McGuire as an employee.  As part of his employment, Mr. McGuire signed a Non-Disclosure Agreement. ("NDA 2015"). **Exhibit 1**, Non-Disclosure Agreement, dated September 3, 2015.  As a result of Mr. McGuire signing the NDA 2015, he is forbidden from disclosing confidential information related to PIN, including but not limited to:

## Confidential Information

1. All written and oral information and materials disclosed or provided by the Employer to the Employee under this Agreement is Confidential Information regardless of whether it was provided before or after the date of this Agreement or how it was provided to the Employee.

2. The Employee acknowledge that in any position the Employee may hold, in and as a result of the Employee's employment by the Employer, the Employee will, or may, be making use of, acquiring or adding to information about certain matters and things which are confidential to the Employer, including but not limited to, the following:

3. 'Confidential Information' means all data and information relating to the business and management of the Employer, including but not limited to, the following:

    a. 'Customer Information' which includes names of customers of the Employer, their representatives, all customer contact information, contracts and their contents and parties, customer services, data provided by customers and the type, quantity and specifications of products and services purchased, leased, licensed or received by customers of the Employer;

**Exhibit 1**, pp 1-2. "Confidential Information" also includes intellectual property, marketing and development, business operations, product information, production processes, and service information. **Id**. at p. 2.

While Mr. Oltmann was CEO of CDS, he hired Max McGuire as a consultant in 2021. Contemporaneously with the signing of the CD Solutions Consulting Agreement, Mr. McGuire signed "Exhibit A" CD Solutions Non-Disclosure Agreement ("NDA 2021"). **Exhibit 2**, "Exhibit A" CD Solutions Non-Disclosure Agreement, dated September 1, 2021.

As a result of Mr. McGuire signing this NDA, he is forbidden from disclosing confidential information related to CDS, including but not limited to:

(a) All information concerning the Disclosing Party's and **its affiliates'**, and their customers', suppliers', and other third parties' past, present, and future business affairs including without limitation, finances, customer information, supplier information, products, **services**, **organizational structure and internal practices**, forecasts, sales and other financial results, records and budgets, and business, marketing, development, sales and other **commercial strategies**;

(b) The Disclosing Party's unpatented inventions, ideas, methods and discoveries, trade secrets, knowhow, unpublished patent applications, and other confidential intellectual property;

(c) all designs, specifications, documentation, components, source code, object code, images, icons, audiovisual components and objects, schematics, drawings, protocols, processes, and other visual depictions, in whole or in part, of any of the following;

(d) any third-party confidential information included with, or incorporated in, any information provided by the Disclosing Party to the Recipient or its Representatives; and

(e) all notes, analyses, compilations, reports, forecasts, studies, samples, data, statistics, summaries, interpretations, and other materials (the "Notes") prepared by or for the Recipient or its Representatives that contain, are based on, or otherwise reflect or are derived from, in who or in part, any of the foregoing.

**Exhibit 2**, 1(a)-(e) (emphasis added).

On August 29, 2022, Plaintiff served a Notice of Intent to Take Oral and Videotaped Deposition of Max McGuire. **Exhibit 3**, Deposition Notice. Plaintiff noticed Mr. McGuire's deposition for Thursday, November 17, 2022, in Austin, Texas.

Importantly, one of Mr. McGuire's roles at CDS was that he served as a co-host with Mr. Oltmann on the CDS Conservative Daily Podcast. It is clear from the Notice of Mr. McGuire's deposition that Plaintiff intends on questioning Mr. McGuire on his discussions with Mr. Oltmann and the business affairs of Conservative Daily Podcast produced and/or owned by CDS. Plaintiff also intends on discussing conversations with any and all employees of CDS. Specifically, Plaintiff lists Mr. Oltmann and Conservative Daily in his Definitions:

> 6. "Oltmann" means Joseph (Joe) Oltmann, as well as any agents, servants, employees, or representatives acting for or on his behalf.
>
> 7. "Conservative Daily" means the daily podcast produced and/or owned by CD Solutions Inc.

