## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-WJM

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

## EXHIBIT A TO SUBPOENA

## DEFINITIONS

1. "Dr. Coomer" means Eric Coomer, Ph.D., as well as any current or former agents, servants, or representatives acting for or on his behalf.

2. "You," "your," or "yourself" refers to the individual receiving this Subpoena.

3. "Lindell," means Michael J. Lindell, as well as any and all current or former officials, agents, servants, employees, attorneys, affiliates, or representatives acting for or on his behalf.

4. "FrankSpeech" means FrankSpeech LLC, as well as any and all current or former officials, agents, servants, employees, attorneys, affiliates, or representatives acting for or on its behalf.

5. "My Pillow" means My Pillow, Inc., as well as any and all current or former officials, agents, servants, employees, attorneys, affiliates, or representatives acting for or on its behalf.

6. "Oltmann" means Joseph (Joe) Oltmann, as well as any agents, servants, employees, or representatives acting for or on his behalf.

7. "Conservative Daily" means the daily podcast produced and/or owned by CD Solutions Inc.

8. "Dominion Voting Systems" means Dominion Voting Systems, as well as any agents, servants, employees, or representatives acting for or on its behalf.

**EXHIBIT 3**

9. "Cyber Symposium" means the event promoted as Mike Lindell's Cyber Symposium, held from August 10-12, 2021, in Sioux Falls, South Dakota.

10. "Lawsuit" means the present litigation styled, *Eric Coomer, Ph.D. v. Michael J. Lindell, et al.*, Case No. 1:22-cv-01129-WJM, in the United States District Court for the District of Colorado.

11. "Subpoena" means Plaintiff's Subpoena to Attend and Produce in the present Lawsuit.

12. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity and all predecessors or successors in interest.

13. "Communication" means any oral or written communication of which you have knowledge, information, or belief.

14. "Document" or "documents" mean any recordation of any intelligence or information, whether handwritten, typed, printed or otherwise visually or aurally produced, including, without limitation, agreements, contracts, warranties, insurance policies, forms, acknowledgments, invoices, letters, correspondence, memoranda, telegraphs, notes, reports, compilations, electronically stored data, emails, notebooks, appointment books, calendars, work papers, worksheets, photographs, diaries, minutes of meetings, magnetic tape, movie files, microfilm, microfiche, videotapes, print out sheets, summaries or records of telephone conversations, personal conversations or interviews and any and all other writings, typings, printouts, drafts, copies and/or mechanical electronic, or photographic reproductions or recordations thereof in your, your agent's, or your attorney's possession, custody, or control, or known to you whether or not prepared by you. "Document" or "documents" also includes all copies that are not identical to the originals, such as those bearing marginal comments, alterations, or other notations not present on the original as originally written, typed, or otherwise prepared.

15. "Mobile device" means any cellular telephone, satellite telephone, pager, personal digital assistant, handheld computer, electronic rolodex, walkie-talkie, or any combination of these devices.

16. "Identify" and "identify" unless otherwise indicated, means with respect to an individual to give the following information:

    (a)   full name;
    (b)   present or last known home address and phone number;
    (c)   present or last known business address and phone number; and
    (d)   title, if any.

**EXHIBIT 3**

17. "Identify" and "identify" unless otherwise indicated, when used with respect to any act, activity, practice, effort, event, transaction, discussion, conversation, occurrence, meeting, agreement, or communication means to:

    (a) describe the nature and substance of the act, activity, practice, effort, event, transaction, negotiation, discussion, conversation, occurrence, meeting, agreement, or communication;
    (b) give the date when and place where it occurred;
    (c) identify each person who was a participant therein;
    (d) identify each other person who was a witness thereto; and
    (e) if any such event is claimed to be privileged or work product, in addition to the foregoing information, state as to each:
        (i) a general description thereof, without revealing the specific information as to which privilege is claimed; and
        (ii) the basis on which the claim of privilege is asserted.

18. "Relating to," "referring to," or "concerning" mean including, summarizing, demonstrating, constituting, reflecting, containing, studying, analyzing, considering, explaining, mentioning, showing, discussing, describing, commenting upon, resulting from, prepared for or used in connection with.

19. "State" and "describe" mean to set forth a complete and detailed statement of all information, circumstances, and facts that related to the matter about which information is requested.

**EXHIBIT 3**

# INSTRUCTIONS

1. Unless otherwise specified herein, each request relates to, covers, and requests information and documents from January 1, 2020 to the present. The term "present" as used in this instruction is meant to be a rolling and continuing period of time, rather than the time at which you respond to these Requests.

2. If a claim of privilege is asserted with respect to any discovery request, in whole or in part, or you refuse to answer any discovery request on any other ground, specify the exact basis for your claim that such discovery request need not be answered. If the refusal is based on an assertion of privilege, pursuant to Federal Rule of Civil Procedure 34, produce a privilege log to:

    (a) describe the items withheld such that the parties can assess the applicability of the privilege; and
    (b) assert a specific privilege for each item or group of items withheld.

