## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129

ERIC COOMER, PhD.,

     Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

     Defendants

---

## EXHIBIT 13

---

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br><br>Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202<br><br>**Plaintiff(s)** ERIC COOMER<br><br>v.<br><br>**Defendant(s)** DONALD J TRUMP FOR PRESIDENT INC et al. | DATE FILED: August 29, 2021 2:19 PM<br>CASE NUMBER: 2020CV34319<br><br><br>⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2020CV34319 |
| | Division: 409          Courtroom: |

| |
|---|
| **Order Regarding Plaintiff's Motion for Sanctions Pursuant to CRCP 37 and CRCP 107 and Request for Order to Show Cause** |

The motion/proposed order attached hereto: GRANTED IN PART.

As addressed on the record on August 27, 2021, the Court has entered the following Orders:

1. The Court has not yet issued a Contempt Citation. Therefore, the court is not proceeding under C.R.C.P. 107 at this time.

2. The Court conducted a hearing to address the following four categories of alleged discovery non-compliance:

a. Defendant Oltmann's failure to appear at his personal deposition on August 10, 2021;

b. Defendant Oltmann's stated refusal to answer questions regarding the alleged Antifa conference call;

c. The Oltmann Defendants' failure to provide discovery documents in a useful or legible format;

d. The failure of FEC United and Shuffling Madness Media to designate appropriate corporate designees for the Rule 30(b)(6) depositions.

3. Having heard arguments of counsel, the Court incorporates the findings of the August 27, 2021 hearing and ENTERS the following Rule 37 ORDERS and SANCTIONS:

4. Mr. Oltmann must sit for remote depositions in his individual capacity and he must sit for 30(b)(6) depositions for FEC United, CD Solutions and Shuffling Madness Media on September 8, 2021 and/or September 9, 2021. Mr. Oltmann shall be prepared to answer in detail and with specifics all topics that have been previously noticed. He shall also review the deposition transcripts of Mr. Butler and Mr. Papas and shall be prepared to answer the questions that they were asked. The individual deposition shall be up to 3 hours; each corporate deposition may be up to 2 hours in late.

5. The depositions will be videotaped--both from the chest up, and the room as a whole--to as closely as possible replicate an in-person deposition. Mr. Oltmann will have with him paper copies of all exhibits that are to be referenced during the depositions. Mr. Coomer's attorneys will provide all such exhibits electronically to Ms. Hall by 4:00pm the day before the depositions, and Ms. Hall shall be responsible for ensuring that Mr. Oltmann has copies of all of the exhibits, tabbed and in notebooks.

6. Mr. Oltmann shall respond to all questions regarding the alleged Antifa Conference Call, including but not limited to questions regarding:

a. The date and time of the call;

b. The platform on which the call was conducted;

c. The name, address and phone number of the individual that provided him access to the conference call;

d. The name, address and telephone number of any other individuals that can corroborate that Mr. Oltmann participated on the call; and

e. The name, address and telephone number of any other individual that participated in the call.

f. Additionally, Mr. Oltmann shall provide information regarding the means by which he obtained information regarding Facebook posts that he attributed to Eric Coomer.

7. Mr. Oltmann shall produce all previously disclosed discovery documents in a readable format by 4:00pm on September 3, 2021. For example, if it is an email, the entire email needs to be produced in a legible format. If it is a text message, the entire text message needs to be produced including dates. If it is a video, it must be produced in a manner that allows the person receiving the video to actually view the video--the same is true for audio recordings.

8. Because of the delay in obtaining discovery from the Oltmann Defendants, the Court extends Plaintiff's deadline for responding to the Special Motions to Dismiss to September 17, 2021 and the Replies thereto to September 27, 2021.

SANCTIONS:

1. The Court enters the sanction of attorneys fees with respect to the depositions that were to have occurred on August 10, 2021. Mr. Oltmann shall be responsible for the reasonable and necessary fees and costs incurred by counsel for Plaintiff preparing for and attending all three depositions that day (Oltmann, FEC United and CD Solutions).

2. Ms. Hall and Ms. DeFranco shall also be responsible for paying the reasonable fees and costs associated with the 30(b)(6) depositions because they knowingly produced witnesses that did not have the basic information necessary to provide meaningful testimony.

