1

```
DISTRICT COURT, CITY AND COUNTY OF )
DENVER, COLORADO                   )
STATE OF COLORADO                  )
Court Address:                     )
1437 Bannock Street                )
Denver, Colorado  80202            )
_____)
                                   )
Case No.: 2020CV34319              )
Div./Ctrm.: 409                    )
_____)
                                   )
Plaintiff:  Eric Coomer, Ph.D.,    )
                                   )
vs.                                )
                                   )
Defendants:  Donald J. Trump for   )
President, Inc.; Sidney Powell;    )
Sidney Powell, P.C.; Defending the )
Republic, Inc.; Rudolph Giuliani;  )
Joseph Oltmann; FEC United;        )
Shuffling Madness Media, Inc., dba )
Conservative Daily; James Hoft; TGP)
Communications, LLC, dba The       )
Gateway Pundit; Michelle Malkin;   )
Eric Metaxas; Chanel Rion; Herring )
Networks, Inc., dba One America    )
News Network; and Newsmax Media,   )
Inc.                               )
_____)
                                   )
Attorney for Defendants Sidney     )
Powell and Sidney Powell, P.C.     )
Barry K. Arrington                 )
Arrington Law Firm                 )
3801 East Florida Avenue, Suite 830)
Denver, Colorado 80210             )
(303) 205-7870                     )
                                   )
Shaun Pearman                      )
The Pearman Law Firm, P.C.         )
4195 Wadsworth Boulevard           )
Wheat Ridge, Colorado 80033        )
(303) 991-7601                     )
```

_____
                VIDEOCONFERENCE OF ERIC COOMER

                   September 23, 2021
_____

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

2

```
1              The above-entitled videoconference (Zoom)
   deposition was taken on behalf of the Defendants Sidney
2  Powell and Sidney Powell, P.C., on September 23, 2021,
   at 11:33 a.m., before Jana Mackelprang, Certified
3  Realtime Reporter, Registered Professional Reporter,
   and Notary Public.

4

5  VIDEOCONFERENCE APPEARANCES:
   For the Plaintiff:
6           Charles J. Cain, Esq.
            Brad Kloewer, Esq.
7           Steve Skarnulis, Esq.
            Zach Bowman, Esq.
8           Cain & Skarnulis PLLC
            P.O. Box 1064
9           Salida, Colorado 81201
            (719) 530-3011
10          ccain@cstrial.com
            skarnulis@cstrial.com
11          zbowman@cstrial.com

12          Thomas M. Rogers, III (Trey), Esq.
            Recht Kornfield PC
13          1600 Stout Street, Suite 1400
            Denver, Colorado 80202
14          (303) 573-1900
            trey@rklawpc.com

15
   For the Defendant Donald J. Trump For President, Inc.:
16          Eric R. Holway, Esq.
            Nicole Grimmesey, Esq.
17          Jackson Kelly PLLC
            1099 18th Street, Suite 2150
18          Denver, Colorado 80202
            (303) 390-0016
19          eric.holway@jacksonkelly.com
            nicole.grimmesey@jacksonkelly.com

20
   For the Defendant Defending the Republic, Inc.:
21          Michael W. Reagor, Esq.
            Christopher P. Seerveld, Esq.
22          Dymond Reagor, PLLC
            8400 East Prentice Avenue, Suite 1040
23          Greenwood Village, Colorado 80111
            (303) 734-3400
24          mreagor@drc-law.com
            cseerveld@drc-law.com

25
```

Calderwood-Mackelprang, Inc.  303.477.3500

3

```
 1   VIDEOCONFERENCE APPEARANCES (Continued):

 2   For the Defendants Sidney Powell and Sidney Powell,
     P.C.:
 3           Barry K. Arrington, Esq.
             Arrington Law Firm
 4           3801 East Florida Avenue, Suite 830
             Denver, Colorado 80210
 5           (303) 205-7870
             barry@arringtonpc.com
 6
             Shaun Pearman, Esq.
 7           The Pearman Law Firm, P.C.
             4195 Wadsworth Boulevard
 8           Wheat Ridge, Colorado 80033
             (303) 991-7600
 9           shaun@pearmanlawfirm.com

10   For the Defendants Oltmann, Shuffling Madness Media,
     and FEC United:
11           Andrea M. Hall, Esq.
             P.O. Box 2251
12           Loveland, Colorado 80539
             (970) 419-8234
13           andrea@thehalllawoffice.com

14           Ingrid DeFranco, Esq.
             Law Office of Ingrid J. DeFranco
15           P.O. Box 128
             Brighton, CO, 80601-0128
16
     For the Defendants James Hoft and TGP Communications,
17   LLC, d/b/a The Gateway Pundit:
             Jonathan Burns, Esq.
18           The Burns Law Firm
             P.O. Box 191250
19           St. Louis, Missouri 63119

20   For the Defendant Michelle Malkin:
             Gordon Queenan, Esq.
21           Patterson & Ripplinger, PC
             5613 DTC Parkway, Suite 400
22           Greenwood Village, Colorado 80111
             (303) 741-4539
23           gqueenan@prpclegal.com

24

25
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

4

```
 1   VIDEOCONFERENCE APPEARANCES (Continued):

 2   For the Defendant Eric Metaxas:
             Margaret Boehmer, Esq.
 3           Gordon & Rees
             555 17th Street, Suite 3400
 4           Denver, Colorado 80202
             (303) 534-5160
 5           mboehmer@grsm.com

 6   For the Defendants Chanel Rion and One America News
     Network:
 7           Blaine Kimrey, Esq.
             Bryan Clark, Esq.
 8           Vedder Price
             222 North LaSalle Street
 9           Chicago, Illinois 60601
             (312) 609-7865
10           bkimrey@vedderprice.com
             bclark@vedderpice.com
11
             Stephen Dexter, Esq.
12           Lathrop GPM LLP
             1515 Wynkoop Street, Suite 600
13           Denver, Colorado 80202
             (720) 931-3200
14           stephen.dexter@lathropgpm.com

15           Eric Early, Esq.
             Jeremy Gray, Esq.
16           Early Sullivan Wright Gizer & McRae LLP
             6420 Wilshire Boulevard, 17th Floor
17           Los Angeles, California 90048
             eearly@earlysullian.com
18           jgray@earlysullivan.com

19   Also Present:
             Joseph Oltmann
20           Sidney Powell
             Charles Herring
21           Robert Herring
             Abbie Frye, Esq.
22

23

24

25
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

5

```
 1                    EXAMINATION INDEX

 2   By Mr. Arrington                        Page 7

 3   By Ms. Hall                             Page 107

 4

 5

 6                     EXHIBIT INDEX
     FOR IDENTIFICATION                      INITIAL
 7                                           REFERENCE

 8   Exhibit P18 - "He Was the 'Perfect Villain'    10
        for Voting Conspiracists"
 9
     Exhibit P19 - Denver Post "Guest Commentary"   43
10
     Exhibit P21 - "On Edge:  There's a $1,000,000  52
11      Bounty on His Head and He Can't go Home"

12   Exhibit P22 - Screenshots in Coomer's most    100
        recent court filing
13
     Exhibit P23 - Coomer's 80-some Facebook Posts  16
14

15

16

17

18

19

20

21

22

23

24

25
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                      b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

6

```
 1              P R O C E E D I N G S
 2         WHEREUPON, the following proceedings were
 3   taken pursuant to the Colorado Rules of Civil
 4   Procedure.
 5              *      *      *      *      *
 6              THE COURT REPORTER:  Will counsel please
 7   stipulate that the court reporter is authorized to
 8   administer the oath remotely; that no objection to
 9   admissibility of the deposition will be made based on
10   validity of the oath; and that Dr. Coomer is who he
11   says he is so that I may swear him in remotely?
12              MR. ARRINGTON:  So stipulated on behalf
13   of Ms. Powell and Powell, PC.
14              MR. CAIN:  Plaintiff stipulates as well.
15              MR. ARRINGTON:  And since there's so many
16   people involved here, what's typically happened in the
17   past, Jana, is you ask if anyone doesn't stipulate; and
18   if not everybody -- if no one says anything, you can
19   take that as an unanimous stipulation.
20              Does anyone object to that stipulation?
21   Okay.
22              ERIC COOMER, Ph.D.,
23   having been first duly sworn to state the whole
24   truth, testified as follows:
25   >>>
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

7

1                    EXAMINATION

2   BY MR. ARRINGTON:

3        Q.     **Thank you for appearing this morning,**

4   **Dr. Coomer.**

5            **If you could please just state your name and**

6   **address for the record.**

7        A.    Yes.  Eric Coomer, Salida, Colorado.

8                 MR. ARRINGTON:  And before we get

9   started, we're going to make a couple of things for the

10  record.  One of the things that we've been doing in all

11  of these depositions is that an objection by one party

12  will be counted as an objection by all parties.

13                The other stipulation is that Mr. Cain is

14  going to perhaps make some scope objections.

15                And, Mr. Cain, if you would like to

16  state, with that, what you mean by that.

17                MR. CAIN:  Yeah, let me explain.  Just

18  for ease here, if I make an objection as to the scope

19  of the question or the question is seeking privileged

20  information -- so if I say "scope" or "privileged,"

21  that is an instruction by me to Dr. Coomer to not

22  respond to that question because it would exceed the

23  Court's order of September 7th with respect to this

24  deposition.

25                So just to reiterate, if I say "scope,"

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

8

 1 | that's an instruction to Dr. Coomer to not respond to
 2 | that question because it's outside the scope of the
 3 | order.
 4 |             MR. ARRINGTON:  Okay.  And so stipulated.
 5 |             And the other thing that I would like to
 6 | clarify --
 7 |             (Distortion.)
 8 |             MR. ARRINGTON:  Mr. Rogers, can you --
 9 | can you mute, please.
10 |             Okay, thank you.
11 |             So the other thing is that I anticipate
12 | you'll be making preservation objections as well, and
13 | the witness will -- unless you instruct him not to
14 | answer, will, after you've made your preservation
15 | objection, answer.
16 |             MR. CAIN:  Yes, thank you.  Absolutely.
17 |             MR. ARRINGTON:  Okay.
18 |      Q.    (By Mr. Arrington) So let's get started.
19 |             Dr. Coomer, typically, at the start of
20 | the deposition, we make some -- a record in terms of
21 | your capacity to -- to participate in the objection
22 | [sic] today.  One of the things that has come to light
23 | is that you have, in the past, struggled with
24 | substances.  And I wanted to know if you are, in fact,
25 | under the influence of any substance today.

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

9

1       A.     No, I'm not.

2       Q.     Okay.  When is the last time that you

3  ingested cocaine?

4              MR. CAIN:  Objection.  Don't respond to

5  that question.

6       Q.     (By Mr. Arrington) Okay.  When was the

7  last time you used heroin?

8              MR. CAIN:  Objection.  Don't respond to

9  that question.

10      Q.     (By Mr. Arrington) When is the last time

11  you used any mind-altering substance that might affect

12  your ability to answer questions in your capacity

13  today?

14             MR. CAIN:  The same objection.  Don't

15  answer that question.

16             He's indicated he's not under the

17  influence of any substance.

18      Q.     (By Mr. Arrington) I'm going to share my

19  screen.  And I have put up what we're going to mark as

20  Exhibit P --

21             MR. ARRINGTON:  What's the next one?  I

22  think it's 18, isn't it, Jana, P18?

23             THE REPORTER:  Yes.

24             MR. ARRINGTON:  Thank you.

25  >>>

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

10

1              (Exhibit P18 was marked for
2    identification.)
3         Q.     (By Mr. Arrington) This is going to be
4    marked as P18.   This is a New York Times magazine
5    article entitled:   "He Was the 'Perfect Villain' For
6    Voting Conspiracists."
7              Have you seen this article before,
8    Dr. Coomer?
9         A.     Yes, I have.
10        Q.     Have you read it?
11        A.     Yes, I have.
12        Q.     When was the last time you read it?
13        A.     Within the last week.
14        Q.     Within the last week.
15              Do you consider yourself familiar with
16   its contents, then?
17        A.     I gave the interview, yeah.
18        Q.     Okay.  So I'm going to go through this.
19   It's going to be a fairly tedious exercise, but we're
20   going to go through several sections of it and see if
21   you said that to this reporter.
22              It says in the very first paragraph, very
23   first line:  "It was already late on November 9."
24              I presume that's November 9th, 2020; is
25   that correct?

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

11

1          A.     Correct.

2          **Q.     "... when Eric Coomer, then the director**

3     **of product strategy and security for Dominion Voting**

4     **Systems, left his temporary office on Daley Plaza in**

5     **Chicago and headed back to the hotel."**

6               **So you went to your -- to the hotel in**

7     **Chicago on November 9th, 2020, correct?**

8               MR. CAIN:  Scope.

9               MR. ARRINGTON:  I beg your pardon?

10              MR. CAIN:  Scope.

11              MR. ARRINGTON:  Okay.  So are you going

12    to have a scope objection for each of the times that we

13    say something about this article, Charles?

14              MR. CAIN:  No, I think the order says, as

15    it relates to public statements, Plaintiff's prior

16    public statements, that certain Facebook posts were

17    fabricated.

18              And so those questions don't relate to

19    the fabrication of Facebook posts.

20              MR. ARRINGTON:  Were you present at the

21    hearing last Friday, the status conference, when the

22    Court specifically stated that I was entitled to

23    inquire about this article?

24              MR. CAIN:  I'm reading her order.

25              MR. ARRINGTON:  Okay.  That's not the

Electronically signed by Jana Mackelprang (001-409-517-3774)                b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

12

1  question I asked.

2              Are you denying that last Friday, when

3  you were sitting right there in front of her, she said

4  that I would have the right to inquire about this

5  article?

6              MR. CAIN:  I'm not denying or confirming

7  anything.  I'm just reading her order.

8              MR. ARRINGTON:  Okay.  We'll call the

9  Court right now.

10             Off the record.

11             (Off the record from 11:40 a.m. to 11:47

12  a.m.)

13             MR. ARRINGTON:  Back on the record.

14       **Q.    (By Mr. Arrington) Dr. Coomer, can you**

15  **see Exhibit P18?**

16       A.    Yes, I can.

17       **Q.    Okay.  And the first thing that's there,**

18  **I've already read.**

19             **So you told the New York Times reporter**

20  **that on November 9th you were in Chicago and went to**

21  **your hotel.**

22       A.    Yes.

23       **Q.    And --**

24             MR. CAIN:  And, Barry, I'm sorry to

25  interrupt you.  Just to clarify the record, I was able

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                          b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

13

1  to find your statement -- well, someone on my staff

2  did.  And our off-the-record discussion was about the

3  fact that I was fine with you asking Dr. Coomer if he

4  made the statements that are attributed to him in the

5  New York Times article.

6              What you said to the Court --

7              MR. ARRINGTON:  Back off the record.  Off

8  the record, Jana.  I'm not going to have Mr. Cain waste

9  my time.

10              MR. CAIN:  I'll give you back this --

11  this comment.  I'm not trying to waste your time.  You

12  can have the -- whatever the minute is that I'm

13  talking.  I just want to make sure we're on the same

14  page.  Okay?  So just credit this to me, not you.

15              And I think it's consistent with kind

16  of -- both of what we were saying.  So you said, Since

17  the New York Times article, we would -- we agree with

18  counsel that the article is absolutely critical in this

19  case, and I intend, at the deposition next Thursday, to

20  ask a simple question to Mr. Coomer -- Dr. Coomer,

21  rather, I apologize -- did he say the things that are

22  attributed to him in this New York Times article?  And

23  he can either state that he stated it or he didn't, but

24  I don't see why we should not be able to ask that.

25              And the Court said, Yeah, I haven't put

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1   any limit on your ability to get that information.

