**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-01129-NYW-SKC

**ERIC COOMER, PH.D.,**

**Plaintiff,**

**v.**

**MICHAEL J. LINDELL;**
**FRANKSPEECH LLC; and**
**MY PILLOW, INC.,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT**
**(Telephonic Motion Hearing)**

_____

        Proceedings before the HONORABLE NINA Y. WANG,
Judge, United States District Court, for the District of
Colorado, commencing at 11:03 a.m. on the 13th day of
December, 2022, Alfred A. Arraj United States Courthouse,
Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
CHARLES JOSEPH CAIN, DAVID E. JENNINGS, and BRADLEY ADAM
KLOEWER, Cain & Skarnulis PLLC, P. O. Box 1064
Salida, CO 81201

**FOR THE DEFENDANT:**
RYAN PATRICK MALONE, Parker Daniels Kibort LLC, 123 North
3rd Street, Suite 888, Minneapolis, MN 55401

1                          **DECEMBER 13, 2022**

2              (Proceedings commence at 11:03 a.m.)

3              THE COURT:  Good morning.  We are here on the

4       record on 22-cv-01129-NYW-SKC, Coomer v. Lindell, et al.

5              Could I have appearances of counsel, first for

6       plaintiff Coomer, then of the defendants, then,

7       Mr. Oltmann, if you can make your appearance, I would

8       appreciate it.

9              MR. CAIN:  Your Honor, can you hear me?

10             THE COURT:  I can.

11             MR. CAIN:  All right.  Well, good morning.  My name

12      is Charlie Cain, the attorney in charge for the plaintiff,

13      Dr. Coomer, who is on the phone.  I have a couple of my

14      associates, as well, with me, Brad Kloewer and Dave

15      Jennings.  Also my paralegal, Scotti Beam, who has been

16      involved in the issue and dealing with Mr. Oltmann on the

17      subpoena.

18             THE COURT:  Good morning.  All right.  I heard a

19      couple of other beeps as you were making your appearance.

20      Let's make all of the appearances, and I will try to

21      figure out exactly who is on the line.

22             Who do I have for the defendants?

23             MR. MALONE:  Good morning, Your Honor, this is Ryan

24      Malone, on behalf of all defendants, Lindell, My Pillow,

25      and Frankspeech.

 1          THE COURT:  Good morning, Mr. Malone.

 2          MR. MALONE:  Good morning.

 3          THE COURT:  And then, Mr. Oltmann, could you state

 4     your name for the record, please.

 5          MR. OLTMANN:  My name is Joe Oltmann.

 6          THE COURT:  Good morning, Mr. Oltmann.

 7          All right.  Well, we are on the line today for this

 8     hearing.  Let me just make sure, are there any other

 9     members of either the plaintiff or defendants or

10     Mr. Oltmann or any members of the public on the line?

11          MR. CAIN:  Your Honor, this is Charlie Cain, for

12     the plaintiff.  There was someone who identified

13     themselves as a member of the press to Emily before you

14     got on, and then obviously you have heard a couple more

15     entrances onto the conference line, so that's what I know.

16          THE COURT:  Okay.  So obviously this is a public

17     hearing, and so to the extent that the press is here, they

18     are here as if they were here in the courtroom.  This is

19     the first time I have had an opportunity to meet and work

20     with you all.

21          Typically these discovery issues are handled by my

22     colleague, Magistrate Judge Crews, but given the timing

23     that I saw with respect to the Motion to Compel and the

24     deposition request for December 16, 2022, I thought it

25     would be appropriate for me to try to step in and see if

1    we can get this resolved, so that is why you are here.

2         But my expectation is that Judge Crews would be the

3    primary judicial officer handling discovery disputes

4    moving forward.  So I appreciate that you have attempted

5    to comply with his practice standards.

6         So, what we have pending before us, Mr. Oltmann, is

7    a Motion to Compel, both responses to written discovery as

8    well as a request for you, pursuant to a subpoena, to

9    appear and testify for a deposition.  But before we get to

10   the motion, itself -- go ahead, Mr. Oltmann.

11        MR. OLTMANN:  I apologize, Your Honor.  I sent over

12   all of that stuff to your email last night because I don't

13   have E-filing.  So I sent that to Coomer's attorneys and

14   to you via email at 4:40, I believe, yesterday.

15        THE COURT:  I appreciate that.  So I have what you

16   sent over to the Court, and so I want to go over a few

17   things with you, obviously if you are proceeding without

18   an attorney in this case.  And that is one of the things

19   that is little bit ambiguous to me, Mr. Oltmann, because

20   on September 26, 2022, at Docket Entry No. 55, which was

21   filed electronically, Ms. Hall actually represents that

22   she is representing you.

23        She says, "Comes now Joseph Oltmann, by and through

24   counsel, and hereby tenders his objection to the

25   Plaintiff's Motion to effect substituted service via

1    service on Colorado Counsel," signed it and filed it on

2    behalf of you through our electronic court filing system.

3         So I'm just a little puzzled about your statement

4    that she doesn't and has never represented you in this

5    matter.

6         MR. OLTMANN:  Well, she doesn't represent me in

7    this matter, she represents me in the matter of Coomer v.

8    Trump, Rudy Giuliani, myself, but not in this case.  I

9    didn't think I -- this is a pretty cut and dry deal, from

10   my perspective.  And so I didn't think I needed to pay

11   someone $400 an hour to do this.

12        And if I decided to hire an attorney, it probably

13   wouldn't have been Ms. Hall, because she is going through

14   and has some issues, some personal medical issues that

15   have come up that have limited her ability to step in the

16   middle of this.  But nobody served me.  Nobody even tried

17   to serve me.  They said they did, but I was in Texas.

18        THE COURT:  So, Mr. Oltmann, I appreciate that, but

19   so are you telling me that Ms. Hall filed this on your

20   behalf or filed this docket entry without your permission?

21   Because, if that is true --

22        MR. OLTMANN:  No, I don't think it was without my

23   permission.  I think she told -- again, I don't know the

24   legales.  So I am not a lawyer.  I am -- this is a very

25   simple thing for me.  I think that that was -- that

1    document was to say that she can't accept service on my

2    behalf; correct?

3            THE COURT:  Not exactly.  She says, as the lawyer,

4    that she is coming on your behalf "by and through

5    counsel," which tells me that she is representing to the

6    Court that she is representing you with respect to at

7    least this objection, and she would be bound by the ethics

8    and our practice standards and professional standards.

9            So if she has done this without your permission,

10   there are consequences to her doing that without your

11   permission, and there may be consequences in that the

12   Court needs to refer her to a Disciplinary Committee or

13   report her to the Bar, because attorneys cannot act on

14   behalf of clients without their permission.

15           So, if you are telling me that she acted --

16           MR. OLTMANN:  Hold on a second, let me --

17           THE COURT:  Mr. Oltmann, can you let me finish,

18   please.

19           MR. OLTMANN:  Yes, ma'am.

20           THE COURT:  So I need you to tell me whether or not

21   she filed Document 55 with your permission or without your

22   permission.

23           MR. OLTMANN:  Okay.  Tell me what this document

24   says specifically.

25           THE COURT:  It is an objection to Plaintiff's

1    Motion for Substitute Service.  So it is a filing in a

2    formal legal paper filed on your behalf.

3         MR. OLTMANN:  So she did object to the substitute

4    of service because in this case she didn't represent me.

5    So as my counsel for -- because this was served to her --

6    I did have knowledge of this.  But I think this is kind of

7    a circle.  She does represent me in the other Coomer case,

8    of which they are trying to circumvent that case in order

9    to get another bite at the apple.

10        But beyond that, nobody tried to serve me.

11   Mr. Cain lied and said that somebody came here and that I

12   was here, but I wasn't, I was in Texas.  So she said

13   basically I am not going to take substitute of service

14   because I am not his attorney in this case; isn't that

15   correct?

