# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, Ph.D.,
  Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
  Defendants

---

## PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION AND DEPOSITION TESTIMONY FROM THIRD-PARTY TINA PETERS PURSUANT TO F.R.C.P. 45 AND MOTION FOR SANCTIONS PURSUANT TO F.R.C.P. 37

---

TO THE HONORABLE MAGISTRATE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D., through counsel, files this Motion to Compel Responses to Discovery pursuant to Federal Rule of Civil Procedure 37, stating in support thereof as follows:

### CERTIFICATE OF CONFERRAL

Plaintiff has conferred with counsel for Defendants and counsel for third-party Tina Peters. Defendants take no position on the relief requested, but Peters is opposed.

### INTRODUCTION

The default rule that presupposes that witnesses are acting in good faith does not apply to this case.

1

Mesa County Clerk and Recorder Tina Peters (Peters) is a material witness in this case with knowledge of many of the facts described in Plaintiff's First Amended Complaint. In addition to playing the starring role in a feature length film recently produced by Defendant Lindell, Peters is also a close ally of Joe Oltmann (Oltmann). She has appeared on his podcast "Conservative Daily" numerous times over the last two years and was an early adopter of Oltmann's false claims about Plaintiff.[1] Like Oltmann, Peters appeared onstage at Lindell's "Cyber Symposium" to present alleged "evidence" that the 2020 presidential election was rigged. Peters is referenced in Plaintiff's First Amended Complaint on at least twelve occasions.[2]

Within hours of being served with the subpoena at issue here (**Exhibit 1**), Peters appeared live on air for an interview on FrankSpeech.[3] During the interview, Peters defamed Plaintiff at length and stated her intention to not comply with the subpoena.[4] In the ensuing months, Peters made no effort to quash or modify the subpoena, despite multiple contacts from undersigned counsel to Peters' counsel of record in various other matters.

---

[1] *See* Plaintiff's First Amended Complaint at ¶ 74, FN 113.

[2] *Id.* at ¶¶ 25, 35, 74-75, 90-92, 94.

[3] *See* Tina Peters, Brannon Howse Live, FRANKSPEECH, Sep. 7, 2022, at 5:00, https://caincloud.egnyte.com/dl/o6pRvxpYdi; *see also* Abigail Weinberg, *Tina Peters Can't Keep Her Mouth Shut*, MOTHER JONES, Sep. 13, 2022, https://www.motherjones.com/mojo-wire/2022/09/tina-peters-cant-keep-her-mouth-shut/.

[4] *Id.* at 5:00 (Peters: "This is going to happen on November 7 right here in Grand Junction, where they're going to subpoena me and interrogate me to try to gin up some kind of information about our patriot Mike Lindell. Not gonna happen.")

On November 7, 2022, Peters appeared for her deposition in Grand Junction.[5] She did not produce any substantively responsive documents.[6] With the exception of preliminary introductions and telling Plaintiff's counsel what she had for lunch, Peters did not answer a single question. Instead, she looked at her phone while her counsel asserted a blanket invocation of the Fifth Amendment on her behalf 502 times over the course of the deposition.

Following the deposition, Peters made an appearance on "The Chuck and Julie Show" on November 18, 2022, where she discussed her deposition in this case. "We don't answer criminals,"[7] she stated. "And so I invoked the Fifth. And it's because we don't have to answer those questions. That is not our, you know, we have no obligation to give them anything."[8]

Plaintiff has subsequently obtained other sworn testimony further affirming Peters' relevance to this dispute. Josh Merritt testified that he spoke with Peters multiple times at the Cyber Symposium,[9] an event which plays a significant role in this dispute. Among other things, that testimony speaks to the potentially significant financial incentive Peters and other witnesses in this case may have to censor or withhold

---

[5] *See generally*, **Exhibit 2**, Depo. Tr. Tina Peters, Nov. 7, 2022.
[6] **Exhibit 3**.
[7] *See* The Chuck and Julie Show, Nov. 18, 2022, at 5:50, https://caincloud.egnyte.com/dl/lXv94MkWzy.
[8] *Id.*
[9] *See* **Exhibit 4**, Depo. Tr. Joshua Merritt, Nov. 10, 2022, 136:25-137:5; 141:8-145:24.

