IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

**ERIC COOMER, Ph.D.**

      Plaintiff,

  v.

**MICHAEL J. LINDELL, FRANKSPEECH LLC,**
**and MY PILLOW, INC.,**

      Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION AND DEPOSITION TESTIMONY FROM THIRD-PARTY TINA PETERS PURSUANT TO F.R.C.P. 45 AND MOTION FOR SANCTIONS PURSUANT TO F.R.C.P. 37 [ECF NO. 97], FILED FEBRUARY 2, 2023**

---

Tina Peters ("Peters") currently faces state criminal charges and a federal criminal investigation involving her actions as an elections' official, her associations with others involved in election-related issues, and her actions specifically related to the 2021 general election. Despite this serious criminal liability, Plaintiff Eric Coomer ("Coomer") demands that Peters answer questions involving the same issues in the state criminal case and federal criminal investigation.

But Coomer's *Motion to Compel* ("*Motion*") makes little effort to show that Peters improperly invoked the Fifth Amendment. Instead, it mostly argues that Peters is a bad person. It then seeks to shift the burden of proof based on wrong and misleading legal standards. And rather than providing argument and evidence that Peters improperly invoked her rights involving specific questions or subject areas, the *Motion* appends the deposition transcript and a four-page exhibit, demands that Peters answer the exhibit, and reserves substantive argument for a reply.

Coomer not only substantially exceeds the Court-imposed page limits, but he also provides no basis for this court to grant relief. Finally, based on mere suspicion, Coomer argues that Peters has withheld information, and he asks for attorney fees and costs in contradiction to standards used in the District of Colorado.

This Court should not be persuaded by efforts to tar Peters as a person unworthy of constitutional protections, and it should instead apply the appropriate legal standards and relevant facts to protect her constitutional rights – regardless of what Coomer (or anyone else) thinks of her.

**Argument**

1. **This motion is about Tina Peter's constitutional right against self-incrimination – not whether she is a "bad person."**

   Much of Coomer's *Motion* argues that Peters is a bad person, due to her public statements *Motion* at 2, ¶ 9, ¶¶ 22 and 23, her association with Joe Oltman and Mr. Oltman's deposition *Motion* at ¶ 12, and an incorrect assertion that she was texting during her deposition *Motion* at ¶ 14. He also argues that her limited production of documents was, *ipso facto*, contempt for this Court. *Motion* at ¶ 22. These assertions are wholly irrelevant to the legal standards governing Peters' invocation of her Fifth Amendment privilege. The issue in this case is whether Peters faces a real and substantial risk of criminal liability.

   At every step Peters, a nonparty witness, has cooperated. She responded to the subpoena, despite its overbreadth, retained counsel for this matter, appeared for the deposition scheduled by Plaintiff, and produced documents in her possession. Neither she nor her counsel have delayed, avoided or undermined this Court's proceedings. To be sure, Coomer does not like Peters' invocation of her Fifth Amendment privileges, and he questions her document production. But Peters has cooperated.

As discussed below, Peters' actions have been driven by well-founded, concrete concerns about ongoing state prosecution and federal criminal investigation. Bluntly stated, she faces the possibility of prison for the rest of her natural life. Her constitutional rights as a criminal defendant and target of extensive federal investigation should be the foremost consideration, regardless of Coomer's civil action seeking defamation damages from people who are *not* Tina Peters. Peters asks this Court to set aside Coomer's disparaging comments and instead recognize the important civil rights at issue in this case.

**2.      The plaintiff cannot meet his burden to prove that Peters must answer specific questions or subject areas.**

Coomer's *entire* Fifth Amendment argument in pages 11-15 of his *Motion* consists of (1) attacking Peters' motives, (2) attacking her public statements, (3) attaching Exhibit 6, which contains 10 subject matter areas, with 55 subtopics of questions, (4) citing to *Marchetti v. United States* case to argue that Peters bears the burden of proof (Coomer's cited quote does not, however, appear in *Marchetti*), and finally (5) reserving argument that he will "defer to his reply . . . to support the propriety of individual topics described in Exhibit 6." *Motion* at ¶ 27.

