# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129

ERIC COOMER, PhD.,

      Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

      Defendants

---

## EXHIBIT 16

---

## NON-DISCLOSURE AGREEMENT

**THIS NON-DISCLOSURE AGREEMENT** (the "Agreement") dated this _3rd_ day of _September_, _2015_

**BETWEEN:**

PIN Business Network, Inc., d/b/a DoBizLo of 5340 S. Quebec St., Suite 330, Greenwood Village, Colorado 80111, (the Employer") **AND** _Max Adcburek_ of _____, _____, Colorado _____, (the "Employee")

**BACKGROUND:**

**A.**     The Employee is currently or may be employed as an employee with the Employer for the position of: _____. In addition to this responsibility or position (the "Employment"), this Agreement also covers any position or responsibility now or later held with the Employer.

**B.**     The Employee will receive from the Employer, or develop on the behalf of the Employer, Confidential Information as a result of the Employment (the 'Permitted Purpose').

**IN CONSIDERATION OF** and as a condition of the Employer employing the Employee and the Employer providing the Confidential Information to the Employee in addition to other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

### Confidential Information

1.    All written and oral information and materials disclosed or provided by the Employer to the Employee under this Agreement is Confidential Information regardless of whether it was provided before or after the date of this Agreement or how it was provided to the Employee.

2.    The Employee acknowledges that in any position the Employee may hold, in and as a result of the Employee's employment by the Employer, the Employee will, or may, be making use of, acquiring or adding to information about certain matters and things which are confidential to the Employer and which information is the exclusive property of the Employer.

3.    'Confidential Information' means all data and information relating to the business and management of the Employer, including but not limited to, the following:

   a.    'Customer Information' which includes names of customers of the Employer, their representatives, all customer contact information, contracts and their contents and parties, customer services, data provided by customers and the type, quantity and

Page 1 of 10



specifications of products and services purchased, leased, licensed or received by customers of the Employer;

b.   'Intellectual Property' which includes information relating to the Employer's proprietary rights prior to any public disclosure of such information, including but not limited to the nature of the proprietary rights, production data, technical and engineering data, technical concepts, test data and test results, simulation results, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including patents, copyrights and trade secrets);

c.   'Marketing and Development Information' which includes marketing and development plans of the Employer, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Employer which have been or are being discussed;

d.   'Business Operations' which includes internal personnel and financial information of the Employer, vendor names and other vendor information (including vendor characteristics, services and agreements), purchasing and internal cost information, internal services and operational manuals, and the manner and methods of conducting the Employer's business;

e.   'Product Information' which includes all specifications for products of the Employer as well as work product resulting from or related to work or projects performed or to be performed for the Employer or for clients of the Employer, of any type or form in any stage of actual or anticipated research and development;

f.   'Production Processes' which includes processes used in the creation, production and manufacturing of the work product of the Employer, including but not limited to, formulas, patterns, molds, models, methods, techniques, specifications, processes, procedures, equipment, devices, programs, and designs;

g.   'Service Information' which includes all data and information relating to the services provided by the Employer, including but not limited to, plans, schedules, manpower, inspection, and training information;

h.   'Proprietary Computer Code' which includes all sets of statements, instructions or programs of the Employer, whether in human readable or machine readable form, that are expressed, fixed, embodied or stored in any manner and that can be used directly or indirectly in a computer ('Computer Programs'); any report format, design or drawing created or produced by such Computer Programs; and all

documentation, design specifications and charts, and operating procedures which support the Computer Programs;

    i.    'Computer Technology' which includes all scientific and technical information or material of the Employer, pertaining to any machine, appliance or process, including but not limited to, specifications, proposals, models, designs, formulas, test results and reports, analyses, simulation results, tables of operating conditions, materials, components, industrial skills, operating and testing procedures, shop practices, know-how and show-how;

    j.    'Accounting Information' which includes, without limitation, all financial statements, annual reports, balance sheets, company asset information, company liability information, revenue and expense reporting, profit and loss reporting, cash flow reporting, accounts receivable, accounts payable, inventory reporting, purchasing information and payroll information of the Employer; and

    k.    Confidential Information will also include any information that has been disclosed by a third party to the Employer and is protected by a non-disclosure agreement entered into between the third party and the Employer.

4.    Confidential Information will not include the following information:

    a.    Information that is generally known in the industry of the Employer:

    b.    Information that is now or subsequently becomes generally available to the public through no wrongful act of the Employee;

    c.    Information that the Employee rightfully had in its possession prior to the disclosure to the Employee by the Employer;

    d.    Information that is independently created by the Employee without direct or indirect use of the Confidential Information; or

    e.    Information that the Employee rightfully obtains from a third party who has the right to transfer or disclose it.

