**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129

ERIC COOMER, PhD.,

    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants

---

**EXHIBIT 17**

---

## CD SOLUTIONS CONSULTING AGREEMENT

This letter agreement (this "Agreement") sets forth the terms and conditions whereby you, Max McGuire, agree to provide certain services (as described on Schedule 1) to CD Solutions, Inc., 6200 S Syracuse Way #125, Greenwood Village, including its subsidiaries, parents, and affiliates (the "Company"). For purposes of this Agreement, you and the Company may be referred to collectively as the "parties" or individually as a "party".

1. <u>Services.</u>

    1.1  The Company hereby engages you, and you hereby accept such engagement, as an independent contractor, to provide certain services to the Company on the terms and conditions set forth in this Agreement.

    1.2  You shall provide to the Company the services set forth on Schedule 1 (the "Services").

    1.3  Unless otherwise set forth in this Agreement or Schedule 1, the Company shall not control the manner or means by which you perform the Services, including but not limited to the time and place you perform the Services, notwithstanding your obligations to comply with all other terms and conditions of this Agreement, including but not limited to (a) the Company's policies or directives as communicated to you personally regarding your ability and authority to act as an agent or representative of the Company and (b) the Company's policies or directives as communicated to you personally regarding the protection of any data belonging to or related to it. You shall furnish, at your own expense, the equipment, supplies and other materials used to perform the Services; provided, however, that the Company shall provide you with access to its premises and equipment to the extent necessary for the performance of the Services.

    1.4  To the extent you perform any Services on the Company's premises and/or using the Company's equipment or accessing the Company's information technology equipment, networks, or any other data belonging to the Company regardless of where the data is stored, and whether you are using Company owned property or equipment to access it, you shall comply with all applicable policies of the Company relating to business and office conduct, health and safety and use of the Company's facilities, supplies, information technology, equipment, networks and other resources. To underscore, you will comply with the Company's policies, or directives which you know or should reasonably know to be relevant to successful rendering of the Services, and at ALL times and whether or not you are performing the Services on the Company's premises or with the Company's equipment, especially as they relate to information technology, networks, and/or data protection and security.

    1.5  The term of this Agreement shall be deemed to have commenced on September ~~15~~ 01, 2021 ("Effective Date"), and will be on a 12 month basis regardless of the date, this Agreement is fully-executed by the parties and shall terminate upon written notice by either party with ~~14~~ 28 days' notice, unless earlier terminated in accordance with Section 8.    *MJM*

2. <u>Fees and Expenses.</u>

    2.1  As full compensation for the Services, your agreement to comply with all other promises, conditions, requirements, covenants, representations, and warranties, and also for the rights granted to the Company in this Agreement, the Company shall pay you a monthly rate of $10,000.00 including travel time when engaged with company projects. In addition, you will be eligible for a $5,000 - $30,000 year-end bonus based on overall company performance and pre-established



EXHIBIT 12

*MJM*

individual performance objectives. These performance objectives will be completed by you and approved by senior management within the first 180 days of contract.

2.2     Prior to the commencement of the Services, you shall provide to the Company a completed and executed Form W-9 (Request for Taxpayer Number and Certification). The Form W-9 will provide the Company the necessary information to report payments to the Internal Revenue Service. The Company cannot, and will not, issue any payment to you without your completed and executed Form W-9.

2.3     You acknowledge that you will receive an IRS Form 1099-MISC from the Company and that you shall be solely responsible for all federal, state and local taxes.

2.4     The Company will reimburse you for reasonable and documented costs or expenses (typically airfare, hotel, rental car and food). To obtain any reimbursement, you must, however, comply with the Company's general reimbursement policy by providing the Company with the receipts for the costs for which you seek reimbursement.

3.    Relationship of the Parties.

3.1     You are an independent contractor of the Company, and this Agreement shall not be construed to create any association, partnership, joint venture, employee or agency relationship between you and the Company for any purpose.

