**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129

ERIC COOMER, PhD.,

    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants

**EXHIBIT 18**

| | |
|---|---|
| **Subject:** | RE: Coomer v. Lindell et. al. - McGuire confidentiality designation follow up |
| **Date:** | Friday, February 24, 2023 at 11:01:30 AM Mountain Standard Time |
| **From:** | Robb Schroer |
| **To:** | Brad Kloewer, Dan Coombe, Jane Johnson, labash@ccjrlaw.com, Charlie Cain, Scotti Beam, Dave Jennings |
| **Attachments:** | image001.png |

Mr. Kloewer: In request folder number 9 there is an affidavit of Joe Oltmann. We intend to withdraw that document as confidential. We will not be withdrawing any other confidentiality designations at this time. Thank you, Robb Schroer

**From:** Brad Kloewer <bkloewer@cstrial.com>
**Sent:** Thursday, February 23, 2023 1:27 PM
**To:** Dan Coombe <coombe@ccrjlaw.com>; Jane Johnson <johnson@ccrjlaw.com>; labash@ccjrlaw.com; Robb Schroer <schroer@ccrjlaw.com>; Charlie Cain <ccain@cstrial.com>; Scotti Beam <sbeam@cstrial.com>; Dave Jennings <djennings@cstrial.com>
**Subject:** Re: Coomer v. Lindell et. al. - McGuire confidentiality designation follow up

> Some people who received this message don't often get email from bkloewer@cstrial.com. Learn why this is important

Robb,

If you're able to let me know by tomorrow morning which confidentiality designations, if any, you intend to withdraw, I would appreciate it. Thanks.

_____

Brad Kloewer
Cain & Skarnulis PLLC
719-530-3011
bkloewer@cstrial.com

IMPORTANT NOTICE: The information in this email and any attachments is confidential and may be protected by legal privileges and work product immunities.

**From:** Dan Coombe <coombe@ccrjlaw.com>
**Date:** Tuesday, February 21, 2023 at 3:21 PM
**To:** Brad Kloewer <bkloewer@cstrial.com>, Jane Johnson <johnson@ccrjlaw.com>, labash@ccjrlaw.com <labash@ccjrlaw.com>, Robb Schroer <schroer@ccrjlaw.com>, Charlie Cain <ccain@cstrial.com>, Scotti Beam <sbeam@cstrial.com>, Dave Jennings <djennings@cstrial.com>
**Subject:** RE: Coomer v. Lindell et. al. - McGuire confidentiality designation follow up

Thanks Brad.

I am prepping for trial next week so Robb is running with this.



**Daniel Coombe - Partner**
**Coombe Curry Rich & Jarvis**
Direct: 303.572.4210
coombe@ccrjlaw.com | www.ccrjlaw.com

---

**From:** Brad Kloewer <bkloewer@cstrial.com>
**Sent:** Tuesday, February 21, 2023 2:30 PM
**To:** Dan Coombe <coombe@ccrjlaw.com>; Jane Johnson <johnson@ccrjlaw.com>; labash@ccjrlaw.com; Robb Schroer <schroer@ccrjlaw.com>; Charlie Cain <ccain@cstrial.com>; Scotti Beam <sbeam@cstrial.com>; Dave Jennings <djennings@cstrial.com>
**Subject:** Re: Coomer v. Lindell et. al. - McGuire confidentiality designation follow up

> Some people who received this message don't often get email from bkloewer@cstrial.com. Learn why this is important

Hi Dan,

In an effort to narrow the scope of the confidentiality designations dispute, I've attached here a copy of the document designations you submitted with your notice. We will not challenge the designations of the highlighted items. We still dispute everything that is not highlighted.

_____

Brad Kloewer
Cain & Skarnulis PLLC
719-530-3011
bkloewer@cstrial.com

IMPORTANT NOTICE:  The information in this email and any attachments is confidential and may be protected by legal privileges and work product immunities.

