IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

**PLAINTIFF'S REPLY TO THIRD-PARTY TINA PETERS'
RESPONSE TO MOTION TO COMPEL DOCUMENT PRODUCTION
AND DEPOSITION TESTIMONY**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Eric Coomer, Ph.D., through counsel, files this Reply to Third-Party Tina Peters' Response to Motion to Compel Document Production and Deposition Testimony from Third-Party Tina Peters [Dkt. 111] as follows:

1. In her Response, Tina Peters (Peters) justifies her preemptive, blanket assertion of the Fifth Amendment by resorting to deflection. She cites Plaintiff's references to her repeated defamatory publications, including publications on FrankSpeech, and claims the Motion is simply an effort to "tar" Peters as "a bad person." Peters' defamatory publications about Plaintiff on FrankSpeech and her related public statements about Plaintiff being a "criminal," are in fact squarely relevant here.

2. Further, despite her counsel's assurances that Peters cannot testify as to any issue, Peters herself has maintained a consistent public speaking schedule, where she regularly discusses the facts surrounding the criminal charges against her. For example,

1

just last week Peters engaged in the following exchange during an interview on Joe Oltmann's Conservative Daily podcast while promoting her candidacy for Colorado GOP Chair:

> Oltmann: Tina, would I have known about Eric Coomer three days after the election? I have to ask the question because it's been asked to me. Would I have known about Eric Coomer? Would I have known that he had Satan's tattoo on his arm?[1] Would I have known that he was antifa? Would I have known any of that had he not been on that call?
>
> Peters: Joe, I just applaud you and I've told many people this. Because God allowed you to see these things and to uncover. And I see more and more of God saying this stuff needs to not be hidden any more. And you were the forerunner in all of this, exposing their criminal activity, and you took a lot of heat for it.
>
> Oltmann: And now it's coming out that I was right!
>
> Peters: You were right.[2]

3. Peters then went on to mock this lawsuit yet again:

> Peters: I also noticed with Eric Coomer, as far as, you know the things that he's [laughing about cartoon image of Coomer onscreen] that's a great picture! The things that he's said. You know, here he is suing our great patriot Mike Lindell, for, what?
>
> Oltmann: It's because of me.
>
> Peters: For defamation? For telling the truth? He needs to give up.[3]

---

[1] Dr. Coomer does not have a Satan tattoo on his arm. But, even if he did, it would be an example of a legitimate exercise of his First Amendment rights.

[2] Joe Oltmann, *Live with Tina Peters for CO GOP Chair!*, CONSERVATIVE DAILY PODCAST, Feb. 20, 2023, https://caincloud.egnyte.com/dl/Yiv2P2znt0/CLIP_5__2023-02-20_Peters_at_11-07.mp4__.

[3] *Id.* at https://caincloud.egnyte.com/dl/dWjpwa9nR3/CLIP_4__2023-02-20_Peters_at_1-18-48.mp4__.

4. This is all utter nonsense. The "antifa conference call" story remains a complete fabrication for which Joe Oltmann (Oltmann) has never produced any evidence. He has, however, admitted under oath that he fabricated evidence to support that story.[4] In any event, for Peters to persist in arguing that she cannot discuss her false claims against Plaintiff under oath, all while publicly using those lies to promote herself, is disingenuous on its face.

5. Peters similarly makes frequent public statements about the facts surrounding her involvement with Defendants, including with respect to her ongoing potential criminal liability in those matters. In another interview on Oltmann's podcast just a week before, Peters repeatedly discussed topics that she now claims she cannot discuss for any reason.[5] She also claimed "We don't get paid for this. We're doing this out of our patriotism. Out of our love for our country."[6] This conflicts with other evidence in the record suggesting that both Peters and Oltmann are receiving consideration from Defendants for spreading election lies, and the truth of that matter is very much relevant to the integrity of this proceeding.[7] During this same interview, Peters repeatedly accused the Mesa County District Attorney of involvement[8] with the resolved and undisputed

---

[4] *See* **Exhibit 1**, Deposition Transcript of Joe Oltmann at 294:13-19, Dec. 16, 2022 (admitting that he altered an image he had previously sworn was taken months prior to when it actually was).

