IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

**ERIC COOMER, Ph.D.**

      Plaintiff,

  v.

**MICHAEL J. LINDELL, FRANKSPEECH LLC,**
and **MY PILLOW, INC.,**

      Defendants.

---

**THIRD-PARTY TINA PETERS' SURREPLY IN RESPONSE TO PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION AND DEPOSITION TESTIMONY [ECF NO. 114] FILED FEBRUARY 27, 2023**

---

Third-Party Tina Peters, through undersigned counsel, submits this *Surreply in Response to Plaintiff's Reply in Support of Plaintiff's Motion to Compel Document Production and Deposition Testimony ("Surreply")* [ECF No. 114] filed February 27, 2023. In his *Reply to Third-Party Tina Peters' Response to Motion to Compel Document Production and Deposition Testimony* ("*Reply*") Eric Coomer provides argument for each of the ten categories of questions he provided in Exhibit 6 to his *Motion to Compel*.[1] Coomer does not provide persuasive argument to require Peters to answer any of the questions. In one instance he admits the correctness of Peters' position. In others, he does not address Fifth Amendment standards, instead focusing on his own case. And he never confronts Peters' well-founded concerns giving rise to her invocation of her Fifth Amendment rights.

---

[1] *Reply*, at ¶ 10.

EXHIBIT A

With this overview, Peters will address each topic individually:

1. "**Relationship and communications with Defendants and Oltmann**."[2] Coomer claims that he is not aware of any criminal investigation into Oltmann related to election matters. But this is irrelevant, and Peters does not base her invocation on a possible investigation into Oltmann. Rather, she has provided two declarations – from her attorneys and officers of this Court – explaining that she is under investigation, and this investigation extends to her connections with any associates involved in election issues. Coomer does not dispute the accuracy, authenticity, or importance of any of this evidence. Next, Coomer argues that Peters' relationship with Defendants and Oltmann began prior to any criminal investigations. This is irrelevant, and logically any investigation would necessarily consider associations formed *before* an investigation, as well as ongoing associations. Finally, Coomer claims that "Peters should answer questions about her means of communicating with these individuals in order to assess the merits of her document production defense."[3] This again is irrelevant. Peters has a well-founded concern that both state and federal authorities view her associations with others as fair game for investigation and prosecution, and Coomer's desire to investigate Peters' possession of documents (based on his suspicion – not evidence – as discussed below) bears no relevance to Peters' Fifth Amendment invocation.

2. "**Relationship and communications with other relevant third-parties**."[4] Here, Coomer makes no effort to argue that Peters improperly invoked the Fifth Amendment. Rather, he argues that her constitutional right is outweighed by his belief that his questions are relevant to his case. Specifically, he argues that "the fact of communications and the means by which they

---

[2] *Reply*, at ¶ 10(1).
[3] *Id*.
[4] *Reply*, at ¶ 10(2).

occurred is relevant to Plaintiff's ability to assess the merits of Peters' document production" and that "all of the individuals discussed in Topic 2 are potential witnesses in this case."[5] The relevance of information to Coomer's civil case does not matter. The only standard that applies is whether Peters has "reasonable cause to apprehend danger from a direct answer."[6] And Coomer does not address – let alone rebut – the fact that Peters faces conspiracy charges likely based on her relationship and communications with the individuals he identifies, nor does he address the wide-ranging, ongoing federal investigation into Peters and any of her associates involved in election issues.

    3.    "**Potential Undue Influence of Defendants/Oltmann**."[7] Coomer again argues that the information he seeks is relevant to his case. And again, that analysis is wholly irrelevant to Peters' Fifth Amendment rights. Coomer also argues that there is evidence that "Defendants and/or Oltmann"[8] may be "bribing, intimidating, or attempting to censor the testimony of witnesses in this case."[9] First, Coomer provides no evidence of this with respect to Peters. Second, this argument *supports* Peters invocation of the Fifth Amendment. Basically, Coomer argues that Peters is part of an ongoing crime, and that she must confess to it under oath. Lastly, Coomer expresses "deep concern" about Peters' fear of criminal implication. Again, Coomer's "concern" *supports* an invocation of the Fifth Amendment. In Coomer's analysis, Peters has well-placed concerns about potential criminal activity affecting her, and therefore she should be required to answer questions. He has it backwards. A concern about prosecution is a basis for invoking the Fifth Amendment, not a basis for compelling testimony under oath in violation of

---

[5] *Id*.
[6] *United States v. Von Behren*, 822 F.3d 1139, 1144-45 (10th Cir. 2016).
[7] *Reply*, at ¶ 10(3).
[8] *Id*.
[9] *Id*.

that constitutional right. Lastly, Coomer posits the threat of an adverse inference if Peters does not testify. Peters takes no position on this. She is not a party to Coomer's case and makes no argument regarding an adverse inference.

