**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:22-cv-01129-NYW-SKC**

ERIC COOMER, PhD.,

  Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC, AND MY PILLOW, INC.,

  Defendants.

---

**CD SOLUTIONS, INC.'S RESPONSE TO PLAINTIFF'S OBJECTION TO
THIRD-PARTY CD SOLUTIONS INC.'S CONFIDENTIALITY
DESIGNATIONS**

---

COMES NOW, Interested Party, CD Solutions, Inc. ("CDS"), through its counsel, Coombe Curry Rich & Jarvis, and hereby respectfully submits its Response to Plaintiff's Objection to Third-Party CD Solutions Inc.'s Confidentiality Designations and in support thereof, states as follows:

**INTRODUCTION**

CDS is not a Party to this case. CDS learned that Plaintiff sought to depose and subpoena documents from CDS' former employee, Max McGuire, that would involve information protected by two non-disclosure agreements signed by Mr. McGuire. CDS entered its appearance as an interested party and moved this Court for a Protection Order on November 14, 2022. This Court entered a Protection Order Governing the Production

1

and Exchange of Confidential Information ("Protective Order") in this case on November 16, 2022. The Protective Order allowed for the discovery of Mr. McGuire's documents and testimony but indicated that documents or testimony could later be designated as "Confidential" or "Attorneys Eyes Only."  CDS followed the Court's Order and made its Confidential Designations on December 14, 2022. Of note, CDS did not designate any material as "Attorneys Eyes Only." Plaintiff has erroneously Objected to these designations by making several arguments that have no legal merit. Indeed, the bulk of Plaintiff's Objection is inflammatory rhetoric and is inappropriate for the issue before the Court.

In addition, Plaintiff makes several misrepresentations to the Court in its Objection, specifically but not limited to its own conferral, CDS' conferral efforts, the nature of the documents that CDS has marked as Confidential, and CDS' basis for doing so.  Most importantly, Plaintiff provides no legal basis for its objections. To illustrate, Plaintiff has failed to provide this Court with the reason it needs the confidential documents to become publicly available. This failure alone is crippling to Plaintiff's Objection.

Plaintiff's Objection is unfortunately just another example of a mudslinging campaign and has little to do with the current issue before this Court:  the confidentiality designations made in good faith by CDS, a nonparty, pursuant to the Order of this Court which are related to nondisclosure agreements made in the course of employment with an individual employee.  As such, CDS requests that this Court overrule Plaintiff's objections and deny his unsupported request for sanctions.

## BACKGROUND

On August 29, 2022, Plaintiff served a Notice of Intent to Take Oral and Videotaped Deposition of Max McGuire. **Exhibit 1**, Deposition Notice.  Plaintiff noticed Mr. McGuire's deposition for Thursday, November 17, 2022, in Austin, Texas.  Pursuant to this Court's Protection Order, Mr. McGuire attended his deposition on November 17, 2022 and provided Plaintiff with the requested testimony and documentation.

Mr. McGuire has executed two separate Non-Disclosure Agreements, which serve to protect CDS regarding his testimony and document production. On September 3, 2015, Mr. McGuire was hired as an employee of PIN Business Network, Inc. d/b/a DoBizLo ("PIN") by CDS CEO, Joe Oltmann.  As part of his employment, Mr. McGuire signed a Non-Disclosure Agreement. ("NDA 2015"). **Exhibit 2**, Non-Disclosure Agreement, dated September 3, 2015.  As a result of Mr. McGuire signing the NDA 2015, he is forbidden from disclosing confidential information related to PIN, including but not limited to:

### <u>Confidential Information</u>

1. All written and oral information and materials disclosed or provided by the Employer to the Employee under this Agreement is Confidential Information regardless of whether it was provided before or after the date of this Agreement or how it was provided to the Employee.

