## "EXHIBIT A"
## CD SOLUTIONS NON-DISCLOSURE AGREEMENT

This Mutual Confidentiality Agreement (the "Agreement"), effective as of September ~~15~~ 01, 2021 (the "Effective Date"), is entered into by and between CD SOLUTIONS, a Delaware company, and Max McGuire, a Consultant (together, the "Parties", and each, a "Party").

WHEREAS, in connection with [Advocacy Director] (the "Purpose"), the Parties desire to share certain information that is non-public, confidential or proprietary in nature.

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set out herein, the Parties agree as follows:

1.  Confidential Information. Except as set out in Section 2 below, "Confidential Information" means all nonpublic, confidential, or proprietary information disclosed September 15, 2019 on or after the Effective Date, by either Party (a "Disclosing Party") to the other Party (a "Recipient") or its affiliates, or to any of such Recipient's or its affiliates' employees, officers, directors, partners, shareholders, agents, attorneys, accountants, or advisors (collectively, "Representatives"), whether disclosed orally or disclosed or accessed in written, electronic, or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," including, without limitation:

    (a) all information concerning the Disclosing Party's and its affiliates', and their customers', suppliers', and other third parties' past, present, and future business affairs including, without limitation, finances, customer information, supplier information, products, services, organizational structure and internal practices, forecasts, sales and other financial results, records and budgets, and business, marketing, development, sales and other commercial strategies;

    (b) the Disclosing Party's unpatented inventions, ideas, methods and discoveries, trade secrets, knowhow, unpublished patent applications, and other confidential intellectual property;

    (c) all designs, specifications, documentation, components, source code, object code, images, icons, audiovisual components and objects, schematics, drawings, protocols, processes, and other visual depictions, in whole or in part, of any of the foregoing;

    (d) any third-party confidential information included with, or incorporated in, any information provided by the Disclosing Party to the Recipient or its Representatives; and

    (e) all notes, analyses, compilations, reports, forecasts, studies, samples, data, statistics, summaries, interpretations, and other materials (the "Notes") prepared by or for the Recipient or its Representatives that contain, are based on, or otherwise reflect or are derived from, in whole or in part, any of the foregoing.

2.  Exclusions from Confidential Information. Except as required by applicable federal, state, or local law or regulation, the term "Confidential Information" as used in this Agreement shall not include information that:

    (a) at the time of disclosure is, or thereafter becomes, generally available to and known by the public other than as a result of, directly or indirectly, any violation of this Agreement by the Recipient or any of its Representatives;

EXHIBIT 4
000001

(b) at the time of disclosure is, or thereafter becomes, available to the Recipient on a non-confidential basis from a third-party source, provided that such third party is not and was not prohibited from disclosing such Confidential Information to the Recipient by a legal, fiduciary, or contractual obligation to the Disclosing Party;

(c) was known by or in the possession of the Recipient or its Representatives, as established by documentary evidence, before being disclosed by or on behalf of the Disclosing Party under this Agreement; or

(d) was or is independently developed by the Recipient, as established by documentary evidence, without reference to or use of, in whole or in part, any of the Disclosing Party's Confidential Information.

3. Recipient Obligations. The Recipient shall:

(a) protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

(b) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the, or otherwise in any manner to the Disclosing Party's detriment, including without limitation, to reverse engineer, disassemble, decompile, or design around the Disclosing Party's proprietary services, products, and/or confidential intellectual property;

(c) not disclose any such Confidential Information to any person or entity, except to the Recipient's Representatives who:

(i) need to know the Confidential Information to assist the Recipient, or act on its behalf, in relation to the Purpose or to exercise its rights under the Agreement;

(ii) are informed by the Recipient of the confidential nature of the Confidential Information; and

(iii) are subject to confidentiality duties or obligations to the Recipient that are no less restrictive than the terms and conditions of this Agreement; and

(d) be responsible for any breach of this Agreement caused by any of its Representatives.

4. Additional Confidentiality Obligations. Except as required by applicable federal, state, or local law or regulation, or otherwise as mutually agreed in writing by the Parties, neither Party shall itself disclose, nor permit any of its Representatives to disclose to any person:

(a) that the Confidential Information has been made available to it or its Representatives, or that it has inspected any portion of the Confidential Information;

(b) that discussions or negotiations may be, or are, underway between the Parties regarding the Confidential Information or the Purpose, including the status thereof; or



EXHIBIT 4
000002

(c) any terms, conditions, or other arrangements that are being discussed or negotiated in relation to the Confidential Information or the Purpose.

