# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

## PLAINTIFF'S MOTION TO LEAVE
## TO FILE SECOND AMENDED COMPLAINT

---

TO THE HONORABLE MAGISTRATE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), through counsel, files this Motion for Leave to File Second Amended Complaint Pursuant to F.R.C.P. 15(a)(2), stating in support thereof as follows:

### CERTIFICATE OF CONFERRAL

Counsel for Plaintiff has conferred with counsel for Defendants on the relief requested. Defendants oppose the relief requested in this Motion.

### INTRODUCTION

Dr. Coomer seeks leave to amend for two primary reasons. First, since Dr. Coomer filed his First Amended Complaint (FAC) [Dkt. 21] on June 17, 2022, Defendants have continued their defamation campaign against Dr. Coomer, and have made various additional defamatory publications which arise from the same controversy. Dr. Coomer

1

seeks leave to include these additional statements under his existing causes of action. Second, the discovery completed thus far has also brought to light new evidence regarding Defendants' willful and malicious conduct, and new evidence of the extent to which they have profited from their defamatory lies about Dr. Coomer. This newly discovered evidence, combined with what was known before suit was filed, supports a claim for exemplary damages.

## BACKGROUND

1. Dr. Coomer filed his Complaint and Jury Demand in the Denver District Court on April 4, 2022. On May 5, 2022, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332 and 1441(b). [Dkt. 1]. Upon removal, the case was assigned to Magistrate Judge S. Kato Crews [Dkt. 7].

2. On May 27, 2022, Defendants filed a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) [Dkt. 18], as well as their Memorandum in Support thereof [Dkt. 19].

3. Dr. Coomer filed his FAC on June 17, 2022 [Dkt. 21] to account for various additional defamatory statements that Defendants published after being served with the original complaint.

4. On July 1, 2022, this Court issued an Order striking Defendants' Motion to Dismiss and Memorandum in support thereof [Dkt. 30] and granting Defendants' leave to file an amended motion to dismiss [Dkt. 30].

5. On July 14, 2022, Defendants filed their Motion to Dismiss Plaintiff's FAC on [Dkt. 34], then a corrected Motion to Dismiss on July 21, 2022 [Dkt. 38]. Dr. Coomer filed his Response to Defendants' Motion to Dismiss on August 11, 2022 [Dkt. 45].

6. Defendants filed a partial Motion to Stay Discovery pending the Court's resolution of their Motion to Dismiss on September 28, 2022 [Dkt. 57]. The Court denied that motion on November 15, 2022 [Dkt. 76], and the parties have been engaged in general discovery since that time. The Court subsequently denied Defendants' Motion to Dismiss on March 15, 2023 [Dkt. 119].

7. Since the filing of Plaintiff's FAC, Defendants have persisted in publishing additional defamatory statements about Dr. Coomer. For example, on September 7, 2022, Defendant FrankSpeech conducted and published an interview with former Mesa County Clerk Tina Peters, where Peters defamed Dr. Coomer at length, again republishing the false allegations at issue in this dispute. In another instance, Defendants Lindell and MyPillow, Inc. published another lengthy interview on FrankSpeech on March 10, 2023, just days after the F.R.C.P. 30(b)(6) depositions of both the corporate representatives of Defendants MyPillow and FrankSpeech. In addition to attacking both the Court and Dr. Coomer's counsel, Defendants again accused Dr. Coomer of criminal conduct.

8. Dr. Coomer described the death threats that had been directed at him as a result of the false claims that he somehow rigged the 2020 presidential election in both his original complaint and FAC. As a result, these additional publications alone are sufficient to allow the jury to consider a claim for exemplary damages. The additional evidence supporting a claim for exemplary damages that has come to light through discovery is far more substantial.

9. For example, Defendant Lindell testified that his first publication accusing Dr. Coomer of treason was in direct retaliation for Dr. Coomer's settlement with

3

Newsmax in related proceeding *Coomer v. Donald J. Trump for President, Inc. et. al.*[1] Lindell directly tied his groundless election fraud campaign to waning sales of MyPillow products, and asserted that he attacked Dr. Coomer on the basis of his belief that Dr. Coomer was personally responsible for MyPillow's marketing problems. Lindell also testified that he never even read Dr. Coomer's original or FAC until the night before MyPillow's March 8, 2023 30(b)(6) deposition.[2] This is especially remarkable given that Lindell persisted in publishing statements directly accusing Dr. Coomer of criminal conduct in the interim without ever having attempted to familiarize himself with any of the facts relevant to this dispute.

10. Defendants have also made clear that they do not now nor have they ever had any evidence whatsoever to support their published claims that Dr. Coomer was involved in criminal conduct related to the 2020 election. This supports a finding of willful and wanton conduct in their ongoing publications, but it is also evidence in support of the argument that their campaign against Dr. Coomer is driven by a deep, personal malice.[3] Indeed, during the Rule 30(b)(6) depositions of both MyPillow and FrankSpeech, their corporate representative Mike Lindell repeatedly shouted at Dr. Coomer's counsel, accused them of being criminals, pounded on the table, swore,

---

[1] **Exhibit 3**, Deposition Transcript of MyPillow, Inc., Mar. 8, 2023, at 102:8-103:14.

