# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO LEAVE TO FILE SECOND AMENDED COMPLAINT

---

TO THE HONORABLE MAGISTRATE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer), through counsel, files this Reply in Support of Motion for Leave to File Second Amended Complaint Pursuant to F.R.C.P. 15(a)(2), stating in support thereof as follows:

## I.    INTRODUCTION

1. Dr. Coomer's Motion for Leave to File Second Amended Complaint (Plaintiff's Motion) [Dkt. 127] is narrowly drafted and will not result in any significant disruption to this proceeding or prejudice to Defendants. Dr. Coomer seeks merely to (1) update his existing claims with additional defamatory statements made by Defendants since the filing of his First Amended Complaint, (2) place his existing allegations in their proper context in light of evidence that has surfaced during discovery, and (3) seek exemplary damages on the basis of facts that have become apparent since the filing of his

1

lawsuit. Defendants' arguments in opposition to Plaintiff's Motion are without merit, and Plaintiff's Motion should be granted.

## II. ARGUMENT

### A. *Plaintiff has shown good cause to amend under Rule 16.*

2. Defendants assert that Plaintiff's Motion should be denied because Plaintiff has not shown good cause to amend his pleading after the deadline for amendment of pleadings has passed. They premise this argument primarily on the passage of time between various recent defamatory statements and Plaintiff's Motion. This argument fails for multiple reasons.

3. To show good cause under Rule 16(b)(4), Plaintiff "must provide an adequate explanation for any delay" in meeting the Scheduling Order's deadline. *Carthon v. Balfour Senior Care, LLC*, No. 21-CV-00007-MEH, 2021 WL 2954685, at *1 (D. Colo. June 16, 2021) (*citing Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). "Rule 16 erects a more stringent standard [than Rule 15(a)], requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). However, rigid adherence to the Scheduling Order is not advisable. *SIL-FLO, Inc., v. SFHC, Inc.*, 917 F.2d 1507, 1518-19 (10th Cir. 1990). "Rule 16's good cause requirement may be satisfied . . . if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

4. Here, there has been no undue delay. The proposed amendments turn in significant part on information learned just prior to or during the 30(b)(6) depositions of Defendants MyPillow and FrankSpeech. These depositions were conducted March 8 and 9, 2023, respectively, just weeks before Plaintiff's Motion was filed. This newly discovered information includes Lindell's admission that he never even read Plaintiff's Complaint until the night before the MyPillow deposition, despite having repeatedly defamed Plaintiff in the 11-month interim. It also includes Plaintiff's discovery of potentially illicit communications between Lindell and Robert Herring, CEO of One America News Network, wherein the two shared personal identifying information of Plaintiff's family members, friends, and co-workers, as well as hacked election worker email passwords. And it includes reference to Lindell's post-deposition tirade against both Plaintiff and this Court, wherein he angrily insisted he stands by his accusations that Plaintiff is a criminal.

5. As with their arguments with respect to F.R.C.P. 15, discussed below, Defendants do not acknowledge any of these significant recent developments, preferring to instead focus on additional defamatory statements that were made several months ago. Plaintiff addresses these concerns more directly below.

### B. *Amendment is proper under Rule 15.*

6. Plaintiff's Motion should also be granted under Rule 15. Plaintiff's Motion is timely, raises significant issues for the Court's attention, and does not unduly prejudice Defendants.

**(i) Plaintiff's Motion is timely.**

7. Defendants are primarily concerned with statements incorporated into Plaintiff's Second Amended Complaint from July 13, 2022, September 7, 2022, and September 15, 2022. They make no argument with respect to the March 10 statements, at least with respect to timeliness.

8. While it is true that several months have passed between the filing of Plaintiff's Motion and those earlier statements, the standard Defendants implicitly propose is unreasonable in this case. After all, if Plaintiff had moved to amend immediately after every relevant post-Complaint publication by Defendants, then he would be requesting leave to file his Eighth Amended Complaint, not his Second. The motions practice necessary to keep up with Defendants' relentless campaign against Plaintiff would have derailed discovery and bogged down the Court with duplicative and repetitive pleadings. This would have been especially disruptive in light of Defendants' then still pending Motion to Dismiss. Such a standard would pose a similar risk moving forward given that Defendants seem unwilling or unable to stop their public attacks on Plaintiff.

