# EXHIBIT 4

```
 1            UNITED STATES DISTRICT COURT.
 2          FOR THE DISTRICT OF COLORADO
 3
 4         Civil Action No.: 1:22-cv-01129-WJM
 5   -------------------------------
     Eric Coomer, Ph.D.,
 6
 7            Plaintiff,
 8       vs.
 9   Michael J. Lindell, Frankspeech LLC, and My
     Pillow, Inc.,
10
11            Defendants.
     -----------------------------------
12
                 VIDEOTAPED DEPOSITION OF
13                     VOLUME II
                   MICHAEL J. LINDELL
14    Designated Representative of My Pillow, Inc.
                 Taken on MARCH 9, 2023
15               Commencing at 9:30 A.M.
16
17
18
19
20
21
22
23
24
25   REPORTED BY:  Mari Skalicky, RMR, CRR


                                          Page 371
```

```
 1            not a My Pillow employee or myself.
 2    Q.   I'm going to mark what you just handed
 3         over here --
 4                  (Deposition Exhibit No. 76 was
 5          introduced.)
 6    BY MR. CAIN:
 7    Q.   -- as Exhibit 76.  Is that the same one
 8         you're looking at?
 9    A.   Yeah, apparently you guys already had it
10         so that was a big lie you told me, but
11         that's neither here nor there.
12    Q.   I didn't lie to you.
13    A.   You already had to know who it was from.
14         I didn't know that.
15    Q.   All right.  So --
16    A.   So can you explain yourself on that?
17         That's kind of crazy.  Why would you say
18         you didn't know?
19    Q.   Well, if you look, this is exhibit, or
20         Bates 790, and the spreadsheet was Bates
21         to 730 so --
22    A.   Speak up.  I can't hear you.  I can't
23         hear.  I have hearing aids.  I need to
24         hear you.
25    Q.   I recall.
```

Page 377

```
 1              I don't need to explain myself
 2         actually, and I didn't lie to you
 3         yesterday.  Explain then what you did to
 4         find out the information you're
 5         providing --
 6    A.   I went to the -- my attorneys and said
 7         where did this come from that you guys --
 8         where did you find this search, and
 9         because it didn't come from my employees
10         or myself, I said in there.  And he said
11         they already knew who it came from, and
12         which was you, and he pulled it out and it
13         came from a Robert Herring.  And it looks
14         like a Charles Herring and Robert Herring
15         was copied on it, I guess.
16    Q.   And you know who Charles Herring is, don't
17         you?
18    A.   They both are with OEN news.
19    Q.   Right. They're the owners?
20    A.   What?
21    Q.   They're the owners?
22    A.   Yeah.
23    Q.   Right?
24    A.   Yeah.
25    Q.   Are you friends with them?
```

Page 378

```
 1      A.   No.  I know them.

 2      Q.   You know them.  Do you run ads or did you

 3           run ads on OEN?

 4      A.   I don't know.  My ad buyers do that.  I

 5           assume we did.  We run ads on every

 6           station in the country.  There is no

 7           exception.  I would assume they're not an

 8           exception either.

 9      Q.   Describe your relationship with Charles or

10           Robert Herring.

11      A.   I met them when I went on their -- a show

12           there once, and I've only been on their

13           show -- well, I've been, I guess a couple

14           different times back with My Pillow, just

15           like I do with every other host.  But I

16           met the owner.  I met Robert, I don't

17           know, couple three years ago maybe, two

18           years ago.

19                And then I did a show on there when I

20            did Absolute Proof.  I was the host and I

21            met him and Charles, his son.

22      Q.   So I'm looking at the middle of Exhibit

23           76, and this is dated April 8 of 2022,

24           right?

25      A.   (Nods head up and down.)
```

Page 379

```
 1    Q.   Is that a yes?

 2    A.   Yes.

 3    Q.   And it appears Robert Herring is saying to

 4         you in the email chain, "Let me know if

 5         this comes through, okay," do you see

 6         that?

 7    A.   Yeah.

 8    Q.   Do you remember receiving that?

 9    A.   No.

10    Q.   Do you remember responding?

11    A.   No.

12    Q.   If you look above the chain --

13    A.   No, I see I responded, but I don't

14         remember responding.

15    Q.   But you're not disputing that you

16         responded?

17    A.   No, no, no.  It says that's me responding.

18              (Court reporter interruption.)

19    A.   I want to say something, though, that

20         could have been an assistant responding.

21         I do want to make that note.  I don't

22         usually use exclamation points, so my

23         thing, I probably didn't respond

24         personally because I don't use exclamation

25         points.
```

