**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

**RE-FILING OF
PLAINTIFF'S REPLY TO THIRD-PARTY CD SOLUTIONS INC.'S
RESPONSE TO PLAINTIFF'S OBJECTIONS TO CONFIDENTIALITY
DESIGNATIONS**

---

TO THE HONORABLE JUDGE OF SAID COURT:

    Plaintiff Eric Coomer, Ph.D., through counsel, pursuant to this Court's June 2, 2023 Minute Order [Dkt. 148], re-files this Reply to Third-Party CD Solutions, Inc.'s (CDS) Response to Plaintiff's Objections to Third-Party CDS' Confidentiality Designations [Dkt. 118] as follows:

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

**PLAINTIFF'S REPLY TO THIRD-PARTY CD SOLUTIONS INC.'S
RESPONSE TO PLAINTIFF'S OBJECTIONS TO CONFIDENTIALITY
DESIGNATIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Eric Coomer, Ph.D., through counsel, files this Reply to Third-Party CD Solutions, Inc.'s (CDS) Response to Plaintiff's Objections to Third-Party CDS' Confidentiality Designations [Dkt. 118] as follows:

### INTRODUCTION

1.  In its Response, CDS argues that it had a good faith basis for its confidentiality designations in a general sense but then fails to address their designations with any specificity. CDS fails to acknowledge the *Porter* factors described in Plaintiff's Objections [Dkt. 113] or argue that its designations somehow fall under those protections. CDS even fails to comply with the requirements of D.C.COLO.LCivR 7.2, as expressly required by paragraph 14 of the Protective Order [Dkt. 77].

2.  Moreover, at no point does CDS explain how or why the 2015 NDA with a separate entity, PIN Business Network (PIN), serves to insulate documents or testimony

1

relevant to CDS, which was operating under another entity, Shuffling Madness Media, Inc. until McGuire's updated 2021 contract and corresponding NDA. Plaintiff has not sought documents or testimony from PIN, and CDS' brief acknowledgement of the dispute on this issue fails to address how McGuire's agreement to protect confidential information belonging to PIN—*not Shuffling Madness Media*—is at all relevant here. *See generally* Response, at p. 5.

3. CDS then takes issue with Plaintiff's conferral on this matter and argues that "Plaintiff has failed to provide the Court with the reason it needs the confidential documents to become public," a "failure" that CDS describes as "crippling." Response, at p. 2. Plaintiff's conferral is addressed more specifically below, but the need for transparency of these matters is self-evident. The claims at issue in this case, and the stunning nature of the documents and testimony at issue here, are quite literally a matter of life and death. To this very day, lies about Dr. Coomer and corresponding threats remain a daily occurrence.[1] Many of these lies stem from Oltmann's false story about Plaintiff which have been repeatedly amplified and endorsed by Defendants here. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[2] is information which, if publicly known, would have a profound impact on the false public narrative that serves to fuel many of these threats.

---

[1] *See, e.g.*, **Exhibit 1**, linuxhippie (Bring Back The Duel) @linuxhippie, TWITTER, March 15, 2023, 12:27 PM. This post was at the top of Twitter search results on the day that undersigned counsel drafted this reply, March 16, 2023. On any given day, a search of Plaintiff's name on social media platforms such as Twitter, Telegram, Truth Social, and Gab, will produce photos of Dr. Coomer alongside false allegations that he rigged the election. These posts frequently include personal identifying information, as well as calls for Plaintiff's execution.

[2] *See* **Exhibit 6**, Deposition Transcript of Max McGuire, Nov. 17, 2022, at 151:11-24; 219:1-7.

2

As importantly, the truth behind one of the foundational myths of the Dominion Voting Systems conspiracy theory is fundamentally and preeminently in the public interest.

4.      Plaintiff's concerns for his own safety are well-founded.  Oltmann is an unstable extremist who is closely associated with a well-armed militia group.[3]  Just this week, Oltmann piled on Defendant Lindell's lengthy personal attacks against Judge Wang,[4] referring to her as a "demon" and a "communist" while issuing yet another thinly-veiled promise of violence and retribution.[5]  Days prior, Oltmann published another demand for the summary execution of his political opponents.[6]  Oltmann's lies have the potential to inspire real violence from his audience.  Shielding the behind-the-scenes observations and personal opinions of Oltmann's former coworkers on a conspiracy theory podcast is unwarranted and is not the type of subject matter that requires protection under the Court's protective order.  Accordingly, and the Court should strike CDS' confidentiality designations.

