**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129

ERIC COOMER, PhD.,

    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants

---

**EXHIBIT 1**
**JOINT TABLE REGARDING RESTRICTED DOCKET ENTRIES REQUIRED**
**BY COURT MINUTE ORDER DOCKET 148**

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129

ERIC COOMER, PhD.,

    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants

---

**EXHIBIT 2**

---



**PiDOXA**

pidoxa.com
pinbusinessnetwork.com
ebizplatform.com

### CUSTOMER SERVICE AGREEMENT
**Contract Scope: Data Center IoT services**

6200 S Syracuse Ave #125, Greenwood Village, CO 80111

**Customer Service Delivery Information**

| | |
|---|---|
| Tenant/Datacenter | FrankSpeech, LLC |
| C/O | Todd Carter, CTO |
| Service Address | 875 W. Poplar Ave |
| Suite / Floor | Suite 23 #342 |
| City, State, Province | Collierville, TN |
| Postal Code | 38017 |
| Country | US |

**Customer Contracting & Billing Information**

| | |
|---|---|
| Company Name | FrankSpeech, LLC |
| Billing Address | 875 W. Poplar Ave |
| Suite / Floor | Suite 23 #342 |
| City, State, Province | Collierville, TN |
| Postal Code | 38017 |
| Country | US |
| Company Domicile | Minnesota |
| EIN | NULL |
| Request for consolidated billing | Yes |

\* Consolidated billing requests must be reviewed and approved by PIDOXA

| | |
|---|---|
| Delivery Contact | Todd Carter, CTO |
| Telephone | |
| Cellphone | [redacted] |
| Fax | |
| Email | [redacted] |

| | |
|---|---|
| Billing Contact | |
| Telephone | |
| Cellphone | |
| Fax | |
| Email | |

**PIDOXA Contact Information**

| Sales Office | Location | PIDOXA / PIN BN |
|---|---|---|
| | Address | 6200 S Syracuse Way #125, Greenwood Village, CO 80111 |
| | Phone | [redacted] |
| | Fax | |
| Contract SPOC | | [redacted] |
| Customer Care | | [redacted] |

| Sales Account Manager | Name | Stu Butler |
|---|---|---|
| | Phone | [redacted] |
| | Email | [redacted] |
| Sales | | |
| Billing | | [redacted] |

**Contract Documents**

The entire Customer Service Agreement (CSA), entered into between Customer and PIDOXA, is made up of the documents listed here. All prior agreements, proposals, representations, statements, or the Terms (understandings, whether written or oral, concerning such Services) are superseded. Customer certifies that the documents constituting the CSA are the documents and forms that have been supplied to Customer by PIDOXA and that Customer has made no changes to

(1) Order Form
(2) Service Terms and Conditions, as attached (initialed by Customer) (For current customers, if Terms are not Capitalized terms are defined in the text of the Terms or Definition section of attached, the current Terms remain in force)
(3) Product Rider(s), as attached (signed by Customer)
(4) Any other Rider or Addendum, as attached (signed by Customer)

**Term of Contract**

**24 months**        Customer Initials

**Contract Variable or FrankSpeech Expenses (non included in contract options)**

| Expense | Terms of Expense | Defined | Expense Parameters/ Restrictions | Pass Thru | Target |
|---|---|---|---|---|---|
| Travel | Billable | Flight | Coach, lowest rate with no connections | yes | MRC target |
| Travel | Billable | Accomidations | Direct cost, no upgrades paid | yes | MRC target |
| Travel | Billable | Meals | Per diem $70/day | yes | MRC target |
| Misc | Billable | Misc | Pre-Approval required | yes | MRC target |
| Software | FrankSpeech | Direct | FrankSpeech approval/contract execution | no | MRC target |
| Hardware | FrankSpeech | Direct | FrankSpeech approval/contract execution | no | MRC target |
| Logistics | Billable | Shipping | FrankSpeech source approval (CTO) | yes | MRC target |

**SIGNATURES**

By signing below, Customer affirms and acknowledges that it has read the entire CSA and agrees to be bound by the provisions thereof. Customer acknowledges service Terms & Conditions and agrees to be bound by them therein.

