**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, PhD.,

    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants

---

# EXHIBIT 1

---

Case No. 1:22-cv-01129-NYW-SKC   Document 162-1   filed 06/19/23   USDC Colorado   pg 2
Case 9:23-cv-80900-XXXX   Document 1   Entered on FLSD Docket 06/09/2023   Page 1 of 12
of 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:23-cv-80900

ERIC COOMER, Ph.D.,

        Plaintiff,

v.

MICHAEL J. LINDELL, et al.,

        Defendants.

**NON-PARTY CHRISTOPHER RUDDY'S
MOTION TO QUASH SUBPOENAS FOR DEPOSITION OR,
IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER AND
INCORPORATED MEMORANDUM OF LAW**

Non-Party, CHRISTOPHER RUDDY ("*Mr. Ruddy*" or "*Movant*"), by and through his undersigned counsel, Duane Morris LLP, and pursuant to Federal Rules of Civil Procedure 45(d) and 26(c) and S.D. Fla. L.R. 7.1, moves for an Order quashing the Amended Subpoena to Testify at a Deposition in a Civil Action (the "*Lindell Subpoena*") served by Defendants, MICHAEL J. LINDELL ("*Lindell*"), FRANKSPEECH LLC ("*FrankSpeech*"), and MYPILLOW, INC. ("*My Pillow*") (collectively, "*Defendants*"), and the Subpoena to Testify at a Deposition in a Civil Action (the "*Coomer Subpoena*") served by Plaintiff, Eric Coomer, Ph.D. ("*Dr. Coomer*" or "*Plaintiff*"), collectively referred to herein as the "*Subpoenas*", or, in the alternative, moves for a Protective Order precluding said deposition.[1] In support thereof, Movant states as follows:

---

[1] As set forth herein, this Motion concerns the Subpoena issued by the Defendants in *Eric Coomer, Ph.D. v. Michael J. Lindell, et al.*, Case No. 1:22-cv-01129, which is currently pending before the United States District Court for the District of Colorado. However, the District where compliance is required is the United States District Court for the Southern District of Florida. As such, in accordance with Federal Rule of Civil Procedure 45(d)(3)(A), Mr. Ruddy moves for this Court to

Case No. 1:22-cv-01129-NYW-SKC   Document 162-1   filed 06/19/23   USDC Colorado   pg 3
Case 9:23-cv-80900-XXXX   Document 1   Entered on FLSD Docket 06/09/2023   Page 2 of 12
of 13

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The underlying action involves Plaintiff's lawsuit against Defendants for, among other things, defamation based on statements made by Defendants following the 2020 presidential election. This motion stems from the parties' attempts to depose Mr. Ruddy, the CEO of Newsmax Media, Inc. ("***Newsmax***"), to testify on a range of topics not raised in the operative complaint and that are wholly irrelevant to that complaint, nor a further amended complaint that is pending acceptance by the Court.

A. **The Colorado Action**

Plaintiff is the former Director of Product Strategy and Security for Dominion Voting Systems. On April 4, 2022, Dr. Coomer filed a civil lawsuit against Defendants for defamation, intentional infliction of emotional distress, civil conspiracy, and a permanent injunction concerning statements and remarks made by Defendants concerning the 2020 presidential election. That action is currently pending in the United States District Court for the District of Colorado captioned, *Coomer v. Lindell, et al*, Civil Action No. 1:22-cv-01129 (D. Colo.) (the "***Colorado Action***"). *See* First Amended Complaint, [ECF No. 21], attached hereto as **Exhibit A**.[2]

Lindell occasionally appeared on Newsmax TV and My Pillow advertised on Newsmax. *See* **Exhibit A**, ¶39.

---

quash Defendants' Subpoena or, in the alternative, issue a Protective Order precluding the deposition of Mr. Ruddy.

[2] Plaintiff filed an Amended Complaint on June 17, 2022. On April 6, 2023, Dr. Coomer moved in the underlying Colorado Action for leave to file a Second Amended Complaint under seal. The Colorado Action, [ECF No. 127]. Defendants opposed the motion on April 23, 2023 [ECF No. 136] and that motion remains pending before the Court.

