IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, PH.D.,

    Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC, AND MY PILLOW, INC.,

    Defendants.

---

**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF J. ALEX HALDERMAN**

---

## BACKGROUND

Plaintiff's proposed expert witness, Professor J. Alex Halderman ("Halderman"), is widely known as an expert in election cybersecurity. In that role, he has engaged in a zealous, decades-long crusade to expose how easily voting machines can be hacked, and to warn the public that it is "only a matter of time until a major election is disrupted or stolen in a cyber attack." (Ex. 1, *Russian Interference in the 2016 U.S. Elections: Hearing Before the S. Select Comm. on Intelligence*, 115th Cong. 73 (2017) (statement of Halderman)). Halderman repeated this warning in written remarks submitted in connection with his February 27, 2019, testimony to the U.S. House Appropriations Subcommittee. (Ex. 2, *Election Security: Ensuring the Integrity of U.S. Election Systems: Hearing Before the Subcomm. on Fin. Serv. & Gen. Gov't of the H. Comm. on Appropriations*, 116th Cong. 5 (2019) (statement of Halderman) (Halderman Dep. Ex. 158)).

In addition to speaking before Congress multiple times regarding threats to the cybersecurity of voting machines, Halderman has published peer-reviewed articles in professional

journals and has regularly made presentations to groups of cybersecurity experts. He has even testified as an expert witness in litigation alleging that there was a serious risk that the 2016 presidential election had been hacked in favor of Donald Trump. *Stein v. Cortés*, 223 F. Supp. 3d 423, 441–42 (E.D. Pa. 2016). In a subsequent litigation, just months before the 2020 election, he testified as an expert witness in support of banning the use of voting machines which counties in Pennsylvania had recently acquired. *Stein v. Boockvar*, Civ No. 16-6287, 2020 WL 2063470 (E.D. Pa. Apr. 29, 2020). Halderman testified of the serious risk that the new voting machines could be hacked and votes changed. *Id.* at *39–42, 56.

Halderman's warnings were not just for government officials, judges, and other cybersecurity experts. He has participated in hundreds of media interviews and written editorials regarding his dire warnings about the threat that a national election could be hacked and stolen by hackers from hostile nations. In a 2018 *New York Times*-produced video clearly meant to appeal to the masses, Halderman told us that "electronic voting machines Americans got to solve the problem of voting integrity . . . turned out to be an awful idea. That's because people like me can hack them all too easily. . . . Imagine what the Russians and North Koreans can do."[1]

Even after the 2020 election, Halderman continued to spread his warnings of the dire risks of electronic voting machines, telling a League of Women Voters group in April 2021 that, from a scientific perspective, changing a large-scale election result is not "out of reach for sophisticated attackers like Russia or other foreign governments that have in the past posed threats to our election

---

[1] Matteen Mokalia, Taige Jensen, & J. Alex Halderman, *I Hacked an Election. So Can the Russians*, *N.Y. Times*, 0:36–1:05 (Apr. 5, 2018), https://www.nytimes.com/video/opinion/100000005790489/i-hacked-an-election-so-can-the-russians.html?src=vidm.

systems."[2] He said that CISA's November 12, 2020 statement that the "November 3rd election was the most secure in American history" is "preposterous" and "not even close".[3]

Having successfully spread his dire warnings far and wide, Halderman now proposes to testify as an expert witness criticizing Lindell—who is not a world-famous-cybersecurity expert—for believing Halderman's dire warnings and for believing others who claimed to present Lindell with evidence that China interfered in the 2020 presidential election.

Halderman's proposed expert testimony is set forth in his May 5, 2023 Declaration (Ex. 3 (Restricted), Halderman Decl.) and in the transcript of his August 16, 2023 deposition (Ex. 4, Halderman Dep.). Much of his proposed testimony, however, is irrelevant because his opinions have nothing to do with the alleged defamatory statements Plaintiff Eric Coomer ("Coomer") raises in this case. Instead, Halderman seems focused on showing that Defendant Michael Lindell's ("Lindell") statements about his genuinely held belief that China hacked the 2020 election are false. Coomer has not alleged that Lindell accused Coomer of helping China hack the election. Halderman's attack on Lindell's beliefs is simply irrelevant to this action.

