**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, PH.D.,

    Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants.

# EXHIBIT – 5

```
                                                            Page 1

 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
      Civil Action No. 1:22-cv-01129-NYW-SJC
 3   _____
 4
      ERIC COOMER, Ph.D.,
 5
              Plaintiff,
 6
      vs.
 7
      MICHAEL J. LINDELL, FRANKSPEECH
 8    LLC, AND MY PILLOW, INC.,
 9           Defendants.
     _____
10
           CONFIDENTIAL DEPOSITION OF ERIC COOMER, PH.D.
11                      February 15, 2023
     _____
12
      APPEARANCES:
13
      ON BEHALF OF THE PLAINTIFF:
14           CHARLES CAIN, ESQ.
             Cain & Skarnulis
15           300 Colorado Street, Suite 2850
             Austin, Texas  78701
16           Phone:  512-477-5000
             Email:  ccain@cstrial.com
17
      ON BEHALF OF THE DEFENDANTS:
18           RYAN P. MALONE, ESQ.
             Parker Daniels Kibort LLC
19           888 Colwell Building
             123 North Third Street
20           Minneapolis, Minnesota  55401
             Phone:  612-355-4100
21           Email:  malone@parkerdk.com
22
23
24
25
```

Page 30

1   A.   Various YouTube clips that I've seen with
2 additional interviews with Mr. Lindell where he's
3 mentioned me by name saying that I belong behind bars.
4   Q.   Do you have the dates or links to those
5 clips with you today?
6   A.   I do not.
7   Q.   Let's go to what will be marked as
8 Exhibit 2.
9       (Exhibit 2 was marked.)
10   Q.   Okay.  We are back on the record.  And I'm
11 glad we are.
12       That reminds me, Dr. Coomer, I should have
13 mentioned when we started that if you need a break at any
14 point today, let me know.  My request would be that if
15 there's a question that's pending, that you answer the
16 question before we break.  And we'll try to get through
17 this as expeditiously as possible.  Fair?
18   A.   That is fair.
19   Q.   Okay.  So we were just talking about a
20 number of paragraphs that you identified as your Amended
21 Complaint -- in your Amended Complaint that are
22 defamatory.  And you have just been handed a copy of that
23 Amended Complaint against Mr. Lindell, My Pillow and
24 Frankspeech.  And what I'd like you to do is turn to
25 paragraph 61, which can be found -- you probably have it

Page 31

1 already -- which can be found at page 36 of Exhibit 2.
2       Do you see that, Dr. Coomer?
3   A.   Yes, I do.
4   Q.   What is the false statement of facts that
5 gives rise to your claim of defamation in paragraph 61?
6 Statement or statements, plural.
7   A.   I don't -- I don't feel that I can make
8 that determination as I'm not an attorney.
9   Q.   Understanding that you're not an attorney,
10 my question is a little bit different.  I'm asking you for
11 your understanding of what a false statement of fact is.
12 The attorneys can sort out what defamation is.
13       But you identified a number of statements
14 here.  And so what I want to do is understand what you're
15 claiming is a fact, what you're claiming is an opinion,
16 of the claims that are facts, what's false.  Do you
17 understand?
18   A.   I think I do, and I think the biggest one
19 I can point out is that the quote, You are a traitor to
20 the United States, that is defamation, per se.  I am not
21 a traitor to the United States of America.
22   Q.   And it's your testimony here today that
23 that is -- whether someone can be a traitor or not is a
24 question of fact?
25   A.   Yes, it is, to my understanding.

Page 32

1   Q.   We'll get into it a little bit later today,
2 Dr. Coomer, but you've referred to some folks as traitors
3 and some folks as treasonous publicly, correct?
4   A.   Not to my recollection right now.
5   Q.   Okay.  But if you had, that would be okay?
6   A.   It depends on the context.
7   Q.   Would it be a statement of fact or a
8 statement of opinion?
9       MR. CAIN:  Object to form.
10   A.   It depends on the context.
11   Q.   (By Mr. Malone)  Okay.  Paragraph 61, other
12 than Mr. Lindell saying that you're a traitor, any other
13 false statements of fact in that paragraph?
14   A.   Yeah.  Just saying that he has evidence
15 thereof is false.  There is no evidence that I was
16 treasonous.  There is no evidence that I affected the
17 election.  The context here again is that -- and, you
18 know, there's more to this -- this whole paragraph is
19 about me rigging the election.  And that is patently
20 false.  I did not rig the election.  I did not attempt to
21 rig the election.  And he's saying, these are things that
22 I have evidence of, the evidence there is patently false.
23 There is no evidence.
24   Q.   You say looking at this paragraph is about
25 Mr. Lindell accusing you personally of rigging the

Page 33

1 election.  Is that your testimony just now?
2   A.   Yes.
3   Q.   Where does he say that?
4   A.   It is not explicitly stated.  I'd say it's
5 in context.  If I'm you, I'm turning myself in and
6 turning in the whole operation.  The whole operation
7 being the rigging of the election.  That is the context,
8 as I understand it.
9   Q.   And do you take that context from the block
10 of text that we're looking at now or from other things
11 that he said at that time, May 9th, 2021?
12   A.   Again, I think it's within the context of
13 this discussion, yes.  It's over for Dominion.  It's too
14 late to close the gate.  The cows are out of the barn.
15 So there's -- there's more up top here.  All right.  He's
16 talking about Dominion, to take our country through
17 China.  You did your best.  You corrupt people you.  You
18 tried to suppress our voice.
19       Again, I think the context there is in
20 direct relation to claims of election corruption.  You
21 did it, but you failed.
22       So, yes, I think that sets -- I think that
23 clearly sets this paragraph in connection with supposed
24 rigging of the election.
25   Q.   You mentioned Mr. Lindell's alleged

