IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, PH.D.,

 Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC, AND MY PILLOW, INC.,

 Defendants.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITION TESTIOMNY FROM DEFENDANT MICHAEL J. LINDELL AND MOTION FOR SANCTIONS PURSUANT TO F.R.C.P. 30 AND F.R.C.P. 37**

---

 Defendants Michael J. Lindell ("Lindell"), Frankspeech LLC ("Frankspeech"), and My Pillow, Inc. ("MyPillow") (collectively "Defendants") hereby respond to Plaintiff Eric Coomer, Ph.D.'s ("Plaintiff's") Motion to Compel and for Sanctions ("Motion") (ECF #172).

## INTRODUCTION

 Plaintiff may have resolved the issues complained of in his Motion had he properly raised them to the Court. The parties will now never know, as Plaintiff instead opted for an end-run around Federal Rule of Civil Procedure 37(a)(1), this District's Local Rules of Practice (D.C.COLO.LCivR 7.1(a)), and this Court's Scheduling Order (ECF #32, § 12 (citing D.C.COLO.LCivR 7.1(a))) to portray Lindell to the Court and to an eager media apparatus as "vulgar, threatening, loud, [and] disrespectful to Dr. Coomer's counsel and the Court, evasive, and largely non-responsive to questioning." (ECF #32 at 1). The Court should recognize this Motion for what it is: an unnecessary distraction from what is currently and properly before the Court. It is procedurally and legally deficient, and it does not serve to advance a fair resolution of the parties'

claims or defenses in this action. The Court should deny Plaintiff's Motion in its entirety for all reasons set forth below.

## BACKGROUND

1.  Lindell gave deposition testimony on March 8 and 9, 2023, as the corporate witness for MyPillow. He was deposed for more than seven hours during that deposition. (*See* Ex. 1, Excerpts of MyPillow Rule 30(b)(6) Dep., 6:1, 38:17–21, 118:20–24, 226:14–20, 241:1–5, 245:17–21, 309:6–10, 369:17–20, 172:2, 375:2–3, 393:21–22 (demonstrating times on and off the record).

2.  Lindell gave deposition testimony on March 9, 2023, as the corporate witness for Frankspeech LLC. He was deposed for nearly four hours and thirty minutes during that deposition. (*See* Ex. 2, Excerpts of Frankspeech Rule 30(b)(6) Dep., 8:3–5, 21:8–12, 111:20–24, 151:1–5, 258:2–6, 315:20–24, 323:2 (demonstrating times on and off the record)).

3.  Lindell's personal deposition took place on August 23, 2023. (*See* Lindell Dep., ECF #173 (Restricted)). That deposition began at 9:22 a.m. and concluded at 3:47 p.m. (*Id.* at 4:1, 367:18). This deposition included more than 360 pages of testimony over four hours and thirty-two minutes on the record. (*See id.* at 4:1 (on the record at 9:22 a.m.), 115:13–15 (off the record at 10:42 a.m.), 115:18–20 (on the record at 11:04 a.m.), 229:1–2 (off the record at 12:30 p.m.), 229:5–7 (on the record at 1:42 p.m.), 288:23–25 (off the record at 2:29 p.m.), 289:5–7 (on the record at 2:30 p.m.), 318:2–4 (off the record at 2:51 p.m.), 318:7–9 (on the record at 3:06 p.m.), 358:18–19 (off the record at 3:37 p.m.), 358:22–24 (on the record at 3:40 p.m.), 366:18 (off the record at 3:47 p.m.)).

4.  Approximately fifteen minutes into the deposition, Plaintiff's counsel stated that he would "continue the deposition for the time being, subject to filing our motion for sanctions for your deposition conduct." (*Id*. at 21:15–20).

2

5. Lindell's deposition then did continue for over four hours of on-the-record time. It did so without "constant breaks and disturbances," (ECF #172 at 5), and with a handful of breaks throughout, (ECF #173 at 115:13–15, 228:23–229:2, 288:23–25, 318:2–4).

