**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129

ERIC COOMER, PhD.,

    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants

---

**EXHIBIT 17**

---

```
 1            UNITED STATES DISTRICT COURT.
 2            FOR THE DISTRICT OF COLORADO
 3
 4         Civil Action No.: 1:22-cv-01129-WJM
 5  ---------------------------------
    Eric Coomer, Ph.D.,
 6
 7         Plaintiff,
 8      vs.
 9  Michael J. Lindell, Frankspeech LLC, and My
    Pillow, Inc.,
10
11         Defendants.
    -----------------------------------
12
              VIDEOTAPED DEPOSITION OF
13                   VOLUME II
                MICHAEL J. LINDELL
14   Designated Representative of My Pillow, Inc.
                Taken on MARCH 9, 2023
15              Commencing at 9:30 A.M.
16
17
18
19
20
21
22
23
24
25  REPORTED BY:  Mari Skalicky, RMR, CRR


                                         Page 371
```

## Page 372

1 VIDEOTAPED DEPOSITION of
2 MICHAEL J. LINDELL, taken on Thursday, March
3 9th, 2023, commencing at 9:30 a.m. CDT, at 123
4 North 3rd Street, Minneapolis, Minnesota,
5 before Mari Skalicky, a Certified Realtime
6 Reporter, and Notary Public of and for the
7 State of Minnesota.
8       \*\*\*\*\*\*\*\*\*\*\*
9       APPEARANCES
10
11 ON BEHALF OF THE PLAINTIFF:
12   CAIN & SKARNULIS PLLC
13   BY: CHARLES J. CAIN, ESQUIRE
14   BY: BRADLEY A. KLOEWER, ESQUIRE
15   P.O. Box 1064/101 N. F Street
16   Suite 207
17   Salida, CA 81201
18   ccain@cstrial.com
19   bkloewer@cstrial.com

## Page 373

2 On BEHALF OF THE DEFENDANTS:
3   PARKER DANIELS KIBORT
4   BY: RYAN MALONE, ESQUIRE
5   888 Colwell Building
6   123 North Third Street
7   Minneapolis, MN 55401
8   malone@parkerdk.com

10 ALSO PRESENT:
11   Adam Wallin, Videogrpaher

13 NOTE: The original transcript will be
14 provided to the taking party of the
15 deposition.

## Page 374

1       I N D E X
2
3 WITNESS: MICHAEL J. LINDELL    PAGE
4 Examination by MR. CAIN ..................375

7       E X H I B I T S
8 EXHIBITS INTRODUCED:    PAGE
9 No. 76              377

13 (Original exhibits attached to original
14 transcript; copies to counsel as requested.)

## Page 375

1       P R O C E E D I N G S
2     THE VIDEO OPERATOR: We are going on
3 the record at 9:35 a.m. on March 9, 2023.
4 This is the video-recorded deposition of
5 designated representative of My Pillow
6 Inc. Michael J. Lindell, Volume Two.
7     My name is Adam Wallin from the firm
8 Veritext, and I am the videographer. The
9 court reporter is Mari Skalicky. We are
10 both with the firm Veritext. Will counsel
11 please identify themselves for the record?
12     MS. CAIN: Charley Cain and Brad
13 Kloewer for the plaintiff.
14     MR. MALONE: Ryan Malone for My
15 Pillow, Incorporated.
16     THE VIDEO OPERATOR: Will the court
17 reporter please swear in the witness.
18     MR. CAIN: He's been sworn in already
19 and still under oath but he should be
20 sworn in again.
21     THE WITNESS: Okay. When you just
22 said Mike Lindell, My Pillow, isn't this
23 Frankspeech today?
24     MR. KLOEWER: We're just finishing
25 up. We've got about 12 minutes left.

