IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, PH.D.,

    Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC, AND MY PILLOW, INC.,

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF J. ALEX HALDERMAN**

Defendants Michael J. Lindell, Frankspeech LLC, and My Pillow, Inc. (collectively "Defendants") submit this Reply to Plaintiff's Response to Defendants' Motion to Exclude the Testimony of J. Alex Halderman (ECF #205).

Professor Halderman's expertise is not in dispute, and Defendants only seek that it be used appropriately at trial. As stated fully in their Motion, Defendants seek to preclude Halderman from offering irrelevant opinions that only serve to inflame the jury; engaging in speculative testimony regarding the state of mind of Lindell and other witnesses in the case; opining as to the credibility of Lindell and other witnesses; invading the province of the jury with opinions regarding ultimate legal issues; or vouching for the character of Eric Coomer. (*See generally* ECF #188). Plaintiff's Response all but confirms Halderman

intends to testify on each of these topics. The Court should reject such attempts, as discussed below.

### A. Halderman Should Be Precluded from Offering Irrelevant Opinions

Joeseph Oltmann and Michael Lindell do not share the same view about what occurred during the 2020 election. Oltmann has repeatedly expressed the view that Plaintiff manipulated election results through his knowledge of Dominion's ballot adjudication process. Lindell has broadcast his beliefs about the 2020 election for nearly three years, and Plaintiff has still not identified an instance where he espoused that theory. At his deposition, Oltmann confirmed he does not necessarily ascribe to Lindell's own theory that China intruded in the election. (ECF #113-21, Oltmann Dep., at 73:14–20). Halderman's testimony that one individual could not rig the election will not aid the jury in its factfinding when Defendants have not made that claim.

Plaintiff's Response suggests these fundamentally different views are somehow insignificant or even surprising:

> In fact, [Defendants] have made every effort they can to distance themselves from Oltmann and his claims, despite his numerous close ties with Defendants. Nearly a year after this case was filed, Defendants even began pursuing a completely new theory of the case in order to not have to defend the lies about Dr. Coomer, namely by arguing that Defendants' numerous defamatory publications were really just about Lindell being upset about a "dirty deal" between Dr. Coomer and Newsmax that prevented Lindell from promoting MyPillow on that network. This false narrative is readily disproven and will be more thoroughly addressed in response to Defendants' Motion for Summary Judgment.

(ECF #205 at 13).

Defendants have not denied having business ties to Oltmann, but that does not mean they share his beliefs. They have needed to make no "effort" to distance themselves from

2

Oltmann's views, which have long differed from those of Defendants. That Plaintiff appears to contend otherwise only amplifies the substantial risk of prejudice that Halderman's proposed testimony poses to Defendants at trial.

Halderman's proposed testimony will only serve to blur what is an otherwise bright line: Oltmann claims Eric Coomer was personally involved in rigging the 2020 Election and Michael Lindell does not make that claim. Plaintiff argues that "[f]or the jury to fully understand the context in which Defendants' false allegations against Dr. Coomer arose, however, this testimony must include discussion of the various overlapping theories that Defendants have espoused." (*Id.* at 3). Neither of these so-called "overlapping theories"—deemed in the Response as the "China Claims" and the "Dominion Claims"—involve Plaintiff. (*Id.* at 4–5). In fact, Plaintiff has acknowledged that his cause of action against Lindell could not arise from the "China Claims" presented in *Absolute Proof*. (ECF #191, Coomer Text Messages Feb. 5, 2021 (Pl. Dep. Ex. 17), at EC 22cv01129 001259–60; *see* ECF #190, Pl. Dep., at 248:13–249:21).

The "Dominion Claims" described in Plaintiff's Response appear to comprise statements made about erroneously reported results in Antrim County, Michigan.

> Lindell has historically relied on the Antrim County report to support his false claims of election fraud, and the Antrim County report focuses a substantial amount of discussion on false claims about the adjudication function of Dominion voting machines. Dr. Coomer's involvement with securing patents related to this function has been the one of the primary drivers of false claims against him.

(ECF #205 at 12). The link missing between these points is sizable: Lindell has not claimed the adjudication function was used. Halderman's own declaration relies on statements made by Russell Ramsland about Dominion in Antrim County, not by Lindell. (ECF #189,

3

Halderman Decl., ¶¶ 104–05). Plaintiff's involvement with securing patents related to adjudication may have drawn attention from others like Oltmann and David Clements, but not Defendants here. If Lindell believed this feature was used and Plaintiff was involved in its use, Lindell would have said so.

Oltmann's theories have not been adopted or voiced personally by Lindell, and Defendants had no knowledge Oltmann would make his claims about Plaintiff on Frankspeech or at the Cyber Symposium. Plaintiff states that "Defendants' entire argument with respect to Halderman's testimony about Oltmann's claims is a misstatement of the law" because other factors bear on reckless disregard for the truth beyond subjective doubt. (ECF #205 at 12). Yet Courts applying the actual malice standard under Colorado law have noted that a defendant's subjective doubt may be a necessary showing in this context. *See Lockett v. Garrett*, 1 P.3d 206, 210 (Colo. App. 1999) ("A showing of reckless disregard requires sufficient evidence to demonstrate that the defendant in fact entertained serious doubts as to the truth of the published statement."); *see also Miles v. Nat'l Enquirer,* 38 F.Supp.2d 1226, 1228 (D. Colo. 1999) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1967)) ("Plaintiff must adduce clear and convincing proof of actual malice to sustain a cause of action for defamation. To meet this burden, Plaintiff must produce 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'").

