IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, PH.D.,

    Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH, LLC, and MYPILLOW, INC.,

    Defendants.

**REPLY OF DEFENDANTS TO PLAINTIFF'S OMNIBUS RESPONSE TO DEFENDANTS' OMNIBUS MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants submit this Reply to Plaintiff's Omnibus Response to Defendants' Omnibus Motion for Summary Judgment [ECF ___] ("Plaintiff's Response") and in support of Defendants' Omnibus Motion for Summary Judgment [ECF 177] ("Defendants' Motion").

    **I.    INTRODUCTION**

Plaintiff bears the burden of proving by clear and convincing evidence that statements he attributes to Defendants are materially false and that they were made

1

with actual malice. *Brokers' Choice of Amer., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1107 (10th Cir. 2017). He has not met his burden.

Defendants' Motion quoted a statement made by Dr. J. Alex Halderman in a declaration he submitted in *Curling v. Raffensperger,* 493 F.Supp.3d 1264 (N.D.Ga. 2020), *prelim. injunction vac., appeal dismissed in part,* 50 F.4th 1114 (11th Cir. 2022). There, Dr. Halderman stated that

> malicious modifications to [Dominion's] software could undermine the integrity of election results in multiple ways, including by changing either the barcodes alone or both the barcodes and the human readable text, with the result that the election outcomes could be changed without detection.

Defendants' Motion at 44, Exhibit 20, ¶ 7. Plaintiffs' Response at page 12 n. 57 disputes that statement with a declaration from the same Dr. Halderman which contradicts not only his previous statement but also the opinions of other experts on whom the district court relied in *Curling*.

The central issue in this case previously identified by the Court is whether "Dr. Coomer's actions with regard to the Dominion voting machines either interfered in the 2020 presidential election or they did not." 2023 WL 2528624, *8 (March 15, 2023). Plaintiff is required to prove with clear and convincing evidence that the Dominion computerized voting system, which he had a role in designing, did not allow for the manipulation of cast votes in the 2020 presidential election. Plaintiff cannot prove that Defendants' statements were false and that they were made with actual malice.

The new declaration by Dr. Halderman, which contradicts his 2020 declaration, cannot provide clear and convincing evidence that Defendants' statements were false or made with actual malice. Therefore, Defendants are entitled to summary judgment in their favor on all claims.[1]

## II.   PLAINTIFF CANNOT SATISFY HIS BURDEN OF PROOF THAT DEFENDANTS' STATEMENTS WERE FALSE.

Dr. Halderman's new declaration is the **only** evidence provided in Plaintiff's Response that is offered to dispute Dr. Halderman's previous statement quoted above that was submitted in his declaration to the district court in *Curling* in 2020. Defendants' Motion at 44. Although Dr. Halderman stated in his 2020 declaration that "election outcomes could be changed without detection" in the 2020 election, he now states that such a possibility was "inherently improbable." Ex. 12 ¶ 16.

Whether Defendants' statements that Plaintiff played a role in interfering with the outcome of the 2020 presidential election are false depends on how the Dominion system was designed and how it functioned **in that election**. Plaintiff failed to prove that Defendants' statements were false by pointing to evidence in his Response that did not relate directly to how the Dominion voting system was used in the 2020 election. Plaintiff's self-serving declaration cannot prove that Defendants' statements were false. The declaration of Dr. Halderman submitted in

---

[1] Defendants do not waive their arguments in Defendants' Motion at 25-33.

this case is no substitute for a full and transparent examination of the 2020 operation of the Dominion voting system. A failure at the August 2021 Symposium to establish that China interfered with the outcome of the 2020 election (Plaintiff's Response at 11) would not show whether Dominion's computerized voting system did or did not play a part in manipulating the outcome of the voting in that election. Any statements by individuals who were scheduled to make a presentation at the Symposium "that the information they intended to present at the Symposium was fraudulent" (Plaintiff's Response at 11) have nothing to do with whether the Dominion computerized voting system was designed to manipulate cast votes. And settlements of other litigation cannot be invoked to prove that the Dominion system played no role in altering the outcome of the 2020 election. F.R.Evid. 408; CRE 408; *see Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.,* 266 F.Supp.2d 1253, 1258-59 (D.Colo. 2003); *Hartman v. Community Responsibility Ctr., Inc.,* 87 P.3d 202, 206 (Colo. App. 2003).[2]

### III.   PLAINTIFF CANNOT PROVE THAT DEFENDANTS ACTED WITH ACTUAL MALICE.

---

[2] This Court should also disregard the descriptions of, references to, and citations to newspaper and online articles included in Plaintiff's Response, specifically, those on page 7 & nn. 20 and 21, and page 11 & n. 46. Such articles are inadmissible hearsay. *New England Mut. Ins. Co. v. Anderson,* 888 F.2d 646, 659 (10th Cir. 1989). They may not be considered in the context of a motion for summary judgment. *Sec. & Exch. Comm'n v. GenAudio, Inc.,* 32 F.4th 902, 936 (10th Cir. 2022).

