**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SKC

ERIC COOMER, PH.D.,

Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH, LLC, and
MYPILLOW, INC.,

Defendants.

---

**AMENDED REPLY OF DEFENDANTS LINDELL, FRANKSPEECH, LLC, MY PILLOW, INC. TO PLAINTIFF'S OMNIBUS RESPONSE TO DEFENDANTS' OMNIBUS MOTION FOR SUMMARYJUDGMENT AND IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

Defendants submit this Amended Reply to Plaintiff's Omnibus Response to Defendants' Omnibus Motion for Summary Judgment [ECF 235] ("Plaintiff's Response") and in support of Defendants' Omnibus Motion for Summary Judgment [ECF 177] ("Defendants' Motion").

## I. REPLY CONCERNING UNDISPUTED FACTS

Defendants state that the following paragraphs in Defendants' Motion are undisputed except are noted by Plaintiff in his Response: 1-6, 8-10, 11-30, 34, 36-37, 39, 41, 43, 45-49, 52.

Defendants state that the facts described in the following paragraphs in Plaintiff's Additional Facts are undisputed: 21-25, 27-31, 35, 38-43, 45, 47, 52, 54, and 56-61.

## II. REPLY CONCERNING DISPUTED FACTS

Defendants acknowledge that Plaintiff disputes the facts asserted in paragraphs 3-14 of Defendants' Motion.

Defendants state that the following Additional Facts listed in paragraphs of Plaintiff's Response are disputed:

20. There were no lies by Defendants. The vague reference to "negative pushback" is disputed.

26. Defendants dispute that such claims were "unequivocally false."

32. Dispute that Montgomery has a history of fraud and move to strike all references to newspaper articles.

33. Defendants dispute the statements and maintain that the facts alleged are immaterial to the issues to be resolved about Plaintiff's role in designing software.

34. Defendants dispute the generalized characterizations and materiality.

35. Defendants dispute the characterizations. The exhibits speak for themselves.

36. Defendants dispute all characterizations and the allegation concerning Hayes and Wood, as well as the materiality of the paragraph

37. Defendants dispute the paragraph because it does not identify publications.

44. Defendants dispute the generalizations and conclusory statements, They cannot respond to alleged claims that are not identified.

46. Defendants dispute that Lindell's allegations about Dominion's manipulation of votes had not been expressed before his deposition.

48. Defendants dispute that they have no corroborating evidence of Plaintiff's role in designing the Dominion system to manipulate votes.

48. Defendants dispute the statements because they cannot respond without identification of the statements referenced.

49. Defendants deny that they relied on Oltmann's unspecified allegations against Plaintiff.

50. MyPillow employees did not append weeks preparing for the Symposium and a MyPillow email address does not establish employment status.

51. The individual identified was not acting as a MyPillow employee.

53. Lindell did not promote the Symposium to MyPillow employees.

55. The individual identified was not acting as a MyPillow employee.

62. MyPillow has never been a vehicle to advance Lindell's political beliefs.

63. Promo codes are not an endorsement of a forum's content or purpose.

65. MyPillow does not mix election fraud concerns with its sales pitches. Lindell did not make the referenced statements as director or under the control of MyPillow. MyPillow has not ratified the statements attributed to Lindell.

## III. ARGUMENT

Defendants are entitled to summary judgment in their favor on all counts because Plaintiff cannot prove with clear and convincing evidence that Defendants' statements at issue are false or that such statements were made with actual malice. Except for facts bearing on the truth or falsehood of Defendants' challenged statements and any actual malice of Defendants in making those statements, the disputed facts are immaterial to the issue posed by this Court as the central issue in this litigation.

### A. Plaintiff Cannot Satisfy His Burden of Proof That Defendants' Statements Are False.

This Court has concluded that the issue to be resolved in this case is whether "Dr. Coomer's actions with regard to the Dominion voting machines either interfered in the 2020 presidential election or they did not." 2023 WL 2528624, *8 (March 15, 2023). Plaintiff acknowledges (Response at 23) that he has the burden of proving that Defendants' statements are false by clear and convincing evidence. He cannot do so without demonstrating how Dominion's computerized voting system actually functioned in the 2020 election. If the software installed by Dominion for use in that election allowed for the manipulation of cast votes, its designer is criminally responsible. 18 U.S.C. § 241.

The issue to be resolved in this litigation is whether "Dr. Coomer's actions with regard to the Dominion voting machines either interfered in the 2020

presidential election or they did not." 2023 WL 2528624, *8 (March 15, 2023). Plaintiff cannot clearly and convincingly prove that the Dominion computerized voting system, which he had a role in designing,[1] did not allow for the manipulation of cast votes in the 2020 presidential election without evidence of how the system functioned during the 2020 election.

