IN THE UNITED STATES DISTRICT COUR
FOR THE DISTRICT OF COLORADO

ERIC COOMER, PhD.,
    Plaintiff
v.                                          Civil Action No. 1:22-cv-01129

MICHAEL J. LINDELL, et al.,
    Defendants
_____

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S REQUEST FOR STATUS CONFERENCE**

While it is far from apparent that a status conference is needed at this time, Defendants take no position on whether a status conference should be held. We defer to the judgment of the Court on this matter. However, we do wish to register our objection to several statements made by the Plaintiff as part of his supposed argument for a status conference.

1. Plaintiff quotes despicable statements "reportedly" made by Mr. Joe Oltmann at an event at which Defendant Lindell spoke. Plaintiff's Request for Status Conference ("Request"), at 2. Plaintiff does not claim Mr. Lindell himself said anything like Mr. Oltmann's statements (as described by Plaintiff), nor does Plaintiff contend that Defendant Lindell expressed any approval of, or agreement with, those statements.

Mr. Oltmann is not a party to this case. As objectionable as Mr. Oltmann's statements are, they have no relevance to any justification for a status conference in this case. The only connection to a party that Plaintiff tries to draw is to say that Defendant Lindell was at some event, and he was "joined" by Mr. Oltmann. *Id.* This is an obvious and gratuitous effort to engage in guilt by association solely to demean Defendant Lindell. It is grossly inappropriate.

2. Plaintiff states that at this event Defendant Lindell was "spreading lies about American election integrity." *Id.* Defendant Lindell believes that there are serious vulnerabilities in the use of computers in the election process that threatens the integrity of those elections. Plaintiff may disagree, but that point of view is hardly outlandish, much less a "lie." Plaintiff has absolutely no basis for such inflammatory rhetoric given the current record of public consideration of these issues. For example, the United States District Court for the Northern District of Georgia found that risks to election integrity as a result of computerized voting systems "are neither hypothetical nor remote under the current circumstances." *Curling v. Raffensperger*, 493 F.Supp.3d 1264, 1341 (N.D.Ga. 2020). *Curling* quoted a report of the National Academies of Sciences, Engineering, and Medicine explaining that

> there is no technical mechanism currently available that can ensure that a computer application – such as one used to record or count votes – will produce accurate results; testing alone cannot ensure that systems have not been compromised; and any computer system used for elections – such as a voting machine or e-pollbook – can be rendered inoperable'

*Id.*, at 1279.

The *Curling* Court went on to observe:

> The stealth vote alteration or operational interference risks posed by malware that can be effectively invisible to detection, whether intentionally seeded or not, are high once implanted, if equipment and software systems are not properly protected, implemented, and audited. The modality of the BMD systems' capacity to deprive voters of their cast votes without burden, long wait times, and insecurity regarding how their votes are actually cast and recorded in the unverified QR code makes the potential constitutional deprivation less transparently visible as well, at least until any portions of the system implode because of system breach, breakdown, or crashes.

*Id.,* at 1341-42.

*Curling* offered an ominous conclusion:

> The Plaintiffs' national cybersecurity experts convincingly present evidence that this is not a question of "might this actually ever happen?" – but "when it will happen," especially if further protective measures are not taken. Given the masking nature of malware and the current systems described here, if the State and Dominion simply stand by and say, "we have never seen it," the future does not bode well.

*Id.,* at 1342.

Recent events suggest that that future might already be upon us. Consider the strange dilemma of Michelle Long Spears, a Democrat, who, in 2022, initially placed 3rd in a three-way race in DeKalb County, Georgia.[1] When Ms. Spears questioned why there were no votes for her in her own precinct when she, her husband, and her daughter cast votes for her, a major "glitch" was discovered. According to what can be gleaned from newspaper accounts, the official line was that there was a "programming error" with Dominion's machines and that Ms. Spears *actually won the election*. Had she not questioned the machines, she would never have held elected office.

In the November 2020 election in Fulton County, Geogia, the election management server crashed, 1000s of duplicate ballots were cast, and over 60,000 ballot images were lost in Dominion's voting system—the same system that Mr. Coomer was responsible for. But this is nothing new and Plaintiff is well aware of it. Mr. Coomer himself has said in internal Dominion emails that the Dominion product "sucks."

Again, Plaintiff may not share the concern of Defendant Lindell and many others that the use of computerized systems to count and record ballots poses very serious problems for election integrity. Plaintiff has a right to disagree. But Plaintiff does not have a right to use these proceedings as a platform to vilify Defendant Lindell with such

---

[1] A candidate in Georgia who appeared to get few Election Day votes was actually in first place. https://www.nytimes.com/2022/06/06/us/politics/michelle-long-spears-georgia.html

baseless – and thoughtless – accusations that he is "spreading lies." A litigant should engage on the merits or not engage at all.

      3. Finally, Plaintiff's most extreme maneuver is to claim that this case somehow "arises" from a "conspiracy theory" that "gave rise" to the January 6, 2021 attack on the United States Capitol. Request, at 3. Such an over-the-top stretch to link this defamation case with that riot evidences a willingness to say almost anything to prejudice Defendant Lindell, and to punish anyone who dares raise questions – shared by many experts, as *Curling* pointed out -- about election integrity or voting machines.

      Respectfully submitted,

DATED: July 18, 2024.  **MCSWEENY, CYNKAR & KACHOUROFF PLLC**

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff* (Bar No. 44216)
Robert J. Cynkar
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
(703) 621-3300
chris@mck-lawyers.com

**ATTORNEYS FOR DEFENDANTS**