**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-01129-NYW-SBP

ERIC COOMER,

      Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH LLC, and
MY PILLOW, INC.,

      Defendants.

---

### MEMORANDUM OPINION AND ORDER

---

This matter comes before the Court on the following motions:

(1)    Defendants' Omnibus Motion for Summary Judgment (the "Motion for Summary Judgment"), [Doc. 177, filed September 8, 2023];

(2)    Defendants' Motion to Exclude Testimony of J. Alex Halderman (the "Motion to Exclude"), [Doc. 188, filed September 19, 2023]; and

(3)    Plaintiff's Objec[t]ion to Defendants['] Designation of Nonparties at Fault and Motion to Strike Designation (the "Motion to Strike"), [Doc. 216, filed October 26, 2023].

The Court finds that oral argument would not materially assist in the disposition of these motions. Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **DENIES** the Motion for Summary Judgment, **GRANTS in part** and **DENIES in part** the Motion to Exclude, and **GRANTS** the Motion to Strike.

## BACKGROUND

Plaintiff initiated this lawsuit on April 4, 2022, in the District Court of Denver County, Colorado, against Defendants Michael J. Lindell ("Mr. Lindell"), Frankspeech LLC ("Frankspeech"), and My Pillow, Inc. ("MyPillow").   [Doc. 4].   Defendants removed the case to federal court on May 5, 2022.  [Doc. 1].   On June 17, 2022, Dr. Coomer filed a First Amended Complaint and Jury Demand (the "First Amended Complaint") to add additional allegations of conduct arising since the inception of the lawsuit.   [Doc. 21]. Defendants moved to dismiss each of the claims asserted in the First Amended Complaint under Rule 12(b)(6).  *See generally* [Doc. 38].  After full briefing on the merits, this Court denied Defendants' Motion to Dismiss on March 15, 2023.  [Doc. 119].  Then, on April 6, 2023, Plaintiff sought leave to further amend his operative pleading to include additional facts and to assert a demand for exemplary damages.  [Doc. 127].  On July 7, 2023, this Court granted Plaintiff leave to file his Second Amended Complaint and Jury Demand (the "Second Amended Complaint") and ordered Defendants to file an answer to the Second Amended Complaint no later than July 21, 2023.  [Doc. 169].  On July 21, 2023, Defendants answered the Second Amended Complaint.  [Doc. 171].  On October 5, 2023, Defendants filed a designation of nonparties at fault.  [Doc. 199].

The Court has previously summarized the factual background of Plaintiff's allegations at length, *see, e.g.*, [Doc. 119 at 1–5; Doc. 197 at 3–7], and need not repeat it here.  In essence, Dr. Coomer has sued Defendants for linking Dr. Coomer, a former employee of Dominion Voting Systems, Inc. ("Dominion"), to election interference by publicizing allegedly false and defamatory statements, originating with nonparty Joseph Oltmann ("Mr. Oltmann"), that Dr. Coomer supposedly assured an "Antifa conference call" that he had "made . . . sure" former President Donald J. Trump would not win the 2020

presidential election.  *See* [Doc. 170 at ¶ 29].  In his Second Amended Complaint, Plaintiff asserts three causes of action against Defendants: (1) defamation, (2) intentional infliction of emotional distress ("IIED"), and (3) civil conspiracy.  [*Id.* at ¶¶ 146–59].  The Second Amended Complaint also includes demands for permanent injunctive relief as well as exemplary damages.  [*Id.* at ¶¶ 160–174].  Dr. Coomer alleges that, as a result of Defendants' conduct, he has faced "an onslaught of harassment and credible death threats issued against him; he is at risk in his home or in going to work; [and] his presence puts his family, friends, colleagues, and his community in danger."  [*Id.* at ¶ 152].  He further avers that, as a direct and proximate result of Defendants' conduct, he has "suffered significant actual and special damages including, without limitation, emotional distress, overwhelming stress and anxiety, lost earnings, and other pecuniary loss."  [*Id.* at ¶¶ 154, 159]; *see also* [*id.* at ¶ 150 ("As a direct and proximate result of Defendants' conduct, Dr. Coomer has suffered significant actual and special damages including, without limitation, harm to his reputation, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss.")].

Defendants have now moved for summary judgment as to all Plaintiff's claims, as well as to exclude certain opinions by Plaintiff's expert witness Dr. J. Alex Halderman ("Dr. Halderman") from trial.  [Doc. 177; Doc. 188].  Meanwhile, Plaintiff has moved to strike Defendants' designations of nonparties at fault.  [Doc. 216].  All motions are fully briefed and ripe for decision.

## LEGAL STANDARDS

### I.      Motion for Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (quotations omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (quotation omitted).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738 (4th ed. April 2023 update) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or the denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the Court may consider only admissible evidence, *see Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  For

instance, "if th[e] evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

## II.   Motion to Exclude

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As noted by the Advisory Committee when the Rule was first promulgated, "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge." Fed. R. Evid. 702 advisory committee's note.

It is well established that trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony or evidence admitted is not only relevant, but also reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that

gatekeeper function, courts within the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") conduct a two-part inquiry.  First, courts consider whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by assessing the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is valid. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2005)).  Second, courts look at whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder.  *See id.*  The party offering the expert opinion bears the burden of establishing its admissibility, including all foundational requirements, by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).  To that end, courts consider the following non-exhaustive factors in analyzing whether a particular expert opinion meets the requirements of Rule 702, *Daubert*, and their progeny:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.*  The analysis is opinion-centric, rather than expert-centric.  *See United States v. Nacchio*, 608 F. Supp. 2d 1237, 1250–51 (D. Colo. 2009).

Additionally, although an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function, *see Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).  Nevertheless, "a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  *Id*. at 809.  Such testimony "is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function."  *Id*. at 809–10.  If "the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based," however, "the testimony cannot be allowed."  *Id*. at 810.  Testimony that "articulates the ultimate principles of law governing the deliberations of the jury" is inadmissible.  *Id*. at 808.  Additionally, although the line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, it is settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).

## III.    Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure states that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f)(1).  "[B]oth Colorado courts and courts of this District recognize the designation of a nonparty at fault as a pleading."  *McGraw v. Cobra Trucking Inc.*, No. 20-cv-01032-NYW, 2020 WL 7230637, at *3 n.2 (D. Colo. Dec. 8, 2020) (citing cases); *see also Moore v. Banta*, No. 14-cv-00143-REB-MJW, 2015 WL 859506, at *1 (D. Colo. Jan. 29, 2015), *report and recommendation adopted*, 2015 WL 849194 (D. Colo. Feb. 25, 2015).

