**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
      Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
      Defendants

---

## PLAINTIFF'S MOTION IN LIMINE

---

Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer), through his counsel, submits the following Motion in Limine for the Court's consideration.

### I.   BACKGROUND INFORMATION

1.    The factual background of Plaintiff's allegations has been summarized extensively by Plaintiff and by this Court,[1] and as such, Plaintiff will focus on the information relevant to this Motion.

2.    Defendants have waged a public smear campaign against Dr. Coomer in which they falsely claim Dr. Coomer rigged or otherwise interfered with the 2020 election and confessed to doing so.  Plaintiff asserts three causes of action against Defendants: (i) defamation; (ii) intentional infliction of emotional distress; and (iii) civil conspiracy.[2]

---

[1] *See, e.g.* Doc. 119, pp. 1-5; Doc. 170, pp. 8-79; Doc. 197, pp. 3-7; Doc. 235, ¶¶ 2-49; Doc. 261, pp. 2-3.

[2] *See* Doc. 170, ¶¶ 146-59.

3.     It is anticipated that Defendants will attempt to use the same strategy before the jury that they have deployed with the American public.  Namely, that Defendants will attempt to mislead and distract the jury with a smear campaign against Dr. Coomer based on completely or largely irrelevant attacks on his character instead of presenting proof that Dr. Coomer was involved in a criminal conspiracy to rig the 2020 presidential election.  The Court should exercise its discretion to exclude the evidence set forth to avoid unfair character assassination and to ensure a fair trial on the merits.

## II.    ARGUMENT AND AUTHORITIES

4.     "The admission or exclusion of evidence lies within the sound discretion of the trial court." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate found has been laid for the admission of evidence.").

5.     "Irrelevant evidence is not admissible." FED. R. EVID. 402.  Under Federal Rule of Evidence 401 [e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence and; (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

6.     Relevant evidence is generally admissible but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  Within the context of Rule 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis,

commonly, though not necessarily, an emotional one." FED. R. EVID. 403, advisory committee notes.

7.     The Federal Rules of Evidence carefully limit the method by which a witness's character and credibility may be attacked and the type of testimony and evidence that may be offered toward that end. FED. R. EVID. 404, 405, 607, 608, 609, and 610. The reasoning behind these limitations is that character evidence "may be very prejudicial" and "tends to distract the trier of fact from the main question." FED. R. EVID. 404, advisory committee notes (*citing* Cal.Law Revision Comm'n, Rep., Rec. & Studies, 615 (1964)).

8.     Except for evidence of a witness's character that is admissible under Rules 607-609, evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. FED. R. EVID. 404(a)(1) and 404(a)(3).

9.     Evidence of a person's other crimes, wrongs, or acts is not admissible to prove the person's character to show that on a particular occasion the person acted in accordance with the character unless the evidence is admissible for another purpose. FED. R. EVID. 404(b)(1). Those other purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

10.     Evidence of specific instances of conduct "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." FED. R. EVID. 405, advisory committee note. For that reason, the character or trait of a person may be proved

by relevant specific instances of the person's conduct only when a person's character or character trait is an essential element of a charge, claim, or defense. FED. R. EVID. 405(b).

11.     While a defendant in a defamation action may present any evidence which tends to mitigate damages, "such evidence can include any publications by third persons **dealing with the same subject**, made before or at about the same time as the date of publishing by the defendant." *Williams v. District Court, Second Judicial Dist., City and County of Denver*, 866 P.2d 908, 911-912 (Colo. 1993) (emphasis added) (*citing Gomba v. McLaughlin*, 504 P.2d 337, 339 (Colo. 1972)).

12.     Federal Rule of Evidence 608 provides that a witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for un/truthfulness or by testimony in the form of an opinion about that character, but only after the witness's character for truthfulness has been attacked. "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." FED. R. EVID. 608(b). However, the Court may allow the specific instances of a witness's conduct to be inquired about on cross-examination if they are probative of the character for (un)truthfulness of the witness. FED. R. EVID. 608(b).

13.     Evidence of a criminal conviction may only be used for impeachment under limited circumstances. The criminal conviction must be either: (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year; or (2) for a crime where the elements of the crime required proving – or the witness admitting – a dishonest act or false statement. FED. R. EVID. 609.

14.    "Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."  FED. R. EVID. 610.

