IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION IN LIMINE**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

    Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), through counsel, files this Reply in Support of Motion in Limine (Doc. 279), as well as Exhibit 2 thereto (Doc. 280) as follows:

## I.    PRELIMINARY STATEMENT

    1.    This Reply addresses two specific matters in Defendants' Response, (1) arguments directly contradictory to Defendants' sworn testimony, and (2) the incremental harm doctrine or the libel-proof plaintiff doctrine.

## II.    LEGAL STANDARD

    2.    Evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence to determining the action. F.R.E. 401(a-b). The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time. F.R.E. 403.

1

### III. ARGUMENT

**A.     Defendants have affirmatively denied knowledge of "evidence" they now seek to present to the jury.**

3.     In their Response to Plaintiff's Motion in Limine, Defendants argue that various pieces of alleged evidence are relevant for purposes of (1) rebutting Dr. Coomer's claims that Defendants acted with actual malice; (2) providing context for Defendants' statements and demonstrating their reasonableness given publicly available information about Dr. Coomer; and (3) that Defendants' conduct was not 'extreme and outrageous' given the context.  Specifically, Defendants allege that the following evidence will be relevant for those purposes: (1) Dr. Coomer's statements about President Trump and law enforcement, (2) the 118-page "background document", and (3) Dr. Coomer's religious views and social media posts.  Response, pp. 5, 7-8, 9-10.  (Doc. 283).

4.     Defendants do not explain how this information could be relevant to an actual malice analysis, but their reference to "providing context" suggests that Defendants intend to argue that their accusations of criminal conduct arising from the 2020 election were motivated, or supported in part, by their knowledge of these other matters.  But they were not.  Defendants have repeatedly sworn under oath that they knew absolutely nothing about Dr. Coomer, either before or after the statements at issue here.[1]  Instead, they have insisted that their publications against Dr. Coomer were exclusively in retaliation for his settlement with Newsmax, which they falsely believed had some bearing

---

[1] *See* **Exhibit 1**, 30(b)(6) Depo. Tr. My Pillow, Inc., (Mar. 8, 2023), at 102:17-20, 203:13-17, 304:6-11, 304:23-305:10, 344:2-11 (redacted pursuant to the Protective Order entered on Nov. 16, 2022.  Doc. 77); **Exhibit 2**, 30(b)(6) Depo. Tr. FrankSpeech, LLC (Mar. 9, 2023), at 127:11-23, 138:25-144:1, 184:23-185:20, 201:16-205:5, 299:25-302:6, **Exhibit 3**, Depo Tr. Lindell, (Aug. 23, 2023), at 70:4-20, 92:19-99:13, 211:7-17.

2

on Mr. Lindell's ability to sell pillows with that network.[2]  The following exchange is typical of these repeated assurances:

| | |
|---|---|
| Mike Lindell: | I didn't even know, I don't know anything about the guy. |
| Q: | Right. Before you started talking about him, you didn't know anything about him, did you? |
| Mike Lindell: | No, I didn't know any.  I still don't know anything about him.  I know one thing about it, what he did to me with Newsmax, that's the only thing.  Every comment I made after that was because of that, what he did to Newsmax.  I don't know where he lives, I don't know anything about him.  Zero.[3] |

5. As a result, the anonymously authored 118-page "dossier," Dr. Coomer's Facebook posts, and statements regarding his religious beliefs cannot possibly rebut claims of actual malice or provide context for defamatory statements made by Lindell.

6. Defendants are attempting to cobble together an after-the-fact excuse for their conduct with random information trawled from the underbelly of the internet.  But information acquired subsequent to a defamatory publication is not and cannot be relevant to Defendants' subjective state of mind at the time of the publications.  *See, e.g., Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 579 (Colo. App. 2024) (*citing Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1967) (noting the relevance of a defendant's subjective state of mind at the time of the defamatory statements at issue).  To be clear, Defendants denied any knowledge of Dr. Coomer at least as of August 23, 2023.[4]  Even if they are briefed on these matters prior to their testimony at trial, the Court should not

---

[2] *Id.*

[3] **Exhibit 1**, 30(b)(6) Depo. Tr. My Pillow, Inc., 344:2-11 (Mar. 8, 2023).