**Exhibit 4**, Exhibit A to Subpoena.

Plaintiff is also requesting documents related to discussions with Mr. Oltmann and the business affairs of Conservative Daily Podcast produced and/or owned by CDS, including, but not limited to:

> 3. All written communications between You and Oltmann between January 1, 2020 and the present, including, but not limited to, all written communications relating to Dr. Coomer or Dominion Voting Systems.
>
> 4. All documents and communications authored, sent, or received by You relating to proposed topics for Conservative Daily episodes that you or any other Conservative Daily employee or contractor objected to between January 1, 2020 and the present.
>
> 5. All documents and communications authored, sent, or received by You concerning the accuracy of claims made by Oltmann on Conservative Daily between January 1, 2020 and the present.
>
> 7. All documents and communications authored, sent, or received by You relating to the claims that Dr. Coomber participated in an "Antifa

call," that he claimed on that call to have rigged the 2020 presidential election, and that he did in fact rig the 2020 presidential election

8.  All documents and communications authored, sent, or received by You relating to any surveillance of, threats directed towards, or harassment of Dr. Coomber between January 1, 2020 and the present.

9.  All documents and communications authored, sent, or received by You relating to any of the alleged participants of the "Antifa call," the means by which Oltmann supposedly accessed the "Antifa call," any alleged witnesses to the "Antifa call," any evidence demonstrating the occurrence of the "Antifa call," or any other documents or communications related in any way to the "Antifa call."

10.  All documents and communications authored, sent, or received by You concerning instances when Oltmann manipulated, fabricated, falsified, or altered in any way alleged evidence of fraud in the 2020 presidential election, including, but not limited to, all documents or communications relating to instances when Oltmann encouraged others to manipulate, fabricate, falsify, or alter evidence, or when he knowingly disregarded the manipulation, fabrication, falsification or alteration of alleged evidence of fraud offered by others relating to the 2020 presidential election.

**Exhibit 4**, Documents Requested, 3-5, 7-10.

CDS comes before this Court to request that a Protective Order be put in place to protect its proprietary information and documentation, under the NDAs, that is requested from the deposition of Max McGuire in this matter.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure must be "construed and administered to secure the just, speedy, and inexpensive determination of every action." F.R.C.P. 1. "Federal district courts have broad discretion over discovery." *Morales v. E.D. Etnyre & Co.,* 229 F.R.D. 661, 662 (D.N.M.2005)(Browning, J.). A court shall limit discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is

obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  F.R.C.P. 26 (b)(F).  The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

F.R.C.P. 26(c) gives the court the power to make a variety of orders for the protection of parties, witnesses or materials during discovery and disclosure. Rule 26(c) was adopted to provide a procedure to limit discovery in certain cases. *Bond v. Dist. Ct.*, 682 P.2d 33 (Colo. 1984). This rule allows the trial court to exercise broad discretion to manage the discovery process in such a way as to implement the philosophy of full disclosure of relevant information while protecting the participants against the harmful side effects; "accordingly, trial courts should not hesitate to exercise control over the discovery process".  *Id.* at 40.  Rule 26(c) "applies only to documents or information obtained solely as a result of discovery in a pending case," and cannot be used to "authorize restrictions on documents acquired outside of the discovery process in the pending case."

The court may make any order which justice requires to accomplish the purposes of the rule, including one or more of eight methods set forth in the rule: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only

on specified terms and conditions, including a designation of the time or place; (3) that the disclosure or discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of disclosure or discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) **that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way**; and, (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. F.R.C.P. 26(c). *Blue Mountain Credit Alternatives Master Fund L.P. v. Regal Entertainment Group*, 465 P.3d 122, 130–133 (Colo. Ct. App. 2020) (emphasis added)

"It is the party seeking the protective order who has the burden to show good cause for a protective order." *Velasquez v. Frontier Medical Inc.,* 229 F.R.D. 197, 200 (D.N.M.2005). The party seeking the protective order "must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). *See Securities and Exchange Commission v. Dowdell,* 144 Fed.Appx. 716, 722–23 (10th Cir.2005) (noting that a third party normally may not move for a rule 26(c) protective order if it is not a party to the underlying action, has not intervened, and is not the party from whom discovery is sought). "Rule 26(c) expressly

limits who may move for a protective order to parties or the person from whom discovery is sought." *Id.* at 722.

## ARGUMENT

Max McGuire has been under the employ of Mr. Oltmann and/or one of his business entities on two separate occasions in the last seven years. Mr. McGuire voluntarily submitted to the NDAs referenced above, for both of these positions with Mr. Oltmann. Both NDAs go into detail on the type and nature of information that Mr. McGuire is not allowed to disclose. Specifically, Mr. McGuire is unable to testify or offer documentation regarding the customers and the nature of any discussions with customers. Mr. McGuire is also not permitted to testify regarding any of the CDS affiliates, services, organizational structure, and commercial strategies.