3. Each request for production is to secure documents in the possession, custody, or control of you, or your accountants, agents, employees, officers, investigators, consultants, and other representatives. When a request for production is directed to you, it is also directed to each of these persons.

4. In those instances when requested information is stored only on software or other data compilations, you should either produce the raw data along with all codes and programs for translating it into usable form or produce the information in a finished usable form, which would include all necessary glossaries, keys, and indices for interpretation of the material.

5. In making documents available, all documents which are physically attached to each other in files shall be made available in this form. Documents which are segregated or separated from other documents whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or any other method, shall be made available in that form. Documents shall be made available in the order in which they were maintained.

6. If any portion of a document is responsive to a request, the entire document should be produced. If documents that are produced in response to a request are normally kept in a file or other folder, then also produce that file or folder with any labels attached thereto.

7. If a request calls for the production of a document that no longer exists, cannot be located, has been placed beyond your control, or otherwise disposed of, set forth with respect to each such document:

**EXHIBIT 3**

      (a)    the author of the document;
      (b)    the addressee, if any, and those persons, if any, who have seen or received a copy of the document or who are specified in the document to receive a copy thereof;
      (c)    the title of the document, if any, or other identifying data;
      (d)    the type of document (*i.e.*, letter, memorandum); and
      (e)    a summary of its nature and subject matter.

8. With respect to production of e-mails or other electronic communications, the data is hereby requested in the following format:

      (a)    OCR multipage text files, in a folder named "OCR";
      (b)    Load file .opt or .log;
      (c)    Metadata associated with the documents in a .dat file;
      (d)    Native File;
      (e)    Summation Load File (.dii), Concordance Load File (.dat), Ipro Load File (.lfp); and
      (f)    Metadata, including:

| # | Field | # | Field |
|---|---|---|---|
| 1. | To | 11. | Date Created |
| 2. | From | 12. | Date Modified |
| 3. | CC | 13. | Date Printed |
| 4. | BCC | 14. | Filename |
| 5. | Date/Time Sent | 15. | MD5/SHA1 Hash Value |
| 6. | Date/Time Received | 16. | Author |
| 7. | Subject | 17. | Organization |
| 8. | Attachment File name | 18. | Title |
| 9. | Email/Attachment Relationship Information | 19. | File Size |
|  |  | 20. | Custodian |
|  |  | 21. | Source |
| 10. | Message ID |  |  |

**EXHIBIT 3**

**DOCUMENTS REQUESTED**

1. All written communications between You and Lindell, FrankSpeech, or My Pillow between January 1, 2020 and the present, including, but not limited to, all written communications relating to Dr. Coomer or Dominion Voting Systems.

2. All written communications between You and Oltmann between January 1, 2020 and the present, including, but not limited to, all written communications relating to Dr. Coomer or Dominion Voting Systems.

3. All documents and communications authored, sent, or received by You relating to Oltmann's personal legal defense fund.

4. All documents and communications authored, sent, or received by You relating to proposed topics for Conservative Daily episodes that you or any other Conservative Daily employee or contractor objected to between January 1, 2020 and the present.

5. All documents and communications authored, sent, or received by You concerning the accuracy of claims made by Oltmann on Conservative Daily between January 1, 2020 and the present.

6. All documents and communications authored, sent, or received by You relating to the Cyber Symposium held in Sioux Falls, South Dakota from August 10-12, 2021.

7. All documents and communications authored, sent, or received by You relating to the claims that Dr. Coomer participated in an "Antifa call," that he claimed on that call to have rigged the 2020 presidential election, and that he did in fact rig the 2020 presidential election.

8. All documents and communications authored, sent, or received by You relating to any surveillance of, threats directed towards, or harassment of Dr. Coomer between January 1, 2020 and the present.

9. All documents and communications authored, sent, or received by You relating to any of the alleged participants of the "Antifa call," the means by which Oltmann supposedly accessed the "Antifa call," any alleged witnesses to the "Antifa call," any evidence demonstrating the occurrence of the "Antifa call," or any other documents or communications related in any way to the "Antifa call."

10. All documents and communications authored, sent, or received by You concerning instances when Oltmann manipulated, fabricated, falsified, or altered in any way alleged evidence of fraud in the 2020 presidential election, including, but not limited to, all documents or communications relating to instances when Oltmann encouraged others to manipulate, fabricate, falsify, or alter evidence, or when he knowingly disregarded the manipulation, fabrication, falsification or alteration of alleged evidence of fraud offered by others relating to the 2020 presidential election.

**EXHIBIT 3**

11. All documents and communications authored, sent, or received by You relating to Joey Camp (aka Joseph A. Camp, aka Jojo Camp).

**EXHIBIT 3**