3. Plaintiff shall file an Affidavit of fees and costs, breaking down the fees and costs incurred for each of the three August 10, 2021 depositions on or before September 10, 2021; the Oltmann Defendants shall file any objections thereto by September 24, 2021.

4. If Mr. Oltmann fails to comply with the discovery Orders outlined above, the court will consider imposing testimony/evidence preclusion sanctions, upon motion of Plaintiff. Counsel for Defendants shall be prepared to provide suggestions for testimony/evidence preclusion sanctions that are appropriate to address Defendant Oltmann's discovery deficiencies (if any) while limiting the impact on other Defendants. If Mr. Oltmann persists in conduct that appears contemptuous, the Court will consider Rule 107 proceedings.

5. Finally, because of the shortness of the timeframes in which discovery matters need to be addressed in this matter, all counsel shall be prepared to file responses to discovery motions within 5 days.

Issue Date:  8/29/2021

MARIE AVERY MOSES
District Court Judge

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | |
| ERIC COOMER, Ph.D.,<br>Plaintiff<br><br>vs.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., et al.,<br>Defendants | ▲ COURT USE ONLY ▲ |
| **Attorneys for Plaintiff**<br>Charles J. Cain, No. 51020<br>ccain@cstrial.com<br>Steve Skarnulis, No. 21PHV6401<br>skarnulis@cstrial.com<br>Bradley A. Kloewer, No. 50565<br>bkloewer@cstrial.com<br>Zachary H. Bowman, No. 21PHV6676<br>zbowman@cstrial.com<br>**CAIN & SKARNULIS PLLC**<br>P. O. Box 1064<br>Salida, Colorado 81201<br>719-530-3011          Telephone<br>512-477-5011          Facsimile<br><br>Thomas M. Rogers III, No. 28809<br>trey@rklawpc.com<br>Mark Grueskin, No. 14621<br>mark@rklawpc.com<br>Andrew E. Ho, No. 40381<br>andrew@rklawpc.com<br>**RECHTKORNFELD PC**<br>1600 Stout Street, Suite 1400<br>Denver, Colorado 80202<br>303-573-1900          Telephone | Case Number:          2020cv034319<br><br>Division Courtroom:          409 |

**PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO C.R.C.P. 37 AND C.R.C.P. 107 AND REQUEST FOR ORDER TO SHOW CAUSE**

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer) files this Motion for Sanctions Against Defendants Joseph Oltmann, FEC United, and Shuffling Madness Media, Inc. dba Conservative Daily, pursuant to C.R.C.P. 37 and C.R.C.P. 107.  Plaintiff seeks remedial sanctions, monetary sanctions, and adverse findings in connection with the pending Motions to Dismiss pursuant to C.R.S. § 13-20-1101.  Plaintiff further requests an order to show cause why Oltmann, FEC United, and Shuffling Madness Media, Inc. should not be held in contempt of court for the failure to appear for the court-ordered deposition, the failure to present witnesses with appropriate knowledge, and the failure to make court-ordered document production.

## I.     INTRODUCTION

*"The judge is a piece of trash."* — Recent[1] text message from Joe Oltmann to Jim Hoft, **Exhibit 1**, at p. 5.

1.     Oltmann continues to show literal contempt for this Court.  Dr. Coomer showed up for Oltmann's court-ordered deposition on August 11 despite Oltmann having whipped up national hatred against him.  Oltmann did not.  Oltmann is the reason Dr. Coomer went into hiding in the first place.  Oltmann is now hiding from this Court and has fled the state.[2]

2.     Oltmann's latest offense is his complete disregard of this Court's order to appear for his deposition while at the same time asking this Court to dismiss Plaintiff's

---

[1] Plaintiff believes the text messages included in Exhibit 1 to have occurred at some point between June 1, 2021, and June 10, 2021, but at this time cannot confirm the date with greater specificity.