2              And you say, Thank you, Your Honor.

3              So I think that's consistent with what

4   we're talking about, confirming whether he told the

5   New York Times that information.

6              So I think we're on the same page, and

7   you can have whatever time I just took back credited to

8   you.

9        Q.    (By Mr. Arrington) Okay.  We're in the

10  third paragraph.  I've highlighted some information

11  that begins "prone to profanities."

12             Did you tell the New York Times reporter

13  that you were prone to profanities, with a sense of

14  humor that could have blunt force?

15       A.    No, that's not a quote from me.

16       Q.    Okay.  Did you tell the New York Times

17  reporter you travel around the world for competitive

18  endurance bike races?

19       A.    Yes, we did discuss that.

20       Q.    Did you tell the New York Times reporter

21  that you have full-sleeve tattoos, one of Francis

22  Bacon's "Screaming Popes," some Picasso bulls, and

23  half-inch holes in your ears where you once wore what

24  are known as plugs?

25       A.    I discussed my tattoos.  I don't recall

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

15

1   discussing my piercings.

2        Q.    Okay.  Is that, in fact, true, that --

3        A.    That I have piercings?

4        Q.    Excuse me.  You've got to allow me to

5   finish my questions.

6              Is it, in fact, true that you have

7   full-sleeve tattoos and half-inch holes in your ears

8   where you once wore plugs?

9        A.    I have many tattoos.  I have to actually

10  measure the current diameter of the holes in my ears.

11       Q.    Okay.

12       A.    But they're about a half inch.

13       Q.    Okay.  So you watched -- let's go back to

14  the next paragraph, and then the next one.  It says the

15  video you watched in your hotel room.

16              So did you tell the New York Times or

17  the -- we'll call him the Times reporter -- that you

18  watched a video in your hotel room on November 9th of

19  Mr. Oltmann -- or actually Joe Otto at the time?

20       A.    Yes.  To the best of my recollection,

21  yes.  That's -- that's the timeline we're talking

22  about.

23       Q.    And -- and when you were watching this

24  video on November 9th, about 11 minutes, did you tell

25  the Times reporter that about 11 minutes in, you heard

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

16

1  Oltmann say your name, the conversation will be about a

2  man named Eric Coomer, and he spelled it out?

3       A.    No, I don't believe I said that to the

4  reporter.  I believe that she watched the video herself

5  and gave -- and gave those time stamps and quotes.

6       Q.    Okay.  Did you, in fact, watch the video

7  on November 9th and hear your name?

8       A.    Yes.

9       Q.    Okay.  We're on page 2 now.

10          Do you remember -- and, again, on

11  November 9th, watching this video in your hotel room,

12  where Max McGuire read from an anonymous open letter

13  that explained that "while there was no formal

14  organization known as 'antifa,' the ideas the public

15  associates with it are worth supporting" -- "the ideas

16  the public associates with it," rather, "are worth

17  supporting"?

18       A.    Can you repeat that question?

19       Q.    Okay.  Do you remember on November 9th,

20  2020, hearing on this video you were watching, Max

21  McGuire read from an anonymous open letter that

22  explained that "while there was no formal organization

23  known as 'antifa,' the ideas the public associates with

24  it are worth supporting"?

25       A.    I don't remember that exact quote coming

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

17

1   from Mr. McGuire.  I do have a vague recollection that

2   they were going through various private posts of mine,

3   one of which was a satirical Antifa manifesto, in

4   quotes.

5          Q.     What does "satirical" mean?

6          A.     Tongue-in-cheek.  Not serious.

7          Q.     Okay.  I've put up what's going to be

8   marked as Exhibit P23.

9                 (Exhibit P23 was marked for

10  identification.)

11         Q.     (By Mr. Arrington) I'm on page 9 of P23.

12                Is this your Facebook post, Mr. Coomer --

13  or Dr. Coomer?

14         A.     It's a repost that I made on my private

15  Facebook, yes.

16         Q.     Okay.

17         A.     I did not author this.  I reposted it.

18         Q.     Okay.  Which -- which part of it is

19  tongue-in-cheek?

20         A.     All of it.

21         Q.     All of it?  Okay.  So let's go back to

22  satirical.

23                I've got a dictionary.com there.

24  Actually, I've asked it for a definition of satirical.

25  It's the use of irony, sarcasm, ridicule, or the like,

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

18

1   **in exposing, denouncing, or deriding vice, folly,**

2   **et cetera.**

3                **Can we use that as a working definition**

4   **of satirical?**

5                MR. CAIN:  Form.

6                THE DEPONENT:  It's one of.  I'm not

7   going to -- there are a lot of other definitions in

8   there.  Dictionary.com is not the definitive source on

9   definitions of terms.

10       **Q.    (By Mr. Arrington) Okay.  So do you**

11  **dispute that this is what you were using the word**

12  **"satirical" to mean?**

13       A.    It's part of.  I wouldn't say it

14  encompasses all of it, no.

15       **Q.    Okay.  So let us go back to -- let's see**

16  **what dictionary.com says tongue-in-cheek means, if it**

17  **has one.**

18                **No, it's not going to give us one.**

19                **Whimsical.  How about whimsical, joking,**

20  **humorous, jocular?  Is that what you meant?**

21       A.    Again, those are multiple terms.  I'll

22  pick out sarcastic, satirical, flippant, ironic,

23  irreverent, blithe.  Sure.  Dry.  Farcical.

24       **Q.    Okay.  So tell me -- tell me which of**

25  **those terms apply to this document?  What in it is**

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1  **ironic, farcical, whimsical?**

2      A.    So, from my best recollection, this

3  anonymous letter was posted the day after the current

4  FBI released the statement saying that there was no

5  such thing as an organized group called Antifa.

6          So it's clear, when it says, Let us be

7  perfectly clear Antifa isn't an organization.  There

8  are no memberships, no meetings, no dues, no rules, and

9  then it goes on to then describe rules and leaders and

10 structure.

11         That, in itself, is a contradiction,

12 which to me is satirical, tongue-in-cheek, irreverent,

13 and trying to make a statement through that sarcasm.

14     **Q.    Okay.  So you think the article, as a**

15 **whole, is satirical.  Are there any particular**

16 **statements in the article, other than the ones that**

17 **you've already mentioned, that you believe are ironic**

18 **or not serious, tongue-in-cheek, whimsical?**

19     A.    I'd have to reread the entire article,

20 which if you want me to do that right now, I guess I

21 can, but I would say, on the whole, the document stands

22 in and of itself as a satirical, sarcastic post.

23         MR. ARRINGTON:  Off the record.  We'll

24 let you read this on your own time.  When you're ready,

25 we'll have you set down the page and we'll go.  Go

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1  ahead.

2            MR. CAIN:  I'm sorry, you're asking to go

3  off the record?

4            MR. ARRINGTON:  We're off the record.

5  I'm not going to let him waste my time while he reads a

6  document word for word.

7            MR. CAIN:  No, I don't agree to that.

8  I've done -- we've done this throughout all of the

9  depositions, and I'm not going to have him study up on

10  a particular document off the record.

11            MR. ARRINGTON:  No, no.  In other

12  depositions, when someone has said that they needed to

13  read an entire document, you and Mr. Skarnulis have

14  said, Okay, we'll go off the record and he can read

15  that document on a break.  And now you're not giving me

16  the same courtesy, Mr. Cain.  And so --

17            MR. CAIN:  I'm not being discourteous.

18            MR. ARRINGTON:  -- we are going to have

19  to reschedule this deposition because of this.  But

20  if -- I'm going to make a record.

21            The witness has said he needs to read an

22  entire single-spaced, four-page document before he can

23  make any comments about it.  And Mr. Cain is insisting

24  that he do that on the record, knowing that I have one

25  hour.

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1          THE DEPONENT:  No, no.  Hey, I made my

2    statements on this.  I said, as a whole, I view that

3    entire document satirical.  I don't have to parse every

4    single sentence.  Don't need to.  I view the entire

5    document as satirical.

6          There you have it.  That's your answer.

7      **Q.    (By Mr. Arrington) And so I get to ask**

8    **the questions, Dr. Coomer, and one of the questions I'm**

9    **going to ask is:  Which of these things in there**

10   **specifically are whimsical, farcical, tongue-in-cheek?**

11   **And you said you needed to read the entire document**

12   **before you can do that.**

13       A.    Every single line.

14          MR. ARRINGTON:  Every single line.  Okay.

15   A four-page, single-spaced document before he can

16   answer my question, which will probably take up the

17   rest of my deposition time, reading this paper.

18          And so if you're going to insist that he

19   do that on my time, I'm going to make a record of it,

20   and then we'll come back after the Court says you're

21   being ridiculous.

22          Is that what you're going to insist on

23   him doing, Mr. Cain?

24          MR. CAIN:  I'm not going to argue with

25   you.  If there's something specific in this document

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

22

 1  that you want him to comment on, then show it to him.

 2              MR. ARRINGTON:  That's what I did --

 3              MR. CAIN:  I'm sorry --

 4              MR. ARRINGTON:  -- I showed it to him.  I

 5  asked him a question:  What specific in this document

 6  is whimsical, facarical -- farcical, tongue-in-cheek,

 7  and he said he had to read the entire document in order

 8  to tell me.

 9              MR. CAIN:  You can do what you want,

10  Barry.  I'd suggest that you go on the record and ask

11  your questions.

12              MR. ARRINGTON:  Okay.  If I can do what I

13  want, we'll go off the record while he does what he

14  needs to do in order to answer my question.

15              MR. CAIN:  Nope, we're not going to do

16  it.  If there's something in this --

17              MR. ARRINGTON:  And I'm going to ask for

18  fees.  I'm going to ask for fees.

19              MR. CAIN:  -- if there's something in

20  this document that you want to point him to that you

21  need a comment on, then do it.

22              MR. ARRINGTON:  No, Mr. Cain.  I asked

23  him a question about this document, and I asked him to

24  point out what is satirical, whimsical, farcical, and

25  he said he had to read the whole document in order to

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

23

1   do it, and you're saying he had to do that on the

2   record and waste everybody's time.

3              And we're going to come back in a couple

4   of weeks, whenever the Court reschedules this

5   deposition, and we will do that.

6              MR. CAIN:  You can do what you want.

7   We're here to --

8              MR. ARRINGTON:  You know what?  We're

9   going off the record while we call the Court.

10             Off the record, Jana.

11             MR. CAIN:  I thought we were off the

12  record.

13             MR. ARRINGTON:  I hope we've been off the

14  record.

15             (Discussion off the record from 12:02 p.m.

16  to 12:06 p.m.)

17             MR. ARRINGTON:  Back on the record.

18             We're going to, not adjourn, but recess

19  this deposition pending the resolution of the issue

20  about whether Mr. Cain is to waste half an hour of my

21  hour while his client reads this document.  And so --

22             MR. CAIN:  You're mischaracterizing the

23  situation.

24             MR. ARRINGTON:  I'm characterizing it

25  perfectly.

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

24

```
 1                 And we will -- the Court has asked
 2   everybody to go onto its WebEx page, which is public
 3   record, at 12:15.  So we will stand in recess.
 4                 MS. HALL:  Barry?
 5                 MR. ARRINGTON:  Yeah?
 6                 MS. HALL:  Barry, I would also ask that
 7   we address the New York Times issue with the judge, as
 8   well, since she's already going to be on there.
 9                 MR. ARRINGTON:  Well, I don't think that
10   we have a dispute regarding the New York Times issue.
11   Mr. Cain, who obviously already had the quote in hand,
12   even though he was denying it, has specifically
13   agreed --
14                 MR. CAIN:  Barry, look.  I'm trying not
15   to engage because this is ridiculous.  But, no, I
16   didn't have it.  One of my staff folks pulled it while
17   we were talking about it so I could look at it.  Why
18   would you say that?
19                 MR. ARRINGTON:  Well --
20                 MR. CAIN:  I didn't have it.
21                 MR. ARRINGTON:  Okay.  I will take your
22   word for that.  You were not prepared.
23                 MR. CAIN:  No, that's not what I said.
24                 MR. ARRINGTON:  Okay.  See you --
25   everybody will readjourn after the hearing -- reconvene
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                   b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

 1   after the hearing.

 2             (A recess was taken from 12:08 p.m. to

 3   12:38 p.m.)

 4             MR. ARRINGTON:  Back on the record.

 5        Q.    (By Mr. Arrington) Dr. Coomer, we have

 6   Exhibit P23, starting at page 9, on the screen here.

 7             Do you see that?

 8        A.    Yep.

 9        Q.    Okay.  We're going to call this the

10   Antifa Manifesto for short.

11             Is that okay?

12        A.    It's a document that has that title.

13        Q.    Okay.  Well, that's what we'll refer to

14   it as -- for short.

15        A.    It's an alleged -- it's an alleged

16   manifesto.

17        Q.    Okay.  You can characterize it, if you'd

18   like, but we'll refer to it as the Antifa Manifesto for

19   purposes of our discussion today.

20             Have you read the Antifa manifestation --

21   or Manifesto just now, word for word?

22        A.    Yes, I have.

23        Q.    Just a few seconds ago, correct?

24        A.    Well, now we're coming up on a few

25   minutes.

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

26

1          Q.     Okay.  Is it fresh in your mind?

2          A.     Yes, it is.

3          Q.     All the statements are fresh in your

4    mind?

5          A.     I couldn't recite it verbatim, but, yes,

6    I understand the gist of the article.

7          Q.     Okay.  So which of the statements in the

8    document are satirical, the individual statements in

9    the article are satirical?

10         A.     Okay.  If you want to ask me about every

11   individual sentence, we can do that.  So I will wait

12   for you to read each individual statement, sentence,

13   and then I will tell you whether I think it's

14   satirical.

15               But let's try to make this easy on

16   everyone:  I think the document, in totality, is a

17   satirical document as laid out in the opening

18   paragraphs where it clearly states:  Also according to

19   the FBI report that was released the day before --

20         Q.     Okay.  You're now engaging in a

21   filibuster, wasting my time.

22               So the question that's on the table and

23   that you're not responding to, is which of the

24   statements in the article --

25         A.     The document is satirical.

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                          b80d65b6-8bbf-4bf1-8099-35b26e79cf21

1              MR. CAIN:  Hold on.  Object to the
2  sidebar.
3              The question is, which of the statements?
4  So you're going to have to go through and identify
5  which of these paragraph -- or sentences or paragraphs
6  you consider satirical and do that for the entire
7  document.
8              MR. ARRINGTON:  No, I don't have to do
9  that, Mr. Cain.  So I'm going to ask --
10             MR. CAIN:  No, you've asked the question,
11  so Dr. Coomer needs to respond --
12             MR. ARRINGTON:  Are you objecting?  Are
13  you objecting?  Or are you just doing a Wild, Wild West
14  1980s style deposition here?
15             Do you have an objection?  If you don't,
16  you need to be quiet, sir.
17             MR. CAIN:  Yes, you're asking the
18  question --
19             MR. ARRINGTON:  You can't tell me how to
20  run my deposition.  You absolutely cannot do that.
21             If you have an objection, you can put it
22  on the record.  Otherwise, you need to be quiet.
23             MR. CAIN:  What was your question?
24      **Q.     (By Mr. Arrington) Dr. Coomer, do you**
25  **remember, from your perusal of this document, reading**

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1    **it just a few minutes ago, any specific statement that**

2    **you thought was whimsical, satirical, tongue-in-cheek,**

3    **farcical?**

4          A.    Yes.

5          **Q.    Which ones?**

6          A.    Okay.  Let's start at the top.

7                "Public Statements From 'Antifa' In

8    Response To The Threats Issued By United States

9    President Donald Trump," I find satirical.

10         **Q.    Okay.  What's the next one?**

11         A.    "Dear Mr. Trump" I find satirical.

12         **Q.    Okay.**

13         A.    Please stop scrolling, sir.

14               "Let us be perfectly clear:  'Antifa'

15   isn't an organization.  There's no membership, no

16   meetings, no dues, no rules, no leaders, no structures.

17   It is, literally, an idea and nothing more."

18               I find that satirical because it's in

19   direct contradiction of then President Trump trying to

20   designate the organization that his own FBI said wasn't

21   an organization, as a terrorist organization.  So I

22   find those statements satirical.

23         **Q.    You think that statement is untrue?  You**

24   **think Antifa is an organization?**

25         A.    No, I don't.  I think the statement is

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

29