16        THE COURT:  So she represents that she is not your

17   attorney in this case, but she is filing this paper "by

18   and through counsel" on your behalf.  So she is appearing

19   in this case on your behalf under our rules.  There is no

20   -- there is no provision in the -- where she is asking the

21   Court for special permission to appear.

22        I mean, the way I read it, it says "comes now

23   Joseph Oltmann, by and through counsel."  So I am just

24   trying to understand.  It sounds like you gave her

25   permission to file this.

1          MR. OLTMANN:  Yeah.  Well, yes, but she is

2    representing me in the other case.  She is not

3    representing me in this case.

4          THE COURT:  Right.

5          MR. OLTMANN:  So I had to file something because I

6    don't have access to it, and she was served that

7    paperwork, and she doesn't represent me, so she was

8    representing that she objects to the substitution of

9    service because she is not my attorney in this case.  And

10   so I'm confused on how we can use another case and her

11   representing me in that case, to substitute service,

12   which, by the way, also, denied me my right to due process

13   to have the clock of 21 days, because she was in several

14   health things, and now I'm sitting here saying, okay, now

15   I can't file a motion to quash, I can't do anything, I

16   can't go find substitute counsel because I don't have

17   enough time.  She can't represent me in the case, but she

18   put out the document for an objection because the Court

19   ordered that she accept service on behalf of me, but she

20   is not my attorney.  I mean this is a circle, in my

21   opinion.

22          Yes, I asked her to file it, but as my attorney in

23   the other case.  Now you are saying she can get in trouble

24   for something she didn't do wrong.  She was saying she

25   doesn't represent me in this case, and it is a substitute

1    of -- you're serving her on a lie by Mr. Cain.

2         Mr. Cain lied.  His lawyers lied.  They said they

3    tried to serve me, and they didn't.  They have my phone.

4    Everyone has my phone number.  They never tried to do any

5    of that.  Nobody ever even tried to call me.

6         THE COURT:  Let's just take a step back, because we

7    are not here to rehear the issue with respect to

8    substitute service.  My understanding, then, is that you

9    authorized Ms. Hall to file Docket Entry No. 55; is that

10   correct?

11        MR. OLTMANN:  I did.

12        THE COURT:  And you are now currently representing

13   yourself; is that correct?

14        MR. OLTMANN:  I am.

15        THE COURT:  And Ms. DeFranco is not representing

16   you; is that right?

17        MR. OLTMANN:  Well, we are having a discussion

18   about it right now because I didn't have a --

19        THE COURT:  Is she -- well --

20        MR. OLTMANN:  She does not represent me right now.

21   She does not.  But she does represent other entities -- I

22   am sorry.

23        THE COURT:  Go ahead, Mr. Oltmann.

24        MR. OLTMANN:  She represents other entities that

25   have an interest in the deposition, right.  So she has an

 1    interest in Conservative Daily and an interest in

 2    representing Shuffling.  So she is there on, I think,

 3    those behalf.  I haven't worked out all of the details of

 4    this yet because I haven't had the time to do that yet.

 5         THE COURT:  Is she representing you personally,

 6    because my understanding is that the subpoena is directed

 7    to you, as an individual?  So is she going to represent

 8    you as an individual at this deposition?

 9         MR. OLTMANN:  At this point, the answer is no.

10         THE COURT:  Okay.  So my objective for this

11    proceeding is to hear from Dr. Coomer's attorney.  You may

12    have an opportunity to respond, but I am, from my many

13    years of being a magistrate judge, wanting to be as

14    practical as possible with respect to the scheduling of a

15    deposition and moving forward with discovery in this case.

16         So, Mr. Cain, if you want to take the opportunity,

17    I don't want you to necessarily rehash everything in the

18    Motion to Compel, but if you want to make any further

19    argument, now is the time.

20         MR. CAIN:  Thank you, Your Honor, I will be brief.

21    The motion, as I think you intimated, speaks for itself.

22    Our request is simple; we want the documents we requested

23    months ago.  We want Mr. Oltmann's deposition in this

24    case, and we want it at a secure location.  In this

25    regard, it would be at the U.S. District Courthouse in

1    Denver, which is well within the hundred miles of where

2    Mr. Oltmann regularly conducts his business at work.

3            MR. OLTMANN:  Objection.

4            THE COURT:  Mr. Oltmann, you are going to have an

5    opportunity to respond, so if you would do us the courtesy

6    of not interrupting, it will be easier for the transcript,

7    because as you might know, I have a court reporter on the

8    line with us, and it is a little bit more difficult for

9    her when there are people talking over each other.

10           MR. OLTMANN:  Yes, ma'am.

11           THE COURT:  All right.  Mr. Cain.

12           MR. CAIN:  To set the scene, as I think we did in

13   our motion, the irony of this particular litigation arose

14   from Mr. Oltmann ignoring a court order to give a

15   deposition in the underlying Denver State Court case that

16   he referred to in favor of attending the Lindell Cyber

17   Symposium that was back in August of 2021.  That is where

18   he, among other places, defamed my client and claimed that

19   he couldn't attend because he had issues relating to COVID

20   when, in fact, he was in North Dakota at that symposium.

21           So we have been through these things.  I know the

22   Court -- it is new to this Court, but we have a history of

23   Mr. Oltmann delaying the process and flouting the Court's

24   authority.

25           When we tried to get him subpoenaed as a witness

1    here, we kind of laid out the procedural timeline for you

2    on that.  I will say to you that Mr. Oltmann is claiming

3    that he is no longer a resident of Texas, and I think he

4    will do so under oath.  But he is certainly making the

5    allegation now that he does not reside in Colorado.

6            We tried to, before we went through the process of

7    substitute service, we did attempt to serve Mr. Oltmann at

8    his place of business in Greenwood Village, Colorado, and

9    that is at Docket 53-3.  That is the affidavit that we got

10   from the process server where they put him in a conference

11   room and told him that "Joe was finishing up his podcast."

12           Whether Joe Oltmann was in the building or not, the

13   process server didn't reach that conclusion in his

14   affidavit.  I think Mr. Oltmann is going to contend that

15   he was in Texas or somewhere else.  Suffice it to say that

16   we went through the service of process, and he is now at

17   least served in this through handing it to Ms. Hall, who

18   as the Court has pointed out, has made several

19   representations that she was acting as his counsel, at

20   least when she filed that pleading.

21           So the timeline for production was November 21st.

22   We have not received any document production.  We provided

23   Mr. Oltmann, as is standard in these cases now in the

24   electronic age, we gave him an Ignite link on November

25   21st to upload the documents.  He indicated that he had

1   issues doing so.  That was a first for us.  So we, on the

2   23rd, through Ms. Beam, provided him also a Dropbox link

3   to at least produce what documents he was prepared to

4   produce in compliance with the subpoena.

5        Instead of doing that, Your Honor, Mr. Oltmann went

6   to Arizona, where he led a very small rally alleging

7   election fraud in Maricopa County.  The point of that

8   comment and date is that that was several weeks ago, and

9   since that point in time, I will represent to the Court

10  that Mr. Oltmann has not provided us with any supplemental

11  production of documents even after he finished the rally

12  during the Thanksgiving period.

13       He has said, Your Honor, that he is available for

14  deposition on December 16.  We have also offered that as a

15  date.  We would like to keep that date.  His putative

16  lawyer, Ms. DeFranco, has also indicated that she is

17  available on December 16th.

18       I will say, since we are unclear now as to what her

19  status is, that we would object to her being part of the

20  deposition proceeding unless she represents to this Court

21  that she has been retained as counsel.  We did receive

22  communication from her suggesting that she intended to

23  appear at the deposition and make objections on behalf of

24  Mr. Oltmann, but not have the status as his lawyer, which

25  I think is inappropriate in this respect.  So either she

1    is going to act as his lawyer or she is not, as I think

2    the Court has already discussed.