3

testimony.[10] Oltmann too testified to his communications with Peters,[11] as well as his own significant financial ties to Defendants.[12]

Peters is an important witness in this case and the subpoena issued by Plaintiff imposes legal obligations on her. The Fifth Amendment is not a shield that can be invoked to escape the requirement to produce documents, nor can it be legitimately invoked as a blanket response to every question in a deposition regardless of substance or context. Plaintiff seeks an order compelling production of responsive documents and an order overruling Peters' blanket assertion of privilege. Plaintiff similarly seeks his fees and costs associated with his lawyers' attendance at the sham deposition, for the filing of this Motion, and for the attendance at a subsequent deposition following this Court's ruling on the improper blanket assertion of privilege.

## BACKGROUND

1.  On September 7, 2022, Plaintiff served Peters with notice of intent to take oral and video deposition on November 7, 2022. [Dkt. 51]. Pursuant to Federal Rule of Civil Procedure 45(a)(2), Plaintiff's subpoena also directed Peters to bring with her and produce at the time of the deposition the documents and tangible things described in Exhibit A attached to the subpoena.

---

[10] *Id*. at 143:21-144:5 (Merritt: "And she goes, don't worry about it. If you're working with Lindell, he'll pay off your house for you. I go, excuse me? She said, yeah, he'll pay off all your stuff for you. I said, I don't work that way, ma'am. And that was sort of when I had to pause and take a look back at sort of some of the things that were going on.")

[11] *See* **Exhibit 5**, Depo. Tr. Joseph Oltmann, Dec. 16, 2022, at 11:14-25; 76:16-77:7; 83:22-85:1; 103:21-104:23; 131:5-17; 132:23-134:16; 146:14-147:4; 172:4-12.

[12] *Id*. at 207:2-211:11.

2. That same afternoon, Peters appeared for an interview with Brannon Howse on Defendant FrankSpeech, which was aired live. During the interview, Peters acknowledged receipt of the subpoena,[13] repeated the defamatory lies that are at issue in this dispute,[14] and stated that she did not intend to comply with the subpoena.[15]

3. Peters' deadline to seek to quash or modify the subpoena was September 21, 2022. *See* F.R.C.P. 45(d)(2).

4. On September 28, undersigned counsel reached out to Harvey Steinberg, Peters' counsel of record in *People v. Peters*, 2022M000364. Counsel had hoped to both confirm that Peters intended to appear for her deposition, and to coordinate the expected document production.

5. On September 29, Mr. Steinberg returned counsel's call. He indicated that he would not be representing Peters in this matter and that he did not know who would be.

6. On October 4, 2022, counsel reached out to Peters' counsel of record in *Peters v. Peters*, 2021CV30321, Scott Gessler.[16] After a phone call with Mr. Gessler,

---

[13] *See* Tina Peters, Brannon Howse Live, FRANKSPEECH, Sep. 7, 2022, at 1:35, https://caincloud.egnyte.com/dl/o6pRvxpYdi (Peters: "At 4:00 PM was my arraignment. So at my arraignment for the indictment of seven felonies and three misdemeanors, at that arraignment I was served with, before I walked in I was served with a subpoena. Get this, Brannon. It's from Eric Coomer. Everybody knows who Eric Coomer is, right?")

[14] *Id.* at 4:10 (Repeating the lies that Plaintiff partook in an "Antifa conference call," claimed on that call to have rigged the election, and did in fact rig the election).

[15] *Id.* at 5:00 (Peters: "This is going to happen on November 7 right here in Grand Junction, where they're going to subpoena me and interrogate me to try to gin up some kind of information about our patriot Mike Lindell. Not gonna happen.")