This approach has it backwards. Coomer bears the burden to argue that the subject matter of his questions is proper. He cannot meet that burden.

*First*, as a proponent for the *Motion to Compel*, it is Coomer who must prove that Peters inadequately answered questions. "The party moving to compel discovery must first prove that the opposing party's answers are incomplete."[1] Likewise, for a motion to compel "the burden of

---

[1] *Church v. Dana Kepner Co.*, 2013 U.S. Dist. LEXIS 341, at *6 (D. Colo. 2013) *quoting Bayview Loan Servicing, LLC v. Boland,* 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir. 1976)("appellees had the burden of proving the answer to their interrogatory was indeed incomplete").

3

proof lies with the proponent to prove answers are incomplete, inadequate, or false."[2] Coomer cannot escape his burden – indeed, his approach produces the perverse result that the normal burdens for a motion to compel (in this instance from a nonparty) are suddenly reversed when the nonparty deponent invokes a constitutional right. As a matter of law and logic, Coomer is wrong.

*Second*, the Tenth Circuit has made clear that courts must "broadly construe[] the protection afforded by the Fifth Amendment privilege against self-incrimination."[3] For this reason, that protection includes three broad categories of information: (1) "evidence which may lead to criminal conviction;" (2) "information which would furnish a link in the chain of evidence that could lead to prosecution;" and (3) "evidence which an individual reasonably believes could be used against him in a criminal prosecution."[4] Consistent with this framework, the Supreme Court has held that "[t]o sustain the privilege, it need only be evident from the *implications* of the question,"[5] and that the privilege includes "injurious disclosures, which may provide or assist in the collection of evidence admissible in a prosecution for past or present offenses."[6]

*Third*, to properly invoke her Fifth Amendment protection, Peters must make a limited showing that she has "reasonable cause to apprehend danger from a direct answer."[7] In keeping with its broad construction the Tenth Circuit directs that "not much is required to show an individual faces some authentic danger of self-incrimination, as the privilege extends to

---

[2] *Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D. Colo. 1986).
[3] *United States v. Von Behren*, 822 F.3d 1139, 1144-45 (10th Cir. 2016)(internal cites and quotes omitted); *see also Hoffman v. United States*, 341 U.S. 479, 486 (1951).
[4] *Von Behren*, 822 F.3d at 1144-45 (internal cites and quotes omitted).
[5] *Hoffman v. United States*, 341 U.S. 479, 486-87, 71 S. Ct. 814, 818 (1951)(emphasis supplied).
[6] *Marchetti v. United States*, 390 U.S. 39, 52 (1968).
[7] *United States v. Von Behren*, 822 F.3d 1139, 1144-45 (10th Cir. 2016)

4

admissions that may only tend to incriminate. Accordingly, we will uphold an individual's invocation of the privilege against self-incrimination unless it is *perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and his answers *could not possibly have a tendency to incriminate*.[8]

Here, it is readily apparent that Peters faces "real dangers, not remote and speculative possibilities."[9] First, Ms. Peters has been indicted by a state grand jury and faces a criminal trial – to commence August 24, 2023[10] – on thirteen criminal counts: four counts of "Attempt to Influence a Public Servant;" two counts of "Conspiracy to Commit Criminal Impersonation;" two counts of "Violation of Duty;" two counts of "Failure to Comply with Requirements of Secretary of State;" one count of "Criminal Impersonation;" one count of "Identity theft;" and one count of "First Degree Official Misconduct."[11] Collectively, these counts encompass Peters' actions as a state official (including her understanding of her official duties), her association with others regarding election-related activities, her actions regarding Colorado elections taken during the second half of 2021, and her involvement in election-related matters in general.[12]

In addition, on September 3, 2021, undersigned counsel met with Mesa County District Attorney who personally informed counsel that (1) Ms. Peters' associations with Mike Lindell, Sherronna Bishop and others involved in election integrity issues were germane to his prosecution of Ms. Peters, (2) he was investigating Peters' understanding of her official duties, to determine her motivation in her actions in late 2021, (3) he was probing Peters' involvement in