## Obligations of Non-Disclosure

5.    Except as otherwise provided in this Agreement, the Employee must not disclose the . Confidential Information.

6.    Except as otherwise provided in this Agreement, the Confidential Information will remain

the exclusive property of the Employer and will only be used by the Employee for the Permitted Purpose. The Employee will not use the Confidential Information for any purpose that might be directly or indirectly detrimental to the Employer or any of its affiliates or subsidiaries.

7.    The obligations to ensure and prevent the disclosure of the Confidential Information imposed on the Employee in this Agreement and any obligations to provide notice under this Agreement will survive the expiration or termination, as the case may be, of this Agreement and will be continuous from the date of this Agreement until two years from the date of Employees termination.

8.    The Employee may disclose any of the Confidential Information:

    a.    to such of its employees, agents, representatives and advisors that have a need to know for the Permitted Purpose provided that:

        i    the Employee has informed such personnel of the confidential nature of the Confidential Information;

        ii    such personnel agree to be legally bound to the same burdens of non-disclosure and non-use as the Employee;

        iii    the Employee agrees to take all necessary steps to ensure that the terms of this Agreement are not violated by such personnel; and

        iv    the Employee agrees to be responsible for and indemnify the Employer for any breach of this Agreement by its personnel.

    b.    to a third party where the Employer has consented in writing to such disclosure; and

    c.    to the extent required by law or by the request or requirement of any judicial, legislative, administrative or other governmental body.

**Avoiding Conflict of Opportunities**

9.    It is understood and agreed that any business opportunity relating to or similar to the Employer's current or anticipated business opportunities coming to the attention of the Employee during the Employee's employment is an opportunity belonging to the Employer. Accordingly, the Employee will advise the Employer of the opportunity and cannot pursue the opportunity, directly or indirectly, without the written consent of the Employer.

10.    Without the written consent of the Employer, the Employee further agrees not to:

    a.   solely or jointly with others undertake or join any planning for or organization of any business activity competitive with the current or anticipated business activities of the Employer; and

    b.   directly or indirectly, engage or participate in any other business activities which the Employer, in its reasonable discretion, determines to be in conflict with the best interests of the Employer.

### Non-Solicitation

11.   Any attempt on the part of the Employee to induce others to leave the Employer's employ, or any effort by the Employee to interfere with the Employer's relationship with its other employees and contractors would be harmful and damaging to the Employer. The Employee agrees that from the date of this Agreement and for a period of two years from his/her termination, Employee will not in any way, directly or indirectly:

    a.   induce or attempt to induce any employee or contractor of the Employer to quit their employment or retainer with the Employer;

    b.   otherwise interfere with or disrupt the Employer's relationship with its employees and contractors;

    c.   discuss employment opportunities or provide information about competitive employment to any of the Employer's employees or contractors; or

    d.   solicit, entice, or hire away any employee or contractor of the Employer.

12.   This obligation will be limited in scope to those persons that were employees or contractors of the Employer at the same time that the Employee was employed by the Employer.

### Non-Competition

13.   Other than through employment with a bona-fide independent party, or with the express written consent of the Employer, which will not be unreasonably withheld, the Employee will not, from the date of this Agreement and for a period of two years from his/her termination, be directly or indirectly involved with a business which is in direct competition with the particular business line of the Employer that the Employee was working during any time in the last year of employment with the Employer.

14.   From the date of this Agreement and for a period of two years from his/her termination, the Employee will not divert or attempt to divert from the Employer any business the Employer had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Employment.

## Ownership and Title

15. The Employee acknowledges and agrees that all rights, title and interest in any Confidential Information will remain the exclusive property of the Employer. Accordingly, the Employee specifically agrees and acknowledges that the Employee will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trademarks or trade names, notwithstanding the fact that the Employee may have created or contributed to the creation of the same.

16. The Employee does hereby waive any moral rights that the Employee may have with respect to the Confidential Information.

17. This Agreement will not apply in respect of any intellectual property, process, design, development, creation, research, invention, know-how, trade names, trademarks or copyrights for which:

    a. no equipment, supplies, facility or Confidential Information of the Employer was used,

    b. was developed entirely on the Employee's own time, and

    c does not:

        i relate to the business of the Employer,
        ii relate to the Employee's actual or demonstrably anticipated processes, research or development or
        iii result from any work performed by the Employee for the Employer.