**You have no authority (and shall not hold yourself out as having authority) to bind the Company to any agreement or contract whatsoever. Any agreement or contract must be approved and entered into by an authorized employee of the Company.**

**Notwithstanding the foregoing, and subject to all other terms and conditions of this Agreement (specifically including but not limited to compliance will all laws under any prevailing legal authority), you are hereby authorized to receive, accept, and use lawful means to obtain proposals CD Solutions, and only to the extent that your acts in doing so inure to the Company's sole benefit and is in furtherance of rendering the Services. This authorization shall remain in effect until the earlier of (i) notice of written cancellation by the Company, which the Company may do at any time, for any reason, and via e-mail or any U.S. mail service; or (ii) the termination or expiration of this Agreement.**

3.2     You will not be eligible to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by the Company to its employees, and the Company will not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions, including unemployment or
disability, or obtaining worker's compensation insurance on your behalf. You shall be responsible for, and shall indemnify the Company against, all such taxes or contributions, including penalties and interest. Any persons employed or engaged by you in connection with the performance of the Services shall be your employees or contractors and you shall be fully responsible for them and indemnify the Company against any claims made by or on behalf of any such employee or contractors.

4.    Intellectual Property Rights and Confidentiality.

4.1 The Company is and shall be, the sole and exclusive owner of all right, title and interest throughout the world in and to all the results and proceeds of the Services performed under this Agreement (collectively, the "Deliverables"), including all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively "Intellectual Property Rights") therein. You agree that the Deliverables are hereby deemed a "work made for hire" as defined in 17 U.S.C. § 101 for the Company. If, for any reason, any of the Deliverables do not constitute a "work made for hire," you hereby irrevocably assign to the Company, in each case without additional consideration, all right, title and interest throughout the world in and to the Deliverables, including all Intellectual Property Rights therein.

4.2 Any assignment of copyrights under this Agreement includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as "moral rights" (collectively, "Moral Rights"). You hereby irrevocably waive, to the extent permitted by applicable law, any and all claims you may now or hereafter have in any jurisdiction to any Moral Rights with respect to the Deliverables.

4.3 You have no right or license to use, publish, reproduce, prepare derivative works based upon, distribute, perform, or display any Deliverables, notwithstanding anything herein to the contrary. You have no right or license to use the Company's trademarks, service marks, trade names, trade names, logos, symbols or brand names.

4.4 As further consideration for the Fees, and simultaneously upon the execution of this Agreement between you and the Company, you and the Company will enter into the Confidentiality and Non-Disclosure Agreement that is set forth on Exhibit A of this Agreement and is hereby incorporated into and made a part of this Agreement. To the extent, however, that there exists any conflict between this Agreement and the Confidentiality and Non-Disclosure Agreement, the relevant terms and conditions in the Confidentiality and Non-Disclosure Agreement will prevail as it relates to any obligation surrounding confidentiality and nondisclosure; the terms and conditions of this Agreement will prevail with respect to all other provisions which are not related to confidentiality or non-disclosure obligations.

5. Representations and Warranties.

   5.1 You represent and warrant to the Company that:

   (a) you have the right, both legally and contractually, to enter into this Agreement, to grant the rights granted herein and to perform fully all of your obligations in this Agreement;

   (b) your entering into this Agreement with the Company and your performance of the Services do not and will not conflict with or result in any breach or default, or any alleged breach or default, under any other agreement to which you are subject;

   (c) you have the required skill, experience and qualifications to perform the Services, you shall perform the Services in a professional and workmanlike manner in accordance with generally recognized industry standards for similar services and you shall devote sufficient resources to ensure that the Services are performed in a timely and reliable manner, and at all times throughout the Term and any other term hereafter, you shall render all Services for the sole benefit of the Company;

MJM

 (d) you shall perform the Services in compliance with all applicable federal, state and local laws and regulations;

 (e) the Company will receive good and valid title to all Deliverables, if any, free and clear of all encumbrances and liens of any kind;

 (f) all Deliverables, if any, are and shall be your original work except for material in the public domain or provided by the Company and do not and will not violate or infringe upon the intellectual property right or any other right whatsoever of any person, firm, corporation or other entity.