---

**From:** Brad Kloewer <bkloewer@cstrial.com>
**Date:** Friday, February 17, 2023 at 2:02 PM
**To:** Dan Coombe <coombe@ccrjlaw.com>, johnson@ccrjlaw.com <johnson@ccrjlaw.com>, labash@ccjrlaw.com <labash@ccjrlaw.com>, schroer@ccrjlaw.com <schroer@ccrjlaw.com>, Charlie Cain <ccain@cstrial.com>, Scotti Beam <sbeam@cstrial.com>, Dave Jennings <djennings@cstrial.com>
**Subject:** Coomer v. Lindell et. al. - McGuire confidentiality designation follow up

Dan,

As we discussed on the call this afternoon, and in light of the various designations you've made, thorough conferral on this matter is likely easier in writing.

As a preliminary matter, we disagree that the 2015 NDA with PIN has any bearing on the disclosures at issue here. Our position is that any confidentiality designations could only arise from events subsequent to the September 1, 2021 NDA with CD Solutions. Oltmann has argued in both the Denver District Court and now the Colorado Court of Appeals that Shuffling Madness Media (SMM) "would have no relevant information because SMM had no interest in Conservative Daily and it was owned and controlled by CD Solutions." We have therefore not included discussions of SMM or their practices in the areas that we think CD Solutions can legitimately designate as confidential under the 2021 NDA.

With respect to events occurring after the 2021 NDA went into effect, we're willing to concede that a handful of designations may fall within the subject matter designated by Exhibit A to that agreement. We've generally characterized McGuire's testimony as falling under a variety of different categories, and I've attached here a document that places your designations under those umbrellas. The highlighted portions are items we are willing to concede fall within the terms of the agreement. Please note, however, that some of those designations cover several pages, and we've only highlighted the specific topics under those designations that would apply. If it's not highlighted, we don't believe it's covered.

As far as the documents that McGuire produced, we similarly disagree that the overwhelming majority of the designations fall within the content covered by the NDAs. Some of these documents are over 1,000 pages, and it's not our burden to determine which portions of those documents, if any, can be considered confidential. We object to the blanket assertion in general. We also don't believe that personal text messages, and especially text messages between McGuire and other third parties, can reasonably be subject to any NDA.

That said, we're willing to accept the confidentiality designations for the documents in request folder 2 labeled 211104-211210, as well as 221104. Everything else we object to.

Pursuant to paragraph 15 of the November 16 protective order, we are permitted to file a motion objecting to these designations seven days after today's conferral, which we intend to do if the disputed designations are not withdrawn.

Please feel free to call or email to discuss any of this further. You can reach me on my cell at 303-910-2734.

_____

Brad Kloewer
Cain & Skarnulis PLLC
Salida, CO 81201
719-530-3011
bkloewer@cstrial.com

IMPORTANT NOTICE:  The information in this email and any attachments is confidential and may be protected by legal privileges and work product immunities.  If you are not the intended recipient, you must not use or disseminate the information.  Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.  If you have received this email in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof.  Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cain & Skarnulis PLLC for any loss or damage arising in any way from its use.

Max McGuire "Confidential" Topic Summary

Topics Discussed
- Shuffling Madness Media
    o McGuire's Ownership of SMM companies
    o General SMM practices
    o SMM Corporate ownership
    o Companies owned by SMM
- CD Solutions
    o General CD Solutions advertising practices
    o How CD Solutions prepares for shows
    o Max's departure from CD Solutions
    o Max's role/compensation at CD Solutions
    o CD Solutions coverage of election fraud generally
- Mike Lindell/MyPillow/Cyber Symposium
    o CD Solutions relationship with MyPillow
- Coomer
    o The Coomer shows
    o Max's beliefs about Oltmann's claims about Coomer
- Oltmann
    o Oltmann's personal legal defense fund
    o Oltmann's general claims about election fraud
    o Oltmann's efforts to infiltrate Antifa
    o Oltmann's relationship with Joey Camp
    o Max's statements about Oltmann generally
- Miscellaneous
    o The NDAs
    o Max's phone numbers
    o Max's warnings to Oltmann about FEC United
    o Oltmann's response to controversies

# Shuffling Madness Media

## McGuire's ownership of SMM companies

Pg 23 Ln 23 - Pg 24 Ln 25 – Question about what Pidoxa is and if McGuire owns any of it. Max says its an entity that works in the conservative space, and he believes both he and Oltmann are shareholders.