[5] Joe Oltmann, Tina Peters Joins to Discuss the Ongoing Fight for Free and Fair Elections, Conservative Daily Podcast, Jan. 31, 2023, https://caincloud.egnyte.com/dl/IOOYJgNRak/CLIP_1__2023-01-31_Peters_at_18-05.mp4_ ; *see also id.* at https://caincloud.egnyte.com/dl/DiEy0TpecG/CLIP_2__2023-01-31_Peters_at_22-25.mp4_ .

[6] *Id.* at https://caincloud.egnyte.com/dl/TVUqHPEpUI/CLIP_3__2023-01-31_Peters_at_29-05.mp4_ .

[7] *See generally*, Plaintiff's Reply to Defendants' Response to Motion to Compel Document Production and Deposition Testimony from Third-Party Tina Peters [Dkt. 110].

[8] *Id.* at https://caincloud.egnyte.com/dl/GHiohFVcxx/CLIP_7__2023-01-31_Peters_at_34-50.mp4_ ; *see also id.* at https://caincloud.egnyte.com/dl/XpXr6p5wly/CLIP_6__2023-01-31_Peters_at_39-25.mp4_ .

traffic deaths[9] of family members of various witnesses against her in her criminal proceedings. This is not the conduct of someone who is concerned about the implications of her own statements.

6. If Peters does not want to be questioned on topics directly related to her frequent publications of defamatory statements about Plaintiff, then she should stop working with Defendants and others to publish defamatory statements about Plaintiff as part of her efforts to further her own political and financial ambitions. She should not be allowed to have it both ways. The overwhelming majority of questions posed by Plaintiff in Peters' deposition were properly posed, do not give rise to legitimate Fifth Amendment concerns, and should be answered.

## ARGUMENT

### A. *Peters has issued a pre-emptive, blanket invocation of the Fifth Amendment.*

7. Peters has raised mutually exclusive arguments in her Response. On the one hand, Peters asserts that "Peters did not invoke the Fifth Amendment prior to the deposition; invoked her rights to each individual question in person, at a deposition." Response, p. 7. Just pages later, however, in arguing against sanctions for her preemptive blanket invocation, Peters admits that "[w]hen undersigned counsel first spoke to Coomer's counsel regarding the subpoena, he specifically informed counsel that Peters

---

[9] Erik Maulbetsch, *Indicted CO Clerk Peters Falsely Implies DA Murdered Witnesses' Brothers*, COLORADO TIMES RECORDER, Feb. 2, 2023, https://coloradotimesrecorder.com/2023/02/indicted-co-clerk-peters-falsely-implies-da-murdered-witnesses-brothers/51651/

would likely invoke her Fifth Amendment privilege to nearly every question posed to her." *Id.* at p. 14.

8.  Here again, Peters cannot have it both ways. She cannot admit to having attempted to issue a preemptive blanket invocation of the Fifth Amendment to preclude the deposition all together, then simultaneously act as though that is not precisely what she eventually did. This is the sort of attempted "prohibition on inquiry" that the law expressly forbids. *See People v. Ruch*, 379 P.3d 309, 313 (Colo. 2016) (citing *People v. Austin*, 412 P.2d 425, 427 (1966).

### B.   *Exhibit 6 is properly before the Court.*

9.  Peters argues that Plaintiff's Exhibit 6 should be stricken. She asserts that "the Exhibit constitutes additional argument in Coomer's motion, and it is a method for him to exceed the page limits by nearly 30%." Response, p. 10. This argument fails for multiple reasons. First, even if the Motion were combined with the Exhibit, it still would not exceed this Court's page limitations.[10] Second, *Peters actually requested this document*. In the telephonic hearing on this matter, counsel for Peters asserted it was unclear which topics Plaintiff believed she should respond to. Plaintiff offered to both Peters and the Court that he would create a document delineating the basic topics in an effort to reduce the burden on the Court. Peters cannot feign surprise to this. The authorities cited by Plaintiff make clear that precisely such a topic-by-topic analysis is

---

[10] *See* J. Nina Wang Practice Standards (Civil Cases), Oct. 7, 2022, § (IV)(B)(1) ("All motions are limited to **twenty (20) pages**, all responses are limited to **twenty (20) pages**, and any replies, including any sur-replies, are limited to **ten (10) pages**") (emphases in original).

necessary, and Plaintiff does not know how the Court could possibly address this matter without reference to the Exhibit that Peters herself lobbied for.