4. **"Mesa County criminal allegations**."[10] Here, Plaintiff admits that "Peters' invocations of the Fifth Amendment are likely warranted."[11] Peters agrees. Importantly, Coomer's admission also defeats his claim that Peters made a blanket invocation, which is a single invocation in response to all potential questions. It is obvious that Coomer's counsel asked specific, separate questions on this topic, thus forcing him to admit that Peters has no obligation to answer these particular questions.

5. **"Documents requested and deposition preparation**."[12] Coomer claims that he "simply does not believe that Peters is not in possession of responsive documents."[13] Despite his suspicions, Coomer provides no evidence to support his belief. This is the essence of a fishing expedition – he has no evidence to support his ongoing demands but nonetheless wants documents (which Peters asserts do not exist) based solely on his personal desire. Coomer also points to two video clips that he claims show Peters "texting on her phone during the deposition."[14] But this does not create an inference that Peters has somehow generated or retained documents beyond what she has produced. Peters submits that most adults own smartphones and that most read and text on their smartphones. Just because Peters used her phone does not mean that she had documents relating to "Defendants or other relevant third

---

[10] *Reply*, at ¶ 10(4).
[11] *Id*.
[12] *Reply*, at ¶ 10(5).
[13] *Id*.
[14] *Id*.

4

parties."[15] Finally, Coomer boldly claims that "Peters should have no problem confirming that fact under oath." While not required to do so, Peters is willing to provide a sworn written statement affirming that she has produced all responsive documents in her possession. She responded to written discovery – under oath – in an ongoing state case, and she is prepared to do so now, to satisfy Coomer's ongoing – albeit unjustified – demands.

6. **"Work as County Clerk and experience of administering the 2020 election**."[16] As in topics two and three above, Coomer makes no effort to argue that Peters improperly invoked the Fifth Amendment. His entire argument is that her constitutional right is outweighed by his belief that his questions are relevant to his case. Specifically, he argues that Peters' answers "cut[] to the very heart" of his case and that Peters' "knowledge on these matters speaks directly to …the various standards that Courts have established to identify reckless disregard for the truth."[17] Although the relevancy of Peters' knowledge and her state of mind seem an unwarranted stretch – since Peters is not a party but rather a third-party witness – the fact remains that Coomer's claims of relevance have no bearing on the legal standards underpinning Peters' invocation of her Fifth Amendment right. Critically, the information sought under this topic goes directly to the state criminal case against Peters, which involves Peters' knowledge and understanding of her official duties.

7. **"Questions related to Eric Coomer**."[18] Again, Coomer does not contend with Peters' legal arguments regarding the Fifth Amendment, but instead he discusses Peters' public statements, and he questions her underlying belief regarding elections and election

---

[15] *Id.*
[16] *Reply*, at ¶ 10(6).
[17] *Id.*
[18] *Reply*, at ¶ 10(7).

5

administration. And as before, Coomer solely argues his belief that Peters' knowledge is relevant to his civil case, stating that "the actual malice standards potentially at issue in this dispute speak directly to Plaintiff's need for this information."[19] Regardless of whether a malice standard is "potentially" at issue in Coomer's case, his desire for that information has no relevance to the underlying issue in *this* dispute – Peters' proper invocation of her Fifth Amendment right.

8.  "**The Cyber Symposium**."[20] Coomer's arguments here are nearly identical to those in topic seven. He claims, "the cyber symposium is an event of central significance" and Peters "can provide unique testimony on these issues." Again, Coomer fails to address the relevant Fifth Amendment standards. And critically, he ignores undersigned counsel's declaration that the Mesa County District attorney told him, in a face-to-face meeting, that the cyber symposium was a major topic of investigation by both state and federal authorities, and that Peters' involvement in that symposium was an important part of the District Attorney's consideration of criminal charges. A well-founded belief doesn't get much clearer than that – a prosecutor's direct statement that he views the cyber symposium to constitute part of his criminal prosecution. Coomer's effort to shift the focus to his needs in his civil case has no place in a Fifth Amendment analysis.