2. The Employee acknowledges that in any position the Employee may hold, in and as a result of the Employee's employment by the Employer, the Employee will, or may, be making use of, acquiring or adding to information about certain matters and things which are confidential to the Employer, including but not limited to, the following:

3. 'Confidential Information' means all data and information relating to the business and management of the Employer, including but not limited to, the following:

      a.  'Customer Information' which includes names of customers of the Employer, their representatives, all customer contact information, contracts and their contents and parties, customer services, data provided by customers and the type, quantity and specifications of products and services purchased, leased, licensed or received by customers of the Employer;

**Exhibit 2**, pp 1-2. "Confidential Information" also includes intellectual property, marketing and development, business operations, product information, production processes, and service information. Id. at p. 2. In 2015, CDS and PIN were *both* subsidiaries to the same parent company.

As a result of Mr. McGuire signing the NDA 2015, he is forbidden from disclosing confidential information related to PIN, including all Confidential business information relating to that business. In his response, Plaintiff argues that the Confidential information described in the NDA 2015 could not have been any of the information at issue in this dispute. Objection, p. 11. Mr. McGuire contradicts this conclusion in his deposition. Id.

It is clear from Mr. McGuire's testimony that he intended on being bound to these NDAs and they are applicable to the work he was doing for and with PIN, Shuffling Media Madness, and CDS. It was Mr. McGuire's understanding that he entered into a contract with Shuffling Madness Media in June 2014.[1] As Plaintiff quotes in his Objection, Mr. McGuire testified that he was performing work "under ***Conservative Daily*** from 2014 through to that new contract".[2] (emphasis added).

---

[1] **Deposition Transcript of Max McGuire**, p. 62, ll. 13-18 is attached hereto as **Exhibit 3**.
[2] **Ex. 3**, p. 63, ll. 17-19.

In his Objection, Plaintiff attempts to argue that the NDA 2015 was only required because Mr. McGuire must attend PIN meetings. Objection, p. 11.  This argument fails. Mr. McGuire made it clear that he has been involved with Conservative Daily since 2014.[3] Mr. McGuire also testified that while he was under contract with Shuffling Madness Media from around 2014 – 2021, he was also working for PIN.  While working for PIN, Mr. McGuire was writing articles for a blog, managed social media personnel, and managed other writers.[4] Mr. McGuire is a partner with PIN.[5]  As a partner with PIN, Mr. McGuire was directly involved with shareholder meetings, partner meetings as of which were related to the business dealings of PIN of which Mr. McGuire was performing business.[6]

The "Confidential Information" described in the NDA 2015 is directly related to this case. Material to his employment and partnership, Mr. McGuire signed the NDA 2015. Mr. McGuire may have not been compensated by PIN, but it is clear from his testimony that he was working for PIN related to writing and managing social media and was involved in confidential meetings of the PIN business.  Mr. McGuire also understood that he was working for Conservative Daily since his signed NDA 2015.   A significant portion of the testimony/documentation offered by Mr. McGuire, which directly relates to Conservative Daily, is confidential and protected under the applicable NDA 2015.

---

[3] **Ex. 3**, p. 257, ll. 14-15.
[4] **Ex. 3**, p. 63, ll. 20-24.
[5] **Ex. 3**, p. 62, l. 25.
[6] **Ex. 3**, p. 62, ll. 2-4, 10-12.

Later, in 2021, Mr. McGuire was hired as a consultant for CDS. Contemporaneously with the signing of the CD Solutions Consulting Agreement, Mr. McGuire signed "Exhibit A" CD Solutions Non-Disclosure Agreement ("NDA 2021"). **Exhibit 4**, "Exhibit A" CD Solutions Non-Disclosure Agreement, dated September 1, 2021.