5.  **Required Disclosure.** Any Disclosure by the Recipient or its Representatives of any of the Disclosing Party's Confidential Information under applicable federal, state, or local law, regulation, or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Before making any such disclosure, the Recipient shall make commercially reasonable efforts to provide the Disclosing Party with:

(a) prompt written notice of such requirement so that the Disclosing Party may seek, at its sole cost and expense, a protective order or other remedy; and

(b) reasonable assistance, at the Disclosing Party's sole cost and expense, in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient (or its Representatives or other persons to whom such Legal Order is directed) shall disclose no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires the Recipient to disclose and, on the Disclosing Party's request, shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

6.  **Return or Destruction of Confidential Information.** At any time during or after the term of this Agreement, at the Disclosing Party's written request, the Recipient and its Representatives shall promptly return to the Disclosing Party all copies, whether in written, electronic, or other form or media, of the Disclosing Party's Confidential Information, or destroy all such copies and certify in writing to the Disclosing Party that such Confidential Information has been destroyed. In addition, the Recipient shall also destroy all copies of any Notes created by the Recipient or its Representatives and certify in writing to the Disclosing Party that such copies have been destroyed.

7.  **Term and Termination.** The term of this Agreement shall commence on the Effective Date and shall expire [2] [years] from the Effective Date, provided that either Party may terminate this Agreement at any time by providing written notice to the other Party. Notwithstanding anything to the contrary herein, each Party's rights and obligations under this Agreement shall survive any expiration or termination of this Agreement for a period of [two] years from the date of such expiration or termination, even after the return or destruction of Confidential Information by the Recipient; provided that with respect to Confidential Information that is a trade secret under the laws of any jurisdiction, such rights and obligations will survive such expiration until, if ever, such Confidential Information loses its trade secret protection other than due to an act or omission of Disclosing Party or its Representatives.

8.  **No Representations or Warranties.** Neither the Disclosing Party nor any of its Representatives make any representation or warranty, expressed or implied, as to the accuracy or completeness of the Confidential Information disclosed to the Recipient hereunder. Neither the Disclosing Party nor any of its Representatives shall be liable to the Recipient or any of its Representatives relating to or resulting from the Recipient's use of any of the Confidential Information or any errors therein or omissions therefrom.

9.  **No Transfer of Rights, Title, or Interest.** Each Party hereby retains its entire right, title, and interest, including all intellectual property rights, in and to all of its Confidential Information. Any disclosure of such Confidential Information hereunder shall not be construed as an assignment, grant,

EXHIBIT 4
000003

option, license, or other transfer of any such right, title, or interest whatsoever to the Recipient or any of its Representatives.

10. <u>No Other Obligation.</u> The Parties agree that neither Party shall be under any legal obligation of any kind whatsoever, or otherwise be obligated to enter into any business or contractual relationship, investment, or transaction, by virtue of this Agreement, except for the matters specifically agreed to herein. Either Party may at any time, at its sole discretion with or without cause, terminate discussions and negotiations with the other Party, in connection with the Purpose or otherwise.

11. <u>Remedies.</u> Each Party acknowledges and agrees that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by such Party or its Representatives. Therefore, in addition to all other remedies available at law (which neither Party waives by the exercise of any rights hereunder), the non-breaching Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Parties hereby waive any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim.

12. <u>Governing Law, Jurisdiction, and Venue.</u> This Agreement shall be governed by and construed in accordance with the internal laws of the State of Colorado without giving effect to any choice or conflict of law provision or rule (whether of the State of Colorado or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of the State of Colorado. Any legal suit, action, or proceeding arising out of or related to this Agreement or the matters contemplated hereunder shall be instituted exclusively in the federal courts of the United States or the courts of the State of Colorado in each case located in the city of Castle Rock and County of Douglas County, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding and waives any objection based on improper venue or forum non conveniens. Service of process, summons, notice, or other document by mail to such Party's address set out herein shall be effective service of process for any suit, action, or other proceeding brought in any such court.

13. <u>Notices.</u> All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by or email (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses set out on the first page of this Agreement (or to such other address that may be designated by a Party from time to time in accordance with this Section).

14. <u>Entire Agreement.</u> This Agreement constitutes the sole and entire agreement of the Parties regarding the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding such subject matter. This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto.

15. <u>Severability.</u> If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

16. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed



EXHIBIT 4
000004

copy of this Agreement delivered by email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

17. <u>Assignment.</u> Neither Party may assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other Party. Any purported assignment or delegation in violation of this Section shall be null and void. No assignment or delegation shall relieve the assigning or delegating Party of any of its obligations hereunder. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer on any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

18. <u>Waivers.</u> No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

[SIGNATURE PAGE FOLLOWS]

EXHIBIT 4
000005

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date.

CD Solutions, Inc.

By_____

Name: Joe Oltmann, CEO

Title:

[_____]

By _/s/ Max McGuire_

Name: Max McGuire

Title: Consultant

EXHIBIT 4
000006