[2] **Exhibit 4**, Deposition Transcript of FrankSpeech, LLC, Mar. 9, 2023, at 140:2-13.

[3] Dr. Coomer refers here to "malice" in the traditional sense and as employed in C.R.S. § 13-21-102(1)(a), as opposed to the legal construct of "actual malice" relevant to Dr. Coomer's claims for defamation. Ill-will, however, is itself a factor relevant to finding of "actual malice" and is, therefore, doubly relevant here.

stormed out of the room, and railed against Dr. Coomer at length.[4] Lindell's fury at Dr. Coomer in connection with his understanding of a settlement with Newsmax (and based on an apparent conversation between Lindell and Newsmax's CEO, Chris Ruddy[5]) is palpable, and his subsequent defamation campaign against Dr. Coomer is the result of that malice.

11. Discovery has also revealed that Lindell, through his MyPillow email address, received an email with spreadsheets attached[6] from Robert Herring, CEO of One America News Network, just days after being sued by Dr. Coomer. Lindell responded to the email hours later, confirming receipt.[7] The spreadsheet contains a variety of personal identifying information of nearly a hundred different people from Dr. Coomer's different social circles, including his family members. One tab references "Info from Joey Camp" the same individual discussed in Plaintiff's Objections to CD Solutions, Inc.'s confidentiality designations [Dkt. 113], and corresponding Reply [Dkt. 121].

12. The spreadsheet also includes a tab labeled "Passwords" that includes the email address and passwords for at least 197 different employees of Smartmatic, Inc., and Election Systems and Software, LLC (ES&S). Like Dominion, these companies provided election related services across the United States and around the world. The "Passwords"

---

[4] The examples of this conduct are too numerous to list here and would require the attachment of hundreds of pages of deposition transcript. Dr. Coomer will create a video compilation of the conduct described for the Court's reference upon receipt of the deposition video footage.

[5] Lindell raised this issue literally dozens of times during the 30(b)(6) depositions of MyPillow, Inc. and FrankSpeech, LLC. A comprehensive listing of those instances is not practical, but the first reference to this matter is attached hereto as **Exhibit 3**, Deposition of MyPillow, Inc., March 8, 2023, at 11:3-12:11.

[6] The native Excel spreadsheet disclosed as LINDELL 000730 will be provided to the Court on a separate flashdrive.

[7] **Exhibit 8**.

5

tab includes a note which reads, "N.B. I have not tried these yet – search database in first tab and try passwords with other email accounts in case they use the same password." The unlawful intent implied by this compilation of information, and the corresponding note described above, is self-evident.  Following questioning about the spreadsheet during the F.R.C.P. 30(b)(6) deposition of MyPillow, Lindell angrily stated to Plaintiff's counsel, "You're an evil, evil man.  There, that's in the record, very evil."[8]  He went on to promise retribution before storming out of the room, stating, "You're an ambulance-chasing lawyer, evil person, you and your Eric Coomer buddy, so you will be sued.  Don't worry.  And you will be sued big because I won't back down."[9]

13. Discovery has also revealed the extent to which Defendants profited from their malicious publications, including the Cyber Symposium in South Dakota.  That event alone, where Dr. Coomer was repeatedly defamed to an international audience, resulted in millions of dollars of sales for MyPillow.  These ill-gotten gains further support a claim for exemplary damages.

14. Finally, various other facts have surfaced during discovery which serve to place the allegations at issue in this dispute in their appropriate context.  For example, the significant financial and personal ties between Lindell and Joe Oltmann are directly relevant to several of the actual malice factors that Dr. Coomer must satisfy in order to prevail on his claims.

---

[8] **Exhibit 9**, Deposition Transcript of MyPillow, Inc., Mar. 8, 2023, at 392:22-23.
[9] *Id.* at 393:2-6.

15. For all of these reasons, Dr. Coomer respectfully seeks leave to file his Second Amended Complaint (SAC), attached hereto as **Exhibit 1**. A redline copy of Plaintiff's proposed Second Amended Complaint that identifies the proposed amendments is attached as **Exhibit 2**.

## LEGAL STANDARD

16. Whether to grant leave to file an amended complaint is within the discretion of the trial Court. *First City Bank, N.A., v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1132 (10th Cir. 1987) (*citing Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. [Unless there is a] reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

### A. *Amendment to account for recent defamatory publications is warranted.*

17. Dr. Coomer proposes to amend his Complaint to account for various defamatory publications by Defendants that have followed the filing of Plaintiff's FAC. Specifically, Dr. Coomer seeks leave to add allegations pertaining to Lindell's July 13, 2022 appearance on Conservative Daily (Exhibit 1 at ¶ 116), the September 7, 2022 FrankSpeech interview with Tina Peters (Exhibit 1 at ¶¶ 118-122), Lindell's September 15,

7

2022 appearance on Conservative Daily (Exhibit 1 at ¶¶ 124-125), and the March 10, 2023 FrankSpeech interview with Lindell acting individually and on behalf of MyPillow, Inc. (Exhibit 1 at ¶¶ 127-131).