9. Defendants cannot contend that Plaintiff has not been diligent in litigating this case. Plaintiff has taken numerous depositions across the country, issued multiple written discovery requests, and filed several lengthy motions involving dozens of exhibits and complex questions of law, all while simultaneously litigating four other related cases against at least twenty other defendants. The claims at issue here are a matter of life and

4

death for Plaintiff, and he has consistently treated this proceeding with the urgency it requires.

10. Defendants' argument is further flawed in what it necessarily implies, namely that if the amendment deadline in a defamation case has passed, then the defendant has secured carte blanche to defame with impunity moving forward. This cannot be the law. In reality, and as discussed more below, a defendant's persistence in the conduct that gave rise to a lawsuit in the first place gives rise to exemplary damages *in that case* as a matter of black letter law. C.R.S. § 13-21-102(3)(a). The statute of limitations has not run on any of the statements described in the SAC, so Defendants' position necessarily implies that Plaintiff's only remedy for this conduct is to file a separate lawsuit. That lawsuit would inevitably arise from the same case and controversy, thus requiring consolidation with this proceeding anyway. *See generally*, F.R.C.P. 42.

11. If Defendants do not want to be held liable for their ceaseless lies about American elections and election workers, then a better approach would be to stop recklessly and constantly publishing lies about elections and election workers. This is especially true when they know that they have no evidence to support these lies, and when they know that those lies have the potential to inspire violence.

**(ii)  Plaintiff's Motion is not futile.**

12. Defendants assert that Plaintiff's Motion would be futile, arguing that a few paragraphs do not rise, in their view, to being actionable as individual causes of action. They assert that such additional allegations would not survive a motion to dismiss. But the Court has already denied Defendants' Motion to Dismiss. Additional allegations

supporting and providing additional context to those existing causes of action cannot reasonably be expected to result in dismissal.

13. Furthermore, the additional 42 paragraphs in the SAC are not intended to represent 42 new causes of action, as Defendants' futility argument seems to imply. Instead, these allegations incorporate newly discovered evidence that is relevant to Plaintiff's claims and Defendants' anticipated defenses. These additional allegations all speak to the actual malice standard that the Court has recently ordered Plaintiff must meet in this case.

14. Actual malice "requires at a minimum that the statements were made with reckless disregard for the truth." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *Diversified Mgmt., Inc. v. Denver Post, Inc.,* 653 P.2d 1103, 1110-11 (Colo. 1982). Reckless disregard "cannot be fully encompassed in one infallible definition" and is not limited to specific bases. *See St. Amant v. Thompson*, 390 U.S. 727, 730 (1968). Instead, actual malice can be inferred from objective circumstantial evidence, which can override a defendant's protestations of good faith. *See Brown v. Petrolite Corp.*, 965 F.2d 38, 46-47 (5th Cir. 1992). Circumstantial evidence of actual malice can include when a story is fabricated by a defendant or is the product of his imagination; when a defendant relies on anonymous sources; when a defendant has reason to know that a source is unreliable; when the allegations made are so inherently improbable that only a reckless person would publish them; when a defendant intentionally avoids the truth; when a defendant's allegations conform to a preconceived storyline; and when a defendant has an incentive or motive to make the defamatory statements. *See, e.g., Curtis*

6

*Publ'g Co.*, 388 U.S. at 157-58; *St. Amant*, 390 U.S. at 732. The proposed amendments to Plaintiff's Complaint all speak to one or more of these factors.

15.     For example, allegations related to the significant personal and financial ties between Defendants and Joe Oltmann speak to various potential bases for a finding of actual malice, such as willful avoidance of the truth, reliance on anonymous sources, reliance on a source known to be unreliable, and Defendants' preconceived narratives about election fraud. Similarly, allegations related to the millions of dollars in sales generated by MyPillow promo codes utilized during some of the defamatory publications at issue here speak directly to Defendants' profit motive, another actual malice standard. As a result, the proposed amendments to Plaintiff's Complaint are not futile.

### (iii)     Plaintiff's Motion does not unduly prejudice Defendants.

16.     Defendants first argue that they will be prejudiced by the proposed amendments because several depositions have already occurred, and they will not be able to question those prior deponents regarding the new allegations. They refer specifically to the depositions of FrankSpeech, MyPillow, and Joe Oltmann. Defendants did not even question any of these witnesses with respect to any of the numerous allegations that were at issue at the time of their depositions, so it is not clear how or why these new allegations would somehow require questioning when Defendants determined those other statements did not. In any case, numerous depositions are still pending and Defendants will have an opportunity to address these matters when those depositions occur. Outstanding depositions include Mike Lindell, Brannon Howse, Chris Ruddy, Kurt Olsen, Jared Finkell, Dominion Voting Systems, all of Plaintiff's expert witnesses, any rebuttal

7

experts, and potentially Tina Peters. These are many of the most significant witnesses in this case, and Defendants can address any questions related to Plaintiff's Second Amended Complaint during those depositions.