Page 380

```
 1      BY MR. CAIN:

 2      Q.   But someone at My Pillow responded for

 3           you?

 4      A.   If there was an assistant with me, I said

 5           just tell them it came through.

 6      Q.   But My Pillow is not disputing the fact

 7           that it received this information?

 8      A.   No.  My Pillow did not receive it.  My

 9           personal email received it,

10           ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮              This is where

11           you're wrong.  I use ▮▮▮▮▮▮▮▮▮▮▮▮▮            for

12           every single -- every single platform I

13           own.  I don't have separate emails.  I

14           don't use them.  I use 100 percent

15           ▮▮▮▮▮▮▮▮▮▮▮▮▮.  Everyone knows that in the

16           whole world.

17      Q.   I don't understand the distinction you're

18           making.

19      A.   Because you said My Pillow got this.  My

20           Pillow -- this wasn't sent to My Pillow.

21           It was sent to Mike Lindell as an

22           individual.  That's my email address, just

23           like you might have whatever at Yahoo.com,

24           I have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  I don't go out

25           and get a Gmail email, okay.
```

Page 381

```
 1    Q.   How do I know what hat you're wearing if
 2         you're using your My Pillow --
 3    A.   I don't put my hats on.
 4    Q.   Let me finish, sir.  We've got a new court
 5         reporter.  Her name is Mari.  She's a
 6         stickler for us not interrupting each
 7         other.  I respect that.  I think you need
 8         to respect that today, okay, please, for
 9         her, not for me, for her.  Okay.  All
10         right.  I'll take that as a yes.
11                You say it wasn't sent to My Pillow
12          but you agree it was sent to
13         ████████████████████, right?
14    A.   Yes.  It's the only email I use.  I don't
15         show other people what hats I wear.  If I
16         have another company -- I have at least
17         nine different companies, I use that for
18         every one.  It's my personal email.
19    Q.   You received it at your ████████████████
20         email --
21    A.   Correct.
22    Q.   -- address?
23                (Court reporter interruption.)
24    BY MR. CAIN:
25    Q.   So at least as of -- and we won't get
```

Page 382

```
 1              stuck on semantics with this one -- but at
 2              least as of April 8th, 2022, you were in
 3              possession of the spreadsheet we discussed
 4              yesterday, Exhibit 73, correct?
 5      A.     I've never seen that spreadsheet until
 6              yesterday.  I assume if this was my --
 7              sent to my email, it was there.  The
 8              lawyers got it when you did your thing, so
 9              yes.
10      Q.     And it appears to me, just reading through
11              this, with Robert saying "Let me know if
12              this comes through, okay," that it was
13              preceded by a conversation you had with
14              Robert Herring about this information; is
15              that correct?
16      A.     No.  I have no idea.  I would say no.
17      Q.     So your sworn testimony is you did not
18              discuss this with Robert Herring prior to
19              it being sent to you?
20      A.     No.  No.  I have no idea what this
21              document is.  I've never seen it before in
22              my life until yesterday.  100 percent,
23              never seen it before in my life.
24      Q.     Fine.  And it's also your testimony,
25              though, you're not disputing that it was
```

Page 383

```
1
      STATE OF MINNESOTA )
2                        :      CERTIFICATE
      COUNTY OF HENNEPIN )
3
           I hereby certify that I reported the
4     deposition of MICHAEL J. LINDELL on
      MARCH 9, 2023 in Minneapolis, Minnesota, and
5     that the witness was by me first duly sworn to
      tell the whole truth;
6
           That the testimony was transcribed under
7     my direction and is a true record of witness
      testimony;
8
           That the cost of the original has been
9     charged to the party who noticed the
      deposition, and that all parties who ordered
10    copies have been charged at the same rate for
      such copies;
11
           That I am not a relative or employee or
12    attorney or counsel of any of the parties or a
      relative or employee of such attorney or
13    counsel;
14         That I am not financially interested in
      the action and have no contract with the
15    parties, attorneys, or persons with an
      interest in the action that affects or has a
16    substantial tendency to affect my
      impartiality;
17
           That the right to read and sign the
18    deposition was reserved.
19         WITNESS MY HAND AND SEAL this
      23RD DAY OF MARCH 2023.
20
21
22
           Mari A. Skalicky
23         Registered Merit Reporter
           Certified Realtime Reporter
24
25
```

Page 395