---

[3] *See* Erik Maulbetsch, *Founder of CO Militia Group: "If You Want To Take Our Country, It Will Have to Be With Violence"*, COLORADO TIMES RECORDER, March 11, 2021, https://coloradotimesrecorder.com/2021/03/it-will-have-to-be-with-violence/35041/

[4] *See* https://caincloud.egnyte.com/dl/ZU29qgGjhH; This link is a short excerpt from an hour-long publication from Defendant Lindell, wherein he discusses the substance of the 30(b)(6) depositions of MyPillow, Inc. and FrankSpeech LLC as length.  Lindell also attacks Plaintiff, Plaintiff's counsel, and this Court repeatedly in this lengthy publication, while also discussing various unsupported theories about the case and repeatedly promoting MyPillow products. *See generally* Mike Lindell, *The Lindell Report (3-10-23)*, LINDELL TV, available at https://rumble.com/v2ck83o-the-lindell-report-3-10-23.html and https://caincloud.egnyte.com/dl/pcTR0s3FK6.

[5] **Exhibit 2**, Joe Oltmann, TELEGRAM, March 12, 2023 (Oltmann: "Yet the truth is these people are demons. The judge assigned to the case was a fresh appointment by none other than, Joe Biden.  The reckoning is coming and with it will be dire consequences.  Pray for Mike to prevail against the communist judge and the evil Coomer and his lawyers represent.")

[6] **Exhibit 3**, Joe Oltmann, TWITTER, March 8, 2023 (Oltmann: "[T]he leftist/establishment trash heaps in our leadership need to be hung. Not demoted, not put in jail.  They need to be hung by the neck till dead.")

## ARGUMENT

### A.     *CDS has no standing to assert confidentiality designations.*

5.      CDS does not dispute the holding in *S.E.C. v. Dowell,* 114 Fed. Appx. 716, 722 (10th Cir. 2005), that they themselves cited in their original motion seeking a protective order in this case [Dkt. 75], nor do they deny that the Court's minute order denying that motion [Dkt. 78] expressly referenced F.R.C.P 26(c)(1)(G), which specifically discusses "a person *from whom discovery is sought*." (Emphasis added).

6.      Instead, CDS argues that Plaintiff's counsel had a duty to apprise them of whether they had standing to assert confidentiality designations during conferral, and that because this specific issue was not discussed in their "lengthy" conferral, Plaintiff has waived argument on the matter. Plaintiff is not aware of an affirmative duty to address every potential argument in a pending motion during conferral with opposing counsel, but even if this issue had been raised, it is unclear what difference it would have made. CDS has been alerted to its lack of standing for at least three weeks now, and still has not moved to intervene as required. Plaintiff has provided this Court with a copy of the email that followed the conferral call, and he maintains that its contents are sufficiently thorough.

7.      CDS also erroneously claims that it is a producing party. Plaintiff subpoenaed Max McGuire, and McGuire produced all of the documents and testimony at issue here. He did not designate anything as confidential. The documents produced were largely in his exclusive possession, and CDS does not and cannot purport to have ever had control or possession over his personal text messages or emails.

4

### B. *There is no good faith basis for the confidentiality designations at issue here.*

8. If there is a valid argument that CDS reasonably asserted confidentiality over McGuire's personal text messages,[7] it has not raised that argument in its Response. Additionally, CDS fails to explain how it can assert confidentiality over obviously personal text messages between Oltmann and McGuire's "burner account"[8] (where McGuire utilized the pseudonym "Paul Watney")[9] more than a month after McGuire's employment with CDS had concluded. And, CDS takes a pass on arguing how McGuire's testimony that Oltmann ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[12] somehow constitutes "trade secrets." Instead, CDS glosses over the specifics and discusses its designations only in broad, general terms.

9. The specifics matter though. And the substance of CDS' designations allows both Plaintiff and the Court to infer ulterior motives. For example, the fact that McGuire's own mother was able to determine that convicted felon and serial stalker Joey Camp was the likely source of Oltmann's made up story about Plaintiff[13] is obviously an embarrassment for both Oltmann and Defendants. Oltmann himself grew extremely agitated during his deposition when confronted with text messages from Camp to

---

[7] *See* **Exhibit 4**, at pp. 2-3, 5-6.

[8] *See* **Exhibit 5**.

[9] *See* **Exhibit 6** at 46:10-21.

[10] *Id.* at 233:3-4.

[11] *Id.* at 233:7-10.

[12] *Id.* at 131:15-133:12.