**For FrankSpeech, LLC**                                           **For Pidoxa, Inc.**

Signature _____                    Signature _____
Printed Name _____                    Printed Name _____
Title _____                    Title _____
Date _____                     Date _____

Page 2

CONFIDENTIAL                                                                    FRANKSPEECH-000002



CUSTOMER SERVICE AGREEMENT
**Contract Scope: Data Center IoT services**
6200 S Syracuse Ave #125, Greenwood
Village, CO 80111

pidoxa.com
pinbusinessnetwork.com
ebizplatform.com

Pidoxa Contract for FrankSpeech, LLC
Final Audit Report                                             2022-09-21

"Pidoxa Contract for FrankSpeech, LLC" History
Document created by Joe Oltmann (joe@pidoxa.com)
2019-09-18 - 7:22:00 PM GMT- IP address:

**Service Terms and Conditions**

These Service Terms and Conditions (the "Terms and Conditions") are agreed to by PiDOXA, LLC, a Delaware corporation headquartered at 6200 S. Syracuse Way #125, Greenwood Village, CO 80111 ("PiDOXA") and the individual or entity identified in the Customer Service Agreement ("Client") (PiDOXA and Client may be referred to individually as "Party" or collectively as "Parties"). These Terms and Conditions and the Service Agreement together form the agreement governing the obligations and rights of PiDOXA and Client collectively referred to as the "Agreement".

1. Products and Services.
a. Subject to these Terms and Conditions, PiDOXA will provide to Client, and Client will purchase from PiDOXA, various products and services identified in the Customer Service Agreement, supporting products and services, and support for Client's use of identified products and services, such as, for example, reporting and PiDOXA Portal access (collectively, the "Products and Services"). No Products and Services may be added to or removed from the Service Agreement during the Term or Renewal Term without a Change Order (defined herein) signed by both parties.

b. Change Orders. Any change to the Products and Services identified in the Customer Service Agreement, including any adjustment to Variable Costs (defined herein) requires a written agreement signed by the Client (the "Change Order"). A Change Order shall serve as an amended Service Agreement.

2. Payment and Fees. Set Up Fees and Monthly Fees (both defined herein) are referred to collectively as "Fees." Client agrees to pay PiDOXA those Fees specified in the Customer Service Agreement and shall remit payment to PiDOXA according to the terms of payment contained herein or in the
a. Set Up Fees. Set Up Fees are identified in the Customer Service Agreement and invoiced on the Effective Date (defined herein) and are payable by Client upon receipt of said invoice. Set Up Fees are one-time charges to provide for the cost of implementing Products and Services. If new Products and Services are added to the Service Agreement, additional Set Up Fees may be charged.
b. Monthly Fees. Monthly Fees are identified in the Customer Service Agreement. Monthly Fees are payable by Client upon receipt of the monthly invoice.
   i. Fixed Costs. All fees not listed as Variable Costs are Fixed Costs.
   ii. Variable Costs. Fees that vary from month to month based on Client's identified are Variable Costs. Variable Costs include but are not limited to, for example, AdWords, Programmatic, and Social.
c. Late Payment. Late payments will bear interest at 3% or the maximum amount permitted by law, whichever is less.  Client shall be liable for all collection expenses incurred by PiDOXA, including reasonable attorneys' fees.

d. Fee Changes. PiDOXA may increase fees for Products and Services prior to any Renewal Term by providing 45 days Written Notice (defined herein) to Client of the increase. No other changes to fees identified in the Service Agreement will be effective during the Term or Renewal Term without a Change Order signed by both parties.
e. Disputes. If Client does not object in writing to an invoiced amount within five (5) days of a given invoice or statement, Client shall be deemed to have acknowledged the correctness of that invoice or amount and to have waived its right to dispute that invoice or amount. Client's dispute as to a portion of any invoice or amount owed shall not give Client the right to withhold or delay payment of the whole invoice or amount owed.