Case No. 1:22-cv-01129-NYW-SKC   Document 162-1   filed 06/19/23   USDC Colorado   pg 4
Case 9:23-cv-80900-XXXX   Document 1   Entered on FLSD Docket 06/09/2023   Page 3 of 12
of 13

B.  **Defendants' Non-Party Discovery Sought from Newsmax**

1.  **Dr. Coomer's Action Against Newsmax**

On or about December 21, 2020, Dr. Coomer filed an action against Newsmax and others for defamation, intentional infliction of emotional distress, civil conspiracy, and sought preliminary and permanent injunctive relief. Newsmax and Dr. Coomer entered into a settlement agreement in May 2021 to resolve the dispute (the "***Settlement Agreement***"). It is undisputed that in May 2021, Newsmax issued an on-air retraction concerning statements made about Dr. Coomer. It is also undisputed that the Settlement Agreement contained no provisions concerning Defendants and did not prohibit Lindell from appearing on Newsmax, nor did Newsmax have any policy against his appearing. *See* Declaration of Christopher Ruddy dated June 9, 2023 ("***Ruddy Decl.***"), ¶¶9-11. Indeed, Lindell has appeared on Newsmax following the execution of the Settlement Agreement. *Id.* at ¶11.

2.  **February 2023 Document Subpoena**

On or about February 13, 2023, Defendants issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises of a Civil Action to Newsmax (the "***Document Subpoena***"), seeking, *inter alia*, a copy of the Settlement Agreement. Newsmax objected to the Document Subpoena by written objections. By agreement of the parties, Newsmax responded to the requests propounded in the Document Subpoena on April 4, 2023, and produced documents responsive to the requests shortly thereafter. Among other documents, Newsmax produced a copy of the Settlement Agreement.

3.  **May 2023 Deposition Subpoena for Mr. Ruddy**

On May 11, 2023, Defendants served an amended subpoena on Mr. Ruddy that commands an appearance for a deposition at 2255 Glades Road suite 324A, Boca Raton, Florida 33431 on June 21, 2023 at 9:00 a.m. *See* Lindell Subpoena attached hereto as **Exhibit B.**

Counsel for Defendants, have represented that they are seeking testimony of Mr. Ruddy relating to communication Mr. Ruddy purportedly had with Lindell. The communication allegedly relates to Paragraph 61 of Plaintiff's First Amended Complaint, which states:

> 61.     Less than a week later, on May 9, 2021, Lindell also appeared on Frankspeech, where he again inextricably linked Dr. Coomer to Dominion Voting Systems, thus perpetuating the conflation of conspiracy theories about Dominion with Dr. Coomer himself. "It's over for Dominion," Lindell stated. "It's too late to close the gate. The cows are out of the barn. Dominion, you did your best, and Smartmatic, to take our country through China. You did your best, you corrupt people, you. You tried to suppress our voice. You did it, but you failed." Lindell then turned his attention directly to Dr. Coomer, stating:
>
>> Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, **if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America**. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. **These are things that I have evidence of. The evidence is there.** You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody.

**Exhibit A**, ¶61 (emphasis in original).

In connection with this allegation, Defendants seek testimony from Mr. Ruddy for two reasons: (i) to confirm that the conversation whereby Lindell purportedly learned that, under the Settlement Agreement, Lindell and My Pillow were prohibited from appearing on Newsmax to discuss My Pillow or its products; and (ii) that Mr. Ruddy understood Lindell's above-referenced statements asserting that Dr. Coomer was "treasonous" and a "traitor to the United States of America" to be referring to the settlement agreement between Newsmax and Dr. Coomer.

In connection with the Lindell Subpoena, Plaintiff has also provided a redacted, non-public copy of the Second Amended Complaint subject to a protective order. *See* Second Amended Complaint attached hereto as **Exhibit C**. From what is not redacted, in addition to the alleged

4

statements made in the First Amended Complaint, Plaintiff includes allegations concerning a March 10, 2023 interview[3] conducted on *The Lindell Report* on FrankSpeech which allegedly took place shortly after the Rule 30(b)(6) depositions of Defendants My Pillow and FrankSpeech taken in this case, on March 8 and 9, 2023, respectively.[4]  In the interview, in response to an image of the cover page of Dr. Coomer's lawsuit, Lindell stated:

> Eric Coomer everyone. It says Mike Lindell, FrankSpeech, and My Pillow, Inc. Ok, everybody see that? This guy, this Eric Coomer sued Mike Lindell, FrankSpeech, and My Pillow, Inc. So everybody, you know what I did? I seen [*sic*] that and I had heard this Eric Coomer works for Dominion, ok, and I'll tell you when I had first heard that. But I had heard that, so I go, can you believe it? Another lawsuit. They're piling on. You know, didn't they sue me enough for eight billion or whatever it was? All of these billions? But they sued My Pillow and FrankSpeech. So what did I do? You know, back then, and every day, it's another lawsuit. Throw it on the pile. I never read it, everybody. I never even read it.