Halderman's proposed testimony also contains opinions as to the state of mind and credibility of Lindell and others, which are improper subjects for expert testimony. Accordingly, Defendants respectfully request that the Court partially exclude Halderman's proposed expert testimony as explained below.

## ARGUMENT

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.

---

[2] *League of Women Voters of Washtenaw County, Brews & Views April 2021 Election Security - J. Alex Halderman, PhD*, YouTube, 36:09–36:28 (Apr. 17, 2021), https://www.youtube.com/watch?v=hw_a5vmLX5k.

[3] *Id.* at 6:37–6:45.

3

It requires that a qualified expert's testimony be reliable and relevant. The burden is on the proponent of the proposed expert testimony to prove each of these requirements. *Hoffman v. Ford Motor Co.,* 493 Fed. Appx. 962, 972–74 (10th Cir. 2012); *TBL Collectibles, Inc. v. Owner's Ins. Co.*, 285 F. Supp. 3d 1170, 1178–79 (D. Colo. 2018).

The elements of this defamation action delineate the scope of relevancy. Under the First Amendment and Colorado law, Coomer must prove that a statement involving a matter of public concern was "(1) [d]efamatory, (2) [m]aterially false, (3) [c]oncerned [Coomer], (4) [p]ublished to a third party, (5) [p]ublished with actual malice, and (6) [c]aused [Coomer] actual or special damages." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017) (citations omitted).

I.   **MUCH OF HALDERMAN'S PROPOSED TESTIMONY IS NOT RELEVANT AND SHOULD BE EXCLUDED**

Expert testimony that does not relate to any issue in the case is not relevant. *TBL Collectibles*, 285 F. Supp. 3d at 1179. Here, much of Halderman's proposed testimony has nothing to do with the any issue in this defamation case. In particular, 55 paragraphs of Halderman's Declaration (Ex. 3, ¶¶ 25–71, 99–106) have nothing to do with alleged defamatory statements Lindell or anyone else made about Coomer. Instead, in those 55 paragraphs, Halderman attacks statements he attributes to Lindell that concern China hacking the election, not to Coomer doing anything at all.

The irrelevance of the majority of Halderman's proposed testimony to Coomer's case is highlighted by Halderman's lack of knowledge regarding the defamatory statements Lindell supposedly made about Coomer. Tellingly, Coomer's name appears just once in the 55 irrelevant paragraphs of the Halderman Declaration. (*Id.* ¶ 25). At his deposition, Halderman was unable to identify any allegedly defamatory statements Lindell made about Coomer, other than that he called

4

him a "criminal" and a "traitor." (Ex. 4 at 157:18–158:8). Even then, Halderman was unable to identify the specific context in which those two words were stated. (*Id.* at 158:3–23, 162:17–163:16). Halderman could not even say whether Lindell ever said that Coomer participated in a plot to rig the election. (*Id.* at 164:25–165:3). Coomer, however, has acknowledged that Lindell has not accused him personally of rigging the election. (Ex. 5, Pl. Dep., at 32:24–33:8).

Halderman argued at his deposition that any statement Lindell may have made about hacking is inherently a statement about Dominion, which is inherently a claim about Coomer. (Ex. 4 at 162:17–163:9). Yet in the 55 irrelevant paragraphs criticizing statements Lindell allegedly made about China hacking the election, Dominion is mentioned just three times and never in connection with Coomer. (Ex. 3, ¶¶ 104–05). Moreover, Halderman acknowledges that the statements made about Dominion in those two paragraphs were made by Russell Ramsland, not Lindell, in an expert report Ramsland submitted in a Michigan court case. The effect of permitting Halderman's irrelevant testimony is to greatly expand this relatively simple case about alleged defamatory statements made by Lindell about Coomer into a sprawling and inflammatory case focused on Lindell's statements about the 2020 election having been hacked by China. Beyond substantially lengthening the trial, the natural outcome of this transformation will be to confuse and inflame the jury.