Page 246

1 order.
2     A.  Okay.
3     Q.  Okay.  This is a paragraph, left column,
4 that begins, "Dr. Coomer testified at the injunction
5 hearing that Dominion did not intend to encrypt the QR
6 barcode."
7         Do you see that?
8     A.  I do.
9     Q.  Is that how you testified?
10    A.  Yes, it is.
11    Q.  Why did Dominion not intend to encrypt the
12 QR barcode?
13    A.  Because as being part of the official
14 paper record, we felt that that had to be publicly
15 available information.  And if you encrypted it, then you
16 would have to provide the security keys, which you could
17 not do publicly.
18    Q.  I see.
19        The order goes on to say, "He also
20 testified regarding the use of digital signatures, secure
21 keys in the system 'that are part of the system and the
22 standard SHA-256 hashing algorithm.'"
23        Is that the -- the algorithm that we were
24 just talking about a few minutes ago?
25    A.  It's one method of digitally signing

Page 247

1 things.  I don't believe SHA-256 is used on the software
2 packages.  And while the QR barcode was not encrypted, it
3 was signed with a SHA-256 hash algorithm.
4     Q.  Was that a problem?
5     A.  No.
6     Q.  Okay.  Jumping up to the top right corner
7 of the page, there is a sentence that says, "He further
8 acknowledged the potential for compromise of the operating
9 system, by exploiting a vulnerability, that could allow a
10 hacker to take over the voting machine and compromise the
11 security of the voting system software."
12        Do you see that?
13    A.  I do.
14    Q.  Is that an accurate reflection of your
15 testimony?
16    A.  Insofar as I've stated multiple times,
17 given enough time and resources and unfetterred access,
18 there's no system that cannot be compromised.
19        Sorry for the double negative.
20    Q.  No.  That's okay.  I think I understand.
21        When you say, "by exploiting a
22 vulnerability," are you referring to a specific
23 vulnerability?
24    A.  Sorry.
25    Q.  I should clarify.  This is Judge

Page 248

1 Totenberg's summary of your testimony.  So if it's not
2 accurate, let me know.  But were you referring to a
3 specific vulnerability when you testified in
4 September 2020 in this case?
5     A.  My recollection, I was speaking of
6 vulnerabilities in general and not a specific one.
7     Q.  Okay.  So these were theoretical issues
8 that you were discussing at the injunction hearing?
9     A.  Again, the best of my recollection, that
10 is correct.
11    Q.  Okay.
12        (Exhibit 17 was marked.)
13    Q.  Okay.  Dr. Coomer, I have -- or you have
14 just been handed Exhibit 17, which is a series of text
15 messages you've produced in this case starting with the
16 Bates number of 001259.  Do you see that?
17    A.  I do.
18    Q.  Okay.  These are texts with Bill Coomer.
19 That's your brother William, right?
20    A.  Yes, that's my older brother.
21    Q.  Okay.  Is -- is your older brother a
22 lawyer?
23    A.  No.
24    Q.  Okay.  I don't mean to ask this question
25 indirectly.  So I'm just curious why, as far as you know,

Page 249

1 there is a privilege block at the beginning of these text
2 messages.
3     A.  I don't personally know.
4     Q.  Okay.
5     A.  Probably because -- well, I'm not going to
6 speculate.
7     Q.  Okay.  And it refers -- in your texts with
8 your brother Bill you're referring to absolute proof that
9 Mr. Lindell was in?
10    A.  Am I?  Can you --
11    Q.  Sure.  I'm referring to your text on
12 February 5th, 2021, where you say, So they do have
13 segments of me in that stupid absolute proof bullshit.
14 Then Bill responds, Is that a question or a statement?
15    A.  Okay.  Yes.
16    Q.  Okay.  So you've watched the film Absolute
17 Proof?
18    A.  I did.
19    Q.  Are you aware of any statements that
20 Mr. Lindell made about you in that film?
21    A.  I do not recall any.
22    Q.  Okay.  Were you familiar with Mr. Lindell
23 before the 2020 election?
24    A.  In general, yes.
25    Q.  And you knew him as the -- as what?

63 (Pages 246 - 249)

Page 257

1                 REPORTER'S CERTIFICATE

2

3

4              I, Laurel S. Tubbs, a Registered
5     Professional Reporter and Notary Public within the State
6     of Colorado, do hereby certify that previous to the
7     commencement of the examination, the deponent was duly
8     sworn by me to testify to the truth.
9              I further certify that this deposition was
10    taken in shorthand by me at the time and place herein set
11    forth and thereafter reduced to a typewritten form; that
12    the foregoing constitutes a true and correct transcript.
13             I further certify that I am not related
14    to, employed by, nor of counsel for any of the parties or
15    attorneys herein, nor otherwise interested in the result
16    of the within action.
17             My commission expires September 1, 2023.

18

19
                    LAUREL S. TUBBS
20                  Registered Professional Reporter
                    Registered Merit Reporter
21                  Certified Realtime Reporter
                    and Notary Public

22

23

24

25