6. Lindell did receive an emergency phone call relating to urgent MyPillow business, which necessitated additional breaks in his testimony. (*Id.* at 358:18–359:14, 367:18). Though Lindell needed to address these matters, he did not terminate his deposition. (*Id.*). He took a brief three-minute break to assess the nature of the emergency, continued answering questions for an additional seven minutes, then took a break to address the emergency. (*Id.*). It was at that point Plaintiff opted to suspend the deposition. (*Id.*).

7. At no point during the deposition did Plaintiff's counsel attempt to meet and confer with Defendant's counsel regarding the issues that Plaintiff now raises, nor did Plaintiff's counsel make any attempt to meet and confer after the conclusion of the deposition and before filing this Motion.

8. Prior to the filing of this Motion, Plaintiff made no further request to re-schedule Lindell's deposition. On September 6, 2023, Plaintiff's counsel simply emailed: "We'll be filing a motion for sanctions under FRCP 30 and 37 arising from Lindell's conduct in his deposition on August 23. I assume you'll oppose, but please confirm." (Ex. 3).

9. Plaintiff has not identified, nor are Defendants aware of, any attempt to contact the Court to request a status conference or to coordinate a joint submission to the Court. (*See* ECF #32, § 12 (citing D.C.COLO.LCivR 7.1(a)); Fed. R. Civ. P. 37(a)(1)).

10. As part of the Motion, Plaintiff submitted a link to twenty-six video clips of testimony Lindell provided on March 8 and 9, 2023 as the Rule 30(b)(6) Deponent of MyPillow and Frankspeech. (ECF #172-9, Exs. 9–34 (filed conventionally by Plaintiff via flash drive

submitted to Court)). Some of these clips were immediately and widely circulated throughout the internet, news, and social media sources.[1]

11.    Lindell does not deny that he was animated at times throughout the over sixteen hours of deposition testimony he has provided in an action he sincerely believes to be meritless. In one exchange during his March 8, 2023 deposition as the MyPillow corporate representative, Lindell used uncharacteristically coarse language when he believed his product was being impugned. (MyPillow Dep., ECF #172-6 (conventionally filed by Plaintiff), at 277:4–278:5). He regretted doing so, and he apologized multiple times to Plaintiff's counsel the following day for his more heated remarks. (Ex. 2 at 142:25–143:5, 194:19–21, 320:11–18).

12.    But the Motion's repeated claims that Lindell was "evasive" (ECF #172 at 1, 3, 7, 10) and Plaintiff's contention that there were "countless refusals to answer the questions asked" (*Id.* at 10) are simply not accurate. Plaintiff may not like Lindell's answers to questions asked during depositions, but that does not mean that Lindell evaded those questions.

---

[1] *See, e.g.*, *Watch MyPillow CEO Mike Lindell's Meltdown in 2020 Election Deposition*, CNBC (Sep. 11, 2023, 5:05 PM), https://www.cnbc.com/video/2023/09/11/watch-mypillow-ceo-mike-lindells-meltdown-in-2020-election-deposition.html; Nick Robertson, *Mike Lindell Blasts "Frivolous" and "Evil" Lawyers in Heated Deposition*, The Hill, (Sep. 9, 2023, 8:50 AM), https://thehill.com/regulation/court-battles/4195644-mike-lindell-blasts-frivolous-and-evil-lawyers-in-heated-deposition/; Jesse Paul, *Mike Lindell Has Been "Vulgar, Threatening, Loud (and) Disrespectful" in Colorado Defamation Lawsuit Depositions, Attorneys Say*, Colorado Sun, (Sep. 8, 2023, 11:09 AM), https://coloradosun.com/2023/09/08/mike-lindell-desposition-video/; Deena Winter, *Mike Lindell Goes Ballistic During Depositions, Lashing out at Lawyers*, Minn. Reformer, (Sep. 12, 2023, 9:19 AM), https://minnesotareformer.com/2023/09/12/mike-lindell-goes-ballistic-during-depositions-lashing-out-at-lawyers/; @qilnas, Reddit (Sep. 9, 2023), https://www.reddit.com/r/politics/comments/16edgpe/mike_lindell_melts_down_over_lumpy_pillows_during/?rdt=56035, Chris Dehghanpoor (@chrisd9r), Twitter (Sep. 8, 2023, 1:46 PM), https://twitter.com/chrisd9r/status/1700219131067277772.