| | |
|---|---|
| 1  THE WITNESS: All right.<br>2  (Whereupon, the deposition of<br>3  MICHAEL J. LINDELL was commenced at<br>4  9:30 A.M., as follows:)<br>5  MICHAEL J. LINDELL,<br>6  after having been first duly sworn,<br>7  deposes and says under oath as follows:<br>8  - - -<br>9  EXAMINATION<br>10 BY MR. CAIN:<br>11 Q. How are you this morning?<br>12 A. Good. Thanks for worrying about me.<br>13 Q. When we left last night at 6:01 p.m., we<br>14  were talking about the exhibit that's<br>15  Bates-numbered 730. It's Exhibit 73. And<br>16  you had committed to me to --<br>17 A. Yeah, here it is.<br>18 Q. -- to figure out where it came from. Let<br>19  me finish, okay? All right. And now<br>20  you've just tossed a document over here.<br>21  What am I looking at here?<br>22 A. This is -- you asked me about an email<br>23  that was sent with a bunch of data on it.<br>24 Q. Okay.<br>25 A. This is the person that sent it. It was<br>Page 376 | 1  I don't need to explain myself<br>2  actually, and I didn't lie to you<br>3  yesterday. Explain then what you did to<br>4  find out the information you're<br>5  providing --<br>6 A. I went to the -- my attorneys and said<br>7  where did this come from that you guys --<br>8  where did you find this search, and<br>9  because it didn't come from my employees<br>10  or myself, I said in there. And he said<br>11  they already knew who it came from, and<br>12  which was you, and he pulled it out and it<br>13  came from a Robert Herring. And it looks<br>14  like a Charles Herring and Robert Herring<br>15  was copied on it, I guess.<br>16 Q. And you know who Charles Herring is, don't<br>17  you?<br>18 A. They both are with OEN news.<br>19 Q. Right. They're the owners?<br>20 A. What?<br>21 Q. They're the owners?<br>22 A. Yeah.<br>23 Q. Right?<br>24 A. Yeah.<br>25 Q. Are you friends with them?<br>Page 378 |
| 1  not a My Pillow employee or myself.<br>2 Q. I'm going to mark what you just handed<br>3  over here --<br>4  (Deposition Exhibit No. 76 was<br>5  introduced.)<br>6 BY MR. CAIN:<br>7 Q. -- as Exhibit 76. Is that the same one<br>8  you're looking at?<br>9 A. Yeah, apparently you guys already had it<br>10  so that was a big lie you told me, but<br>11  that's neither here nor there.<br>12 Q. I didn't lie to you.<br>13 A. You already had to know who it was from.<br>14  I didn't know that.<br>15 Q. All right. So --<br>16 A. So can you explain yourself on that?<br>17  That's kind of crazy. Why would you say<br>18  you didn't know?<br>19 Q. Well, if you look, this is exhibit, or<br>20  Bates 790, and the spreadsheet was Bates<br>21  to 730 so --<br>22 A. Speak up. I can't hear you. I can't<br>23  hear. I have hearing aids. I need to<br>24  hear you.<br>25 Q. I recall.<br>Page 377 | 1 A. No. I know them.<br>2 Q. You know them. Do you run ads or did you<br>3  run ads on OEN?<br>4 A. I don't know. My ad buyers do that. I<br>5  assume we did. We run ads on every<br>6  station in the country. There is no<br>7  exception. I would assume they're not an<br>8  exception either.<br>9 Q. Describe your relationship with Charles or<br>10  Robert Herring.<br>11 A. I met them when I went on their -- a show<br>12  there once, and I've only been on their<br>13  show -- well, I've been, I guess a couple<br>14  different times back with My Pillow, just<br>15  like I do with every other host. But I<br>16  met the owner. I met Robert, I don't<br>17  know, couple three years ago maybe, two<br>18  years ago.<br>19  And then I did a show on there when I<br>20  did Absolute Proof. I was the host and I<br>21  met him and Charles, his son.<br>22 Q. So I'm looking at the middle of Exhibit<br>23  76, and this is dated April 8 of 2022,<br>24  right?<br>25 A. (Nods head up and down.)<br>Page 379 |