As detailed in Defendants' Motion for Summary Judgment, Defendants had no prior knowledge of what Oltmann would say during his May 3, 2021 interview on Frankspeech, nor did they know what Oltmann or Clements would say at the Cyber Symposium. (ECF

4

#177 at 42). Oltmann's statements about Plaintiff are, therefore, conditionally relevant to the extent knowledge of those statements can be ascribed to Defendants.

### B. Halderman Should Be Precluded from Speculating on Others' States of Mind

Defendants do not dispute that Lindell's state of mind when making the complained-of statements is relevant to the question of actual malice. However, the relevance of that issue does not necessarily qualify Halderman to testify about it. Plaintiff argues that Halderman's "insights" on Lindell's motives "are relevant to multiple actual malice factors such as pre-conceived narrative and financial motive." (ECF #205 at 15). How an election security expert is qualified to testify as to the financial motives of a pillow company executive, whom he knows even less than he knows Plaintiff, is completely unclear. Halderman expressed his own belief that, in "promoting conspiracy theories" on Frankspeech, Lindell's "goal is presumably to make money" because "[t]hat's the reason most people start businesses." (ECF #188-3, Halderman Dep., at 236:1–12). Plaintiff's characterization of Halderman as having "unique" insights he simply does not have informs Defendants' chief concern: that Halderman will attempt to offer testimony as an advocate, rather than an expert.

Halderman is entitled to his beliefs about Lindell or his motives, just as any citizen is, even if those beliefs are misguided. It would nonetheless be improper to allow him to express those beliefs to the jury under the veneer of expertise.

### C. Halderman Should Be Precluded from Offering Opinions on Credibility

Halderman's proposed testimony as it relates to Dennis Montgomery continues to offer cause for alarm because, as he does with Lindell, Halderman has openly speculated

5

about Montgomery's motives and state of mind. Halderman surmises that Lindell was "told what he wanted to hear" by his own experts (*Id.* at 224:12–16) and that Montgomery "intentionally designed" the cExtract program "to perpetrate a hoax." (ECF #189 ¶¶ 57–58). Plaintiff's Response, which decries Montgomery as a "notorious conman and fraudster," (ECF #205 at 4), leaves no doubt Plaintiff intends to place the credibility of Montgomery and others in the crosshairs at trial. Plaintiff may have the opportunity to do so, but not through his experts such as Halderman, who are naturally unduly likely to influence the jury on credibility questions. *See United States v. Hill*, 749 F.3d 1250, 1260–61 (10th Cir. 2014); *see also Hellums v. Williams*, No. CIV 96-63 MV/LCS, 1999 U.S. Dist. LEXIS 24582, *6 (D.N.M. Nov. 4, 1999) (citing *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981)) ("An expert witness may give opinion testimony if the expert's specialized knowledge would help the trier of fact understand the evidence or decide a fact in issue, but such opinion testimony may not usurp the exclusive function of the jury, which is to determine credibility.").

### D. Halderman Should Be Precluded from Testifying as to Ultimate Legal Issues

Should the case proceed to trial, the question of actual malice will be one for the jury, not the expert witnesses. Halderman's conclusory dismissals of Lindell's beliefs as "conspiracy theories" serve to paint those beliefs as inherently improbable, which the jury may ultimately need to determine when weighing the question of whether Defendants acted with actual malice. *See St. Amant*, 390 U.S. at 732 (1968). The Response does not meaningfully address Defendants' objection, instead only pointing out that Mr. Lindell believes a conspiracy was involved so Halderman's use of the term is technically correct.

(ECF #205 at 14). But Halderman's use of the pejorative term will not aid the jury to find facts bearing on the parties' dispute. The "conspiracy theories" Halderman ascribes to Lindell do not involve the Plaintiff in this case. Halderman's use of the term serves no purpose other than to unduly suggest the presence of actual malice, and it should therefore be precluded at trial.

### E. Halderman Should Be Precluded from Testifying as to Plaintiff's Character

Plaintiff does engage with Defendants' argument that Halderman's character testimony should be excluded, and Defendants do not believe there is anything "puzzling" about their position. (*Id.* at 13). Defendants are entitled to a trial where a testifying expert does not claim to have personal knowledge of a party's good character. *See, e.g.*, Fed. R. Evid. 404(a)(1) (character or character trait evidence is not admissible to demonstrate conformity with the character or trait); Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). Dr. Halderman is not qualified by background as an election security expert, by his minimal personal knowledge of Plaintiff, or by the Federal Rules of Evidence to testify to Plaintiff's character. Such testimony would not aid the jury and may only serve to inflame passions in Plaintiff's favor.

Halderman's testimony should be limited at trial, consistent with Defendants' Motion (ECF #188), and for all reasons stated in Defendants' Motion and in this Reply.

DATED: October 24, 2023                     **PARKER DANIELS KIBORT LLC**

By */s/ Ryan P. Malone*
Andrew D. Parker (#195042)
Ryan P. Malone (MN Bar #395795)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
parker@parkerdk.com
malone@parkerdk.com

*Counsel for Defendants*

8