In making the statements at issue, Defendants were entitled to rely on Dr. Halderman's 2020 declaration and the conclusions of the United States District Court for the Northern District of Georgia in its October 11, 2020, decision. The opinion in *Curling* was published before the November presidential election and before the statements by Defendants that serve as the basis for Plaintiff's claims. The *Curling* court's conclusion that plaintiffs had established a substantial likelihood of prevailing on the merits of their claims (*id.,* at 1335), principally on the testimony of their experts, provides justification for Defendants' statements challenged in this action. At the time of those statements, there was considerable public concern that features of the Dominion computerized voting system could have led to the alteration of the outcome of elections where Dominion's system was used. As the *Curling* court concluded: "The Plaintiffs' national cybersecurity experts convincingly present evidence that this is not a question of 'might this actually ever happen?'—but 'when it will happen,' especially if further protective measures are not taken." *Id.,* at 1342.

Defendants did not act with actual malice because they could not have known their statements were false because Dominion had declined to give access to its computerized voting system to the public or the courts. *See id.,* at 1341. Defendants were entitled to rely on Dr. Halderman's conclusion that "election outcomes could be changed without detection" by the Dominion system in 2020.

Defendants' Motion, Exhibit 20. They also knew that the *Curling* court had stated that national cybersecurity experts had concluded that interference in the outcome of an election as a result of the design of the Dominion computerized voting system was certain to occur at some point. 493 F.Supp.3d at 1342. Based on such information, the statements made by Lindell and FrankSpeech, LLC could not be considered reckless or inherently improbable.

The vulnerabilities of the Dominion system, as the *Curling* opinion demonstrated, posed a significant concern about election integrity at the time the challenged statements were made that negates the conclusion that these Defendants knew that their statements were false or inherently improbable, or made with reckless disregard of whether the statements were true or false.

## IV. PLAINTIFF CANNOT ESTABLISH THAT MYPILLOW IS LIABLE FOR DEFAMATAION UNDER THE LAW OF AGENCY OR RESPONDEAT SUPERIOR.

**A. No Speaker Acted with Actual or Apparent Authority.**

Plaintiff cannot meet its burden to establish that any speaker acted as an actual or an apparent agent of MyPillow. *See* Restatement (Third) of Agency, § 1.02 cmt. d) ("The party asserting the existence of an agency relationship has the burden of establishing its existence."). To establish agency based on actual authority, Plaintiff must prove that "the agent reasonably believe[d], in accordance with the principal's manifestations to the agent, that the principal wishe[d] the

6

agent so to act." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 396 P.3d 651, 656 (Colo. 2017) (quoting Restatement (Third) Agency, § 2.01 (2006)); *see also* Restatement (Third) Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') *manifests assent* to another person (an 'agent') that the agent shall act on the principal's behalf and *subject to the principal's control*, and the agent manifests assent or otherwise consents to so act.") (emphasis added).

  Plaintiff can point to no record evidence demonstrating that MyPillow manifested assent to Oltmann or Clements that they should speak on MyPillow's behalf and subject to its control.  The same is true with respect to Lindell. Plaintiff argues that Lindell had actual authority because he is the "majority shareholder with ultimate power" and "has absolute discretion to act on MyPillow's behalf in any way that he sees fit, and no one is authorized to control his statements or conduct." Response at 37. But that is not relevant to whether MyPillow as a corporation manifested assent to Lindell that he should speak on MyPillow's behalf with respect to election-related issues.  By appointing Lindell as MyPillow's CEO, MyPillow's Board of Directors authorized Lindell to conduct the business of the Company. But nothing in the record suggests that MyPillow's Board of Directors ever authorized Lindell to make statements on behalf of the company concerning

7

topics that have nothing to do with MyPillow's business of manufacturing and selling pillows and bedding products.

Plaintiff also points out that MyPillow board members have implored Lindell to stop engaging in his personal, election-related activities, but that he has not done so. *Id.* at 38 and n. 151. These facts cut against Plaintiff's position: They show (i) that MyPillow's board did not manifest assent to Lindell that he should make election-related statements on behalf of the Company, and (ii) that Lindell's statements were not made subject to the control of MyPillow's board. Accordingly, based on the record, Plaintiff cannot meet its burden of establishing agency through actual authority.

Plaintiff also argues that Lindell had apparent authority to make the statements at issue on behalf of MyPillow. Pl. Mem. at 39. Plaintiff's argument fails because no record evidence shows that Lindell claimed to act on behalf of MyPillow when making statements about Coomer or election interference.

To establish apparent authority, Plaintiff must show "that the principal consent[ed] to have the act done on his behalf by a person *purporting to act for him*." *Villalpando v. Denver Health & Hosp. Auth.*, 181 P.3d 357, 363 (Colo. App. 2007) (citation omitted) (emphasis added). No record evidence suggests that Lindell, in making the statements at issue, purported to act for MyPillow. The

8

same is true for Oltmann and Clements. Consequently, Plaintiff cannot establish agency based on apparent authority.