Plaintiff relies on a single expert, Dr. Halderman, whose declaration submitted in this litigation (Ex. 12) is referenced in paragraphs 34 and 78 of the Response as evidence that Defendants' statements are "provably false." Only an examination of the Dominion computerized system used in the 2020 election can establish whether that system was rigged to alter the outcome. Dr. Halderman's most recent declaration asserts that Defendants' claim that Coomer had a role in rigging the 2020 election is "implausible" and "inherently improbable." Ex. 12 at ¶¶ 16. He contends that Defendants have not proven that their statements were true, but that burden is imposed on Plaintiff and not Defendants.

In addition, Dr. Halderman's present position conflicts with the statement that he made in the *Curling* litigation and on which the district court in that case relied in its October 11, 2020,` decision. *Curling v. Raffensperger,* 493 F.Supp.3d 1264, 1278-79, 1285-86 (N.D.Ga. 2020), *prelim. injunction vac., appeal dismissed*

[1] Doc. 178 at 32, ll. 1-8, 24-25 (Coomer deposition).

*in part,* 50 F.4th 1114 (11th Cir. 2022). Defendants quoted from Dr. Halderman's 2020 statement at page 44 of their Motion that

> malicious modifications to [Dominion's] software could undermine the integrity of election results in multiple ways, including by changing either the barcodes alone or both the barcodes and the human readable text, **with the result that the election outcomes could be changed without detection.**

Defendants' Ex. 20, ¶ 7 (emphasis added). Dr. Halderman was offered as an expert for the *Curling* plaintiffs seeking to ban Georgia's use of Dominion's voting machines in the 2020 election.  In contrast, Dr. Coomer testified as an expert in *Curling* on behalf of the State defendants. Their respective expert opinions differed sharply.

The *Curling* court credited the testimony of plaintiffs' experts, including Dr. Halderman (493 F.Supp.3d at 1279,1289, 1291-92, 1299, 1301, 1320-21), and rejected Dr. Coomer's testimony and that of defendants' other experts. *Id.,* at 1286-87, 1301, 1303-04, 1332-33. As the *Curling* court concluded: "The Plaintiffs' national cybersecurity experts convincingly present evidence that this is not a question of 'might this actually ever happen?'—but 'when it will happen,' especially if further protective measures are not taken." *Id.,* at 1342.

Plaintiff acknowledges (Plaintiff's Response at 23) that he has the burden of proving that Defendants' statements are false by clear and convincing evidence. He cannot do so without demonstrating how Dominion's computerized voting system

actually functioned in the 2020 election. Plaintiff has not and cannot demonstrate how that system was designed or how it functioned without offering a demonstration of the system's software content and operation during the 2020 election because that software has been erased.

Dominion has prevented public scrutiny of, and full and unrestricted access by experts to, its computerized voting system. 493 F.Supp.3d at 1278-79, 1285-86. The *Curling* court observed: "The insularity of the Defendants' and Dominion's stance here in evaluation and management of the security and vulnerability of [Dominion's ballot marking device] BMD system does not benefit the public or citizens' confident exercise of the franchise." *Id.,* at 1341. If Dominion had permitted independent experts to have generally unrestricted access to its computerized system after the 2020 presidential election, much of the litigation that has been filed claiming election irregularities could have been avoided. Regardless of the justification, if any, for Dominion's decision not to provide experts or the public access to its computerized voting system.

Plaintiff cannot prove that Defendants' statements were false by pointing to evidence in his Response other than a full exposition of the Dominion voting system as it was used in the 2020 election. His self-serving declaration cannot prove that Defendants' statements were false. A failure at the August 2021 Symposium to establish that China interfered with the outcome of the 2020

election (Plaintiff's Response at 11) would not show whether Dominion's computerized voting system did or did not play a part in manipulating the outcome of the voting in that election. Any statements by individuals who were scheduled to make a presentation at the Symposium "that the information they intended to present at the Symposium was fraudulent" (Plaintiff's Response at 11) has nothing to do with whether Plaintiff can prove that the Dominion computerized voting system was not designed to manipulate cast votes in the 2020 election. And settlements of other litigation cannot be invoked to prove that the Dominion system played no role in altering the outcome of the 2020 election. F.R.Evid. 408; CRE 408; *see Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.,* 266 F.Supp.2d 1253, 1258-59 (D.Colo. 2003); *Hartman v. Community Responsibility Ctr., Inc.,* 87 P.3d 202, 206 (Colo. App. 2003).