## ANALYSIS

### I.      Motion for Summary Judgment

In the Motion for Summary Judgment, Defendants argue (1) that the allegedly defamatory statements at issue are not actionable; (2) that the allegedly defamatory statements did not cause Plaintiff actual damages; (3) that Defendant MyPillow is not liable on the defamation claim; (4) that Plaintiff cannot meet his burden with respect to demonstrating actual malice; (5) that the claims for IIED and civil conspiracy cannot survive summary judgment; (6) that Plaintiff cannot obtain permanent injunctive relief; and (7) that Plaintiff has offered insufficient evidence in support of his attempt to recover exemplary damages.  [Doc. 177].  Accordingly, Defendants seek summary judgment on all claims in the Second Amended Complaint.

The Parties list more than one-hundred material facts—many with multiple components—across over one-hundred pages of briefing, with dozens of voluminous supporting exhibits.  *See generally* [*id.*]; *see also* [Doc. 235].  However, it appears that most of these statements of fact are not germane to the contested issues raised in the Motion for Summary Judgment.  Rather than assess at length which facts are undisputed for purposes of the summary-judgment record and to what extent, the Court focuses only on those facts and legal issues that are essential to considering Defendants' various arguments.  For the reasons that follow, the Motion for Summary Judgment is respectfully **DENIED**.

### A.    Actionability of Statements

Defendants contend that the allegedly defamatory statements in the Second Amended Complaint are not actionable as a matter of law in Plaintiff's claim for defamation.  [Doc. 177 at 18–19].   Specifically, Defendants single out the following statements:   (1) that Dr. Coomer is "corrupt"; (2) that Mr. Lindell is "up against" "corruption"; (3) that Mr. Lindell has never talked about Dr. Coomer; (4) that Dr. Coomer is the "president of Dominion"; (5) that Dominion is a "criminal crime family"; (6) that Dr. Coomer is "a criminal"; (7) that MyPillow does not know who Dr. Coomer is; (7) that Dr. Coomer did a "very, very stupid move"; (8) that Dr. Coomer will be "behind bars"; (9) that Georgia Secretary of State Brad Raffensperger will be "behind bars"; (10) that Colorado Secretary of State Jena Griswold will be "behind bars"; (11) that Dr. Coomer is "disgusting"; (12) that Dr. Coomer "belong[s] behind bars"; (13) that Dr. Coomer "ran into a building drunk the other day"; (14) that Dr. Coomer has "been a part of the biggest crime this world has ever seen"; (15) that Dr. Coomer "even said what [he] did or [he was] going to do"; (16) that Dr. Coomer is "evil"; (17) that Dr. Coomer "did crimes against the United States"; and (18) that Dr. Coomer "did crimes against . . . quite frankly all of humanity." [*Id.*].  Defendants variously argue that these statements are not actionable because they are protected opinion, hyperbolic, vague, predictive, about nonparties, or substantially true.  [*Id.* at 19–29].

For two significant reasons, Defendants' actionability argument fails.   First, Defendants contend that Dr. Coomer "cannot meet his burden [to show actionability] for *each statement* he identifies in the Second Amended Complaint," [Doc. 177 at 18 (emphasis added)], but, as Plaintiff points out, Defendants' argument is limited to a single

publication by Mr. Lindell from April 6, 2022, *see* [Doc. 235 at 24]; *see also* [Doc. 170 at ¶¶ 103–04], and the Second Amended Complaint covers numerous other allegedly defamatory publications by or potentially attributable to Defendants from between 2021 and 2023, *see, e.g.*, [Doc. 170 at ¶¶ 54–61, 63–65, 81–92, 100–02, 106–09, 116, 119–23, 125–30].[1]   Accordingly, the actionability argument is not dispositive, and the Court proceeds only to the extent that Defendants seek partial summary judgment as to the actionability of select statements alleged in the Second Amended Complaint.  *See* Fed. R. Civ. P. 56(a) (permitting a party to obtain summary judgment on "part of" a "claim or defense").

Second, turning to the statements themselves, Defendants' argument misses the forest for the trees by ignoring the context that a reasonable jury could foreseeably attribute to Mr. Lindell's comments.  *See Zia Shadows, L.L.C.*, 829 F.3d at 1236 (on summary judgment, courts must "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant").   Construing the summary-judgment record in Plaintiff's favor as it must, this Court finds that a reasonable factfinder could conclude that that every word or phrase isolated by Defendants as part of their limited argument against actionability ought to be understood in the context of the

---

[1] Defendants' Reply does not address this argument; indeed, the Reply entirely declines to revisit the actionability arguments that open the Motion for Summary Judgment.  *See generally* [Doc. 248].   Instead, Defendants' Reply principally argues that Dr. Coomer "cannot clearly and convincingly prove that the Dominion computerized voting system, which he had a role in designing, did not allow for the manipulation of cast votes in the 2020 presidential election without evidence of how the system functioned during the 2020 election." [*Id.* at 4–8 (footnote omitted)].  This argument was not raised in the Motion for Summary Judgment and is therefore waived. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011); *Ulibarri v. City & Cnty. of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010).

overarching and allegedly defamatory factual claim that Dr. Coomer rigged or otherwise interfered with the 2020 election. The record on summary judgment contains sufficient evidence to lead a reasonable factfinder in this direction. *See, e.g.*, [Doc. 235-1 at 1–2; Doc. 235-2 at ¶¶ 27–29]; *see also Burns v. McGraw-Hill Broad. Co., Inc.*, 659 P.2d 1351, 1360 (Colo. 1983) ("[O]pinions which imply the existence of an undisclosed defamatory factual predicate may support a cause of action in defamation."). This Court has previously recognized that this contention provides a basis for defamation liability, concluding at the motion-to-dismiss stage that the statements at issue in this litigation "are sufficiently factual to be susceptible of being proved true or false" because "Dr. Coomer's actions with regard to the Dominion voting machines either interfered in the 2020 presidential election or they did not." *See* [Doc. 119 at 16]. Indeed, the Court accepted Defendants' argument that a higher showing of actual malice must be made on Plaintiff's defamation claim precisely because the statements at issue concern election integrity, which is a matter of public concern. [*Id.* at 8–10]. To the extent that Defendants dispute whether Mr. Lindell was discussing election fraud or, instead, Dr. Coomer's settlement with Newsmax, *see, e.g.*, [Doc. 177 at 23], that only serves to create a dispute of material fact for the jury to resolve—as Defendants appear to acknowledge in their Reply, *see* [Doc. 248 at 2]—or to draw attention to matters that the jury must be carefully instructed about. Either way, summary judgment on the actionability of select statements in the Second Amended Complaint is unmerited.

### B.  Causation

Next, Defendants argue that Dr. Coomer cannot show actual damages on his defamation claim because—due to other individuals and entities spreading the same

allegedly defamatory message about Dr. Coomer which originated with Mr. Oltmann—any damages suffered predate, or are otherwise not fairly traceable to, Defendants' conduct. *See* [Doc. 177 at 29–33]. Plaintiff responds that republication gives rise to new damages and that Defendants' publications have been "uniquely damaging" to him. [Doc. 235 at 32].