## A.    Motor Vehicle Accident.

15.    Plaintiff requests Defendants be precluded from presenting evidence, statements, testimony, or arguments relating to Dr. Coomer's September 2021 motor vehicle accident in Salida, Colorado, including, but not limited to, body camera footage, the incident report, or testimony related to the accident.  This footage has been previously posted in right-wing alternative media space as part of a smear campaign against Dr. Coomer.

16.    First, the probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time.  FED. R. EVID. 403.

17.    Second, documentary, audio, or video evidence relating to Dr. Coomer's September 2021 motor vehicle accident is inadmissible extrinsic evidence under Federal Rule of Evidence 608(b).

18.    The probative value of such testimony and evidence is non-existent.  FED. R. EVID. 403.  Dr. Coomer initially claimed not to have been involved in a motor vehicle accident when questioned by the Salida Police Department.  A short time later and on the same day, he admitted to accidentally driving his vehicle into a building.  He was not convicted for any crime involving a dishonest act or false statement in connection with this incident or of being under the influence of a narcotic or alcohol.  FED. R. EVID. 608(b), 609.  The traffic citation ultimately issued to him for misdemeanor reckless driving has no bearing on his character for truthfulness.

19.     The probative value relating to this incident, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time. FED. R. EVID. 403.  The testimony and evidence would distract the jury and support the irrelevant argument that other "bad acts" is relevant to Dr. Coomer's reputation within the election security community.  Temporally, this incident occurred after Dr. Coomer mutually agreed with his former employer, Dominion Voting System, to separate from employment because of the allegations of election fraud rendered him unable to effectively continue in his role.  Thus, it has no relevance to his prior employment or to the defamatory statements about him.

20.     Plaintiff anticipates, based on public statements made by Lindell and his associates, that Defendants will inquire about and speculate that Plaintiff was intoxicated when the motor vehicle accident occurred despite the absence of supporting evidence. Insinuations that Plaintiff was driving under the influence will prejudice the jury, distract from the issues the jury must decide, and waste time.  FED. R. EVID. 403.

21.     The compilation of law enforcement officers' body camera footage is over fourteen minutes in length, and it has been purposefully modified to prejudice the viewer against Dr. Coomer.  The compilation video publicized on Joe Oltmann's podcast CONSERVATIVE DAILY, which Plaintiff anticipates Defendants plan to use, has been selectively clipped and shortened.  It has layers of text, video, and graphics over its content.  It includes interspliced, non-contextual Facebook posts and comments by Dr. Coomer layered over the video.  It includes a graphic and a separate Twitter post by Eric Trump which repeats the defamatory statement that Dr. Coomer was involved on an

"Antifa" call in which he told "Antifa" activists: "Don't worry about the election, Trump's not gonna win. I made f\*\*ing sure of that!"  It includes a text graphic that proclaims Dr. Coomer "had to keep traveling as the COVID-19 pandemic surged, to prepare for the 2020 election.  Now, due to death threats, he is hiding . . . ."  It contains clips from one of Dr. Coomer's depositions.  The video compilation also includes law enforcement's conversations with one of Dr. Coomer's attorneys who will be present at trial.

22.    To the extent the Court is inclined to permit any testimony concerning specific instances of conduct with respect to the September 2021 motor vehicle accident, the Court should only permit narrowly tailored cross-examination about whether Dr. Coomer was temporarily untruthful about having been involved in a motor vehicle accident for the limited purpose of attacking or supporting Dr. Coomer's character for truthfulness. FED. R. EVID. 608(b).

**B.    His Sex Life.**

23.    The Court should exclude evidence, statements, testimony, or arguments relating to Dr. Coomer's sexual preferences or activities on the basis it is irrelevant, it constitutes improper character evidence, and that any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time. FED. R. EVID. 401, 403, 404.  Specifically, Plaintiff requests the Court to order that Defendants may not question Dr. Coomer or other witnesses about the following topics or introduce evidence concerning:

a.    Dr. Coomer's prior sexual preferences or activities; and

b.    Web server posts from the early 1990s relating to same.