[4] **Exhibit 3**, Depo Tr. Lindell, (Aug. 23, 2023), at 70:4-20, 92:19-99:13, 211:7-17.

3

allow admission of this purported "evidence" on the basis that it informed their state of mind at the time of publication.

7. In any case, even if Defendants did have familiarity with these matters at the time of publication, none of them provide any evidence whatsoever that Dr. Coomer engaged in nefarious conduct with respect to the 2020 election. That is what this case is about, and that focus should inform the Court's analysis.

**B.     Extraneous matters have no bearing on this dispute.**

8. The Court has determined that the actual malice standard applies because this case addresses "a matter of general public concern," specifically with respect to the public's "legitimate interest in fair and secure elections as part of the democratic election process." Order on Motion to Dismiss, pp. 9-10. (Doc. 119, Mar. 15, 2023).

9. Despite this specific context, Defendants assert that the entirety of Dr. Coomer's character and reputation are on trial, and conclusorily assert that "Mr. Coomer's credibility and character for truthfulness . . . are central issues in this defamation case." They argue that "evidence" relating to an incident where Dr. Coomer was cited for reckless driving,[5] Dr. Coomer's statements about President Trump and law enforcement, and Dr. Coomer's religious beliefs also fall under this umbrella.

10. At no point do Defendants explain how or why those matters could possibly be "central issues." This is a case in which the Defendants have falsely accused Dr. Coomer of rigging the 2020 presidential election. They have not designated any expert to

---

[5] Notably, this September 21, 2021 citation occurred *after* many of the defamatory statements at issue in this dispute.

4

opine that the election was in fact rigged. They have not disclosed any evidence which even purports to support any election-rigging conduct. They cannot even articulate a theory by which Dr. Coomer *could have* affected the election results.[6] The Response suggests Defendants intend to backfill this void with personal attacks arising from unrelated matters.

11. Defendants rely principally on *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) for the proposition that "reputation and character are inextricably intertwined" in defamation cases. *World Wide* was a defamation case arising from the defendant's "post[ing of] negative messages about schools for at-risk teenagers on an internet forum." *Id.* at 1135. The Court allowed into evidence various media reports *on the same topic*, namely other reports describing abuse of teenagers in World Wide affiliated schools. *Id.* at 1136. The Court went on to note that Utah applies a two-part test with respect to limited purposes public figures, wherein "[f]irst, the court must isolate the specific public controversy related to the defamatory remarks. Next, the court should examine the type and extent of the participation in that public controversy to determine whether, under *Gertz*, he has 'thrust [himself] to the forefront of [the] controvers[y] in order to influence the resolution of the issues involved." *Id.* at 1137, (*citing Wayment v. Clear Channel Broadcasting, Inc.*, 116 P.3d 271, 279-80 (Utah 2005); *Gertz v. Robert Welch, Inc.* 418 U.S. 323 (1974)).

---

[6] **Exhibit 2**, at 50:5-53:17.

5

12. Defendants, likely unwittingly, are invoking either the incremental harm doctrine or the libel-proof plaintiff[7] doctrine by implying that "evidence" relating to *any* aspect of Dr. Coomer's life—no matter how personal, unrelated, or remote in time—is somehow relevant to reputational harm arising from false claims that he was "corrupt" in his career and criminally culpable for "crimes against the United States."  But the Tenth Circuit has already declined to adopt such expansive application.

13. "As it is typically described, an incremental harm rule seeks to compare the allegedly false statements about the plaintiff in a particular publication with unchallenged (or true) statements *found in the same publication*.  It then permits recovery only if the false statements do harm over and above the damage caused by the true ones." *Bustos v. A&E Television Networks, Inc.*, 646 F.3d 762, 765 (10th Cir. 2011) (emphasis in original). The Court discussed the issue as follows:

> [E]ven more troubling is the doctrine's breadth.  If an article calls Benedict Arnold a thief and a traitor, the "incremental harm" done by the first statement might be nothing compared to the unassailable truth of the second (entirely unrelated) statement, and this would leave Mr. Arnold to recover nothing for the patently false and defamatory accusation that he's a thief. *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984). In this way, an incremental harm rule assumes that an individual's reputation is "a monolith which stands or falls in its entirety." *Id.* And common experience suggests this premise is a doubtful one—a liar and a thief, after all, may still be a good family man—and saying otherwise may still do material damage to his public reputation. *Id.* Taken to its logical conclusion, moreover, incremental harm analysis suggests that individuals with really bad reputations in one area may be "libel proof" in all areas, free game for the publication of even the most outrageous and damaging lies. Call Benedict Arnold whatever you like; his public reputation is already so

---

[7] Different jurisdictions apply these terms interchangeably.  As discussed herein, the Tenth Circuit has treated the "incremental harm doctrine" as being a lesser form of the "libel-proof plaintiff doctrine," which is the "logical conclusion" of the incremental harm doctrine.

6

> soured by his treason that no incremental harm could be done to it. *Id.* at 1569 (calling the libel-proof plaintiff a "bad idea.").

*Id.* at 765-66.

14. The Court went on to contrast these theories with material falsehood requirement that is recognized in Colorado. The Court explained:

> [T]he material falsehood requirement narrows our comparison of statements on the same subject matter, making the task more amenable to judicial determination and the outcome more predictable to potential litigants. The incremental harm (or libel-proof plaintiff) analysis asks courts to compare harms flowing from statements on radically different matters that may even be incommensurable – which is worse, a perjurer or an inside trader? A liar or a cheat? By contrast, the material falsehood analysis focuses judicial attention on the comparatively narrow question of whether a *particular* challenged statement is true or false on its *own terms* – a task that falls well within the traditional (if human and imperfect) truth finding function of juries and judges. (*Citing* RESTATEMENT OF TORTS § 581A, cmt. f; *Liberty Lobby*, 746 F.2d at 1568, n. 6.

*Id.* at 766 (emphases in original).

15. Thus, it follows that Dr. Coomer's religious are not relevant to his reputation in the election industry. Dr. Coomer's concerns relating to police brutality in the wake of the murder of George Floyd have no bearing on whether or not he did, in fact, manipulate election results. And his statements made to law enforcement following a traffic accident cannot have any bearing on his standing within his profession prior to that event.[8] The jury cannot be asked or expected to balance the impact of these "incommensurable"

---

[8] Notably, the public dissemination of the body camera footage in question only occurred *because of* the false allegations at issue in this dispute. This is evident by the watermark stamp on the footage ("Your Daddy Joey") from the convicted felon and provocateur Joey Camp, who is Oltmann's likely source for the made up story about Dr. Coomer in the first place. In other words, there would have been no public interest in or knowledge of this incident but for the lies at issue in this dispute.

7

matters when weighing damages arising from the subject matter in dispute in this proceeding.

16.     The irrelevance of these matters to the damages at issue here is self-evident. After all, Dr. Coomer's career in the elections industry was not impacted by any of the matters that Defendants allege constitute the supposed monolith of Dr. Coomer's reputation.  The false claims that Dr. Coomer confess to and actually rigged the election are the exclusive reason for the loss of his career, the reputational harm surrounding his work in the elections industry, and the relentless threats and harassment that followed and which persist to this very day.  Defendants should not be permitted to confuse and mislead the jury by injecting irrelevant and inflammatory matters into this dispute.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff Eric Coomer, Ph.D. prays the Court grant his Motion in Limine and issue an Order in Limine, precluding Defendants from presenting any such evidence, statements, testimony, or arguments at trial with respect to the matters addressed in his motion, response, and reply thereto.

Respectfully submitted this 7th day of March 2025.

                                                          */s/ Charles J. Cain*
                                         Charles J. Cain, No. 51020
                                         ccain@cstrial.com
                                         Bradley A. Kloewer, No. 50565
                                         bkloewer@cstrial.com
                                         **CAIN & SKARNULIS PLLC**
                                         P. O. Box 1064
                                         Salida, Colorado 81201
                                         719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)


Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
David M. Beller, No. 35767
david@rklawpc.com
**RECHTKORNFELD PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**