The Conservative Daily podcast is an affiliate of CDS and pursuant to the NDAs, Mr. McGuire cannot answer any questions or provide any documentation related to the majority of his conversations with Mr. Oltmann, the podcast, CDS, or any other topics listed in the NDAs related to CDS and its affiliates. This subpoena seeks in-depth, confidential, and business information from PIN and CDS, by and through, Mr. McGuire. The deposition topics for Mr. McGuire even go so far as to request all documents and communications relating to "proposed topics" for the podcast objected to by **any** employee or contractor. **Exhibit 4**, no. 4 (emphasis added). These requests are not related to Mr. McGuire's personal opinions of a public broadcast or his relation to the Plaintiff or any Defendant in this matter. The requested information includes

9

discussions of the business strategy of CDS and how that strategy was formulated amongst all employees. This is the exact information the NDAs were created to protect.

Pursuant to the NDAs, Mr. McGuire cannot discuss any business discussions he had with Mr. Oltmann. Again, Mr. McGuire has been employed by Mr. Oltmann/his companies in two separate capacities. During this time, Mr. McGuire has been privy to the extensive proprietary information and trade secrets of two of Mr. Oltmann's separate entities. Specifically, discussions among podcasters regarding their sources, the information they would like to discuss, how other employees and consultants contributed to this process, and how best to frame these arguments is at the heart of CDS' business. These strategies are the proprietary information of CDS. Any non-proprietary information sought by Plaintiff, through Mr. McGuire's deposition, can be obtained through more convenient and less intrusive sources.

Essentially, Plaintiff is trying to get Mr. McGuire to tell him why the Defendants in this matter were repeating things said on the CDS podcast. There are obviously better sources to get that information. Specifically, Defendants are the only individuals/entities that know why they are repeating things they heard on the CDS podcast. It is unreasonable to depose a former employee of a podcast in an attempt to flesh out why the actual Defendants are allegedly defaming the Plaintiff. The NDA was signed and put into place to protect these exact discussions.

CDS is cognizant of the fact that that Mr. McGuire's deposition is scheduled for this week. Undersigned counsel has only been aware of this matter for approximately one week and has only gotten the opportunity to speak with counsel for Plaintiff last Friday, November 11, 2022.

Although CDS cannot know the exact conversations and topics Plaintiff will choose to question Mr. McGuire on, it is apparent a number of these topics and questions will run afoul of the NDAs. CDS is attempting to ensure no more time or resources are misused because of this deposition.

CDS understands and appreciates that Mr. McGuire's deposition needs to be taken in this matter, but is asking the court to help outline and decide what questions are applicable and appropriate pursuant to the NDA's, so counsel doesn't have to burden this Court multiple times regarding the deposition questioning. Without the Court's involvement there will be a substantial amount of time wasted on delays and information that will cannot be provided, consuming resources of all parties involved.

CDS respectfully requests that the Court enforce the NDA's with respect to limiting the topics, questions, and general scope for Mr. McGuire's deposition. CDS respectfully requests a Protective Order from this Court forbidding Plaintiff, or any other party to this litigation, from asking or requesting any information from Mr. McGuire prohibited by the NDA's, specifically but not limited to:  Joe Oltmann, any discussions with Joe Oltmann, any discussions about PIN with any employee or former employee of PIN, any discussions about CDS with any employee or former employee of CDS, and documentation related to PIN and/or CDS.

WHEREFORE, and based on the foregoing, CDS respectfully requests the Court grant this Motion for Protective Order and issue the Proposed Protective Order attached as **Exhibit 5**.

DATED this 14th day of November, 2022.

                **COOMBE CURRY RICH AND JARVIS**

                */s/Daniel R. Coombe*
                Daniel Robert Coombe, Esq.
                Gregory Robert Schroer, Esq.
                Coombe Curry Rich & Jarvis
                2000 S Colorado Blvd.
                Tower II, Suite 1050
                Denver, CO 80222
                Telephone: (303) 572-4200
                coombe@ccrjlaw.com
                schroer@ccrjlaw.com
                *Attorneys for CDS*