[2] *See* Defendant Joseph Oltmann's Motion for Relief from the July 7, 2021 Order Requiring Joseph Oltmann to Appear at the Courthouse for His Deposition on August 11, 2021 at p. 2 (stating "Mr. Oltmann is not a resident of the state of Colorado and will have to travel to appear.").

claims and award him fees.  Instead of appearing, Oltmann went to South Dakota and spoke to a maskless crowd at Mike Lindell's Cyber Symposium.  There, he again slandered this Court, identified its judge by name[3] and stated, "She marched with her family in an Antifa protest in June of 2020."[4]  Oltmann then followed it up with similar comments on Steve Bannon's "War Room" podcast on August 11, 2021, where he again reiterated that he would not disclose key evidence in this case, and specifically identified the evidence that he has already been ordered to disclose.[5]

3.     Oltmann's excuses for defying this Court's order are not credible.[6]   If Oltmann and the rest of the Defendants were, in fact, correct that "Antifa member" Dr. Coomer was captured boasting about rigging the 2020 Presidential election on an Antifa conference call, as well as "fortifying the groups" and discussing Antifa "recruiting," then Dr. Coomer would have been an integral member of this particular cabal and *would already know several members on the call, including its host*.  And he would have used the last year conspiring with his Antifa brethren to root out Oltmann's mole.

4.     Perhaps with this in mind, Oltmann has now made the decision to refuse to appear, give complete testimony, produce documents, or obey court orders.  Further, based on testimony that was recently procured by Plaintiff at the courthouse, Oltmann is

---

[3] *See* https://caincloud.egnyte.com/dl/KLr23jf6gv/?  at 4:05 (last visited Aug. 17, 2021).

[4] *Id.*, at 4:36.

[5] *See Episode 1,165 – The Receipts are Being Shown,* WAR ROOM SHOW, Aug. 11, 2021, at 41:48, https://warroom.org/2021/08/11/episode-1165-the-receipts-are-being-shown/ (last visited Aug. 17, 2021).

[6] And yet Defendants have all continued to maintain to this day that Oltmann was a credible source.

also the person most knowledgeable about the operations of FEC United and Shuffling Madness Media.[7]  His refusal to appear for these depositions prejudices Plaintiff to the utmost extent, especially considering the numerous anti-SLAPP motions that Plaintiff must respond to without Oltmann's sworn deposition testimony.  And, it has caused Plaintiff considerable financial harm and has wasted considerable time and effort by Plaintiff's trial team.

5.      For these reasons and those set forth below, the Court should begin incrementally sanctioning Oltmann and his affiliates by, under the current circumstances and without prejudice to further orders, establishing certain designated facts relating to the alleged "Antifa call," sanctioning Oltmann and his affiliates for each day he refuses to comply with this Court's orders, granting Plaintiff his reasonable travel and related expenses, granting Plaintiff his reasonable attorney's fees, and issuing an order to show cause as to why Oltmann and his affiliates should not be held in contempt of court.

## II.      FACTUAL BACKGROUND

6.      On June 28, 2021, Plaintiff filed a Motion for Sanctions Pursuant to C.R.C.P. 37 wherein he noted Oltmann's refusal to provide deposition dates that conformed to the Court's June 8, 2021 Order Regarding Reconsideration of Plaintiff's Motions for Expedited Discovery.  In that motion, Plaintiff noted various recent statements wherein Oltmann had publicly shown contempt for this Court, as well as various statements Oltmann had made that implicitly threatened violence.  On the basis

---

[7] See **Exhibit 2**, deposition transcript of Stuart James Butler on behalf of FEC United; **Exhibit 3**, deposition transcript of Gregory Richard Papas on behalf of CD Solutions, Inc.

of these consistent and repeated statements, Plaintiff requested the deposition of Oltmann be held in a secure and controlled location, specifically the courtroom where Oltmann had already voluntarily appeared.

7.      On July 7, 2021, the Court held an in-person hearing to address Oltmann's argument that the identity of his conduit for the "Antifa call" was privileged pursuant to the Colorado Reporter's privilege statute, C.R.S. § 13-90-119.  At that hearing, the Court determined that the privilege did not shield disclosure and compelled Oltmann to produce his notes from the alleged call (which he did), disclose the identity of his conduit for the "Antifa call," and provide related testimony.   The Court found that Oltmann's testimony was "evasive and not credible" and ordered him to appear for a deposition in the Denver County Courthouse on August 11, 2021.  **Exhibit 4** at 90:25-91:7; 97:9-17; *see also* **Exhibit 5**, July 7, 2021 Minute Order.