```
 1  satirical --
 2        Q.     Wait.  Wait.
 3               Do you think Antifa is an organization?
 4        A.     No.
 5        Q.     Do you think that there is membership of
 6  Antifa?
 7        A.     No, I do not.
 8        Q.     Do you think that Antifa had meetings?
 9        A.     No, not that I know of.
10        Q.     Do you think that people pay dues to
11  Antifa?
12        A.     Not that I know of.
13        Q.     Do you think that people -- that Antifa
14  has rules?
15        A.     Not that I know of.
16        Q.     Do you think Antifa has leaders?
17        A.     Not that I know of.
18        Q.     Do you think Antifa has structure?
19        A.     Not that I know of.
20        Q.     So do you disagree with anything that
21  that statement says, what we just read?  It's
22  absolutely true, isn't it, in your opinion?
23        A.     No, I didn't say it was absolutely true.
24  To the best of my knowledge --
25        Q.     What part is untrue?
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

30

```
 1        A.     Sir, can I --
 2               MR. CAIN:  Let him finish his --
 3               THE DEPONENT:  Can I finish my answer?
 4        Q.     (By Mr. Arrington) Which part of this is
 5   untrue that we just read?
 6        A.     Something does not have to be untrue to
 7   be satire, sir.
 8        Q.     Okay.  And you can say that later on.
 9               I'm asking you:  Which part of "Antifa
10   isn't an organization.  There's no membership, no
11   meetings, no dues, no rules, no leaders, no structure,"
12   which part of that is untrue?
13        A.     As far as I know, my personal knowledge,
14   none of it is untrue.
15        Q.     So you're -- even though those statements
16   are true, you still think they're satirical?
17        A.     Do you want to keep reading the document,
18   sir?
19        Q.     I've asked you a question.
20        A.     Yes, I do.
21        Q.     Okay.  And there are other true
22   statements in this document that you think are
23   satirical, correct?
24        A.     There are other statements in this
25   document that I believe are satirical, yes.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

31

1        Q.     Okay.  You changed the question.

2               There are other true statements in this

3    document that you think are satirical, correct?

4        A.     Possibly.  I'd have to continue to read

5    each individual statement, and we can do that.

6        Q.     Okay.  So can you -- can you remember any

7    untrue statement in this document that you just read?

8        A.     Any untrue statement.

9        Q.     I'm not asking you to read it again.  I'm

10   asking if you can remember it.  You read it a couple

11   minutes ago.

12              Do you remember any untrue statements?

13       A.     And I clearly said that I did not commit

14   the entire document to memory.

15       Q.     I understand that as well.  What I'm

16   asking you is:  Do you have a specific recollection of

17   any untrue statement in this document that you read a

18   few minutes ago?

19       A.     Yes, I believe --

20              MR. CAIN:  Form.

21              THE DEPONENT:  -- the author, after

22   stating that there is no membership, meetings, or

23   leaders, then proclaims to be a leader, even though he

24   is not a leader that can release a manifesto.

25       Q.     (By Mr. Arrington) Let me ask you this:

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                          b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

32

1  **You don't think Antifa exists as an organization, do**

2  **you?**

3        A.      No, I don't.

4        **Q.      And therefore --**

5        A.      I see no evidence of that.

6        **Q.      And, therefore, in your view, it would be**

7  **impossible, by definition, for there to be an Antifa**

8  **cult; isn't that true?**

9        A.      Correct.

10       **Q.      Let's move on.**

11             **Okay.   We're on page 2 of Exhibit P18.**

12  **It says:   "Coomer watched the video in shock."**

13             **Did you tell the Times reporter that you**

14  **watched the video of Mr. Oltmann in shock?**

15       A.      Since that's not in quotes, I'm not sure

16  that that's an exact quote, but I was shocked watching

17  the video.

18       **Q.      Coomer "is adamant that he never**

19  **participated in any antifa phone call."**

20             **Did you tell the Times reporter that?**

21       A.      Yes.

22       **Q.      And, of course, in your opinion, it's**

23  **impossible to participate in an Antifa phone call**

24  **because Antifa doesn't exist, correct?**

25       A.      I -- I also expressly stated multiple

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

33

1   times --

2          **Q.     Sir, I've asked you a question.  You can**

3   **answer a different question when your counsel has his**

4   **time.**

5                 **The question I have is:  In your view,**

6   **it's impossible to participate in an Antifa phone call**

7   **because Antifa doesn't exist?**

8          A.     No, it's impossible because I was

9   never -- I was never on a call with Antifa.

10         **Q.     Okay.  So you're now saying that it's**

11  **possible to have an Antifa call; you just weren't on**

12  **it?**

13         A.     No, that's not what I said.  I said I was

14  never on a call with Antifa.

15         **Q.     Which is true, as a matter of definition,**

16  **because Antifa doesn't exist, correct, in your view?**

17         A.     To my -- to my personal recollection, I

18  don't know beyond my own sphere of day-to-day life.

19  Got it?

20         **Q.     Don't know what?**

21         A.     Whether Antifa exists or not.  I don't

22  think it does because I've never come in contact with

23  it.  That's not the same thing as you're implying, that

24  I have somehow made a statement that it's

25  self-inflicted. I've never been on an Antifa call.

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

34

1      Q.      Is it possible -- is it possible for you

2  to be on an Antifa call?

3      A.      I have -- me personally?  No, because I'm

4  not a member of that organization, if one exists.

5      Q.      So it is an organization?

6      A.      Not that I know of.  That's why I'm not a

7  member.

8      Q.      But you don't believe that it does?

9      A.      According to all of the evidence that

10  I've seen, including from the FBI under the Trump

11  Campaign, the Trump presidency, they said it doesn't

12  exist.  I'll give them the credit.

13      Q.      Okay.  So did you tell the Times reporter

14  that before you left for work on November 10, you

15  checked the settings on your Facebook account?

16      A.      Yep.

17      Q.      Did you wonder whether you had been

18  careless?

19      A.      Yes.

20      Q.      Did you think that your privacy settings

21  had ensured that your personal posts were only visible

22  to your Facebook friends?

23      A.      Yes, that's why I had them set.

24      Q.      So everything in this paragraph, if you

25  can just read this paragraph --

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1        A.      Well, why don't you read it.  You read

2   the first part.

3        Q.      Okay.  Read this paragraph out loud --

4   not out loud but to yourself, to the word "it," and

5   tell me if it's true.

6        A.      Yes, that's true.

7        Q.      Okay.  So did you tell the New York Times

8   reporter that you had considered yourself a skinhead?

9        A.      In the '80s, yes.

10       Q.      So it's true that you told the New York

11  Times reporter that you told -- that you considered

12  yourself a skinhead at one time?

13       A.      At one time, yes, in the past.  Asked and

14  answered.

15       Q.      And so in -- in 2000 you tell -- did you,

16  in 2004, write a climbing board message about your

17  struggles with heroin and cocaine?

18       A.      Yes.

19       Q.      And how much they had damaged your life?

20       A.      Addiction is a horrible disease, yep.

21       Q.      Did you tell the Times reporter that you

22  were -- in 2004 -- you were on the verge of bankruptcy

23  and had lost your marriage and ended up in prison after

24  being charged with several counts of driving under the

25  influence?

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

36

1      A.    I was actually never in prison.  I was in

2  jail.

3      Q.    **Other than that, you told the New York**

4  **Times reporter everything that I just quoted?**

5      A.    Well, the ones that are in quotes, yes.

6      Q.    **You, in fact, did file bankruptcy,**

7  **correct?**

8      A.    Like many unfortunate Americans, yes.

9      Q.    **So did you tell the New York Times**

10 **reporter that, in 2016, you were on Facebook when you**

11 **came across a few posts -- well, let's stop.**

12           **Read to yourself from "In 2016" to**

13 **"linking to both songs" and tell --**

14     A.    Everything in -- sir, everything in

15 quotes are quotes from me that I said.

16     Q.    **So everything in article -- in Exhibit**

17 **P18 that is attributed to you, you in fact told the**

18 **New York Times reporter?**

19     A.    Everything that's in quotes are quotes

20 from me, and that is true for the rest of the article.

21     Q.    **Okay.**

22           MR. ARRINGTON:  Jana, what time -- how

23 much time have we gone?

24           THE REPORTER:  Well, up to the last

25 break, you had been going 35 minutes, but then there

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

37

```
 1   were 13 minutes off of that.  So let's see what we did
 2   since -- I have to go back to the recess and we came
 3   back on.
 4               MR. KIMREY:  Can we go off the record?
 5               MR. ARRINGTON:  Yes.  Off the record.
 6               (A recess was taken from 12:53 p.m. to
 7   12:55 p.m.)
 8               THE REPORTER:  I have 36 minutes on the
 9   record.
10               MR. ARRINGTON:  Okay.  We've been going
11   for about an hour and half, let's take a --
12               THE REPORTER:  Oh.
13               MR. ARRINGTON:  Oh, sorry.  Just so you
14   know, I have much less than 36 minutes.
15               THE REPORTER:  Much less than 36 minutes?
16               MR. ARRINGTON:  Let's take a 15-minute
17   break.  We'll go back on the record at -- I'm talking
18   Mountain time -- 1:10.  Okay?
19               MR. CAIN:  Sure.
20               (A recess was taken at 12:56 p.m. to 1:13
21   p.m.)
22        Q.    (By Mr. Arrington) Dr. Coomer, I put up
23   your declaration, Exhibit A to your recent brief, and
24   it talks about your Facebook posts.  And in paragraph
25   19, it says, "In fear for my life, and in light of
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

38

1  security professionals' assessment that the threats

2  against me were legitimate, I immediately began

3  deleting my Facebook posts."

4              How many Facebook posts did you delete,

5  Dr. Coomer?

6        A.    I actually don't recall.

7        Q.    How many Facebook posts did you have?

8        A.    I do not recall.

9        Q.    All right.  Did you delete -- going back

10 to Exhibit -- page 2, which we were looking at earlier

11 as Exhibit 23, you've seen Exhibit 23 before, haven't

12 you?

13       A.    I have.

14       Q.    This is a series of about 80 Facebook

15 posts?

16       A.    I've never counted.

17       Q.    Okay.  But you've seen it before and

18 you're familiar with it?

19       A.    Yes.

20       Q.    And you deleted all these Facebook posts?

21       A.    Actually, I'd have to -- I'd actually

22 have to go back and look.  I can't say that with any

23 certainty.

24       Q.    So there are some Facebook posts you

25 didn't delete.

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

39

1       A.      Well, I certainly didn't delete all my
2  Facebook posts, no.
3       **Q.      Let's talk about a particular time frame.**
4           **From May of 2020 to November 11th, 2020,**
5  **are there Facebook posts you didn't delete?**
6       A.      That I did not delete?  Absolutely.
7       **Q.      Okay.**
8       A.      Well, actually, maybe.  I'd have to go
9  back and look.
10      **Q.      So you don't know how many Facebook posts**
11  **you deleted.**
12      A.      Nope.
13      **Q.      Okay.  And so there might be a lot more**
14  **Facebook posts on your Facebook from this time period**
15  **of 2020 that you didn't delete.**
16      A.      No.  No.  That I can say without a doubt.
17  I know that this is the sum total of Facebook posts
18  that I had.  I cannot tell you definitively which of
19  these I deleted.  None of the posts that I deleted are
20  not contained in this file.
21      **Q.      Okay.  So Exhibit P23 contains all of the**
22  **posts that you deleted?**
23      A.      As well as other posts that I may not
24  have deleted.
25      **Q.      I see.  Okay.  So --**