3        Now, as far as last night, I guess a little bit

4    before 5:00, we did receive some further commentary with

5    respect to the request that we had outstanding, as far as

6    the documents.  I will say, and we can go through those,

7    Your Honor, although I don't -- I will look to the Court

8    for guidance on that.  I do have comments on the responses

9    that we got.  And let me just kind of summarize those for

10   you rather than go through them in detail.

11       THE COURT:  Okay.  So, Mr. Cain, I am going to

12   interrupt you, even though I just told Mr. Oltmann not to

13   interrupt you.

14       So let me try to understand where we are with

15   respect to the depositions.  Mr. Oltmann, are you

16   available for deposition on December 16th?

17       MR. OLTMANN:  I am actually not, but the Court

18   ordered it, so now I am trying to make accommodations to

19   fly back.

20       THE COURT:  Okay.

21       MR. OLTMANN:  I want to literally -- he said a lot

22   of things, so I don't know if I can respond to those first

23   and then we can go back to him, because he said a lot of

24   things, and because I am not a lawyer -- I wrote them all

25   down.  I certainly don't want to miss any of that.

1          THE COURT:  Okay.  Well, I am --

2          MR. OLTMANN:  May I respond?

3          THE COURT:  You may respond, but, again, I am

4    trying to get to a resolution with respect to the

5    deposition date.  So, with every case, there is an

6    opportunity under the Federal Rules of Civil Procedure to

7    take discovery, including discovery of third parties.  I

8    don't have in front of me the deposition that you may have

9    given in any other matter, but I know that it was not

10   taken in this matter.  And the fact that your deposition

11   has been taken in a State Court matter, does not

12   necessarily preclude your deposition from being taken in

13   this matter.

14         So, by the end of this --

15         MR. OLTMANN:  Okay.  Your Honor, if I can, in

16   relation to this, what you stated, I have already given 7

17   hours of deposition time.  They are using this case to

18   avoid the limits of discovery on my own case.  I have

19   never been told what even the method by which they are

20   going to do the deposition.  They didn't send me whether

21   it was audio, video.  They haven't even complied with

22   that.  They did not check with counsel to tell me where I

23   would be located at.

24         Mr. Cain said in response to an email --

25         THE COURT:  Mr. Oltmann, can I stop you there.  So

1    they wouldn't check with counsel if you are not being

2    represented by counsel.  So, again, just trying to get

3    to --

4           MR. OLTMANN:  Okay.

5           THE COURT:  Mr. Oltmann.

6           MR. OLTMANN:  Sorry.

7           THE COURT:  Again, trying to get to the bottom of

8    this, what I am looking at is a notice of intent to take

9    an oral and video deposition of Joseph Oltmann at,

10   initially, the offices of Recht Kornfeld, P.C.

11          MR. OLTMANN:  It didn't say that.

12          THE COURT:  And I am looking at the docket entry

13   No. --

14          MR. OLTMANN:  I don't have a copy of that.

15          THE COURT:  -- 80-1.

16          MR. OLTMANN:  I don't have a copy of that.

17          THE COURT:  And I also see a subpoena.

18          MR. OLTMANN:  Okay.  Well, I saw the subpoena.  I

19   don't have a copy of the 80-1.  I was never given a copy

20   of that.  So I am looking at the documents that I have.

21   This is the problem with substituted counsel.  This is the

22   problem that I get to is that they can say that they gave

23   her all this information, and now we are trying to say

24   that my lawyer is a bad lawyer that didn't give it to me,

25   but she gave me everything that she was given.

1          MR. CAIN:  Your Honor, if I than can clear that

2     confusion up, if there is any.

3          THE COURT:  Okay.

4          We did serve Ms. Hall personally.  We amended the

5     notice from Recht Kornfeld.  There were concerns about

6     security relating to that, and that is the amended notice

7     that was served on Ms. Hall for the 16th, at the

8     courthouse.

9          THE COURT:  Okay.

10          MR. OLTMANN:  What?  I disagree with that.  Yeah.

11     It was never sent to me, Your Honor.  It was never sent to

12     me.  It was never sent to me.  They served it on Ms. Hall,

13     but they never sent it to me.  Under the substituted

14     counsel, I mean, I said that I represented myself.  He

15     knew that I represented myself, yet he didn't send it to

16     me.  He went an end around and sent a change to Ms. Hall,

17     who --

18          THE COURT:  Okay.  Mr. Oltmann, so do you have a

19     copy of the subpoena?

20          MR. OLTMANN:  I have a copy of the subpoena, yes,

21     ma'am.

22          THE COURT:  They can re-serve a subpoena to you, if

23     necessary.

24          MR. OLTMANN:  Okay.

25          THE COURT:  It is an order from the Court to appear

1    under oath to give testimony.

2         MR. OLTMANN:  Okay.

3         THE COURT:  It appears to me that this first notice

4    was to take an oral and video deposition of you.

5         Mr. Cain, would that be the intention of Dr. Coomer

6    moving forward, to have an oral and video deposition?

7         MR. CAIN:  Yes, ma'am.

8         THE COURT:  So by the end of this proceeding today,

9    we will have identified a date for that deposition to

10   proceed under Rule 30 of the Federal Rules of Evidence.

11        Mr. Oltmann, if you want to be represented by

12   counsel in that case, then I will also order that counsel

13   to enter their appearance in this case as a special

14   appearance in order to represent you in that deposition so

15   that there is no ambiguity moving forward whether or not

16   you are proceeding pro se or if you are proceeding with

17   counsel on your behalf, because I think there has been

18   some confusion with respect to that by all sides.  And

19   part of my objective today is try to minimize any

20   objection and ambiguity for the parties and non-parties in

21   this case.

22        MR. OLTMANN:  Yes, ma'am.

23        THE COURT:  So you have indicated that you are

24   making arrangements to come back for the deposition on

25   this Friday; is that correct?

1     MR. OLTMANN:  I have not yet, but, I mean,

2  depending on what the Court stated.  I mean, it is going

3  to cause a pretty big burden on me.  And now I have to --

4  because it was never confirmed.  I mean, the deposition

5  date was never confirmed, it just said in the order, your

6  order, Your Honor, sorry, your order, that the deposition

7  would be held.

8     And my objection would be a couple of things, one

9  of which is, I disagree and object to it being at the

10  courthouse.  It should always be in a neutral location.  I

11  should be allowed to feel comfortable in my environment,

12  not have something where I feel unsafe going in or out.

13     And, just for the record, just so you know, I live

14  in a house with bulletproof glass and thermal cameras, and

15  I have to live that way because of Mr. Coomer and because

16  of the lies of Charlie Cain.  And so, you know, me just

17  walking into a courthouse is a little bit different than

18  these crazies that exist.

19     And the fact that Mr. Cain invited the public media

20  in here and he handed over media documents -- or documents

21  to the media so that they would write a hit piece on me,

22  just shows you the type of weaponization that Mr. Cain and

23  his group decided to do against me, and it is not fair.

24     THE COURT:  Mr. Oltmann, so I don't know whether or

25  not the -- I don't know whether or not the members of the

1    press who might be on the phone -- I actually don't know

2    if there are any members of the press --

3            MR. OLTMANN:  There are.

4            THE COURT:  I actually set this proceeding by

5    telephone so that it could be the most convenient for you,

6    because you made a representation that you were weren't in

7    the Colorado.

8            Ordinarily, because we are the judiciary, we would

9    have this in the courtroom, and it would be open to

10   members of the public, including the media.  So, you know,

11   I understand there is some history between you and

12   Dr. Coomer and counsel for Dr. Coomer, but I just want to

13   be clear that I was the one who set this to be by

14   telephone, with all the availments that would hopefully be

15   there as if you were in the courtroom.