[16] As discussed below, it is unclear whether or not Defendant Lindell is also paying for Peters' defense in this unrelated civil matter, but he has claimed to have donated as much as $800,000 to her legal defense fund. *See* Charles Ashby, *Judge sets trial in Peters v. Peters case*, GRAND JUNCTION SENTINEL, May 18, 2022,

counsel followed up in an email where he provided a copy of the subpoena and the return of service.  Ten days later, on October 14, counsel reached out to Mr. Gessler once again seeking an update.  Another ten days later, on October 24, Mr. Gessler confirmed that he would be representing Peters and that she would attend the deposition.  On October 31, counsel provided a link to upload documents.

7. On the morning of the November 7 deposition, Peters uploaded roughly twenty promotional emails from MyPillow to the link provided by Plaintiff's counsel. While these emails did serve to confirm that Peters maintained access to at least one personal email account, they were largely unresponsive to the requests described in the subpoena.  Instead, they were a series of advertisements for MyPillow products, as well as some receipts for purchases.  **Exhibit 3**.

8. On November 7, 2022, Peters appeared for her deposition with Mr. Gessler in Grand Junction, Colorado.  Despite Mr. Steinberg's prior assurance that he would not be representing Peters in this matter, an attorney from his firm, Steven Prager, did appear remotely to jointly defend Peters.  *See* **Exhibit 2**, at 7:7-8:14.

9. The deposition was a complete waste of time and resources for Plaintiff. Plaintiff's questions addressed at least ten broad subject matters, the overwhelming majority of which could not have given rise to concerns related to the criminal charges currently faced by Peters.  *See generally* **Exhibit 6**.  Peters refused to answer a single question except the initial request to state her name.  Instead, Mr. Gessler repeated the

---

https://www.gjsentinel.com/news/western_colorado/judge-sets-trial-in-peters-v-peters-lawsuit/article_8952e7de-d5fd-11ec-b5f0-475a6ffc2a89.html.

following phrase 502 times over the course of the five-hour deposition: "I'm going to advise my client not to answer that question on Fifth Amendment grounds."

10. There was not and could not have been a legitimate basis to invoke the Fifth Amendment for the overwhelming majority of the questions asked. For example, Peters refused to answer questions related to whether she had prepared for her testimony,[17] who her cell phone provider was,[18] whether she had previously worked in the construction industry,[19] and whether she had previously appeared on Oltmann's podcast "Conservative Daily."[20]

11. Far more concerning for this proceeding, however, are the matters on which Peters invoked the Fifth Amendment that may legitimately pertain to serious ethical questions or outright criminal conduct, including potential conduct by Peters, by Defendants, by Oltmann, or by others. For example, Peters pleaded the Fifth in response to questions about whether or not Lindell was paying for her civil and criminal defense in this and related matters,[21] whether or not Lindell or Oltmann had discussed her testimony with her or attempted to influence it,[22] whether documents responsive to the subpoena exist,[23] whether she had ever been on Lindell's payroll,[24] and what communications she

---

[17] *Id.* at 10:18-11:3.

[18] *Id.* at 18:19-23.

[19] *Id.* at 34:17-20.

[20] *Id.* at 58:12-23.

[21] *Id.* at 12:25-13:19.

[22] *Id.* at 11:24-12:24; 164:13-165:4.

[23] *Id.* at 19:18-20:20

[24] *Id.* at 23:2-5

had with various other individuals at the Cyber Symposium,[25] where Defendants defamed Plaintiff at length.