---

[8] *Id*. (cites and quotes omitted)(emphasis supplied).
[9] *In re Grand Jury Proceeding 82-2*, 555 F. Supp. 65, 68 (D. Colo. 1982), citing *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478 (1972).
[10] Ex. A, Declaration of Harvey A. Steinberg, February 22, 2023, ¶ 3.
[11] Ex. A to Steinberg Decl., Mesa County Grand Jury Indictment, at 1-2.
[12] Ex. A., Steinberg Decl., ¶¶ 8-10.

the August 2021 Cyber Symposium sponsored by Mr. Lindell, and (4) he wanted to know who else Peters may have cooperated with regarding her actions taken from May 2021 until the time of the meeting on September 3, 2021. Furthermore, in February 2022, the District Attorney monitored a civil court hearing involving Peters' duties as an elected official, further demonstrating his ongoing investigation and interest.[13]

In addition to the current state charges, Ms. Peters' is likewise subject to an ongoing federal criminal investigation. The District Attorney personally informed undersigned counsel that both the U.S. Attorney for the District of Colorado, and the Public Integrity Section of the Criminal Division of the Department of Justice have assigned attorneys to investigate Peters for possible criminal wrongdoing.[14] On November 15, 2021, federal authorities raided the homes of Peters and several of her associates, seizing electronic equipment and records.[15] And more recently, Aaron Teitelbaum, a federal prosecutor, has been assigned to investigate Peters and attended a six-hour debriefing of a potential criminal witness.[16] In short, there is a wide-ranging, ongoing federal investigation into Tina Peters' election-related activities from 2021 until the present, with the distinct possibility that federal authorities will seek criminal charges in addition to the current state criminal cases. And Peters is subject to the highest level of public scrutiny by both state and federal authorities.[17]

In short, Peters has a concrete, real likelihood that state or federal authorities will seek to use information provided by Peters regarding her election-related activities (both official and unofficial), her conversations with others involving elections, election-related activities, and

---

[13] Ex. B, Declaration of Scott E. Gessler, February 22, 2023, ¶¶ 4-6.
[14] *Id.*
[15] Ex. B, Gessler Decl. at ¶¶ 7-10.
[16] Ex. A., Steinberg Decl., ¶ 5.
[17] Ex. B, Gessler Decl. at ¶¶ 6, 11-18.

official duties. Likewise, any information she provides regarding how and whether she communicates with others, her email or text accounts, or other methods of communication may be used by state or federal prosecutors to develop evidence against her in a criminal proceeding.

*Fourth*, when the "danger of self-incrimination is readily apparent," the person invoking the Fifth Amendment no longer bears any burden, and that burden shifts to the party opposing the application of the right against self-incrimination.[18] As detailed above, the danger of self-incrimination is self-evident, which Coomer himself readily admits four times in his *Motion*: (1) "Peters is under indictment for various charges related to a narrow subset" of his questions. *Motion* at ¶ 21; (2) questions include "matters which . . . may legitimately pertain to serious ethical questions or outright criminal conduct, including conduct by Peters." *Motion* at ¶ 11; (3) "matters on which Peters invoked the Fifth Amendment that may legitimately pertain to serious ethical questions or outright criminal conduct, including conduct by Peters" *Motion* at ¶ 11, and (4) Peters "apparently has concerns about potential criminal liability arising from these matters." *Motion* at ¶ 12.