18. The Employee agrees to immediately disclose to the Employer all Confidential Information developed in whole or in part by the Employee during the term of the Employment and to assign to the Employer any right, title or interest the Employee may have in the Confidential Information. The Employee agrees to execute any instruments and to do all other things reasonably requested by the Employer (both during and after the term of the Employment) in order to vest more fully in the Employer all ownership rights in those items transferred by the Employee to the Employer.

## Remedies

19. The Employee agrees and acknowledges that the Confidential Information is of a proprietary and confidential nature and that any disclosure of the Confidential Information to a third party in breach of this Agreement cannot be reasonably or adequately compensated for in money damages and would cause irreparable injury to the Employer. Accordingly, the Employee agrees that the Employer is entitled to, in addition to all other rights and remedies available to it

at law or in equity, an injunction restraining the Employee, any of its personnel, and any agents of the Employee, from directly or indirectly committing or engaging in any act restricted by this Agreement in relation to the Confidential Information.

### Return of Confidential Information

20.  The Employee agrees that, upon request of the Employer, or in the event that the Employee ceases to require use of the Confidential Information, or upon expiration or termination of this Agreement, or the expiration or termination of the Employment, the Employee will turn over to the Employer all documents, disks or other computer media, or other material in the possession or control of the Employee that:

      a.    may contain or be derived from ideas, concepts, creations, or trade secrets and other proprietary and Confidential Information as defined in this Agreement; or

      b.    is connected with or derived from the Employee's services to the Employer.

### Notices

21.  In the event that the Employee is required in a civil, criminal or regulatory proceeding to disclose any part of the Confidential Information, the Employee will give to the Employer prompt written notice of such request so the Employer may seek an appropriate remedy or alternatively to waive the Employee's compliance with the provisions of this Agreement in regards to the request.

22.  If the Employee loses or makes unauthorized disclosure of any of the Confidential Information, the Employee will immediately notify the Employer and take all reasonable steps necessary to retrieve the lost or improperly disclosed Confidential Information.

23.  Any notices or delivery required in this Agreement will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the parties at the addresses contained in this Agreement or as the parties may later designate in writing.

24.  The address for any notice to be delivered to any of the parties to this Agreement is as follows:

      a    PIN Business Network, Inc., d/b/a DoBizLo:
           5340 S. Quebec St., Suite 330
           Greenwood Village
           Colorado
           80111

b _____ :

_____

_____

Colorado

_____

**Representations**

25.  In providing the Confidential Information, the Employer makes no representations, either expressly or impliedly as to its adequacy, sufficiency, completeness, correctness or its lack of defect of any kind, including any patent or trademark infringement that may result from the use of such information.

**Termination**

26.  This Agreement will automatically terminate on the date that the Employee's Employment with the Employer terminates or expires, as the case may be. Except as otherwise provided in this Agreement, all rights and obligations under this Agreement will terminate at that time.

**Assignment**

27.  Except where a party has changed its corporate name or merged with another corporation, this Agreement may not be assigned or otherwise transferred by either party in whole or part without the prior written consent of the other party to this Agreement.

**Amendments**

28.  This Agreement may only be amended or modified by a written instrument executed by both the Employer and the Employee.

**Governing Law**

29.  This Agreement will be construed in accordance with and governed by the laws of the State of Colorado.

**General Provisions**

30.  Time is of the essence in this Agreement.

31.  This Agreement may be executed in counterparts.

32.  Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

33.  The clauses, paragraphs, and subparagraphs contained in this Agreement are intended to be read and construed independently of each other. If any part of this Agreement is held to be invalid, this invalidity will not affect the operation of any other part of this Agreement.

34.  The Employee is liable for all costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Employer in enforcing this Agreement as a result of any default of this Agreement by the Employee.

35.  The Employer and the Employee acknowledge that this Agreement is reasonable, valid and enforceable. However, if a court of competent jurisdiction finds any of the provisions of this Agreement to be too broad to be enforceable, it is the intention of the Employer and the Employee that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable, bearing in mind that it is the intention of the Employee to give the Employer the broadest possible protection against disclosure of the Confidential Information.

36.  No failure or delay by the Employer in exercising any power, right or privilege provided in this Agreement will operate as a waiver, nor will any single or partial exercise of such rights, powers or privileges preclude any further exercise of them or the exercise of any other right, power or privilege provided in this Agreement.

37.  This Agreement will inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Employer and the Employee.

This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or otherwise.

**THE REMAINDER OF THE PAGE INTENTIONALLY BLANK**

**IN WITNESS WHEREOF** PIN Business Network, Inc., d/b/a DoBizLo and
_____ have duly affixed their signatures under hand and seal on this
_____ day of _September_ _2015_.

PIN Business Network, d/b/a DoBizLo
Employee

_____

By: Joseph Oltmann

_____
(Printed Name)