5.2 The Company hereby represents and warrants to you that:

 (a) it has the full right, power and authority to enter into this Agreement and to perform its obligations hereunder; and

 (b) the execution of this Agreement by its representative whose signature is set forth at the end hereof has been duly authorized by all necessary corporate action.

6. <u>Indemnification.</u>

6.1 You shall defend the Company (which includes, for purposes of this provision, the Company's affiliates, officers, directors, employees, agents, successors and assigns), indemnify the Company and hold the Company harmless against any and all claims, losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees), to the fullest extent permissible by the prevailing law, arising out of or resulting from (a) any negligent act or omission of you, your agents or your employees pertaining to your activities and obligations under this Agreement, or (b) your breach of any representation, warranty, term or condition under this Agreement (including, but not limited to absent actual authority).

6.2 The Company shall defend you (which includes, for purposes of this provision, your affiliates,
officers, directors, employees, agents, successors and assigns), indemnify you and hold you harmless against any and all claims, losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees), to the fullest extent permissible by the prevailing law, arising out of or resulting from (a) any negligent act or omission of the Company, its agents or its employees pertaining to its activities and obligations under this Agreement, or (b) the Company's breach of any representation, warranty, term or condition under this Agreement (including, but not limited to absent actual authority).

6.3 The Company may, but is not required to, satisfy such indemnity (in whole or in part) by way of deduction from any payment due to you, without being limited to other means of recovery under law or equity.

7. <u>Insurance.</u> Prior to the commencement of the Services, you shall provide the Company with a certificate of insurance evidencing the type and amount of each insurance specified in Exhibit B to this Agreement ("Requisite Insurance"), and that, when applicable, the Company has been listed as an additional insured. Thereafter, you shall, upon the Company's request, provide the Company with a certificate of insurance evidencing the type and amount of Requisite Insurance, and that, when applicable, the Company

*MJM*

has been listed as an additional insured. Requisite Insurance coverage shall not be reduced below the limits described in Exhibit B or cancelled without the Company's written approval. Reduction, cancellation or termination of Requisite Insurance coverage, or failure to obtain or evidence Requisite Insurance coverage without the Company's written approval shall constitute a material breach of the Agreement and shall automatically terminate the Agreement. You shall require that any of your employees, subcontractors or agents who enter upon the Company's premises maintain like insurance. All Requisite Insurance shall be primary insurance to the full limits of liability. You shall immediately notify the Company in writing of any Requisite Insurance reduction, cancellation or termination, so that the Company has ample time to make arrangements.

8. <u>Termination.</u>

   8.1   Either party may terminate this Agreement for any reason whatsoever after providing the other party with ~~15~~ 28 days' prior written notice of its decision to terminate the Agreement.

   8.2   Either party may terminate this Agreement, effective immediately upon written notice, in the event that the other party has breached any obligation under this Agreement.

   8.3   Upon expiration or termination of this Agreement for any reason, or at any other time upon the Company's written request, you shall, within five (5) days after such expiration or termination:

   (a) deliver to the Company all Deliverables, if any (whether complete or incomplete) and all hardware, software, tools, equipment or other materials provided for your use by the Company;

   (b) deliver to the Company all tangible documents and materials, if any (and any copies) containing, reflecting, incorporating or based on the Confidential Information;

   (c) permanently erase all of the Confidential Information from your computer systems; and

   (d) certify in writing to the Company that you have complied with the requirements of this clause.

   8.4   The terms and conditions of this clause and Section 3, Section 4, Section 5, Section 6, Section 7, Section 8, Section 10, Section 11, Section 12, Section 13 and Section 14, and Exhibit A shall survive the expiration or termination of this Agreement, as shall any other term, condition, representation, or warranty the survival of which beyond the expiration or termination of this Agreement is necessary to effectuate the purpose of such term, condition, representation, or warranty.