Pg 30 Ln 7-25 – Max says he hasn't divested and understands himself to still be a shareholder, doesn't think the agreement allows him to divest

Pg 229 Ln 6 – 14 – Max says he's still a shareholder of CD Solutions

## General SMM practices

1

Pg 27 Lns 3-23 – Max says there were many entities under the SMM umbrella and there wasn't much care put into ensuring that emails were sent to/from the correct email address to correspond to specific entities

Pg 28 Ln 17 – Pg 29 Ln 1 – Max says company financials were provided orally at annual shareholder meetings, but that he doesn't have copies of any

Pg 230 Ln 14 – Pg 231 Ln 14 – Max discusses the 50k Peters payment to PIN, says PIN previously hadn't gotten involved in politics

### SMM Corporate ownership

Pg 39 Ln 9 - Pg 40 Ln 2 – Question about corporate ownership of CD. Max isn't sure of Oltmann's title.

### Companies owned by SMM

Pg 40 Ln 3 – 9 - Max says he doesn't know who or what owns CD, and that concerns him significantly.

Pg 40 Ln 13-25 – Max says he knows corporate ownership of CD changed, but he doesn't know when or how, and that concerns him

Pg 86 Ln 14 – Pg 88 Ln 15 (and all pages in between) – Max says he's not sure of every corporate entity under SMM, thinks DCF could be, as well as a car dealership, a car repair shop, and possibly pidoxa

Pg 168 Ln 14 – Pg 169 Ln 16 – Max said he was sort of concerned about Joe going public with his real name in the affidavit because there could be blowback on the other companies

## **CD Solutions**

### General CD Solutions advertising practices

==Pg 22 Ln 6 – 19 – Question about whether or not CD typically had written agreements with advertisers. Max says depends on advertiser==

==Pg 101 Ln 21 – Pg 103 Ln 2 (and all pages in between) – Max discusses other revenue streams for CD, specifically banner ads and sponsorships==

==Pg 186 Ln 3 – Pg 187 Ln 14 – Max says a producer would ping him when he had to do a promo, and they were generally getting more advertisers throughout late 2020-early 2021==

### How CD Solutions prepares for shows

Pg 48 Ln 2-21 – Max describes when he would raise issues or concerns about the guests or the content of podcasts, says it was usually at the morning meeting

Pg 49 Ln 17 – Pg 51 Ln 20 (and all pages in between) – Discussion of Max's frustration with Oltmann not attending morning meetings, and his gradual loss of editorial control

Pg 226 Ln 10 – Pg 227 Ln 13 – Max discusses messages with Josh Hammerling, and describes their text/Slack practices generally

Pg 228 Ln 11 – 21 – Max discusses Joe not helping prep for podcasts

**Max's departure from CD Solutions**

Pg 52 Ln 5 – Pg 54 Ln 20 (and all pages in between) – Discussion of history of disputes over the direction of CD, culminating in disagreement over war in Ukraine

Pg 55 Ln 10 – Pg 56 Ln 13 (and all pages in between) – Max mentions tensions with Papas and says his last contract named him chief of content.

Pg 73 Ln 22 – 25 – Question about whether Oltmann made negative comments on social media after he left.

Pg 92 Ln 6 – Pg 99 Ln 1 (and all pages in between) – Max says he was uncomfortable appearing with certain guests, but the only one he recalls specifically is Watkins. Max doesn't remember when or how they started focusing on election fraud. Doesn't consider Oltmann an expert. Max says Lindell didn't pay them to advertise, just gave them a promo code with a percentage cut.

**Max's Role/Compensation at CD Solutions**

Pg 56 Ln 18 – 25 – Max says title "chief of content" effectively meant nothing.

Pg 60 Ln 6 – Pg 61 Ln 9 – Max says his contract paid him 10k/month, with the possibility for bonuses, but he never received one

Pg 62 Ln 13 – 18 – Max says he believes he was being compensated by SMM from June 2014-September 2021

Pg 81 Ln 1 – 8 – Max repeats that he made 10k/month with the possibility for bonuses

Pg 81 Ln 19 – Pg 84 Ln 17 (and all pages in between) – Max says he previously made 15% of ad revenue, but started getting a flat 10k/month with the new contract. Was concerned about the legal defense fund because it drove revenue elsewhere.