### C.   *Peters should provide answers to the majority of the questions asked.*

10.    The Response focuses primarily on the demonstrative examples included in Plaintiff's Motion. These examples are included under the broader subject headings described in Exhibit 6, and Plaintiff will limit his Reply to the portion of Peters' Response that actually addresses these topic headings.

**1)    Relationship and communications with Defendants and Oltmann.**  Peters asserts that "she and her associates are subject to federal investigation." Plaintiff is not aware of any criminal investigation of Oltmann related to election matters. On information and belief, Peters' relationship with both Defendants and Oltmann commenced before any of the criminal investigations at issue here. At a minimum, Peters should answer questions about her means of communicating with these individuals in order to assess the merits of her document production defense, and to allow Plaintiff the means to determine other potential sources of the requested communications.

**2)    Relationship and communications with other relevant third-parties.**  All of the individuals discussed in Topic 2 are potential witnesses in this case. Here too, the fact of communications and the means by which they occurred is relevant to Plaintiff's ability to assess the merits of Peters' document production, and to determine other potential means of acquiring the documents requested if Peters will not produce them.

6

**3) Potential Undue Influence of Defendants/Oltmann.** If Defendants and/or Oltmann are bribing, intimidating, or attempting to censor the testimony of witnesses in this case, both Plaintiff and the Court have a right to that information. As discussed elsewhere, there is evidence that they may be, and Peters' refusal to answer questions on this topic for fear of criminal implication is deeply concerning. Plaintiff has not yet deposed Defendants on these matters, but in the event Lindell is similarly reticent on the matter, or if Peters again asserts the Fifth, Plaintiff will rightly seek an adverse inference that Defendants have engaged in bribery and witness tampering in this case.

**4) Mesa County criminal allegations.** On this topic, Peters' invocations of the Fifth Amendment are likely warranted. Importantly, though, Plaintiff has reason to believe that the conduct giving rise to Peters' criminal exposure also serves as a critical component of Lindell's Cyber Symposium. The events surrounding this Symposium, including the presentation of false "election fraud data," underpin Plaintiff's defamation claims in this case.

**5) Documents requested and deposition preparation.** Peters cannot expect either Plaintiff or the Court to take her unsworn testimony on this topic at face value. Plaintiff simply does not believe that Peters is not in possession of responsive documents, and her obviously frequent contact with various individuals suggests she has not been forthcoming with her counsel on this matter. Peters oddly asserts that "Coomer has provided no video to back up [the] incorrect assertion" that Peters was texting on her

7

phone during the deposition." But she was.[11] Repeatedly.[12] She clearly has the means to exchange written communications with Defendants and other relevant third parties. If her attorneys' representations to this Court on this matter are accurate, then Peters should have no problem confirming that fact under oath.

**6)  Work as County Clerk and experience of administering the 2020 election.** What Peters knows about election administration and the manner in which Dominion Voting Systems' software functions cuts to the very heart of the actual malice standard that Plaintiff may need to meet to carry his burden in this case. Defendant FrankSpeech has published defamatory statements from Peters, and has ready access to her as a potential source of information to evaluate the validity of the lies about Dr. Coomer at issue in this dispute. If Peters actually is familiar with election administration and Dominion technology, then she will know that the claims against Plaintiff are impossible on their face. Her knowledge on these matters speaks directly to both "knowledge of falsity" and the various standards that Courts have established to identify "reckless disregard for the truth."