9.  "**Peters invocation of the Fifth Amendment**"[21] Coomer's argument here fails to offer even a passing reference to any standard of Fifth Amendment analysis. Coomer claims that "it is not clear why Peters would not welcome on [sic] opportunity to clarify this matter, but in any case, the Court should order Peters to speak for herself on the matter of why she will not

---

[19] *Id*.
[20] *Reply*, at ¶ 10(8).
[21] *Reply*, at ¶ 10(9).

answer questions."[22] Peters has no obligation to answer questions because Coomer believes her invocation "is not clear." By seeking to compel Peters to testify, in granular detail, why each and every question gives rise to a Fifth Amendment invocation, Coomer asks this Court to violate her rights by making her testify about her non-testimony. And his approach contradicts Tenth Circuit standards, which state "not much is required to show an individual faces some authentic danger of self incrimination."[23] Coomer's efforts to probe Peters' reasoning and motivations about her criminal case – by requiring her to justify in detail her invocation of the Fifth Amendment – are not relevant to his underlying civil case. Coomer and his attorneys clearly dislike and disbelieve Peters. But that animosity is not a basis to allow them to engage in a fishing expedition.

10. "**Beliefs about the 2020 election and subsequent work with election deniers**."[24] Again, Coomer does not address Fifth Amendment legal standards, instead exclusively arguing that he wants this information as relevant to his civil case. He cannot explain why Peters' Fifth Amendment privilege against self-incrimination is outweighed by his desire for her testimony. Finally, making the point of his *Reply* unmistakable, Plaintiff uses pejorative, political talking points, raising "the insurrection at the U.S. Capitol" and referring to "Peters' association with election deniers"[25] in an ongoing effort to characterize Peters as a bad person. This Court should not countenance such misplaced rhetoric.

Lastly Coomer argues that Peters' public statements operate as a waiver of her Fifth Amendment right. To be sure, he avoids the word "waiver." But he nonetheless argues that "[i]f Peters does not want to be questioned on topics directly related to her frequent publications of

---

[22] *Id*.
[23] *United States v. Von Behren*, 822 F.3d 1139, 1144-45 (10th Cir. 2016).
[24] *Reply*, at ¶ 10(10).
[25] *Id*.

defamatory statements about Plaintiff, then she should stop working with Defendants and others to publish defamatory statements," and that "she should not be allowed to have it both ways."

There is no "if," and Peters may make public statements while also invoking the Fifth Amendment. Under controlling case law, "because there is a presumption against the waiver of constitutional rights,"[26] for a person to waive her Fifth Amendment right, the waiver must be "made voluntarily, knowingly and intelligently'."[27] Public statements, made independently of this proceeding, do not remotely meet this standard, and Peters has not waived her constitutional rights.

Peters certainly disagrees with Coomer's characterization of her public statements. Regardless, her public statements are far different than compelled testimony, under oath, in response to specific questions by Coomer's counsel. The Fifth Amendment was enacted to prohibit compelled testimony when a person faces criminal prosecution, even when that same person exercises her First Amendment right to speak freely.

FOR THESE REASONS, the Court should deny Plaintiff's Motion to Compel, deny Plaintiff's Motion for Sanctions, and grant Third-Party Tina Peters all such further relief as is just, proper, and appropriate.

Respectfully submitted this 1st day of March 2023,

                                                    GESSLER BLUE LLC

By:    *s/ Scott E. Gessler*
        Scott E. Gessler
        sgessler@gesslerblue.com
        7350 E. Progress Place., Suite 100
        Greenwood Village, CO  80111
        Phone:  (720) 839-6637

---

[26] *United States v. Lopez-Medina*, 596 F.3d 716, 731 (10th Cir. 2010).
[27] *Colorado v. Spring*, 479 U.S. 564, 572 (1987) *citing Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

**Certificate of Service**

I certify that on this 1st day of March 2023, the foregoing was electronically served via e-mail or CM/ECF on all counsel and parties of record.

By:    *s/ Joanna Bila*
   Joanna Bila, Paralegal