As a result of Mr. McGuire signing this NDA, he is forbidden from disclosing confidential information related to CDS, including but not limited to:

(a) All information concerning the Disclosing Party's and **its affiliates'**, and **their customers'**, suppliers', and other third parties' past, present, and future **business affairs** including without limitation, **finances, customer information**, supplier information, products, **services**, **organizational structure and internal practices**, forecasts, sales and other financial results, records and budgets, and business, **marketing**, **development**, sales and other **commercial strategies**;

(b) The Disclosing Party's unpatented inventions, **ideas, methods and discoveries**, trade secrets, knowhow, unpublished patent applications, and other confidential intellectual property;

(c) all designs, specifications, documentation, components, source code, object code, images, icons, audiovisual components and objects, schematics, drawings, protocols, processes, and other visual depictions, in whole or in part, of any of the following;

(d) any third-party confidential information included with, or incorporated in, any information provided by the Disclosing Party to the Recipient or its Representatives; and

(e) all notes, analyses, compilations, reports, forecasts, studies, samples, data, statistics, summaries, interpretations, and other materials (the "Notes") prepared by or for the Recipient or its Representatives that contain, are based on, or otherwise reflect or are derived from, in who or in part, any of the foregoing.

**Exhibit 4**, 1(a)-(e) (emphasis added).

Importantly, one of Mr. McGuire's roles at CDS was that he served as a co-host on the CDS Conservative Daily Podcast ("CDS Podcast").  Plaintiff spent the vast majority of the deposition of Mr. McGuire discussing topics related to the NDAs.  To illustrate, during Mr. McGuire's deposition, Plaintiff directly questioned Mr. McGuire on the business affairs of the CDS Podcast produced and/or owned by CDS, including advertising strategies and information related to CDS Affiliates.  Plaintiff also questioned Mr. McGuire on CDS business related conversations with employees of CDS. Specifically, Plaintiff lists Conservative Daily in his Definitions:

7.      "Conservative Daily" means the daily podcast produced and/or owned by CD Solutions Inc.

**Exhibit 5**, Exhibit A to Subpoena.

With respect to the deposition of Mr. McGuire, Plaintiff requested documents specifically protected by the NDAs related to the business affairs of the CDS Podcast produced and/or owned by CDS, including, but not limited to:

4.      All documents and communications authored, sent, or received by You relating to **proposed topics for Conservative Daily episodes** that you or any other Conservative Daily employee or contractor objected to between January 1, 2020 and the present.

5.      All documents and communications authored, sent, or received by You concerning the **accuracy of claims** made by Oltmann on **Conservative Daily** between January 1, 2020 and the present.

7.      All documents and communications authored, sent, or received by You relating to the claims that Dr. Coomber participated in an "Antifa call," that he claimed on that call to have rigged the 2020 presidential election, and that he did in fact rig the 2020 presidential election

8.      All documents and communications authored, sent, or received by You relating to any surveillance of, threats directed towards, or harassment of Dr. Coomber between January 1, 2020 and the present.

9.      All documents and communications authored, sent, or received by You relating to any of the alleged participants of the "Antifa call," the means by which Oltmann supposedly accessed the "Antifa call," any alleged witnesses to the "Antifa call," any evidence demonstrating the occurrence of the "Antifa call," or any other documents or communications related in any way to the "Antifa call."

10.      All documents and communications authored, sent, or received by You concerning instances when Oltmann manipulated, fabricated, falsified, or altered in any way alleged evidence of fraud in the 2020 presidential election, including, but not limited to, all documents or communications relating to instances when Oltmann encouraged others to manipulate, fabricate, falsify, or alter evidence, or when he knowingly disregarded the manipulation, fabrication, falsification or alteration of alleged evidence of fraud offered by others relating to the 2020 presidential election.

**Exhibit 5**, Documents Requested, 3-5, 7-10.

On December 14, 2022, pursuant to the Courts Protection Order, CDS timely filed its Notice of Confidential Information. Over two months later, on February 24, 2023, Plaintiff filed his Objection to Third-Party CD Solutions Inc.'s Confidentiality Designations. ("Objection")

The confidential documents and testimony of third-parties, like CDS, are the reason the Protective Order was ordered in this case.  It was understood that the named parties to this litigation would be deposing third-parties and documents would be produced from those third-parties. Protective Order, p. 1.  It was also understood that "certain information" would be subject to "non-disclosure agreement[s]".  Id.  Further, it was understood that this Protective Order would apply to "non-part[ies]" designated as "producing part[ies]"  Id.