18. These publications restate or otherwise reaffirm the same defamatory publications already at issue in this dispute and should be understood as arising from the same case and controversy. Indeed, the substance of several of these publications has been brought to this Court's attention in various filings since the time of Plaintiff's FAC. *See e.g.*, Dkts. 53, 80, 97, 121. These publications provide further support for Dr. Coomer's existing causes of action and will require no additional unique discovery.

### B. *Amendment to add claims for exemplary damages is warranted.*

19. A jury may award exemplary damages in a civil action when the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct. C.R.S. § 13-21-102(1)(a). As used in this section "willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff. C.R.S. § 13-21-102(1)(b). The Court may increase an award of exemplary damages if it is shown that the defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case, or when the defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages

of the plaintiff when the defendant knew or should have known such action would produce aggravation. C.R.S. § 13-21-102(3)(a-b).

20. Here, all of these factors are satisfied. Defendants have persisted in publishing defamatory statements against Dr. Coomer since the filing of his original and FAC. In fact, the frequency and tenor of their defamatory publications were both significantly aggravated following the initiation of this action. The willful and wanton nature of these publications is evident in the fact that Defendants still have no evidence whatsoever to support any of their allegations against Dr. Coomer. Remarkably, Defendants even admitted to never even reading Plaintiff's FAC until the night before the F.R.C.P. 30(b)(6) deposition of Defendant MyPillow. That Defendants would persist in defaming Dr. Coomer without ever having read the defamation lawsuit filed against them is reckless on its face. This conduct is all the more reckless when one considers that Dr. Coomer identified death threats that had been directed at him as a result of the defamatory publications, and that those threats persist to this day.[10] Defendants' conduct demonstrates their complete lack of concern for the damages suffered by Dr. Coomer, including threats to his life and safety. For all of these reasons, Dr. Coomer's claim for exemplary damages is warranted here.

---

[10] *See, e.g.*, Josh Dunlap ULTRA-MAGA, @JDunlap, TWITTER, Mar. 27, 2023, https://twitter.com/jdunlap1974/status/1640301611418361858?s=46&t=9dcrhJnPrYa6GONtGaay8w. This tweet was the top hit in a search for "Eric Coomer" on March 27, 2023. The tweet is premised entirely on the lies at issue in this dispute. The comments section includes numerous calls for Plaintiff's execution. As of this writing, this lie has been retweeted 2,060 times, and quote tweeted 66 times. This sort of content, and the resulting threats to Plaintiff, remain an almost daily occurrence. **Exhibit 5** is the cited tweet from @junlap, along with a sample of the replies thereto.

9

21. A claim for exemplary damages is further warranted in light of the substantial profits that Defendants have made through their defamation campaign against Plaintiff. As one example, Defendants' "Cyber Symposium" in South Dakota, where Dr. Coomer was defamed onstage at length, yielded at least $2,274,949 ($1,832,500 utilizing promo code "Frank33"[11] and $442,449 for promo code "Audit"[12]) in profits for defendants. This sum exceeds Colorado's non-economic damages cap, assuming that this cap is applicable in this case. *See* C.R.S. § 13-21-102.5 (The statute caps non-economic damages at $250,000, or $500,000 upon a showing of clear and convincing evidence. Adjusted for inflation, these amounts are roughly $613,760 and $1,227,530, respectively). As a result, Defendants' liability in this case could be substantially mitigated by virtue of the conduct giving rise to the dispute in the first place. In other words, Defendants stand to profit substantially from the trauma they have inflicted on Dr. Coomer, even if held liable for non-economic damages to the fullest extent allowed under the law. This is plainly unjust.

### C. *These proposed amendments are timely, asserted in good faith, and without prejudice to Defendants.*

22. The Court ruled on Defendants' Motion to Dismiss just two weeks ago, and the overwhelming majority of the proposed amendments arise from information uncovered in discovery very recently. As discussed above, every proposed amendment is raised in good faith. Dr. Coomer does not anticipate that the proposed amendments

---

[11] *See* **Exhibit 6**, MyPillow revenue totals for promo code "Frank33" between the dates of August 2 and 15, 2021.

[12] *See* **Exhibit 7**, MyPillow revenue totals for promo code "Audit" between August 12 13, 2021.

would give rise to any unique or additional discovery in this matter. Discovery does not close until July 7, 2023, and the final pre-trial conference is not scheduled until October 2, 2023. As a result, no party will be prejudiced by the proposed amendments.

## CONCLUSION

23. For all of the reasons stated herein, Plaintiff Eric Coomer, Ph.D. moves for an order granting leave to file his Second Amended Complaint.

Respectfully submitted this 6th day of April 2023.

*/s/ Charles J. Cain*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
David E. Jennings, No. 54643
djennings@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**