17. With respect to Tina Peters, Defendants make the puzzling assertion that "until Plaintiff brought this motion, Tina Peters' purported involvement in this case significantly differed from what Plaintiff now claims." While it is true that FrankSpeech had not published Peters defaming Dr. Coomer at the time of Plaintiff's First Amended Complaint, it cannot be said that these new allegations are somehow a surprise. Concerns about Peters' involvement in this case have been repeatedly addressed by the parties and the Court, and Plaintiff's Motion to Compel against Peters remains pending. If the Court orders Peters to sit for a second deposition, Defendants will have an opportunity to address their concerns at that time.

18. Defendants' alleged concerns about Plaintiff's damages calculations are similarly misplaced, and moot as of this writing. Plaintiff disclosed his expert reports on Friday, May 4, and Defendants still have time to conduct depositions of those individuals if they so choose.

### C. *Exemplary damages are appropriate.*

19. Plaintiff filed his case in state court, and Defendants then removed it to federal court. As Defendants correctly note, Colorado law does not allow a plaintiff to assert a claim for exemplary damages at the time a suit is filed. C.R.S. § 13-21-102(15)(a).

20. The standards for asserting a claim for exemplary damages are thoroughly laid out in both Plaintiff's Motion and Defendants' Response, and Plaintiff will not belabor

8

the standards with redundant pleading here. There can be no dispute, however, that the facts here plainly warrant such an amendment.

21. The exemplary damages statute speaks directly to the exact circumstances at issue here. Exemplary damages are appropriate where a defendant's conduct is attended by circumstances of willful and wanton conduct. "Willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly the plaintiff. C.R.S. § 13-21-101(1)(b). The Court may increase an award of exemplary damages if it is shown that the defendant has continued the behavior against the plaintiff or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner during the pendency of the case. C.R.S. § 13-21-101(3)(a-b).

22. It is difficult to imagine a fact pattern that more cleanly meets this standard. Plaintiff sued Defendants for defamation and intentional infliction of emotional distress, laying out in painstaking detail the means by which Defendants' lies had given rise to credible death threats to Plaintiff. Defendants responded to that lawsuit by accelerating and amplifying their defamation campaign, tripling down on the lies about Plaintiff without possessing any evidence whatsoever to support them. And, Defendants did all of that for eleven months *without ever even reading the complaint against them*. If this is not willful and wanton conduct, then nothing is.

23. To the extent the Court is persuaded by Defendants' argument that these allegations must also meet the actual malice standard applicable to defamation claims,

9

that standard is easily met. The conduct described above satisfies multiple standards relevant to identify actual malice, including but not limited to willful avoidance of the truth, failure to investigate, disregard of reliable sources, conformance to a pre-conceived narrative, and ill will. That Defendants engaged in this conduct as part of a vindictive personal vendetta against Dr. Coomer for settling his lawsuit with Newsmax is all the more damning. Defendants' conduct here is outrageous, and their total lack of regard for the possibility that their lies will get Plaintiff killed could not be more transparent.

24. Defendants erroneously assert that Plaintiff "primarily points to" the April 8, 2022, email from Robert Herring to Mike Lindell as the basis for their claim for exemplary damages. This is false. That correspondence is certainly relevant to Lindell's willingness to work with those who appear to be engaged in criminal conduct in an effort to identify anything at all that may give him leverage against Plaintiff, but Plaintiff's claim for exemplary damages could easily meet the standard discussed above without reference to that communication.

### III.   CONCLUSION

25. For all of the reasons stated herein, Plaintiff Eric Coomer, Ph.D. moves for an order granting leave to file his Second Amended Complaint.

### IV.   ORAL ARGUMENT

26. Given the foregoing, Plaintiff does not believe oral argument is necessary for the Court to determine that Plaintiff's Motion should be granted. Should the Court grant Defendants' request, however, Plaintiff will be represented by undersigned counsel, Brad Kloewer, who has six years of experience as an attorney.

Respectfully submitted this 11th day of May 2023.

      */s/ Bradley A. Kloewer*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
David E. Jennings, No. 54643
djennings@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**