[13] *See* **Exhibit 4** at p. 3 (Lee McGuire: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓)

Plaintiff[14] where Camp threatened Plaintiff and claimed to have a recording of the "Antifa call."[15]

10.     Oltmann also feigned ignorance[16] about social media posts by Camp where Camp described the conversation on the alleged "Antifa call" and claimed to have identified Dr. Coomer *before* Oltmann did.[17] Camp's statements are themselves riddled with demonstrable falsehoods, but his involvement in the origins of Oltmann's antifa story is as self-evident as Oltmann's efforts to conceal it. Oltmann likely utilized Camp's story about Plaintiff to rise to prominence on the political right, promote enrollment in his political organization FEC United, and drive interest in the Conservative Daily podcast. If the public were to become aware (through non-confidential filings in this case) that Oltmann's podcast co-host himself suspected Oltmann of making the story up, ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[18], Oltmann's public lies would crumble, or at least be exposed. None of this information, however, can possibly be considered a trade secret. Instead, it is simply relevant evidence that supports the actual malice standard that the Court has determined applies to Plaintiff's claims.

---

[14] *See* **Exhibit 7**, Deposition Transcript of Joseph Oltmann, Dec. 16, 2022, at 314:4-316:15.

[15] *See* **Exhibit 8**. It is noteworthy that despite Camp's repeated appearances on Conservative Daily, Oltmann has never requested a copy of this recording, if it does in fact exist. If such a recording does exist, Plaintiff would of course immediately make it public, as implied by Plaintiff's response to Camp.

[16] **Exhibit 7**, at 313:10-314:3; 316:16-319:3.

[17] **Exhibit 9** (Camp: "When my team preserved material from Eric Coomer we did so because of his connection to Antifa, not because of his connection to Dominion – which we didn't even know existed before." Oltmann's first podcast about Plaintiff explicitly tied him to Dominion, thus placing Camp's purported "preserv[ation]" of "material" at some point prior to Oltmann's claims.)

[18] **Exhibit 6**, at 139:6-11.

11. Similarly strained are CDS' designations with respect to Oltmann's personal messages to McGuire more than a month after he left CDS.[19] Oltmann's efforts to move his assets out of state to escape what he himself apparently anticipates as inevitable liability[20] in Colorado are noteworthy in and of themselves, but the deeper implications of these communications are equally problematic for both Oltmann and Defendants. Under oath, Oltmann denied that he paid property taxes in Texas[21] and provided the address for what he claimed was his residence there.[22] That property though actually belongs to a business associate of Oltmann's,[23] and in text messages with McGuire, Oltmann identified a different home address.[24] The entity that purchased that property[25] was incorporated just days after Oltmann was ordered to produce discovery in *Coomer v. Donald J. Trump for President, Inc.*,[26] and is owned by an LLC that was registered in Delaware[27] by the registered agent on file for both FEC United and CDS.[28] Days after the

---

[19] **Exhibit 5**.

[20] *Id.* at p. 7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[21] **Exhibit 7** at 19:24-20:19.

[22] *Id.* at 13:23-24.

[23] **Exhibit 10**, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Exhibits 11-12**. DCF Guns is a gun store belonging to Oltmann, as testified to by McGuire. **Exhibit 6** at 86:2-87:3.

[24] **Exhibit 13**.

[25] **Exhibit 14**.

[26] **Exhibit 15**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Order Regarding Defendants Joseph Oltmann/FEC United/Shuffling Madness Media, Inc. dba Conservative Daily's Motion to Reconsider June 8, 2021 Order Granting Limited Discovery, July 24, 2021.

[27] **Exhibit 16**, (identifying a stock corporation date of July 29, 2021).

[28] *See* **Exhibits 17-18** (identifying Dottie Randazzo as the registered agent for both FEC United and CD Solutions, Inc.).

purchase, Oltmann claimed for the first time to not be a Colorado resident in an effort to avoid providing deposition testimony.[29] He skipped that deposition to appear at Lindell's Cyber Symposium and defame Plaintiff onstage, as discussed in Plaintiff's complaint.[30] This all matters here because Defendants' exclusive reliance on Oltmann is directly relevant to a finding of actual malice,[31] as is Oltmann's reliability as a source.[32] If Oltmann has been repeatedly lying under oath, fraudulently transferring assets to avoid civil liability arising from the same claims at issue here in another proceeding, and likely committing voter fraud himself,[33] these facts support the conclusion that Oltmann has been a fraud all along and one in which Defendants' should never have relied upon. The bad facts are not, however, matters that require a "confidential" designation.