3.  Term and Termination.
a. Effective Date. The "Effective Date" of the Agreement is the date both the Service Agreement and these Service Terms and Conditions are signed by the
b. Start Date. The "Start Date" is the first day of the month identified in the Service Agreement upon which day PiDOXA begins providing the Products and Services, which in some cases will not be determined until after the Effective Date.
c. Term. The "Initial Term" of the Agreement begins upon the Effective Date and expires twelve (12) months from the Start Date, unless otherwise stated in the Service Agreement. Upon expiration of the Initial Term, the term of this Agreement will automatically renew for additional, consecutive one (1) year terms (each a "Renewal Term") unless either party provides at least thirty (30) days Written Notice (defined herein) of non-renewal to the other Party prior to the end of the then-current Term, as defined below. The Initial Term or Renewal Term may be referred to as the "Term."
d. Termination. Either Party may terminate this Agreement upon thirty (30) days prior Written Notice to the other Party if the other Party commits a material breach of this Agreement and fails to cure such breach within thirty (30) days of the breaching party's receipt of Written Notice of the breach.
f. Survival. The following provisions shall survive any expiration or termination of this Agreement: 2 ("Payment and Fees"); 3 ("Term and Termination"); 5 ("Confidentiality"); 6 ("Content Rights"); 7 ("Warranties"); 8 ("Indemnification"); 9 ("Liability"); 10 ("Non-Solicitation of Employees"); and 11 ("General Provisions").

Page 3

CUSTOMER SERVICE AGREEMENT
**Contract Scope: Data Center IoT services**
6200 S Syracuse Ave #125, Greenwood
Village, CO 80111



pidoxa.com
pinbusinessnetwork.com
ebizplatform.com

4. Product Use.
a. Client Use of Products. Subject to and conditioned on Client's payment of the fees and compliance and performance with all other terms and conditions of this Agreement, PiDOXA grants to client a non-sub licensable, non-assignable, limited, nonexclusive, non transferable, revocable license to access and use PiDOXA Products and Services, subject to the limitations described this Section 4 and Section 5 ("Confidentiality"). Client agrees and acknowledges that the grant of rights is a right of use of the PIDOXA Products and Services only, and that right, title, and interest in and to the PiDOXA Products and Services (including without limitation any enhancements, developments, and improvements or changes thereto whether suggested or requested by Client or otherwise) and any rights not granted herein shall remain with, and are expressly reserved to, PiDOXA or its licensors or subcontractors. No improvements, enhancements or developments to the PiDOXA Products and Services shall be considered "works made for hire," even if paid for by Client. The PiDOXA Products and Services are provided as an online service only, and Client shall have no right whatsoever to receive, review, or otherwise use or have access to the source or object code for the PiDOXA Products and Services.
b. PiDOXA's use of Client Information. Notwithstanding anything to the contrary in Section 5 ("Confidentiality"), PiDOXA may use data regarding Client's performance and use of the Products and Services for benchmarking purposes and for creating anonymous case studies to be used for marketing purposes.