With regard to the Settlement Agreement, Lindell then stated, "[w]hat those guys did, Brannon, what Eric Coomer and his lawyers did, putting this lawsuit, or making a deal with Chris Ruddy, and then part of the deal is you don't let Mike Lindell come on, think about that! Think about my employees. Think how mad I was. I'm going, you're going to hurt my employees like that?" and "I stand by my words! I called him a criminal! I called his lawyers a criminal! And you know what? I stand by that, because what they did to My Pillow is criminal. What they did to me is criminal. What they did to FrankSpeech. It is criminal!" *See* **Exhibit C**, ¶¶128-129.

Like the First Amended Complaint, the Second Amended Complaint contains no allegations regarding any discussion between Mr. Ruddy and Lindell, nor that Lindell has claimed

---

[3] *See* Mike Lindell, *The Lindell Report (3-10-23)*, FRANKSPEECH, Mar. 10, 2023.

[4] The parties have refused to provide a copy of the transcript of the Rule 30(b)(6) deposition testimony.

Case No. 1:22-cv-01129-NYW-SKC    Document 162-1    filed 06/19/23    USDC Colorado    pg 7
of 13
Case 9:23-cv-80900-XXXX    Document 1    Entered on FLSD Docket 06/09/2023    Page 6 of 12

that such conversation was the basis for his motivations to make the statements he made regarding Dr. Coomer.

### 4. June 2023 Deposition Subpoena for Mr. Ruddy

On June 8, 2023, following conferral with parties, Plaintiff served a Cross-Notice of Intent to Take Oral and Video Deposition of Mr. Ruddy and the Coomer Subpoena commanding an appearance at the same time and location as that commanded in the Lindell Subpoena. *See* Coomer Subpoena, attached hereto as **Exhibit D**. Counsel for Plaintiff has similarly represented that Plaintiff is seeking testimony concerning the same portions of the Second Amended Complaint as that noted above.

## ARGUMENT AND CITATION TO AUTHORITIES

### I.    LEGAL STANDARDS

The scope of discovery under the Federal Rules of Civil Procedure is broad "albeit, not unlimited and the court has wide discretion when setting the discovery limits." *Farnsworth v. The Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Federal Rule of Civil Procedure 45(d)(3)(A) explicitly provides, in pertinent part, that: "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden." *See AF Holdings, LLC v. Doe*, 2012 WL 488217, at *2 (S.D. Fla. Feb. 14, 2012) ("A motion to quash a subpoena is governed by Federal Rule of Civil Procedure 45. The Rule provides that a subpoena must be modified or quashed if, among other things, it . . . 'subjects a person to undue burden.'").

Moreover, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c); *see Solar Star Sys., LLC v. Bellsouth Telecomms., Inc.*, 2011 WL 1226119, at *1 (S.D. Fla. Mar. 30, 2011) ("Federal district courts have wide discretion to limit the scope of discovery or control its timing to protect a [movant] from annoyance, oppression, or undue burden or expense."); *Turner*

6

Case No. 1:22-cv-01129-NYW-SKC   Document 162-1   filed 06/19/23   USDC Colorado   pg 8
Case 9:23-cv-80900-XXXX   Document 1   Entered on FLSD Docket 06/09/2023   Page 7 of 12
of 13

*v. Ramo, LLC.*, 2010 WL 11479360, at *2 (S.D. Fla. Nov. 8, 2010) (same). The scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery under Rule 26. *See Jordan v. Commissioner, Mississippi Dep't of Corrections*, 947 F.3d 1322, 1329 (11th Cir. 2020)("[I]t is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules"); *see also* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) ("mak[ing] it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."). To determine whether a movant "has satisfied the burden of 'good cause,' 'a court should balance the non-moving party's interest in obtaining discovery and preparing for trial against the [movant's] proffer of harm that would result from the [discovery].'" *Siliakus v. Carnival Corp.*, 2022 WL 218895, at *2 (S.D. Fla. Jan. 25, 2022) (internal quotation omitted); *see also Plain Bay Sales, LLC v. Gallaher*, 2021 WL 3270101, at *1 (S.D. Fla. July 29, 2021).