    **A.**    **Halderman's Testimony Concerning the Subject Matter of *Absolute Proof*, *Absolute Interference*, and *Absolute 9-0* Should Be Excluded**

Halderman's opinions expressed in paragraphs 25 through 46 of his Declaration concern statements Lindell published in three videos he made explaining his concerns that China hacked the 2020 election—*Absolute Proof*, *Absolute Interference*, and *Absolute 9-0*. Halderman summarizes *Absolute Proof* as "advanc[ing] the theory that attackers from China and other foreign countries hacked into voting systems across the U.S. and switched votes from Trump to Biden."

5

(*Id.* ¶ 26). To the extent Halderman more than mentions *Absolute Interference*, he describes it as "elaborat[ing] on his hacking theory . . . ." (*Id.* ¶ 28). Halderman summarizes *Absolute 9-0* as "ma[king] bold new claims about the strength of his evidence [which] would convince the Supreme Court to vote unanimously to invalidate the results of the presidential election." (*Id.* ¶ 39). Halderman then describes his reasons for disbelieving the hacking concerns Lindell describes in those videos. Halderman's analysis never even mentions Coomer or his former employer, Dominion, let alone explains how his analysis somehow demonstrates that any statements Defendants made *about Coomer* were false, were made with actual malice, or somehow caused damage to Coomer. (*Id.* ¶¶ 29–46).

Not only has Halderman failed to explain how these opinions have any relevance to Coomer's defamation action, but Coomer has not alleged that those videos contain defamatory statements about him. In fact, in messages exchanged between Coomer (identified as "EC") and his brother, Coomer acknowledges that there is nothing in *Absolute Proof* for which he could sue Lindell, even though it was Coomer's stated goal to find a reason to sue Lindell:

| | |
|---|---|
| EC | So they do have segments of me in that stupid absolute proof bull*** |
| . . . . | |
| [Brother] | they pulled your q/a session regarding using cellular network for data transmission |
| . . . . | |
| EC | Yeah… Probably not actionable… |
| EC | I'd love to sue this clown too. |

(Ex. 6, Coomer Text Messages Feb. 5, 2021 (Pl. Dep. Ex. 17) at EC 22cv01129 001259–60; *see* Ex. 5 at 248:13–249:21). There is no claim in this case that *Absolute Interference* or *Absolute 9-0* even mention Coomer. (*See* Ex. 5 at 249:16–21).

6

Thus, this topic of Halderman's proposed expert testimony is irrelevant and prejudicial because inclusion of such testimony will only serve to inflame the jury. It must be excluded.

B. **Halderman's Testimony Concerning Data Revealed at the August 2021 Cyber Symposium Is Irrelevant and Must Be Excluded**

Paragraphs 47 through 67 of Halderman's Declaration concern his analysis of data released at the August 2021 Cyber Symposium. Again, neither Coomer nor Dominion's names are mentioned anywhere in these 21 paragraphs, and Halderman offers no explanation how these paragraphs relate to Coomer. Nothing in Halderman's analysis or opinions in any way concerns how one or more statements Defendants published about Coomer were false, were made with actual malice, or somehow caused damage to Coomer.

In paragraphs 68 through 71, Halderman claims that voting system data distributed by someone at the Cyber Symposium "harmed election security." Halderman's opinions here have nothing to do with Coomer. The heading of this section makes clear that Halderman's opinions concern election security generally and are not an analysis demonstrating that any statements Defendants published about Coomer were false, were made with actual malice, or were the cause of any damage to Coomer. The inclusion of such irrelevant opinions would only risk undue prejudice to Lindell and improperly inflame the jury into punishing Lindell for his supposed harm to democracy by awarding an undeserved windfall to Coomer. Halderman should be precluded from testifying as to this irrelevant subject matter.