# ARGUMENT

## I. PLAINTIFF FAILED TO MEET AND CONFER PRIOR TO BRINGING THIS MOTION

The Local Rules of Practice require parties to satisfy a duty to confer with an opposing party <u>before</u> filing any motion. Specifically, the Local Rule states:

> Before filing a motion, counsel for the moving party or an unrepresented party <u>shall</u> confer or make reasonable, good faith efforts to confer with any opposing counsel or unrepresented party to resolve the disputed matter. The moving party <u>shall</u> describe in the motion, or in a certificate attached to the motion, the specific efforts to fulfill this duty.

D.C.COLO.LCivR 7.1(a) (emphasis added). Federal Rule of Civil Procedure 37(a)(1) also imparts a duty to meet and confer before a party can bring a motion under this Rule. Fed. R. Civ. P. 37(a)(1). Rule 37 demands that any motion made thereunder "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." (*Id.*). The purpose of these rules is "to require the parties to confer and to attempt to resolve a dispute before incurring the expense of filing a motion and before requiring the court to address a disputed issue." *Hoelzel v. First Selection Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003) (citing prior version of D.C.COLO.LCivR 7.1(a)).

This Court emphasized, yet again, the importance of the duty to meet and confer in discovery disputes in its Section 12 of its Scheduling Order by stating that "[w]ith respect to discovery disputes, Parties <u>must</u> comply with D.C.COLO.LCivR 7.1(a)." (ECF #32, § 12 (emphasis added)).

The failure to meet and confer as required under Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.1(a) is sufficient grounds for denying this Motion without even considering its substance. *Geiger v. Z-Ultimate Self Def. Studios, LLC*, No. 14-cv-00240-REB-NYW, 2015 U.S.

5

Dist. LEXIS 67781,[2] at *15 (D. Colo. May 26, 2015) (citing *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,* No. 09-cv-00970-PAB-KMT, 2014 U.S. Dist. LEXIS 112871,[3] at *7 (D. Colo. Aug. 14, 2014)); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 U.S. Dist. LEXIS 17857,[4] at *69 (D. Colo. Feb. 8, 2010) (stating a motion to compel and for contempt could be denied based upon movant's failure to satisfy the requirements of Rule 37(a)(1) and prior version of D.C.COLO.LCivR 7.1(a)). "To satisfy the requirements of Local Rule 7.1(a), and Rule 37 of the Federal Rules of Civil Procedure, 'the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement, including by compromise if appropriate.'" *Ark. River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 14-cv-00638-CMA-NYW, 2015 U.S. Dist. LEXIS 84929,[5] at *8–9 (D. Colo. June 30, 2015) (quoting *Hoelzel*, 214 F.R.D. at 636)).

The Motion lacks the requisite certificate attesting to a good faith effort to meet and confer on these issues. Likewise, the Motion does not contain any attempt to describe the specific efforts Plaintiff took to meet and confer on this issue before involving the Court. This is a clear abdication of the duties required of Plaintiff under Rule 37(a)(1), Local Rule 7.1(a), and this Court's Scheduling Order. Indeed, Plaintiff first asserted its intent to bring this Motion roughly fifteen (15) minutes into Lindell's deposition. (ECF #173 at 21:15–20).

---

[2] 2015 WL 3396154

[3] 2014 WL 4056578

[4] 2010 WL 502721

[5] 2015 WL 4031846

At no point during the remaining balance of the deposition, in which counsel for both parties were in the room for at least another four hours together did Plaintiff's counsel attempt to resolve the dispute. At no point prior to that time did Plaintiff's counsel attempt to confer with Defendant's counsel to resolve the issue. That simply should have been done, particularly where the parties have demonstrated their willingness and ability to resolve issues on their own. Indeed, following the standard meet-and-confer process, the parties were even able to reach agreement on the disclosure of confidential documents to law enforcement, even where the parties vehemently disagreed on the necessity of the measure. (See ECF #135). Comparatively, a rescheduled deposition is no tall order.