| | |
|---|---|
| 1 Q. Is that a yes?<br>2 A. Yes.<br>3 Q. And it appears Robert Herring is saying to<br>4    you in the email chain, "Let me know if<br>5    this comes through, okay," do you see<br>6    that?<br>7 A. Yeah.<br>8 Q. Do you remember receiving that?<br>9 A. No.<br>10 Q. Do you remember responding?<br>11 A. No.<br>12 Q. If you look above the chain --<br>13 A. No, I see I responded, but I don't<br>14    remember responding.<br>15 Q. But you're not disputing that you<br>16    responded?<br>17 A. No, no, no. It says that's me responding.<br>18      (Court reporter interruption.)<br>19 A. I want to say something, though, that<br>20    could have been an assistant responding.<br>21    I do want to make that note. I don't<br>22    usually use exclamation points, so my<br>23    thing, I probably didn't respond<br>24    personally because I don't use exclamation<br>25    points.<br>Page 380 | 1 Q. How do I know what hat you're wearing if<br>2    you're using your My Pillow --<br>3 A. I don't put my hats on.<br>4 Q. Let me finish, sir. We've got a new court<br>5    reporter. Her name is Mari. She's a<br>6    stickler for us not interrupting each<br>7    other. I respect that. I think you need<br>8    to respect that today, okay, please, for<br>9    her, not for me, for her. Okay. All<br>10    right. I'll take that as a yes.<br>11      You say it wasn't sent to My Pillow<br>12    but you agree it was sent to<br>13    [redacted] right?<br>14 A. Yes. It's the only email I use. I don't<br>15    show other people what hats I wear. If I<br>16    have another company -- I have at least<br>17    nine different companies, I use that for<br>18    every one. It's my personal email.<br>19 Q. You received it at your [redacted]<br>20    email --<br>21 A. Correct.<br>22 Q. -- address?<br>23      (Court reporter interruption.)<br>24 BY MR. CAIN:<br>25 Q. So at least as of -- and we won't get<br>Page 382 |
| 1 BY MR. CAIN:<br>2 Q. But someone at My Pillow responded for<br>3    you?<br>4 A. If there was an assistant with me, I said<br>5    just tell them it came through.<br>6 Q. But My Pillow is not disputing the fact<br>7    that it received this information?<br>8 A. No. My Pillow did not receive it. My<br>9    personal email received it,<br>10    [redacted] This is where<br>11    you're wrong. I use [redacted] for<br>12    every single -- every single platform I<br>13    own. I don't have separate emails. I<br>14    don't use them. I use 100 percent<br>15    [redacted] Everyone knows that in the<br>16    whole world.<br>17 Q. I don't understand the distinction you're<br>18    making.<br>19 A. Because you said My Pillow got this. My<br>20    Pillow -- this wasn't sent to My Pillow.<br>21    It was sent to Mike Lindell as an<br>22    individual. That's my email address, just<br>23    like you might have whatever at Yahoo.com,<br>24    I have [redacted] I don't go out<br>25    and get a Gmail email, okay.<br>Page 381 | 1    stuck on semantics with this one -- but at<br>2    least as of April 8th, 2022, you were in<br>3    possession of the spreadsheet we discussed<br>4    yesterday, Exhibit 73, correct?<br>5 A. I've never seen that spreadsheet until<br>6    yesterday. I assume if this was my --<br>7    sent to my email, it was there. The<br>8    lawyers got it when you did your thing, so<br>9    yes.<br>10 Q. And it appears to me, just reading through<br>11    this, with Robert saying "Let me know if<br>12    this comes through, okay," that it was<br>13    preceded by a conversation you had with<br>14    Robert Herring about this information; is<br>15    that correct?<br>16 A. No. I have no idea. I would say no.<br>17 Q. So your sworn testimony is you did not<br>18    discuss this with Robert Herring prior to<br>19    it being sent to you?<br>20 A. No. No. I have no idea what this<br>21    document is. I've never seen it before in<br>22    my life until yesterday. 100 percent,<br>23    never seen it before in my life.<br>24 Q. Fine. And it's also your testimony,<br>25    though, you're not disputing that it was<br>Page 383 |

4 (Pages 380 - 383)

Page 384

1  transmitted and attached to Exhibit 76 by
2  this email to your My Pillow email
3  account, correct?
4  A. You said it transferred in a text. This
5     is an email. This is an email, not a
6     text, I believe. I don't know. I think
7     it's an email. It looks like it's an
8     email.
9  Q. Well, the record will reflect what I said,
10    but I'll clarify it --
11 A. Okay.
12 Q. -- if I misspoke.
13 A. Okay.
14 Q. It was sent to you in an email as an
15    attachment from Robert Herring on April 8,
16    2022.
17 A. Okay. I don't know if it came as an
18    attachment because I don't see it on my
19    thing as an attachment. You showed me
20    part yesterday. He showed me part today.
21    I can't testify to something I don't know.
22 Q. So what is the attachment? Can you read
23    that into the record what it says?
24 A. There is no attachment on this.
25 Q. Well, there is a reference to an

Page 385

1  attachment.
2  A. It doesn't say. It says, "Let me know if
3     this comes through." There is no reference
4     to an attachment. There is nothing here.
5     You read it. There is no attachment.
6  Q. Do you mind?
7  A. No.
8  Q. Let me help you. Right there.
9  A. Oh, that attachment up above. Attachment
10    Coomer email -- whatever that word is.
11 Q. Permutations.
12 A. What's that?
13 Q. Permutations.
14 A. Okay.
15 Q. That's what it is.
16 A. Okay. There is no attachment on here,
17    though. That's all I'm saying.
18 Q. What does the rest of it say?
19 A. Election and Coomer information xls Coomer
20    DOC 2 PDF.
21 Q. So yes, there is no attachment physically
22    to this, but yesterday when we broke, you
23    promised to get to the bottom of where
24    this information came from and how it came
25    into your possession.