Moreover, the doctrine of apparent authority is simply not applicable here. The doctrine "protects third parties who, in good faith, rely on their belief that an agency relationship exists between the apparent principal and agent." *Villalpando*, 181 P.3d at 363 (citing *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 407 (Colo. App. 2004)). This is not such a case. Here, Coomer did not rely on a belief that Lindell was acting as MyPillow's agent.

### B. The Doctrine of Respondeat Superior is Inapplicable.

Plaintiff's respondeat superior argument is unavailing, because Lindell was not acting within the scope of employment when making the statements at issue.

According to the Restatement, "[m]ost often the doctrine [of respondeat superior] applies to acts that . . . are the consequence of inattentiveness or poor judgment on the part of an employee acting within the job description." Restatement (Third) of Agency § 2.04 cmt. b (2006). In contrast to other doctrines within the law of agency, "[m]ost cases applying [respondeat superior] involve negligence resulting in physical injury to a person or to property." *Id*. Plaintiff's attempt to apply the doctrine here should thus be viewed with skepticism.

Under respondeat superior, an employer may be held liable only for those torts of an employee committed while acting within the scope of employment. *See*,

9

*e.g.*, *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693 (Colo. App. 2006). The Restatement defines the scope of employment as follows:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Restatement (Third) Of Agency § 7.07(2) (2006). Furthermore, "[i]f an employee's tortious conduct is unrelated either to work assigned by the employer or to a course of conduct that is subject to the employer's control, the conduct is outside the scope of employment." *Id.*, § 7.07 cmt. b.

There is no dispute that Lindell was not performing work assigned by MyPillow when he made the statements at issue. No record evidence supports the proposition MyPillow assigned Lindell any work related to the topic of election interference—something that is wholly unrelated to the Company's business of manufacturing and selling pillows and bedding products. Moreover, the undisputed facts show that when Lindell made statements about election interference and Coomer, Lindell was engaging in a course of personal conduct that was not subject to MyPillow's control. As Plaintiff points out, MyPillow board members implored Lindell to stop his personal, election-related activities, but he did not. Pl. Mem. at 38 and n. 151.

Because Lindell's statements were not made when performing work assigned by MyPillow or engaging in a course of conduct subject to MyPillow's control, Lindell's alleged torts were not committed within the scope of employment. Consequently, MyPillow cannot be held liable under the doctrine of respondeat superior.

* * *

Based on the evidence in the record, Plaintiff cannot meet its burden to prove the existence of actual or apparent agency, and Plaintiff cannot establish that Lindell was acting in the scope of employment when he made the statements at issue concerning his personal and political opinions.  Accordingly, MyPillow cannot be held liable for defamation, and Plaintiff's claims against MyPillow should be dismissed.

### V.   SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST PLAINTIFF ON HIS CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL HARM AND CIVIL CONSPIRACY.

The facts related to Plaintiff's defamation claim are also the basis for his claims of intentional infliction of emotional harm and civil conspiracy. Plaintiff's Response at 47. Because Plaintiff cannot meet his burden of proof on those claims for the same reasons that he cannot prove his defamation claim, summary judgment is warranted against Plaintiff on the remaining two counts on the basis of

the arguments of Lindell and FrankSpeech, LLC regarding Plaintiff's defamation claim in sections II and III, *supra*.

### V. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST PLAINTIFF ON HIS CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL HARM AND CIVIL CONSPIRACY.

The facts related to Plaintiff's defamation claim are also the basis for his claims of intentional infliction of emotional harm and civil conspiracy. Plaintiff's Response at 47. Because Plaintiff cannot meet his burden of proof on those claims for the same reasons that he cannot prove his defamation claim, summary judgment is warranted against Plaintiff on the remaining two counts on the basis of the arguments of Lindell and FrankSpeech, LLC regarding Plaintiff's defamation claim in sections II and III, *supra*.

### CONCLUSION

Defendants Michael J. Lindell, FrankSpeech, LLC, and MyPillow, Inc. request that the Court enter an Order granting their Motion for Summary Judgment and dismissing each of Plaintiff's causes of action.

> MICHAEL J. LINDELL
> FRANKSPEECH, LLC
> MYPILLOW, INC.

By:-

/s/ *Robert J. Cynkar*
Patrick M.McSweeney
Robert J. Cynkar
Christopher I. Kachouroff
Lyndsey L. Bisch
*McSweeney, Cynkar & Kachouroff, PLLC*
10506 Milkweed Drive
Great Falls, Virginia 22066
(703) 621-3300
rcynkar@mck-lawyers.com

Deborah B. McIlhenny
*Robinson Law Firm, LLC*
218 N. Mosley St.
Wichita, KS 67202
(316) 308-4759
dmcilhenny@robinsonlawfirmks.com

# CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

zbowman@cstrial.com

ccain@cstrial.com

bkloewer@cstrial.com

djennings@cstrial.com

skarnulis@cstrial.com

sbeam@cstrial.com

/s/ *Robert J. Cynkar*