### B. Plaintiff Cannot Satisfy His Burden of Proof That Defendants Made Their Statements with Actual Malice.

Regardless of whether the statements are true or false, Defendants were entitled to rely at the time those statements were made on Dr. Halderman's declaration and the conclusions of the district court in *Curling* in its October 11, 2020, decision related to whether Dominion's computerized voting system could be used in the 2020 election. As the *Curling* court concluded: "The Plaintiffs' national cybersecurity experts convincingly present evidence that this is not a

question of 'might this actually ever happen?'—but 'when it will happen,' especially if further protective measures are not taken." *Id.,* at 1342.

Defendants did not act with actual malice because they knew that the *Curling* court had stated that national cybersecurity experts had concluded that interference in the outcome of an election as a result of the design of the Dominion computerized voting system was certain to occur at some point. 493 F.Supp.3d at 1342. Based on such information, the statements made by Defnedants could not be considered reckless or inherently improbable.

The vulnerabilities of the Dominion computerized voting system, as the *Curling* opinion demonstrated, posed a significant concern about election integrity at the time the challenged statements were made that negates the conclusion that these Defendants knew that their statements were false or made the statements with reckless disregard of whether the statements were true or false.

### C. Plaintiff Cannot Establish That MyPillow Is Liable for Defamation under the Law of Agency or Respondeat Superior.

1. No Speaker Acted with Actual or Apparent Authority.

Plaintiff cannot meet its burden to establish that any speaker acted as an actual or an apparent agent of MyPillow. *See Bowden v. Mattaway*, No. 21CV30007, 2021 Colo. Dist. LEXIS 1217, *2 (Dist. Ct. Colo. Nov. 15, 2021) (citing Restatement (Third) of Agency, § 1.02 cmt. d) ("The party asserting the existence of an agency relationship has the burden of establishing its existence.").

To establish agency based on actual authority, Plaintiff must prove that "'at the time of taking action that ha[d] legal consequences for the principal, the agent reasonably believe[d], in accordance with the principal's manifestations to the agent, that the principal wishe[d] the agent so to act.'" Restatement (Third), § 2.01. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 396 P.3d 651, 656 (Colo. 2017) (quoting Restatement (Third) Agency, § 2.01 (2006)); *see also* Restatement (Third) Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') *manifests assent* to another person (an 'agent') that the agent shall act on the principal's behalf and *subject to the principal's control*, and the agent manifests assent or otherwise consents to so act.") (emphasis added).

Plaintiff can point to no record evidence demonstrating that MyPillow manifested assent to Oltmann or Clements that they should speak on MyPillow's behalf and subject to its control. The same is true with respect to Lindell. Plaintiff argues that Lindell had actual authority because he is the "majority shareholder with ultimate power" and "has absolute discretion to act on MyPillow's behalf in any way that he sees fit, and no one is authorized to control his statements or conduct." Pl. Mem. at 37. But that is not relevant to whether MyPillow as a corporation manifested assent to Lindell that he should speak on MyPillow's behalf with respect to election-related issues. By appointing Lindell as MyPillow's CEO, MyPillow's Board of Directors authorized Lindell to conduct the business of the

Company. But nothing in the record suggests that MyPillow's Board of Directors ever authorized Lindell to make statements on behalf of the company concerning topics that have nothing to do with MyPillow's business of manufacturing and selling pillows and bedding products.

Plaintiff also points out that MyPillow board members have implored Lindell to stop engaging in his personal, election-related activities, but that he has not done so. *Id.* at 38 and n. 151. These facts cut against Plaintiff's position: They show (i) that MyPillow's board did not manifest assent to Lindell that he should make election-related statements on behalf of the Company, and (ii) that Lindell's statements were not made subject to the control of MyPillow's board. Accordingly, based on the record evidence, Plaintiff cannot meet its burden of establishing agency through actual authority.

Plaintiff also argues that Lindell had apparent authority to make the statements at issue on behalf of MyPillow. Pl. Mem. at 39. Plaintiff's argument fails because no record evidence shows that Lindell ever claimed to act on behalf of MyPillow when making statements about Coomer or election interference.

To establish apparent authority, Plaintiff must provide "proof of 'written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf by a person *purporting to act for him*.'" *Villalpando v. Denver Health &*

*Hosp. Auth.*, 181 P.3d 357, 363 (Colo. App. 2007) (quoting *Lucero v. Goldberger,* 804 P.2d 206, 209 (Colo. App. 1990)) (emphasis added). No record evidence suggests that Lindell, in making the statements at issue, purported to act for MyPillow. The same is true for Oltmann and Clements. Consequently, Plaintiff cannot establish agency based on apparent authority.