The Court respectfully concludes that Defendants' causation argument, while highly relevant to calculating any potential award of damages at trial, does not compel summary judgment. That is because Dr. Coomer has adduced sufficient evidence to create triable issues of fact as to whether he suffered or continues to suffer actual damages caused by Defendants' allegedly defamatory publications. *See, e.g.*, [Doc. 235-2 at ¶¶ 30–31, 37; Doc. 235-22 at 47:12–25].[2] Specifically, Plaintiff has introduced evidence of continued harassment and targeting that a reasonable jury could connect with Defendants' alleged defamation based on the timing of the harassment and record evidence of large audiences for events like the Cyber Symposium. *See, e.g.*, [Doc. 236-5; Doc. 235-26 at 2; Doc. 235-40 at 2]. And Plaintiff refers the Court to deposition testimony from his therapist concerning his deteriorated condition in August 2021 immediately following Defendants' Cyber Symposium. *See* [Doc. 235-25 at 253:5–254:20]. Accordingly, the record supports submitting the intertwined issues of actual damages and causation to the jury. *Cf. Keohane v. Stewart*, 882 P.2d 1293, 1305 (Colo. 1994) (recognizing that "[c]laims for damages for emotional distress are inherently difficult to prove with certainty, to rebut, and to evaluate").

---

[2] When citing to transcripts, the Court cites to the document number generated by the CM/ECF system and to the page and line numbers appearing on the original transcript.

C.      **MyPillow's Liability**

Defendants argue that summary judgment should be granted on the defamation claim against MyPillow because "MyPillow never published, authorized, or ratified any statements about Coomer."  [Doc. 177 at 33].  Specifically, Defendants contend that no speaker acted as MyPillow's agent, that MyPillow did not ratify any of the statements at issue, and that the statements at issue are not defamatory.  [*Id.* at 34–37].  Plaintiff responds that MyPillow is responsible for the statements at issue both independently and under agency principles, that MyPillow ratified the statements, and that the statements are defamatory.  [Doc. 235 at 36–41].

This Court respectfully concludes that summary judgment in MyPillow's favor with respect to vicarious liability is not appropriate on this record.  In Colorado, "the existence of an agency relationship is ordinarily a question of fact to be determined by the fact finder," although an exception exists where "there is no dispute or conflict in the facts which are alleged to have created the agency."  *Victorio Realty Grp., Inc. v. Ironwood IX*, 713 P.2d 424, 425 (Colo. App. 1985).  The doctrine of respondeat superior is subject to similar treatment.  *See Gordon v. Boyles*, 99 P.3d 75, 82 (Colo. App. 2004) (denying summary judgment because "evidence regarding [the employee's] typical duties and responsibilities . . . raises a question of material fact as to whether [his] publications were considered within the scope of his employment for purposes of [vicarious] liability under a theory of respondeat superior").  Here, the Parties' briefing and argument reveals the potential for the factfinder to reasonably draw conflicting inferences from the record, which precludes summary judgment.  *See Shoemaker v. Mountain States Tel. & Tel. Co.*, 559 P.2d 721, 724 (Colo. App. 1976) ("Conflicting inferences might be drawn by a trier of fact,

and we conclude accordingly that the trial court erred in resolving this issue on a summary judgment motion.  This is especially true where divergent inferences could be drawn from apparently undisputed facts.").  For example, Defendants challenge the proper interpretation of several facts that bear on whether MyPillow may be held liable because they involve the relationship between MyPillow employees and the Cyber Symposium and the extent to which Mr. Lindell used MyPillow to promote his political beliefs, among other issues.  *Compare* [Doc. 235 at ¶¶ 50–51, 53, 55, 62–63, 65], *with* [Doc. 248 at ¶¶ 50–51, 53, 55, 62–63, 65].  Accordingly, summary judgment will not be granted as to vicarious liability.  And, with respect to Defendants' secondary argument that certain statements attributed to MyPillow through an agency relationship in the Second Amended Complaint are not defamatory, the Court reiterates that, as discussed above, Defendants fail to acknowledge the numerous other statements ascribed to MyPillow that unambiguously connect Plaintiff to election interference, as well as the overarching narrative of Defendants' statements with respect to Dr. Coomer.  The jury must determine at trial which statements attributable to MyPillow, if any, rise to the level of recoverable defamation.

## D.    Actual Malice

Defendants contend that Plaintiff has failed to adduce sufficient evidence of actual malice, so summary judgment is warranted.  [Doc. 177 at 37–46].  Plaintiff disagrees, presenting evidence and argument with respect to a host of factors which courts deem relevant to the actual-malice inquiry.  *See* [Doc. 235 at 41–47].  In their Reply, Defendants appear to acknowledge that Plaintiff has met his summary-judgment burden and that genuine disputes of material fact preclude summary judgment as to this issue.  *See* [Doc.

248 at 4 ("Except for facts bearing on the truth or falsehood of Defendants' challenged statements and any actual malice of Defendants in making those statements, the disputed facts are immaterial to the issue posed by this Court as the central issue in this litigation.")].[3]  Insofar as Defendants have not conceded this argument, the Court finds upon "independent review," *see Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1049 (10th Cir. 2013), that the summary-judgment record, construed in Plaintiff's favor, contains ample support for a reasonable jury finding of actual malice by clear and convincing evidence—including for some of the reasons discussed in the Order on Motion to Dismiss.  *See* [Doc. 119 at 11–14].

As this Court has explained, "[a] statement is published with actual malice if it is published with actual knowledge that it was false or with reckless disregard for whether it was true."  [*Id.* at 11 (quoting *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1288 (Colo. App. 2022))]. Record evidence of the legitimacy of the 2020 election and evidence that undermines the reasonableness of Defendants' beliefs to the contrary plays into the reckless-disregard component of the actual-malice inquiry.  *See, e.g.*, [Doc. 235-23 at ¶¶ 25–67; Doc. 236-4]; *see also Coomer v. Donald J. Trump for Pres., Inc.*, 552 P.3d 562, 596 (Colo. App. 2024) (evidence of election integrity was "one piece of evidence that could support a finding of actual malice" in suit by Dr. Coomer bringing similar claims).  The Court also notes Defendants' repetition of the statements giving rise to this dispute "multiple times

---

[3] The Reply abandons the Motion for Summary Judgment's approach in exchange for a different actual-malice argument:  that "Defendants did not act with actual malice because they knew that [another] court had stated that national cybersecurity experts had concluded that interference in the outcome of an election as a result of the design of the Dominion computerized voting system was certain to occur at some point."  [Doc. 248 at 8–9].  To the extent this is a cognizable summary-judgment argument, it is waived.  *See Reedy*, 660 F.3d at 1274; *Ulibarri*, 742 F. Supp. 2d at 1218.

after being sued." *See* [Doc. 235 at 50]; *see also, e.g.*, [Doc. 170 at ¶ 116; Doc. 177 at ¶ 43; Doc. 235-1 at 1].   At most, the evidence and arguments give rise to disputes of material fact that preclude summary judgment.   *See, e.g.*, [Doc. 235-12 at 46–58 (Dr. Halderman's expert opinions about Mr. Oltmann's views); Doc. 235-16 at 142:10–146:25 (testimony by Frankspeech anchor suggesting lack of due diligence with respect to publication of statements concerning Dr. Coomer); Doc. 235-37 at 4 (Mr. Lindell's answers to requests for admission with respect to his basis for connecting Dr. Coomer to election interference)].   Defendants thus fail to persuade the Court that the record is insufficiently developed or contested to warrant taking the issue of actual malice away from the jury.