24.    Dr. Coomer's sexual preferences are irrelevant to this case.  But, again, these matters have made their rounds on various blogs and posts in an effort to discredit Dr. Coomer generally.  The post(s) alleged to be traced to Dr. Coomer relate to activities more than thirty years ago.  A person's personal sexual conduct has no bearing on his character for truthfulness.  Nor does it have any relevance to the condition of his reputation prior to Defendants' defamation campaign against him.  Plaintiff anticipates that Defendants will argue that evidence of Dr. Coomer's sexual preferences or activities is relevant to their defense that Dr. Coomer's "reputation had already been damaged beyond repair by his own conduct."[3]  To the contrary, the messages in question alleged to be attributable to Dr. Coomer based on an email trace are pre-internet, server posts made around 1992.  The messages only became accessible on the internet after Joe Oltmann posted them on Telegram on August 23, 2021, after Defendants made many of the defamatory statements at issue in this lawsuit.

25.    The salacious nature of this content is highly likely to distract the jury and be unfairly prejudicial.[4]  The presentation of this information will be time-consuming and

---

[3] Doc. 171, Defendants Answer to Second Amended Complaint, ¶ 24.

[4] *Quark, Inc. v. Harley*, 141 F.3d 1185 (10th Cir. 1998) (district court did not abuse its discretion by excluding evidence of homosexual relationship on the basis of Rule 403 and where district court acknowledged sexual preference "may be a big deal to the jury").  *See also U.S. v. Harvey*, 991 F.2d 981, 995-996 (2nd Cir. 1993) (testimony about the defendant's possession of pornographic materials depicting BDSM, defecation, and other sexual activities was not relevant and should have been excluded under Rules 401 and 403 as "the likely effect of this evidence was to create disgust and antagonism toward [defendant], and resulted in overwhelming prejudice against him"); *U.S. v. Delgado-Marrero*, 744 F.3d 167, 205 (1st Cir. 2014) (recognizing evidence of sexual orientation (in that case, homosexuality or bisexuality) can be extremely prejudicial); *Sanchez v. Duffy*, 416 F.Supp.3d 1131, 1169 (D. Colo. 2018) (in case involving challenge of claim of mental disability, this Court did not permit Defendants to introduce Facebook posts about alcohol consumption, marijuana use, or sexual activity unless Defendants could show there was a substantial context showing the allegedly disabled party made a decision about the activities that tended to show advanced cognitive capabilities); *Elliott v. Aspen Brokers, Ltd.*, 811 F.Supp. 586,

necessitate the testimony of additional rebuttal witnesses who would not otherwise testify at trial. It has no place in this trial.

### C.    Drug and Alcohol Use.

26.    Plaintiff requests the Court to exclude evidence, statements, testimony, or arguments relating to any alleged drug and alcohol use by Dr. Coomer and/or his prior commitment to an inpatient drug rehabilitation facility on the basis it is irrelevant, it constitutes improper character evidence, and that any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time. FED. R. EVID. 401, 403, 404. This request includes, but is not limited to, the Facebook post about whiskey included in Exhibit 8 to Dr. Coomer's deposition, Bates numbered 0003.

27.    There is no probative value to this "evidence." Evidence of a witness's former "drug use is not probative of truthfulness"[5] and cannot be used to attack a witness's "general credibility."[6]    Plaintiff anticipates that Defendants plan to offer evidence of

---

588-589 (D. Colo. 1993) (partially granting motion in limine to permit evidence of romantic relationship between individuals to show "potential allegiance" but prohibiting questioning into issues regarding sexual relations).

[5] *U.S. v. McDonald*, 905 F.2d 871, 857 (5th Cir. 1991) (trial court erred by allowing Government to cross-examine the defendant about his past drug use). *See also U.S. v. Carroll*, 53 Fed. Appx. 785, 787 (7th Cir. 2002) (defendant "could not attack [the witness's] credibility by asking the jury to infer that [the witness] should not be believed just because he is a person who has engaged in these activities [drug use] in the past."); *U.S. v. Clemons*, 32 F.3d 1504 (11th Cir. 1994) ("a witness's use of drugs may not be used to attack his general credibility"); *U.S. v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009) (district court did not err in excluding evidence of drug treatment that occurred 9 years before the events the subject of his testimony and was offered to impeach the witness's general credibility).

[6] *U.S. v. Apperson*, 441 F.3d 1162, 1195-1196 (10th Cir. 2006) (district court correctly excluded evidence of witness's prior drug use in case involving conspiracy to manufacture, distribute, and dispense LSD). *See also Bennett v. Longacre*, 774 F.2d 1024, 1027-1028 (10th Cir. 1985) (evidence of witness's "previous actions in indulging in alcohol and illegal drugs, without more, would not have any probative value on his 'character for . . . untruthfulness'").