8.      On July 16, 2021, counsel for Plaintiff emailed counsel for Oltmann and provided a lengthy, detailed list of documents Plaintiff was seeking pursuant to the June 8, 2021 discovery order.  **Exhibit 6**.  Plaintiff's counsel explained that the email was in response to the Court's instruction that requests be presented upon Oltmann with specificity so that Oltmann could appropriately respond.  The email described known or suspected communications between Oltmann, other Defendants, and third parties, based on Oltmann's own public statements describing those communications.  Counsel for Plaintiff also described specific online content that he had reason to believe had been deleted from online platforms after its initial publication and requested clarification as to the reason for its deletion.   In addition, Plaintiff's counsel described elements of

4

Oltmann's alleged investigation into Dr. Coomer that were not disclosed.  Again, these were described with specificity, relied on statements Oltmann himself had made publicly, and frequently quoted Oltmann's statements with respect to documents he had previously claimed to have in his possession.

9.     On August 3, 2021, Plaintiff's counsel reached out to counsel for Oltmann, and alerted her that most of the documents Oltmann had produced in his second disclosure were in an unreadable format.  On August 4, 2021, Oltmann's counsel responded that they were working to resolve the issue.  On August 6, 2021, Plaintiff's counsel again reached out for some explanation as to the format of the files.  On August 8, 2021, Oltmann's counsel responded, "I have provided what my client produced.  I am sorry I am not able to help you further."  **Exhibit 7**.

10.     On August 6, 2021, Oltmann filed a motion for relief from the July 7, 2021 Order.  Oltmann, who had been traveling the country during that week and participating in large, maskless gatherings while promoting his false claims about Dr. Coomer, claimed that he could not appear in person because he had health concerns arising from the ongoing Covid-19 pandemic.

11.     The Court denied Oltmann's motion on August 10, 2021, and again ordered him to appear in the Denver County Courthouse for his deposition on August 11, 2021.

12.     On August 10, Plaintiff's eDiscovery provider confirmed that the documents produced were unreadable.  **Exhibit 8**.  As a result, Oltmann's supplemental document disclosure ended up amounting to roughly thirteen pages of screen shots of text messages with co-defendant Michelle Malkin, 56 pages of screenshots of a Gmail inbox (but none

of the actual emails visible in the screenshots), and seventeen emails from YouTube referencing videos that had been taken down by YouTube for violating their content policies between January 18, 2021 and July 15, 2021.  These emails do not explain the deletion of videos on the specific dates referenced in the July 16, 2021 email.  The disclosure was entirely unresponsive with respect to the other topics described in the July 16, 2021 email.

13.     Also, on August 9 and 10, 2021, counsel for Plaintiff traveled from their offices in Austin, Texas, and Salida, Colorado, to conduct the three scheduled, three-hour depositions of Oltmann and two related entities, FEC United and Shuffling Madness Media, Inc. dba Conservative Daily.   Oltmann did not appear for his deposition. **Exhibit 9**.

14.     Oltmann's counsel claimed that Oltmann could not appear because he feared for his safety, but this is not credible.  As noted above, Oltmann was in South Dakota, unmasked onstage, and being live streamed to thousands, where he discussed his perceived grievances at length and again reiterated his refusal to abide by this Court's orders.[8]

---

[8] See https://caincloud.egnyte.com/dl/KLr23jf6gv/ (last visited Aug. 17, 2021).



15.     In any case, Oltmann already appeared in this court on July 7, 2021, when he apparently believed that doing so would serve his interest. His own personal bodyguard testified under oath that the courtroom was safe and secure. *See* **Exhibit 4** at 70:7-8 ("I don't feel any particular security risk in this room."). As a result, both Oltmann and his counsel's statements with respect to his failure to attend the deposition appear to have been knowingly false when made. How could counsel not be aware that their client was planning to attend and speak at Mr. Lindell's conference (for two days) when they filed the sick note from his doctor?