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

40

```
1        A.    So I -- sorry.  I did not delete -- as
2   far as I can recall, I have never deleted a Facebook
3   post until on or around November 9th or 10th.
4        Q.    Did anyone at Dominion tell you to delete
5   these Facebook posts?
6        A.    No.
7        Q.    Did you tell, as an executive of
8   Dominion, that anyone should delete Facebook posts?
9        A.    No.
10        Q.    Are you aware of a Dominion policy that
11   provides that posts of the Dominion employees, either
12   for or against President Trump, should be deleted?
13        A.    No.
14        Q.    Do you believe such a policy does not
15   exist?
16        A.    Such policy does not exist as far as I
17   know.  Actually, that would be -- that would be illegal
18   under Colorado statute.
19        Q.    To do what?
20        A.    To have such a policy.
21        Q.    I see.  Okay.
22              Your declaration goes on to say, "I
23   generally feared for my own safety and was trying to
24   remove information that I understood was being
25   misconstrued and used to falsely suggest I was somehow
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

41

1    **involved in criminal conduct."**

2              **So when you were deleting these posts,**

3    **whichever ones you deleted, you understood that someone**

4    **could construe those -- could misconstrue them as**

5    **implicating you in wrongful conduct; isn't that**

6    **correct?**

7         A.    No.

8         **Q.    Isn't that what you just said in your**

9    **declaration?**

10        A.    No, that's slightly -- that's slightly

11   parsed.  They were misconstruing it to set a narrative.

12   I do not and never have believed that any of this

13   material could be used to construe that I was involved

14   in a criminal enterprise, no.

15        **Q.    But you agree that it could be**

16   **misconstrued, that it could be used as evidence**

17   **misconstrued that you were engaged in wrongful conduct?**

18        A.    I think it could be used to lie about it,

19   yes.  Not misconstrued.  Lied.

20        **Q.    Okay.  Let's go back to your --**

21        A.    Yes, my affidavit says "misconstrued."

22   Maybe I should have had another sentence.  Misconstrued

23   and then used to lie about a criminal conspiracy.

24        **Q.    Mr. --**

25        A.    There is nothing -- I have never at any

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

42

1    time felt that anything in that data, those posts,

2    could ever be used to show criminal intent, no.

3          Q.     **Who just suggested that you modify your**

4    **answer?**

5          A.     Pardon me?

6          Q.     **Who are you looking at?  Who did you just**

7    **look at?**

8          A.     I can turn my computer around.  I looked

9    at my screen, sir.  I'm the only person in the room

10   that I'm in.

11         Q.     **Is anybody communicating with you during**

12   **this deposition?**

13         A.     No.  My cats have meowed at me once or

14   twice.

15         Q.     **So you -- we're looking at your**

16   **declaration again.  It says you understood that these**

17   **Facebook posts could be misconstrued to suggest --**

18         A.     Falsely suggest.

19         Q.     **You're going to have to let me ask my own**

20   **question, sir.**

21                **You understood that these Facebook posts**

22   **that you deleted could be misconstrued to suggest that**

23   **you had been involved in wrongful conduct.  Didn't you**

24   **understand that?**

25         A.     So I will repeat my answer.  Misconstrued

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                          b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

43

1  and then used to falsely suggest.  So I explained that

2  earlier in my clarification.  They could be

3  misconstrued and then used in lies.  That's not the

4  same as being misconstrued on their own.

5      **Q.    Understood.  And so this was evidence --**

6  **this was evidence that you were worried would be**

7  **misconstrued and falsely used to implicate you in**

8  **wrongful conduct, so you got rid of it, right?**

9      A.    I got rid of it because I was getting

10  death threats, sir.

11      **Q.    Okay.**

12          MR. ARRINGTON:  Read the question back to

13  him, Court Reporter.

14          Listen very carefully to the question,

15  Dr. Coomer.

16          (Whereupon, the record was read back by

17  the court reporter.)

18          THE DEPONENT:  I deleted the Facebook

19  posts, yes.

20          (Exhibit P19 was marked for

21  identification.)

22      **Q.    (By Mr. Arrington) So I've put up**

23  **Exhibit P19, which is a document called "Guest**

24  **Commentary."**

25          **Are you familiar with this document?**

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

44

1      A.      Yeah, that's in The Denver Post.

2      Q.      You wrote it, right?

3      A.      Yes, I did.

4      Q.      And it says, towards the bottom:  "It is
5  unconscionable that certain fringe media personalities
6  looking to increase personal notoriety, website
7  traffic, and ad revenue would continue to prey on the
8  fears of a public."

9              Did you have anyone in particular in mind
10 when you said that?

11     A.      I had multiple personalities in mind.

12     Q.      Which fringe media personalities did you
13 have in mind?

14     A.      I -- off the top of my head, Max McGuire,
15 Joe Oltmann, Michelle Malkin, Sidney Powell, Rudy
16 Giuliani, Eric Trump, Eric Metaxas, Clay Clark, Randy
17 Corporon.

18     Q.      Okay.  And they were -- they were -- you
19 were aware from approximately November 9th of 2020,
20 that they were making the Facebook posts that we just
21 looked at in Exhibit 23 public, right?

22     A.      Yes.  On or about November 9th, yeah.

23     Q.      And so that's what you were talking about
24 in terms of these fringe personalities generating fear
25 by trafficking those Facebook posts?

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

45

1        A.    Nope.

2        Q.    Okay.  And then it says, "Additionally,

3   any posts on social media channels purporting to be

4   from me have also been fabricated."

5             So you were saying that Facebook posts

6   that --

7        A.    No, I was not --

8        Q.    You're going to have to let me answer

9   my -- ask my questions.  You can talk about what you

10  want to say after the question is completed.

11            Can we have that understanding, sir?

12       A.    Yes, we do.

13            MR. CAIN:  Object to the sidebar.

14       Q.    (By Mr. Arrington) So it says,

15  "Additionally, any posts on social media channels

16  purporting to be from me have also been fabricated."

17            So you were accusing Mr. Oltmann of

18  fabricating those Facebook posts, weren't you?

19       A.    No, I was not.

20       Q.    "I do not have a Twitter account and my

21  Facebook account is not active."

22            You were trying to imply that you didn't

23  have Facebook accounts -- posts such as those exposed

24  by Dr. -- or Mr. Oltmann, weren't you?

25       A.    No, I was not.

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

46

1        Q.        So you never had those particular
2   Facebook posts in mind when you said that they were
3   being fabricated?
4        A.        Nope.
5        Q.        Okay.   What did you -- what social media
6   posts did you have in mind?
7        A.        So if you scroll up at the top -- and can
8   we get a date stamp on this?
9        Q.        No, I'm asking you a question.
10                 What social media posts did you have in
11  mind?
12       A.        Okay.  So, actually, I'll look at the
13  bottom.   The date stamp is December 8th.
14                 On December 8th and the week preceding
15  December 8th, when I was writing this op-ed, there were
16  multiple people that had fake accounts that were using
17  my profile pictures and my name and posting things.
18  That is exactly what I had in mind when I wrote this.
19                 At the time that this article was
20  published, my Facebook was completely locked down.   It
21  was actually locked down before this, but that's a
22  different question that you haven't asked.
23                 So that is exactly what I had in mind.
24  "Purporting" is an active verb in the current context
25  and tense of when I wrote this article.   It does not

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

47

1   speak --

2       Q.    And so -- are you finished?

3       A.    It does not speak to any past Facebook

4   posts.  Current.

5       Q.    Are you finished?

6       A.    Yep.

7       Q.    So were these fake social media posts in

8   the national news, as far as you know?

9       A.    I have no idea.

10      Q.    Okay.  But you knew that the Facebook

11  posts that Mr. Oltmann had produced and circulated were

12  in national news, right?

13      A.    They were on -- I saw them on -- on his

14  podcasts and various other outlets, yes.

15      Q.    And you knew that they were in the

16  national news.

17      A.    I guess you'd have to define "national

18  news" for me, sir.

19      Q.    What do you think the word "national

20  news" means, Dr. Coomer?  Are you unfamiliar with that

21  term?

22      A.    Again, maybe define it.

23      Q.    You know --

24      A.    Credible news sources?

25      Q.    You have a Ph.D.  Do you know what the

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

48

1   phrase "national news" means?

2         A.    I know --

3         Q.    **We can do this all day long, if you want**

4   **to.**

5         A.    I know what it's commonly conferred to

6   mean.

7         Q.    **Give me -- give me your definition of**

8   **"national news."**

9         A.    Credible news that's carried nationally.

10        Q.    **And so --**

11        A.    I don't know if I would call a podcast

12  national news.

13        Q.    **Okay.  So you --**

14        A.    I don't know if I would call -- I don't

15  know if I would call random Twitter accounts national

16  news, sir.

17        Q.    **Would One America News Network, which**

18  **has -- which is broadcast nationally, would that be a**

19  **national news source to you, or are you denying that**

20  **One America News Network is a national news media**

21  **outlet?**

22        A.    I think they have national -- they have

23  national reach, yes.

24              And I've got to be honest that this ...

25              (Audio distortion.)

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

49

```
1                THE DEPONENT:  ... at this point, I'm not

2    sure -- sorry, I'm getting some feedback.  I don't know

3    if somebody needs to mute.

4                MR. CAIN:  Let me look at it.

5                MR. ARRINGTON:  What?

6                MR. CAIN:  I'm seeing if someone is

7    unmuted.

8                MR. ARRINGTON:  Okay.

9                THE DEPONENT:  At this point, I honestly

10   can't say for certain that I saw the Facebook posts on

11   something like OAN.  Where I had seen them, from my

12   recollection, were mostly on Mr. Oltmann's podcasts and

13   random Twitter accounts and also vitriolic e-mails sent

14   to me threatening my life.

15               I can't say for sure if I ever saw those

16   specific Facebook posts on a, quote/unquote, national

17   media outlet.
```

18      **Q.      (By Mr. Arrington) So your testimony here**

19   **today, under oath, is that on December 8, 2020, you**

20   **were unaware that the Facebook posts marked as**

21   **Exhibit P23 were in the national news?**

```
22       A.      As I said, I cannot point to a single,

23   quote/unquote, national media organization that I

24   recall posting them.  I know that they were out in the

25   digital wild.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

50

1      Q.    So the answer to the question is, as far
2   as you knew on December 8, 2020, they were not in the
3   national news.

4      A.    That's not what I said.

5      Q.    Okay.  So were you or were you not aware
6   on December 8, 2020, that the Facebook posts marked as
7   Exhibit P23 were in the national news?

8      A.    I cannot recall a single media outlet
9   that I saw those Facebook posts on.

10      Q.    Did you have a general awareness that
11   those Facebook posts were in the national news?

12      A.    I had a general knowledge that they were
13   out in the digital universe.

14            MR. ARRINGTON:  Can you read the question
15   back to him, Jana?

16            (Whereupon, the record was read back by
17   the court reporter.)

18            THE DEPONENT:  I cannot recall any
19   national news outlet where I saw those Facebook posts.

20            MR. ARRINGTON:  Okay.  That's the answer
21   to a very different question than what I asked.

22            Could you read it again, please, Jana?

23            MR. CAIN:  Object to form.

24            MR. ARRINGTON:  Listen very carefully to
25   the question, Dr. Coomer.

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

51

 1                    (Whereupon, the following record was read

 2     back by the court reporter:  "Did you have a general

 3     awareness that those Facebook posts were in the national

 4     news?")

 5                    THE DEPONENT:  Statements related to the

 6     Facebook posts, I was aware, were being discussed in

 7     the national news.  I do not recall whether the actual

 8     posts appeared on any national news media outlets.

 9          Q.    (By Mr. Arrington) And so it was

10     important to you to address the Facebook posts that you

11     knew were at least being referred to in the national

12     news and rebut them on December 20th -- or December 8,

13     2020, wasn't it?

14          A.    I have never denied that I authored those

15     posts, ever.

16          Q.    Okay.  My question is this:  It was

17     important to you on December 8, 2020, to go into the

18     media and rebut --

19          A.    No.

20          Q.    Okay.  You've got to let me finish.

21                It was important to you on December 8,

22     2020, to go into the media and rebut the idea that you

23     had put those Facebook posts up; isn't that correct?

24          A.    No, absolutely not.  That was not the

25     goal of this at all.  I have never rebutted that I made

Electronically signed by Jana Mackelprang (001-409-517-3774)                                          b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

52

1  those posts.  Not once, sir.  That was not the goal of

2  that op-ed.

3              The goal of that op-ed was to clear my

4  name that I had no role in any alleged Antifa call, any

5  alleged progressive action call, or any statements of

6  trying to throw the election or doing anything of that

7  sort.  That was the expressed goal of that outlet.

8              (Exhibit P21 was marked for

9  identification.)

10      Q.     (By Mr. Arrington) So I've got Exhibit 21

11  on the screen.  It starts "On Edge."  It's from

12  December 22nd, 2020.

13              Are you familiar with this article from

14  the Ark Valley Voice?

15      A.     Yeah.

16      Q.     Reading from the paragraph on the second

17  page:  "Later in the interview, Coomer reiterated that

18  his Facebook account was dormant for about three and a

19  half years."

20              Is that correct, your Facebook account

21  was dormant for about three and a half years?

22      A.     Yep.

23      Q.     "Until the George Floyd murder."

24              So you opened up your Facebook account in

25  May of 2020 in response to the George Floyd murder?

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

53

1        A.      To the best of my recollection, yes.

2        **Q.      "At that point, he began posting here and**

3   **there.  He was not the author of the wild posts being**

4   **circulated.  He doesn't even have a Twitter handle."**

5                **Did you say that to the Ark Valley Voice?**

6        A.      No, I did not.

7        **Q.      So you're saying that the Ark Valley**

8   **Voice just made this up?**

9        A.      So I -- I reviewed the interview.

10  There's an audio-video interview that accompanied

11  this -- accompanies this article.  I reviewed that last

12  night.  And at no point did I ever make that statement,

13  that I was not the author of wild posts being

14  circulated.

15       **Q.      Did you imply it, if you did not -- if**

16  **not expressly make it?**

17       A.      No.  Again, I reviewed the audio-video.

18               I will also point out that I believe the

19  day after this article appeared is when we filed our

20  original suit.  And in there, I made clear statements

21  that I did author those Facebook posts.

22               So that would have been -- that would

23  certainly supersede any setting the record straight.

24       **Q.      So you're saying your original complaint**

25  **in this case admitted to authoring the Facebook posts?**

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

54

1        A.      As far as I recall, I believe that that's

2   explicit in the original.  Again, I don't have

3   everything memorized, but that's my recollection.

4               I've certainly never denied the Facebook

5   posts.  In fact, I've actually stood by them.  That's

6   in the New York Times article.

7        Q.      **Dr. Coomer, it's your testimony that you**

8   **did not state in The Denver Post article that you had**

9   **not -- that the Facebook posts that we've been talking**

10  **about were fabricated?**

11              MR. CAIN:  Form.

12              THE DEPONENT:  That is a fair statement,

13  yes.  I -- I never said or implied that the Facebook

14  posts that were clearly authored by me were fabricated.

15       Q.      **(By Mr. Arrington) Go back on the**

16  **New York Times article.  It says in a paragraph on**

17  **page 9: "On December 8, Coomer responded to some of the**

18  **attacks.  In an op-ed for The Denver Post, he called**

19  **out for the 'fringe media personalities' who 'continue**

20  **to prey on the fears of a public concerned about the**

21  **safety and security of our electoral system.'  He also**

22  **claimed that 'any posts on social media accounts**

23  **purporting to be from me have also been fabricated.'**

24  **And yet, Coomer had written posts that Oltmann had**

25  **highlighted."**

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1          So the Times reporter goes on to say,

2    "Asked about the misleading language, Coomer concedes

3    that his writing could have been clearer."

4          Did you concede that your writing could

5    have been clearer, Dr. Coomer?

6          A.    It probably could have been clearer, yep.

7          Q.    And do you agree with the Times reporter

8    that your statement in The Denver Post was misleading,

9    at best?

10         A.    No, I don't.

11         Q.    So it's your testimony that the Facebook

12   posts that were in the media that you knew were out

13   there and were being talked to -- talked about by

14   people like Mr. Oltmann were not what you were

15   referring to, but certain social media posts that you

16   cannot specifically identify were?

17         A.    I'm sorry, when did I say I couldn't

18   identify those?

19         Q.    Well, I asked you to identify one.  What

20   specific social media post did you refer to that has

21   been fabricated?

22         A.    I -- I think I was pretty clear.  There

23   were multiple accounts that were using my name and

24   profile pics and posting things.

25         Q.    Can you remember any specific post that

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

56

1   **you believe was fabricated?**

2          A.     I -- I've got a screenshot of at least

3   one of them, yeah.  So, yes, I can remember one, yes.

4          **Q.     Okay.  What did it say?**

5          A.     I think something about being a scary

6   clown, the best of my recollection.

7          **Q.     So do you remember any others besides the**

8   **screenshot that you're looking at right now?**

9          A.     I'm not actually looking at a screenshot,

10  sir --

11         **Q.     So you --**

12         A.     -- it was from my recollection.  But I do

13  have screenshots, yes.

14         **Q.     So I thought you said you were looking at**

15  **a screenshot of one of them.  Okay.**

16         A.     No, I said I had a screenshot, sir.

17         **Q.     I see.  Okay.**

18                **So the only specific social media post**

19  **that you can think of right now, sitting here today**

20  **that you're referring to in the December 8th Denver**

21  **Post op-ed was that one about the scary clown?**

22         A.     I cannot remember the specifics of

23  multiple posts that had my name and profile picture

24  attached that were posted, but I do know for a fact

25  that there were multiple.

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1      Q.     Okay.  Any others that you can think of

2  other than the --

3      A.     I believe I've --

4      Q.     Let me finish.  Let me finish.

5             Any others that you can think of other

6  than the, quote/unquote, scary clown post?

7      A.     Not that I recall with specifics.

8      Q.     Okay.  So it's your testimony that all of

9  these Facebook posts that Mr. Oltmann had made public

10  and which you knew were out there in the digital wild

11  and that were being referred to in the national media

12  were not what you were trying to assure people about,

13  but only the ones that were not in the national news

14  that you yourself can't even remember were what you

15  were talking about, right?

16             MR. CAIN:  Form.

17             THE DEPONENT:  That's actually not what I

18  said.  I don't know if these posts were out in the

19  digital world.  I assume they were, at least as much as

20  the other posts that were on the Twitter.  So ...

21      Q.     (By Mr. Arrington) You didn't know that,

22  and now you're just speculating, right?

23      A.     No, they were on Twitter, yes.  I know

24  that for a fact.

25      Q.     Did you -- were you aware that any news

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

58

1   **media organization had picked them up and ran with**

2   **them?**

3          A.     Not that I recall.

4          **Q.     Okay.  So all these social media posts**

5   **that had not been in the news were what you were**

6   **talking about and not the ones that had been in the**

7   **news; is that what you're saying?**

8          A.     Yes.  That's why I used the present tense

9   in the verb.  Not had purported to be me, but

10  purporting to be me.  That's the present tense when

11  this article was written.

12         **Q.     I think it's a yes-or-no question.**

13                MR. ARRINGTON:  Can you read the

14  question, again, Jana?

15                (Whereupon, the following record was read

16  back by the court reporter:  "So all these social media

17  posts that had not been in the news were what you were

18  talking about and not the ones that had been in the

19  news; is that what you're saying?")