16           So I never would have closed off this proceeding,

17   because it would have been public if it had been in the

18   courtroom.  And I literally set this by telephone to try

19   to make this convenient for you, okay.

20           MR. OLTMANN:  Yes, ma'am.

21           THE COURT:  So that is the first thing.  The second

22   thing is, you know, I actually think that the courthouse

23   is probably the safest place you could be because we have

24   court security.  We do not allow weapons on the premises

25   except for our United States Marshals, who obviously are

1    doing something very different.  And you all could avail

2    yourselves -- I am looking at my schedule -- of our jury

3    deliberation room, which is behind secured doors, with

4    their own bathrooms.

5         And so, again, to the extent that you are concerned

6    about that, I think that the place of the deposition is --

7    if you are concerned about your own personal security, is

8    probably as safe as we can get it.

9         MR. OLTMANN:  Except for I have to get there, Your

10   Honor.

11        THE COURT:  Okay.

12        MR. OLTMANN:  I have to walk in there.

13        THE COURT:  Okay.  So if your concern is walking

14   into the courthouse, then that is probably something I can

15   also try to help arrange.

16        MR. OLTMANN:  Okay.

17        THE COURT:  Then the third thing is, I think you

18   probably know that depositions are not -- are not public,

19   so that it is appropriate for the attorneys, for the

20   parties to be there.  I would expect the attorneys for

21   Mr. Lindell, Frankspeech, and My Pillow, who have appeared

22   in this proceeding, would be there, and the examining

23   attorneys for Dr. Coomer would be, but I wouldn't expect

24   any other attorneys except for if you have an attorney

25   representing you, because it is an individual deposition.

 1          MR. OLTMANN:  Your Honor --

 2          THE COURT:  Uh-huh.

 3          MR. OLTMANN:  -- the questions that are going to be

 4    asked of me are going to be for me to relay my source,

 5    both of the Antifa call and the source of how I got access

 6    to information related to Mr. Coomer.  And those -- under

 7    -- I have been recognized as a journalist.  And of that,

 8    those are questions that I am going to need time to make

 9    sure that I have a protective order.  I am not going to

10    answer those questions, and this is just another way to

11    weaponize me not answering questions related to a previous

12    case that would put people in harms way, and we have seen

13    what they have done, these radical lefts have done to

14    people that they disagree with, from bullying to

15    intimidation to death threats.

16          So I would just say that I am going to need time to

17    file an order that you can see, based on the fact that I

18    am not going to answer those questions, and this should

19    have to do with the limited scope related to Mike Lindell,

20    Frankspeech, and My Pillow, and not put me in a position

21    where I am going to be browbeat or bullied or abused by

22    Mr. Cain and counsel.  So I would just ask for that, as

23    well.

24          THE COURT:  So, to the extent you have -- under the

25    Federal Rules of Civil Procedure, Rule 30, there are

1    certain objections that you can and cannot make during a

2    deposition.  And to the extent that those questions are

3    asked and you have a valid assertion of privilege, then

4    that is something that you can preserve during the

5    depositions.  Oftentimes we have the depositions in the

6    courthouse because that gives you some availability to the

7    judicial officer to make rulings with respect to the

8    deposition and whether something should or should not be

9    answered.

10        But our Local Rules of Procedure, which are

11   available on the Court's website, is clear that to the

12   extent that you invoke an objection and a privilege, there

13   are certain objections that are permissible, that you

14   preserve them generally, and then you can file your motion

15   afterwards.

16        It is actually much easier for the Court to

17   understand what the question was and the indication of the

18   objection is by a transcript rather than trying to make an

19   ex ante determination based on representation of what the

20   question might have been and what the objection might have

21   been.  So that precision is helpful for the Court.

22        In addition, I start -- I go back to where I

23   started, which is we are talking about this today, I am

24   the presiding judge on this case.  Generally the

25   magistrate judge would be the discovery judge, but given

 1   the fact that the deposition was scheduled for December

 2   16th, and it looks to me like Ms. DeFranco, at least on

 3   November 16th, says that she could accept either the

 4   December 12th or 16th date, and she had cleared those

 5   dates with you.

 6        So, insofar as the 16th is coming up on Friday,

 7   that was one of the reasons why I wanted to make sure that

 8   we had this call in place.

 9        MR. OLTMANN:  Yeah.  So a couple of things.  One, I

10   don't know if she is still free, I have not talked to her.

11   Number two, you just brought up an interesting thing,

12   which, by the way, if you check the transcript in the

13   previous case with the judge at the Colorado District

14   level, and Cain's conversation that he had with Ms. Hall,

15   they had every intent of weaponizing the judiciary, and

16   tried to have the deposition held at the courthouse at the

17   State case so that they could invoke what you are talking

18   about, which is calling in a judicial magistrate to say,

19   okay, we are going to hold you in contempt of the court,

20   and weaponize the system against us.  He admitted that to

21   Ms. Hall.  So when Mr. Cain says --

22        THE COURT:  Mr. Oltmann.

23        MR. OLTMANN:  Yes.

24        THE COURT:  So, Mr. Oltmann, I am a Federal

25   District Court Judge.  I don't know what happened in

1     Denver District Court.  I don't have access to those

2     transcripts, and it is an entirely different case.

3           What I am really focused on today is getting us to

4     a resolution with respect to the Motion to Compel and the

5     documents and getting this deposition done as efficiently

6     as possible.  So what I am telling you is what is helpful

7     is the precise question and the precise objection and the

8     indication of any privilege that you might find to be

9     appropriate.

10          What I heard you say earlier was that at this

11    point, you don't know whether or not Ms. DeFranco will be

12    representing you, and that you are proceeding pro se.  And

13    so that is what I am working with.  So to the extent that

14    she is not available on Friday, you have represented to

15    me, as the recipient of the subpoena, that she doesn't

16    represent you now.

17          And so what I am trying to get to is the fact that

18    to the extent she is going to represent you, she should

19    file a notice.  I am going to set a deadline for that so

20    that we understand that she is representing you, that

21    there is no ambiguity about who should be talked to, who

22    should be coordinated with, who is going to be objecting

23    or not objecting.

24          And then to the extent that we -- you have certain

25    concerns with respect to actually physically walking into

1    the courthouse, that is something I will need to talk to

2    our staff about to see whether or not I can facilitate

3    some accommodation about that.  Okay.

4         MR. OLTMANN:  I still am objecting to it being held

5    at the courthouse.  No other person that they have

6    interviewed, Your Honor, have had to endure going to a

7    courthouse.  They have held it in hotels.  They held it in

8    an office.  They have an office in Colorado, so it is not

9    as if it would be overburdensome to have it in their

10   office.  And now they are just pushing again the

11   courthouse as the place to have the deposition, and they

12   haven't done it to anyone else.  They didn't do it in the

13   last case, but they are doing it to me.  And that is

14   showing just a personal persecution of me and bullying of

15   me individually that they are not extending to any other

16   person that they have interviewed.  And I take exception

17   to that because I should be treated like everyone else.

18        I should be given -- I shouldn't have to worry

19   about my personal safety walking into a courthouse or the

20   ability for me to feel comfortable in the environment by

21   which I am doing a deposition.

22        THE COURT:  Okay.  So are you suggesting,

23   Mr. Oltmann, that you would be comfortable and you would

24   appear on December 16th at Kornfeld Recht.

25        MR. OLTMANN:  At what?  I am sorry, ma'am.

1        THE COURT:  I believe Mr. Rogers, one of the

2    plaintiff's lawyers, works at Kornfeld Recht, a law firm.

3        MR. OLTMANN:  Yeah.  I don't think that is a

4    problem.  I think the December 16th is problematic just

5    because you said you would give me the ability to have

6    appearance of counsel, number one, to make sure she is

7    still available.  Number two, to clear up -- you were

8    going to set a deadline for that.