12. That Peters apparently has concerns about potential criminal liability arising from these matters is noteworthy in and of itself. When considered in conjunction with Oltmann's months long charade preceding his own deposition,[26] however, the likelihood that Defendants are actively engaged in potential witness tampering, obstruction, intentional delay, and destruction of evidence are all probabilities that both Plaintiff and the Court must address. This concern is bolstered by sworn testimony from other witnesses in this case describing multiple conversations they had with Peters at the Cyber Symposium, including when she assured them that Lindell would take care of their personal expenses, such as paying off their mortgage.[27]

13. During Peters' deposition, Mr. Gessler represented to counsel for Plaintiff that Peters could not produce any documents because her devices had been seized by law enforcement in conjunction with the ongoing criminal investigation into her conduct as Clerk of Mesa County. Undersigned counsel takes Mr. Gessler at his word as far as what Peters has told him, but those devices were seized pursuant to a search warrant that was executed on November 16, 2021, more than a year ago.[28] Peters has appeared on

---

[25] *Id.* at 24:15-25:9.

[26] *See generally*, Plaintiff's Unopposed Motion for Substituted Service of Subpoena Duces Tecum Directed at Joseph Oltmann, Sep. 22, 2022 [Dkt. 53], *see also* Plaintiff's Motion to Compel Document Production and Deposition Testimony from Third-Party Joseph Oltmann Pursuant to F.R.C.P. 45, Dec. 2, 2022 [Dkt. 80].

[27] *See* **Exhibit 4**, Depo. Tr. Joshua Merritt, Nov. 14, 2022, at 143:15-145:15.

[28] *See* Bente Birkeland, *FBI searches Mesa County Clerk Tina Peters' home in election security breach investigation*, COLORADO PUBLIC RADIO, Nov. 17, 2021, https://www.cpr.org/2021/11/17/tina-peters-mesa-county-fbi-raid/

Oltmann's podcast numerous times since then. She is a frequent guest on FrankSpeech and she recently starred in a full length feature film produced by Defendant Lindell which was released on August 20, 2022.[29] She was visibly texting on her cell phone during the deposition. And she produced documents from at least one personal email account that she still has access to. The suggestion that Peters is not in possession of responsive documents is untenable on its face. But, Plaintiff was even prevented from getting answers to questions that would clarify what documents she has access to at this time.[30]

14. Peters' generalized invocation of the Fifth Amendment in response to every question asked of her was unsupportable as a matter of law. Her failure to produce any responsive documents in response to the subpoena was similarly without merit.

## LEGAL STANDARD

15. The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

16. An individual may invoke their Fifth Amendment right in civil as well as criminal cases. *Lefkowitz*, 414 U.S. at 77. But in the Tenth Circuit, "specificity is required in order properly to invoke Fifth Amendment protection." *United States v. Clark*, 847 F.2d 1467, 1474 (10th Cir. 1988). Indeed, in order to properly invoke the Fifth Amendment, an individual "must demonstrate that they have a 'reasonable cause to apprehend danger' upon giving a responsive answer that 'would support a conviction,' or

---

[29] *See* Selection Code, IMDB, https://www.imdb.com/title/tt20863620/
[30] *See generally* **Exhibit 6**, Topic 34.

'would furnish a link in the chain of evidence needed to prosecute' them for a violation of the criminal statutes." *Id.* (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

17. Additionally, "the privilege against self-incrimination does not protect one from producing documents, unless the *act of production* itself could operate to incriminate the producer." *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 498 (D. Kan. 1998); *see also Omni Air Int'l, LLC v. Austin Technik 1, Inc.*, No. 17-CV-163-TCK-JFJ, 2018 WL 1740936, at *5 (N. D. Okla. Apr. 11, 2018).