*Fifth*, Peters has not made a blanket invocation of her Fifth Amendment right, despite Coomer's eleven assertions to the contrary. But Coomer admits that a blanket invocation is an assertion "*in advance* of the questions actually propounded." *Motion* at ¶ 18. Peters did not invoke the Fifth Amendment prior to the deposition; invoked her rights to each individual question in person, at a deposition. And refusing to answer a series of questions – even nearly every question – does not constitute a blanket invocation. In *United States v. Lamotte*, the court

---

[18] *Roach v. National Transp. Safety Bd.*, 804 F.2d 1147, 1151 (10th Cir., 1986); *see also Uekert v. Commissioner of Internal Revenue*, 721 F.2d 248, 250 (8th Cir. 1983).

squarely considered a refusal to answer each of 103 questions posed to a defendant.[19] The Court explained that:

> the United States incorrectly characterizes Respondent's invocation of the privilege in response to every question as a prohibited blanket assertion of the privilege [because the] prohibition on invocation of the privilege on a blanket basis is grounded in the court's need to know the precise questions to be put to the witness in order to make the question-by-question determination as to the applicability of the privilege. . . . The fact that Respondent answered every question by invoking the Fifth Amendment in no way detracts from the court's ability to evaluate whether the privilege attaches to each question."[20]

*Sixth*, as this Court has recently noted, when considering a motion to compel a court "has an independent obligation under Rule 26(b) to determine whether the proposed discovery is within the scope of Rule 26(b)(1) – i.e., whether it is proportional to the needs of the case and is relevant to any party's claim or defense."[21] This same reasoning applies to depositions of nonparty witnesses. Coomer cannot engage in a fishing expedition regardless of whether he or his attorneys view Peters as an "abhorrent" "election denier."

3.  **Peters properly invoked her right against self-incrimination due to an ongoing state prosecution and federal criminal investigation.**

Coomer challenges Peters' invocation with respect to nine specific questions and 55 categories of questions, consolidated into ten main categories. Plaintiff is not entitled to compel answers in any of these instances. First, are the specific questions, contained in paragraphs 10 and 11:

    1)    *Questions related to whether [Peters] had prepared for her [deposition] testimony*. This improperly seeks Peters' thought processes with respect to any and all questions

---

[19] *United States v. Lamotte,* 2016 U.S. Dist. LEXIS 61704, at *5 (D. Mass. 2016).
[20] *Id*. at *25-*26.
[21] *Wang v. All. For Sustainable Energy, LLC*, 2022 U.S. Dist LEXIS 86227 at *10 (D. Colo. 2022) *quoting* Fed. R. Civ. P. 26(b)(2)(C)(iii).

that she thought might be asked of her during her deposition. There is a very real possibility that her answer will be used to "furnish a link in the chain of evidence needed to prosecute the claimant," by essentially providing a road map to Peters thinking, review of documents, motivations, and knowledge.

2) *Who [Peters'] cell phone provider was*. This question seeks to identify additional sources of evidence. Not only is this irrelevant to the present case, it also meets the second of three factors discussed in *United States v. Von Behren* because it could provide "information which would furnish a link in the chain of evidence that could lead to prosecution."[22]

3) *Whether [Peters] had previously worked in the construction industry.* This line of questioning is irrelevant to Coomer's defamation claims and should not survive this Court's relevancy or proportionality analysis. Peters also faces multiple "specific intent" crimes,[23] and her employment background provides information about her interpretation of statutes and rules, which is relevant to her state-of-mind when performing her official duties.

4) *Whether [Peters] had previously appeared on Oltmann's podcast.* This question seeks information about Peters' conversations, both on-air and off, with another person regarding election-related matters. This implicates multiple conspiracy charges in the state prosecution, and likely falls within the ambit of federal investigation. Peters' answers could provide important information to state prosecutors, necessary to prove the conspiracy.

5) *Whether or not Lindell was paying for [Peters'] civil and criminal defense in this and related matters*. This question seeks details about Peters relationship with Mike Lindell, a subject of both state and federal investigation. *See* response to item 4.

---

[22] *Von Behren*, 822 F.3d at 1144-45.
[23] *See* Ex. A to Steinberg Decl., Mesa County Grand Jury Indictment at 3-6.

9

6) *Whether or not Lindell or Oltmann had discussed her testimony with her or attempted to influence it. See* response to items 4 and 5.