9. <u>Non-Solicitation.</u> You agree that during the Term of this Agreement and for a period of one (1) year following the termination or expiration of this Agreement, you shall not make any solicitation or inducement to employ the Company's personnel without written consent of the Company, to be given or withheld per the Company's sole discretion, nor shall you encourage, participate, assist, advise, or aid any party in soliciting any personnel, or assisting any personnel of the Company themselves, to work for another party. For the purposes of this clause, a general advertisement or notice of a job listing or opening or other similar general publication of a job search or availability to fill employment positions, including on the internet, shall not be construed as a solicitation or inducement, and the hiring of any such employees or independent contractor who freely responds thereto shall not be a breach of this clause.

10.  **Assignment.** You shall not assign any rights, or delegate or subcontract any obligations, under this Agreement without the Company's prior written consent. Any assignment in violation of the foregoing shall be deemed null and void. The Company may freely assign its rights and obligations under this Agreement at any time. Subject to the limits on assignment stated above, this Agreement will inure to the benefit of, be binding on, and be enforceable against each of the parties hereto and their respective successors and assigns.

11.  **Miscellaneous.**

   11.1  You shall not export, directly or indirectly, any technical data acquired from the Company, or any products utilizing any such data, to any country in violation of any applicable export laws or regulations.

   11.2  All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "Notice") shall be in writing and addressed to the parties at the addresses set forth on the first page of this Agreement (or to such other address that may be designated by the receiving party from time to time in accordance with this section). All Notices shall be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), facsimile or e-mail of a PDF document (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage prepaid).

   11.3  This Agreement, and related exhibits and schedules, if any, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

   11.4  This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto, and any of the terms thereof may be waived, only by a written document signed by each party to this Agreement or, in the case of waiver, by the party or parties waiving compliance.

   11.5  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule. Each party irrevocably submits to the exclusive jurisdiction and venue of the federal and state courts located in the County of Harris, in the State of Texas, in any legal suit, action or proceeding arising out of or based upon this Agreement or the Services provided hereunder.

   11.6  If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

   11.7  This Agreement may be executed in multiple counterparts and by facsimile signature, each of which shall be deemed an original and all of which together shall constitute one instrument. If this letter accurately sets forth our understanding, kindly execute the enclosed copy of this letter and return it to the undersigned.

MJM

Sincerely,

BY: ...............................

Name:

Title:

Date:

ACCEPTED AND AGREED:

BY: *[signature]*

Name: Max McGuire

Title: CONSULTANT

Date: 10/1/21

## SCHEDULE 1

## "SERVICES"

*VJM*

The initial focus of the work will be:

*Chief of Content*

(a) ~~Advocacy Director~~, notwithstanding the obligations as a partner.

The key priorities to be delivered are as follows.

1. Clearly define and start implementing the new Deployment Structure with an aligned solution for content, revenue and message deployment cadence for Conservative Daily.

2. Define and align marketing process with other functional processes and funnels.

3. Nail down Q4 podcast and revenue strategic plans by November 15, 2021

4. Get us to 1500 members by December 30, 2021

5. Develop a full deployment and content strategic plan.

*MJM*

## "EXHIBIT A"
## CD SOLUTIONS NON-DISCLOSURE AGREEMENT

This Mutual Confidentiality Agreement (the "Agreement"), effective as of September ~~15~~, 2021 (the "Effective Date"), is entered into by and between CD SOLUTIONS, a Delaware company, and Max McGuire, a Consultant (together, the "Parties", and each, a "Party").

WHEREAS, in connection with [Advocacy Director] (the "Purpose"), the Parties desire to share certain information that is non-public, confidential or proprietary in nature.

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set out herein, the Parties agree as follows:

    1.    Confidential Information. Except as set out in Section 2 below, "Confidential Information" means all nonpublic, confidential, or proprietary information disclosed September 15, 2019 on or after the Effective Date, by either Party (a "Disclosing Party") to the other Party (a "Recipient") or its affiliates, or to any of such Recipient's or its affiliates' employees, officers, directors, partners, shareholders, agents, attorneys, accountants, or advisors (collectively, "Representatives"), whether disclosed orally or disclosed or accessed in written, electronic, or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," including, without limitation:

    (a)    all information concerning the Disclosing Party's and its affiliates', and their customers', suppliers', and other third parties' past, present, and future business affairs including, without limitation, finances, customer information, supplier information, products, services, organizational structure and internal practices, forecasts, sales and other financial results, records and budgets, and business, marketing, development, sales and other commercial strategies;

    (b)    the Disclosing Party's unpatented inventions, ideas, methods and discoveries, trade secrets, knowhow, unpublished patent applications, and other confidential intellectual property;

    (c)    all designs, specifications, documentation, components, source code, object code, images, icons, audiovisual components and objects, schematics, drawings, protocols, processes, and other visual depictions, in whole or in part, of any of the foregoing;

    (d)    any third-party confidential information included with, or incorporated in, any information provided by the Disclosing Party to the Recipient or its Representatives; and

    (e)    all notes, analyses, compilations, reports, forecasts, studies, samples, data, statistics, summaries, interpretations, and other materials (the "Notes") prepared by or for the Recipient or its Representatives that contain, are based on, or otherwise reflect or are derived from, in whole or in part, any of the foregoing.

    2.    Exclusions from Confidential Information. Except as required by applicable federal, state, or local law or regulation, the term "Confidential Information" as used in this Agreement shall not include information that:

    (a)    at the time of disclosure is, or thereafter becomes, generally available to and known by the public other than as a result of, directly or indirectly, any violation of this Agreement by the Recipient or any of its Representatives;

(b) at the time of disclosure is, or thereafter becomes, available to the Recipient on a non-confidential basis from a third-party source, provided that such third party is not and was not prohibited from disclosing such Confidential Information to the Recipient by a legal, fiduciary, or contractual obligation to the Disclosing Party;

(c) was known by or in the possession of the Recipient or its Representatives, as established by documentary evidence, before being disclosed by or on behalf of the Disclosing Party under this Agreement; or

(d) was or is independently developed by the Recipient, as established by documentary evidence, without reference to or use of, in whole or in part, any of the Disclosing Party's Confidential Information.

3. <u>Recipient Obligations.</u> The Recipient shall:

(a) protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

(b) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the, or otherwise in any manner to the Disclosing Party's detriment, including without limitation, to reverse engineer, disassemble, decompile, or design around the Disclosing Party's proprietary services, products, and/or confidential intellectual property;

(c) not disclose any such Confidential Information to any person or entity, except to the Recipient's Representatives who:

(i) need to know the Confidential Information to assist the Recipient, or act on its behalf, in relation to the Purpose or to exercise its rights under the Agreement;

(ii) are informed by the Recipient of the confidential nature of the Confidential Information; and

(iii) are subject to confidentiality duties or obligations to the Recipient that are no less restrictive than the terms and conditions of this Agreement; and

(d) be responsible for any breach of this Agreement caused by any of its Representatives.

4. <u>Additional Confidentiality Obligations.</u> Except as required by applicable federal, state, or local law or regulation, or otherwise as mutually agreed in writing by the Parties, neither Party shall itself disclose, nor permit any of its Representatives to disclose to any person:

(a) that the Confidential Information has been made available to it or its Representatives, or that it has inspected any portion of the Confidential Information;

(b) that discussions or negotiations may be, or are, underway between the Parties regarding the Confidential Information or the Purpose, including the status thereof; or

*MJM*

(c) any terms, conditions, or other arrangements that are being discussed or negotiated in relation to the Confidential Information or the Purpose.

5. Required Disclosure. Any Disclosure by the Recipient or its Representatives of any of the Disclosing Party's Confidential Information under applicable federal, state, or local law, regulation, or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Before making any such disclosure, the Recipient shall make commercially reasonable efforts to provide the Disclosing Party with:

(a) prompt written notice of such requirement so that the Disclosing Party may seek, at its sole cost and expense, a protective order or other remedy; and

(b) reasonable assistance, at the Disclosing Party's sole cost and expense, in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient (or its Representatives or other persons to whom such Legal Order is directed) shall disclose no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires the Recipient to disclose and, on the Disclosing Party's request, shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

6. Return or Destruction of Confidential Information. At any time during or after the term of this Agreement, at the Disclosing Party's written request, the Recipient and its Representatives shall promptly return to the Disclosing Party all copies, whether in written, electronic, or other form or media, of the Disclosing Party's Confidential Information, or destroy all such copies and certify in writing to the Disclosing Party that such Confidential Information has been destroyed. In addition, the Recipient shall also destroy all copies of any Notes created by the Recipient or its Representatives and certify in writing to the Disclosing Party that such copies have been destroyed.