Pg 237 Ln 5 – 10 – Max says his job was to see the daily email list, and that he could see who was donating through that list

3

### CD Solutions coverage of election fraud generally

Pg 92 Ln 6 – Pg 99 Ln 1 (and all pages in between) – Max says he was uncomfortable appearing with certain guests, but the only one he recalls specifically is Watkins. Max doesn't remember when or how they started focusing on election fraud. Doesn't consider Oltmann an expert. Max says Lindell didn't pay them to advertise, just gave them a promo code with a percentage cut.

Pg 105 Ln 12 – 20 – Max says they got more viewers after the election.

## Mike Lindell/MyPillow/Cyber Symposium

### CD Solutions relationship with MyPillow

Pg 21 Ln 10 – 17 – Question about when CD first started advertising MyPillow. Max doesn't know.

Pg 25 Ln 17 – Pg 26 Ln 2 – Question about how much money CD made off MyPillow promo code. Max doesn't know but says Oltmann was tracking that.

Pg 68 Ln 5 – 10 – Max says he remembers a single meeting with someone from MyPillow.

Pg 68 Ln 18 – Pg 69 Ln 5 – Max says either Freijo or Papas pitched Lindell on MyCoffee

Pg 70 Ln 1 – 24 – Max reiterates that Freijo and/or Papas pitched MyCoffee, Oltmann was in the room.

Pg 92 Ln 6 – Pg 99 Ln 1 (and all pages in between) – Max says he was uncomfortable appearing with certain guests, but the only one he recalls specifically is Watkins. Max doesn't remember when or how they started focusing on election fraud. Doesn't consider Oltmann an expert. Max says Lindell didn't pay them to advertise, just gave them a promo code with a percentage cut.

Pg 184 Ln 15 – 18 – Max acknowledges that he's looking at an email explaining the MyPillow promo code

Pg 185 Ln 2 – 21 – Max says he understood them to have a little more freedom with the MyPillow promos to not stick exactly to the script

Pg 187 Ln 22 – Pg 188 Ln 11 – Max says MyPillow was an affiliate deal, meaning they didn't pay for air time, but just paid you a cut if something was sold with their promo code

Pg 242 Ln 2 – Pg 243 Ln 13 – Max discusses warning Joe about 501c3 rules for FEC United, and there's some speculation about Lindell paying for a hotel for Tina Peters

## Coomer

4

**The Coomer shows**

Pg 57 Ln 1 – Pg 58 Ln 11 (and all pages in between) – Max says Joe was the driver on the Coomer episode. He thinks he did a little bit of research at the time, but doesn't recall specifics

Pg 114 Ln 18 – Pg 121 Ln 1 (and all pages in between) – Max describes the chaotic process of preparing for the November 9 episode of CD, going through the emails, and what he knew before going to air

Pg 122 Ln 4 – Pg 124 Ln 16 (and all pages in between) – Max discusses his level of discomfort with the November 9 episode and whether he asked about how Oltmann got access to the Facebook images

Pg 125 Ln 3- 9 – Max says he didn't demand to know where Oltmann got his information

Pg 126 Ln 9 – 19 – Max says he didn't get any other written info before the podast

Pg 137 Ln 11 – Pg 139 Ln 11 (and all pages in between) – Max says the response to the November 9 episode was significant and that he didn't suspect until later that Oltmann grafted himself onto Camp's story

Pg 148 Ln 14 – 22 – Max says Joe was in charge of the November 9 episode and there wasn't a lot of prep done

Pg 150 Ln 23 – 152 Ln 12 (and all pages in between) – Max says they didn't discuss accusing Coomer of perjury, and restates that the only evidence he's ever seen is Joe's affidavit

Pg 174 Ln 24 – Pg 175 Ln 10 – Max acknowledges that the Coomer allegations were raised in multiple episodes, but there was no overall narrative intended

Pg 248 Ln 20 – Pg 249 Ln 17 – Discussion of Max saying he was uncomfortable airing episode about Joe's Dominion flowchart when they were suing over it

**McGuire's beliefs about Oltmann's claims about Coomer**

Pg 145 Ln 17 – 21 – Max says he also wished Joe had a recording

Pg 149 Ln 18 – 150 Ln 2 – Max says the only evidence he's ever seen after the November 9 episode is Joe's affidavit

Pg 150 Ln 23 – 152 Ln 12 (and all pages in between) – Max says they didn't discuss accusing Coomer of perjury, and restates that the only evidence he's ever seen is Joe's affidavit