**7)  Questions related to Eric Coomer.** Peters must answer these questions. She cannot maintain a public defamation campaign against Plaintiff and simultaneously refuse to answer any questions about how or why she believes he has committed crimes that he absolutely has not committed. Here again, the actual malice standards potentially at issue in this dispute speak directly to Plaintiff's need for this

---

[11] https://caincloud.egnyte.com/dl/39ogMB1C0v/CLIP_10___Peters_Depo.mp4_.

[12] *Id.*, https://caincloud.egnyte.com/dl/oIrPImClJq/CLIP_9___Peters_Depo.mp4_; *see also id.* https://caincloud.egnyte.com/dl/3WGyd71LaR/CLIP_11___Peters_Depo.mp4_.

information. The answer of *why* Defendants and the third-parties whose defamatory statements they have published believe the unequivocal falsehoods about Plaintiff could speak to any number of actual malice factors, including but not limited to intentional avoidance of the truth,[13] conformity to a preconceived narrative,[14] financial motives,[15] political motives, ill will, and overall, the inherent implausibility of the allegations.[16]

**8)   The Cyber Symposium.** As indicated, the Cyber Symposium is an event of central significance in this case. Questions related to why and how the false claims about Dr. Coomer ended up playing the role they did speak directly to Plaintiff's burden of proof in this case. What sort of investigation the event planners put into investigating the claims they ultimately published is similarly significant. Peters is one of only a handful of individuals with direct knowledge of these matters, and as someone who also played an unexpectedly outsized role in that event, she likely can provide unique testimony on these issues. Plaintiff appreciates Peters' counsel's representations with respect to his conversations with prosecutors on this matter, but it is not entirely clear from Peters' response how this topic should be off limits in its entirety.

---

[13] *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 693 (noting that "evidence of an intent to avoid the truth was . . . sufficient to satisfy the more demanding [actual malice standard]" which included the failure to review available evidence and failure to attempt to interview known key witnesses); *Kuhn v. Trib.-Republican Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981) ("a reporter's failure to pursue the most obvious available sources of possible corroboration or refutation may clearly and convincingly evidence a reckless disregard for the truth."); *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1361 (Colo. 1983).

[14] *Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005) ("[E]vidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often provide to be quite powerful evidence."); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 674-75 (W.D. Va. 2019).

[15] *See Brown v. Petrolite Corp.*, 965 F.2d 38, 47 (5th Cir. 1992) (finding circumstantial evidence of motive can establish actual malice).

[16] *St. Amant*, 390 U.S. at 732 (the publication of allegations that are "inherently improbable" is strong evidence of actual malice).

**9) Peters invocation of the Fifth Amendment.** Peters has publicly stated that she invoked the Fifth Amendment in this case because of her belief that Plaintiff is a "criminal," and her apparently related belief that this somehow exempts her from her obligations under F.R.C.P. 45. It is not clear why Peters would not welcome on opportunity to clarify this matter, but in any case the Court should order Peters to speak for herself on the matter of why she will not answer questions.

**10) Beliefs about the 2020 election and subsequent work with election deniers.** This issue similarly addresses the potential that Defendants have been publishing defamatory statements that conform to a preconceived narrative. In her starring role in Lindell's feature length film "Selection Code," Peters has claimed she had no doubts about the legitimacy of the 2020 election until municipal elections were held in Mesa County in 2021. However, Peters' own public tweets about Plaintiff just prior to the insurrection at the U.S. Capitol serve to undercut this narrative.[17] The extent to which Peters' association with election deniers after the election served to shape the narrative about Dr. Coomer is a highly relevant line of inquiry in this case.

## CONCLUSION

For all of the reasons stated herein, the Court should order Peters to sit for a second deposition and to answer questions not reasonably subject to Fifth Amendment protections. Specifically, Peters should answer questions under Topics 1-3 and 5-10 of Exhibit 6 to the Motion. Plaintiff prays the Court grant such other and further relief to which he may be justly entitled.

---

[17] *See* Plaintiff's First Amended Complaint [Dkt. 21] at ¶ 74, FN 113.

Respectfully submitted,

_____/s/ Bradley A. Kloewer_____
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
David E. Jennings, No. 54643
djennings@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064/101 N. F Street, Suite 207
Salida, Colorado 81201
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**