Paragraph 8 of the Protective Order lays out a comprehensive list of those individuals who may obtain confidential information in this case. Effectively, Plaintiff, all of his counsel, all of the counsel's firm and employees, and his experts are free and encouraged to review, organize, summarize, and use this information in this case.

Through this Court's Order, all named parties to this case are able to obtain the information they need to prosecute and defend the claims brought, while protecting the interests of non-parties who have no vested interest in this litigation. This is precisely what occurred in this case with CDS, who in good faith designated portions of testimony and documents as Confidential.  For reasons not provided by Plaintiff, he now seeks to have the Court's protection of those documents and testimony removed.  Plaintiff's Objection should be overruled by the Court.

## LEGAL STANDARD

For good cause, the court may by order in a case: (1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court. *F.R.C.P. 5.2*

Any Producing Party may designate any Discovery Material as "Confidential Discovery Material" under the terms of this Order where such Party in good faith believes that such Discovery Material contains trade secrets, proprietary business information, competitively sensitive information or other information the disclosure of which would, in the good faith judgment of the Party or, as appropriate, non-party designating the material as confidential, be detrimental to the conduct of that Party's or non-party's business or the business of any of that Party's or non-party's customers or clients.

Protective Order Governing the Production and Exchange of Confidential Information, ¶1 ("Protective Order").

Any Producing Party may designate any Discovery Material as "Attorneys' Eyes Only Discovery Material" under the terms of this Order where such Party in good faith believes that such Discovery Material contains Attorneys' Eyes Only Discovery Material. Attorneys' Eyes Only Discovery Material is defined as Confidential Discovery Material containing information such that disclosure other than as provided in this Order could reasonably be expected to cause irreparable harm to the Producing Party. Protective Order ¶2

The Federal Rules of Civil Procedure must be "construed and administered to secure the just, speedy, and inexpensive determination of every action." F.R.C.P. 1. "Federal district courts have broad discretion over discovery." *Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661, 662 (D.N.M.2005)(Browning, J.). A court shall limit discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  F.R.C.P. 26 (b)(F).  The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

F.R.C.P. 26(c) gives the court the power to make a variety of orders for the protection of parties, witnesses or materials during discovery and disclosure. Rule 26(c) was adopted to provide a procedure to limit discovery in certain cases. *Bond v. Dist. Ct.*, 682 P.2d 33 (Colo. 1984). This rule allows the trial court to exercise broad discretion to manage the discovery process in such a way as to implement the philosophy of full disclosure of relevant information while protecting the participants against the harmful side effects; "accordingly, trial courts should not hesitate to exercise control over the discovery process". *Id.* at 40. Rule 26(c) "applies only to documents or information obtained solely as a result of discovery in a pending case," and cannot be used to "authorize restrictions on documents acquired outside of the discovery process in the pending case."

The court may make any order which justice requires to accomplish the purposes of the rule, including one or more of eight methods set forth in the rule: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the disclosure or discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of disclosure or discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) **that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way**; and, (8)

that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. F.R.C.P. 26(c). *Blue Mountain Credit Alternatives Master Fund L.P. v. Regal Entertainment Group*, 465 P.3d 122, 130–133 (Colo. Ct. App. 2020) (emphasis added)

## ARGUMENT

Despite the simple nature of the legal issue before the Court, it is clear from the Introduction in Plaintiff's Objection that Plaintiff is attempting to cloud the single issue before this Court. Plaintiff's inflammatory rhetoric and baseless arguments about the underlying case and other similar cases are not at issue here and will not be addressed by CDS. Plaintiff failed to properly confer on its Objection, and as such the Court should not entertain those arguments. In addition, Mr. McGuire has provided certain documentation and testimony related to the business affairs of CDS and that documentation and testimony was correctly and appropriately designated as confidential under the applicable NDAs, as well as the Court's Protection Order.