C.  *The confidentiality designations should be stricken.*

12.   Even if CDS did have standing to assert confidentiality designations here, which it does not, its confidentiality designations should still be stricken. As noted, CDS

---

[29] **Exhibit 19**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Defendant Jospeh Oltmann's Motion for Relief from the July 7, 2021 Order Requiring Joseph Oltmann to Appear at the Courthouse for his Deposition on August 11, 2021, Aug. 6, 2021 (claiming "Mr. Oltmann is not a resident of the state of Colorado and will have to travel to appear.")

[30] *See* Plaintiff's First Amended Complaint [Dkt. 21] at ¶ 80.

[31] *See US Dominion, Inc. v. Powell*, 554 F.Supp. 3d 42, 63 (D.D.C. 2021) (finding allegations sufficient to establish actual malice where the complaint alleged that "Lindell recklessly disregarded the truth by relying on obviously problematic sources to support a preconceived narrative he had crafted for his own profit.")

[32] *See Burns v. McGraw-Hill Broadcasting*, 659 P.2d at 1361-62 (finding clear and convincing evidence of actual malice where the publisher had reason to question the reliability of the source and information).

[33] *See generally* Erik Maulbetsch, *Colorado Election Fraud Conspiracy Theorist Appears to Have Committed Voter Fraud, Court Docs Show*, COLORADO TIMES RECORDER, Feb. 3, 2023, https://coloradotimesrecorder.com/2023/02/colorado-election-fraud-conspiracist-appears-to-have-committed-voter-fraud-court-docs-show/50777/; Erik Maulbetsch, *DougCo Clerk Says It's Aware of Oltmann's Potential Voter Fraud And Is Cooperating With Colorado Secretary of State*, COLORADO TIMES RECORDER, Feb. 10, 2023, https://coloradotimesrecorder.com/2023/02/dougco-clerk-says-its-aware-of-oltmanns-potential-voter-fraud-and-is-cooperating-with-colorado-secretary-of-state/51837/

does not acknowledge the six-factor *Porter* test or make any effort to argue that its designations here meet any prong of that analysis. Nor could it.

13. As the few examples discussed above make clear, the designations here are overly broad and encompass a vast swath of information not reasonably subject to protection. The time required to systematically address every document designated would impose an enormous time requirement on Plaintiff (and the Court), but this is not and cannot be his burden. "Unless restricted by statute, rule of civil procedure, or court order, the public shall have access to all documents filed with the court and all court proceedings." D.C.COLO.LCivR. 7.2(a). As the party seeking to restrict that access, it is CDS' burden to "address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction)." D.C.COLO.LCivR. 7.2(c)(2).

14. In an apparent effort to meet this burden, CDS argues:

> What is confidential about these conversations and testimony is the fact that these conversations were held by and between CDS employees about and regarding the CDS podcast. Many of these designations are heated arguments about the proposed content, sources, and presentation of CDS podcast. It would be detrimental to CDS' business if competitors and the public were made aware of the in-fighting and disagreements that take place in creating a podcast. To run a successful podcast requires its employees to freely discuss how the shows, guests, and information is and will be distributed to the viewing public.

Response, at p. 18.

15. CDS provides no evidence to support its speculation. Plaintiff would similarly speculate that consumers of disinformation podcasts like Conservative Daily are

uniquely resilient to facts which serve to disprove their preconceived narratives, thus at least partially insulating CDS from the fallout it purports to fear. In any case, these concerns still do not rise to the level of trade secrets as defined by the terms of the 2021 NDA, the statutory definition of trade secrets as embodied in C.R.S. § 7-74-102(4), or any of the factors utilized by courts to identify trade secrets. *See Porter Indus., Inc. v. Higgins*, 680 P.2d 1339 (Colo. App. 1984).

16.     CDS is not an engineering firm engaged in cutting edge research and development. It is not a software company on the forefront of technological advance. And it is not a scientific laboratory attempting to secure lucrative patents. It is a conspiracy theory podcast that publishes lies about election security and interviews with QAnon promoters. Its former employees' concerns about spreading these lies are not "trade secrets." CDS does not seek to protect confidential financial data or other sensitive secrets. It simply seeks to avoid embarrassment.

## CONCLUSION

For all of the reasons stated herein, the Court should issue an order striking CDS' confidentiality designations. Plaintiff prays the Court grant such other and further relief to which he may be justly entitled, including attorney fees and costs associated with this motion and reply.

Respectfully submitted this 17th day of March 2023.

      /s/ Bradley A. Kloewer
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
David E. Jennings, No. 54643
djennings@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064/101 N. F Street, Suite 207
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**

Respectfully submitted this 6th day of June 2023.

        */s/ Bradley A. Kloewer*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
David E. Jennings, No. 54643
djennings@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064/101 N. F Street, Suite 207
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**