5. Confidentiality.
a. As a result of this Agreement, Parties may have access to information that may be considered proprietary or confidential to the other Party ("Confidential Information"). Confidential Information shall mean any information that is, directly or indirectly, disclosed or made accessible by or on behalf of a Party (the "Disclosing Party") that is marked as confidential or which, given the nature of the information or circumstances surrounding its disclosure, should reasonably be understood to be confidential or proprietary, including pricing, data, proposals, business models, marketing plans, strategic plans, customer and employee information, financial information, software, reports, or forms of the Disclosing Party.
b. The Party receiving the Confidential Information of the other (the "Receiving Party") agrees to perform its respective obligations under this Agreement and will take reasonable measures to avoid unauthorized disclosure or use, including, but not limited to, taking at least those measures it would take to protect its own similar Confidential Information. Each Receiving Party agrees not to disclose any Confidential Information of the Disclosing Party to the Receiving Party's employees and representatives, except to those that have a need to know such information and who are legally bound to maintain its
c. Confidential Information shall not, however, include any information which (i) is publicly known and is made generally available through no fault of the Receiving Party; (ii) is already in the possession of the Receiving Party without any obligation of confidentiality at the time of disclosure by the Disclosing Party as shown by the Receiving Party's written records; (iii) is obtained by the Receiving Party from a third party without, to the Receiving Party's knowledge, a breach of such third party's obligation of confidentiality; (iv) is independently developed by the Receiving Party without use or reference to the Disclosing Party's Confidential Information, as shown by the Receiving Party's documentary records; or (v) is part of the Content (defined herein).
d. In the event a third party seeks to compel disclosure of Confidential Information from a Receiving Party by judicial, governmental or administrative process, requirement or order, the Receiving Party shall promptly notify the Disclosing Party of such occurrence and furnish to the Disclosing Party a copy of the demand, summons, subpoena or other process served upon the Receiving Party to compel such disclosure, and shall permit the Disclosing Party to assume, at its expense, but with the Receiving Party's cooperation, defense of such disclosure demand. In the event that the Disclosing Party fails or refuses to contest such a third-party disclosure demand, or a final judicial order is issued compelling disclosure of Confidential Information by the Receiving Party, the Receiving Party shall be entitled to disclose such information in compliance with the terms of such administrative or judicial process or order, but such information shall otherwise remain Confidential Information subject to the confidentiality obligations set forth herein.

6. Content Rights.
a. Content. Marketing Content and Native Content (both defined herein) are referred to collectively as "Content."  [WHERE APPLICABLE]
b. Marketing Content. Content created by PIDOXA on behalf of Client during the Term and under the terms of this Agreement, such as videos, logo designs, graphic designs, email content, social media posts created for Client's social media pages, digital advertisements, and websites ("Marketing Content") shall be the property of Client upon delivery provided that, however, Client has paid all Fees payable to PIDOXA for the month in which Marketing Content is delivered and for all previous months. Client will make all the necessary backup copies of the Marketing Content. Client grants to PIDOXA a limited, nonexclusive, royalty-free license to use Marketing Content for its own marketing portfolio as examples of PIDOXA's work.
c. Native Content. Content written or created to be shared organically about Client or that refer to Client remain the property of PIDOXA. PIDOXA, upon termination of this Agreement, may remove Client's Native Content from any of its webpages, social media pages or other digital assets at its discretion. PIDOXA grants to Client a revocable, non transferable, non-sub licensable, nonexclusive license to use, transfer, and share Client's Native Content.

Page 4

CUSTOMER SERVICE AGREEMENT
Contract Scope: Data Center IoT services
6200 S Syracuse Ave #125, Greenwood
Village, CO 80111



pidoxa.com
pinbusinessnetwork.com
ebizplatform.com

d. Video Delivery & Acceptance. After PIDOXA's delivery of a video, the Client will have three (3) business days to inspect the video to verify that it conforms in all respects to the applicable and express specifications contained in the Service Agreement and other written mutually agreed upon writings ("Specifications"). Upon completion of such, three (3) day period, if Client has not requested specific revisions to cure any nonconformity with the Specifications ("Material Nonconformity"), such deliverable shall be deemed automatically accepted by the Client. To request changes that do not involve a Material Nonconformity, Client may submit up to two (2) written requests for changes after the product has been delivered, such reasonable changes being made provided that, however, the requested changes do not cause PIDOXA to incur a substantial cost or investment of time.