Further, Federal Rule of Civil Procedure 26(b) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b); *see also Wright v. AmSouth Bancorporation*, 320 F. 3d 1198, 1205 (11th Cir. 2003) (court may prohibit discovery that seeks irrelevant material); *Walker v. Prudential Prop. & Cas. Ins. Comp.*, 286 F.3d 1270, 1280 (11th Cir. 2002) (holding that discovery is limited to matters that are relevant to the claim or defense of any party).

Here, the Court should exercise its discretion to quash the Subpoenas that place an undue burden on Mr. Ruddy, a non-party, because the testimony sought by the Subpoenas is irrelevant to any claims or defenses in the underlying Colorado Action, is not proportional to the needs of the underlying Colorado Action, and therefore exceeds the scope of permissible discovery.

Case No. 1:22-cv-01129-NYW-SKC   Document 162-1   filed 06/19/23   USDC Colorado   pg 9
of 13
Case 9:23-cv-80900-XXXX   Document 1   Entered on FLSD Docket 06/09/2023   Page 8 of 12

**II.     THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY FAR EXCEED THE PERMISSIBLE SCOPE OF DISCOVERY**

**A.     The Subpoenas Seeks Testimony That Is Wholly Irrelevant to Any Claim or Defense In The Underlying Colorado Action**

Courts routinely quash subpoenas that seek irrelevant material under Rule 26(b). *See*, *e.g.*, *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007) (it is requesting party's burden "to prove its requests are relevant")(citation omitted); *see also Bailey Indus., Inc. v. Clip, Inc.*, 270 F.R.D. 662, 667 (N.D. Fla. 2010) ("A subpoena may be quashed if it calls for 'clearly irrelevant' matter . . . .")(citing *Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir. 1959)[5]); *Barrington v. Mortgage IT, Inc*., 2007 WL 4370647 (S.D. Fla. Dec. 10, 2007) (granting party's motion to quash because the subpoenas at issue were overly broad).

As stated above, the parties seek testimony from Mr. Ruddy solely to confirm: (i) that the conversation whereby Lindell purportedly learned that, under the Settlement Agreement, Lindell and My Pillow were prohibited from appearing on Newsmax to discuss My Pillow or its products; and (ii) that Mr. Ruddy understood Lindell's above-referenced statements asserting that Dr. Coomer was "treasonous" and a "traitor to the United States of America" to be referring to the settlement agreement between Newsmax and Dr. Coomer. Such testimony is unnecessary and irrelevant to the claims and defenses in the underlying Colorado Action.

First, the First Amended Complaint does not contain *any* allegations regarding any conversation that may have taken place between Defendants and Mr. Ruddy. The First Amended Complaint thus does not make any such conversation an issue in the underlying Colorado Action. The allegation that Plaintiff was "making deals at Newsmax" does not relate to any conversation

---

[5] In *Bonner v. City of Prichard, Ala*., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the newly formed Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

8

Case No. 1:22-cv-01129-NYW-SKC   Document 162-1   filed 06/19/23   USDC Colorado   pg 10
of 13
Case 9:23-cv-80900-XXXX   Document 1   Entered on FLSD Docket 06/09/2023   Page 9 of 12

between Defendants and Mr. Ruddy. *See* **Exhibit A**, ¶61. It is undisputed that a Settlement Agreement was reached between Newsmax and Dr. Coomer, that Newsmax issued an on-air retraction concerning statements made about Dr. Coomer, and that the Settlement Agreement made no references to Defendants. Second, Mr. Ruddy's understanding of Lindell's statements that Dr. Coomer was "treasonous" and a "traitor to the United States of America" is wholly irrelevant. *See Mink v. Knox*, 613 F.3d 995, 1009 (10th Cir. 2010) (In defamation, "the test is . . . how a reasonable person would understand those statements in that context.").

To the extent that the parties seek to argue that the conversation provided the motivation for Defendants' defamation of Plaintiff, Movant submits that even if the Settlement Agreement in fact contained a provision regarding Lindell (which it does not), or if Mr. Ruddy *told* Lindell the Settlement Agreement prohibited Newsmax from having Lindell on air, such an agreement would not provide a justification for or a defense to the purported defamation alleged in the First Amended Complaint.

Thus, information about a conversation between Messrs. Lindell and Ruddy is simply irrelevant to the underlying Colorado Action. Since it is does not seek testimony that is relevant to any of the parties' claims or defenses in the Colorado Action, the Subpoenas must be quashed.