C. **Halderman's Proposed Testimony About the Inaccurate Election Results Posted in Antrim County, Michigan Must Be Excluded**

Paragraphs 99 through 106 also have nothing to do with Coomer. In this section of his Declaration, Halderman attacks the expert report of Russell Ramsland Jr. submitted in connection with an investigation of the erroneous reported election results in Antrim County, Michigan. Halderman does not: identify a specific statement Lindell has made about the Antrim County

7

election results; mention Coomer or his former employer, Dominion; or offer any analysis explaining how statements about the publication of inaccurate election results in Antrim County somehow constitute a defamatory statement about Coomer. This makes it plain that proposed testimony on Antrim County is irrelevant to Coomer's case. The subject matter of this proposed testimony should be excluded.

II. **HALDERMAN'S PROPOSED TESTIMONY REGARDING STATEMENTS OLTMANN MADE ABOUT COOMER ARE AT MOST CONDITIONALLY RELEVANT**

Halderman uses about 27 paragraphs to attack allegedly defamatory statements made by Joe Oltmann about Coomer. (Ex. 3, ¶¶ 72–98). While Oltmann's claims may have been broadcast by Defendant Frankspeech on May 3, 2021, and Oltmann spoke at the August 2021 Cyber Symposium, neither Frankspeech nor any other Defendant can be held liable for these statements unless Coomer presents clear and convincing proof that any publishing Defendant "in fact entertained serious doubts as to the truth of" Oltmann's statements about Coomer. *Miles v. Nat'l Enquirer*, 38 F. Supp. 2d 1226, 1228 (D. Colo. 1999) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1967)). Halderman's opinions related to Oltmann's statements are not even potentially relevant if Coomer cannot satisfy this standard regarding a Defendant's publication of Oltmann's statements. As set forth in Defendants' Motion for Summary Judgment, Coomer has failed to present such evidence. Halderman's testimony concerning the alleged falsity of Oltmann's statements is therefore irrelevant and should be excluded.

III. **HALDERMAN'S PROPOSED TESTIMONY REGARDING COOMER'S CHARACTER MUST BE EXCLUDED**

Based upon what appears to be the most minimal of contact—being introduced to Coomer at a trade fair and seeing him testify at a preliminary injunction hearing—Halderman opines that Coomer "was a man of principle who shared my goal of safeguarding election integrity." (Ex. 3,

8

¶ 8). The extent of Halderman's ability to judge Coomer's character aside, the relevance of his proposed testimony is murky. Halderman appears to suggest that Coomer could not have vowed to rig the 2020 election because "he is a man of principle" and had a "goal of safeguarding election integrity." (*Id.*) Even if relevant, such testimony is inadmissible character evidence under Rule 404(a)(1) of the Federal Rules of Evidence, which provides, "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." It should be excluded. *See Perkins v. Fed. Fruit & Produce Co.*, No. 11-cv-00542-REB-KLM, 2012 WL 1658871, *9–11 (D. Colo. May 3, 2012).

### IV. HALDERMAN'S CHARACTERIZATIONS OF LINDELL'S BELIEFS AS "CONSPIRACY THOERIES" MUST BE EXCLUDED

The phrase "conspiracy theory" in common usage has a pejorative connotation. (Ex. 7, Joseph E. Uscinski & Adam M. Enders, *What Is a Conspiracy Theory and Why Does It Matter?*, *Critical Rev.*, Oct. 3, 2022, at 1–2, https://doi.org/10.1080/08913811.2022.2115668, published at 35 *Critical Rev.* 148 (2023); Ex. 8, J. C. M. Duetz, *What Does It Mean for a Conspiracy Theory To Be a "Theory"?*, 37 *Soc. Epistemology* 438, 438–39 (2023)). "Conspiracy theories are widely held to be not only false and the products of irrationality, but also to be particularly harmful." (Ex. 9, David Coady, *Conspiracy Theory as Hearsay*, 55 *Educ. Phil. & Theory* 756, 756 (2023)). Thus, as the phrase "conspiracy theories" is commonly understood, it implies that the beliefs labeled as such are inherently improbable by definition.