Instead, the sole effort made, such that it is, was an email stating: "We'll be filing a motion for sanctions under FRCP 30 and 37 arising from Lindell's conduct in his deposition on August 23. I assume you'll oppose, but please confirm." (Ex. 3). This a declaration, not a conferral. Plaintiff has not met his duties under Federal Rule 37(a)(1) and Local Rule 7.1(a). That alone is sufficient to dismiss this Motion without even considering its purported merits.

## II. PLAINTIFF'S MOTION IS LEGALLY INSUFFICIENT AND MUST BE DENIED

Even if Plaintiff's Motion was procedurally proper, neither Rule 30 nor Rule 37 provide the relief sought.

The totality of the record shows that Plaintiff suffered no prejudice from any of the complained-of conduct at Lindell's August 23, 2023 deposition. That is largely because the record establishes that Plaintiff's injuries, to the extent they even exist, were self-imposed as part of his plan for this Motion. Plaintiff arrived at the deposition that day with what appears to be the clear aim and intent of moving for sanctions against Lindell, even before a single question was posed. Plaintiff then conducted over four and a half hours of examination to create a potentially avoidable dispute.

7

### A. Rule 30 Does Not Provide Plaintiff the Relief Sought

Federal Rule of Civil Procedure 30(d)(2) permits a court to impose "an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). This rule is typically reserved for sanctioning someone other than the deponent for interrupting a deposition. *Carroll v. Allstate Fire & Cas. Ins. Co.*, No. 12-cv-00007-WJM-KLM, 2014 U.S. Dist. LEXIS 28061, at *29 (D. Colo. Mar. 4, 2014) (emphasis added). To that end, Plaintiff has not cited any case from this District in which a party-witness was sanctioned under Rule 30(d)(2) for conduct that occurred during a deposition that is in any way like the conduct alleged in this case.

Plaintiff cites only one case from this District in which a deponent was held to be in violation of Federal Rule of Civil Procedure 30(d)(2).[6] That case, *Carroll v. Allstate Fire & Casualty Insurance Company*, is factually distinguishable from the issues presently before the Court in several respects. In *Carroll*, Plaintiffs' expert witness, Mr. Fye, sat for a deposition and refused to answer basic questions on multiple topics, including questions related to the materials he reviewed and relied upon in forming his expert opinions. 2014 U.S. Dist. LEXIS 28061, at *6–8, 28–38. The court found Fye's tactics to be obstructionist and offensive to the judicial process. *Id*. at *38. The court was particularly troubled by the fact that Fye was a hired expert, which "highlights even more strongly how inappropriate his behavior was during his deposition." *Id*. The judge found Fye in violation of Rule 30(d)(2) and ordered him to reimburse the costs and expenses

---

[6] The other case cited from this District by Plaintiff, *Holland v. Williams*, involved sanctions issued under Rule 30(d)(2) for a <u>non-party's</u> Rule 30(b)(6) Designee's delaying of a deposition by <u>refusing to show up at the scheduled time and place</u> of the deposition. *Holland v. Williams*, No. 1:16-cv-00138-RM-MLC, 2018 U.S. Dist. LEXIS 27995, 2018 WL 942228 (D. Colo. Feb. 12, 2018).

related to the attempted deposition. *Id*. at *38–41. The court did not order Fye to pay any costs or attorney's fees related to the motion, nor did the court order him to sit for a continued deposition at his expense. *Id*.

The deposition record is clear that Plaintiff made the decision to bring the instant Motion well before most of the issues Plaintiff now highlights in its Motion even took place. It was in the very earliest stages of the deposition, at the absolute latest, that Plaintiff decided to bring this Motion. Approximately fifteen minutes into the deposition Plaintiff's counsel stated on the record: "I'm gonna continue the deposition for the time being, subject to filing our motion for sanctions for your deposition conduct." (ECF #173 at 21:15–20). Everything that occurred after that point took place after Plaintiff already decided to bring this Motion.

Any of Lindell's conduct that occurred after that decision could not form the basis for this Motion. Despite announcing his intention to bring this Motion approximately fifteen minutes into the deposition, Plaintiff continued to question Lindell for over four additional hours.