Page 386

1     So are you disputing the fact that it
2  was attached to this email -- let me
3  finish -- as referenced in the attachment
4  section here? I don't want us to be
5  confused about how you got it and when you
6  got it.
7     Are you disputing that you got this
8  or not?
9  A. I don't know because I don't know. I've
10    got one thing from you and I got one thing
11    from my lawyer that says this, this
12    attachment up above. I don't know if that
13    connects to the attachment or whatever you
14    showed me yesterday, which I've never seen
15    in my life. People send me tens of
16    thousands of emails a week. I never seen
17    this email in my life ever.
18 Q. You investigated this issue last night,
19    this morning?
20 A. Yeah, I got this from -- yeah, I got this
21    from my lawyer, yes.
22 Q. And that was after we discussed the fact
23    that we were going to try to figure out
24    where it came from and when you got it,
25    right?

Page 387

1  A. Right.
2  Q. And this is what you came in with this
3     morning, Exhibit 76?
4  A. Right. I walked out of this room. My
5     lawyer said you lied, you knew where it
6     came from. He gave me this and I'm giving
7     it to you.
8  Q. I doubt he said I lied.
9  A. Yes, he did say you lied.
10       MR. MALONE: Mike, we don't have to
11    get into that I said.
12       THE WITNESS: I'm just saying. Well,
13    he said I doubt you said he lied. You
14    did. You told me you didn't know where it
15    came from.
16       MR. MALONE: Just answer the
17    questions, Mike.
18 A. Okay. Well, he asked me.
19 BY MR. CAIN:
20 Q. You apparently don't know where it came
21    from and you're expecting me to know.
22    That's why I'm asking.
23 A. Now, you're lying again because you had
24    this. You got this from us, sir. You
25    already had this from us.

5 (Pages 384 - 387)

| | |
|---|---|
| 1 Q. Right.<br>2 A. So you're lying. You knew exactly where<br>3    it came from yesterday, but you cut it off<br>4    the top of it. That's what you did.<br>5 Q. I did not do that.<br>6 A. Yes, you did because you had this. Are<br>7    you saying -- did you have this in your<br>8    possession or not?<br>9 Q. I'm not going to argue that that was<br>10   produced --<br>11 A. Okay.<br>12 Q. -- by you under a different Bates stamp,<br>13   Lindell 790. What we looked at yesterday<br>14   was My Pillow. There is a box that covers<br>15   up another Bates stamp, so I don't know<br>16   what that says. So I don't know what your<br>17   records look like and how they're kept.<br>18   That's why I'm asking you. And I didn't<br>19   lie to you.<br>20       But as far as you sit here today, the<br>21   best that you know is that the information<br>22   we looked at, Exhibit 73 yesterday, was an<br>23   attachment that you received from Robert<br>24   Herring, is that a fair statement?<br>25 A. I don't know. I would assume based on<br>Page 388 | 1   don't work for My Pillow.<br>2 Q. Who do they work for?<br>3 A. I'm not giving that. They work for -- my<br>4   personal assistant, Lindell Management.<br>5 Q. ▮▮▮▮▮<br>6 A. That's not ▮▮▮▮▮<br>7 Q. Well, that's information we want --<br>8 A. Good. Then subpoena it.<br>9 Q. -- because yesterday --<br>10 A. I'm not giving you a name. I'm not giving<br>11   you names. I don't know if they did or<br>12   not. I'm not giving you names and pull<br>13   people in that you're going to attack.<br>14   You've already attacked these people<br>15   enough with your lawsuit. These are<br>16   employees of mine. I'm, you know, you<br>17   attack them. They're hurting. This is<br>18   what you did. So no, you're not getting<br>19   names so you can continue to attack people<br>20   ever, so...<br>21 Q. And likewise --<br>22       THE WITNESS: How much time does he<br>23   get on this?<br>24       MR. MALONE: Well, we're right about<br>25   at 12 minutes I think. Videographer, can<br>Page 390 |
| 1   this piece of paper and what you showed me<br>2   yesterday, if that attachment here was on<br>3   an email down here, which I don't see it,<br>4   you just showed me some papers I've never<br>5   seen before in my life, I have never seen<br>6   this in here. This could have been -- I<br>7   could have been in a room and it said,<br>8   tell him it came through -- you know, she<br>9   could have says Robert -- or Robert<br>10   Herring is sending you an email. This<br>11   would be my assistant, and I would have<br>12   said, it says let me know if it came<br>13   through, and she said, yeah, it came<br>14   through. Boom, and the email never got<br>15   read ever.<br>16 Q. Who would have been your assistant in<br>17   April of 2022 that would have had the<br>18   authority to respond to emails like this?<br>19 A. I'm not going to give you that assistant's<br>20   name if I did, because once again, I don't<br>21   want you attacking them, the media<br>22   attacking them. I'm not giving you that<br>23   name at all.<br>24 Q. Does she work -- he -- is it he or a she?<br>25 A. I'm not giving you that, and no, they<br>Page 389 | 1   we have a time check?<br>2       THE WITNESS: Okay. Yep, I want a<br>3   time check because it was said, I think it<br>4   was agreed to 21 minutes.<br>5       THE VIDEO OPERATOR: Today has been<br>6   14 minutes.<br>7 BY MR. CAIN:<br>8 Q. I thought you said we would be here for 12<br>9   hours if that's what it takes.<br>10 A. You're only allowed so much for this<br>11   yesterday. That was put into the thing.<br>12 Q. So I'll say a few things then for the<br>13   record and we'll conclude for today.<br>14   Number 1, there has been several<br>15   individuals that I've asked you for<br>16   information on, identification, board<br>17   members, employees, other people that<br>18   you've had conversations with that you've<br>19   refused to provide to me. Do you<br>20   understand that?<br>21 A. That's correct. You will not attack them.<br>22   I'm protecting them.<br>23 Q. I'm not going to attack anybody.<br>24 A. Yes, you do.<br>25 Q. Trying to collect information.<br>Page 391 |