Indeed, the doctrine of apparent authority is simply not applicable here. The doctrine of apparent authority "protects third parties who, in good faith, rely on their belief that an agency relationship exists between the apparent principal and agent." *Villalpando*, 181 P.3d at 363 (citing *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 407 (Colo. App. 2004)). This is not such a case. Here, Coomer did not rely on a belief that Lindell was acting as MyPillow's agent.

2. The Doctrine of Respondeat Superior Is Inapplicable.

Plaintiff further contends that MyPillow is liable for Lindell's alleged defamation under the doctrine of respondeat superior. Pl. Mem. at 39-40. Plaintiff's argument is unavailing, because Lindell was not acting within the scope of employment when making the statements at issue.

According to the Restatement (Third) of Agency, "[m]ost often the doctrine [of respondeat superior] applies to acts that . . . are the consequence of inattentiveness or poor judgment on the part of an employee acting within the job

description." Restatement (Third) Of Agency § 2.04 cmt. b (2006). In contrast to other doctrines within the law of agency, "[m]ost cases applying [respondeat superior] involve negligence resulting in physical injury to a person or to property." *Id.* The instant matter is not such a case, and thus Plaintiff's attempt to apply the doctrine here should be viewed with skepticism.

When the doctrine does apply, an employer may be held liable only for those torts of an employee that were committed while the employee was acting within the scope of employment. *See*, *e.g.*, *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693 (Colo. App. 2006). The Restatement (Third) of Agency defines the scope of employment as follows:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Restatement (Third) Of Agency § 7.07(2) (2006). The commentary to the Restatement clarifies that "[i]f an employee's tortious conduct is unrelated either to work assigned by the employer or to a course of conduct that is subject to the employer's control, the conduct is outside the scope of employment." *Id.*, § 7.07 cmt. b.

In the instant matter, there is no dispute that Lindell was not performing work assigned by MyPillow when he made the statements at issue. No record

evidence supports the proposition MyPillow assigned Lindell any work related to the topic of election interference—something that is wholly unrelated to the Company's business of manufacturing and selling pillows and bedding products. Moreover, the undisputed facts show that when Lindell made statements about election interference and Coomer, Lindell was engaging in a course of conduct that was not subject to MyPillow's control. As Plaintiff himself points out, MyPillow board members were not able to control Lindell's personal election-related activities: believing Lindell's personal election-related activities were hurting MyPillow, board members implored Lindell to stop, but he did not. Pl. Mem. at 38 and n. 151. MyPillow has no control over Lindell's personal and political opinions and activities.

Because Lindell's statements about Coomer and election interference were not made when performing work assigned by MyPillow or engaging in a course of conduct subject to MyPillow's control, Lindell's alleged torts were not committed within the scope of employment. *See* Restatement (Third) Of Agency § 7.07(2). Consequently, MyPillow cannot be held liable under the doctrine of respondeat superior.

* * *

Based on the evidence in the record, Plaintiff cannot meet its burden to prove the existence of an actual or apparent agency relationship between MyPillow

and Lindell, Oltmann, or Clements, and Plaintiff cannot establish that Lindell was acting in the scope of his employment when he made the statements at issue concerning his personal and political opinions. Accordingly, MyPillow cannot be held liable for defamation, and Plaintiff's claims against MyPillow should be dismissed.

### 3. Summary Judgment Should Be Entered Against Plaintiff on His Claims of Intentional Infliction of Emotional Harm and Civil Conspiracy.

Plaintiff's defamation claim and his claims of intentional infliction of emotional harm and civil conspiracy are based on identical facts. Plaintiff's Response at 47. Because Plaintiff cannot meet his burden of proof on those claims for the same reasons that he cannot prove his defamation claim, summary judgment is warranted against Plaintiff on the remaining two counts on the basis of Defendants' arguments regarding Plaintiff's defamation claim..

## CONCLUSION

Defendants request that the Court enter an Order granting their Motion for Summary Judgment and dismissing each of Plaintiff's causes of action.

MICHAEL J. LINDELL
FRANKSPEECH, LLC
MYPILLOW, INC.

By:-

/s/ *Robert J. Cynkar*

Patrick M.McSweeney
Robert J. Cynkar
Christopher I. Kachouroff
Lyndsey L. Bisch
*McSweeney, Cynkar & Kachouroff, PLLC*
10506 Milkweed Drive
Great Falls, Virginia 22066
(703) 621-3300
rcynkar@mck-lawyers.com

Deborah B. McIlhenny
*Robinson Law Fir, LLC*
218 Mosley St.
Wichita, KS 67202
(316) 308-4759
dmcilhenny@robinsonlawfirmks.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2024 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

zbowman@cstrial.com

ccain@cstrial.com

bkloewer@cstrial.com

djennings@cstrial.com

skarnulis@cstrial.com

/s/ *Robert J. Cynkar*