### E.    Other Claims

*IIED.*   Defendants' arguments with respect to Dr. Coomer's claim for intentional infliction of emotional distress are largely derivative of arguments the Court has already rejected.   *See* [Doc. 177 at 46 (arguing that "Defendants' statements are constitutionally protected speech and immune from tort liability," and that "Defendants also did not act recklessly, as discussed . . . in the context of an absence of 'actual malice'")].   This Court has already rejected the legal argument that Plaintiff's allegations do not create a triable jury question as to IIED, *see* [Doc. 119 at 24–26], and the summary-judgment evidence as to Dr. Coomer's emotional distress does not support revisiting this determination when construed in Plaintiff's favor, *see, e.g.*, [Doc. 235-2 at ¶¶ 30–31, 37; Doc. 235-22 at 47:12–25].

*Civil Conspiracy.*   A claim for civil conspiracy has five elements:  "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished;

(3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006) (quotation omitted).  Defendants principally argue that Plaintiff cannot show a conspiracy between multiple actors because "the conspiracy alleged here is predicated on the 'agreement' of one human being with himself:  Mr. Lindell, in his personal capacity; Mr. Lindell, in his capacity as CEO of MyPillow, the pillow company; and Mr. Lindell, in his capacity as CEO of Frankspeech, the media company." [Doc. 177 at 47–48].  Plaintiff responds that "[m]ultiple individuals working on behalf of both MyPillow and FrankSpeech worked together to accomplish, promote, and distribute the publications at issue here."  [Doc. 235 at 48–49].  While Defendants' authority supports the proposition that a corporation cannot conspire with itself, *Dildine v. Saxon*, No. 2014CV34753, 2016 WL 9450273, at *4 (Colo. Dist. Ct. Denver Cnty. Apr. 14, 2016), Defendants fail to direct the Court to undisputed facts in the summary-judgment record that suggest Defendants should all be treated as the same unit for civil conspiracy purposes under applicable law, or that a formal agreement is required to proceed on a civil conspiracy claim, *see* [Doc. 177 at 47–48].  Defendants also argue that Dr. Coomer cannot show any unlawful overt acts because their speech was protected by the First Amendment and because Plaintiff has no evidence of damages, [*id.* at 48], but the Court has already rejected these arguments at the summary-judgment stage in the context of Plaintiff's defamation claim.   Should Plaintiff's defamation claim fail at trial, these arguments may of course be renewed.

**Permanent Injunction.**  Defendants argue that summary judgment on Plaintiff's request for injunctive relief is appropriate because they have not engaged in defamation.

[Doc. 177 at 48]; *see also* [Doc. 235 at 49 (Plaintiff noting that "Defendants' argument for summary judgment on this claim is premised entirely on their assertion that they made no defamatory statements")]. Having declined to grant summary judgment with respect to the underlying defamation claim, the Court rejects this contention at this stage.

**Exemplary Damages.** Colorado law permits a jury to award exemplary damages where "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). "Willful and wanton" conduct is defined by statute as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b). Defendants argue that Plaintiff has adduced insufficient evidence to submit the issue of exemplary damages to the jury. [Doc. 177 at 48–50]. Plaintiff responds that—as Defendants recognize, [*id.* at 49]—"malice" for purposes of Colorado law encompasses "vindictiveness and retaliatory motives," [Doc. 235 at 49–50 (quotation omitted)].

The Court respectfully agrees with Plaintiff that evidence of a retaliatory motive supports the claim for exemplary damages here. *See* [*id.* at 50]. Defendants themselves have introduced evidence that Mr. Lindell was driven by frustration with what he perceived as Dr. Coomer's interference with his ability to advertise MyPillow products. *See, e.g.*, [Doc. 177 at ¶¶ 32–34 (citing [Doc. 177-9 at 18:15–19:11; Doc. 177-10 at 138:11–17])]. The genuine issues of material fact with respect to actual malice discussed above also inform the Court's determination that Defendants have failed to show their entitlement to summary judgment. So does Defendants' continuing course of allegedly defamatory conduct, which the Court previously discussed in permitting Plaintiff to add the claim for

exemplary damages.  *See* [Doc. 169 at 14–15].  Construed in the nonmovant's favor, the Court finds sufficient evidence has been presented at the summary-judgment stage to submit the issue of exemplary damages to the jury.

The Motion for Summary Judgment is respectfully **DENIED** as to all issues and claims.  At the Telephonic Status Conference on October 2, 2024, this matter will be set for a Final Pretrial/Trial Preparation Conference as well as trial.  [Doc. 257].

## II.     Motion to Exclude

In the Motion to Exclude, Defendants seek to bar Dr. Halderman, an expert witness disclosed by Plaintiff, from testifying at trial as to a variety of opinions previewed in his Declaration, [Doc. 189], and deposition testimony, [Doc. 188-3], based on concerns involving relevance, prejudice, and various other evidentiary principles.  Defendants do not appear to question Dr. Halderman's qualifications as "an expert in election cybersecurity," nor do they raise any methodological concerns with how he reached his opinions. *See generally* [Doc. 188].  For the reasons that follow, the Motion to Exclude is **GRANTED in part** and **DENIED in part**.  The Court's ruling as to each of Dr. Halderman's disputed opinions follows.

### A.     *Absolute Proof*, *Absolute Interference*, and *Absolute 9-0*

Defendants first attempt to draw a distinction between claims that Dr. Coomer or Dominion interfered with the election (the "Dominion Claims") and claims that China interfered with the election (the "China Claims"), arguing that three videos published by Mr. Lindell—tilted *Absolute Proof*, *Absolute Interference*, and *Absolute 9-0*—only concern the latter theory, so Dr. Halderman's opinions with respect to them should be excluded because they would "only serve to inflame the jury." [Doc. 188 at 4–7].  Plaintiff responds

that "these theories are and always have been inextricably intertwined, especially with respect to the defamatory publications at issue here," [Doc. 205 at 3], pointing to allegations in the Second Amended Complaint that, in Plaintiff's view, combine the Dominion and China Claims, *see, e.g.*, [Doc. 170 at ¶ 63].