Dr. Coomer's past drug and alcohol use not as evidence of reputation or character, but as support for their belief in the veracity of their defamatory statements about Dr. Coomer. Evidence of his pre-2020 drug use does not tend to make a fact of consequence more or less likely. There is no evidence that Dr. Coomer was engaging in illicit drug use or under the influence of alcohol at any time material to this lawsuit.

28. Based on his numerous public statements, Lindell himself is a recovered drug addict himself and has even written a book on the topic. His company, My Pillow, regularly hires former felons. In his capacity as a corporate representative for My Pillow, Lindell affirmed the irrelevance of both Dr.Coomer's former struggles with addiction and the traffic violation discussed above when the following exchange occurred:

> Q: From your perspective as CEO of My Pillow, Eric Coomer's past, whether he had run-ins with the law, or criminal issues, is of no moment and is irrelevant?
>
> A: Is irrelevant, 100 percent irrelevant, as far as I'm concerned, that's his business.
>
> Q: Because you believe, you said, you know, Dawn [a MyPillow employee] has –
>
> A: She had, I have many, many people, their past, but if they've changed, if they've changed or gotten help, I absolutely hire him. This is current, this is real.
>
> Q: You struggled with addiction?
>
> A: Oh, yeah, I was a crack addict, yeah.[7]

29. Plaintiff agrees that such evidence is not relevant to either parties'

---

[7] **Exhibit 1**, Depo. Tr. Michael J. Lindell, as 30(b)(6) corporate representative for My Pillow, Inc. (Mar. 8, 2023), at 187:18-188:6.

presentation of their case. Plaintiff, therefore, requests that the Court issue an order precluding any reference to Dr. Coomer's prior struggles with addiction at trial.

**D. Religious Beliefs or Opinions.**

30. The Court should exclude evidence, statements, testimony, or arguments relating to Dr. Coomer's religious beliefs or opinions because it is irrelevant and inadmissible as character evidence. FED. R. EVID. 401, 610. Specifically, Plaintiff requests the Court order that Defendants may not question Dr. Coomer or other witnesses about the following topics or introduce evidence or argument before the jury concerning:

a. Dr. Coomer's religious beliefs or lack thereof.

b. Dr. Coomer's references to Vice President Mike Pence or any other person as a "Christian" or "Christian nationalist." (Exhibit 8 to Dr. Coomer's Deposition, Bates numbered 0072, 0079).[8]

c. Dr. Coomer's opinions about USAID appointee Merritt Carrigan and/or Facebook posts concerning Merritt Carrigan. (Exhibit 8 to Dr. Coomer's Deposition, Bates numbered 0007).

d. Dr. Coomer's references to God as a "magical non-existent being." (Exhibit 8 to Dr. Coomer's Deposition, Bates numbered 0052).

e. Dr. Coomer's Facebook posts about or involvement with the parody group the "Church of the Subgenius." (Exhibit 8 to Dr. Coomer's Deposition, Bates numbered 0034).

**E. Law Enforcement and Black Lives Matter.**

31. The Court should exclude evidence, statements, testimony, or arguments relating to Dr. Coomer's opinions about law enforcement, criminal justice reform, the death of George Floyd, the Black Lives Matter movement, and Dr. Coomer's interest in

---

[8] This post was also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000117-118.

music or videos relating to any of the foregoing topics.  Plaintiff requests the Court exclude the Facebook posts attached as Exhibit 8 to his deposition, Bates numbered 0002; 0005-0006; and 0013-0026.[9]

32.    These matters are irrelevant to the fact issues before the jury, and any probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time.  FED. R. EVID. 401, 403.  These topics are divisive and likely to inflame the jury.

33.    Dr. Coomer's opinions on these matters have no bearing on the truth or falsity of Defendants' statements about him.  Nor have his opinions or Facebook posts impacted his public reputation.  Dr. Coomer's Facebook account was "private" until posted by Oltmann.  It was viewable only by his "Friends," which, at all times material to this lawsuit, numbered around 300 or less.