16.    Corporate representatives for FEC United and CD Solutions, Inc.[9] did appear at the courthouse on August 11.  However, neither representative was able to answer the majority of questions related to the topics identified in Plaintiff's Rule 30(b)(6) notices of deposition.  In both instances, the representatives repeatedly confirmed that Oltmann was the party who could answer those questions.  As a result, neither deposition conformed to the Court's June 8, 2021 Order, and both were a waste of time and resources for everyone involved.

17.    In recent weeks, Oltmann has continued to make frequent public statements expressing contempt for this Court and these proceedings, and expressing his ongoing refusal to abide by court orders.  Several of those statements have been attached to Plaintiff's recent pleadings in this case, including his June 28, 2021 Motion for Sanctions pursuant to C.R.C.P. 37, as well as his August 9, 2021 Response to Defendant Oltmann's Motion for Relief from the July 7, 2021 Order Requiring Joseph Oltmann to Appear at the Courthouse for his Deposition on August 11, 2021.  Plaintiff incorporates those pleadings and related exhibits herein by reference.  In addition to these expressions

---

[9] CD Solutions, Inc., is not a party to this dispute, but counsel for Shuffling Madness Media, Inc. dba Conservative Daily has asserted that CD Solutions, Inc. is the entity responsible for Oltmann's podcast, Conservative Daily.  At the time this lawsuit was filed, CD Solutions, Inc. did not have any active registrations on file with the Colorado Secretary of State, and their prior registration had expired on January 1, 2019.  **Exhibit 10**.  Conservative Daily, however, was an active trade name of Oltmann's related business entity, Shuffling Madness Media, Inc.  That registration was active at the time of filing but was recently withdrawn on July 9, 2021.  **Exhibit 11**.  In its motions to dismiss, both pursuant to C.R.C.P. 12(b)(5) and the Colorado anti-SLAPP statue, Defendant Shuffling Madness Media, Inc. does not argue that it has been improperly named in this dispute.  Counsel for Plaintiff requested a representative who was qualified to speak on behalf of Conservative Daily, and counsel for Defendant Shuffling Madness Media Inc. produced an individual that it claimed was a representative of CD Solutions, Inc., and had sufficient knowledge to address the topics identified in Plaintiff's Rule 30(b)(6) notice.

of contempt, Oltmann has called on his audience to take up arms,[10] and has been associated with violent confrontations in at least one of the cities he has visited in recent weeks.[11]

18.     Counsel for Plaintiff has conferred with counsel for Oltmann on this Motion in good faith, and they have confirmed that Oltmann refuses to abide by both the Court's July 7, 2021 and August 10, 2021 orders, and that he intends to persist in that refusal. Plaintiff's counsel was not informed that Oltmann would not show up for his deposition until approximately fifteen minutes before it was set to begin despite a specific request to be kept apprised of Oltmann's status.  Thus, it appears unlikely that Plaintiff's attempts at conferral with Oltmann's counsel serve any further purpose.

### III.   ARGUMENT

19.     Oltmann claims that he knows the identities of multiple individuals who would be capable of corroborating his story but he refuses to disclose them.  Plaintiff believes that Oltmann refuses to testify under oath in person because he knows that when he is cross-examined about his relentless months-long campaign to defame Dr. Coomer, he will be revealed as a fraud.  The other participants on that call, if one ever even occurred, will know that Dr. Coomer was not on that call, and did not make the statements that Oltmann has falsely attributed to him.

---

[10] *See* Joe Oltmann, Telegram, Aug. 4, 2021, https://caincloud.egnyte.com/dl/djTxo1fAdo/? (last visited Aug. 16, 2021) (Oltmann: "Get your muskets ready . . . I'll meet you in the street. Yu [sic] asked where the leaders are . . . there are many of us."

[11] *See* Jonathan Levinson et. al., *Police absent during political violence in downtown Portland*, OREGON PUBLIC BROADCASTING, Aug. 9, 2021, https://www.opb.org/article/2021/08/09/portland-downtown-violence-police-absent-protests/  (last visited August 16, 2021); *see also* Joe Oltmann, Telegram, Aug. 7, 2021, https://caincloud.egnyte.com/dl/0SqNmxmr5Q/? (last visited Aug. 16, 2021).