20         **Q.     (By Mr. Arrington) Yes or no?**

21         A.     Again, I don't -- I know that those posts

22  were on Twitter.  So when you say "not in the news," I

23  can't speak to that.  But I am speaking specifically

24  to --

25         **Q.     You just said you didn't know whether**

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

59

1    they were in the news or not --

2              THE REPORTER:  Oh --

3              THE DEPONENT:  I'm sorry, you just

4    interrupted me now.

5         Q.    (By Mr. Arrington) Okay.  Did -- let --

6    it sounds like you're backtracking.

7              Are the social media posts -- are you

8    aware of any news organization that had picked up the

9    social media posts that you were, in fact, talking

10   about on December 8 and ran with them?

11             MR. CAIN:  Form.

12             THE DEPONENT:  No, I'm not.

13        Q.    (By Mr. Arrington) Okay.  But you were

14   aware that at least some news organizations had picked

15   up the Facebook posts that Mr. Oltmann had made public?

16        A.    No, I said certain podcasts and Twitter

17   accounts had.  I do not recall whether the news media,

18   national news media, as you put it, had actually posted

19   those.  I -- I can't recall that.

20        Q.    But you do know that they were being

21   talked about in podcasts, and at least Michelle Malkin

22   had talked about them in her podcasts, which had

23   national scope?

24        A.    Yes, they were used to defame me, yes.

25             MR. CAIN:  Object to form.

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                        b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

60

1          Q.     (By Mr. Arrington) I'll ask the question

2    again.

3                 You knew that journalists with national

4    following had used -- had referred to the Facebook

5    posts that Mr. Oltmann had made public?

6                 MR. CAIN:  Form.

7                 THE DEPONENT:  You're asking me to make a

8    judgment on what a journalist is.

9          Q.     (By Mr. Arrington) So are you suggesting

10   that Ms. Malkin was not a journalist?

11         A.     I'm not sure I can make that

12   determination.

13         Q.     Okay.  You knew she had a national

14   following, right?

15         A.     Yes.

16         Q.     Okay.  So you knew that Ms. Malkin, who

17   had a national following, had referred to these

18   Facebook posts, correct?

19         A.     Correct.

20                MR. CAIN:  Form.

21         Q.     (By Mr. Arrington) And yet you were

22   unaware of any national news organization that had

23   covered these fake social media accounts that you say

24   that you were talking about on December 8th?

25         A.     Correct.

Electronically signed by Jana Mackelprang (001-409-517-3774)                                          b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1       Q.    Okay.  So can you explain why you were

2  worried about the fake social media accounts and felt

3  like you had to explain them in The Denver Post when

4  they hadn't been picked up by anyone talking about

5  them, whereas you were ignoring the Facebook posts that

6  had been picked up?

7       A.    Yes.  It was the death threats.

8       Q.    The death threats as a result of what?

9       A.    Of those fake accounts.

10      Q.    Okay.

11      A.    Some death threats included screenshots

12 of those people, yes.

13           MR. KIMREY:  Mr. Arrington, my wife is

14 summoning me, and I don't know why.  Could we take a

15 brief break of five minutes?

16           MR. ARRINGTON:  Okay.  We'll take a

17 five-minute break.

18           How much time has elapsed, Jana?

19           THE REPORTER:  Let me look at the last

20 starting time.

21           MR. ARRINGTON:  Okay.  Off the record.

22 Thank you.

23           (A recess was taken from 1:47 p.m. to

24 1:56 p.m.)

25      Q.    (By Mr. Arrington) Dr. Coomer --

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

62

```
 1                MR. CAIN:  Are we on the record?

 2                MR. ARRINGTON:  Yes.

 3                THE REPORTER:  Yes.

 4        Q.     (By Mr. Arrington) Dr. Coomer, please

 5   describe the scary clown video that you referred to

 6   that you were -- you said you had in mind when you

 7   wrote the December 8th Denver Post piece.

 8        A.     I never said it was a video.

 9        Q.     Okay.  Please describe the scary clown

10   post that you referred to when you were talking about

11   what you had in mind with respect to the December 8th

12   Denver Post piece.

13        A.     There was a Twitter user.  I believe his

14   real name was Larry McDoo.

15                THE REPORTER:  Mc ...

16                THE DEPONENT:  McDoo, M-c-D-O-O.

17                He change his profile pic to be a photo

18   of me from one Halloween costume, and he made several

19   posts over many weeks under my name, purporting to be

20   me at the time.

21                And there were others that I, again,

22   can't recall the details.  At that time, late November,

23   I was in great fear of my life, so I was moving around

24   a lot and under a lot of stress.  So I wasn't always

25   good about --
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

63

1       Q.      (By Mr. Arrington) You've got a narrative
2   going that has nothing to do with the question.
3               So let me just -- so you're saying the
4   scary clown post was, in fact, an authentic picture of
5   you, just being someone who was using it to impersonate
6   you.  Is that what you're saying?
7       A.      No, that's not what I said.  I said he
8   was using an authentic picture of me as his profile pic
9   and then making other posts under that.
10      Q.      Looking at Exhibit P23, page 56, this is
11  a -- purports to be a Facebook post made by you, Eric
12  Coomer, on October 31, 2016.
13              Is this, in fact, something that you did?
14  Is this your post?
15      A.      Yes.  I've already stipulated to that,
16  sir.
17      Q.      And is that a picture of you on page 56?
18      A.      In Halloween makeup, yes.
19      Q.      Is this the scary clown photo to which
20  you were referring that Mr. McDoo had used as his
21  Twitter handle?
22      A.      Yes.
23      Q.      So when you say you were talking about
24  present social media posts on December 8th, what does
25  "present" mean?  I mean, are you talking about --

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

64

1        A.    Can --

2        Q.    Well, excuse me.

3              Were you talking about posts that were at

4    that moment going on, or was there sometime in the past

5    that those posts had been going on?

6        A.    Contemporaneous to when I wrote the

7    article.

8        Q.    So immediately as the article was being

9    written, you're only talking about those posts?

10       A.    Yes.

11       Q.    It had -- so even -- even a post that had

12   gone out the day before, you didn't have in mind?

13       A.    No.

14             MR. CAIN:  Form.

15       Q.    (By Mr. Arrington) We had a double

16   negative there, so let me clarify.

17             If a social media post had gone out the

18   day before, it's your testimony that you did not have

19   that social media post in mind because it wasn't

20   contemporaneous with what you were writing at that

21   moment; is that correct?

22       A.    That's reasonable, yeah.

23       Q.    That's -- well, I don't know if it's

24   reasonable or not.  I'm just asking if that's what you

25   had in mind.

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

65

```
 1                    Is that what you meant?
 2          A.      Yep.
 3          Q.      I'm looking at a Facebook post from
 4   Exhibit P23, page 72, dated July 21, 2016.
 5                    Is this your Facebook post, Dr. Coomer?
 6          A.      Yes, it is.
 7          Q.      I want you to read it out loud into the
 8   record, please.
 9          A.      "Rant on," is essentially what the
10   hashtag means.
11                    "Facebook friend land - open call ..."
12                    "If you are planning to vote for that
13   autocratic, narcissistic fascist asshat blowhard and
14   his Christian jihadist VP pic, UNFRIEND ME NOW!  No,
15   I'm not joking.  I'm all for reasoned political
16   discourse and healthy debate - I'm looking at you,
17   Geoffrey Cushing-Murray, Gus Munem, Benjamin Rice - I
18   disagree with you" there on -- "you three on many
19   philosophical grounds but respect your opinions.  Only
20   an absolute FUCKING IDIOT could ever vote for that
21   wind-bag, fucktard FASCIST RACIST FUCK!  No bullshit, I
22   don't give a damn if you're a friend, family or random
23   acquaintance, pull the level, mark an oval, touch a
24   screen for that carnival barker ... UNFRIEND ME NOW.  I
25   have no desire whatsoever to ever interact with you.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                                b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

66

1  You are beyond hope, beyond reason.  You are controlled
2  by fear, reaction and bullshit.  Get your shit
3  together.
4            "Oh, if that doesn't persuade you, FUCK
5  YOU!  Seriously, this fucking ass-clown stands against
6  everything that makes this country awesome!  You want
7  in on that?  You deserve nothing but contempt."
8            Hashtag untrump me.
9            "I think that hashtag might go viral."
10           Hashtag taking a stand.
11           End rant.
12           "No really, unfriend me!"
13           Untrump me.
14           You are beyond hope.
15           Really end rant.
16           Actually, I added that word.
17           "Edit, I put the end-tag in the wrong
18  spot ..."
19           "2nd edit, these opinions are rational,
20  and completely my own.  They are based in reason and
21  highly credible.  Though they are not necessarily the
22  thoughts of my employer, though if not, I should
23  probably find another job ... Who wants to work for
24  complete morons?  None of my personal opinions affect
25  my professional conduct or attitudes.  I am

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                     b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

67

1  non-partisan.  I am not, however, willing to stand by

2  and watch this great country be" -- can't read those

3  under the Bates tag -- "saying something, anything."

4             "2nd edit, these opinions" -- oh, here we

5  go, it repeats.

6        Q.    **Right here is where you left --**

7        A.    Yeah, "I am not, however, willing to

8  stand by and watch this great country be taken over by

9  fascists without saying something, anything."

10       Q.    **So you said that these thoughts don't**

11  **necessarily reflect the thoughts of your employer.**

12  **That's Dominion Voting Systems, correct?**

13       A.    At the time, yes.

14       Q.    **Though, if not, you should probably find**

15  **another job?  Is that what you meant to say?**

16       A.    I think that's what's written there, yes.

17       Q.    **So it's your view, if the thoughts**

18  **expressed in this Facebook post did not reflect the**

19  **thoughts of Dominion Voting Systems, that you should**

20  **probably find another job?**

21       A.    If I thought I worked for fascists, I

22  would quit.

23             MR. ARRINGTON:  Jana, could you read the

24  question, please?

25  >>>

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

68

1                    (Whereupon, the following record was read

2    back by the court reporter:  "So it's your view, if the

3    thoughts expressed in this Facebook post did not reflect

4    the thoughts of Dominion Voting Systems, that you should

5    probably find another job?")

6          **Q.     (By Mr. Arrington) Is that true?**

7          A.     I think -- I think I answered that.

8          **Q.     But is the statement -- is the statement**

9    **true?  That if the thoughts -- that it was your view on**

10   **the date of this Facebook post that if the thoughts you**

11   **expressed in it were not shared by Dominion, you should**

12   **get another job.**

13                   MR. CAIN:  Form.

14                   THE DEPONENT:  If I thought I worked for

15   fascists, I would quit.

16         **Q.     (By Mr. Arrington) Okay.  You've avoided**

17   **the question again.**

18         A.     I don't think I have.

19         **Q.     It's a yes-or-no question.  Yes or no --**

20         A.     Yes, I don't work for fascists.

21         **Q.     Yes or no:  It was your view on the date**

22   **of this Facebook post that if Dominion didn't share the**

23   **thoughts you expressed, you should get another job?**

24                   MR. CAIN:  Form.

25                   THE DEPONENT:  I'll answer once again:

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                   b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

69

```
 1   Yes.
 2         Q.      (By Mr. Arrington) Okay.
 3                 MR. KIMREY:  Is that because your
 4   answer --
 5         Q.      (By Mr. Arrington) It was your view at
 6   that time --
 7         A.     If Dominion were fascist, I would quit.
 8         Q.     Okay.  So the answer is yes.  Okay.
 9                 So it was your view that if Dominion did
10   not think that only an absolute fucking idiot could
11   ever vote for Donald Trump, you should get another job?
12         A.     No, if they were fascists.
13         Q.     Okay.  So now you're saying that you
14   don't think that Dominion -- Dominion -- let me back
15   up.
16                 Now your testimony is that you don't
17   necessarily think you should get another job if
18   Dominion didn't think that only an absolute fucking
19   idiot could vote for Trump?
20                 MR. CAIN:  Form.
21                 THE DEPONENT:  I -- I clearly stated that
22   if they were fascists, I would get another job.
23         Q.     (By Mr. Arrington) No, you didn't say
24   that at all.
25         A.     Yes, I did.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1      Q.    Okay.  So let me ask you this:  Do you

2  believe everything you say here in this post that we

3  just read?

4              MR. CAIN:  Form.

5              THE DEPONENT:  I stand by it, yes.

6      Q.    (By Mr. Arrington) So it's your -- it's

7  your position sitting here today, in 2021, that only an

8  absolute fucking idiot could ever vote for Donald

9  Trump?

10      A.    Yes.

11              MR. CAIN:  Form.

12      Q.    (By Mr. Arrington) You hate Donald Trump,

13  don't you, sir?

14      A.    I do not like him at all.

15      Q.    Let me ask the question again:  You hate

16  Donald Trump, don't you, sir?

17              MR. CAIN:  Form.

18              THE DEPONENT:  I do not like him at all.

19      Q.    (By Mr. Arrington) I'm going to ask it

20  one more time:  Do you or do you not hate Donald Trump?

21      A.    I do not like Donald Trump, sir.

22      Q.    You've avoided the question.  I didn't

23  ask --

24      A.    No, I didn't.

25      Q.    Okay.  I did not ask you whether you

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

71

1   liked him or not.  I asked you whether you hated him or

2   not.

3              Do you or do you not hate Donald Trump?

4              MR. CAIN:  Form.

5              THE DEPONENT:  I'm not sure I would

6   characterize it as such, no.  I do not like Donald

7   Trump or his policies.

8        Q.     (By Mr. Arrington) You dislike him

9   intensely, don't you?

10       A.     I would say it's intense.

11       Q.     Intense enough to be characterized as

12  hate?

13       A.     I'm not sure about that.

14       Q.     You're not sure, but you may hate Donald

15  Trump; you just don't know; is that what you're saying?

16       A.     No, I said I wasn't sure if you would

17  characterize it as that.

18       Q.     So you're just going to sit here today

19  and say you don't hate -- do -- is it your testimony

20  today that you don't hate Donald Trump?

21       A.     Again, that's -- that's a

22  characterization I'm not ready to agree to.  I dislike

23  Donald Trump intensely, yes.

24       Q.     So you're unwilling to sit here today and

25  say you don't hate him?

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

72

```
 1              MR. CAIN:  Form.
 2              THE DEPONENT:  Again, hate -- hate's a
 3   different connotation.
 4              MR. ARRINGTON:  Read the question,
 5   please, Jana.
 6              Listen very carefully to the question,
 7   sir.
 8              (Whereupon, the following record was read
 9   back by the court reporter:  "So you're unwilling to sit
10   here today and say you don't hate him?")
11              MR. CAIN:  Form.
12              THE DEPONENT:  Your double negatives are
13   really confusing a lot of times.
14       Q.    (By Mr. Arrington) All right.  So let me
15   ask --
16       A.    No, I would -- I would say that I don't
17   hate him.  I hate his policies and his fascist
18   tendencies.
19       Q.    So you think he's an autocratic,
20   narcissistic fascist, asshat blowhard, but you don't
21   hate him?
22       A.    I absolutely think all of those are true,
23   yes.
24       Q.    But you don't hate him?
25       A.    Again, I wouldn't characterize it as
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

73

1   that.

2        Q.    Let me ask you this:  Could you -- do you

3   agree that someone reading this post on page 72 of

4   Exhibit 23 could be excused for thinking that you hate

5   Donald Trump?

6             MR. CAIN:  Form.

7             THE DEPONENT:  I won't speculate on that.

8        Q.    (By Mr. Arrington) No, I'm not asking you

9   to speculate.  I'm asking you if --

10            MR. CAIN:  You are asking that.  Form.

11       Q.    (By Mr. Arrington) I'm asking you if a

12  reasonable person could read the -- in your view, could

13  a reasonable person read what you wrote on page 72 of

14  Exhibit P23 and come to the conclusion that you hate

15  Donald Trump?

16            MR. CAIN:  Form.  Foundation.

17            THE DEPONENT:  I am neither a

18  psychologist nor a grammarian, so I am not qualified to

19  say how somebody might read this.