9        So there are a couple of things you brought up that

10    I don't know -- I just actually sent a text message to

11    Ingrid to see if she was available.  She has not responded

12    yet for Friday.  So hopefully I have that by the time we

13    are finished with this call.

14        THE COURT:  Again, Mr. Oltmann, you have told me

15    that she at this point doesn't represent you.  So, as the

16    Court, I have to proceed as if she is not representing

17    you.

18        MR. OLTMANN:  But you did just say that you would

19    give me an opportunity to pursue counsel, because I said

20    we are discussing it now, and plaintiff's counsel has

21    stated that he objects to her even being there, which

22    means that changes the rules -- changes things.

23        THE COURT:  She cannot be there unless she

24    represents you.

25        MR. OLTMANN:  Okay.

```
 1          THE COURT:  There is no forum for her to be there

 2   if she does not represent you because it is not a public

 3   proceeding.  And so I am going to set a deadline for

 4   December 15th for her to enter her appearance so that we

 5   know whether or not you are proceeding pro se and will be

 6   making your own objections or whether or not you are going

 7   to be represented by counsel.

 8          The subpoena is valid.  And so I think the

 9   procedure is that if there are questions that you do not

10   intend to answer, that you can state that objection.  You

11   can look at our Local Rules of Procedure.

12          I understand that you are not a licensed attorney,

13   but pro se litigants under the law of the United States

14   Court of Appeals for the Tenth Circuit are bound by the

15   same substantive and procedural laws and rules as any

16   represented party, and so that's sort of the application.

17          And then my understanding with what you have just

18   said is that you are more comfortable appearing at

19   Kornfeld Recht, the law firm, instead of at the

20   courthouse.  And so let me ask counsel for Dr. Coomer

21   whether or not they are prepared to proceed at the law

22   firm instead of at the courthouse.

23          MR. CAIN:  Thank you, Your Honor.  We amended our

24   notice to the courthouse for exactly the reasons that you

25   were discussing earlier in terms of concerns about
```

 1   security.  And, specifically, the courthouse is the most

 2   safe and appropriate place for this.

 3        Number one, our security concerns arise from public

 4   statements that Mr. Oltmann has made on numerous

 5   occasions.  They have been widely reported.  I won't

 6   repeat them.

 7        MR. OLTMANN:  Because it is a lie.  That is why you

 8   won't repeat them, because it is a lie.  Because you are

 9   lying.

10        THE COURT:  Mr. Oltmann, again --

11        MR. OLTMANN:  He is a liar.

12        THE COURT:  Mr. Oltmann --

13        MR. OLTMANN:  Yeah.

14        THE COURT:  I understand that we are on the

15   telephone.  But, again, this is a judicial proceeding, a

16   court proceeding, so I would appreciate it if you would

17   let Mr. Cain finish, and then obviously you will have an

18   opportunity to respond.  But I would suggest to you and

19   encourage you that the tenor of the discourse in the

20   courtroom should be professional.

21        All right.  Mr. Cain, if you would like to proceed.

22        MR. CAIN:  Your Honor, I would, thank you.

23   Mr. Oltmann is making the point for me.  I am very

24   concerned about physical safety issues.  I am very

25   concerned that, unlike some of the other defendants who

1    have been taken by agreement or otherwise, as in the

2    normal course, that this would turn into something like

3    you just heard.  We are concerned that Mr. Oltmann is

4    associated with a malitia group.  That's well --

5            MR. OLTMANN:  Oh, my good.

6            MR. CAIN:  -- reported.  I am concerned that the

7    public threats and doxxing of my client, sending people

8    associated with him to my client's home.  My client is not

9    out in the public claiming the things that Mr. Oltmann is

10   claiming.  And so he has a right, of course, to be present

11   at the deposition, as well.

12           So, if this is, given our history -- and I know the

13   Court is just getting into this, but if history, though,

14   is any guide to us, it is going to be the most prudent

15   course of action to have this in the courthouse.  And as

16   the Court pointed out, potentially having the ability to

17   have a neutral judicial officer -- we are not weaponizing

18   anyone.  We don't presume to know how the Court would

19   rule, but to have that potential availability would

20   streamline the process, to the extent that there are

21   claims of privilege or objections, especially ones that

22   Mr. Oltmann is making on his own accord if he does not

23   obtain counsel.

24           Then lastly, I would just let the Court know that

25   we had communications with Recht Kornfeld, as I alluded

1    to.  They're concerned about people being armed coming

2    into a conference room there.  I think, if anything we can

3    do as judicial officers, is to try de-escalate this.  And

4    I think with the U.S. Marshals and with people that go

5    through security, I would highly, highly recommend and

6    request that we have this at the courthouse.

7          THE COURT:  Okay.  Mr. Oltmann?

8          MR. OLTMANN:  Well, first of all, the slander of

9    saying that I am connected to a malitia, I have never been

10   connected to a malitia ever.  It is the same thing that he

11   said when he slandered me before and said I was connected

12   to QAnon events, which I have never been connected to Q --

13   QAnon or anything else related to that, ever.

14          I have never been accused of violence, yet

15   Mr. Coomer has.  I have never sent someone to his home,

16   that is a lie.  I have never done anything to push

17   anything out on Mr. Coomer.

18          To the contrary, I live in a home -- I literally

19   had 24-hour security, 7-days-a-week, for 16 months.  So I

20   am the one that has been subjected to all of this.  To say

21   that I was violent, they can't point to any event where I

22   was violent.  But I can point to three police reports

23   where people came to my house with guns after disclosing

24   what Mr. Coomer did.

25          I can also point to a fact that I had the FBI, the

1    team out to my home -- excuse me, the hazmat team out to

2    my home because someone sent powder through the mail in

3    order to threaten and intimidate my family.

4         So I have never done anything that he is saying.

5         THE COURT:  Mr. Oltmann.

6         MR. OLTMANN:  Hold on, Your Honor, I want to finish

7    this thought.

8         THE COURT:  Sure.

9         MR. OLTMANN:  If they are concerned about safety,

10   they can do this entire deposition via Zoom, they don't

11   have to have me in the courtroom.  But what they are

12   attempting to do is say that they want to weaponize the

13   judiciary in such a way that they can threaten,

14   intimidate, or put an overburden on top of me.

15        They can call the courtroom at any time that they

16   want during a deposition, that doesn't preclude them from

17   doing that.  But to sit here and tell me that I have got

18   to show up to a courtroom, in an environment that I am

19   uncomfortable with, is wrong, and it is prejudicial to me

20   personally because they are making all these allegations

21   which aren't true.  They are not true.  I have never done

22   anything that they said that I am doing, never, but they

23   have done them against me.

24        THE COURT:  Okay, Mr. Oltmann, so I appreciate

25   that.  Under the Federal Rules of Civil Procedure,

1   however, the presumption is that depositions will actually

2   be taken in person.  Before the COVID-19 pandemic, it was

3   very uncommon to have depositions taken by electronic

4   means.  In fact, the Federal Rules of Civil Procedure

5   contemplate that the parties have to agree and the Court

6   has to order the deposition to proceed by electronic

7   means, as opposed to the presumption, which is in person.

8        I will tell you as a judicial officer, routinely we

9   do have depositions occur in the courthouse.  You wouldn't

10  be sitting in the courtroom, you would be sitting in a

11  conference room with windows.  It is a jury deliberation

12  room, but it is very similar to any conference room you

13  would be in.  And it is more secure than an office

14  building because it is obviously a courthouse with, you

15  know, court security officers and United States Marshals.

16       So if your concern is your personal safety, which

17  it sounds like that is what you are saying to me; is that

18  correct?

19       MR. OLTMANN:  Absolutely.  Provable issues of

20  safety that I have had to deal with, not made up ones.