18. The privilege against self-incrimination "is an option of refusal, not a prohibition of inquiry." *People v. Ruch*, 379 P.3d 309, 313 (Colo. 2016) (citing *People v. Austin*, 412 P.2d 425, 427 (1966). Thus, the privilege may not be asserted as a blanket claim in advance of the questions actually propounded. *Id.* (citing *Austin*, 412 P.2d at 427; *Feigin v. Zinn*, 789 P.2d 478, 480 (Colo. App. 1990); *see also Salinas v. Texas*, 570 U.S. 178, (2013) (plurality opinion) (noting that a witness who desires the privilege's protection generally must claim the privilege at the time he or she relies on it); *United States v. Malnik*, 489 F.2d 682, 685 (5th Cir.1974) ("A 'blanket' refusal to answer all questions is unacceptable.") (collecting cases); 2A Charles Alan Wright & Peter J. Henning, *Federal Practice & Procedure: Federal Rules of Criminal Procedure* § 407, at 71 & n.39 (4th ed.2009) (same). "Thus, the determination of whether to invoke the privilege must be made on a question-by-question basis." *People in Int. of K.S-E.*, 497 P.3d 46, 53-54 (Colo. App. 2021).

19. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them

10

to correspond to the categories in the demand. F.R.C.P. 45(e)(1)(A). A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must expressly make the claim. F.R.C.P. 45(e)(2)(A)(i). He or she must also describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. F.R.C.P. 45(e)(2)(A)(ii). At any time, on notice to the commanded person, the serving party may move the Court for an order compelling production or inspection. F.R.C.P. 45(d)(2)(B)(i).

## ARGUMENT

### A. *Peters should sit for a second deposition and answer questions that are not reasonably susceptible to self-incrimination.*

20. It is well established that blanket invocations of the Fifth Amendment are improper, that such conduct can give rise to sanctions, and that parties who improperly invoke the Fifth Amendment can be made to sit for a second deposition. *See McKnight v. Brown*, No. 1:20-cv-03678-PAB-SKC, 2022 WL 488607 (Dist. Colo. Feb. 17, 2022). **Exhibit 7**.

21. Peters, through counsel, asserted the Fifth Amendment in response to 502 different questions propounded by Plaintiff. While Plaintiff recognizes that Peters is under indictment for various charges related to a narrow subset of these questions, other contemporaneous public statements made by Peters suggest that her blanket invocation of the Fifth Amendment did not derive from an abundance of caution, but rather from contempt for these proceedings.

22. Peters never made an attempt to quash or modify the subpoena, despite being represented by multiple capable law firms throughout the timeframe that would have allowed her to file an objection. Instead, she went on FrankSpeech to defame Plaintiff and broadcast her intended refusal to comply. She then flaunted her contempt for this Court and this proceeding by producing a handful of MyPillow promotional ads. Leaving no doubt that this contempt was deliberate, Peters subsequently took to the airwaves to confirm that she had not complied with her obligations because she does not "answer criminals."

23. Peters' frequent public appearances further belie her claimed reluctance to answer questions about the subject matter of this dispute. Indeed, numerous questions asked by Plaintiff's counsel addressed the substance of the countless public statements she has made regarding Plaintiff, allegations of election fraud generally, her relationship with Defendants and third-party Oltmann, and the events surrounding the Cyber Symposium. This overwhelming body of evidence suggests that Peters does not actually have serious concerns about her own statements potentially being used against her. "[I]t is unlikely that the discussion of information already known to the government would demonstrate a 'real and appreciable risk' of self incrimination." *Beller v. United States*, No. CV 02-1368 WPJ/LFG, 2003 WL 27385032, at *5 (D.N.M. July 1, 2003.

24. In *McKnight*, another division of this Court recently addressed a very similar set of circumstances wherein a deponent in a civil matter improperly issued a blanket invocation of the Fifth Amendment in response to a broad spectrum of questions. The Court recognized that a narrow subset of questions may have given rise to legitimate

concerns about potential self-incrimination in related criminal proceedings, but issued an order delineating acceptable subject matter, ordering the deponent to sit for a second deposition, and awarding sanctions to the moving party. **Exhibit 7**, at pp. 11-12. A similar approach is warranted here.

25. Plaintiff has attached hereto a spreadsheet identifying the ten general topics (comprised of 55 sub-topics) that were addressed in Peters' November 7 deposition. **Exhibit 6**. To the extent that any of these questions can be understood to legitimately invoke "reasonable cause to apprehend danger," those questions constitute only a narrow subset of those propounded.