7) *Whether documents responsive to the subpoena exist.* This question was implicitly answered by Ms. Peters production of a litany of documents responsive to Plaintiff's subpoena. Further answers would provide a roadmap for prosecutors to obtain evidence to develop criminal cases against Peters. *See also* response to item 1.

8) *Whether [Peters] had ever been on Lindell's payroll. See* response to item 5.

9) *What communications [Peters] had with various other individuals at the Cyber Symposium*. This goes to the heart of the state and federal investigation into Ms. Peters and is a topic of keen interest to the state prosecution. *See also* response to item 4.

Second are the categories in Exhibit 6. This exhibit should be struck. Coomer demands answers to these topics, the Exhibit constitutes additional argument in Coomer's motion, and it is a method for him to exceed the page limits by nearly 30%. It is impossible to respond in detail to each of the 55 categories in the page limits imposed by this Court, but each topic seeks potentially incriminating information:

1) *Relationship and communications with Defendants/Oltmann*. As explained above, Ms. Peters is facing charges of conspiracy charges, and both she and her associates are subject to federal investigation. This particularly applies to communications and relationships involving election-related matters. And state prosecutors have admitted that Peters' relationship with Lindell is a subject of criminal investigation and potential liability.

2) *Relationship and communications with other relevant third parties*. The argument made in response to topic 1 – that being forced to disclose her relationship to, and conversations with others could be used to establish a conspiracy – applies with even more force to Plaintiff's

10

second topic of because this seeks information about her relationship and communications with nine people, (pejoratively described as "other Colorado election deniers") and focus on election-related matters.

3)  *Potential undue influence of Defendants/Oltmann*. *See* response to item 1.

4)  *Mesa County criminal allegations*. This seeks to compel evidence, from Peters, about the very criminal charges she faces in state court. Any questions that Ms. Peters is forced to answer are undoubtedly relevant to the criminal prosecution.

5)  *Documents requested [by the subpoena] and [Ms. Peters'] deposition preparation*. First, Ms. Peters complied with the subpoena and produced all responsive documents in her possession, and those documents speak for themselves. Further, as explained above, questions about Ms. Peters' preparation for deposition could, and would, provide a roadmap for prosecutors and as such, she should not be compelled to answer such questions.

6)  [*Peters'] work as County Clerk and [her] experience of administering the 2020 election*. These questions go to Peters' understanding of her official duties and focus extensively on her knowledge of election procedures, her education and training, and her communications with Dominion employees. These go to the core of Peters' state of mind regarding the criminal charges of violation of duty and failure to comply with requirements of the Secretary of State. In short, the questions ask Peters about her official duties, which are also part of the state criminal case.

7)  *Questions related to Eric Coomer*. Again, this topic implicates the conspiracy charges that have been leveled against Peters and any testimony she might provide could provide evidence necessary in proving the conspiracy. The phrase "related to" is exceedingly broad and

11

can encompass all forms of election-related questions, since Coomer works for a company that provides election equipment to the vast majority of Colorado counties.

        8)      *The Cyber Symposium*. The lead state prosecutor has stated that he seeks this exact information. It goes to the heart of state prosecution, and state and federal investigations.

        9)      *Peters' invocation of the Fifth Amendment*. These questions are not remotely relevant to this case and should be disposed of during the Court's relevancy analysis described above. In addition to being irrelevant, these questions relate to an event which never occurred - Ms. Peters' "blanket invocation of the Fifth Amendment."

        10)     *Peters' beliefs about the 2020 election and [her] subsequent work with 'election deniers'.* Setting aside Coomer's pejorative and inflammatory use of the political talking point "election deniers," he seeks information about Peters' state of mind regarding the 2021 and 2022 elections, and her official and unofficial actions involving Colorado elections and other election-related matters. These questions speak directly to Ms. Peters' activities and state of mind that are the subject of the state prosecution, and they seek the same information sought by federal authorities in their wide-ranging investigation.

### 4.    Peters has no additional documents to produce, which is both foreseeable and reasonable.

Peters has produced responsive documents; additional documents do not exist.