7. Term and Termination. The term of this Agreement shall commence on the Effective Date and shall expire [2] [years] from the Effective Date, provided that either Party may terminate this Agreement at any time by providing written notice to the other Party. Notwithstanding anything to the contrary herein, each Party's rights and obligations under this Agreement shall survive any expiration or termination of this Agreement for a period of [two] years from the date of such expiration or termination, even after the return or destruction of Confidential Information by the Recipient; provided that with respect to Confidential Information that is a trade secret under the laws of any jurisdiction, such rights and obligations will survive such expiration until, if ever, such Confidential Information loses its trade secret protection other than due to an act or omission of Disclosing Party or its Representatives.

8. No Representations or Warranties. Neither the Disclosing Party nor any of its Representatives make any representation or warranty, expressed or implied, as to the accuracy or completeness of the Confidential Information disclosed to the Recipient hereunder. Neither the Disclosing Party nor any of its Representatives shall be liable to the Recipient or any of its Representatives relating to or resulting from the Recipient's use of any of the Confidential Information or any errors therein or omissions therefrom.

9. No Transfer of Rights, Title, or Interest. Each Party hereby retains its entire right, title, and interest, including all intellectual property rights, in and to all of its Confidential Information. Any disclosure of such Confidential Information hereunder shall not be construed as an assignment, grant,

MJM

option, license, or other transfer of any such right, title, or interest whatsoever to the Recipient or any of its Representatives.

10. <u>No Other Obligation.</u> The Parties agree that neither Party shall be under any legal obligation of any kind whatsoever, or otherwise be obligated to enter into any business or contractual relationship, investment, or transaction, by virtue of this Agreement, except for the matters specifically agreed to herein. Either Party may at any time, at its sole discretion with or without cause, terminate discussions and negotiations with the other Party, in connection with the Purpose or otherwise.

11. <u>Remedies.</u> Each Party acknowledges and agrees that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by such Party or its Representatives. Therefore, in addition to all other remedies available at law (which neither Party waives by the exercise of any rights hereunder), the non-breaching Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Parties hereby waive any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim.

12. <u>Governing Law, Jurisdiction, and Venue.</u> This Agreement shall be governed by and construed in accordance with the internal laws of the State of Colorado without giving effect to any choice or conflict of law provision or rule (whether of the State of Colorado or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of the State of Colorado. Any legal suit, action, or proceeding arising out of or related to this Agreement or the matters contemplated hereunder shall be instituted exclusively in the federal courts of the United States or the courts of the State of Colorado in each case located in the city of Castle Rock and County of Douglas County, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding and waives any objection based on improper venue or forum non conveniens. Service of process, summons, notice, or other document by mail to such Party's address set out herein shall be effective service of process for any suit, action, or other proceeding brought in any such court.

13. <u>Notices.</u> All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by or email (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses set out on the first page of this Agreement (or to such other address that may be designated by a Party from time to time in accordance with this Section).

14. <u>Entire Agreement.</u> This Agreement constitutes the sole and entire agreement of the Parties regarding the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding such subject matter. This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto.

15. <u>Severability.</u> If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

16. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed

*MJM*

copy of this Agreement delivered by email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

17.     Assignment. Neither Party may assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other Party. Any purported assignment or delegation in violation of this Section shall be null and void. No assignment or delegation shall relieve the assigning or delegating Party of any of its obligations hereunder. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer on any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

18.     Waivers. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date.

CD Solutions, Inc.

By_____

Name: Joe Oltmann, CEO

Title:

[_____]

By *Max McGuire* (signature)

Name: Max McGuire

Title: Consultant