Pg 153 Ln 10 – 154 Ln 20 – Max says the only information Joe ever provided him was the Antrim report, and that he saw videos of Coomer presenting the Dominion software to public officials

5

Pg 155 Ln 10 – 24 – Max says its not his opinion that Coomer committed sedition; restates that they were getting more viewers after the November 9 episode, but he attributes that partially to other election coverage

Pg 161 Ln 25 – Pg 162 Ln 8 – Max says Oltmann never told him that he had just taken the screenshot

Pg 166 Ln 13 – 22 – Max says the affidavit was compelling to him, but he can't recall anything else that was

Pg 170 Ln 18 – Pg 171 Ln 1 – Max says he doesn't remember details of Joe's communications with the Trump campaign

Pg 171 Ln 15-20 – Max says he doesn't remember learning anything about Coomer's bank accounts or patents, just that he had invented some stuff

Pg 172 Ln 3 – 25 – Max says he hasn't seen any evidence that Coomer is connected to Soros, that he is a Dominion shareholder, or that he has foreign shell companies

Pg 182 Ln 4 – 20 – Max reiterates that he never saw evidence of foreign shell companies, and he thought they could make a case about election impropriety without "sicking people on another person"

Pg 208 Ln 11 – 21 – Max hedges on saying whether the Coomer episode was untrue

Pg 221 Ln 5 – 24 – Max says he doesn't believe the call happened

Pg 222 Ln 22 – 25 – Charlie reads Max's text saying he doesn't believe Joe

Pg 245 Ln 1 – 9 – Max says Tig never identified the antifa source on air

Pg 246 Ln 3 – Pg 247 Ln 25 – Max discusses how Joe has had to pull back from various controversies (resigning at PIN, taking heat at DCF for Russia comments), and how he copystruck some of Oltmann's statements about Russia as a favor, concludes with discussion of "Eric Coomer bit" text

Pg 250 Ln 5 – 22 – Max says Joe told him about his meeting with Guiliani in the hotel room

Pg 258 Ln 24 – Pg 259 Ln 6 – Max says he doesn't understand Joe's flowchart

Pg 261 Ln 14 – Pg 262 Ln 5 – Max mentions doubting Joe's claims after seeing the HVAC video

**Oltmann**

**Oltmann's personal legal defense fund**

Pg 37 Ln 21-22 – Question about what Oltmann's personal legal defense fund page looked like.

Pg 38 Ln 5-25 – Max describes his concerns about Oltmann advertising his personal legal defense fund on CD

Pg 41 Ln 13 - Pg 45 Ln 17. (and all pages in between) – Discussion of potential self dealing and Max's concerns with respect to Oltmann's personal legal defense fund. Max briefly discussing invoicing for his own income.

Pg 81 Ln 19 – Pg 84 Ln 17 (and all pages in between) – Max says he previously made 15% of ad revenue, but started getting a flat 10k/month with the new contract. Was concerned about the legal defense fund because it drove revenue elsewhere.

Pg 216 Ln 23 -Pg 217 Ln 6 – Max mentions criticizing Joe's legal defense fund

Pg 260 Ln 3 – 8 – Max expresses concerns about Oltmann's legal defense fund

**Oltmann's general claims of election fraud**

Pg 76 Ln 2- 15 – Question about whether Max had any documents pertaining to whether Oltmann manipulated, fabricated, falsified, or altered evidence of election fraud

Pg 156 Ln 14 – Pg 157 Ln 13 – Max says he hasn't seen evidence that the machines were manipulated, but also no evidence that they couldn't be. He didn't read the Michigan report, and doesn't recall any outreach from Lindell in November

**Oltmann's efforts to infiltrate Antifa**

Pg 107 Ln 11 – Pg 110 Ln 8 (and all pages in between) – Max says he first heard about Oltmann trying to infiltrate antifa the day of the Coomer episode, and he doesn't recall the specifics of what Oltmann sent him or when prior to that episode

**Joey Camp**

Pg 129 Ln 15 – Pg 134 Ln 21 (and all pages in between) – Max discusses Joe's habit of recording calls, that he was surprised Joe didn't record the antifa call, that he believed it was possible Joey Camp was on the call, and that Joe has a habit of grafting himself into stories that didn't happen, that his mom suspected Joey Camp's involvement