### A. CDS has Appropriately Made Designations and has Standing to Make Designations

As an initial matter, during the lengthy conferral on this issue, Plaintiff's counsel never addressed or conferred in any way regarding the argument that CDS lacked standing to make confidentiality designations in this case. CDS was never given the opportunity to discuss or negotiate this argument and as such, CDS would respectfully request the Court dismiss this argument as not complying with the conferral provision of the Protective Order. Protective Order, ¶15, p.10. Should the Court still consider this argument despite the lack of conferral, it fails pursuant to Protective Order. Specifically,

CDS is a "Producing Party" as contemplated by the Protective Order and therefore has standing to make designations to Mr. McGuire's testimony and produced documents.

Pursuant to the Protective Order,

Under Federal Rules of Civil Procedure 5.2 and 26(c), this Order Governing the Production and Exchange of Confidential Information (the "Order") will govern the handling of documents, testimony (in any form whether by affidavit, declaration, or deposition), exhibits, transcripts, written discovery requests, interrogatory responses, responses to requests for admission, and responses to requests for documents, and any other information or material produced, given, or exchanged, including any information contained therein or derived therefrom ("Discovery Material"), **by or among any Party or non-Party providing** Discovery Material, including written and oral responses to discovery requests and/or subpoenas, (**each a "Producing Party"**) in the above-captioned action (the "Litigation") to the party receiving the Discovery Material ("Receiving Party").

Protective Order, pp. 1-2.

The parties to this litigation contemplated "that certain information that will be produced or that may be produced may contain information that is proprietary, commercially sensitive, subject to a non-disclosure agreement, and/or otherwise non-public." Protective Order p. 1. The Protective Order contemplates the production of documents by non-parties to this litigation. The documents and testimony offered by Mr. McGuire were made by a former employee of CDS and a current partner of PIN, as they relate to his employment and his contractual agreement to be held to the applicable NDAs.

Plaintiff chose to get CDS' business documentation from third-party, Mr. McGuire:

4.      All documents and communications authored, sent, or received by You relating to proposed topics for Conservative Daily episodes that you or any other Conservative Daily employee or contractor objected to between January 1, 2020 and the present.

5.      All documents and communications authored, sent, or received by You concerning the accuracy of claims made by Oltmann on Conservative Daily between January 1, 2020 and the present.

**Exhibit 5**, Documents Requested, 4-5.

Pursuant to the Court's Protective Order, Mr. McGuire, a former CDS employee who was contractually obligated not to discuss or disclose CDS business dealings and disclose its documents, provided CDS' confidential business information, documents, and testimony to Plaintiff. Once Plaintiff obtained CDS' business information, CDS entered into this case for the purpose of protecting its business documentation and information. It is disingenuous for Plaintiff to depose a former employee, accept documents from CDS despite a valid disagreement to the disclosure, and then argue that CDS doesn't have standing to protect their own interests.

### B. CDS Confidential Designations are Protected under the Applicable NDAs.

In his Objection to Designations, Plaintiff accurately quotes the applicable 2021 NDA between Mr. McGuire and CDS. Objection, p. 12.  It is this exact language which provides CDS with confidentiality protection in this case.  Plaintiff attempts to paint CDS' confidentiality designations as "a variety of personal text messages and emails between McGuire and various individuals that cannot be reasonably be considered to fall under any of these umbrellas." Id. This argument is false and must fail.

The Protective Order states that "Any Producing Party may designate any Discovery Material as "Confidential Discovery Material" under the terms of this Order where such Party in good faith believes that such Discovery Material contains trade

secrets, proprietary business information, competitively sensitive information or other information the disclosure of which would, in the good faith judgment of the Party or, as appropriate, non-party designating the material as confidential, be detrimental to the conduct of that Party's or non-party's business or the business of any of that Party's or non-party's customers or clients. Protective Order Governing the Production and Exchange of Confidential Information, ¶1 ("Protective Order").

Many of the confidentiality designations made by CDS include text messages and emails that include Mr. McGuire and other CDS employees.  There are thousands of lines of text messages and emails that Mr. McGuire has produced.  These conversations are directly related to sensitive information related to CDS and its business. Public disclosure of these be detrimental to the conduct of CDS' business or the business of CDS' customers or clients.