7. Warranties.
a. Representations, Warranties, and Covenants. Each Party represents, warrants, and covenants that, as of the Effective Date and at all times during the term of this Agreement: (i) this Agreement constitutes its valid and binding obligation and is enforceable against it in accordance with the terms of this Agreement; and (ii) it has all corporate or other entity authority required to enter into this Agreement. Additionally, Client represents, warrants, and covenants that, as of the Effective Date and at all times during the term of this Agreement, Client shall comply with all applicable laws, regulations and industry best practices with respect to its use of the PIDOXA Products and Services.
b. Disclaimers.
  i. Client acknowledges that client results while receiving the Products and Services vary from client to client, and that results that Client receives will also depend on Client's participation, use of the Products and Services, business model, software, sales funnel, reputation, and other factors within Client's control. Results will also be affected by factors outside of the control of both PIDOXA and Client, such as (but not limited to) market conditions, consumer preferences, and activities of Client's competition. A failure of Client to achieve a particular result achieved by another PIDOXA client, or to meet a particular goal set by Client, such as (but not limited to) a sales, lead-generation, or revenue goal, will not constitute a breach or nonperformance of this Agreement by PIDOXA.
  ii. ALL PRODUCTS AND SERVICES ARE PROVIDED TO CLIENT ON AN "AS AVAILABLE" BASIS AND ARE PROVIDED TO CLIENT "AS IS," WITH ALL FAULTS, AND WITHOUT WARRANTY OF ANY KIND, AND PIDOXA DISCLAIMS ANY AND ALL EXPRESS OR IMPLIED WARRANTIES WITH REGARDS TO THE PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND TITLE. WITHOUT LIMITING THE FOREGOING, PIDOXA DOES NOT WARRANT THAT THE PRODUCTS AND SERVICES WILL MEET CLIENT'S NEEDS REQUIREMENTS OR THOSE OF ITS AUTHORIZED USERS, THAT THE OPERATION OF THE PRODUCTS AND SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE, OR THAT ALL DEFECTS IN THE PRODUCTS AND SERVICES WILL BE CORRECTED. PIDOXA DOES NOT WARRANT OR MAKE ANY REPRESENTATION REGARDING THE USE OF, OR THE RESULTS OF THE USE OF, THE PRODUCTS AND SERVICES OR DOCUMENTATION (INCLUDING WITHOUT LIMITATION INFORMATION OBTAINED THROUGH THE PRODUCTS AND SERVICES) IN TERMS OF THEIR CORRECTNESS, ACCURACY, QUALITY, RELIABILITY, OR OTHERWISE. CLIENT WARRANTS THAT IT HAS NOT RELIED ON ANY INFORMATION OR REPRESENTATION PROVIDED BY OR ON BEHALF OF PIDOXA WHICH IS NOT EXPRESSLY INCLUDED IN THIS AGREEMENT. USE OF ANY INFORMATION OBTAINED VIA THE PRODUCTS AND SERVICES IS ENTIRELY AT CLIENT'S OWN RISK.
c. Talent Releases. On behalf of all personnel of Client who will contribute to or appear in the Content produced for Client as well as any other parties participating in such project at the direct of or by the request of Client, Client hereby represents the following to PIDOXA and grants the following rights and permissions to PIDOXA:
  i. Client has the absolute right and permission to take, use, reuse, publish, and republish video and/or photographic images (in any media whether electronic, digital, recorded, or otherwise) of those recorded or photographed, including any minors, or in which any minor may be included, in whole or in part, or composite or distorted in character or form, without restriction as to changes or alterations from time to time, in conjunction with the adult's or minor's own or fictitious name, or reproductions of such videos or photographs in color or otherwise.
  ii. Client specifically consents to the digital compositing or distortion of any such media, including without restriction any changes or alterations as to color, size, shape, perspective, context, foreground, or background.
  iii. Client releases, discharges, and agrees to hold harmless and defend Client, its legal representatives, affiliates, heirs or assigns, and all persons acting under its permission or authority or those for whom Client is acting, from any liability by virtue of any reason in connection with the making and use of such videos or photographs, including blurring, distortion, alteration, optical illusion, or use in composite form, whether intentional or otherwise, that may occur or be produced in the taking of said recording or picture or in any subsequent processing thereof, as well as any publication of them, including without limitation any claims for libel or violation of any right of publicity or privacy.
  iv. Client hereby warrants it has legal authority to make such an agreement on behalf of any personnel of Client as well as any other parties participating in such projects at the direction of or by the request of Client or minor present in connection with the Products & Services.