**B.     The Subpoenas Should Be Quashed as Premature While the Motion For Leave to Amend Remains Pending**

To the extent that the parties argue Mr. Ruddy's testimony will be relevant to the Second Amended Complaint, this argument is premature and not ripe for consideration. Plaintiff's Motion for Leave to Amend the First Amended Complaint remains pending before the Colorado court and until such time when the motion is granted, any subpoena issued based upon the allegations in the Second Amended Complaint is premature.

9

    **C.**    **Even If the Second Amended Complaint is Accepted By the Colorado Court, Mr. Ruddy's Testimony Remains Wholly Irrelevant to Any Claim or Defense At Issue**

Even if the Second Amended Complaint were to be accepted as the operative complaint in the Colorado Action, Mr. Ruddy's testimony would remain wholly irrelevant to any claims or defenses as framed by the pleadings. As can be seen in portions of the redacted version shared by Plaintiff's counsel, the Second Amended Complaint is devoid of any allegations concerning any conversations between Defendants and Mr. Ruddy. The only reference to Mr. Ruddy is in regards to the March 10, 2023 Lindell interview in which Lindell stated, "[w]hat those guys did, Brannon, what Eric Coomer and his lawyers did, putting this lawsuit, or making a deal with Chris Ruddy, and then part of the deal is you don't let Mike Lindell come on, think about that!" *See* **Exhibit C**, ¶128. In this allegation Mr. Ruddy is merely a stand-in for Newsmax as the entity that entered the Settlement Agreement with Dr. Coomer. *See* Ruddy Decl., ¶10.

Again, the fact of the settlement is undisputed, as the contents of the statement that was issued by Newsmax about Dr. Coomer. Mr. Ruddy's testimony is not needed to establish that an agreement exists, nor anything about the statement. Neither the allegations regarding the Settlement Agreement between Dr. Coomer and Newsmax, nor the allegations regarding Lindell's perceived belief about that agreement reference a discussion with Mr. Ruddy.

The parties already have information concerning the settlement or "deal," since Newsmax has already produced a copy of the Settlement Agreement, and it is undisputed that the Settlement Agreement makes no reference to Lindell or Defendants. *See* Ruddy Decl., ¶11. To the extent the parties intend to establish that Lindell was motivated by such a conversation in light of his purported testimony, there is no need for Mr. Ruddy to testify. Whether the conversation happened or not, or whether the contents of any such conversation were as claimed by Lindell or not, Mr. Ruddy's recollection of such conversation is irrelevant to Lindell's motivations for making certain

10

statements and Lindell has testified as to his recollection, so Plaintiff already has a means of arguing motive. The Second Amended Complaint sets forth Lindell's perceived belief – that Dr. Coomer made an agreement with Newsmax that kept him off the air – as the purported motivation for his statements. There is no dispute that the Settlement Agreement does not reference Lindell. Indeed, Lindell has appeared on Newsmax following the Settlement Agreement. *See* Ruddy Decl., ¶11. Whether Lindell's belief that purportedly caused Defendants to make to the allegedly defamatory statements was based on a misimpression from a conversation with Mr. Ruddy is immaterial. The context of the statements at issue are clear in the Second Amended Complaint and his stated reason for targeting Dr. Coomer are clear. Whether his perception was correct or not is not at issue, but there also remains no reason for Mr. Ruddy to testify as to his impression and understanding of Defendants' remarks.

## CONCLUSION

Based upon the foregoing, Non-Party Christopher Ruddy respectfully requests this Honorable Court enter an Order: (i) quashing the Subpoenas in their entirety; or (ii) in the alternative, entering a protective order precluding the parties from taking the deposition of Mr. Ruddy; and (iii) for such other and further relief as the Court deems necessary and proper.

## LOCAL RULE 7.1(a)(3) PRE-FILING CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(a)(3), the undersigned counsel hereby certifies that counsel for Mr. Ruddy have conferred with counsel for Plaintiff and Defendants via email and telephone about the relief requested herein, but were unable to resolve their differences thereby necessitating the filing of the instant Motion.

Dated this 9th day of June, 2023.

                                                Respectfully Submitted,

                                                /s/ *Julian A. Jackson-Fannin*
                                                Julian A. Jackson-Fannin, Esq.
                                                Florida Bar No. 93220
                                                DUANE MORRIS LLP
                                                201 S. Biscayne Boulevard
                                                Suite 3400
                                                Miami, Florida 33131-4325
                                                Tel: 305.960.2200
                                                jjfannin@duanemorris.com
                                                pnmendoza@duanemorris.com
                                                jmagarin@duanemorris.com