The Supreme Court in *St. Amant v. Thompson*, 390 U.S. 727 (1968) attempted to provide examples of situations where actual malice could be found, one of them being when a statement is "so inherently improbably that only a reckless man would have put [it] in circulation." *Id.* at 732. Halderman's use of the term "conspiracy theory" is essentially stating an opinion on a legal issue to be decided by the trier of fact in this case—whether Lindell's statements were made with actual

9

malice. *Straub v. CBS Broad., Inc.*, Civ. No. 14-5634, 2016 U.S. Dist. LEXIS 67764, at *2 (E.D. Pa. May 23, 2016) (quotation omitted) (citation omitted) (holding that expert "may not define 'actual malice' for the jury or offer an opinion as to whether Defendant's conduct meets that threshold because whether Defendant acted with actual malice is a legal conclusion," and "[s]uch testimony . . . would usurp the District Court's pivotal role in explaining the law to the jury"). Expert witnesses, however, cannot give an opinion "about legal conclusions to be drawn from the facts." *Phoenix Ins. Co. v. Trinity Universal Ins. Co.*, No. 12-cv-01553-REB-KLM, 2013 WL 4799619, at *4 (D. Colo. Sept. 9, 2013); *see also Straub*, 2016 U.S. Dist. LEXIS 67764, at *2. Accordingly, Halderman should be precluded from characterizing Lindell's beliefs, statements, or evidence as a "conspiracy theory" or as being part of a "conspiracy theory."

## V. HALDERMAN'S PROPOSED TESTIMONY REGARDING THE CREDIBILITY OF EVIDENCE MUST BE EXCLUDED

Similarly, Halderman also offers opinions that Lindell, other witnesses, or election security experts he relies upon are not credible, or that their evidence, conclusions, statements, and beliefs are implausible. (*E.g.*, Ex. 3., ¶¶ 10, 11, 25, 39 45, 75, 77, 78). Again, such language is essentially opining as to the legal issue of actual malice. For the same reason that Halderman may not opine that Lindell's beliefs and statements are "conspiracy theories," he may not opine that evidence that Lindell relies upon is not credible.

Additionally, expert witnesses are not permitted to testify that witnesses are not worthy of credence or do not make sense because such testimony invades the jury's exclusive function of making credibility determinations. Expert witnesses offering such opinions are likely to unduly influence the jury, thereby prejudicing the proponent of the evidence. *United States v. Hill*, 749 F.3d 1250, 1260–61 (10th Cir. 2014); *Carter v. Monger*, No. 19-cv-03555-GPG, 2022 WL 1115225, at *14–18 (D. Colo. Apr. 13, 2022).

## VI. HALDERMAN'S PROPOSED TESTIMONY REGARDING OTHERS' STATES OF MIND MUST BE EXCLUDED

Acting more as an advocate than an expert witness in this case, Halderman regularly speculates as to Lindell's state of mind even though he has never met him or talked to him about his beliefs. (Ex. 4 at 129:13–21). For example:

- Halderman speculates that Mr. Lindell's alleged defamatory speech is motivated by a desire "to promote his own political and business interests regardless of the truth." (Ex. 3, ¶ 10). That this is pure speculation is clear from Halderman's admission that he does not know whether Lindell has made money from his efforts to promote his concerns about China hacking the 2020 election, and that it is only speculation that he would be hoping to make money in the future. (Ex. 4 at 236:8–238:19).

- Halderman speculates that Lindell hired cybersecurity experts to examine his evidence of voting machine hacking based upon whether they would tell him what he wanted to hear. (*Id*. at 224:12–16).