At this point, the Court is well aware Lindell has testified at length in this case. For that matter, untold others are as well. Plaintiff submitted numerous video clips of testimony from March 8 and 9, 2023, where Lindell testified as the corporate representative of MyPillow and Frankspeech. Defendants do not know, nor are they concerned with why Plaintiff included twenty-six video clips from March to support a Motion relating to his deposition in August. If Plaintiff had concerns about how Lindell responded to questions in March, those concerns could have been raised then. Plaintiff opted for a different approach, one which further threatens to turn a straightforward case about what Lindell has said about Eric Coomer into a sprawling inquest on unrelated issues. Lindell is certainly not known to shy away from media scrutiny, but he is entitled to an impartial jury if this case proceeds to trial. He should not have to contend with a media that

9

has fed the public at large, including potential jurors, with reports he had a "meltdown in [a] 2020 election deposition,"[7] or "flip[ed] out on"[8] or "blast[ed]"[9] *Dominion's* lawyers.

Neither Plaintiff's Motion nor the coverage it has invited serves the parties' right to have this case resolved on its merits in court, not in the press or on social media. Those inclined to review the sixteen hours of testimony Lindell has provided would see what a one-minute "meltdown" clip does not reflect. Over the course of those sixteen hours, Lindell answered all questions, including those which were inflammatory,[10] repetitive,[11] open-ended, and not relevant to Plaintiff's claims against him or his companies.[12] Plaintiff had the benefit of deposing Lindell

---

[7] *See, e.g.*, CNBC Television, *Watch MyPillow CEO Mike Lindell's Meltdown in 2020 Election Deposition*, YouTube (Sept. 11, 2023), https://www.youtube.com/watch?v=mRCtaDfwm7c.

[8] Brad Reed, *"Don't Scold Me!" Mike Lindell Flips out on Dominion Lawyer During Deposition*, Raw Story (Sep. 8, 2023, 1:01 PM), https://www.rawstory.com/mike-lindell-deposition-video/.

[9] Sarah Arnold, *Mike Lindell Blasts Dominion Lawyers in Fiery Deposition*, Townhall (Sep. 10, 2023, 2:00 PM), https://townhall.com/tipsheet/saraharnold/2023/09/10/mike-lindell-blasts-dominion-lawyers-in-fiery-deposition-n2628206.

[10] *See, e.g.*, ECF #173 at 24:21–28:06 (asking about how the agreement between Plaintiff and Newsmax to keep Lindell off the air "very clearly angered you; is that a fair statement?"), 29:5–9 (twisting Lindell's words to try to get him to admit he "attacked" Plaintiff), 66:19–67:20 (suggesting Lindell blames Plaintiff for MyPillow's lost business), 72:8–11 ("It seems to me, at the risk of stating the obvious, that you harbor some ill will against me and Dr. Coomer; is that a fair statement?"), 74:7–11 (repeating suggestion that Lindell has ill will toward Plaintiff).

[11] *See, e.g.*, *id.* at 37:9–13, 39:17–18, 41:23–42:1, 42:6, 44:6–8, 45:13–46:7 (whether Lindell apologized to Ruddy); *id.* at 35:19–24, 50:18–22 (whether Lindell knew in February 2021 that he could not mention election fraud on Newsmax); *id.* at 324:18–19, 325:13, 326:6–7, 11, 19, 327:1–2 (whether Lindell knew about a $5 million arbitration award against him).

[12] Nearly all of the deposition from pages 105 through 356 concerns topics other than Lindell's statements about Plaintiff, which is the issue in this case. *See, e.g.*, *id.* at 105:23–117:15, 151:17–161:15 (questions relating to Lindell's evidence of election fraud); *id.* at 117:16–119:16 (concerning FBI's seizure of Lindell's cell phone); *id.* at 127:19–148:8 (questions relating to Lindell's offers and efforts to provide evidence of election fraud to Chris Ruddy of Newsmax); *id.* at 161:16–179:24, 195:21–229:7, 252:3–278:24, 322:5–324:17 (questions relating to Lindell's election investigation work with Dennis Montgomery, Mary Fanning, Conan Hayes, and others); *id.* at 229:10–252:2 (questions relating to Lindell's other business arrangements with Dennis

on two previous occasions over six months ago, and had ample time to raise any concerns about that testimony while discovery was ongoing, rather than shoehorn them into this Motion filed the day before the dispositive motion deadline.