## Page 392

1  A. That's what you do.
2  Q. I had come prepared yesterday, and the
3  record will just reflect what happened
4  yesterday.  I don't need to characterize
5  it, but I had come prepared to show you a
6  series of video clips, many of which you
7  referenced interviews at CNN, during the
8  symposium, discussions on Bannon's podcast
9  referencing Eric Coomer.
10      We didn't go through your discovery
11  responses because of how yesterday went, a
12  number of emails that I wasn't able to
13  show you, and I am going to be asking and
14  reserving the right to ask the court to
15  order you to be redeposed on additional
16  issues with additional time.  And I will
17  be seeking costs --
18 A. I'm going to seek taking you to court
19  because of what you've done to my
20  employees.  Everything you said comes
21  after you sued me; everything I said.
22  You're an evil, evil man.  There, that's
23  on the record, very evil.  What you've
24  done to my employees, everything that you
25  were going to say comes after you sued me;

## Page 393

1  everything I said.  And I stand by what I
2  said.  You're an ambulance-chasing lawyer,
3  evil person, you and your Eric Coomer
4  buddy, so you will be sued.  Don't worry.
5  And you will be sued big because I won't
6  back down.
7      MR. CAIN:  All right.  Anything else?
8  So with that, Ryan, unless you have a
9  different take on this, I'd like to
10  conclude this deposition, which means it
11  will be put into a transcript and it will
12  be sent to you for your review and
13  signature.  And then to the extent that we
14  want to address any other issues with the
15  court, we can do that later.
16 A. I'll sue you later.  Don't worry.
17     MR. MALONE:  We agree to conclude.
18  We'll read and sign and reserve further
19  questions and responses to any motions,
20  and let's move on.
21     THE VIDEO OPERATOR:  We're going off
22  the record at 9:53 a.m.
23     (The right to read and sign the
24  deposition was preserved.)
25

## Page 394

1    I, MICHAEL J. LINDELL, do hereby certify
2  that I have read the foregoing transcript of
3  my testimony and that same is true and correct
4  to the best of my knowledge and belief, except
5  as follows:
6
7  PAGE    & LINE NO.   CORRECTION       REASON

_____
20  MICHAEL J. LINDELL
    SWORN TO AND
21  SUBSCRIBED BEFORE ME this
       day of       , 2023
22       NOTARY PUBLIC

## Page 395

STATE OF MINNESOTA )
            :   CERTIFICATE
COUNTY OF HENNEPIN )