Because certain allegedly defamatory statements involving Dr. Coomer and election interference invoke both the Dominion and China Claims, *see* [*id.* ("The cows are out of the barn.  Dominion, you did your best, and Smartmatic, to take our country through China.  You did your best, you corrupt people, you.")], the Court declines to exclude the corresponding opinions by Dr. Halderman on the ground that prejudice would arise from admitting them.  Indeed, the challenged opinions appear relevant to a jury assessment of Defendants' reckless disregard, if any, with respect to the broader picture of potential election interference into which the alleged defamation against Dr. Coomer fits.  *See* Fed. R. Evid. 401 (relevant evidence tends to make any fact of consequence more or less probable).  This Court acknowledged as much in denying Defendants' motion to dismiss. *See* [Doc. 119 at 13 ("Plaintiff also alleges facts that would permit a factfinder to conclude that Defendants conducted no investigation into the veracity of Mr. Oltmann's assertions prior to promoting or publishing their own statements, despite obvious reasons to doubt the veracity of his claims." (quotation omitted))].  The Motion to Exclude is **DENIED** as to these opinions.

### B.    Cyber Symposium

Next, Defendants seek to exclude opinions by Dr. Halderman that "concern his analysis of data released at the August 2021 Cyber Symposium."  [Doc. 188 at 7]. Defendants argue that "[n]othing in Halderman's analysis or opinions in any way concerns

how one or more statements Defendants published about Coomer were false, were made with actual malice, or somehow caused damage to Coomer." [*Id.*]. Plaintiff responds that "[t]he Cyber Symposium is an event of central significance in this case," and that Dr. Halderman's opinions are relevant to the assessment of actual malice. *See* [Doc. 205 at 11–12 (arguing that Dr. Halderman's opinions "demonstrate[] the inherent implausibility of the theory presented, and Defendants' willful avoidance of the truth")]. The Court agrees with Plaintiff that Dr. Halderman's opinions about the data at the Cyber Symposium may bear on the jury's assessment of whether Defendants acted with actual malice with respect to Dr. Coomer, including for the reasons discussed above. *See, e.g.*, [Doc. 189 at ¶¶ 55–67 (opining that Cyber Symposium data was fraudulent)]. The Motion to Exclude is **DENIED** as to this issue.

### C.     Antrim County Election Results

Similarly, Defendants argue that the portion of Dr. Halderman's Declaration addressing election results in Antrim County, Michigan, is irrelevant because it "ha[s] nothing to do with Coomer." [Doc. 188 at 7–8]. Plaintiff responds that these opinions are admissible because, among other grounds, they "serve[] to demonstrate how Defendants disregarded reliable sources and willfully avoided the truth, both of which are factors relevant to the jury's actual malice analysis." *See* [Doc. 205 at 12]; *see also* [Doc. 189 at ¶ 99 (Dr. Halderman noting that "Oltmann and Lindell both frequently reference the publication of erroneous election-night results in Antrim County, Michigan as evidence for their conspiracy theories")]. For the reasons discussed above, the Court agrees with Plaintiff that these opinions are admissible to show actual malice. The Motion to Exclude is **DENIED** as to Dr. Halderman's opinions regarding the Antrim County election results.

### D.     Mr. Oltmann's Statements

Defendants next take issue with a section of Dr. Halderman's Declaration rebutting certain allegedly defamatory statements made by Mr. Oltmann about Dr. Coomer.  *See* [Doc. 188 at 8].  Defendants argue that these opinions cannot be admitted unless Plaintiff demonstrates that Defendants doubted the truth of Mr. Oltmann's statements.  *See* [*id.*].  Plaintiff responds that "actual malice can also be shown through reckless disregard of the truth and the various factors courts have established to make that assessment," and that "Dr. Halderman's testimony on this topic speaks directly to the falsification of the lies at issue here, their reliance on anonymous sources, their inherent implausibility, the willful avoidance of the truth necessary to sustain them, and the conformity of the claims to Defendants' pre-conceived narrative."   [Doc. 205 at 12–13].   With respect to the appropriate legal standard, Plaintiff is plainly correct, as the Court has discussed.  *See, e.g.*, *Spacecon Specialty Contractors*, 713 F.3d at 1041 ("To meet its burden of showing actual malice, [a plaintiff] must show by clear and convincing evidence [that the defendant] published the [statement] with knowledge of its falsity or in reckless disregard of the truth.");  *see also* [Doc. 119 at 11].  Accordingly, for the reasons discussed above, the contemplated testimony is relevant to assessing actual malice and the Motion to Exclude it is **DENIED**.

### E.     Dr. Coomer's Character

Defendants seek to bar Dr. Halderman from testifying that Dr. Coomer is "a man of principle who shared [his] goal of safeguarding election integrity."  [Doc. 188 at 9–10 (quotation omitted)].  Defendants argue that such testimony is irrelevant or, if relevant, would constitute inadmissible character evidence under Rule 404(a)(1).  [*Id.*].  That rule

provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."   Fed. R. Evid. 404(a)(1).   Plaintiff responds that Dr. Halderman has "personal experience and knowledge" of Dr. Coomer's character, that Defendants' argument is "puzzling" because Defendants have distanced themselves from Mr. Oltmann, and that Defendants fail to address the "particular occasion" that Dr. Halderman's testimony would relate to under Rule 404(a)(1).   *See* [Doc. 205 at 13–14].   Defendants reply that "Dr. Halderman is not qualified by background as an election security expert, by his minimal personal knowledge of Plaintiff, or by the Federal Rules of Evidence to testify to Plaintiff's character."   [Doc. 213 at 7].   It is difficult to assess these issues in the abstract, but it appears that the only way that Dr. Halderman's opinion about Dr. Coomer's character could be relevant to disputed issues would result in violation of Rule 404(a)(1).   The Motion to Exclude is thus provisionally **GRANTED** as to Dr. Halderman's opinion about Dr. Coomer's character, subject to reconsideration at trial if Plaintiff offers the evidence for a different purpose.

### F.    The Phrase "Conspiracy Theory"

Defendants argue that the Court must exclude Dr. Halderman's opinion that Mr. Lindell's beliefs about election fraud are "conspiracy theories" because that phrase "has a pejorative connotation" that would tend to prejudge the actual-malice issue.   [Doc. 188 at 9–10].   To be sure, the Court heeds Defendants' authority that expert witnesses may not opine on legal issues.   *See, e.g.*, *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007) (expert testimony on questions of law is "not favored").   However, the opinion which Defendants seek to exclude is not actually an opinion about whether Mr. Lindell acted

with actual malice as a matter of law, but merely whether Dr. Halderman, in the exercise of his unchallenged expertise on election cybersecurity, views Mr. Lindell's beliefs on the same topic as an unfounded "conspiracy theory."  *See* [Doc. 188 at 9–10].  That kind of opinion may certainly play into the jury's assessment of actual malice, rendering it relevant evidence, but it does not equate to an impermissible expert conclusion that Defendants acted with actual malice—as the Honorable William J. Martínez recognized in another of Dr. Coomer's cases.  *See Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1202 (D. Colo. 2023) ("Dr. Halderman's opinion that Oltmann's claims about Dr. Coomer should have been incredible 'to any responsible' party does not tell the finder of fact how to apply the law to the facts.  It is simply an opinion on a fact relevant to the 'actual malice' element of a defamation claim involving a matter of public concern." (citation omitted)).