**F.    Facebook Posts About President Trump.**

34.    Dr. Coomer anticipates that Defendants will attempt to introduce various Facebook posts which he made and in which he expresses distaste for President Trump. The Court should exclude evidence, statements, testimony, or arguments relating to these posts because the probative value is substantially outweighed by the danger of unfair prejudice, wasting time, and needlessly presenting cumulative evidence.  FED. R. EVID. 403.  The Facebook posts at issue were attached to Dr. Coomer's deposition in this

---

[9] Several of these posts were also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000120-124.

matter as Exhibit 8, Bates numbered 0001;[10] 0008; 0029; 0037;[11] 0042-0043; 0065; 0066-0067; 0068;[12] 0071; and 0072-0080.[13]

35.    Defendants will, no doubt, seek elicit testimony from Dr. Coomer that he dislikes President Trump as a means to suggest Dr. Coomer would, therefore, rig the election against him.  It would be unnecessarily cumulative of such testimony and wasteful of time for Defendants to introduce several Facebook posts that Dr. Coomer made to his private Facebook page.  There are bound to be individuals on the jury who have voted for President Trump, and these Facebook posts will be unfairly prejudicial to Dr. Coomer.

## G.    Assorted Facebook Posts.

36.    It is anticipated that Defendants may offer into evidence additional inflammatory *private* Facebook posts made by Dr. Coomer which were included in Exhibit 8, Bates numbered 0004; 0038; and 0056.  The Court should exclude evidence, statements, testimony, or arguments relating to the following posts because the posts are irrelevant to the matters to be decided by the jury, and any probative value is substantially outweighed by the danger of unfair prejudice and wasting time.  FED. R. EVID. 401, 403. The post numbered 0004 contains a link to a news article about the death of Jonathan

---

[10] This post was also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000116.

[11] This post was also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000129.

[12] This post was also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000119.

[13] This post was also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000117-118.

Sackler and Dr. Coomer's commentary on that event. Post numbered 0038 contains commentary about Texans.[14] The post numbered 0056 contains a picture of Dr. Coomer donning a clown outfit for Halloween.[15] These matters are extraneous to the issues before the Court and could only be offered for their potential prejudicial effect.

**H.     "Eric Coomer: Pawn, Plant or Perp?"**

37.     The Court should exclude evidence, statements, testimony, or arguments relating to the hit piece titled "Eric Coomer: Pawn, Plant or Perp?" which was produced by Defendants, Bates numbered DEFS-000014-000131.[16] The document contains inadmissible hearsay, improper character evidence, it lacks probative value, and any probative value is substantially outweighed by the danger of unfair prejudice and wasting time. FED. R. EVID. 401, 403, 404, 608, 609, 610, 801, 802.

38.     The document is exactly the type of hearsay the rule against hearsay was designed to exclude because the source of the information and the method of preparation indicate a lack of trustworthiness. The author of the document is not identified. The document contains hearsay within hearsay; it features over 200 footnotes to purported sources, which include Wikipedia pages and blog posts.

39.     The document includes statements about several topics that are highly likely to distract and inflame the jury and that have little-to-no probative value, such as:

---

[14] This post was also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000125.

[15] This post was also produced as part of the document titled "Eric Coomer: Pawn, Plant or Perp?" and Bates numbered DEFS-000111 and DEFS-000127.

[16] **Exhibit 2**, filed as a Restricted Document – Level 1. Plaintiff will comply with D.C.COLO.LCivR 7.2, as well as this Court's Protective Order Governing the Production and Exchange of Confidential Information [Doc. 77].

sexual proclivities,[17] prior drug and alcohol use,[18] beliefs about religion,[19] and opinions about law enforcement.[20]   The document is 118 pages in length, and is clearly inadmissible.

### III.   PRAYER

Plaintiff Eric Coomer, Ph.D. prays this Honorable Court grant his Motion *In Limine* and issue an Order *In Limine*, precluding Defendants from presenting any such evidence, statements, testimony, or arguments at trial with respect to the above matters.

Respectfully submitted this 10th day of February 2025.

*/s/ Charles J. Cain*
Charles J. Cain, CO No. 51020
ccain@cstrial.com
Bradley A. Kloewer, CO No. 50565
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)

---

[17] *See Supra*, ¶¶ 21-23.

[18] *See Supra*, ¶¶ 24-26.

[19] *See Supra*, ¶ 28.

[20] *See Supra*, ¶¶ 29-31.

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
David M. Beller, No. 35767
david@rklawpc.com
**RECHTKORNFELD PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**