20.     After Oltmann's latest violation, defense counsel requested that Plaintiff agree yet again to a Zoom deposition.  However, the reasons for Oltmann to appear in person are compelling and have been repeatedly argued before and ruled upon by this Court.  Oltmann's repeated insistence that he will not abide by this Court's order to tell the truth about the alleged "Antifa call" suggests that he will only consent to a remote deposition because it will allow him to again defy the Court's orders without consequence, at which point the present Motion will then inevitably become necessary again.  Plaintiff is now faced with an extremely tight briefing schedule in order to respond to the numerous pending anti-SLAPP motions, and Plaintiff's counsel worked diligently and in good faith with the Defendants in this case to perform numerous depositions across the country within a very narrow timeframe.  Indeed, just last Friday and Saturday, counsel for Metaxas and Giuliani appeared in person with their clients for depositions in New York as promised and in a professional manner.

21.     Oltmann's conduct undermines these legal proceedings.  Plaintiff should not be punished by having to carve out additional time to respond to another stunt by Oltmann, especially one for which Oltmann insists he will not provide the necessary testimony.  Furthermore, the Court has already denied that specific request.  Defiance of a court order should not be rewarded with recission of that order in favor of the offending party.

22.     Oltmann's claim that revealing the identities of the participants on the "Antifa call" will put his conduit in danger is ridiculous on its face.  If Oltmann was being

truthful, Dr. Coomer would already know many of the people on the call and Oltmann's conduit, in theory, would have been at risk for almost a full year.  This charade must end.

A.      **Plaintiff Requests Sanctions under C.R.C.P 37**

23.     C.R.C.P. 37(b)(2) expressly authorizes this Court to issue an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claims of the party obtaining the order; an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; an order staying further proceedings until the order is obeyed; or rendering a judgment of default against the disobedient party.

24.     The Rule further provides that if a party fails to obey a court order to provide discovery, a court may impose "just" orders regarding the failure, including an order of contempt.  The rule goes on to state that a court "*shall* require the party failing to obey the order, *or the attorney advising the party, or both*, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."  *Id*. (emphasis added).

25.     C.R.C.P. 37(d) states that "[i]f a party or an officer, director, or managing agent of a party or a person designated pursuant to C.R.C.P. Rules 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court . . . may make such orders in regard to the failure as are just . . . ."

26.     Sanctions and the nature of sanctions are within the "sound exercise of the trial court's discretion." *Newell v. Engel*, 899 P.2d 273, 275 (Colo. App. 1994).   A trial court's decision regarding sanctions will not be overturned unless the decision constitutes an abuse of discretion.   *Id*. at 275-76.   "A court should impose a sanction that is commensurate with the seriousness of the disobedient party's conduct."   *Id*. at 276. Although willfulness is a factor to consider in imposing sanctions (and there is no doubt that Oltmann willfully defied the Court's order regarding his deposition here), a party *does not even have to* engage in willful conduct for a court to impose sanctions for failure to appear at a deposition.  *Id*. at 277.

27.     A trial court has authority to "choose from a broad range of sanctions" for failure to attend a deposition, including staying the proceedings until the discovery order is obeyed, an order designating facts as established, an order prohibiting the disobedient party for establishing a claim or defense.  *See Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677-78 (Colo. 1987).[12]  In *Frederick on behalf of LF v. Panda No. 1, LLC*, 2018 WL 4627105 (D. Colo. Sept. 26, 2018), the court imposed significant sanctions for a plaintiff's failure to comply with its orders and discovery obligations.   *Id*. at *4.   The sanctions included: (1) an order of contempt against the plaintiff and his counsel; (2) a "coercive fine and compensatory monetary award" of all fees and costs incurred by the defendant; and (3) dismissal of the action with prejudice.  *Id*.

---

[12]  In *Kwik Way*, 745 P.2d 672, 676 (Colo. 1987), the Colorado Supreme Court found that it could look to federal interpretation of Federal Rule Civil Procedure 37 in determining the standards for imposition of sanctions.

28.     Given the conduct involved here, the Court has wide discretion to impose any one or all of these sanctions.

**B.      Plaintiff Requests an Order to Show Cause**

29.     Contempt can be either direct or indirect.  Direct contempt is "contempt that the court has seen or heard and is so extreme that no warning is necessary or that has been repeated despite the court's warning to desist."  C.R.C.P. 107(a)(2).   Indirect contempt is "contempt that occurs out of the sight or hearing of the court." C.R.C.P. 107(a)(3).