20       Q.    (By Mr. Arrington) I understand.  I'm not

21  asking you to speak as a psychologist or a grammarian.

22  I'm asking whether you think, Dr. Coomer, whether you

23  think a reasonable person could read what's written on

24  page 72 and come to the conclusion that you hate Donald

25  Trump?

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

74

```
 1              MR. CAIN:  Form.
 2              THE DEPONENT:  Again, I'm not qualified
 3  to -- to make that assessment on somebody else's
 4  reading.
 5       Q.    (By Mr. Arrington) I'm not asking you
 6  about somebody else's reading.  I'm asking you about
 7  your reading.
 8       A.    No, you weren't.
 9       Q.    Yes.  I'm asking you if you believe that
10  a reasonable person could come to the conclusion that
11  you hate Donald Trump after reading what's on page 72.
12              MR. CAIN:  Asked and answered.
13              THE DEPONENT:  You're asking whether I
14  can get into the mind of somebody else who is not me,
15  reading this.  I cannot do that.
16       Q.    (By Mr. Arrington) So you're saying that
17  someone may or may not come to the conclusion that you
18  hate Donald Trump from reading page 72; you just can't
19  tell?
20       A.    May or may not.
21              MR. CAIN:  Form.
22       Q.    (By Mr. Arrington) That's your testimony
23  under oath today?
24       A.    Yeah.
25       Q.    That somebody could read this and say,
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                                      b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

75

 1   Yeah, that guy doesn't have any problems with Donald

 2   Trump; he loves him, right?

 3          A.     That's not -- that wasn't the question,

 4   sir.

 5          Q.     Okay.  Okay.  I've put up page 4 of

 6   Exhibit P23, a July 6th Facebook post.

 7                 By the way, did you delete the post on

 8   page 72?

 9          A.     No idea.  I'd have to go back and look.

10          Q.     You don't know whether you deleted that

11   or not.

12          A.     No.

13          Q.     Do you have a specific recollection of

14   any of the Facebook posts you deleted?

15          A.     No.  I'd have to go back and look.

16          Q.     But you deleted -- do you know how

17   many -- do you know how many Facebook posts you

18   deleted?

19          A.     No.

20          Q.     It could be dozens, it could be three; is

21   that what you're saying?

22          A.     We covered this earlier.  I do not recall

23   how many I deleted.  I can say with absolute fact under

24   oath that nothing I deleted does not appear here.

25          Q.     So up to 80 Facebook posts you deleted;

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

76

1   is that what you're saying?

2        A.    No, that's not what I said.  I said I

3   don't recall the number I deleted.

4        Q.    So we're on page 4 of Exhibit P23.

5   Please read that into the record starting with "Okay,

6   okay."

7        A.    "Okay, okay.  It was technically June,

8   but I found out recently, and I SOOOO love a good

9   Christmas in July ... Christmas in June?  I dunno, fuck

10  it.  Good riddance, you shitbag - I'm GLAD you're dead.

11  I hope it was painful, but you were probably dosed to

12  high-heaven with your own supply."

13       Q.    Who were you talking about?

14       A.    Jonathan Sackler, the architect of the

15  opioid crisis.  One of them.

16       Q.    So you were glad that Jonathan Sackler

17  was dead and you hoped his death was painful?

18       A.    As a personal sufferer of the opioid

19  crisis --

20       Q.    Mr. Coomer, I asked you a question.

21  You --

22       A.    Yes.  Yeah.  I was happy.  Yep.

23       Q.    Do you think that the average, typical

24  corporate executive, high-salaried, high-ranking

25  corporate executive in his 50s, would be happy that

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1  **someone died and hoped they'd died in a great deal of**

2  **pain?**

3             MR. CAIN:  You don't have to answer that

4  question.  I do have a form objection.  I think it's

5  harassing and irrelevant.

6             If you want to answer it, Dr. Coomer, you

7  can, but you don't have to.

8             THE DEPONENT:  One, I wasn't acting in

9  the capacity of a high-ranking employee of a company.

10  These were my personal statements based on my very

11  personal experience with opiate addiction.  Yeah.

12     Q.    (By Mr. Arrington) Yeah what?

13     A.    I think these were reasonable statements.

14     Q.    **That a typical high-ranking executive in**

15  **his 50s would not say --**

16     A.    That's not what I just said.

17             MR. CAIN:  Form.

18     Q.    (By Mr. Arrington) Okay.  **What my**

19  **question is -- it's very -- it's very specific -- you**

20  **say in here, in your brief, that a lot of what**

21  **Mr. Oltmann said was absurd on its face because no**

22  **high-ranking, high-compensated executive would say**

23  **something like that.**

24             **I'm asking about this one.  Would a**

25  **high-ranking, highly compensated executive say**

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

 1  **something like that?**

 2              MR. CAIN:  Form.

 3              THE DEPONENT:  I've seen lots of evidence

 4  of high-ranking executives from many companies doing

 5  reprehensible and illegal things.  This is not illegal.

 6  So I would say the bar is very low.

 7      **Q.    (By Mr. Arrington) So you think the**

 8  **typical high-ranking, high-compensated executive in his**

 9  **50s would say something like what you said on page 4,**

10  **the typical --**

11      A.    It wouldn't be out -- it wouldn't be out

12  of the question, nope.

13      **Q.    No, I'm not talking about whether it's**

14  **out of the question on the fringe.  I'm asking if it's**

15  **a typical thing for a high-ranking, highly compensated**

16  **executive in his 50s to say.**

17              MR. CAIN:  Form.

18              THE DEPONENT:  So, again, I can't speak

19  to that.  I think it's reasonable based --

20      **Q.    (By Mr. Arrington) Based on what?**

21      A.    I think it's reasonable based on the

22  evidence I've seen of high-ranking executive officials

23  that have done lots of things.

24              I actually don't know that many

25  high-ranking executive officials in their 50s to know

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

1  enough to posit an answer to that.

2        Q.    So it's your testimony sitting here today

3  that you really can't speak to what's typical of

4  high-ranking, highly compensated executives in their

5  50s?

6        A.    No.

7        Q.    Okay.  So let's go on with this.  We've

8  got page 17.  It says -- this is a May 31 Facebook

9  post.

10            Did you post this, sir?

11        A.    Yes.

12        Q.    Is this one of the ones you deleted?

13        A.    Again, I'd have to -- I'd have to

14  cross-check.  I don't know.

15        Q.    You don't know.  Okay.  It says, "Oi

16  Polloi - Pigs For Slaughter."

17            Do you know what "pigs for slaughter" is

18  referring to?  Are they talking about literal pigs, in

19  your view?

20        A.    They could be.

21            MR. CAIN:  Form.

22        Q.    (By Mr. Arrington) It could be?  So you

23  think that -- that "Oi Polloi - Pigs For Slaughter" is

24  about the slaughterhouse industry?

25        A.    I actually don't know.  It's been a while

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1  since I looked at the lyrics.

2      Q.    Okay.  So it's your testimony, sitting

3  here under the oath -- under oath today that you think

4  "Oi Polloi" might be thinking about the actual

5  slaughter of the actual pigs?

6            Is that what your testimony under oath

7  today is?

8      A.    No, I said I didn't know without seeing

9  the lyrics.

10     Q.    You're saying that you -- it's your

11 testimony under oath today that you have no idea

12 whatsoever what the phrase "Pigs For Slaughter" means

13 in this context, unless you were able to look at the

14 actual lyrics?

15           Is that your testimony under oath, sir?

16     A.    For this song?  Absolutely.

17     Q.    Okay.  So as far as you know, they could

18 be talking about pigs in the slaughterhouse industry?

19     A.    Again, I don't know.  It's been a long

20 time --

21     Q.    That's your testimony --

22     A.    -- since I've listened to this song.

23     Q.    Do you recall ever hearing the song about

24 actual pigs being slaughtered in an actual

25 slaughterhouse?

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1            MR. CAIN:  Form objection.  Good Lord.

2            MR. ARRINGTON:  That's highly

3    unprofessional, Mr. Cain.

4            THE DEPONENT:  Actually -- actually, I

5    think -- yeah, I think so.  Way back.  And it was more

6    of a metaphor.  It's kind of like Animal Farm.  I seem

7    to recall -- and, again, you're going to probe me

8    and -- I do have a vague recollection of actual -- and

9    particularly some punk rock songs, mostly out of the

10   animal rights' wing of punk rock -- that did talk about

11   actual slaughterhouses, yes.

12        **Q.    (By Mr. Arrington) So it's your**

13   **testimony, on page -- that page 17 might be referring**

14   **to an animal rights' movement song?**

15        A.    I don't think so, but, again --

16        **Q.    Okay.  Then why did you bring that up?**

17        A.    You -- you just asked me if I had any

18   recollection of any song that talked about

19   slaughterhouses.  That's why I brought it up.

20        **Q.    Okay.  So it's -- "Pigs For Slaughter" is**

21   **actually a metaphor for killing cops, isn't it?**

22        A.    It can -- it can be.

23        **Q.    I'm talking about right here.  You know**

24   **that, don't you?**

25        A.    Asked and answered.

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1        Q.      No, no.  I get to ask the questions.

2               You know for a certain fact, sitting here

3    today, that page 17, when it refers to "Pigs For

4    Slaughter" is talking about killing actual cops, isn't

5    it?

6        A.      No, I do not.

7               MR. CAIN:  Form.

8               THE DEPONENT:  I'd have to see the

9    lyrics.  I made that explicit earlier.

10       Q.      (By Mr. Arrington) Page 20 of Exhibit 23

11   talks about "Dead Prez - Cop Shot."  What does "Dead

12   Prez" mean, in your view?

13       A.      That's the name of a band.  They've

14   actually been on the Tonight Show.

15       Q.      Do you know what "Prez" means in this

16   context?

17       A.      Actually, I don't.

18       Q.      Is that -- on page 20, is that the one --

19   one of the posts that you deleted, sir?

20       A.      I do not recall.  I'd have to

21   cross-check.

22       Q.      Page 21 says:  "Fuck the USA."

23               Is that something that you'd stand by

24   today, posting "Fuck the USA" on your Facebook page?

25               MR. CAIN:  Really?  You're asking him

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

83

```
 1  that question?
 2              MR. ARRINGTON:  Yes, sir, I am.
 3              MR. CAIN:  Well, we're way beyond --
 4              THE DEPONENT:  I --
 5              MR. CAIN:  No, Dr. Coomer, hold on.
 6              THE DEPONENT:  Yeah.
 7              MR. CAIN:  Object to the form.  I don't
 8  even -- I cannot believe that you're asking these lines
 9  of questions.
10              MR. ARRINGTON:  Improper speaking
11  objection.
12              MR. CAIN:  But for the sake of comedy, I
13  will -- I will object to form.
14              You can answer it, if you can.
15              THE DEPONENT:  I posted that -- I posted
16  that song --
17              MR. ARRINGTON:  Wait.  Wait.  Wait.  With
18  Mr. Cain's speaking objection, we lost the thread.
19        Q.    (By Mr. Arrington) Do you -- the question
20  here is this:  Do you stand by today your decision to
21  put on your Facebook page a statement that says, "Fuck
22  the USA"?
23              MR. CAIN:  Form.
24              THE DEPONENT:  I stand by posting that
25  song, yes.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

84

1          Q.      (By Mr. Arrington) And is it your view

2   that that is an appropriate thing for an executive in

3   his 50s, for a voting system company, to say?

4                  MR. CAIN:  Form objection.

5                  THE DEPONENT:  I posted that as a private

6   individual on a private Facebook --

7                  THE REPORTER:  I'm sorry.  Excuse me

8   Mr. -- or, Dr. Coomer, could you say that again?

9                  THE DEPONENT:  Sorry.

10                 I posted that on a private Facebook page

11  as a private individual, and I stand by my right to do

12  that.  And I would do it again today.

13         Q.      (By Mr. Arrington) Okay, understood.

14                 MR. ARRINGTON:  Jana, could you read the

15  question, please.

16                 (Whereupon, the following record was read

17  back by the court reporter:  "And is it your view that

18  that is an appropriate thing for an executive in his

19  50s, for a voting system company, to say?")

20                 MR. CAIN:  The same objection.

21                 THE DEPONENT:  An executive for a voting

22  company, in his 50s, didn't put that up there.

23         Q.      (By Mr. Arrington) Well, I thought you

24  were an executive for a voting system company, in your

25  50s, when you put this up here?

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

85

```
 1        A.    Well, actually, I wasn't.  I was 49.

 2        Q.    Okay.

 3        A.    The math is tough, but --

 4        Q.    Let me reask the question.

 5        A.    I did not --

 6        Q.    Do you think it's appropriate for an

 7  executive who is 49 to put that up?

 8              MR. CAIN:  Form.

 9              THE DEPONENT:  I think it's appropriate

10  for every citizen to express their political beliefs.

11        Q.    (By Mr. Arrington) Do you think the

12  typical --

13        A.    Yes.  Yes.  Yes.  Get right down to it.

14  Yep.

15        Q.    What are you affirming?

16        A.    It's appropriate for anybody to put up

17  that information, regardless of what their job is.

18        Q.    Okay.

19        A.    God-given right.  Constitution.

20        Q.    So you think that everything you have a

21  right to do is also appropriate?

22              MR. CAIN:  Form.

23              THE DEPONENT:  Yeah.

24        Q.    (By Mr. Arrington) Okay.  So the next one

25  is N.W.A.  Do you know what that acronym stands for?
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                      b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

86

1                We're talking about page 22 of

2    Exhibit 23, P23.

3         A.    Yes, I do know what it stands for.

4         Q.    What's it stand for?

5               MR. CAIN:  Form.

6               THE DEPONENT:  I'm not going to say the

7    n-word out loud, but --

8         Q.    (By Mr. Arrington) You can just say, "the

9    n-word."

10        A.    I'm sorry?

11        Q.    You can just say the n-word. So you're

12   willing to say "fuck" but not the n-word; is that what

13   you're saying?

14        A.    Well, I'm not a racist, so, yeah.

15        Q.    Okay.  There you go.

16        A.    You keep interrupting me.

17        Q.    So what does N.W.A. stand for?

18        A.    N With Attitude.

19        Q.    Okay.  It says: "Fuck the Police."  Do

20   you think it's appropriate for an executive to put

21   "Fuck the Police" on his Facebook page?

22               MR. CAIN:  Form.

23               THE DEPONENT:  I don't think it's

24   inappropriate at all.

25        Q.    (By Mr. Arrington) Okay.  The other --

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1  the other question I asked is:  Do you think it's

2  appropriate for a highly ranked, highly compensated

3  executive to put the phrase "Fuck the Police" on his

4  Facebook page?

5        A.    I don't think it's inappropriate.

6        Q.    It could be neutral --

7        A.    Sure.

8        Q.    -- but it's not inappropriate?  Okay.

9              So the question is this:  Is it

10  affirmatively appropriate for an executive in your

11  position at this time to put "Fuck the Police" on his

12  Facebook page?

13             MR. CAIN:  Form.

14             THE DEPONENT:  So we're going to do this

15  on every post, and I will affirmatively say that I had

16  every right to post this.  I think it was appropriate,

17  expressing my personal viewpoints.

18             Whether I was an executive or not --

19        Q.    (By Mr. Arrington) So one of --

20        A.    -- it has no bearing on it.

21        Q.    So one of --

22        A.    You're going to interrupt me again.

23        Q.    So one of your personal viewpoints is

24  that "Fuck the Police" is something that you want to

25  support, the post?

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

88