21  Provable.

22       THE COURT:  Okay.  Okay.  So, again, I think that

23  the -- that availability is something that we can

24  accommodate.  And then, again, to the extent that we have

25  additional concerns, I am just thinking about space-wise.

1          Mr. Cain, how many attorneys on behalf of

2     Dr. Coomer would be present?

3          MR. CAIN:  Me and Mr. Kloewer.  Two.

4          THE COURT:  And then Mr. Oltmann.

5          Mr. Malone, on behalf of defendants, how many

6     attorneys do you believe would be present?

7          MR. MALONE:  We only anticipate one, Your Honor.

8          THE COURT:  And do you anticipate your client,

9     Mr. Lindell, being present?

10          MR. MALONE:  Not at this time.

11          THE COURT:  So, again, I think, Mr. Oltmann, I can

12     reach out to our United States Marshals and see whether or

13     not there are mechanisms where we can facilitate your

14     entry and your exit from the courthouse that would --

15     might address what your concerns are with respect to

16     personal security, because I hear your concern in your

17     statement and your voice.

18          MR. OLTMANN:  These people attacked my daughter, my

19     son, my wife.  Yeah, I have serious concerns.  I have

20     serious concerns.

21          THE COURT:  I understand that, Mr. Oltmann, so that

22     is what I am trying to address here.

23          Okay.  So, Mr. Cain, it sounds to me like you all

24     are also ready to proceed with the deposition without

25     resolution to the written discovery, because to the extent

1   that you all believe that you will or want to proceed on

2   Friday, I am not sure that the Court will have an

3   opportunity to fully resolve the written discovery before

4   then.

5            MR. OLTMANN:  Your Honor, I presented the written

6   discovery inside the documents that I sent to you.  I

7   don't have any documents that they are asking for.  There

8   are none that they can't get from other sources that

9   haven't already been given.  I mean, it is duplicative.

10           THE COURT:  Okay.  Mr. Cain?

11           MR. CAIN:  Thank you.  In terms of the documents,

12   Mr. Oltmann had indicated he had some documents to

13   produce, and apparently attempted to do so but had

14   technical issues.  To the extent that he has responsive

15   documents that he is intending to produce, we ask that the

16   Court order that he do so by 5:00 p.m. today so we can

17   review those documents.

18           THE COURT:  Well, I think Mr. Oltmann's

19   representation to you, Mr. Cain, is that whatever he is

20   going to produce, is attached to that electronic mail.  Is

21   that correct, Mr. Oltmann?

22           MR. OLTMANN:  Yes.  I don't have any text messages,

23   emails, anything that would be correspondence related to

24   any of those people or parties.

25           THE COURT:  And, then, Mr. Oltmann, is it your

1    representation under the subpoena power of the Court that

2    you have produced everything that you have; is that right?

3             MR. OLTMANN:  Yes.

4             THE COURT:  And I say "everything that you have,"

5    everything that is responsive to the documents that were

6    requested by Dr. Coomer in this action; is that right?

7             MR. OLTMANN:  Yes.

8             THE COURT:  So even if something had been produced

9    in another action, but would be, I think your

10   characterization is "duplicative," again, this is a

11   separate case.  And so I know that sometimes it is

12   confusing for litigants that have multiple cases across

13   different courts, but this court is not actually

14   associated with the Denver District Court or the Colorado

15   State Court system, so we don't have access necessarily to

16   anything that has been produced in that Denver Court

17   action.

18            MR. OLTMANN:  Okay.  Then I will copy that and push

19   it up to anything that is duplicative.  So I will produce

20   that.

21            THE COURT:  So anything you have that is responsive

22   to the documents requested in this case, regardless of

23   whether or not it has been produced somewhere else, needs

24   to be reproduced in this case, because, again, I know it

25   can be confusing, but we are just not related okay.

1          MR. OLTMANN:  Yes, ma'am.

2          THE COURT:  So I will order that to be done to the

3     portal no later than 5:00 p.m. this afternoon, because it

4     sounds like you have access to those documents,

5     Mr. Oltmann.

6          MR. OLTMANN:  Yes.  I have to call the attorneys.

7     Just so I am not out of trust with the Court, I would like

8     it to be tomorrow at noon, just to make sure I can get

9     access to all of those documents.

10          THE COURT:  All right.  So I will order that for

11     tomorrow, December 14th, at 12:00 p.m. Mountain Time, just

12     to make sure we are clear about that.  Okay.

13          MR. CAIN:  Your Honor, may I have a word on that?

14          THE COURT:  Yes, Mr. Cain.

15          MR. CAIN:  As you probably have gleaned, I am

16     trying my best to be efficient here.  We know there are

17     documents that are responsive to our requests, as I

18     alluded to earlier on, where there are communications

19     between Mr. Oltmann and Mr. Lindell, for example, we know

20     that because Mr. Lindell produced some text messages and

21     some emails between these parties.

22          Now, I will ask questions about where those

23     communications are at this point and why Mr. Oltmann

24     doesn't have access to them, apparently, in the

25     deposition.  But there are two other kind of related

1   issues I need to bring to your attention.

2          The first is, there has been no motion to quash

3   that was filed.  We got one yesterday, which was untimely

4   and did not relate to any claim of privilege, as I read

5   it.  The reason I bring that up is, we have asked for

6   documents that we know or believe should exist that

7   Mr. Oltmann is claiming essentially the newsperson

8   privilege.  And that issue was addressed before by Judge

9   Moses.

10          But if there is a claim of privilege that is being

11   made, we request him, under the statute and under Federal

12   Rule of Civil Procedure 45, to file a motion to quash and

13   assert that privilege and also disclose a privilege log so

14   that we can evaluate that privilege.  None of that was

15   done, and obviously our position is that has been waived.

16          The second thing, Your Honor, I would like to point

17   out to you, if you look at Exhibit 4 to the response that

18   Mr. Oltmann filed, and in particular Request No. 6, and

19   they are all important, I am just calling this to your

20   attorney because it is a little different in the response

21   than the others.

22          Request 6 was, "All documents or communication

23   authored, sent, or received by you relating to the

24   specific acts that Dr. Coomer specifically undertook which

25   resulted in provable manipulation, alteration, or

1   misreporting of the 2020 election results."  The response

2   was, "I do not keep that information.  It is held in a

3   depository that when I need information or to review it, I

4   get access to it."

5        Now, to me, that information is in the care,

6   custody, or control of Mr. Oltmann and should be produced.

7   There is no other objection other than, "I do not keep

8   that information."  And it is not credible, respectfully,

9   after 2 years of claiming publicly as proof, for him to

10  not produce that in response to the subpoena, especially

11  when there is no objection and especially based on his

12  representation.

13       So, to the extent that information exists, I ask

14  that be part of the Court's order relating to production

15  by noon tomorrow.

16       THE COURT:  All right.  So, Mr. Cain, you probably

17  can appreciate that I got this late in the day yesterday,

18  and I have not had the opportunity that I would normally

19  have to review and get up to speed to all of the various

20  objections of this case.

21       So, to the extent that you are, again, ready to

22  proceed on Friday, and there are questions you need to

23  ask -- and let me just be clear to Mr. Oltmann, to the

24  extent that you invoke an objection or a privilege that

25  doesn't hold up, then you may have to sit for another

1    deposition.  Alternatively, if the Court upholds the

2    objection or the invocation of privilege, then again, you

3    wouldn't have to respond.

4         But, Mr. Cain, I am going to tell you the same

5    thing I told Mr. Oltmann, which is it is a challenge for

6    this Court, walking in on an expedited basis, to

7    understand exactly where you are.  I am not privy to what

8    exactly happened with respect to the subpoena in terms of

9    what other documents he might have from a Denver District

10   Court case to which this Court was not involved and

11   doesn't have access to the file.