26. The Supreme Court has established that it is the party invoking the Fifth Amendment which "must factually establish that the risks of incrimination resulting from their compelled testimonial communications to be 'substantial and "real," not merely trifling or imaginary, hazards of incrimination.'" *Marchetti v. United States*, 390 U.S. 39, 53 (1968).

27. Given that Peters bears the burden of establishing which topics may give rise to legitimate concerns, Plaintiff will generally defer to his reply in support of this Motion to support the propriety of individual topics described in **Exhibit 6**. At a minimum, however, Peters should be compelled to answer questions related to the means by which she has communicated with Defendants and other relevant third-parties, as well as which documents responsive to the subpoena are in her possession. *Id.* at Topics 1, 2, 5. Undersigned counsel takes Mr. Gessler at his word, but his assurances on this matter are insufficient. Similarly, Peters should be compelled to answer questions regarding any

influence Defendants and/or Oltmann have exercised or attempted to exercise over her testimony, as well as any financial relationship between Peters and Defendants and/or Oltmann. *Id.* at Topics 1, 3.

### *B.     Implications of Peters' upcoming criminal trial.*

28.     Peters' criminal trial is currently set in March 2023, wherein she will be either convicted or acquitted of the charges against her.  If she is acquitted, her concerns regarding potential self-incrimination will then be moot, as no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V; *see also* Colo. Const. art. 2, § 18.

29.     If Peters is convicted or accepts a guilty plea, her concerns would also eventually become moot.  "If no adverse consequences can be visited upon the convicted person by reason of further testimony, there can be no further incrimination to be feared." *Mitchell v. United States*, 526 U.S. 314, 326 (1999).  As a general rule, where there can be no further incrimination, there is no basis for assertion of the privilege.  The U.S. Supreme Court has affirmed that this principle "applies to cases in which the sentence has been fixed and the judgment of conviction has become final."  *Id.* (*citing Reina v. United States*, 364 U.S. 507, 513 (1960)).

30.     In the event Peters is convicted, however, the potential delay in sentencing would extend the timeframe within which Peters could invoke her Fifth Amendment protections.  "Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony."  *Id.*  This delay would be further compounded by any potential appeals which could follow.  Given this

14

uncertainty, and the unlikelihood that such uncertainty will be resolved within the timeframe established by the Case Management Order issued in this case, Plaintiff does not believe that simply delaying Peters testimony until the conclusion of her criminal trial would necessarily resolve this dispute.

### C.  *Request for sanctions.*

31.  Sanctions for Peters' improper blanket invocation of the Fifth Amendment are authorized by and appropriate under F.R.C.P. 37(c)(1)(A).  *See also* **Exhibit 7**, *McKnight*, at pp. 11-12.  While Plaintiff believes the fees and costs associated with the sham November 7, 2022 deposition are ripe for this Court's consideration, Plaintiff requests an opportunity to more fully brief this issue in a separate pleading, pending the Court's Order with respect to the relief sought herein, and in light of any subsequent related relief that may be required.

### CONCLUSION

32.  Consequently, for the foregoing reasons, Plaintiff moves for an order: (i) requiring Peters to advise the Court under oath on the extent she maintains access to the requested documents or has deleted/destroyed the documents, (ii) compelling production of any responsive documents, (iii) overruling Peters' blanket assertions of privilege, and establishing acceptable parameters for invocation of the privilege, and (iv) awarding Plaintiff attorney's fees and costs for Peters' wholesale abuse of the requirements imposed by F.R.C.P. 45, and allowing Plaintiff to seek fees and costs at the conclusion of Peters' second deposition.  Plaintiff reserves his right to seek such further and additional relief as deemed just by this Court.

Respectfully submitted this 2nd day of February 2023.

          */s/ Bradley A. Kloewer*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
David E. Jennings, No. 54643
djennings@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**