Coomer claims that Peters' production of My Pillow ads and promotional emails from Lindell "flaunt[] her contempt for this Court and this proceeding." *Motion* at ¶ 22. This accusation reflects Coomer's dislike of Peters, not evidence-based argument. Second, he quotes Peters purportedly stating that she does not "answer criminals." Even if accurate, the quote referred to Peters' testimony, not the production of documents. And third, the *Motion* claims that Peters was "visibly texting on her cell phone during the deposition." *Motion* at 13. Undersigned

counsel also attended the deposition and declares that at all times during questioning Peters was focused and attentive.[24] The deposition was videotaped, but Coomer has provided no video to back up this incorrect assertion. And texting does not create an inference that Peters has generated or retained any texts relevant to Coomer's subpoena.

In contrast, it is wholly foreseeable that Peters has very few responsive documents. Peters' electronic devices have been seized on two occasions by state and federal authorities, and it is reasonable to believe that federal authorities continue to monitor Peters' electronic communications. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business. F.R.C.P. 45, and it is reasonable that Peters would minimize the use of electronic communications subject to unannounced seizures by state and federal authorities ongoing monitoring by federal authorities. In short, Peters' claims that no further responsive documents exist are true and any inferences to the contrary are unfounded.

Lastly, even if Peters did have relevant documents (which she does not), communications with others involving election-related matters goes to the heart of the criminal investigation and would be subject to Fifth Amendment protection.

**5.     Plaintiff's fees and costs were self-imposed, and at a minimum a full award is unmerited.**

Coomer devotes minimal space to his argument that he is entitled to fees and costs, and Peters will be equally concise. First, Coomer is not entitled to relief, and therefore not entitled to fees or costs.

---

[24] Ex. B, Gessler Decl. at ¶ 24.

Second, Coomer cites F.R.C.P. 37(c)(1)(A) as the basis of his request for sanctions, and he directs the Court to *Mcknight* as additional support.[25] Plaintiff is not entitled to the fees he seeks because both Rule 37(c)(1)(a) and *McKnight* apply exclusively to parties, and Peters is not a party but a third-party witness.

Next, any fees and costs are self-imposed. When undersigned counsel first spoke to Coomer's counsel regarding the subpoena, he specifically informed counsel that Peters would likely invoke her Fifth Amendment privilege to nearly every question posed to her, and that it was unlikely Peters had any responsive documents. Indeed, undersigned counsel was engaged in this exact same type of dispute with the Colorado Attorney General regarding a campaign finance case, and so he was familiar with the applicable legal standards, familiar with the liability posed to Peters and her response, and familiar with Peters' personal habits regarding document retention. Undersigned explicitly warned Coomer's counsel. But Coomer's counsel insisted on going forward, with full knowledge of the likely result.[26] He cannot now blame Peters for his self-imposed "waste" of resources.

Lastly, Coomer admits that several categories of questions are properly subject to the invocation of the Fifth Amendment. Coomer himself attached as Exhibit 7 a very recent opinion by The Honorable Judge Crews in which she ruled that an invocation of the Fifth Amendment was proper, in part. As a result, she required the parties to equally split the cost of second deposition, only. This court should properly follow well-reasoned precedent on this issue.

---

[25] *McKnight v. Brown*, No. 1:20-cv-03678-PAB-SKC, 2022 WL 488607 (Dist. Colo. Feb. 17, 2022).
[26] Ex. B, Gessler Decl. at ¶¶ 19-24.

Respectfully submitted this 22nd day of February 2023,

                                                                           GESSLER BLUE LLC

By:    *s/ Scott E. Gessler*
       Scott E. Gessler
       Justin T. North
       sgessler@gesslerblue.com
       jnorth@gesslerblue.com
       7350 E. Progress Place., Suite 100
       Greenwood Village, CO  80111
       Phone:  (720) 839-6637

**Certificate of Service**

I certify that on this 22nd day of February 2023, the foregoing was electronically served via e-mail or CM/ECF on all counsel and parties of record.

By:    *s/ Joanna Bila*
       Joanna Bila, Paralegal

15