Pg 137 Ln 11 – Pg 139 Ln 11 (and all pages in between) – Max says the response to the November 9 episode was significant and that he didn't suspect until later that Oltmann grafted himself onto Camp's story

7

**McGuire's statements about Oltmann generally**

Pg 129 Ln 15 – Pg 134 Ln 21 (and all pages in between) – Max discusses Joe's habit of recording calls, that he was surprised Joe didn't record the antifa call, that he believed it was possible Joey Camp was on the call, and that Joe has a habit of grafting himself into stories that didn't happen, that his mom suspected Joey Camp's involvement

Pg 191 Ln 15 – 20 – Max says he tried to rein Joe in.

Pg 233 Ln 3 – 4 – Q: "Advocates violence"? A: Yeah

Pg 233 Ln 7 – 10 – Q: "Lies" in bold. Why did you put that there? A: He doesn't always say truthful things, so…

Pg 244 Ln 3 – 10 – Max says in his experience, it wasn't true that Oltmann didn't record calls

Pg 257 Ln 17 – 25 – Max says Joe is a grifter

## Miscellaneous

### The NDAs

Pg 62 Ln 22 – Pg 64 Ln 1 (and all pages in between) – Max explains why there is an NDA for PIN when he didn't work there, specifically. Says he was a partner and very briefly wrote nonpolitical articles for a blog there

### Max's Phone Numbers

Pg 213 Ln 24 – Pg 214 Ln 10 – Max says what his phone numbers were

### Max's warnings to Oltmann about FEC United

Pg 242 Ln 2 – Pg 243 Ln 13 – Max discusses warning Joe about 501c3 rules for FEC United, and there's some speculation about Lindell paying for a hotel for Tina Peters

### Oltmann's response to controversies

Pg 246 Ln 3 – Pg 247 Ln 25 – Max discusses how Joe has had to pull back from various controversies (resigning at PIN, taking heat at DCF for Russia comments), and how he copystruck some of Oltmann's statements about Russia as a favor, concludes with discussion of "Eric Coomer bit" text

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:22-cv-01129**

ERIC COOMER, PhD.,

    Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC, AND MY PILLOW, INC.,

    Defendants.

---

**EXHIBIT A – CDS CONFIDENTIAL DOCUMENTS**

---

COMES NOW, Interested Party, CD Solutions, Inc. ("CDS"), a foreign corporation, through its counsel, Coombe Curry Rich & Jarvis, and hereby respectfully submits Exhibit A – CDS Confidential Documents as follows. All documents listed in this Exhibit A are "Confidential." Undersigned counsel will have these documents marked "Confidential" and circulate among counsel.

1. Request Folder 2

    a. 191019 Group Conversation with Joe Oltmann.pdf

    b. 191022 Group Conversation with Joe Oltmann.pdf

    c. 191203 Group Conversation with Joe Oltmann.pdf

    d. 200602 Group Conversation with Joe Oltmann-1.jpg

    e. 200602 Group Conversation with Joe Oltmann.pdf

    f. 210724 Group Conversation with Joe Oltmann.pdf

  g. 211104 – 211210 adjusting reach pdfs

  h. 220524 Joe Oltmann Messages to Max McGuire on Max, called Paul Watney

  i. 221104 adjusting reach – 4 pdf

  j. Aggregate Messenger with Hammerling(1).pdf

  k. Joe Texts to Max 210 Number.pdf

  l. Joe+Greg+Zach+Micah+Max Texts.pdf

  m. Joe+Zach+Max Texts.pdf

  n. Josh Texts 3.pdf

2. Request Folder 3

  a. 22054 Joe Oltmann Messages to Max McGuire on Max, called Paul Watney

  b. Joe Texts to Maxs 210 Number.pdf

  c. Josh Texts 3.pdf

  d. Text with Chris Wiegand re_Joe Oltmann's Legal Defense Fund.docx

3. All Documents Contained in Request Folder 4, 5, and 6

4. Request Folder 9

  a. Joe Texts to Maxs 210 Number.pdf

  b. Josh Texts 3.pdf

  c. Text with Jimmy Sengenberger re_Joe on Antifa Call.docx

5. All Documents Contained in Request Folder 10.