Plaintiff has focused his attention on the "blanket assertion of privilege over more than a thousand pages…" Objection, p. 17.  Plaintiff's focus on CDS' number of documents, rather than on the fact that these documents are consumed with CDS' business dealings, shows Plaintiff's misunderstanding of the Protective Order and applicable NDAs. Undersigned counsel has reviewed the deposition transcript for Mr. McGuire, Mr. McGuire's disclosed documents, and have in good faith designated those documents that deserve protection.  Again, these documents are directly related to sensitive information related to CDS and its business. Public disclosure of these be detrimental to the conduct of CDS' business or the business of CDS' customers or clients.

CDS' designations were not intended to "force needless work" on Plaintiff, but to in fact streamline this process whereby Plaintiff could continue prosecuting its case. Plaintiff has not given the Court any reason as to why the specific designations should be struck or what Plaintiff intends to do with them.

Plaintiff also incorrectly argues that because some of the confidentiality designations made by CDS are text messages and emails that include discussion about *Plaintiff,* that somehow that prevents these designations from being confidential.  That is patently false, and also is not a legal basis for removing a confidentiality designation.

Plaintiff received documents from Mr. McGuire in the requests made in Exhibit 5. For example, Plaintiff requested the following categories of documents from Mr. McGuire:

> 2.      All written communications between You and Oltmann between January 1, 2020 and the present, including, but not limited to, all written communications relating to Dr. Coomer or Dominion Voting Systems.

**Exhibit 5**, No. 2

This request on its face is going to require Mr. McGuire to produce text messages (with his employer) that address proposed topics for a the CDS Podcast, CDS' potential sources of information, the analysis and thought process of how to produce a podcast, among other business related communications.  All of these communications are directly related to the business dealings of CDS and are covered under the NDA and Protective Order. In addition, they are directly related to sensitive information related to CDS and its business. Public disclosure of these

be detrimental to the conduct of CDS' business or the business of CDS' customers or clients.

> 4.    All documents and communications authored, sent, or received by You relating to proposed topics for Conservative Daily episodes that you or any other Conservative Daily employee or contractor objected to between January 1, 2020 and the present.

Again, this request on its face will require Mr. McGuire to produce text messages (with CDS employees) that address how CDS chooses topics and guest for its podcast and the confidential business dealings of CDS.

Mr. McGuire, as a private citizen, contracted with CDS and agreed to keep CDS business dealings confidential, as referenced in the applicable NDAs.  As part of its business CDS plans for, operates, finances, and produces a podcast where guests are retained/invited to discuss various topics on the CDS podcast. Plaintiff requested documents and elicited testimony from Mr. McGuire that are directly related to these business dealings.  Those documents have been marked confidential. Again, they are directly related to sensitive information related to CDS and its business. Public disclosure of these be detrimental to the conduct of CDS' business or the business of CDS' customers or clients.

In addition, Plaintiff confusingly accuses CDS of "attempt[ing] to conceal a wide variety of McGuire's personal opinions....[as] [t]hey are bad facts for both Defendants and CDS."  Plaintiff is already in possession of these facts and opinions.  Consequently, there can be no "attempting to conceal."

Pursuant to the Protective Order, Confidential Discovery Material may include, such material that may be detrimental to the conduct of that Party's or non-party's

business or the business of any of that Party's or non-party's customers or clients. Protective Order, ¶1, p. 1.  As a nonparty, CDS is not directly concerned with "bad facts" or "Mr. McGuire's personal opinions."  What is confidential about these conversations and testimony is the fact that these conversations were held by and between CDS employees about and regarding the CDS podcast.  Many of these designations are heated arguments about the proposed content, sources, and presentation of CDS podcast.  It would be detrimental to CDS' business if competitors and the public were made aware of the in-fighting and disagreements that take place in creating a podcast. To run a successful podcast requires its employees to freely discuss how the shows, guests, and information is and will be distributed to the viewing public.  It would be detrimental to the business of CDS if any of its customers, clients, and advertisers were made aware of the business conversations which take place in order to run its podcast. As such, the Court should overrule Plaintiff's objection.