Page 5

CUSTOMER SERVICE AGREEMENT
Contract Scope: Data Center IoT services
6200 S Syracuse Ave #125, Greenwood
Village, CO 80111



pidoxa.com
pinbusinessnetwork.com
ebizplatform.com

8. Indemnification.
a. Client's Indemnity Obligation. Client will defend, indemnify, and hold harmless PIDOXA and its affiliates, and each of its and their respective officers, directors, employees, agents, and contractors from and against any and all actions, claims, complaints, lawsuits, and investigations brought by a third party, and will pay any settlements, fines, awards, and reasonable attorneys' fees, court costs, and other expenses associated with such claims, to the extent that the claim arises from or is related to: (i) any content or material provided by Client; (ii) the conduct of Client's business (including [but not limited to] any allegation that any Content infringes any third party patents, trademarks, copyrights, or other proprietary rights, constitutes false advertising, or is defamatory): (iii) Client's violation of any applicable law or regulation; (iv) Client's breach of this Agreement.

b. PIDOXA's Indemnity Obligation. PIDOXA will defend, indemnify, and hold harmless Client and its affiliates, and each of its and their respective officers, directors, employees, agents, and contractors from and against any and all actions, claims, complaints, lawsuits, and investigations brought by a third party, and will pay any settlements, fines, awards, and reasonable attorneys' fees, court costs, and other expenses associated with such claims, to the extent that the claim arises from or is related to any allegation that PIDOXA's provision of the Products and Services infringes or misappropriation of third party intellectual property rights (unless the infringing content was provided by Client, or the infringement resulted from PIDOXA's compliance with Client's designs, specifications, requests, or instructions).
c. Indemnity Procedures. A party seeking indemnification under this Section 8 will (i) promptly give the other Party (the "Indemnitor") Written Notice; and (ii) give the Indemnitor primary control of the defense of the claim and settlement negotiations. The Indemnitor will have the right to compromise, settle, or otherwise dispose of the complaint, if the Indemnitor deems it advisable to do so, all at the Indemnitor's expense. The Parties will reasonably cooperate with each other in any claim brought by a third party.

9. Liability.
a. Liability Exclusion. NEITHER PARTY, NOR ANY SUBCONTRACTOR OF EITHER PARTY, WILL BE LIABLE TO THE OTHER PARTY (NOR TO ANY PERSON CLAIMING RIGHTS DERIVED FROM SUCH OTHER PARTY'S RIGHTS) FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, OR EXEMPLARY DAMAGES OF ANY KIND, OR FOR
    ANY LOST REVENUES OR PROFITS, LOSS OR CORRUPTION OF DATA, THEFT OF DATA, COST OF CAPITAL, COST OF SUBSTITUTED PRODUCTS, DOWNTIME COSTS, OR LOSS OF GOODWILL OR REPUTATION, WITH RESPECT TO ANY CLAIMS BASED ON CONTRACT, TORT, OR OTHERWISE (INCLUDING NEGLIGENCE AND STRICT LIABILITY) ARISING OUT OF OR RELATING TO THE PRODUCTS AND SERVICES OR OTHERWISE OUT OF OR RELATING TO THIS AGREEMENT REGARDLESS OF WHETHER THE PARTY LIABLE OR ALLEGEDLY LIABLE WAS ADVISED, HAD OTHER REASON TO KNOW, OR IN FACT KNEW OF THE POSSIBILITY THEREOF.
b. Limitation of Damages. EACH PARTY'S MAXIMUM LIABILITY ARISING OUT OF OR RELATING TO THE PRODUCTS AND SERVICES OR OTHERWISE ARISING OUT OF OR RELATING TO THIS AGREEMENT WILL NOT EXCEED, IN THE AGGREGATE FOR ALL CLAIMS, THE TOTAL FEES PAID BY CLIENT TO PIDOXA UNDER THIS AGREEMENT DURING THE ONE (1) MONTH PERIOD PRIOR TO THE DATE ON WHICH THE FIRST CLAIM ARISES.
c. Exceptions. Notwithstanding anything to the contrary, the exclusions and limitations set forth in Section 9.b will not apply with respect to: (i) any damages arising from a Party's fraud or willful misconduct; (ii) A party's breach of Section 4 ("Product Use"), Section 5 ("Confidentiality"), or Section 8 ("Indemnification"); or (iii) Client's failure to pay any fees under this Agreement, any Change Order, any other agreement entered into by the Parties, or that become payable upon termination of this Agreement.