- Even when such testimony was not responsive to the question presented, during his deposition Halderman seized upon the opportunity to describe Lindell's beliefs and statements as being a "hoax" dozens of times. (*E.g., id.* at 13:22–14:3, 127:13–20, 132:8–20, 149:14–20, 150:1–9, 154:11–24, 160:10–15, 163:2–9, 164:1–5, 186:17–188:4, 193:20–194:3, 195:23–196:10, 197:20–198:3, 203:14–19, 226:8–22, 227:2–14). Given that "hoax" is defined as "an act intended to trick or dupe" Halderman's use of that term is nothing more than an opinion on Lindell's state of mind. *See, e.g.*, *State v. Golden*, 735 S.E.2d 425, 430 (N.C. Ct. App. 2012) (quoting definition of "hoax" in Webster's Third New International Dictionary).

Because evaluation of a witness's motives, intent, knowledge, and belief is within the province of the factfinder, expert witnesses may not offer opinions or state inferences regarding a witness's state of mind. Instead, the expert witness is limited to testifying as to facts and observations from which *the jury* can infer motive or intent. *E.g.*, *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541, 2018 WL 571877, at *5–8 (D. Colo. Jan 26, 2018); *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-cv-4500-GHW, 2021 U.S. Dist. LEXIS 169521, at *43–44 (S.D.N.Y Sept. 1, 2021) (quotation omitted) (citations omitted) ("The drawing of inferences, particularly in respect of an intent-implicating question . . . is peculiarly within the

11

province of the fact finder that observed the witnesses."); *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.* No. 4:15-CV-307, 2018 WL 626355, at *8–10 (E.D. Tex. Jan. 30, 2018).

## CONCLUSION

Defendants do not question Professor Halderman's expertise or accomplishment in his field, where he is no doubt a preeminent figure. But Halderman is a cybersecurity expert, not a character witness. His dismissals of statements and beliefs that have nothing to do with Coomer are pure advocacy, not proper expert testimony. Halderman should be precluded from suggesting that Lindell's beliefs, statements, and evidence on unrelated matters are not credible.

Halderman's advocacy here is particularly concerning given his prior testimony. Indeed, a federal judge that has presided over two hearings at which Halderman has testified has expressed frustration with Halderman's overzealousness. In April 2020, Halderman testified *in support of* a motion to prevent Pennsylvania's use of recently purchased voting machines in the 2020 election because they could be hacked. Beyond simply finding Halderman to be "neither credible nor helpful," Judge Paul S. Diamond of the Eastern District of Pennsylvania criticized Halderman for:

> act[ing] more as an advocate than an "expert." Halderman repeatedly tried to avoid answering questions when the truthful response might not help Stein. He has routinely offered opinions without factual basis, apparently seeking to bolster Stein's litigation position. Indeed, Halderman's "advocacy" was so vigorous, I was compelled to caution him (to no avail).

*Boockvar*, 2020 WL 2063470, at *34–35 (citations omitted). Judge Diamond even found Halderman's testimony to be untruthful at times and that the party who retained Halderman (Dr. Jill Stein, Green Party nominee in the 2012 and 2016 presidential elections) "apparently underst[ood] that Halderman has little credibility." *Boockvar*, at *34–36.

Though Defendants do not seek to preclude his testimony entirely, Halderman should be precluded from engaging as an advocate in this litigation. He should not be permitted to: offer irrelevant opinions that only serve to inflame the jury; engage in speculative testimony regarding

12

the state of mind of Lindell and other witnesses in the case; opine as to the credibility of Lindell and other witnesses; invade the province of the jury with opinions regarding ultimate legal issues; or vouch for the character of Eric Coomer, a man he barely knows.

### CERTIFICATE OF CONFERRAL

The parties met and conferred regarding this motion via email on September 8, 15, and 18, 2023. This motion is opposed.

DATED: September 18, 2023                **PARKER DANIELS KIBORT LLC**

By: */s/ Ryan P. Malone*
   Andrew D. Parker (MN Bar #195042)
   Ryan P. Malone (MN Bar #395795)
   888 Colwell Building
   123 N. Third Street
   Minneapolis, MN 55401
   Telephone: (612) 355-4100
   Facsimile: (612) 355-4101
   parker@parkerdk.com
   malone@parkerdk.com

*Counsel for Defendants*