Even if Plaintiff's Rule 30(d)(2) Motion had merit, the sanctions he seeks are extraordinary and inappropriate. First, Plaintiff asks for all fees and costs associated with the preparation, travel and taking of the August 23, 2023 deposition. (ECF #172 at 12). Next, Plaintiff asks for all fees associated with the preparation and drafting of this Motion. (*Id*.). Finally, Plaintiff asks for an order compelling Lindell to travel to Colorado to sit for an additional seven hours of deposition testimony in front of the Court or one of its Magistrates. (*Id*.).

Though Lindell has not refused to resume his deposition, it would not be necessary or appropriate if he were compelled to do so. Resuming that deposition would serve no purpose, and, given his own decision to suspend the August 23, 2023 deposition, Plaintiff has not exhibited any prejudice. Plaintiff examined Lindell for over four hours, focusing his queries on many topics that are irrelevant to any claim or defense in this case and many others that are ancillary at best.[13]

Plaintiff also elected to suspend the deposition shortly after 3:45 p.m., even though everyone else involved in the deposition was present and willing to continue. That was Plaintiff's decision. Most significant, however, is that Plaintiff made no effort to meet and confer on any of these issues, which may have resolved the dispute entirely. Rather than give Lindell any chance to address the issue, Plaintiff prematurely involved the Court.

---

Montgomery); *id.* at 179:25–195:20 (questions relating to Lindell's meetings and relationship with Donald Trump); *id.* at 278:25–322:4, 324:18–356:14 (questions concerning the Cyber Symposium unrelated to any statements by Lindell).

[13] *See supra* note 12.

The sanction award in the *Carroll* case Plaintiff cites is instructive to demonstrate the overreach of the sanctions Plaintiff now seeks under Rule 30. Recall that in *Carroll*, the <u>only</u> sanction awarded against that witness was an order requiring him to pay the reasonable costs and fees associated with the taking of his deposition. *Carroll*, 2014 U.S. Dist. LEXIS 28061, at *41. The witness was <u>not</u> ordered to pay any costs or fees related to the filing of the Motion <u>nor</u> was he ordered to sit for an additional deposition. *Id*.

In reliance on that award, the court in *Carroll* clearly held that the witness's status as a hired expert, which conferred to him an even higher standard of conduct than would be expected of other deponents, was a contributing factor in finding the conduct sanctionable. *Id*. at *38. Even so, and under that heightened standard, the <u>only</u> sanction against the deponent was for the reasonable costs and fees associated with his deposition. *Id*. Plaintiff seeks sanctions in this case that even the *Carroll* Court did not grant, on facts and considerations that are absent in this case.

Despite Plaintiff's complaints about Lindell insisting on "various breaks" during the deposition, there was nothing improper about any of the breaks taken during the deposition.[14] Two of the four breaks requested by Defendant were taken after eighty and forty-seven continuous minutes on the record, respectively. (*See* ECF #173 at 4:1, 115:13–15; *id.* at 229:5–7, 288:23–25). These are normal and typical breaks at any deposition. The two breaks requested by Lindell that came late in the afternoon were the result of an emergency phone call he received relating to his business.[15] When Lindell received that call, he did not terminate the deposition. (*Id.* at 358:18–19, 358:22–24, 366:18, 359:3–14). Rather, Defendant took a brief three-minute break to assess the

---

[14] Every break taken in the deposition occurred <u>after</u> Plaintiff stated on the record that he had already decided to bring a motion for sanctions.

[15] The first of which was approximately five hours after Plaintiff had already decided he would seek sanctions.

nature of the emergency, continued answering questions for an additional seven minutes, then took a break to address the emergency. (*Id.*)

Lindell did not state or indicate that the deposition was concluded or that Lindell's emergency would make him unavailable for the rest of the day. (*Id.*) Instead, and without waiting for Lindell to return from handling that emergency, Plaintiff chose to conclude a deposition that essentially began with a threat of this Motion. (*Id.*; *see also id*. at 21:15–20).