   I hereby certify that I reported the
deposition of MICHAEL J. LINDELL on
MARCH 9, 2023 in Minneapolis, Minnesota, and
that the witness was by me first duly sworn to
tell the whole truth;

   That the testimony was transcribed under
my direction and is a true record of witness
testimony;

   That the cost of the original has been
charged to the party who noticed the
deposition, and that all parties who ordered
copies have been charged at the same rate for
such copies;

   That I am not a relative or employee or
attorney or counsel of any of the parties or a
relative or employee of such attorney or
counsel;

   That I am not financially interested in
the action and have no contract with the
parties, attorneys, or persons with an
interest in the action that affects or has a
substantial tendency to affect my
impartiality;

   That the right to read and sign the
deposition was reserved.
   WITNESS MY HAND AND SEAL this
23RD DAY OF MARCH 2023.

Registered Merit Reporter
Certified Realtime Reporter

7 (Pages 392 - 395)

1 malone@parkerdk.com
2          March 23, 2023
3 Coomer, Eric, Ph.D. v. Lindell, Michael J., Et Al
4 DEPOSITION OF: Michael J. Lindell, Vol. 2 , Corp Rep
5     The above-referenced witness transcript is
6 available for read and sign.
7     Within the applicable timeframe, the witness
8 should read the testimony to verify its accuracy. If
9 there are any changes, the witness should note those
10 on the attached Errata Sheet.
11     The witness should sign and notarize the
12 attached Errata pages and return to Veritext at
13 errata-tx@veritext.com.
14     According to applicable rules or agreements, if
15 the witness fails to do so within the time allotted,
16 a certified copy of the transcript may be used as if
17 signed.
18             Yours,
19             Veritext Legal Solutions
20
21
22
23
24
25

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

```
 1           UNITED STATES DISTRICT COURT.
 2            FOR THE DISTRICT OF COLORADO
 3
 4         Civil Action No.: 1:22-cv-01129-WJM
 5   ----------------------------------
     Eric Coomer, Ph.D.,
 6
 7         Plaintiff,
 8      vs.
 9   Michael J. Lindell, Frankspeech LLC, and My
     Pillow, Inc.,
10
11         Defendants.
     ----------------------------------
12
              VIDEOTAPED DEPOSITION OF
13                    VOLUME II
                MICHAEL J. LINDELL
14    Designated Representative of My Pillow, Inc.
               Taken on MARCH 9, 2023
15             Commencing at 9:30 A.M.
16
17
18
19
20
21
22
23
24
25   REPORTED BY:  Mari Skalicky, RMR, CRR


                                         Page 371
```

```
 1
     STATE OF MINNESOTA )
 2                      :    CERTIFICATE
     COUNTY OF HENNEPIN )
 3
          I hereby certify that I reported the
 4   deposition of MICHAEL J. LINDELL on
     MARCH 9, 2023 in Minneapolis, Minnesota, and
 5   that the witness was by me first duly sworn to
     tell the whole truth;
 6
          That the testimony was transcribed under
 7   my direction and is a true record of witness
     testimony;
 8
          That the cost of the original has been
 9   charged to the party who noticed the
     deposition, and that all parties who ordered
10   copies have been charged at the same rate for
     such copies;
11
          That I am not a relative or employee or
12   attorney or counsel of any of the parties or a
     relative or employee of such attorney or
13   counsel;
14        That I am not financially interested in
     the action and have no contract with the
15   parties, attorneys, or persons with an
     interest in the action that affects or has a
16   substantial tendency to affect my
     impartiality;
17
          That the right to read and sign the
18   deposition was reserved.
19        WITNESS MY HAND AND SEAL this
     23RD DAY OF MARCH 2023.
20
21              _____
22
                Mari A. Skalicky
23              Registered Merit Reporter
                Certified Realtime Reporter
24
25
```

```
 1        I, MICHAEL J. LINDELL, do hereby certify
 2   that I have read the foregoing transcript of
 3   my testimony and that same is true and correct
 4   to the best of my knowledge and belief, except
 5   as follows:
 6
 7   PAGE     & LINE NO.    CORRECTION           REASON
 8
 9
10
11
12
13
14
15
16
17
18
19                   _____
20                   MICHAEL J. LINDELL
                     SWORN TO AND
21                   SUBSCRIBED BEFORE ME this
                            day of          , 2023
22                         NOTARY PUBLIC
23
24
25
```

Page 394