The Court agrees with Plaintiff that Defendants' "circuitous argument, taken to its logical conclusion, would suggest that Dr. Halderman cannot say anything which might suggest a connection to any of the burdens Dr. Coomer must meet to sustain his claims." [Doc. 205 at 14].  But Defendants provide no authority for such a sweeping limitation on the scope of allowable, otherwise admissible expert opinions under Rule 702.  *Cf. United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) (concern arises "when an expert uses a specialized legal term and usurps the jury's function").  To the extent that Dr. Halderman's opinions employ the phrase "conspiracy theory," such opinions are not inadmissible on the ground that they get at whether Defendants acted with actual malice. Nor does use of the phrase, which accurately reflects Dr. Halderman's opinions, appear

sufficiently prejudicial to implicate Rule 403.  The Motion to Exclude is **DENIED** as to this issue.

### G.      Credibility of Evidence or Witnesses

Defendants next move to exclude opinions by Dr. Halderman that Mr. Lindell, other witnesses, or election security experts are not credible, "or that their evidence, conclusions, statements, and beliefs are implausible."  [Doc. 188 at 10].  Defendants direct the Court to authority that "an expert opining on the credibility of an individual violates Rule 702 because 'the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion."  *Carter v. Monger*, No. 19-cv-03555-GPG, 2022 WL 1115225, at *6 (D. Colo. Apr. 13, 2022) (quoting *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001)); *see also United States v. Hill*, 749 F.3d 1250, 1260–61 (10th Cir. 2014).  In response, Plaintiff seems to concede that testimony concerning witness credibility is not allowed under applicable law, contending only that "Dr. Halderman's testimony regarding the credibility of *evidence* is among his most relevant and helpful for the jury," and that the proper vehicle for opposing such testimony would be a rebuttal expert.  [Doc. 205 at 15 (emphasis added)].  To the extent that Plaintiff has not conceded that he will not elicit or present witness credibility opinions through Dr. Halderman at trial, the Motion to Exclude is **GRANTED** with respect to individual credibility opinions.  *See Carter*, 2022 WL 1115225, at *6.

Turning to the evidence, and noting the absence of argument in Defendants' reply brief on this point, [Doc. 213 at 5–6], the Court agrees with Plaintiff that, as a general matter and subject to any appropriate objections at trial, Dr. Halderman may offer

otherwise properly disclosed opinions that play into the jury's credibility determinations with respect to Defendants' witnesses—such as whether, within the scope of Dr. Halderman's expertise, those individuals' "evidence, conclusions, statements, and beliefs are implausible." [Doc. 188 at 10]. The Court notes that much of Defendants' argument in this regard is based on its argument about the phrase "conspiracy theories," *see* [*id.* (arguing that Dr. Halderman's implausibility opinions are "essentially opining as to the legal issue of actual malice")], which the Court has rejected for the reasons discussed above. Without prejudging any more particularized trial objections by Defendants, the Motion to Exclude is **DENIED** with respect to such opinions.

### H.   Mr. Lindell's State of Mind

Arguing that Dr. Halderman is "[a]cting more as an advocate than an expert witness," Defendants last move to exclude opinions that "speculate[] as to Lindell's state of mind." [Doc. 188 at 11]. Defendants specifically point to potential testimony (1) "that Mr. Lindell's alleged defamatory speech is motivated by a desire 'to promote his own political and business interests regardless of the truth,'" [*id.* (quoting [Doc. 189 at ¶ 10])]; (2) that Mr. Lindell selected cybersecurity experts "based upon whether they would tell him what he wanted to hear," [*id.*]; and (3) that Mr. Lindell's statements were a "hoax," which "is nothing more than an opinion on Lindell's state of mind" because a hoax entails an intention to deceive, [*id.*]. Plaintiff responds that these opinions "all derive from Dr. Halderman's personal experience and knowledge arising from his review of Defendants' claims and the bases upon which they rely," and that they are relevant to assessing actual malice. [Doc. 205 at 15]. Defendants do not dispute that Mr. Lindell's state of mind is relevant to the actual-malice inquiry. [Doc. 213 at 5].

Respectfully, the Court largely agrees with Defendants.  Although Plaintiff contends that the opinions at issue come from Dr. Halderman's personal experience, Plaintiff provides no support in the record for this assertion, *see* [Doc. 205], nor would such testimony seem to be the province of an expert on cybersecurity or elections under Rule 702, *see Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541-CMA-MLC, 2018 WL 571877, at *3 (D. Colo. Jan. 26, 2018) ("[T]o the extent [the expert witness] begins to improperly speculate about . . . motivations, intent, or state of mind, . . . such speculation is not contemplated by Rule 702 and should be excluded.").  Defendants are therefore correct that Dr. Halderman "is entitled to his beliefs about Lindell or his motives," but that it would be "improper to allow him to express those beliefs to the jury under the veneer of expertise."  [Doc. 213 at 5].  Unless a proper foundation can be laid at trial with respect to personal knowledge, Dr. Halderman may not speculate as to Mr. Lindell's motivations for publishing the allegedly defamatory speech or hiring certain cybersecurity experts, and the Motion to Exclude is **GRANTED** with respect to those opinions.  Of course, while Dr. Halderman may not directly testify to these matters, the jury may still rely upon his testimony to reach inferences about Mr. Lindell's state of mind.  *Cf. Turnkey Sols. Corp.*, 2018 WL 571877, at *3 (noting that an expert witness may properly testify as to "facts and . . . observations from which the jury can then infer motive or intent").

However, the Court disagrees that Dr. Halderman's opinion that certain statements by Mr. Lindell constitute a "hoax" is somehow equivalent to an opinion on Mr. Lindell's state of mind and inadmissible on that basis.  *See id.*  The Motion to Exclude is **DENIED** as to such opinions.

III.    **Motion to Strike**

In his Motion to Strike, Plaintiff seeks to strike Defendants' designation of certain nonparties as bearing responsibility for any harm suffered by Plaintiff.  [Doc. 216].  As to comparative fault, Colorado law provides the following:

> In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss.