30.     Rule 107 distinguishes between two types of contempt sanctions, punitive and remedial.  C.R.C.P. 107(a)(4) and (5).  Punitive sanctions are criminal in nature and are designed to punish "by unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court." C.R.C.P. 107(a)(4); *In re Marriage of Cyr and Kay*, 186 P.3d 88, 92 (Colo. App. 2008). Because the purpose is to punish, and the power to punish for contempt should be used sparingly, the contemnor's mental state of willful disobedience must be shown.  *In re Marriage of Nussbeck*, 974 P.2d 493, 499 (Colo. 1999).

31.     In contrast to punitive sanctions, remedial sanctions are civil in nature and are intended "to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform."  C.R.C.P. 107(a)(5).

32.     Oltmann's contempt for this Court is undeniable.   He has shown his contempt indirectly through his numerous public statements both impugning the Court and expressing his intention to not abide by this Court's discovery orders.

C.R.C.P. 107(a)(3).  He has also shown his contempt directly by shouting interjections during Court hearings,[13] and now through his refusal to appear for a court ordered deposition in the courthouse.  C.R.C.P. 107(a)(2).

33.    Oltmann's refusal to appear and testify under oath is especially concerning because his public schedule suggests he is instead using his time to continue spreading lies about Dr. Coomer, and issue calls to arms to his audience.  As Magistrate Judge Neureiter recently noted in ordering sanctions in another Colorado case involving groundless allegations of election fraud arising from the 2020 presidential election, "Albeit disorganized and fantastical, the Complaint's allegations are extraordinarily serious and, if accepted as true by large numbers of people, are the stuff of which violent insurrections are made."[14]  *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 3400671, at *3 (D. Colo. Aug. 3, 2021).  Oltmann's lies are similarly dangerous, and similarly geared toward encouraging political violence.

34.    Other courts that address the gravity of false allegations around election fraud, including with respect to other defendants in this case, have also found that the significant harm to the public interest caused by repetition of baseless election fraud falsehoods warrants strong action by the courts.  For example, the Supreme Court of the State of New York Appellate Division recently issued an interim suspension of Defendant

---

[13] **Exhibit 12**, Transcript of July 2, 2021 hearing at 13:17-15:8.

[14] *See* Rosalind S. Helderman, *'The stuff of which violent insurrections are made:' Federal judge punishes Colorado lawyers for 2020 election lawsuit*, WASHINGTON POST, Aug. 4, 2021, https://www.washingtonpost.com/politics/colorado-sanctions-trump-lawsuit/2021/08/04/704dec92-f53a-11eb-a49b-d96f2dac0942_story.html (last visited Aug. 10, 2021).

Giuliani's license to practice law.  That order referenced many known falsehoods that

Defendant Giuliani continued to promote.  The Court there stated,

> [W]e conclude that there is uncontroverted evidence that respondent communicated demonstrably false and misleading statements to courts, lawmakers, and the public at large in his capacity as lawyer for former President Donald J. Trump and the Trump campaign in connection with Trump's failed effort at reelection in 2020.  These false statements were made to improperly bolster respondent's narrative that due to widespread voter fraud, victory in the 2020 United States presidential election was stolen from his client.  We conclude that respondent's conduct immediately threatens the public interest and warrants interim suspension from the practice of law, pending further proceedings before the Attorney Grievance Committee.

**Exhibit 13**, at p. 2.

35.     This case meets the standards for both punitive and remedial sanctions.

Oltmann knows of the Court's orders compelling him to disclose his conduit for the Antifa

call, as well as the other participants on that call, and he knows that he was ordered to

appear for a deposition in the Denver County Courthouse on August 11, 2021.  It is within

his ability to comply with that order, and he has repeatedly made public statements about

his refusal to do so.  While Plaintiff believes that the standard for punitive sanctions for

contempt is met, he only seeks remedial sanctions for contempt at this time.