```
 1              MR. CAIN:  Form.
 2              THE DEPONENT:  I want to support the
 3    ending of police murder of people of color.
 4        Q.    (By Mr. Arrington) And that's why you
 5    think you should say, "Fuck the Police"?
 6        A.    Yep.
 7        Q.    Okay.  And then it says, "The
 8    mutherfuckin villain that's mad."
 9              Do you know who you're referring to there
10    in the lyrics?
11        A.    You know, I'm not super up on N.W.A.
12    lyrics.  They're probably talking about cops.
13        Q.    And you think the cops are "mutherfuckin
14    villains"?
15        A.    In certain aspects, yes.  I think one of
16    them was just sentenced to prison for murder, which is
17    pretty villanous.
18        Q.    So you're -- you're familiar with the
19    "Fuck the Police" song?  It's about killing cops,
20    right?  Shooting them --
21        A.    No, I don't believe that that's the case.
22        Q.    Okay.  You don't, no.  Okay.
23              MR. KIMREY:  Hey, Barry.  Can we take a
24    short break?
25              MR. ARRINGTON:  Yes.  Off the record for
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

89

```
 1  five minutes.
 2              MR. KIMREY:  Thank you.
 3              (A recess was taken from 2:26 p.m. to
 4  2:36 p.m.)
 5        Q.    (By Mr. Arrington) Dr. Coomer, if I'm not
 6  mistaken, a few minutes ago, you said it was
 7  appropriate for you to put these things on your
 8  Facebook page.
 9              MR. CAIN:  Wait, wait.  Time out.  Are we
10  back on the record?
11              MR. ARRINGTON:  I thought we were.  Yeah.
12              MR. CAIN:  Okay.  Can we just -- I'm
13  sorry, why don't we go off real quick.  I don't want to
14  take your time up.  I came in right as you were
15  starting your question.
16              So off the record.
17              (There was a brief discussion off the
18  record.)
19        Q.    (By Mr. Arrington) All right.  So just a
20  few moments ago, I believe, Dr. Coomer, you said it was
21  appropriate for you to put these Facebook posts up.
22              But I'm back at Exhibit P18, and it says,
23  "He," meaning you, Coomer, "he believed every word of
24  what he said on Facebook, but when colleagues later
25  asked him what he was thinking, he was frank:  He had
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1    screwed up."

2              What did you mean when you said you had

3    screwed up?  What did you screw up about?

4         A.    Thinking that people would understand

5    that you can have a personal opinion and not act on

6    that bias in a professional capacity.

7         Q.    Okay.  So you didn't think that you had

8    screwed up by putting these vehemently -- let me start

9    over.

10             You did not think that it was

11   inappropriate for the head of security for a major

12   voting machine firm to put on his Facebook page

13   vehemently anti-post Trumps -- anti-Trump posts?

14        A.    No.

15        Q.    Okay.  That was not what you were

16   referring to when you said you screwed up?

17        A.    Not at all.

18        Q.    You screwed up when you just gave the

19   American people too much credit; is that what you're

20   saying?

21             MR. CAIN:  Form.

22             THE DEPONENT:  That's not what I said at

23   all.

24        Q.    (By Mr. Arrington) Well, I'm trying to

25   understand.

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

91

1          A.     Maybe Ms. Mackelprang can read back my

2    answer.

3          **Q.     No, no.  I'm trying to understand.**

4                **What did you mean when you said you**

5    **screwed up?**

6                MR. CAIN:  Form.

7                THE DEPONENT:  There is a segment of the

8    population that doesn't understand and can't conceive

9    of having an opinion that they don't act maliciously on

10   and would gladly break the law to see their own ends.

11   And that is not me.

12         **Q.     (By Mr. Arrington) So nothing in your**

13   **answer just there talked about you screwing up.  So**

14   **tell me what you did that screwed up.**

15         A.     It gives fodder for crazy people that

16   view the world as -- as people that would gladly --

17   I'll say this -- gladly use their supposed influence to

18   do illegal things.

19         **Q.     So you screwed up --**

20         A.     They can't imagine, they can't imagine

21   having an opinion and being in a position, a supposed

22   position, which I was not in, by the way, to try to

23   affect a free and fair election.  To them, them -- and

24   I'm talking about your clients -- to them, this is

25   inconceivable.

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                        b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1              If they were in my position, they

2   would -- they would use every resource to exploit that.

3   Why?  Because I made some personal statements of a

4   personal political belief.  I screwed up because I gave

5   them fodder because they can twist that and use it to

6   fundraise and continue this farce.

7              That's where I screwed up.  And it's a

8   farce.

9        Q.    So it says, at the very end, quoting you,

10  "I think Dominion as a company would be facing all the

11  same things they are right now without me, Coomer said,

12  but I was an accelerant.  For lack of a better word, I

13  was a perfect villain."

14            What did you mean by you being a perfect

15  villain?

16        A.    I have strong personal beliefs.  I have

17  expressed those in a private setting.  I think those

18  have been used, again, in a concerted campaign of lies

19  and misinformation, malinformation, disinformation, to

20  pretend like there is something actually illegal going

21  on when there isn't.

22        Q.    So if I follow the chain of reasoning,

23  people see that you're vehemently anti-Trump; that

24  you're the director of security for a voting company;

25  that you would act on your vehement anti-Trump views to

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

93

1  affect the election, and you gave them fodder for

2  perpetuating that narrative.

3              Is that what you're saying?

4       A.    Nope.

5       Q.    Okay.  Which part of what I just said is

6  wrong?

7       A.    The fact that, in my 16-year career in

8  elections, I actually worked to make the vendors, in

9  general, more transparent --

10      Q.    No, no.  So you're not talking about what

11 I just said.

12      A.    Yes, I am.

13      Q.    What I just said was:  If I understand

14 what you're talking about -- and you didn't talk

15 anything about a 16-year career -- that you said you

16 were the perfect villain and that you had screwed up

17 because you had given fodder to people who could use

18 your Facebook posts to advance the narrative that you,

19 in your position at Dominion, had affected the

20 election?

21      A.    Okay.

22      Q.    Is that true?  Is what I just said true?

23            Do you need me to repeat it?

24      A.    I believe --

25      Q.    Sir, is what I just said true?

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

94

1        A.    Let's repeat it then.

2              MR. ARRINGTON:   Could you repeat the

3   question, Jana?

4              And that question is going to be, after

5   she repeats it, is what I said true?  You can have some

6   commentary later.

7              (Whereupon, the following record was read

8   back by the court reporter:  "What I just said was:  If

9   I understand what you're talking about -- and you didn't

10  talk anything about a 16-year career -- that you said

11  you were the perfect villain and that you had screwed up

12  because you had given fodder to people who could use

13  your Facebook posts to advance the narrative that you,

14  in your position at Dominion, had affected the

15  election?")

16             MR. CAIN:   Form.

17             THE DEPONENT:   No.

18      **Q.    (By Mr. Arrington) How's what I said not**

19  **true?**

20      A.    There's a key word missing.

21      **Q.    Go ahead.**

22      A.    Misuse -- two key words; three, I

23  guess -- misuse and lie.

24      **Q.    Okay.  So to sum up, you were the perfect**

25  **villain because your Facebook posts were fodder to**

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1    **people who you believe advanced a narrative that you**

2    **used your position at Dominion to affect the election?**

3         A.    Advanced a false and made-up narrative,

4    defamatory narrative, lied multiple times.

5         **Q.    So you're saying that it's also made up?**

6         A.    Absolutely.

7         **Q.    But they're saying that it's not, but you**

8    **had given them fodder?**

9              MR. CAIN:  Form.

10             THE DEPONENT:  I guarantee that --

11             THE REPORTER:  What -- excuse me.  I

12   didn't hear, Charlie, what you said.

13             MR. CAIN:  I said form.  That's short for

14   form objection.

15             THE DEPONENT:  I can say categorically

16   statements of me being on a call, affecting the

17   election, saying that I would ever guarantee that Trump

18   won, are categorically false, made up, and bullshit,

19   without a doubt.  There is no evidence and there never

20   will be.  So ...

21        **Q.    (By Mr. Arrington) Dr. Coomer, have you**

22   **ever attended a BLM Zoom meeting?**

23        A.    Nope.

24        **Q.    Do you know anybody who is an activist**

25   **with BLM?**

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

96

```
 1          A.    I can't confirm that.  It's possible.
 2          Q.    Do you know Tay Anderson?
 3          A.    Never met him.  Never had a conversation
 4   with him.  Don't -- only found out who he was once this
 5   lawsuit started.
 6          Q.    Have you ever been on a Zoom call with
 7   someone who you later learned was Tay Anderson?
 8          A.    Nope.  Pretty -- pretty sure I made that
 9   clear in my declaration.
10                I've never been on a Zoom call about any
11   progressive activities whatsoever, marches, planned
12   protests, anything related other than my job and some
13   therapy after getting death threats from all of this
14   crap.
15                MR. CAIN:  Dr. Coomer, you need to answer
16   the question that he asked you.
17          Q.    (By Mr. Arrington) Do you have any -- do
18   you have any idea why Mr. Oltmann would be searching
19   Eric from Dominion on September 26th --
20                MR. CAIN:  We're getting well outside the
21   scope of what the order is, Mr. Arrington, into general
22   discovery.  Can you try to tailor it to the order,
23   please, to some statement, public statement that he's
24   made, or to the deletion of his Facebook posts?
25                MR. ARRINGTON:  Well, he's made lots of
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1   statements that Joe Oltmann was lying when he said he

2   was researching Eric from Dominion on September 26th.

3        **Q.     (By Mr. Arrington) Let me ask you this:**

4   **Do you -- do you stand by your statements that you've**

5   **made to the media that Joe Oltmann was lying when he**

6   **said he was searching Eric from Dominion in September**

7   **of 2020?**

8              MR. CAIN:  Object to form.  I mean, form

9   objection.

10             THE DEPONENT:  I've never made any such

11  statement.

12       **Q.     (By Mr. Arrington) Do you believe he was**

13  **lying when he said that he was searching Eric from**

14  **Dominion in September of 2020?**

15             MR. CAIN:  Form.

16             THE DEPONENT:  I have no idea.

17       **Q.     (By Mr. Arrington) You don't know one way**

18  **or the other whether he was searching Eric from**

19  **Dominion in 2020?**

20       A.    I have no idea if he was -- no, I have no

21  idea if he was searching Eric Coomer or Eric from

22  Dominion at any time.  I do know that I was never on a

23  call.

24             MR. CAIN:  I've got you at about 11

25  minutes left, Barry.

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

98

```
 1              MR. ARRINGTON:  Thank you.

 2              Let's take a five-minute break and I'll

 3   see if there's anything else I can talk about.

 4              MR. CAIN:  Okay.

 5              (A recess was taken at 2:49 p.m. to 2:58

 6   p.m.)

 7              MR. ARRINGTON:  Back on the record.

 8       Q.     (By Mr. Arrington) So, Dr. Coomer, is it

 9   your position that it is impossible for you to have

10   affected the election in your position with Dominion?

11       A.     Absolutely impossible.

12       Q.     You're certain of that?

13       A.     Absolutely.  Hands down.

14       Q.     I'm at page 80 of Exhibit P23.  This, in

15   some context, is a comment string to one of your posts.

16              Do you remember this, starting at

17   page 71?

18       A.     I mean, it looks familiar.

19       Q.     Okay.  So this is, starting at page 71,

20   is one of your Facebook posts; is that right?

21       A.     Yeah.  Yeah, that's -- yeah, that's mine.

22       Q.     And the pages that follow are the comment

23   string to it, correct?

24       A.     It appears so, yes.

25       Q.     And the last page, someone named Byron
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

99

1    Watson says, "Why don't you just change their votes?"

2                And you respond:  "Because that would be

3    illegal."

4                Do you see that?

5        A.    Yep.

6        Q.    Why didn't you respond "Because that

7    would be impossible"?

8        A.    Because it's Facebook.

9        Q.    Because it's Facebook?

10       A.    Yep.

11       Q.    So you're saying that because it's

12   Facebook -- I don't see how that context affects the

13   answer.

14       A.    This is not -- Facebook is not a court of

15   law, a actual public debate.  These were private

16   Facebook messages.  It would be illegal.

17       Q.    It would be illegal?

18       A.    It would be illegal, highly illegal.  So

19   that's a fact.

20       Q.    That is a fact.

21       A.    And it would also be impossible to do

22   undetected.  I didn't feel I needed to express that.  I

23   thought the fact that not contributing to an illegal,

24   felonious act was enough.

25       Q.    So could you understand that someone

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

100

1   might think, Well, he says he doesn't do it just

2   because it's illegal --

3           A.      Nope.

4           Q.      -- I guess -- let me finish.

5                   He says he doesn't do it because he says

6   it's illegal.  It sounds like he could do it, but he

7   just doesn't because it's illegal.

8           A.      No, you would have to be deficient to

9   believe that.

10          Q.      You would have to be deficient to believe

11  that you could affect the election?

12          A.      Yep.

13                  (Exhibit P22 was marked for

14  identification.)

15          Q.      (By Mr. Arrington) I pulled up

16  Exhibit P22, which is a screenshot to which you refer

17  in your most recent court filing.  It's dated

18  September 26th, 2020.  And the fifth entry in the

19  screenshot is the one that Mr. Oltmann referred to in

20  his November 13th affidavit.

21                  Do you have any idea why Joe Oltmann

22  would be searching search terms "Eric Dominion Denver

23  Colorado" on September 26th, 2020?

24          A.      I have no idea.

25          Q.      Do you deny that Mr. Oltmann was

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

101

1    searching the search terms "Eric Dominion Denver

2    Colorado" on September 20 -- or September 26th, 2020?

3               MR. CAIN:  Form.

4               THE DEPONENT:  He provided that in

5    discovery.  So, no, I don't dispute that.

6         Q.    (By Mr. Arrington) You talked about the

7    fact that these Facebook posts were private, right?

8         A.    Yes, I did.

9         Q.    And you had 300 friends, approximately?

10        A.    Approximately.

11        Q.    So you think a statement made to 300

12   friends is a private statement?

13        A.    Yes, I do.

14        Q.    If you were in an auditorium with 300

15   people and you said something, would that be a private

16   statement?

17              MR. CAIN:  Form.

18              THE DEPONENT:  If they were people I

19   invited to the auditorium, yes.

20        Q.    (By Mr. Arrington) You say the word

21   "fuck" quite a bit, don't you?

22              MR. CAIN:  You don't have to answer that,

23   if you don't want to.  It's a -- that's a harassing

24   question.

25              MR. ARRINGTON:  It's not a harassing

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

1   question.  It's to authenticate the documents, in which

2   he --

3            MR. CAIN:  Ask him about a document.  If

4   you want him to authenticate a document, then put it in

5   front of him and he can authenticate it.

6        **Q.    (By Mr. Arrington) So in the Facebook**

7   **post --**

8            MR. CAIN:  Asking him, you say the word

9   "fuck" a lot, doesn't authenticate anything.

10       **Q.    (By Mr. Arrington) So in the Facebook**

11  **posts, you use the word "fuck" quite often, don't you?**

12       A.    Actually, I'm not sure I can answer that.

13       **Q.    You don't know whether you used that word**

14  **often?**

15       A.    Can you define "often"?

16       **Q.    Do you want to play definition derby?  Do**

17  **you know what "often" means?**

18       A.    No, I don't in your -- in your terms.

19  Are we talking 1 percent?  5 percent?  20 percent?

20  50 percent?  What's often, sir?

21       **Q.    You can define it any way you'd like.**

22       A.    Then I would say no.

23       **Q.    So your testimony, sitting here under**

24  **oath today, is you do not use the word "fuck" often?**

25            MR. CAIN:  Form.

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

103

1              THE DEPONENT:   In a Facebook post?

2         **Q.     (By Mr. Arrington) No, generally.**

3         A.    Again, I won't answer that until you

4    define the terms.

5         **Q.    No, I'm asking you -- you can define the**

6    **terms.   You're --**

7         A.    No, you define the term.   You asked the

8    question, sir.

9         **Q.    Do you understand what the English word**

10   **"often" means?**

11        A.    Not in your context.

12        **Q.    I'm not asking for my context.   I'm**

13   **asking for you to use the English word "often" as you**

14   **understand its meaning, and to tell me whether, as you**

15   **understand the word "often," you use that word "fuck" a**

16   **lot.**

17        A.    I would say I use it less than a lot of

18   people I know.   So then I would characterize it as not

19   often.

20        **Q.    Okay.   So your testimony is you do not**

21   **use the word often?**

22             MR. CAIN:   Form.

23             THE DEPONENT:   Until you define, you

24   define -- you brought up sarcasm.   You brought up

25   dictionary.com.   Can you bring up "often" and define

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

104

```
 1  that term for me, sir?
 2       Q.    (By Mr. Arrington) No, I want you to
 3  define it.
 4       A.    No.  Nope.
 5       Q.    So you're refusing to answer the
 6  question?  You're refusing to use your own definition
 7  of the word "often" to answer the question?
 8             Is that what you're going to say?
 9  Because if that's the case, just say it and we'll move
10  on.
11       A.    No, you asked the question.  You used the
12  term.  I don't know what your definition of the term
13  is.  So until you provide me with that definition, I
14  can't answer the question.
15       Q.    It doesn't matter what my definition of
16  the term is.  I'm asking you to use your definition of
17  the term.
18             Let me ask you this:  Do you know what
19  the English word "often" means?
20       A.    Frequently.
21       Q.    Okay.  Using that definition of the word
22  "often," do you use the word "fuck" often?
23             MR. CAIN:  Form.
24             THE DEPONENT:  In my understanding of
25  frequently, no.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

105

1          Q.     (By Mr. Arrington) So you were head of

2     security for a voting software and machine company,

3     correct?