12        So, again, what I am looking at is a plaintiff who

13   is telling me that they want to proceed with a deposition

14   on Friday in the courthouse, which we can accommodate.

15   Not within the context of this hearing, but as a judicial

16   officer, I can reach out to our court staff and determine

17   what, if any, additional security measures we can provide

18   so that all parties, as well as the deponent, are

19   comfortable.

20        But, to the extent that you want all of these

21   issues that you raised with respect to discovery or

22   documents to be resolved, Mr. Cain, I'm just being honest,

23   I am not sure we can get those all done in time for a

24   deposition on Friday.

25        MR. CAIN:  And I understand, Your Honor, and thank

1   you for that.  I just want to be clear, I do intend to

2   make the record that I can make on Friday.  I do believe

3   it is important to move forward, and then if we need to

4   address these matters either during or subsequent to, I'm

5   cognizant of the Court's time on this.  We can make that

6   record and then deal with it in context that we may not

7   have right now.  So I'm prepared to proceed.

8        THE COURT:  All right.  So, Mr. Oltmann, I think

9   you started by saying you don't have access to the Court's

10   electronic filing system; is that right?

11        MR. OLTMANN:  Yes, ma'am.

12        THE COURT:  Okay.  So, to the extent that you are

13   proceeding pro se and you need to communicate with the

14   Court, under our Local Rules of Civil Practice, you need

15   to file by mailing it into the court.  So I cannot accept

16   things by receiving them by email to chambers, so you need

17   to mail them to the Court.

18        I will make an exception today by having and

19   directing our Clerk of Court to docket the non-party

20   Joseph Oltmann Motion to Quash on the docket for you.  But

21   in the future, you need to file it with the Court or get

22   permission to become an electronic filer.

23        I am not sure you will need to be an electronic

24   filer because you are a non-party to this case, but since

25   you are not a lawyer that is a member of the Bar of this

1    District, you do not have automatic access to the

2    electronic docket.

3            In addition --

4            MR. OLTMANN:  Okay.

5            THE COURT:  -- the responses that you have provided

6    to the discovery are not generally things that you need to

7    provide to the Court unless there is an objection.  So my

8    understanding is that your objection to the plaintiff's

9    request for production is a discovery response, but it is

10   also not entirely clear to me whether or not you intended

11   anything else with that.  And then I have a non-party

12   Answer to the Compel Document Production and Deposition

13   Testimony, which I construe, but you tell me, Mr. Oltmann,

14   as your response to the Motion to Compel; is that right?

15           MR. OLTMANN:  I am not sure I understand that.  I

16   am not sure I understand.

17           THE COURT:  So you sent something called an Answer

18   to Compel Document Production and Deposition Testimony.

19           MR. OLTMANN:  Yes.

20           THE COURT:  And I understand you are not a lawyer,

21   and legal jargon can be obtuse for anyone on the best of

22   days, but I think what you are doing in that answer is

23   actually responding to the Motion to Compel; is that

24   right?

25           MR. OLTMANN:  Yes.  Yes, ma'am.

1          THE COURT:  So I will also direct the Clerk of the

2     Court to docket the Answer to the Motion to Compel

3     Document Production and Deposition Testimony as your

4     response to the Motion to Compel.

5          MR. OLTMANN:  Okay.  Thank you.

6          THE COURT:  All right.  That being said, is

7     anything else we need to cover before the Court issues an

8     order, which will likely be that you all will proceed with

9     the deposition at the courthouse on Friday, December 16th,

10    that we will reserve ruling with respect to the Motion to

11    Compel for documents for a little bit further briefing

12    and/or take that under advisement.

13         MR. OLTMANN:  Yes, Your Honor.

14         THE COURT:  Go ahead, Mr. Oltmann.

15         MR. OLTMANN:  Sorry.  So I am actually having a

16    conversation with Ingrid right now about this, and three

17    things before the order that I think that you are working

18    on is, one, whether or not we can have security that would

19    be adequate to make sure I felt safe coming through the

20    courthouse and leaving the courthouse.  That hasn't been

21    resolved.

22         Also, Ingrid cannot meet with me before Friday, and

23    I have to retain her as counsel for her to be there, which

24    means I want somebody there, since I have to retain her,

25    so I am not going to have time before Friday.  I also feel

1    like there is some stuff that Mr. Cain wants as a result

2    of this.  He wants information related to patent

3    information, reports that came to me via investigations

4    related to Mr. Coomer's involvement in this, and I

5    think -- I am actually trying to access some of those

6    files now to get those pushed over.

7        But I don't think that proceeding on Friday is --

8    first of all, I can't hire Ingrid before Friday and have a

9    conversation with her before this deposition.  She was

10   showing up to do limited representation at that hearing,

11   but now she has to enter an appearance and has to do all

12   those other things.

13       So, given that, I just asked her what other days

14   she has available, and she said, "Hang on, please" on the

15   phone.  And what you are saying is I have to have someone

16   that enters an appearance, so all that, and today is

17   Tuesday.

18       THE COURT:  She doesn't -- she does not have --

19       MR. OLTMANN:  Sorry, Your Honor.  Go ahead.

20       THE COURT:  Mr. Oltmann, it still is not clear to

21   me, are you going to be represented with respect to the

22   subpoena by an attorney or not?  Because if that person is

23   going to represent you with respect to the subpoena, then

24   they do need to enter an appearance in this case.

25       If they are going to file a Motion to Quash on your

1   behalf, if they are going to make any objections later to

2   the Court on your behalf, if they are going to represent

3   you in any sort of motion in the future, yes, that person

4   needs to enter an appearance so that I have clarity with

5   respect to whether or not I am working directly with you

6   or I am working with an attorney.

7           That is what we need to do.  If she needs to enter

8   an appearance, it is literally a filing of a paper saying

9   that she is entering an appearance, and as long as she is

10  a member of this Court, it would take her less than 2

11  minutes to file that, if she is a member of this Court.  I

12  don't know if she is or not.

13          MR. OLTMANN:  I am pretty sure she is.

14          THE COURT:  That is the first point of clarity that

15  I need from you, is are you going to be represented by an

16  attorney in this deposition?

17          MR. OLTMANN:  Well, given the fact that I did not

18  know that I could not have an attorney there present, you

19  are saying that that attorney can't be there, can't be

20  present whether she is representing me in the other case

21  or in this case, although they are both connected.

22          THE COURT:  You have to have an attorney

23  representing you that is subject to the orders of this

24  court in this proceeding.  Again, the District Court case

25  is not -- you may see it as related, but it is two

1    different judicial courts.  So I do not rule on what the

2    District Court in Denver does.  They do not rule in what I

3    see in this case.

4        So my question is, if you are going to be

5    represented in this deposition in which an attorney will

6    be making objections on your behalf or argument with

7    respect to this subpoena and this deposition, that person

8    needs to enter an appearance.

9        MR. OLTMANN:  Okay.  So then I would say, Your

10   Honor, that I am going to have to have a conversation with

11   Ingrid before I can come to that conclusion, because

12   showing up to a deposition, she was going to do limited

13   representation or appearance on that deal.

14       So at this point, I think I have to get an attorney

15   to represent me to show up to the deposition, and now it

16   is just a matter of whether or not that is Ingrid or I

17   seek a third party to be counsel.  At this stage, I think

18   it is probably going to be -- likely it will be Ingrid.  I

19   can't even get her to confirm because plaintiff's counsel

20   was non-responsive as relates to confirming the date for

21   Friday.

22       So now I have two things.  One, I have to hire an

23   attorney, so the answer is yes, I am not going to show up

24   to a deposition without an attorney.

25       THE COURT:  Okay.  So, to the extent that you are

1  going to show up without -- that you believe that you need

2  to proceed with an attorney in this case, I will take that

3  under advisement and I will issue an order accordingly.