### C. Plaintiff has failed to provide any adequate explanation as to why and how these documents should be made public.

Plaintiff has initiated this defamation action against the named Defendants. Plaintiff chose to depose Max McGuire and has also received numerous documents from his request to produce.  Plaintiff is now in possession of this information, a fact of which Plaintiff fails to address in his Objection.

Plaintiff deposed Mr. McGuire and has received numerous documents from Mr. McGuire. Several of those documents and sections of testimony have in good faith been

designated as Confidential pursuant to this Court's Order.  Plaintiff has failed to show how CDS' confidentiality designations impact the prosecution of his case in any way.

Plaintiff has failed to address what he plans on doing with the disputed information and documents.  In his Objection, Plaintiff alleges that Mr. McGuire's testimony is "indisputably in the public interest," and "[a]llowing CDS to continue concealing the truth on these matters is not in the public interest." Objection, p. 3 and 13. This is as much specificity as Plaintiff will provide with respect to how he will disseminate this information. Plaintiff does not need to distribute CDS' documents and information to others, who are not involved in this litigation.  Further, it is not up to Plaintiff to indicate what information of CDS' is confidential.

Plaintiff has provided no evidence that these confidentiality provisions will harm his prosecution of this case and the only use Plaintiff has shown for this information is to because it is in the public interest.  These are not legitimate reasons to rule that the CDS' documents and testimony are not confidential.

### D. Plaintiff's Request for Sanctions

During the conferral on this matter, Plaintiff's counsel never addressed or conferred in any way regarding his request for sanctions with respect to the confidentiality provisions.  CDS was never given the opportunity to discuss or negotiate this argument and as such, CDS would respectfully request the Court dismiss this argument as not complying with the conferral provision of the Protective Order.

Plaintiff's request for sanctions should be denied and this request is unquestionably unprofessional.  As his basis for requesting sanctions, Plaintiff claims

CDS "imposed numerous hours of work on Plaintiff for no valid reason at all" and there was "needless work forced on Plaintiff." Objection, p. 17. With all the work that Plaintiff alleges had to be done, he still cannot explain what the work was actually for.

CDS would also inform this Court that at no time has CDS marked any of this testimony or documents "Attorneys' Eyes Only." Even though Plaintiff believes that Mr. McGuire's testimony is "devastating," CDS has made no effort to keep the parties in this litigation from using this testimony and these documents in the prosecution and defense of this matter. CDS is not trying, in any way, to overreach and/or prevent Plaintiff from using this information for this matter. CDS is simply protecting its confidential business information.

## CONCLUSION

CDS entered this case for the sole purpose of protecting the business information and documents of CDS. Undersigned counsel has reviewed the testimony of Mr. McGuire and his disclosed documents and in good faith has marked documents "Confidential." CDS appropriately followed the Court's Order and made its Confidential Designations.

Importantly, Plaintiff provides no legal basis for its objections. Plaintiff has completely failed to provide this Court with any reason why the confidential documents should become publicly available or how they will become publicly available.

Plaintiff's Objection is in large part just inflammatory rhetoric and has little to do with the current issue before this Court: the confidentiality designations made by CDS, a nonparty, pursuant to the Order of this Court which are related to nondisclosure agreements made in the course of employment with an individual employee.

WHEREFORE, and based on the foregoing, CDS respectfully requests the Court Affirm CDS' Notice of Confidential Information by CD Solutions, Inc., overrule Plaintiff's Objections and deny Plaintiff's request for sanctions.

DATED this 10th day of March, 2023.

**COOMBE CURRY RICH AND JARVIS**

*S/ Gregory Robert Schroer*
Daniel Robert Coombe, Esq.
Gregory Robert Schroer, Esq.
Coombe Curry Rich & Jarvis
2000 S Colorado Blvd.
Tower II, Suite 1050
Denver, CO 80222
Telephone: (303) 572-4200
coombe@ccrjlaw.com
schroer@ccrjlaw.com
*Attorneys for CDS*