10. Non-Solicitation of Employees. During the Term of this Agreement and for a period of one (1) year after the termination or expiration of this Agreement, Client agrees not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any employee of PIDOXA.

11. Written Notice. The term "Written Notice" shall include notice provided in writing via electronic mail or certified mail addressed and sent to an authorized representative of the Party receiving the Written Notice to the address set forth in the Service Agreement.

12. General Provisions.
a. No Waiver. Neither a failure nor a delay of either Party in exercising any right, power, or privilege under this Agreement shall operate as a waiver thereof, neither shall a single or partial exercise thereof preclude any further exercise of any right, power, or privilege.
b. Assignment. Client may not assign this Agreement or any rights or privileges associated with this Agreement to another party without the prior written consent of PIDOXA, whose consent may be withheld by PIDOXA in its sole discretion. A Change of Control of Client shall constitute an assignment for purposes of this Agreement. A Change of Control of Client shall constitute a grant of an option to PIDOXA to terminate this Agreement on thirty (30) days prior Written Notice to Client without any further liability on the part of PIDOXA. Change of Control means (a) any entity, person or group of persons acting in concert becomes the beneficial owner, directly or indirectly, of thirty percent (30%) or more of the voting shares or membership interest of Client, and/or (b) sale of all or substantially all of Client's assets.

Page 6

CUSTOMER SERVICE AGREEMENT
Contract Scope: Data Center IoT services
6200 S Syracuse Ave #125, Greenwood Village, CO 80111



pidoxa.com
pinbusinessnetwork.com
ebizplatform.com

c. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same agreement.

d. Notices. All notices, demands, and other communications given or delivered under this Agreement shall be in writing and shall be deemed to have been given, (i) when received if given in person, (ii) on the date of electronic confirmation of receipt if sent by electronic mail, (iii) three days after being deposited in the U.S. mail, certified or registered mail, postage prepaid, or (iv) one day after being deposited with a reputable overnight courier. Notices, demands, and communications to the parties shall, unless another address is specified in writing, be sent to the address set forth in the Service Agreement.

e. Forum. Any dispute or litigation based on, arising out of, under, or in connection with this Agreement shall be brought and maintained exclusively in the courts of the State of Colorado.

f. Choice of Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado without giving effect to any choice of law provision or rule (either of the State of Colorado or any other jurisdiction) that would cause the application of laws of any jurisdiction other than the State of Colorado.

g. Contractual Relationship. By this Agreement, PIDOXA will serve as a contractor of Client. Nothing in this Agreement shall be deemed to constitute a partnership or joint venture between the parties, or entitle any Party to be the agent of the other Party for any purpose.

h. Severability. If any provision, in whole or in part, of this Agreement is held by a court to be void, illegal, unenforceable or otherwise in conflict with the law governing this Agreement, such provision (or portion thereof) shall be deemed to be restated to reflect, as nearly as possible, the original intentions of the parties in accordance with applicable law, and the remaining provisions (and portions thereof) of this Agreement shall continue in full force and effect.

i. Entire Agreement. The Agreement (composed of these Service Terms and Conditions, and the Service Agreement) contains the entire agreement and understanding between the Parties hereto with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, written or oral, of any nature whatsoever with respect to the subject matter of this Agreement. The express terms of this Agreement control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms of this Agreement. This Agreement may not be modified or amended other than by an agreement signed and in writing by the Parties.

j. Force Majeure. Neither party shall be deemed in default hereunder, nor shall it hold the other Party responsible for a cessation, interruption, or delay in performance of its obligations hereunder due to earthquake, flood, storm, natural disasters, acts of God, war, armed conflict, labor strike, lockout, extended power or internet outage, or boycott, provided that the Party relying upon this section (i) shall give the other Party prompt Written Notice thereof and, in any event, with five (5) days of discovery thereof and (ii) shall take steps reasonably necessary under the circumstances to mitigate the effects of the force majeure event upon which such notice is based; provided further, that in the event a force majeure event described herein extends for a period in excess of thirty (30) days in the aggregate, either Party may immediately terminate this Agreement.