### B. Rule 37(a) does not Provide Plaintiff the Relief Sought

Federal Rule of Civil Procedure 37(a) permits a party to bring a motion compelling certain disclosures and discovery. Fed. R. Civ. P. 37(a). Any motion brought under this rule "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id*. For depositions specifically, Rule 37(a)(3)(B)(i) allows parties to seek orders compelling a deponent to answer a question. For the purposes of a Rule 37(a) motion, an evasive or incomplete answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4). It is Plaintiff's burden to prove that the answers provided to the discovery in question are incomplete. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citation omitted).

Rule 37 does not permit the recovery of costs and fees associated with the deposition, nor would it require Lindell to appear in person in Colorado for a continued deposition. *See generally* Fed. R. Civ. P. 37. The <u>only</u> sanction contemplated under Rule 37(a) is an order reimbursing the moving party for its costs and fees associated with the motion. Fed. R. Civ. P. 37(a)(5)(A). Importantly, however, that remedy <u>is not available</u> if the movant filed the motion without attempting a good faith meet and confer. *Id*.

Plaintiff was required to include a certification stating that he, in good faith, conferred with Defendant attempting to resolve this dispute as part of his Rule 37(a) Motion. Fed. R. Civ. P.

37(a)(1). Plaintiff did not do so. For that reason alone, Plaintiff's Rule 37(a) Motion must be denied. On this record, Defendant does not believe Plaintiff could now produce the required Rule 37(a) certification without violating the Federal Rules of Civil Procedure, Local Rule 7.1(a), and this Court's Scheduling Order, even if the Court were inclined to allow him the opportunity to cure this deficiency.

Plaintiff's email stating "We'll be filing a motion for sanctions under FRCP 30 and 37 arising from Lindell's conduct in his deposition on August 23. I assume you'll oppose, but please confirm." does not satisfy the requirements of Rule 37(a). He should be denied his requested relief on that basis alone. Even if there was a remedy available under Rule 37, the Motion has no merit because Lindell's testimony was far from evasive.

In the context of a deposition, Rule 37 allows for relief if "a deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(3)(B)(i). For this rule, an evasive answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4). The record establishes two key facts. First, Plaintiff does not identify any single question Lindell refused to answer. (*See generally* ECF #172). Second, Lindell answered every question asked of him, often in detailed responses. (*See generally* ECF #173).

The entire substantive allegation in Plaintiff's Rule 37 Motion is:

> Mr. Lindell's conduct throughout the entirety of his deposition was evasive in the extreme. His countless refusals to answer the questions asked, or to even allow counsel to ask them, are rightly understood as failures to disclose, answer, or respond. Sanctions are, therefore, appropriate under Federal Rule of Civil Procedure 37 as well.

(ECF #172 ¶ 17).

Plaintiff has the burden of proving Lindell's answer(s) are incomplete and Plaintiff's failure to even attempt to meet that burden is an additional reason to deny the Rule 37(a) Motion. *Bayview Loan Servicing*, 259 F.R.D. at 518. Although Plaintiff alleges that Lindell refused to answer

countless questions, Plaintiff provides no support for that allegation. Plaintiff has not identified a single question that Lindell refused to answer. Plaintiff has failed to identify precisely which question(s) he seeks to compel Lindell to answer again. Lindell answered the questions posed to him. Plaintiff may not like some of the answers to his questions, but that does not mean Lindell evaded them.

## CONCLUSION

For the reasons stated herein, Defendant asks the court to deny Plaintiff's Motion in its entirety for failing to satisfy the meet and confer duties established by Local Rule 7.1(a) and Federal Rule of Civil Procedure 37(a)(1). Additionally, Plaintiff's Motion has no legal merit or remedy under Rule 30(d)(2) and 37(a) and must be denied thereunder.

DATED: September 28, 2023            **PARKER DANIELS KIBORT LLC**

By: */s/ Ryan P. Malone*
  Andrew D. Parker (MN Bar #195042)
  Ryan P. Malone (MN Bar #395795)
  888 Colwell Building
  123 N. Third Street
  Minneapolis, MN 55401
  Telephone: (612) 355-4100
  Facsimile: (612) 355-4101
  parker@parkerdk.com
  malone@parkerdk.com

  *Counsel for Defendants*