Colo. Rev. Stat. § 13-21-111.5(1).  With respect to designating at-fault nonparties:

> Negligence or fault of a nonparty may be considered if the claimant entered into a settlement agreement with the nonparty or if the defending party gives notice that a nonparty was wholly or partially at fault within ninety days following commencement of the action unless the court determines that a longer period is necessary.  The notice shall be given by filing a pleading in the action designating such nonparty and setting forth such nonparty's name and last-known address, or the best identification of such nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault.

*Id.* § 13-21-111.5(3)(b).  "The statute's terms plainly assume the existence of at least two wrongdoers whose acts or omissions combine to produce a loss."  *Hughes v. Johnson*, 764 F. Supp. 1412, 1413 (D. Colo. 1991).

On October 5, 2023, Defendants filed their Designation of Nonparties at Fault ("Defendants' Designation") pursuant to Colo. Rev. Stat. § 13-21-111.5.  [Doc. 199]. Defendants' Designation identifies twenty-three nonparties that, according to Defendants, should have their comparative liability for Plaintiff's injuries (if any) assessed by a jury in a manner that discounts Defendants' liability (if any).  With one exception, the designated nonparties are individuals or entities named as defendants in other defamation actions

filed by Dr. Coomer, several of whom have settled with Dr. Coomer.[4]  The basic theory of Defendants' Designation is that the designated nonparties spread the same allegedly defamatory story about Plaintiff that originated with Mr. Oltmann and that Defendants have been sued in this action for publishing, which renders them "liable for causing the same alleged damage" as Defendants.  *See, e.g.*, [*id.* at 6].[5]

Plaintiff has now moved to strike Defendants' Designation.[6]  [Doc. 216].  Plaintiff first argues that Defendants' Designation is untimely because the statute requires that notice be made "within ninety days following commencement of the action unless the court determines that a longer period is necessary."  Colo. Rev. Stat. § 13-21-111.5(3)(b).  Plaintiff notes that this civil action was filed in Colorado state court on April 4, 2022, and removed to federal court on May 5, 2022, rendering Defendants' Designation over a year late.  *See* [Doc. 216 at 2].  Defendants respond that they filed within ninety days of

---

[4] The designated nonparties are Newsmax Media, Inc.; Herring Networks, Inc. d/b/a One America News Network; Chanel Rion; Joseph Oltmann; Sidney Powell; Sidney Powell, P.C.; Defending the Republic, Inc.; Rudolph Giuliani; Donald J. Trump for President Inc.; FEC United; Shuffling Madness Media, Inc. d/b/a Conservative Daily; James Hoft; Michelle Malkin; Eric Metaxas; TGP Communications LLC d/b/a The Gateway Pundit; Randy Corporon; Salem Media of Colorado, Inc.; Make Your Life Epic LLC d/b/a Thrivetime Show; Clayton Thomas Clark; David K. Clements; Patrick Byrne; Steven Lucescu; and The America Project, Inc.  *See* [Doc. 199].

[5] The sole designated nonparty that was not named in another defamation action filed by Plaintiff is David Clements who, according to the Second Amended Complaint, published the same theory originating with Mr. Oltmann at issue in Plaintiff's defamation cases.  *See* [Doc. 170 at ¶¶ 83, 85–89].  Accordingly, the Court treats all designated nonparties together.

[6] Defendants contend that the Motion to Strike should itself be stricken or denied due to Plaintiff's failure to comply with this Court's conferral requirements.  In its discretion, and in view of the issues raised in the Motion to Strike, the Court will excuse this procedural defect but specifically advises Plaintiff that failure to confer is sufficient grounds for the Court to deny a motion without substantive review.  *See, e.g.*, *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 WL 4368158, at *2 (D. Colo. Sept. 30, 2017).

Plaintiff's Second Amended Complaint, which was the first pleading which they were required to answer.  *See* [Doc. 224 at 4–8].  Alternatively, Defendants contend that good cause exists for extending the deadline, and that the deadline does not apply as to the designated nonparties with whom Plaintiff has settled.  *See* [*id.* at 8–15].

Even assuming that the designations were timely, or that good cause supported any delay, this Court respectfully concludes that Defendants' Designation should be stricken.  On the merits, Plaintiff argues that the designated nonparties have not "played any role in *the defamatory publications at issue in this dispute*."  [Doc. 216 at 3–4 (emphasis added)]; *see also* [*id.* at 4 ("Defendants cannot designate nonparties at fault for publishing specific statements when they indisputably have no potential relation to those publications.")].  Plaintiff further contends that "designation of nonparties at fault is not the proper means of addressing the concern that Defendants attempt to raise," which is, in Plaintiff's view, causation.  [*Id.*].  As Plaintiff puts it, "a defense that the defendant did not cause the plaintiff's injuries is not equivalent to the designation of a nonparty because it cannot result in apportionment of liability."  [*Id.*].  Defendants respond that their Designations "set[] forth a meritorious defense of comparative fault" as to all designated nonparties that "defamed [Plaintiff] by publishing, dissemination, and/or amplifying" the same connection between Dr. Coomer and election interference that is at issue in this litigation, necessarily causing him "the same damage."  [Doc. 224 at 10].  Defendants further argue that the question is not whether they "committed the same tort" as the designated nonparties, [*id.* at 12 n.9 (citing *Moody v. A.G. Edwards & Sons, Inc.*, 847 P.2d 215, 217 (Colo. App. 1992))], but that, even if it were, Dr. Coomer's cases "all revolve around alleged publications which are the same or similar in substance," [*id.*].

The Court has found no authority, in Defendants' briefing or elsewhere, for the proposition that the designation of nonparties at fault applies in the context of a defamation action where the nonparties are alleged to have separately defamed the plaintiff by publishing similar or identical statements. *See generally* [*id.*]. Such an approach to comparative liability would seem to contradict the basic theory of designating a nonparty at fault under Colorado—that it contributed to the <u>same injury</u> as the named defendant. *See Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo. 2001) ("[A] non-party designation is reserved for individuals or entities who might themselves be at fault and therefore liable for *the injury at issue*." (emphasis added)); *Miller v. Byrne*, 916 P.2d 566, 577 (Colo. App. 1995) ("[A] defendant has a right to seek contribution from a joint tortfeasor for the amount the defendant pays in excess of his or her pro rata share of liability for the *same injury rendered* to the plaintiff." (emphasis added)); *Blakeland Drive Invs., LLP IV v. Taghavi*, 532 P.3d 369, 380 (Colo. App. 2023) ([T]he statute applies to both intentional and negligent acts that cause indivisible injuries."). The fact that a party and a nonparty defamed Plaintiff in the same way, allegedly causing or contributing to similar harm around the same time, does not mean that the nonparty is "at fault" for the party's statements within the contemplation of Colorado law. Each has effected a different, albeit similar, injury. Indeed, Defendants' Designation fails to describe how the conduct of the identified nonparties contributed to *Defendants'* alleged defamation. *See* [Doc. 199].