36.     Given the extraordinarily serious nature of the false allegations that

Oltmann continues to publish to live and online audiences, Plaintiff believes remedial

sanctions, including incarceration unless and until Oltmann purges his contempt in this

case, are both warranted and essential under the circumstances.  *See* C.R.C.P. 107(d)(2)

("If the contempt consists of the failure of the person to perform and the court finds the

person has the present ability to perform the act so ordered, the person may be fined or

imprisoned until its performance.") Unless and until Oltmann is finally made to testify under oath, he will continue to profit from his falsehoods. These falsehoods present a clear and present danger to Dr. Coomer's life, and an immediate threat to the public interest.

**REQUEST FOR RELIEF**

37. Based on the conduct described above, Plaintiff believes the following relief is both warranted and commensurate with Oltmann's conduct. All of the relief sought is authorized by C.R.C.P. 37 and C.R.C.P. 107:

    a. An order establishing adverse findings of fact and/or inferences in connection with the pending Anti-SLAPP motions against Oltmann, including without limitation, a finding that Oltmann lacks credibility as the primary source of the defamatory statements about Dr. Coomer; a finding of the probable falsity concerning the information Oltmann provided about Dr. Coomer to the Defendants and to the general public; and a finding that Oltmann made defamatory statements about Dr. Coomer and did so with actual malice; a finding that Dr. Coomer did not participate in the alleged Antifa call and did not make the statements attributed to him by Oltmann; and a finding that Oltmann's claim that Dr. Coomer could or did rig the 2020 Presidential election is inherently implausible. *See* C.R.C.P. 37(b)(2)(A).

    b. An order requiring Oltmann to immediately produce legible and uncorrupted documents to Plaintiff and for Oltmann's counsel to contact their client and to arrange for such production and insure its completeness and legibility;

    c. An award against Oltmann, FEC United, Shuffling Madness Media, and their counsel, of Plaintiff's reasonable fees and costs associated with his attorneys' attempts to obtain a complete document production and Oltmann, FEC United, and Shuffling Media Madness' depositions, including but not limited to: the fees and costs associated with this motion and any reply brief; the fees and costs associated with preparation and attendance at the hearings that involved issues related to Oltmann's deposition; the fees and costs associated with attendance of counsel and the court reporter at

Oltmann's August 11, 2021 scheduled deposition; and the fees and costs associated with attendance of counsel and the court reporter at a forthwith deposition at the courthouse.  *See* C.R.C.P. 37(b)(2); C.R.C.P. 37(d).

d.     An order to show cause why Defendants Oltmann, FEC United, and Shuffling Madness Media, Inc. should not be held in Contempt of Court for failure to appear at court-ordered deposition or present a witness with adequate knowledge under C.R.C.P. 37(b)(2)(D), C.R.C.P. 37(d), and C.R.C.P. 107; and

e.     Remedial sanctions pursuant to C.R.C.P. 107(d)(2), including a per diem fine and/or imprisonment of Oltmann unless and until he abides by the Court's July 7, 2021 Order, presents himself for deposition at the courthouse, and fully and non-evasively responds to counsel's questions both on behalf of himself individually as well as on behalf of FEC United and Shuffling Madness Media.

## PRAYER

For these reasons, Plaintiff Eric Coomer prays that this Court enter an order imposing sanctions against Defendants Joseph Oltmann, FEC United, and Shuffling Madness Media, Inc. dba Conservative Daily.  Plaintiff further requests the Court issue a show cause order for Oltmann to appear in this Court forthwith and for such further relief as the Court deems just and proper.

Respectfully submitted this 18th day of August 2021.

_/s/ Charles J. Cain_
Charles J. Cain, No. 51020

## CERTIFICATE OF CONFERRAL

Plaintiff's counsel certifies that he conferred with counsel for Oltmann at the courthouse regarding the nature and relief sought in this motion. Oltmann's counsel indicated that they expected that Plaintiff would file such a motion seek a show cause order and adverse findings of fact. Given the circumstances, Plaintiff's counsel does not believe further conferral will serve either the parties' or the Court's interest in compliance with its orders.

_/s/ Charles J. Cain_
Charles J. Cain, No. 51020

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion has been served on all parties receiving notice through ICCES on this 18th day of August 2021.

_/s/ Charles J. Cain_
Charles J. Cain