4          A.     Product strategy and security.

5          Q.     So as the head of security for that

6     company, did you think --

7          A.     Product strategy and security, sir.

8          Q.     Okay.  So you were the head of security,

9     right?

10         A.     No, I was head of product strategy and

11    security.  That's a different role.

12         Q.     Okay.  So in that role, did you think the

13    Facebook posts were private?

14         A.     Yes.

15         Q.     Okay.  So you did not think that any time

16    you put something on the Internet, it's subject to

17    being discovered?

18         A.     No.

19         Q.     Okay.

20              MR. ARRINGTON:  How much time do I have,

21    Jana?

22              THE REPORTER:  I think Charlie is keeping

23    track of the last 11 minutes.

24              MR. CAIN:  Yeah, you're at 9:32.  So

25    you've got a minute and a half.

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

106

```
1              MR. ARRINGTON:  So, Andrea, I'm going to
2    give that minute to you, in case I didn't ask all the
3    questions that you wanted me to ask.
4              MS. HALL:  One second, Charlie.
5              THE DEPONENT:  Are we still on the
6    record?
7              THE REPORTER:  Yes.
8              MS. HALL:  I've got a quick stop off the
9    record.
10             MR. KIMREY:  Yeah.  Can we take a break?
11             MR. CAIN:  We literally have 60 seconds
12   left, but --
13             MR. KIMREY:  Can we take a break?  I need
14   to take a break.  Let's take a break.
15             THE DEPONENT:  Does somebody need to pee?
16             MR. KIMREY:  Yes.
17             MR. CAIN:  Very short -- very short break
18   so we can be done.  We've got a minute left on the
19   record.
20             You can stay on, Eric.
21             (A recess was taken from 3:09 p.m. to
22   3:12 p.m.)
23             MS. HALL:  Okay.  I guess we're back on
24   the record.  Is everybody ready?
25             MR. CAIN:  Yes, ma'am.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

107

```
 1                    EXAMINATION
 2  BY MS. HALL:
 3        Q.    Okay.  Mr. Coomer, are you antifascist?
 4              MR. CAIN:  Form.
 5              THE DEPONENT:  I do not like fascists,
 6  no.
 7        Q.    (By Ms. Hall) So are you antifascist?
 8        A.    Yes, I am against fascists, yes.
 9        Q.    Again, the question is:  Are you
10  antifascist?
11              MR. CAIN:  Form.
12              THE DEPONENT:  I think I answered that.
13        Q.    (By Ms. Hall) So you are antifascist?
14        A.    I am against fascists, yes.
15        Q.    No.  My question to you is:  Are you
16  antifascist?
17              MR. CAIN:  Form.  Asked and answered.
18        Q.    (By Ms. Hall) Is that a yes?
19        A.    If you're --
20        Q.    You're eating up time.  I'm going to go
21  off the record.
22        A.    No.  If you're asking if I am part of
23  Antifa, which I kind of feel like you're getting to --
24        Q.    No, that's not my question, Mr. Coomer.
25              Mr. Coomer, my question to you is very
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

108

1   **direct:  Are you antifascist?**

2          A.     Absolutely.

3          **Q.     And is Antifa a truncation of**

4   **antifascists?**

5                 MR. CAIN:  Form.

6                 THE DEPONENT:  It's a neologism.

7          **Q.     (By Ms. Hall) So you agree that Antifa is**

8   **part of being an antifascist?**

9          A.     No.

10         **Q.     So do you agree that Antifa is a**

11  **truncation of antifascists?**

12         A.     No, it's a neologism.

13         **Q.     What's your definition of neologism?**

14                MR. CAIN:  And that's going to be your

15  last answer.

16                THE DEPONENT:  Let's bring up

17  dictionary.com, kids.

18                MR. CAIN:  No.  That can be your -- if

19  you can define it, you've gone your minute.

20                So try to define it, Dr. Coomer, and

21  that's your last answer.

22                THE DEPONENT:  It's a combination of two

23  words truncated into one.

24         **Q.     (By Ms. Hall) Antifa is?**

25                MR. CAIN:  We're done.  That's it.

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

```
 1  You've had your two hours.
 2              MS. HALL:  Well, I think he can answer
 3  the question here.
 4              THE DEPONENT:  I think we're over time.
 5              MS. HALL:  So you're refusing to answer
 6  the question?
 7              MR. CAIN:  The court order is two hours,
 8  so we're done.
 9              MS. HALL:  Well, it's funny how you act,
10  Charlie, during a deposition because you always go over
11  time and, you know --
12              MR. KIMREY:  Yeah.  Actually, I want to
13  note, Mr. Cain -- this is Blaine Kimrey for OAN and
14  Chanel Rion -- you said you were giving two extra
15  minutes.  So I think those two extra minutes are
16  Ms. Hall's minutes, unless you're taking those back.
17              MR. CAIN:  No, I didn't.  I already
18  included that, Blaine.  If we want to go off the record
19  and let Jana confirm it, then that's fine.  But by my
20  count now, we're over --
21              MR. KIMREY:  Off the record.
22              (Discussion off the record from 3:15 p.m.
23  to 3:17 p.m.)
24              MR. CAIN:  You can answer that and then
25  we're done.
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                  b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1            THE DEPONENT:  So, actually, I just

2   looked it up.  Neologism is a newly coined word or

3   expression.  The coining or use of new words.

4            MR. KIMREY:  That's not the question

5   pending.

6            Could you reread the question, please?

7            MR. CAIN:  This is not your witness,

8   Blaine.  Let the counsel do it.

9            MS. HALL:  Yeah, I mean, he didn't answer

10  the question, Charlie.  He's now reading something he

11  just Googled.

12           So, Jana, please read the question to him

13  again.

14           And, Mr. Coomer, please answer the

15  question.

16           THE DEPONENT:  And please refer to me as

17  Dr. Coomer.

18           MR. CAIN:  Okay.  Stop.  Just please,

19  everyone.

20           What I've said is we're over the two

21  hours.  What I've said is you can respond to Andrea

22  Hall's last question and then we'll be done.

23           So if you need Jana to read that back,

24  Dr. Coomer, to respond to that question, fine.  If you

25  can recall it, then you can respond and we'll be done.

Electronically signed by Jana Mackelprang (001-409-517-3774)                           b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

111

```
 1              THE DEPONENT:  If you can please read it
 2   back.
 3              (Whereupon, the reporter stated, "The
 4   Deponent said, 'It's a combination of two words
 5   truncated into one.'
 6              "Ms. Hall said, 'Antifa is?'"
 7              THE DEPONENT:  So I don't know what
 8   Antifa refers to.
 9              MR. CAIN:  Thank you.
10              THE REPORTER:  Since we're off the
11   deposition, can everybody tell me what they want?
12              MS. HALL:  We'll take an expedited
13   transcript, please.  And then we'll just take regular
14   on the video.  It doesn't have to be expedited, but a
15   video.  But we do need the transcript from today
16   expedited, please.
17              MR. KIMREY:  And OAN and Ms. Rion would
18   like expedited on the transcript and the video.  And
19   how quickly can we get that?
20              THE REPORTER:  Tomorrow.
21              MR. KIMREY:  Okay, that's fantastic.
22   Thank you.
23              MR. ARRINGTON:  Thank you, gentlemen --
24              MR. KIMREY:  I'm sorry.  I don't know how
25   this works with Internet depositions, but will the
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

112

1    video be synchronized with the transcript?

2              THE REPORTER:  No, because it's a Zoom.

3    So we didn't have a videographer here that would do

4    that.

5              MR. KIMREY:  Okay.  Understood.  That's

6    fine.  Thank you.

7              MR. ARRINGTON:  Jana, I'll have an

8    expedited transcript as well, please.  Electronic only.

9    Thank you.

10              MR. CAIN:  I don't need an expedite,

11    Jana, but I'll have Scotti get in touch with you

12    because I don't know what the order is typically.

13              MS. BOEHMER:  Jana, this is Margaret

14    Boehmer on behalf of Eric Metaxas.  I'd like an e-tran.

15    I don't believe we need it expedited.

16              MR. HOLWAY:  Jana, this is Eric Holway on

17    behalf of the Trump Campaign, and I would like an

18    expedited transcript, please.

19              MR. BURNS:  Jana, this is John Burns for

20    TGP Communications and Jim Hoft.  We would like an

21    expedited transcript and video, please.

22              THE REPORTER:  Thank you.

23              MR. BURNS:  Jana, do you need my -- this

24    is John Burns again -- do you need my e-mail address?

25              THE REPORTER:  No, I have that, but thank

Calderwood-Mackelprang, Inc.  303.477.3500

Deposition of Eric Coomer

113

1  you, John.

2          MR. BURNS:  Cool.  Thank you.

3          MR. QUEENAN:  And Gordon Queenan for

4  Michelle Malkin.  I don't need an expedited transcript,

5  but I would need it by -- well, you tell me.  I need it

6  by next Thursday.  Is that semi-expedited?

7          THE REPORTER:  You don't need to worry

8  about that.  You'll get it soon.

9          MR. QUEENAN:  I appreciate it.  Thanks.

10          THE REPORTER:  I guess we're finished,

11  then.

12          (WHEREUPON, the deposition was concluded

13  at 3:22 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Jana Mackelprang (001-409-517-3774)                                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

114

```
 1                    I have read the foregoing transcript

 2   of my testimony and have indicated the same by my

 3   signature.

 4

 5

 6                         _____
                                   ERIC COOMER
 7

 8   STATE OF COLORADO

 9   CITY AND COUNTY OF DENVER

10                  Subscribed and sworn to before me by ERIC

11   COOMER, on this _____, 2021.

12                  My commission expires:_____.

13

14

15

16                         _____
                                   Notary Public
17

18                         _____
                                     Address
19

20

21   Reporter:  JM

22

23

24

25
```

Calderwood-Mackelprang, Inc.  303.477.3500

Electronically signed by Jana Mackelprang (001-409-517-3774)  b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

1                        CERTIFICATE

2    STATE OF COLORADO           )
                                 )ss.
3    CITY AND COUNTY OF DENVER   )

4                I, Jana Mackelprang, Certified Realtime
     Reporter, Registered Professional Reporter, and Notary
5    Public for the State of Colorado, do hereby certify
     that previous to the commencement of the examination,
6    the said ERIC COOMER was duly sworn by me to testify
     the truth in relation to the matters in controversy
7    between the said parties.
                 I further certify that said deposition was
8    taken in shorthand by me and was reduced to typewritten
     form by computer-aided transcription, that the
9    foregoing is a true transcript of the questions asked,
     testimony given, and proceedings had.
10               I further certify that I am not an
     attorney nor counsel nor in any way connected with any
11   attorney or counsel for any of the parties to said
     action or otherwise interested in its event.
12               IN WITNESS WHEREOF, I hereunto affix my
     hand and notarial seal this 23rd day of September,
13   2021.  My commission expires January 24, 2024.

14

15

16                                    _____
                                      Jana Mackelprang
17                                    CRR, RPR, Notary Public
                                      Calderwood-Mackelprang, Inc.
18

19

20

21

22

23

24

25

Calderwood-Mackelprang, Inc.  303.477.3500

```
 1   CALDERWOOD-MACKELPRANG, INC.
     9745 East Hampden Avenue, Suite 220
 2   Denver, Colorado  80231
     (303) 477-3500
 3
     September 24, 2021
 4
     Charles J. Cain, Esq.
 5   Brad Kloewer, Esq.
     Steve Skarnulis, Esq.
 6   Cain & Skarnulis PLLC
     P.O. Box 1064
 7   Salida, Colorado 81201

 8   Re: Coomer v. Donald J. Trump For President, et al.

 9   Deposition of: ERIC COOMER

10   The deposition in the above-entitled matter is ready
     for reading and signing.  Please attend to this matter
11   by complying with ALL blanks checked below:

12   _____   arranging with us at the number listed below
              to read and sign the deposition in our
13            office.

14    XXX    having deponent read your copy and sign
              amendment sheets, if any (original signature
15            page enclosed.)

16   _____   reading enclosed deposition, signing
              signature page and correction sheets, if any.
17

18    XXX    within 35 days of the date of this letter.

19
     _____   by_____due to trial/hearing date of
20            _____.

21   Please be sure that the signature page and amendment
     sheets, if any, are signed before a notary public and
22   returned to our office.  If this matter has not been
     taken care of within said period of time, the
23   deposition will be filed unsigned pursuant to the Rules
     of Civil Procedure.
24   JANA MACKELPRANG, CRR, CSR, RPR

25   cc:  Counsel of Record
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21

Deposition of Eric Coomer

117

```
 1   CALDERWOOD-MACKELPRANG, INC.
     9745 East Hampden Avenue, Suite 220
 2   Denver, Colorado  80231
     (303) 477-3500
 3

 4   Barry K. Arrington, Esq.
     Arrington Law Firm
 5   3801 East Florida Avenue, Suite 830
     Denver, Colorado 80210
 6

 7   Re: Coomer v. Donald J. Trump For President, et al.

 8
     Dear Mr. Arrington:
 9
     Enclosed is the deposition of:  ERIC COOMER
10
     _____ Previously filed.  Forwarding signature page
11           and amendment sheets.

12   _____ Signed, no changes.

13   _____ Signed, with changes, copy enclosed.

14   _____ Unsigned, notice duly given _____,
             pursuant to the Rules of Civil Procedure.
15
     _____ Not signed, notice duly given _____,
16           since trial is set for _____.

17   _____ No signature required.

18   _____ Signature waived.

19   _____ To be signed in court.

20   _____ Signature pages/amendment sheets to be
             returned to court on date of trial.
21
     _____ Mailed by Certified Mail No._____.
22
     _____ Hand-delivered on approximately _____.
23

24   JANA MACKELPRANG, CRR, CSR, RPR

25   cc:  Counsel of Record
```

Electronically signed by Jana Mackelprang (001-409-517-3774)                    b80d65b6-8bbf-4bf1-8099-35b26e79cf21