4      Mr. Cain, anything further on your behalf?

5      MR. CAIN:  Three points, all quick.  First, stating

6  the obvious, Mr. Oltmann has had months to have these

7  discussions about representation at his deposition.  So I

8  certainly feel like we would be prejudiced by his

9  inability or inaction on this point, and I would like the

10  Court to consider that.

11      Second, I would remind Mr. Oltmann that the Court

12  has issued a protective order in this case.  To the extent

13  that there are questions about or confusion over what

14  should or should not be produced, there is a protective

15  order that if whatever he produces falls within the scope

16  of that order, then he potentially, at least, has the

17  Court's protection via that order.

18      And then third, housekeeping, I would like to start

19  the deposition at 9:00 a.m.  It may be a long day, if that

20  is convenient to the Court.

21      THE COURT:  All right.  Anything on behalf of the

22  defendant?

23      MR. MALONE:  No, Your Honor.  We will proceed as

24  directed by the Court.

25      THE COURT:  All right.  So, Mr. Oltmann, before I

1   leave you and recess this proceeding, I need an ability to

2   get ahold of you.  So until and unless you are represented

3   by counsel in this case, we need an address for you and a

4   telephone number.  I can restrict that from the Court

5   docket so that it is not appearing, since you are

6   concerned with respect to your personal security, I can

7   understand that.

8          But we do need a way, as the Court, to be able to

9   contact you formally, which is not through an email, since

10  you are not represented on the e-filing system.  So if you

11  could give me your address and telephone number, I would

12  appreciate it.

13         MR. OLTMANN:  I have to tell you, first of all, the

14  person that caused all these people to come after my

15  family is on this call.

16         MR. CAIN:  Your Honor, I am not going to --

17  obviously I know not to jump in, but --

18         MR. OLTMANN:  But you did.  I was not done.  I was

19  not done, Your Honor.

20         THE COURT:  Mr. Cain, it is the same rules for

21  everyone who is on this telephone line.  I understand the

22  emotions are running high and there is a lot of history

23  between these parties, so let us proceed with Mr. Oltmann

24  making his statement, and then you can respond.

25         Okay.  Mr. Oltmann?

```
 1              MR. OLTMANN:  Your Honor, is this just to serve
 2    paperwork?
 3              THE COURT:  The Court needs to be able to send you
 4    things.  You are not an e-filer and you do not have
 5    counsel of record.  I cannot communicate with you and the
 6    Court cannot communicate with you through email.
 7              MR. OLTMANN:  So can I give you the address of one
 8    of the companies that I have?
 9              THE COURT:  If you are representing to me that you
10    will be regularly picking up that mail and there will be
11    no argument that you do not get notice because it is going
12    to that address.  So whatever address you give me and
13    whatever phone number you give me, that is going to be the
14    formal address and phone number that the Court uses to
15    communicate with you, until and unless you are represented
16    by counsel.
17              MR. OLTMANN:  Okay.  Let me grab a phone number
18    real quick that is a masked number that will come directly
19    to me.  One second.  Let me make sure this is valid.  I
20    will just give you -- here is another thing, Your Honor.
21    There is media on this call.  Are they going to get access
22    to this, as well?
23              THE COURT:  Well, let me ask, are there members of
24    the media on this call?
25              UNIDENTIFIED SPEAKER:  Yes.
```

1          THE COURT:  So, Mr. Oltmann if you are concerned

2     with respect to the media having access to this

3     information because of security issues, then you can -- I

4     will order you to supply that information by email

5     directly to Chambers by no later than 3:00 p.m. today,

6     Mountain Time.

7          MR. OLTMANN:  Okay.

8          THE COURT:  And if you fail to do so, you will be

9     in violation of the Court's order.

10         MR. OLTMANN:  I will do it right now.

11         THE COURT:  All right.  Anything further from

12    counsel?

13         MR. CAIN:  Your Honor, is this the address we are

14    to serve Mr. Oltmann until he retains counsel?

15         THE COURT:  I would assume so.

16         So, Mr. Oltmann, this address will be your formal

17    address for the Court and for all service purposes until

18    and unless you retain counsel.

19         MR. OLTMANN:  Yes, ma'am.

20         MR. CAIN:  Lastly, and I apologize for jumping in.

21    At the risk, again, of stating the obvious, Dr. Coomer is

22    not sending people to Mr. Oltmann's house --

23         MR. OLTMANN:  That's a lie.

24         MR. CAIN:  -- so he's questioning our motives.

25         MR. OLTMANN:  That's a lie.

```
 1          MR. CAIN:  His statements are false and, frankly,

 2    beneath the dignity of this Court and are insulting.  I

 3    have to say that.  I have been trying to ignore that for

 4    the entirety of this call.

 5          THE COURT:  So, what I will say, Mr. Cain,

 6    Mr. Oltmann, Mr. Malone, I understand that there are a lot

 7    of disparate concern of the parties and the third parties

 8    and the non-parties associated with this proceeding.  I

 9    take all of them seriously.  I proceed on this case, as I

10    hopefully do on all cases, proceeding as equitably to

11    everyone who appears before this Court with a goal of

12    efficient resolution of the disputes that come before the

13    Court.

14          So, again, I encourage you all, despite the

15    emotions, to approach each other as professionally as

16    possible, particularly before the Court.  I understand

17    that there are real challenges, but to the extent that

18    your various purposes are to persuade this Court of

19    things, I will just let you know that my objective is to

20    figure out and sort the facts of this case and apply the

21    law as fairly as I can to those facts, and you all should

22    just be guided by what is helpful to the Court in that

23    pursuit and what is not helpful.  Okay.

24          MR. CAIN:  Thank you, Your Honor.

25          THE COURT:  Anything further?
```

1        MR. OLTMANN:  Your Honor, can we note that as they

2    get access to the address and phone number, that they keep

3    that confidential.

4        THE COURT:  So what I will do is I will restrict it

5    on the docket and it will be available to the parties and

6    the Court.

7        MR. OLTMANN:  Thank you.

8        MR. MALONE:  Your Honor, this is Ryan Malone for

9    the defendant.  Just one minor clarification before we

10   conclude, if possible.

11       THE COURT:  Go ahead.

12       MR. MALONE:  As far as I know, defendants did not

13   receive what Mr. Oltmann may have sent to plaintiff's

14   counsel last night or what he may have sent to Chambers.

15   And I understand that what Mr. Oltmann sent to Chambers

16   will be docketed.  For all I know it is the same thing as

17   what was sent to Dr. Coomer's counsel, but we would just

18   ask that plaintiff's counsel forward whatever Mr. Oltmann

19   sent by email to us prior to -- as soon as practicable,

20   but certainly prior to the deposition.

21       THE COURT:  So not all of the documents will be

22   docketed.  The only things that will be docketed are what

23   the Court construes as filings, which are the answer to

24   the motion -- I am sorry, Answer to Compel Document

25   Production and Deposition Testimony, which the Court will

1    construe as a response to the Motion to Compel by

2    non-party Joseph Oltmann, as well as non-party Joseph

3    Oltmann's Motion to Quash.  Okay.

4          MR. MALONE:  Thank you, Your Honor.

5          THE COURT:  All right.  With that, the Court will

6    be in recess, thank you.

7          (Proceedings conclude at 12:26 p.m.)

8

9          **R E P O R T E R ' S   C E R T I F I C A T E**

10

11         I, Darlene M. Martinez, Official Certified

12   Shorthand Reporter for the United States District Court,

13   District of Colorado, do hereby certify that the foregoing

14   is a true and accurate transcript of the proceedings had

15   as taken stenographically by me at the time and place

16   aforementioned.

17

18

19         Dated this 14th day of December, 2022.

20

21

22

23   _____

24         s/Darlene M. Martinez

25         RMR, CRR