k. Incorporation of Exhibits. Any schedules, addendums, exhibits, documents identified in the Service Agreement and these Terms and Conditions, and any Change Orders signed subsequent to the execution of this Agreement are incorporated herein by reference and made a part hereof.

l. Modification by Amendment. The terms of this Agreement may be modified by amendment written and signed by both Parties. If a modification is made to the Service Agreement and that modification creates a conflict with any term in the Terms and Conditions, the modification in the Service Agreement will prevail.

12. Additional Miscellaneous Items
a. PiDoxa will deploy multiple Up/Down monitoring platforms that collectively report to Grafana. Telegram Alert Channels will extend upon this and notify the appropriate SPOC and on-call engineers to provide 24/7 monitoring and response. Once PiDoxa has completed asset and infrastructure assesment during phase I (90 day stabilization period), a 99% uptime target will be guaranteed.

Accepted by Client: _____
Signature

Title   _____
Date   _____

CUSTOMER SERVICE AGREEMENT
**Contract Scope: Data Center IoT services**
6200 S Syracuse Ave #125, Greenwood
Village, CO 80111


pidoxa.com
pinbusinessnetwork.com
ebizplatform.com

**Statement of Work**

FrankSpeech, LLC is seeking to improve the availability, reliability, and scalability of its Technology Infrastructure Services. These services include colocation and hosting, monitoring, remedial response, security, and network management. PiDoxa plans to not only assume management of FrankSpeech, LLCs network assets, but also to improve upon the performance and reliability of the entire system.

PiDoxa will also work diligently to reduce costs associated with the infrastructure, including, but not limited to items such as data center leases, add-on datacenter services, software and support contracts, etc.

PiDoxa shall plan and manage those activities necessary to transition services from the existing service provider.

Current assets include but are not limited to:
•Approximately 25 Dell R740XD Servers with Dual 18 core Intel Gold 6150 processors, 512Gb RAM, 21 SATA drives, 3 SAS drives, 10GBe cards each.
•Four (4) each of the following (one per rack): Juniper routers, Dell switches, f5 Load Balancers, Palo Alto Firewalls
•Software and support licenses for tools such as VMWare, Hashicorp Nomad, Vault, Palo Alto, F5, etc.

In addition to performing operations and maintenance, it is expected that PiDoxa will improve the performance and support of the network by providing high-availability services in a properly managed networked environment. PiDoxa will also work to improve performance, reliability, and security of the delivered services through coordinated, proactive monitoring.

The first objective is to provide resources for the operations and maintenance of the servers, software, network components, image management, asset refresh (non-financial), operational security and compliance, and second-level support to the helpdesk.

PiDoxa will:
1. Analyze and assess equipment and performance degradation, including determination of hardware, software, networking, and/or other technical changes necessary to meet operational requirements;
2. Draft requirements/specifications for new hardware, software, and/or services; develop and maintain a Project Management Plan with milestones, a conceptual and physical system design, and system requirements to include database design, process flows, etc.
3. Develop system documentation designed to capture functional, interface, integration, data, security, and internal control requirements for all systems, subsystems or modules. The documentation will also include data sensitivity, database design, and security and internal control specifications.
4. Organize, plan, and recruit personnel for remaining outstanding positions; mobilize resources; develop procedures; accomplish all actions necessary to commence full performance of the services at the end of the onboarding period.
5. Establish project management procedures and review Standard Operating Procedures (SOPs). Note: most IT Infrastructure processes have not been captured in SOPs. In the instances where SOPs have not been documented, PiDoxa will create SOPs during the transition period by capturing existing knowledge from the incumbent vendor.
6. Create new SOPs for each functional area covered under this SOW. Content may include: Quality Control (QC), work assignments, approval authorities, workflow, functional relationships between LM and PiDoxa, functional relationships between PiDoxa's organizational elements (including subcontractors), and any other information needed for efficient and uniform performance.