The closest case the Court has reviewed involves a sexual assault claim against a celebrity who designated various tabloids and websites as nonparties at fault because they allegedly contributed to the victim's reputational damages by defaming her online

and in print.   The Court is persuaded by the reasoning of the Honorable Richard P.

Matsch, who explained his decision to strike those designations in open court as follows:

> [G]iven the allegations in the pleadings and what is shown in these publications, in my view, these various publishers, known and unknown, cannot be considered non-parties at fault in this case.  What they show is that the allegations that are now here in the civil case were first made in a criminal context, and that the criminal proceedings generated a great deal of comment from a number of sources.  *And, that may be relevant to this trial in terms of causation of injuries asserted to have been sustained by the defendant—as a result of the defendant's conduct.*  And, we will be, I'm sure, dealing with questions of intervening cause, foreseeability, those ordinary concepts of causation that we have in tort law in Colorado.  But, that is not—does not invoke the apportionment requirements of the statute. You need only imagine what a jury verdict would look like in this case . . . to see that the concept doesn't fit.

*Faber v. Bryant*, Civil Action No. 04-cv-01638-RPM, [ECF No. 40 at 5:19–6:11] (D. Colo.

Feb. 10, 2005) (emphasis added).   This Court agrees with Judge Matsch.   Just like in

*Faber*, Defendants' contention is that the designated nonparties injured Plaintiff based on

factually related conduct—not that the designated nonparties had any hand in the injuries

perpetrated by the named Defendants that are at issue in the litigation.

Nor is it clear that Colorado's statute even applies to the kinds of nonphysical

harms for which Plaintiff seeks to recover damages.   *See, e.g.*, *Broderick v. McElroy &*

*McCoy, Inc.*, 961 P.2d 504, 507 (Colo. App. 1997) (noting that "§ 13-21-111.5(1) . . . limits

the scope of § 13-21-111.5 . . . concerning pro rata liability of defendants to those actions

'brought as a result of a death or an injury to person or property'").   Indeed, the Uniform

Comparative Fault Act expressly confines the doctrine of comparative fault's application

to physical harm to persons or property, excluding "matters like economic loss resulting

from a tort such as negligent misrepresentation, or interference with contractual relations

or *harm to reputation resulting from defamation*."   *Vaught v. Pequot Props., LLC*, No.

554980, 2001 WL 717446, at *2 (Conn. Super. Ct. June 1, 2001) (emphasis added)

(quoting Uniform Comparative Fault Act § 1, cmt.).[7]  As noted, Defendants have provided

no authority for the application of Colorado's statute to a case involving multiple defamers.

To be sure, Defendants are correct that Colorado courts have held that "the acts

on the part of a designated nonparty which have contributed to a plaintiff's injury are not

required to have been the *same* tortious acts as those of a defendant."  *See Moody*, 847

P.2d at 217 (emphasis in original).  And "a jury need not consider whether the respective

act or acts of the tortfeasors were undertaken in conjunction with a defendant's tortious

act or acts so long as all of the acts, considered together, were instrumental in contributing

to a plaintiff's injury."  *Id.* at 217–18.  But the Court finds that these authorities map poorly

onto the separate, overlapping injuries allegedly produced by the defamation of Plaintiff.

Colorado law is clear that "liability may only be apportioned between a defendant and a

designated nonparty when admissible evidence has been presented that the nonparty

contributed to the plaintiff's injury," *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536 (Colo.

1997), but the cases tend to involve fact patterns where the designated nonparty

contributed to the <u>same injury</u>, *see, e.g.*, *id.* at 534 (company that rented electric sewer

auger to plaintiff designated the manufacturer in lawsuit arising out of accident).  To the

extent that Plaintiff has been actionably injured by the defamation of Defendants and

---

[7] "The Uniform Comparative Fault Act and the Uniform Contribution Among Tortfeasors Act are not actual statutes but instead are freestanding collections of uniform laws for individual states to adopt." *Bank One, N.A. v. C.V.Y. Corp.*, No. 01-cv-01807-MSK-MJW, 2008 WL 501412, at *4 n.8 (D. Colo. Feb.21, 2008).  Nonetheless, the Court finds the background principles set forth in the cited comment to the Uniform Comparative Fault Act to be relevant to the interpretation of Colorado law in this case.  *See, e.g.*, *Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1477 (10th Cir. 1990) (referencing Colorado General Assembly's awareness of Uniform Comparative Fault Act and other jurisdictions' comparative fault regimes); *City & Cnty. of Denver v. Adolph Coors Co.*, 829 F. Supp. 340, 344 (D. Colo. 1993) (accounting for "independent backdrop[]" provided by the Uniform Comparative Fault Act and the Uniform Contribution Among Tortfeasors Act).

nonparties alike, that is a matter of apportioning damages and untangling causation firmly within the jury's province at trial, not the stuff of comparative fault designations under § 13-21-111.5.

The Court concludes that Defendants have not met their burden to demonstrate that any of the individuals or entities named in Defendants' Designation are liable to Plaintiff for the injuries allegedly caused by Defendants' conduct. *See Roe v. Hous. Auth. of City of Boulder*, 909 F. Supp. 814, 823 (D. Colo. 1995) (declining to apply Colorado's comparative fault statute, where party invoking it failed to cite any authority applying the statute to the claims at issue). "[B]ecause Appellants did not make a coherent, developed argument for applying § 13-21-111.5 here, the Court declines to do so." *Cowen v. WD Equip., LLC*, No. 21-cv-03133-GPG, 2023 WL 8818119, at *13 (D. Colo. Nov. 8, 2023); *see also Redden*, 38 P.3d at 80 ("Courts should construe designation requirements strictly to avoid a defendant attributing liability to a non-party from whom the plaintiff cannot recover."). The Motion to Strike is respectfully **GRANTED** and Defendants' Designation is hereby **STRICKEN**. However, as Plaintiff acknowledges, and as discussed in the context of the Motion for Summary Judgment's arguments about causation and actual damages, "the concern that Defendants attempt to raise" still has a place in this action. *See* [Doc. 216 at 4]. Plaintiff must prove that his claimed damages are attributable to these Defendants, and Defendants may contend at trial that Plaintiff's injuries were caused in whole or in part by the conduct of others.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)     Defendants' Omnibus Motion for Summary Judgment [Doc. 177] is **DENIED**;

(2)     Defendants' Motion to Exclude Testimony of J. Alex Halderman [Doc. 188] is **GRANTED in part** and **DENIED in part**;

(3)     Plaintiff's Objec[t]ion to Defendants['] Designation of Nonparties at Fault and Motion to Strike Designation [Doc. 216] is **GRANTED**; and

(4)     Defendants' Designation of Nonparties at Fault [Doc. 199] is **STRICKEN**.


DATED:  August 29, 2024                    BY THE COURT:

                                           Nina Y. Wang
                                           United States District Judge