**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
          Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
          Defendants

---

**JOINT PROPOSED JURY INSTRUCTIONS**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

In compliance with the Court's order and standing order Sec. C.1-3, the parties provide these joint proposed jury instructions. The instructions herein include (1) preliminary jury instructions, (2) clear identifications of "NOT DISPUTED" Jury Instructions (affixed underneath the instruction "title"); and (3) redlined disputed instructions. All instructions herein are numbered for the Court.

As a general matter, some of the disputed jury instructions herein were proposed first by the Plaintiffs while others in dispute were proposed by Defendants. As best as the parties were reasonably able to do, any disputing/opposing party has provided redlines below or comments regarding their dispute to the party that first proposed the instruction.

1

**INSTRUCTION 1**

**NOT DISPUTED**

**INTRODUCTORY REMARKS TO JURY PANEL**

Members of the jury, this is *(insert appropriate description, e.g., "Courtroom A,"*
*"Division II," etc.)* of the United States District Court for the District of Colorado. My name
is Judge Nina Wang. I am the judge assigned to preside in this case.

First, I want to tell you about the rules that will govern your conduct during your
jury duty, beginning right now, even if you are not finally selected as jurors. If you are
chosen as jurors, your job will be to decide this case based solely on the evidence
presented during the trial and the instructions that I will give you. You will not be
investigators or researchers, so do not attempt to gather any information about this case
on your own. Do not read or do research about this case or the issues in the case from
any other source, including the internet. You may not use Google, Bing, Yahoo, or any
other type of internet search engine to learn about any person, place, or thing that is
involved in this case. Do not read about this case in newspapers, magazines, or any other
publications. Do not listen to any podcasts or television or radio broadcasts about the trial.
Do not consult dictionaries; medical, scientific, or technical publications; religious books
or materials; or law books. I want to emphasize that you must not seek or receive any
information about this case from the internet, which includes all social media, Google,
Wikipedia, blogs, and other websites.

2

If you were to violate this rule by receiving outside information about the case, it could force me to declare a mistrial, meaning that the trial would have to start over, and all of the parties' work, my work, and your work on this case would be wasted.

Therefore, it is very important that you not receive outside information about this case, whether it comes from other people, from the media, from books or publications, or from the internet. You are free to use the internet, but only for purposes unrelated to this case. Do not search for or receive any information about the parties, the lawyers, the witnesses, the judge, the evidence, or any place or location mentioned. Do not research the law. Do not look up the meaning of any words or scientific or technical terms used. If necessary, I will give you definitions of words or terms.

Also, you are not allowed to visit any place(s) involved in this case. If you normally travel through such a place, you should try to take a different route until I tell you that your jury service is completed. If you cannot take a different route, you must not stop or attempt to gather any information from that location.

Until I tell you that your jury service is complete, do not communicate about the case with anyone, including family and friends, whether in person or by telephone, cell phone, smart phone, computer, internet, or any internet service. This means you must not email, text, instant message, tweet, blog, or post information about this case, or about your experience as a juror on this case, on any social media, website, listserv, chat room, or blog.

When court is not in session, you may communicate about anything other than this case. You may tell others that you are on jury duty and that you cannot talk about this

duty until your service is completed, and you may tell them the estimated schedule of your jury duty, but do not tell them anything else about the case. If anyone tries to communicate with you about anything concerning the case, you must stop the communication immediately and report it to the Bailiff, who will notify me.

I will now introduce you to this case.

The case which we are about to try is a civil case and not a criminal case. The party who started this case is called the plaintiff. The opposing parties are called the defendants. In this case the Plaintiff is Eric Coomer, and the Defendants are Michael Lindell, My Pillow, and Frankspeech. In this case, the Plaintiff alleges that the Defendants defamed him and caused him severe emotional distress through their alleged defamatory statements. The Defendants maintain that they did not defame the Plaintiff and that the statements at issue are protected under the First Amendment.

There will be *(insert number)* jurors in this case. The jury will consider the evidence and reach a verdict with the help of instructions about the law. I will now read you some of the instructions that may apply in this case. These are preliminary instructions about the law and may not be exactly the same as the final instructions about the law you will be given at the end of the case to use in your deliberations. If there is any difference between the preliminary and final instructions, you must follow and be governed by the final instructions in deciding the case. You should not be concerned about any difference between the preliminary instructions and the final instructions.

The jury must decide what the facts are from the evidence you hear and see during the trial.

4

You have a duty to be fair and impartial.

In this case, the parties are entitled to a jury trial. Trial by jury is part of our American system of justice. Each juror plays an equal and important part in this system. It is your duty to give this case your close attention, absolute fairness, and good judgment.

We estimate that this trial will last *10* days. *(The Court may either at this time or later inquire whether there are any members of the jury panel who would be unable to serve during the trial if selected as jurors.)*

You will not be required to stay together at noon or at night until the case is finally given to you for your decision.[1]

---

[1] CJI 1:1.

5

**INSTRUCTION 2**

**NOT DISPUTED**

**VOIR DIRE**

I want to explain briefly to you the method we will use in selecting this jury and some of the reasons for this procedure.

*(Insert number)* members of the panel will be called into the jury box. After the first *(number)* members of the panel are in the jury box, each of you, regardless of whether you have been called forward to sit in the jury box, will take your oath that you will truthfully answer all questions as to whether you can serve as a juror in this case. After the oath is given, I and each attorney may ask you questions concerning your ability to be fair and impartial jurors. You should answer fully all questions asked by the attorneys or by me. Even though you may not be called forward into the jury box with the first group called, please listen closely to all that is said because you may be asked to sit in the jury box before jury selection is completed. After the questioning has been completed, each side must excuse *(insert number)* members of the panel without stating a reason. This leaves a jury of *(insert number)* to try the case. Therefore, do not be embarrassed or consider it any reflection upon you if you are one of those excused.

*(The Court should then introduce each attorney and request each attorney to introduce their respective clients. The Court should also introduce to the panel all the members of the court staff and describe briefly the functions they perform. The appropriate number of prospective jurors should then be called by lot and the oath on voir*

6

*dire administered to the entire panel, thus avoiding needless duplication in the*
*administration of the oath.)*

The attorneys and I want an impartial jury to decide this case. I will be asking questions to find out whether any prospective juror knows any of the parties, witnesses or court personnel, whether he or she has any knowledge or personal interest in the outcome of the case or whether he or she has any bias or prejudice which might wrongfully influence the juror. No question is intended to pry into your personal affairs. If you are not chosen, it is not a reflection on your character nor does it mean that the attorney has anything personally against you. If you know or at any time during questioning you become aware of anything which might prevent you from being completely impartial to both sides, or might otherwise prevent you from serving as a juror, you should immediately raise your hand.[2]

---

[2] CJI 1:2 – 1:3.

**INSTRUCTION 3**

**NOT DISPUTED**

**OATH ON VOIR DIRE**

Do you, and each of you, solemnly swear or affirm to answer fully and truthfully the
questions asked by the Court or the attorneys concerning your service as a juror in this
case and to volunteer fully any information concerning your ability to render a just
verdict?[3]

---

[3] CJI 1:19.

**INSTRUCTION 4**

**NOT DISPUTED**

**JURORS' CONDUCT DURING TRIAL — PRE-DELIBERATION DISCUSSIONS,
PROHIBITION ON COMMUNICATIONS WITH OTHERS**

Members of the Jury, now that you have been sworn to try this case, I will instruct you as to your conduct during the course of this trial.

You may discuss the evidence during the trial, but only among yourselves and only in the jury room when all of you are present.

You must not, individually or as a group, decide any issues in this case until after you have heard and considered all of the evidence, the closing arguments of the lawyers, and the final instructions I will give you on the law. Keep an open mind during the trial. Do not decide the issues until you have discussed this case as a group in the jury room at the end of the trial.

Do not talk with anyone else about this case, including your family and friends, the parties, their attorneys, witnesses, representatives of the media, or court staff, until this trial is over and you have been formally discharged by the Court. At that time, you will be free to discuss this case with anyone if you wish to do so; you simply must not do so before the trial is over and you have been formally discharged by the Court.

If anyone tries to talk with you or if you overhear others talking about any party, witness, evidence, or anything else about this case, walk away and immediately notify the Bailiff, who will notify me. Also, do not read or listen to any accounts or discussions of the

case that may be reported by newspapers or other publications, television, radio, the

internet, or any social media.[4]

---

[4] CJI 1:4.

**INSTRUCTION 5**

**NOT DISPUTED**

**JURORS' CONDUCT DURING TRIAL — PROHIBITION ON OUTSIDE
INFORMATION AND ELECTRONIC COMMUNICATIONS**

As jurors, your job is to decide this case based solely on the evidence presented during the trial and the instructions that I will give you. You are not investigators or researchers, so you must not read or use any other material or information that relates to any aspect of the case, including the underlying claims and events and anyone associated with this trial. This prohibition applies, for example, to: the internet; podcasts; newspapers; magazines; television and radio broadcasts; dictionaries; medical, scientific, or technical publications; and legal, religious, or other books or materials. I want to emphasize that you must not seek or receive any information about any aspect of this case from the internet, which includes all social media, Google, Wikipedia, blogs, and other websites.

If you were to violate this rule by receiving outside information about any aspect of the case, it could force me to declare a mistrial, meaning that the trial would have to start over before a different jury, and all of the parties' work, my work, and your work on this trial would be wasted.

Therefore, it is very important that you not receive outside information about this case, whether it comes from other people, from the media, from books or publications, or from the internet. You are free to use the internet, but only for purposes unrelated to this case. Do not search for or receive any information about the parties, the lawyers, the witnesses, the judge, the evidence you will hear, or any place or location mentioned

during the trial. Do not research the law. Do not look up the meaning of any words or scientific or technical terms used during the trial. If necessary, I will give you definitions of words or terms before you begin your deliberations.

Also, you are not allowed to visit any place(s) involved in this case. If you normally travel through such a place, you should try to take a different route until I tell you that your jury service is completed. If you cannot take a different route, you must not stop or attempt to gather any information from that location.

Until I tell you that your jury service is completed, do not communicate with anyone, including family and friends, about the evidence or the issues in this case. This prohibition applies to all forms of communication, including in-person conversations, written communications, telephone or cell phone calls, and electronic communications through any device. For example, you must not communicate about this case by email, text messages, Twitter, blogging, or social media.

When court is not in session, you may communicate about anything other than this case. You may tell others that you are on a jury and that you cannot talk about the trial until it is over, and you may tell them the estimated schedule of the trial, but do not tell them anything else about the case. If anyone tries to communicate with you about anything concerning the case, you must stop the communication immediately and report it to the Bailiff, who will notify me.[5]

---

[5] CJI 1:5.

**INSTRUCTION 6**

**NOT DISPUTED**

**PRETRIAL PUBLICITY**

There may have been some publicity about this case in the newspapers and on radio and television. Some of this publicity may have come to the attention of some of you. You must disregard anything that you may have heard about this case outside the courtroom. Your verdict must be based solely on evidence admitted during the trial.[6]

---

[6] CJI 1:6.

**INSTRUCTION 7**

**NOT DISPUTED**

**GENERAL OUTLINE OF TRIAL PROCEDURES TO JURY**

I will now explain the procedure that is usually followed during a trial. Before the trial begins, I will orally give you some preliminary instructions, including some specific instructions on the law that applies in this case, and definitions of any special terms to provide you with a framework for the evidence that will be presented. You will also receive copies of these preliminary instructions and definitions.

The attorneys will then have the opportunity to present opening statements. The purpose of opening statements is to give you an outline of each party's claims and defenses. You must remember, however, that what is said in opening statements and all other statements made by the attorneys are not evidence. Your verdict must be based upon the evidence in this case and the instructions regarding the law that governs this case. The evidence usually consists of the sworn testimony of witnesses, the exhibits which are received and any facts which are admitted or agreed to or are judicially noticed.

Once the trial begins, the plaintiff's attorney will present evidence. The defendant's attorney is permitted to cross-examine all witnesses presented by the plaintiff. Upon the conclusion of the plaintiff's case, the defendant's attorney may offer evidence on behalf of the defendant, but is not required to do so. If the defendant presents witnesses (in response to the plaintiff's evidence or to establish any defense), the plaintiff's attorney may cross-examine them. The plaintiff's attorney may choose to present further evidence in response to any evidence presented by the defendant.

14

After all the evidence has been received, I will give you final instructions on the law applicable to this particular case. These final instructions will replace the preliminary instructions which you will be given before the trial begins. Based upon the evidence presented, the final instructions may differ from the preliminary instructions. If there is any difference between the preliminary and final instructions, you must follow and be governed by the final instructions in deciding the case.

After you have received all the instructions on the law governing this case, each attorney may present a final argument to you. The plaintiff's attorney will first present his closing argument. Thereafter, the defendant's attorney will make a closing argument. The plaintiff's attorney may respond to any statements made by the defendant's attorney. After arguments are concluded, the case will be given to you for decision.

It is the right of an attorney to object when testimony or other evidence is offered which the attorney believes is not admissible.

When I sustain an objection to a question, the jurors must disregard the question and must draw no conclusion from the question nor guess what the witness would have said. If any answer has been given, the jurors must disregard it.

When I sustain an objection to any evidence or strike any evidence, the jurors must disregard that evidence.

When I overrule an objection to any evidence, the jurors must not give that evidence any more weight than if the objection had not been made. You should not be prejudiced against any party because that party's attorney makes an objection.

Legal arguments are occasionally required to be considered outside the presence of the jury. This may cause delay. All rulings I am required to make will be based solely on the law. You must not infer from any ruling or from anything I say during trial that I hold any views either for or against any party to this case.

During recesses and adjournments of court, you will be free to separate, to eat lunch, and to go home at the end of the day. During these times, you are not to discuss this case with one another or anyone else. Furthermore, you must not talk with any of the parties to this case, their attorneys, witnesses, or representatives of the media until after you have reached your verdict and have been discharged by the Court as jurors in this case.

We have a Bailiff, *(name)*, and *(insert applicable pronoun)* is here to take care of your needs during the course of this trial. Do not discuss this case with the Bailiff. If you have any personal problems or needs, take it up with *(name of Bailiff)* and *(insert applicable pronoun)* will notify me.[7]

---

[7] CJI 1:7.

**INSTRUCTION 8**

**NOT DISPUTED**

**NOTE TAKING BY JURORS**

You have received writing materials. You may use these materials to take notes during the trial. However, you are not required to do so.

If you take notes, you should not allow the note-taking to detract from your close attention to each witness and his or her testimony and all other evidence received during the trial.

Whether you take notes or not, you should rely on your memory as much as possible and not upon your notes or the notes of other jurors. Any notes you take are to refresh your own individual memory.

These materials may only be used in the courtroom or jury room. You may take these materials from the courtroom to the jury room and from the jury room to the courtroom. However, these materials may not be taken anywhere else.

Please write your name on your materials. Be assured that no one else will read your notes. At the end of the case, these notes will be returned to the Court and destroyed.[8]

---

[8] CJI 1:8.

**INSTRUCTION 9**

**NOT DISPUTED**

**JUROR NOTEBOOKS**

To assist you in understanding these proceedings, you have been provided with notebooks containing information about this case. Please write your name in these notebooks. These notebooks may only be used in the courtroom or jury room. You may take these notebooks from the courtroom to the jury room and from the jury room to the courtroom. However, they may not be taken anywhere else. Any notes that you have taken during the trial will be destroyed after they have been returned to the Court.[9]

---

[9] CJI 1:9.

18

**INSTRUCTION 10**

**OATH OF JURORS[10]**

**PLAINTIFF'S PROPOSED INSTRUCTION:**

Do you, and each of you, solemnly swear or affirm that you will fairly consider and decide the case now before you between Plaintiff Eric Coomer, Ph.D. and Defendants Michael J. Lindell, My Pillow, Inc., and Frankspeech LLC and that you will reach a true verdict based upon the evidence and the law contained in the instructions of the Court?

**DEFENDANTS' PROPOSED INSTRUCTION:**

Do you, and each of you, solemnly swear (by the everliving God)[11] or affirm that you will fairly consider and decide the case now before you between Plaintiff Eric Coomer, Ph.D. and Defendants Michael J. Lindell, My Pillow, Inc., and Frankspeech LLC and that you will reach a true verdict based upon the evidence and the law contained in the instructions of the Court?

---

[10] CJI-Civ. 1:20.

[11] Plaintiff suggests this language not be included in this instruction given the circumstances of this case.

**INSTRUCTION 11**

**OATH OR AFFIRMATION OF WITNESSES**[12]

**PLAINTIFF'S PROPOSED INSTRUCTION:**

Do you solemnly swear or affirm, under penalty of perjury, that the testimony you will give before this Court shall be the truth, the whole truth, and nothing but the truth?

**DEFENDANTS' PROPOSED INSTRUCTION:**

Do you solemnly (swear) (by the everliving God)[13] (affirm), under penalty of perjury, that the testimony you will give before this Court shall be the truth, the whole truth, and nothing but the truth?

---

[12] CJI-Civ. 1:21.

[13] Plaintiff suggests this language not be included in this instruction given the circumstances of this case.

**INSTRUCTION 12**

**PROHIBITION ON OUTSIDE INFORMATION AND ELECTRONIC
COMMUNICATIONS**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION**: In your deliberations, your duty
is to apply the Court's instructions of law to the evidence that you have seen and heard
in the courtroom. You are not allowed to look at, read, consult, or use any material of any
kind, including any newspapers, magazines, television and radio broadcasts, dictionaries,
medical, scientific, technical, religious, or law books or materials, or the Internet in
connection with your jury service. I want to emphasize that you must not seek or receive
any information about this case from the Internet, which includes all social networking,
Google, Wikipedia, blogs, and any other web site. You are not allowed to do any research
of any kind about this case.

Do not use any information from any source concerning the facts or the law
applicable to this case other than the evidence presented and the instructions that I give
you. Do not do your own investigation about this case. You are not allowed to visit any
places mentioned in the evidence. If this is an area that you normally go through, you
should try to take an alternative route. If you are not able to take an alternate route, you
should not gather any information from that location.[14]

**DEFENDANTS' PROPOSED INSTRUCTION:** "ADMONITION AT RECESS" We will now
(recess for the day) (have a recess) (and the Bailiff will escort you to the jury room). You

---

[14] CJI-Civ. 1:5.

21

may discuss the evidence during the trial, but only among yourselves and only in the jury room when all of you are present.

You must not discuss this case with anyone else, or read, view, or listen to any reports about this case on the internet, in the press, on television, the radio, or any social media. Remember what I told you at the beginning of the case: do not look at, read, or use any material of any kind to obtain information about any aspect of the case, including the internet, newspapers, magazines, television and radio broadcasts; dictionaries; medical, scientific, or technical publications; and legal, religious, or other books or materials. I want to emphasize that you must not seek or receive any information about this case from the internet, which includes all social media, Google, Wikipedia, blogs, and other websites. Do not do any research of any kind about this case.

Do not use any information from any other source concerning the facts or the law applicable to this case other than the evidence presented and the instructions that I give you. Do not do your own investigation about this case. You are not allowed to visit any place[s] mentioned in the evidence. If this is an area that you normally go through, you should try to take an alternate route. If you are not able to take an alternate route you should not gather any information from that location.

You must not form or express any opinion on the outcome of the case until it is given to you for your final decision. Attorneys and parties are ordered not to talk with you. Please do not consider them impolite when they do not talk to you.[15]

---

[15] CJI 1:5. Plaintiff's position that Defendants' Proposed Instruction is a separate instruction that is not directly responsive to CJI-Civ 1:5 and should not be combined as Defendants have indicated here.

**INSTRUCTION 13**

**NOT DISPUTED**

**PLAINTIFF'S PROPOSED INSTRUCTION:**[17]

**ADMONITION AT RECESS**

We will now (recess for the day) (have a recess) (and the Bailiff will escort you to the jury room). You may discuss the evidence during the trial, but only among yourselves and only in the jury room when all of you are present.

You must not discuss this case with anyone else, or read, view, or listen to any reports about this case on the internet, in the press, on television, the radio, or any social media.

Remember what I told you at the beginning of the case: do not look at, read, or use any material of any kind to obtain information about any aspect of the case, including the internet, newspapers, magazines, television and radio broadcasts; dictionaries; medical, scientific, or technical publications; and legal, religious, or other books or materials. I want to emphasize that you must not seek or receive any information about this case from the internet, which includes all social media, Google, Wikipedia, blogs, and other websites. Do not do any research of any kind about this case.

Do not use any information from any other source concerning the facts or the law applicable to this case other than the evidence presented and the instructions that I give you. Do not do your own investigation about this case. You are not allowed to visit any place[s] mentioned in the evidence. If this is an area that you normally go through, you

---

[17] Defendants feel this is unnecessarily duplicative of Instruction No. 12.

24

Deleted: [16]

should try to take an alternate route. If you are not able to take an alternate route you should not gather any information from that location.

You must not form or express any opinion on the outcome of the case until it is given to you for your final decision. Attorneys and parties are ordered not to talk with you. Please do not consider them impolite when they do not talk to you.[18]

---

[18] CJI-Civ. 1:10.

**INSTRUCTION 14**

**NOT DISPUTED**

**MANDATORY INSTRUCTION UPON DISCHARGE**

This case has now been concluded and (I) (the Court) wish(es) to express (my) (its) appreciation to you for your services.

You may now talk to anyone, including the attorneys and parties, about this case. Whether you do so is entirely up to you.

If you decide not to discuss the case, your decision will undoubtedly be respected. However, if an attorney or a party persists in discussing the case over your objection, or becomes critical of your services as a juror, please report the incident to me.

You are now allowed to leave with the thanks of the Court.[19]

---

[19] CJI 1:18.

**INSTRUCTION 15**

**NOT DISPUTED**

**INTRODUCTION TO FINAL INSTRUCTIONS**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every civil case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then, I will give you some specific rules of law that apply to this particular case. Finally, I will explain the procedures you should follow in your deliberations and the possible verdicts you may return. You will be allowed to take these instructions with you to the jury deliberation room, so you need not take notes as I read them to you.[20]

---

[20] Obtained from exemplar in matter previously before this Court; Civil Action No. 1:20-cv-03119-NYW-KAS; *Nelson v. Toyota Motor Co.*

**INSTRUCTION 16**

**NOT DISPUTED**

**JURY QUESTIONS DURING DELIBERATIONS**

You are about to go into the jury room and begin your deliberations.

Once you begin your deliberations, if you have a question about the evidence in this case or about the instructions or verdict forms that you have been given, your foreperson should write the question on a piece of paper, sign it and give it to the Bailiff who will bring it to me. I will then confer with the attorneys as to the appropriate way to answer your question. However, there may be some questions that, under the law, I am not permitted to answer. If it is improper for me to answer the question, I will tell you that. Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.[21]

---

[21] CJI-Civ. 4:2A.

**INSTRUCTION 17**

**JURY DEADLOCKED OR PROLONGED DELIBERATIONS**

**NOT DISPUTED**

Because it appears that your deliberations are taking awhile, I would like to offer some suggestions to help you come to a decision. I wish you to continue your deliberations keeping in mind the following:

1.    You have a duty to discuss the evidence with each other. Your goal should be to reach an agreement;

2.    You must each decide for yourself, but you should consider the views of the other jurors with an open mind;

3.    You should not hesitate to re-examine your own views and change your opinion if you become convinced that you were wrong; and

4.    You should not change your mind just to agree with the other jurors or just to return a verdict.[22]

---

[22] CJI 4:3; For guidance as to the appropriate time and circumstances when this instruction may be given, *see Luster v. Brinkman*, 205 P.3d 410 (Colo. App. 2008) (no coercive effect in giving this instruction and suggesting that the jury call it "quits" for the day and resume deliberations next morning). *See also Ford v. Bd. of Cty. Comm'rs*, 677 P.2d 358 (Colo. App. 1983) (not an abuse of discretion to give this instruction when jury was unable to agree on total amount of damages but the trial court, after appropriate inquiries, concluded there was a reasonable probability of agreement). However, the court should not give this instruction without first ascertaining the likelihood of progress towards a unanimous verdict if deliberations continue. *See People v. Black*, 2020 COA 136, ¶ 29, 490 P.3d 891; *see also People v. Cox*, 2023 COA 1, ¶ 17, 528 P.3d 204.

**INSTRUCTION 18**

**NOT DISPUTED**

**GENERAL FINAL INSTRUCTIONS**

Now that you have heard the evidence and the parties' arguments, it is your duty to find the facts from all the evidence in the case. And to those facts, you must apply and follow the laws contained in these instructions, whether you agree with them or not. If there is any difference between the law stated by the lawyers and the law in these instructions, you are governed by my instructions. You must follow all of these instructions and not single out some and ignore others; they are all equally important. The decision you reach by applying the law in these instructions to the facts as you find them is called a verdict.

You must not read into these instructions, or into anything I say or do, any suggestions as to what verdict you should return. Your verdict is a matter entirely for you to decide. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, bias, or public opinion. It is important that you discharge your duties without discrimination, meaning that bias regarding the race, color, religious beliefs, national origin, sexual orientation, gender identity, or gender of the parties, any witnesses, and the lawyers should play no part in the exercise of your judgment. All parties expect that you will carefully consider all the

30

evidence, follow the law in these instructions, and reach a just verdict, regardless of the

consequences. You have taken an oath promising to do so.[23]

---

[23] Obtained from exemplar in matter previously before this Court; Civil Action No. 1:20-cv-03119-NYW-KAS; *Nelson v. Toyota Motor Co.*

**INSTRUCTION 19**

**NOT DISPUTED**

**SUMMARY OF CLOSING INSTRUCTIONS**

These instructions contain the law that you must use in deciding this case. No single instruction states all the applicable law. All the instructions must be read and considered together.

You must not be concerned with the wisdom of any rule of law. Regardless of any opinion you may have as to what the law should be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court.

The Court does not, by these instructions, express any opinions as to what has or has not been prove in the case, or to what are or are not the facts of the case.[24]

---

[24] CJI-Civ. 4:1.

**INSTRUCTION 20**

**NOT DISPUTED**

**NO SPECULATION**[25]

Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.

---

[25] CJI-Civ. 3:4 (2024).

**INSTRUCTION 21**

**NOT DISPUTED**

**EVIDENCE IN THE CASE**[26]

The evidence in the case consists of the sworn testimony of all the witnesses (all exhibits which have been received in evidence), (all facts which have been admitted or agreed to), (all facts and events which have been judicially noticed), (and all presumptions stated in these instructions).

In deciding the facts, you must consider only the evidence received at trial. Evidence offered at the trial and rejected or stricken by the Court must not be considered by you. Statements, remarks, arguments, and objections by counsel and remarks of the Court not directed to you are not evidence.

You are to consider only the evidence in the case and the reasonable inferences from that evidence. An inference is a conclusion that follows, as a matter of reason and common sense, from the evidence.

---

[26] CJI-Civ. 3:8 (2024).

**INSTRUCTION 22**

**NOT DISPUTED**

**DIRECT AND INDIRECT EVIDENCE**[27]

Evidence may be either direct or circumstantial. Circumstantial evidence is the proof of facts or circumstances from which the existence or nonexistence of other facts may reasonably be inferred. All other evidence is direct evidence. The law makes no distinction between the effect of direct evidence and circumstantial evidence.

---

[27] CJI-Civ. 3:9 (2024).

**INSTRUCTION 23**

**INFERENCE ARISING FROM INVOCATION OF
FIFTH AMENDMENT PRIVILEGE[28]**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** You may, but are not required
to, draw an inference that the answer to any question that Tina Peters refused to answer
by asserting her Constitutional privilege against self-incrimination would have been
unfavorable to Defendants. You should not decide Defendants' liability or non-liability
based solely on Tina Peters' assertion of her privilege against self-incrimination.

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: You may, but are not
required to, draw an inference that the answer to any question that any party or witness
refuses to answer by asserting a Constitutional privilege against self-incrimination would
have been unfavorable to any party or witness. You should not decide any party's liability
or non-liability based solely on an assertion of any privilege against self-incrimination.[29]

Deleted: Tina Peters

Deleted: d

Deleted: her

Deleted: Defendants

Deleted: Defendants'

Deleted: Tina Peters'

Deleted: her

---

[28] CJI-Civ. 3:5A (2024); *McGillis Investment Co., LLP v. First Interstate Financial Utah
LLC*, 2015 COA 116, ¶ 35 370 P.3d 295, 302. ("We agree with and adopt the *LiButti*
analysis – the admissibility of invocation of Fifth Amendment privilege and concomitant
drawing of adverse inference to be considered on a case-by-case basis to assure that
any inference is reliable, relevant, and fairly advanced.").

[29] Defendants wholly object to this instruction under FRE 403.

**INSTRUCTION 24**

**NOT DISPUTED**

**DEPOSITIONS AS EVIDENCE**[30]

Certain testimony has been video recorded and introduced into evidence from a deposition. A deposition is testimony taken under oath before the trial. You are to consider that testimony as if it had been given by the witness from the witness stand.

---

[30] CJI-Civ. 3:10 (2024).

**INSTRUCTION 25**

**NOT DISPUTED**

**EXPERT WITNESSES[31]**

A witness qualified as an expert by education, training, or experience may state opinions. You should judge expert testimony just as you would judge any other testimony. You may accept it or reject it, in whole or in part. You should give the testimony the importance you think it deserves, considering the witness's qualifications, the reasons for the opinions, and all of the other evidence in the case.

---

[31] CJI-Civ. 3:15 (2024).

38

**INSTRUCTION 26**

**NOT DISPUTED**

**DETERMINING CREDIBILITY OF WITNESSES**[32]

You are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You should take into consideration their means of knowledge, strength of memory and opportunities for observation; the reasonableness or unreasonableness of their testimony; the consistency or lack of consistency in their testimony; their motives; whether their testimony has been contradicted or supported by other evidence; their bias, prejudice or interest, if any; their manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the credibility of the witnesses.

Based on these considerations, you may believe all, part or none of the testimony of a witness.

---

[32] CJI-Civ. 3:16 (2024).

**INSTRUCTION 27**

**NOT DISPUTED**

**BURDEN OF PROOF**[33]

The Plaintiff has the burden of proving his claim(s) in this case.

"Burden of proof" means the obligation a party has to prove their claim(s) or defense(s) by a preponderance of the evidence. The party with the burden of proof can use evidence produced by any party to persuade you.

If a party fails to meet their burden of proof as to any claim or defense you must reject that claim or defense.

In this case, there are various burdens of proof with respect to different elements of the Plaintiff's claims. Namely, the burden of proof called a "preponderance of the evidence," the burden of proof called "clear and convincing evidence", and the burden of proof called "reasonable doubt." Each of these will be discussed in the next sections.

---

[33] CJI-Civ. 3:1 (2024).

**INSTRUCTION 28**

**NOT DISPUTED**

**PREPONDERANCE OF THE EVIDENCE[34]**

1.    The Plaintiff has the burden of proving some of his claim(s) by a preponderance of the evidence.

2.    The Defendant has the burden of proving each of his or its affirmative defense(s) by a preponderance of the evidence.

3.    To prove something by a "preponderance of the evidence" means to prove that it is more probably true than not.

If a party fails to meet their burden of proof as to a preponderance of the evidence where required as to any claim, element of a claim, or defense; or if the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, you must reject that claim or defense.

---

[34] CJI-Civ. 3:1.

**INSTRUCTION 29**

**CLEAR AND CONVINCING EVIDENCE**

**PLAINTIFF'S PROPOSED INSTRUCTION:**[35] A fact or proposition has been proved by "clear and convincing evidence" if, considering all the evidence, you find it to be highly probable and you have no serious or substantial doubt.

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** Plaintiff must satisfy a higher standard of proof with respect to certain elements of his case, which we call "clear and convincing evidence." This higher standard of proof applies to his burden of proving that (1) the challenged statements were materially false, and (2) defendants intended to convey to third parties the defamatory meaning plaintiff alleges, and (3) Defendants knew such a meaning was false or that it probably was false (which is referred to as the "actual malice" standard).

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the "preponderance of the evidence" standard in the last section. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

---

[35] CJI-Civ. 3:1 (2024).

42

A fact or proposition has been proved by "clear and convincing evidence" if, considering all the evidence, you find it to be highly probable and you have no serious or substantial doubt.[36]

---

[36] CJI 3:2; *Modern Federal Jury Instructions* ¶ 76.01 (2020); *Whatley v. Wood*, 157 Colo. 552, 404 P.2d 537 (1965) ("clear and convincing" is somewhere between "preponderance" and "beyond a reasonable doubt"); *Jackson Enterprises, Inc. v. Maguire,* 144 Colo. 164, 355 P.2d 540 (1960) ("clear and convincing" greater than a probability or preponderance); and *Huber v. Boyle*, 98 Colo. 360, 363, 56 P.2d 1333, 1335 (1936) ("clear and convincing" means "clear, precise and indubitable."

**INSTRUCTION 30**

**NOT DISPUTED**

**REASONABLE DOUBT - DEFINED[37]**

Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

---

[37] CJI-Civ. 3:3 (2024).

**INSTRUCTION 31**

**DEFAMATION ELEMENTS – FRANKSPEECH LLC**

**PLAINTIFF'S OBJECTION TO DEFENDANTS' PROPOSED JURY INSTRUCTION:** Plaintiff objects to this instruction being given. Please see Plaintiff's proposal with respect to Instructions 33 and 34.

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** The Plaintiff bears the burden of proof in his defamation claim against Defendant Frankspeech LLC. This means that, to prevail on his claim against Frankspeech LLC, he must prove each and every one of the following five separate elements:

Element 1: First, the plaintiff must prove by a preponderance of the evidence that the statements at issue were of and concerning the Plaintiff Eric Coomer.

Element 2: Second, the plaintiff must prove that the statements at issue were defamatory, meaning that the statements were statements of fact, not opinion, and had a tendency to injure the plaintiff's reputation. If the statement is a statement of an opinion, Plaintiff cannot meet this element.

Element 3: Third, the plaintiff must prove by clear and convincing evidence that the defamatory statements about him were materially false.

Element 4: Fourth, the plaintiff must prove what is called actual malice by clear and convincing evidence. That is another term of art. Actual malice is comprised of the following two things: (1) that the Defendant Frankspeech LLC published the statements with the intent to convey to third persons the defamatory meaning that the plaintiff

45

claims they conveyed *about him* personally; and (2) At the time of publication,

Frankspeech LLC *knew* that the statement(s) were false or published the statements

with reckless disregard as to whether they were false.

Element 5: Fifth, the Plaintiff must prove by a preponderance of the evidence

that he suffered damages as a direct result of Frankspeech LLC's publications at issue.

The plaintiff claims that defendant Frankspeech LLC published or caused to be

published the following statements:

1.    May 3, 2021 statement by Oltmann/Howse:

BH: "But yeah, I would love to hear about this conversation. When did it take place?
It was a conference call and Eric Coomer was on this call, correct?"

JO: "Yeah, so, how it came to be was I was looking for Antifa journalists. I was
trying to stop them basically from writing bad things about what we were trying to
do to open up Colorado. I started an organization that's gone national called FEC
United. That stands for faith, education, and commerce, the three pillars of our
society. The three pillars of our community. And so I was on that call back in middle
to end of September. And on that call it was a weird call to be on because it became
clear, there's a lot of rhetoric that gets thrown around all over the place. And as I
came in and people started speaking, um, someone interrupts a guy named Eric
and somebody asked this guy named Eric, who is this guy named Eric? And
somebody answers 'Eric is the Dominion guy.' So, I take very very good notes. So
I started taking notes, writing down all the information that I was gathering.
Somebody interrupts after they said 'go ahead, Eric.' And somebody interrupts and
says 'What are we gonna do if f-ing Trump wins?' And Eric responds, 'Don't worry
about the election, Trump's not going to win. I made f-ing sure of it.' And then they
all started laughing, right."

2.    August 12, 2021 statement by Oltmann and Clements:

Clements: "Ok, so let's connect another dot really quick. You need to keep in mind
that one of the major players is Eric Coomer. Eric Coomer was or is a vice
president of Dominion systems. And what particular title does he have as vice
president?"

Oltmann: "He was the Director of Security and Strategy for Dominion Voting Systems. He holds the adjudication patent that was assigned to, I think HSBC, as a guarantor on it."

Clements: "Well follow me here, there's a few other questions. You mentioned that your presiding judge was marching in Antifa rallies last summer."

Oltmann: "Yes."

Clements: "Were you not the person who disclosed screenshots of social media posts that also shows that Eric Coomer has deep ties with Antifa?"

Oltmann: "100%."

Clements: "Ok, and were you not also on a phone call with Eric Coomer, or some recording where he made a particularly controversial statement about our then president?"

Oltmann: "Yeah, so, uh, yes."

Clements: "And what was that statement?"

Oltmann: "He said that, uh,-" Waldron: "He's in full on lawyer mode."

Oltmann: "Yeah he is in lawyer mode, I'm like yes sir! 'Don't worry about the election. Trump's not going to win. I made f-ing sure of it.' I'm a Christian so I'm not going to use that word up here."

Clements: "So this is first-hand knowledge. This isn't something. He's telling you, in a court of law, Eric Coomer can confront his accusers. He's been accused of something pretty salacious. But when you look at the screenshots, what are some things that show us, and perhaps you'll show us later today, that has been posted by Eric Coomer? Because we've got this antifa judge with a person that's affiliated with antifa that has made a promise about the election outcome."

3.    August 12, 2021 statement by Clements:

"Alright, so you've got a couple of hitmen that were pulling the triggers. The first gentleman, if you know, is John Poulos, who is the CEO of Dominion. When he gave those remarks, it was before the legislature, under oath. John Poulos committed perjury, time and time again. The other gentleman at the end was a person we've heard about because of Joe Oltmann. Eric Coomer, who holds the patent for the feature known as adjudication, which is one of the tools in their tool chest to murder the American people's vote. And this is one of the statements he

47

made along with, when Joe Oltmann talked about being on the call, this is what he heard. And you heard from Joe Oltmann. You can assess whether you think he's telling the truth. 'I made f-ing sure that Trump's not going to win.' That's the vice president of a company that's running elections in 28 states. You've got your election cartel, you've got your vote trafficking organizations, and you have the man that pulled the trigger."

4.    September 7, 2022 statement by Peters:

Howse: "So Tina, you were mentioning the man that you were subpoenaed by. He worked at one time for Dominion, is that correct?"

Peters: "That's right. He was the one who was in charge of the patents for the algorithm that is inside the Dominion voting machine and actually bragged on an Antifa call that he was a member of that he would make sure that Trump wouldn't get in. That he made f-ing sure of it. And that's what got Joe Oltmann. Joe Oltmann was on that call and that's what got him involved in the fight a few years ago. Well, Eric Coomer is now subpoenaing me against our beloved patriot Mike Lindell and this is going to happen November 7 right here in Grand Junction where they're going to subpoena me and interrogate me to try to gin up some kind of information about our patriot Mike Lindell. Not gonna happen. It's like, throw another one on the pile like Mike says. But nevertheless, their assault keeps coming."

The burden is on the Plaintiff Eric Coomer to prove each and every one of these five elements and their subparts as to the statements above that he claims are defamatory. If you find that plaintiff proved each of these elements by the applicable standard of proof, then – but only then – you may find in his favor. If plaintiff fails to prove any element of his claim, then it is your duty to find in favor of the defendant Frankspeech LLC.[38]

---

[38] RESTATEMENT (SECOND) OF TORTS § 613 (1977); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986); *see also* CJI Introductory note and CJI 22:1.

**INSTRUCTION 32**

**DEFAMATION ELEMENTS – MICHAEL LINDELL INDIVIDUALLY**

**PLAINTIFF'S OBJECTION TO DEFENDANTS' PROPOSED JURY INSTRUCTION:** Plaintiff objects to this instruction being given. Please see Plaintiff's proposal with respect to Instructions 33 and 34.

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** The Plaintiff bears the burden of proof in his defamation claim against Defendant Michael Lindell. This means that, to prevail on his claim against Michael Lindell individually, he must prove each and every one of the following five separate elements:

Element 1: First, the plaintiff must prove by a preponderance of the evidence that the statements at issue were of and concerning the Plaintiff Eric Coomer.

Element 2: Second, the plaintiff must prove that the statements at issue were defamatory, meaning that the statements were statements of fact, not opinion, and had a tendency to injure the plaintiff's reputation. If the statement is a statement of an opinion, Plaintiff cannot meet this element.

Element 3: Third, the plaintiff must prove by clear and convincing evidence that the defamatory statements about him were materially false.

Element 4: Fourth, the plaintiff must prove what is called actual malice by clear and convincing evidence. That is another term of art. Actual malice is comprised of the following two things: (1) that the Defendant Michael Lindell individually made the statements with the intent to convey to third persons the defamatory meaning that the plaintiff claims they conveyed *about him* personally; and (2) At the time of publication,

49

Michael Lindell individually *knew* that the statement(s) were false or the made the statements with reckless disregard as to whether they were false.

Element 5: Fifth, the Plaintiff must prove by a preponderance of the evidence that he suffered damages as a direct result of Mr. Lindell's individual statements at issue.

The plaintiff claims that defendants Michael J. Lindell published or caused to be published the following statements:

1.   May 9, 2021 statement by Lindell:

"It's over for Dominion, it's too late to close the gate. The cows are out of the barn. Dominion, you did your best, and Smartmatic, to take our country through China. You did your best, you corrupt people, you. You tried to suppress our voice. You did it, but you failed. And I'm telling you, you Coomers of the world. What's his name? Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody. But we're going to let you the people, that's what Frank's all about, we're going to dump it. We're not taking any chance that those nine justices, 'Nope, we don't want to look at it, because they told us in early November there was not enough to overturn the election. And we don't want to get involved you know, because somebody might get upset.' Well you know what? This wasn't around in November December. This came on January 9."

2.   April 4, 2022 statement by Lindell:

"It started with Eric Coomer and Dominion based right here in Colorado. By the way, he just sued me as I walked up on the stage. Just sued me, I just got papers. Thanks, Eric! Now Eric will be the first one behind bars when we melt down the machines."

3.   April 6, 2022 statement by Lindell:

"So everybody, if you want to know just how corrupt, the corruption we're up against. Eric Coomer served, had served papers to me before I was going onstage at the Capitol. I've never talked about Eric Coomer. He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. I guess he's the guy that ran into a building the other day and took off and ran or whatever. Who knows what he did there, but anyway, he served papers, everybody. He has sued, everybody ready for this? Mike Lindell, Frank Speech, and My Pillow. Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Rafsenberger [sic] and Jena Griswold behind bars. You're #1 on my list. You go after my employees, go after my company again, you're disgusting. You belong behind bars. I hear you ran into a building drunk the other day or whatever you were. You know, whatever you did, "allegedly" [using sarcastic tone] I'll say that so the lawyers don't, so I don't "allegedly" accuse you of something you haven't done, but I will accuse you of this. You've been a part of the biggest crime this world has ever seen. Eric Coomer, president of Dominion, you have even said what you did or what you were going to do. You're disgusting. You're disgusting, you're evil, you belong behind bars, and we will not stop until you are behind bars. We're going to melt down your little machines and you're going to hang on to your little prison bars. "Let me out, let me out!" Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity. It's disgusting what you've done. You and Dominion. And Jena Griswold."

4.  April 7, 2022 statements by Lindell:

Lindell: "I got served by Eric Coomer two days ago, right when I was going to speak at the Capitol in Colorado. And I got served papers, another lawsuit, Eric Coomer, you know, he was the head of Dominion. So, instead of saying hey, we don't have anything to hide, well it's too late now. We already have what they were hiding. All it is another attack."

Bannon: "But why would Coomer's lawyers say, 'Hey, we've heard what Mike Lindell has to say in the last ten days, and we're going to go sue him again?' Why would they, logically, if they think you have the receipts, why would they do that?"

Lindell: "Because the lawyers are criminals too. We're gonna go after them now. I'm going after them. It's like a criminal crime family, Steve. It's a big criminal crime family. These machine companies, we now, I'll just bring this up so this can scare them a little bit, we have reason to believe now after we've talked to five different whistle blowers from five different states that all, all of our overseas military votes

were for Biden. The ones that were emailed in, which was ninety some per cent of all emailed in. They're using a national email system, Steve. It's disgusting."

5.    May 23, 2022 statement by Lindell:

"Eric Coomer. Look at the timing of that. So here we are in Colorado, on the steps of the Capitol, and Eric Coomer, I'm not even sure on that. What is his basis? You want to talk about frivolous lawsuits, people, that's unbelievable. Eric Coomer, who are you other than some corrupt person who was with Dominion, one of the most corrupt people. He's one of them that'll definitely be with all the others when we melt down the machines being right behind the bars going 'Let me out! Let me out! I'm sorry!"

6.    March 10, 2023 statement by Lindell:

Lindell: "I stand by my words! I called him a criminal! I called his lawyers a criminal! And you know what? I stand by that, because what they did to MyPillow is criminal. What they did to me is criminal. What they did to FrankSpeech. It is criminal! And that judge that didn't rule, it could set a precedent."

The burden is on the Plaintiff Eric Coomer to prove each and every one of these five elements and their subparts against Michael Lindell individually as to the statements above that he claims were defamatory.  If you find that plaintiff proved each of these elements by the applicable standard of proof, then – but only then – you may find in his favor.  If Plaintiff fails to prove any element of his claim, then it is your duty to find in favor of the defendant Michael Lindell.[39]

---

[39] RESTATEMENT (SECOND) OF TORTS § 613 (1977); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986); *see also* CJI Introductory note and CJI 22:1.

**INSTRUCTION 33**

**DEFAMATION PER SE**

**PLAINTIFF'S PROPOSED INSTRUCTION:**[40] Plaintiff Eric Coomer, Ph.D. claims

that Defendants Michael J. Lindell, Frankspeech LLC, or My Pillow, Inc., published or

caused to be published the following statements:

1.    May 3, 2021 statement by Oltmann/Howse:

BH: "But yeah, I would love to hear about this conversation. When did it take place?
It was a conference call and Eric Coomer was on this call, correct?"

JO: "Yeah, so, how it came to be was I was looking for Antifa journalists. I was
trying to stop them basically from writing bad things about what we were trying to
do to open up Colorado. I started an organization that's gone national called FEC
United. That stands for faith, education, and commerce, the three pillars of our
society. The three pillars of our community. And so I was on that call back in middle
to end of September. And on that call it was a weird call to be on because it became
clear, there's a lot of rhetoric that gets thrown around all over the place. And as I
came in and people started speaking, um, someone interrupts a guy named Eric
and somebody asked this guy named Eric, who is this guy named Eric? And
somebody answers 'Eric is the Dominion guy.' So, I take very very good notes. So
I started taking notes, writing down all the information that I was gathering.
Somebody interrupts after they said 'go ahead, Eric.' And somebody interrupts and
says 'What are we gonna do if f-ing Trump wins?' And Eric responds, 'Don't worry
about the election, Trump's not going to win. I made f-ing sure of it.' And then they
all started laughing, right."

2.    May 9, 2021 statement by Lindell:

"It's over for Dominion, it's too late to close the gate. The cows are out of the barn.
Dominion, you did your best, and Smartmatic, to take our country through China.
You did your best, you corrupt people, you. You tried to suppress our voice. You
did it, but you failed. And I'm telling you, you Coomers of the world. What's his
name? Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and

---

[40] CJI-Civ. 22:1 (2024); *see also Gordon v. Boyles*, 99 P.3d 75 (Colo. App. 2004)
(traditional categories of defamation per se include "imputation of (1) a criminal offense;
(2) a loathsome disease; (3) a matter incompatible with the individual's business, trade,
profession, or office; and (4) serious sexual misconduct" (*citing* RESTATEMENT (SECOND)
OF TORTS 570 (1977)).

making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody. But we're going to let you the people, that's what Frank's all about, we're going to dump it. We're not taking any chance that those nine justices, 'Nope, we don't want to look at it, because they told us in early November there was not enough to overturn the election. And we don't want to get involved you know, because somebody might get upset.' Well you know what? This wasn't around in November December. This came on January 9."

3.      August 12, 2021 statement by Oltmann and Clements:

Clements: "Ok, so let's connect another dot really quick. You need to keep in mind that one of the major players is Eric Coomer. Eric Coomer was or is a vice president of Dominion systems. And what particular title does he have as vice president?"

Oltmann: "He was the Director of Security and Strategy for Dominion Voting Systems. He holds the adjudication patent that was assigned to, I think HSBC, as a guarantor on it."

Clements: "Well follow me here, there's a few other questions. You mentioned that your presiding judge was marching in Antifa rallies last summer."

Oltmann: "Yes."

Clements: "Were you not the person who disclosed screenshots of social media posts that also shows that Eric Coomer has deep ties with Antifa?"

Oltmann: "100%."

Clements: "Ok, and were you not also on a phone call with Eric Coomer, or some recording where he made a particularly controversial statement about our then president?"

Oltmann: "Yeah, so, uh, yes."

Clements: "And what was that statement?"

54

Oltmann: "He said that, uh,-" Waldron: "He's in full on lawyer mode."

Oltmann: "Yeah he is in lawyer mode, I'm like yes sir! 'Don't worry about the election. Trump's not going to win. I made f-ing sure of it.' I'm a Christian so I'm not going to use that word up here."

Clements: "So this is first hand knowledge. This isn't something. He's telling you, in a court of law, Eric Coomer can confront his accusers. He's been accused of something pretty salacious. But when you look at the screenshots, what are some things that show us, and perhaps you'll show us later today, that has been posted by Eric Coomer? Because we've got this antifa judge with a person that's affiliated with antifa that has made a promise about the election outcome."

4.    August 12, 2021 statement by Clements:

"Alright, so you've got a couple of hitmen that were pulling the triggers. The first gentleman, if you know, is John Poulos, who is the CEO of Dominion. When he gave those remarks, it was before the legislature, under oath. John Poulos committed perjury, time and time again. The other gentleman at the end was a person we've heard about because of Joe Oltmann. Eric Coomer, who holds the patent for the feature known as adjudication, which is one of the tools in their tool chest to murder the American people's vote. And this is one of the statements he made along with, when Joe Oltmann talked about being on the call, this is what he heard. And you heard from Joe Oltmann. You can assess whether you think he's telling the truth. 'I made f-ing sure that Trump's not going to win.' That's the vice president of a company that's running elections in 28 states. You've got your election cartel, you've got your vote trafficking organizations, and you have the man that pulled the trigger."

5.    April 4, 2022 statement by Lindell:

"It started with Eric Coomer and Dominion based right here in Colorado. By the way, he just sued me as I walked up on the stage. Just sued me, I just got papers. Thanks, Eric! Now Eric will be the first one behind bars when we melt down the machines."

6.    April 6, 2022 statement by Lindell:

"So everybody, if you want to know just how corrupt, the corruption we're up against. Eric Coomer served, had served papers to me before I was going onstage at the Capitol. I've never talked about Eric Coomer. He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. I guess he's the guy that ran into a building the other day and took off and ran or whatever. Who knows what he did there, but anyway, he served papers, everybody. He has sued,

everybody ready for this? Mike Lindell, Frank Speech, and My Pillow. Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Rafsenberger [sic] and Jena Griswold behind bars. You're #1 on my list. You go after my employees, go after my company again, you're disgusting. You belong behind bars. I hear you ran into a building drunk the other day or whatever you were. You know, whatever you did, "allegedly" [using sarcastic tone] I'll say that so the lawyers don't, so I don't "allegedly" accuse you of something you haven't done, but I will accuse you of this. You've been a part of the biggest crime this world has ever seen. Eric Coomer, president of Dominion, you have even said what you did or what you were going to do. You're disgusting. You're evil, you belong behind bars, and we will not stop until you are behind bars. We're going to melt down your little machines and you're going to hang on to your little prison bars. "Let me out, let me out!" Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity. It's disgusting what you've done. You and Dominion. And Jena Griswold."

7.    April 7, 2022 statements by Lindell:

Lindell: "I got served by Eric Coomer two days ago, right when I was going to speak at the Capitol in Colorado. And I got served papers, another lawsuit, Eric Coomer, you know, he was the head of Dominion. So, instead of saying hey, we don't have anything to hide, well it's too late now. We already have what they were hiding. All it is another attack."

Bannon: "But why would Coomer's lawyers say, 'Hey, we've heard what Mike Lindell has to say in the last ten days, and we're going to go sue him again?' Why would they, logically, if they think you have the receipts, why would they do that?"

Lindell: "Because the lawyers are criminals too. We're gonna go after them now. I'm going after them. It's like a criminal crime family, Steve. It's a big criminal crime family. These machine companies, we now, I'll just bring this up so this can scare them a little bit, we have reason to believe now after we've talked to five different whistle blowers from five different states that all, all of our overseas military votes were for Biden. The ones that were emailed in, which was ninety some per cent of all emailed in. They're using a national email system, Steve. It's disgusting."

8.    May 23, 2022 statement by Lindell:

"Eric Coomer. Look at the timing of that. So here we are in Colorado, on the steps of the Capitol, and Eric Coomer, I'm not even sure on that. What is his basis? You want to talk about frivolous lawsuits, people, that's unbelievable. Eric Coomer, who

are you other than some corrupt person who was with Dominion, one of the most corrupt people. He's one of them that'll definitely be with all the others when we melt down the machines being right behind the bars going 'Let me out! Let me out! I'm sorry!"

9.    September 7, 2022 statement by Peters:

Howse: "So Tina, you were mentioning the man that you were subpoenaed by. He worked at one time for Dominion, is that correct?"

Peters: "That's right. He was the one who was in charge of the patents for the algorithm that is inside the Dominion voting machine and actually bragged on an Antifa call that he was a member of that he would make sure that Trump wouldn't get in. That he made f-ing sure of it. And that's what got Joe Oltmann. Joe Oltmann was on that call and that's what got him involved in the fight a few years ago. Well, Eric Coomer is now subpoenaing me against our beloved patriot Mike Lindell and this is going to happen November 7 right here in Grand Junction where they're going to subpoena me and interrogate me to try to gin up some kind of information about our patriot Mike Lindell. Not gonna happen. It's like, throw another one on the pile like Mike says. But nevertheless, their assault keeps coming."

10.    March 10, 2023 statement by Lindell:

Lindell: "I stand by my words! I called him a criminal! I called his lawyers a criminal! And you know what? I stand by that, because what they did to MyPillow is criminal. What they did to me is criminal. What they did to FrankSpeech. It is criminal! And that judge that didn't rule, it could set a precedent."

For the Plaintiff to recover from the Defendants on his claim of defamation, you must find

that the following elements have been proved by a preponderance of the evidence:

1.    The Defendant published or caused to be published the above statement(s) in the

    same or substantially similar words; and

2.    The statement(s) caused the plaintiff actual damage.

You must further find that the following elements have been proved by clear and

convincing evidence:

3.      The substance or gist of the statement(s) was/were false at the time they were
        published; and

4.      At the time of publication, the Defendant knew that the statement(s) was/were false
        or the defendant made the statements with reckless disregard as to whether they
        were false.

If you find that the first or second element has not been proved by a preponderance of
the evidence or that the third or fourth element has not been proved by clear and
convincing evidence, then your verdict must be for the Defendant.

On the other hand, if you find that the first and second elements have been proved by a
preponderance of the evidence and that the third and fourth elements have been proved
by clear and convincing evidence, then your verdict must be for the Plaintiff.

        **DEFENDANTS' PROPOSED JURY INSTRUCTION**[41]: For the plaintiff to recover
from the defendants on his claim of defamation, you must find that the following elements
have been proved by a preponderance of the evidence:

1.      The defendant published or caused to be published the below statement(s) in the
        same or substantially similar words; and

2.      The statement(s) caused the plaintiff actual damage.

_____

[41] The Defendants' wholly object to this instruction as written. It unnecessarily confuses
the jury and conflates statements against all defendants that have not been alleged
against all Defendants. This is prejudicial and confusing as written. While Defendants
have proffered some redlined edits, the instructions provided in Nos. 31 and 32 are more
appropriate for the pleadings here.

You must further find that the following elements have been proved by clear and convincing evidence:

3.   The substance or gist of the statement(s) were false at the time they were published and the false statements were such that the publication(s) as a whole were false[42]; and

4.   At the time of publication, the defendants knew that the statement(s) were false or the defendant made the statements with reckless disregard as to whether they were false.

If you find that the first or second element has not been proved by a preponderance of the evidence or that the third or fourth element has not been proved by clear and convincing evidence, then your verdict must be for the defendants.

On the other hand, if you find that the first and second elements have been proved by a preponderance of the evidence and that the third and fourth elements have been proved by clear and convincing evidence, then you must consider the defendants' affirmative defenses of First Amendment, failure to mitigate damages, and substantial truth.

If you find that any one or more of these affirmative defenses have been proved by a preponderance of the evidence, then your verdict must be for the defendants.

However, if you find that none of these affirmative defenses have been proved, then your verdict must be for the plaintiff.

---

[42] CJI 22:1, Note 8.

Here, the plaintiff, Eric Coomer, claims that Defendants Michael J. Lindell, Frankspeech LLC, or My Pillow, Inc., published or caused to be published the following statements, which are at issue in this case:

> **Deleted:** Ph.D.,

1.    May 3, 2021 statement by Oltmann/Howse:

BH: "But yeah, I would love to hear about this conversation. When did it take place? It was a conference call and Eric Coomer was on this call, correct?"

JO: "Yeah, so, how it came to be was I was looking for Antifa journalists. I was trying to stop them basically from writing bad things about what we were trying to do to open up Colorado. I started an organization that's gone national called FEC United. That stands for faith, education, and commerce, the three pillars of our society. The three pillars of our community. And so I was on that call back in middle to end of September. And on that call it was a weird call to be on because it became clear, there's a lot of rhetoric that gets thrown around all over the place. And as I came in and people started speaking, um, someone interrupts a guy named Eric and somebody asked this guy named Eric, who is this guy named Eric? And somebody answers 'Eric is the Dominion guy.' So, I take very very good notes. So I started taking notes, writing down all the information that I was gathering. Somebody interrupts after they said 'go ahead, Eric.' And somebody interrupts and says 'What are we gonna do if f-ing Trump wins?' And Eric responds, 'Don't worry about the election, Trump's not going to win. I made f-ing sure of it.' And then they all started laughing, right."

2.    May 9, 2021 statement by Lindell:

"It's over for Dominion, it's too late to close the gate. The cows are out of the barn. Dominion, you did your best, and Smartmatic, to take our country through China. You did your best, you corrupt people, you. You tried to suppress our voice. You did it, but you failed. And I'm telling you, you Coomers of the world. What's his name? Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody. But we're going to let you the people, that's what Frank's all about, we're going to dump it. We're not taking any chance that those nine justices, 'Nope, we don't want to look at it, because they

told us in early November there was not enough to overturn the election. And we don't want to get involved you know, because somebody might get upset.' Well you know what? This wasn't around in November December. This came on January 9."

3.    August 12, 2021 statement by Oltmann and Clements:

Clements: "Ok, so let's connect another dot really quick. You need to keep in mind that one of the major players is Eric Coomer. Eric Coomer was or is a vice president of Dominion systems. And what particular title does he have as vice president?"

Oltmann: "He was the Director of Security and Strategy for Dominion Voting Systems. He holds the adjudication patent that was assigned to, I think HSBC, as a guarantor on it."

Clements: "Well follow me here, there's a few other questions. You mentioned that your presiding judge was marching in Antifa rallies last summer."

Oltmann: "Yes."

Clements: "Were you not the person who disclosed screenshots of social media posts that also shows that Eric Coomer has deep ties with Antifa?"

Oltmann: "100%."

Clements: "Ok, and were you not also on a phone call with Eric Coomer, or some recording where he made a particularly controversial statement about our then president?"

Oltmann: "Yeah, so, uh, yes."

Clements: "And what was that statement?"

Oltmann: "He said that, uh,-" Waldron: "He's in full on lawyer mode."

Oltmann: "Yeah he is in lawyer mode, I'm like yes sir! 'Don't worry about the election. Trump's not going to win. I made f-ing sure of it.' I'm a Christian so I'm not going to use that word up here."

Clements: "So this is first hand knowledge. This isn't something. He's telling you, in a court of law, Eric Coomer can confront his accusers. He's been accused of something pretty salacious. But when you look at the screenshots, what are some things that show us, and perhaps you'll show us later today, that has been posted

61

by Eric Coomer? Because we've got this antifa judge with a person that's affiliated with antifa that has made a promise about the election outcome."

4.      August 12, 2021 statement by Clements:

"Alright, so you've got a couple of hitmen that were pulling the triggers. The first gentleman, if you know, is John Poulos, who is the CEO of Dominion. When he gave those remarks, it was before the legislature, under oath. John Poulos committed perjury, time and time again. The other gentleman at the end was a person we've heard about because of Joe Oltmann. Eric Coomer, who holds the patent for the feature known as adjudication, which is one of the tools in their tool chest to murder the American people's vote. And this is one of the statements he made along with, when Joe Oltmann talked about being on the call, this is what he heard. And you heard from Joe Oltmann. You can assess whether you think he's telling the truth. 'I made f-ing sure that Trump's not going to win.' That's the vice president of a company that's running elections in 28 states. You've got your election cartel, you've got your vote trafficking organizations, and you have the man that pulled the trigger."

5.      April 4, 2022 statement by Lindell:

"It started with Eric Coomer and Dominion based right here in Colorado. By the way, he just sued me as I walked up on the stage. Just sued me, I just got papers. Thanks, Eric! Now Eric will be the first one behind bars when we melt down the machines."

6.      April 6, 2022 statement by Lindell:

"So everybody, if you want to know just how corrupt, the corruption we're up against. Eric Coomer served, had served papers to me before I was going onstage at the Capitol. I've never talked about Eric Coomer. He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. I guess he's the guy that ran into a building the other day and took off and ran or whatever. Who knows what he did there, but anyway, he served papers, everybody. He has sued, everybody ready for this? Mike Lindell, Frank Speech, and My Pillow. Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Rafsenberger [sic] and Jena Griswold behind bars. You're #1 on my list. You go after my employees, go after my company again, you're disgusting. You belong behind bars. I hear you ran into a building drunk the other day or whatever you were. You know, whatever you did, "allegedly" [using sarcastic tone] I'll say that so the lawyers don't, so I don't "allegedly" accuse you of something you haven't done, but I will accuse you of this.

You've been a part of the biggest crime this world has ever seen. Eric Coomer, president of Dominion, you have even said what you did or what you were going to do. You're disgusting. You're disgusting, you're evil, you belong behind bars, and we will not stop until you are behind bars. We're going to melt down your little machines and you're going to hang on to your little prison bars. "Let me out, let me out!" Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity. It's disgusting what you've done. You and Dominion. And Jena Griswold."

7.    April 7, 2022 statements by Lindell:

Lindell: "I got served by Eric Coomer two days ago, right when I was going to speak at the Capitol in Colorado. And I got served papers, another lawsuit, Eric Coomer, you know, he was the head of Dominion. So, instead of saying hey, we don't have anything to hide, well it's too late now. We already have what they were hiding. All it is another attack."

Bannon: "But why would Coomer's lawyers say, 'Hey, we've heard what Mike Lindell has to say in the last ten days, and we're going to go sue him again?' Why would they, logically, if they think you have the receipts, why would they do that?"

Lindell: "Because the lawyers are criminals too. We're gonna go after them now. I'm going after them. It's like a criminal crime family, Steve. It's a big criminal crime family. These machine companies, we now, I'll just bring this up so this can scare them a little bit, we have reason to believe now after we've talked to five different whistle blowers from five different states that all, all of our overseas military votes were for Biden. The ones that were emailed in, which was ninety some per cent of all emailed in. They're using a national email system, Steve. It's disgusting."

8.    May 23, 2022 statement by Lindell:

"Eric Coomer. Look at the timing of that. So here we are in Colorado, on the steps of the Capitol, and Eric Coomer, I'm not even sure on that. What is his basis? You want to talk about frivolous lawsuits, people, that's unbelievable. Eric Coomer, who are you other than some corrupt person who was with Dominion, one of the most corrupt people. He's one of them that'll definitely be with all the others when we melt down the machines being right behind the bars going 'Let me out! Let me out! I'm sorry!"

9.    September 7, 2022 statement by Peters:

Howse: "So Tina, you were mentioning the man that you were subpoenaed by. He worked at one time for Dominion, is that correct?"

Peters: "That's right. He was the one who was in charge of the patents for the algorithm that is inside the Dominion voting machine and actually bragged on an Antifa call that he was a member of that he would make sure that Trump wouldn't get in. That he made f-ing sure of it. And that's what got Joe Oltmann. Joe Oltmann was on that call and that's what got him involved in the fight a few years ago. Well, Eric Coomer is now subpoenaing me against our beloved patriot Mike Lindell and this is going to happen November 7 right here in Grand Junction where they're going to subpoena me and interrogate me to try to gin up some kind of information about our patriot Mike Lindell. Not gonna happen. It's like, throw another one on the pile like Mike says. But nevertheless, their assault keeps coming."

10.     March 10, 2023 statement by Lindell:

Lindell: "I stand by my words! I called him a criminal! I called his lawyers a criminal! And you know what? I stand by that, because what they did to MyPillow is criminal. What they did to me is criminal. What they did to FrankSpeech. It is criminal! And that judge that didn't rule, it could set a precedent."

For the plaintiff to recover from the defendants on his claim of defamation, you must find that the following elements have been proved by a preponderance of the evidence:

1.     The defendant published or caused to be published the above statement(s) in the same or substantially similar words; and

2.     The statement(s) caused the plaintiff actual damage.

You must further find that the following elements have been proved by clear and convincing evidence:

3.     The substance or gist of the statement(s) were false at the time they were published and the false statements were such that the publication(s) as a whole were false[43]; and

_____

[43] CJI 22:1, Note 8.

64

4.    At the time of publication, the defendants knew that the statement(s) were false or the defendants made the statements with reckless disregard as to whether they were false.

**INSTRUCTION 34**

**DEFAMATION PER QUOD**[44]

**PLAINTIFF'S PROPOSED INSTRUCTION:** The plaintiff, Eric Coomer, Ph.D.,

claims that the Defendants Michael J. Lindell, Frankspeech LLC, or My Pillow, Inc.,

published or caused to be published the following statements:

1.    May 3, 2021 statement by Oltmann/Howse:

    BH: "But yeah, I would love to hear about this conversation. When did it take place?
    It was a conference call and Eric Coomer was on this call, correct?"

    JO: "Yeah, so, how it came to be was I was looking for Antifa journalists. I was
    trying to stop them basically from writing bad things about what we were trying to
    do to open up Colorado. I started an organization that's gone national called FEC
    United. That stands for faith, education, and commerce, the three pillars of our
    society. The three pillars of our community. And so I was on that call back in middle
    to end of September. And on that call it was a weird call to be on because it became
    clear, there's a lot of rhetoric that gets thrown around all over the place. And as I
    came in and people started speaking, um, someone interrupts a guy named Eric
    and somebody asked this guy named Eric, who is this guy named Eric? And
    somebody answers 'Eric is the Dominion guy.' So, I take very very good notes. So
    I started taking notes, writing down all the information that I was gathering.
    Somebody interrupts after they said 'go ahead, Eric.' And somebody interrupts and
    says 'What are we gonna do if f-ing Trump wins?' And Eric responds, 'Don't worry
    about the election, Trump's not going to win. I made f-ing sure of it.' And then they
    all started laughing, right."

2.    May 9, 2021 statement by Lindell:

    "It's over for Dominion, it's too late to close the gate. The cows are out of the barn.
    Dominion, you did your best, and Smartmatic, to take our country through China.
    You did your best, you corrupt people, you. You tried to suppress our voice. You
    did it, but you failed. And I'm telling you, you Coomers of the world. What's his
    name? Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and
    making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole
    operation so maybe, just maybe, that you get immunity and you only get to do, I

---

[44] CJI-Civ. 22:5 (2024); *see also Keohane v. Stewart*, 882 P.2d 1293, 1297 ("A statement
is libel per quod if it requires innuendo or extrinsic evidence to establish its defamatory
nature") (*citing Berstein v. Dun & Broadstreet, Inc.*, 368 P.2d 780 (Colo. 1962)).

don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous.
You are a traitor to the United States of America. And you know what? I can say
that, just like I can about Brian Kemp and Brad Raffensberger. These are things
that I have evidence of. The evidence is there. You know, it's sitting there. Well
Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?'
Oh, it's getting to the Supreme Court, everybody. But we're going to let you the
people, that's what Frank's all about, we're going to dump it. We're not taking any
chance that those nine justices, 'Nope, we don't want to look at it, because they
told us in early November there was not enough to overturn the election. And we
don't want to get involved you know, because somebody might get upset.' Well
you know what? This wasn't around in November December. This came on
January 9."

3.      August 12, 2021 statement by Oltmann and Clements:

Clements: "Ok, so let's connect another dot really quick. You need to keep in mind
that one of the major players is Eric Coomer. Eric Coomer was or is a vice
president of Dominion systems. And what particular title does he have as vice
president?"

Oltmann: "He was the Director of Security and Strategy for Dominion Voting
Systems. He holds the adjudication patent that was assigned to, I think HSBC, as
a guarantor on it."

Clements: "Well follow me here, there's a few other questions. You mentioned that
your presiding judge was marching in Antifa rallies last summer."

Oltmann: "Yes."

Clements: "Were you not the person who disclosed screenshots of social media
posts that also shows that Eric Coomer has deep ties with Antifa?"

Oltmann: "100%."

Clements: "Ok, and were you not also on a phone call with Eric Coomer, or some
recording where he made a particularly controversial statement about our then
president?"

Oltmann: "Yeah, so, uh, yes."

Clements: "And what was that statement?"

Oltmann: "He said that, uh,-" Waldron: "He's in full on lawyer mode."

Oltmann: "Yeah he is in lawyer mode, I'm like yes sir! 'Don't worry about the election. Trump's not going to win. I made f-ing sure of it.' I'm a Christian so I'm not going to use that word up here."

Clements: "So this is first hand knowledge. This isn't something. He's telling you, in a court of law, Eric Coomer can confront his accusers. He's been accused of something pretty salacious. But when you look at the screenshots, what are some things that show us, and perhaps you'll show us later today, that has been posted by Eric Coomer? Because we've got this antifa judge with a person that's affiliated with antifa that has made a promise about the election outcome."

4.    August 12, 2021 statement by Clements:

"Alright, so you've got a couple of hitmen that were pulling the triggers. The first gentleman, if you know, is John Poulos, who is the CEO of Dominion. When he gave those remarks, it was before the legislature, under oath. John Poulos committed perjury, time and time again. The other gentleman at the end was a person we've heard about because of Joe Oltmann. Eric Coomer, who holds the patent for the feature known as adjudication, which is one of the tools in their tool chest to murder the American people's vote. And this is one of the statements he made along with, when Joe Oltmann talked about being on the call, this is what he heard. And you heard from Joe Oltmann. You can assess whether you think he's telling the truth. 'I made f-ing sure that Trump's not going to win.' That's the vice president of a company that's running elections in 28 states. You've got your election cartel, you've got your vote trafficking organizations, and you have the man that pulled the trigger."

5.    April 4, 2022 statement by Lindell:

"It started with Eric Coomer and Dominion based right here in Colorado. By the way, he just sued me as I walked up on the stage. Just sued me, I just got papers. Thanks, Eric! Now Eric will be the first one behind bars when we melt down the machines."

6.    April 6, 2022 statement by Lindell:

"So everybody, if you want to know just how corrupt, the corruption we're up against. Eric Coomer served, had served papers to me before I was going onstage at the Capitol. I've never talked about Eric Coomer. He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. I guess he's the guy that ran into a building the other day and took off and ran or whatever. Who knows what he did there, but anyway, he served papers, everybody. He has sued, everybody ready for this? Mike Lindell, Frank Speech, and My Pillow. Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up

68

with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Rafsenberger [sic] and Jena Griswold behind bars. You're #1 on my list. You go after my employees, go after my company again, you're disgusting. You belong behind bars. I hear you ran into a building drunk the other day or whatever you were. You know, whatever you did, "allegedly" [using sarcastic tone] I'll say that so the lawyers don't, so I don't "allegedly" accuse you of something you haven't done, but I will accuse you of this. You've been a part of the biggest crime this world has ever seen. Eric Coomer, president of Dominion, you have even said what you did or what you were going to do. You're disgusting. You're disgusting, you're evil, you belong behind bars, and we will not stop until you are behind bars. We're going to melt down your little machines and you're going to hang on to your little prison bars. "Let me out, let me out!" Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity. It's disgusting what you've done. You and Dominion. And Jena Griswold."

7.    April 7, 2022 statements by Lindell:

Lindell: "I got served by Eric Coomer two days ago, right when I was going to speak at the Capitol in Colorado. And I got served papers, another lawsuit, Eric Coomer, you know, he was the head of Dominion. So, instead of saying hey, we don't have anything to hide, well it's too late now. We already have what they were hiding. All it is another attack."

Bannon: "But why would Coomer's lawyers say, 'Hey, we've heard what Mike Lindell has to say in the last ten days, and we're going to go sue him again?' Why would they, logically, if they think you have the receipts, why would they do that?"

Lindell: "Because the lawyers are criminals too. We're gonna go after them now. I'm going after them. It's like a criminal crime family, Steve. It's a big criminal crime family. These machine companies, we now, I'll just bring this up so this can scare them a little bit, we have reason to believe now after we've talked to five different whistle blowers from five different states that all, all of our overseas military votes were for Biden. The ones that were emailed in, which was ninety some per cent of all emailed in. They're using a national email system, Steve. It's disgusting."

8.    May 23, 2022 statement by Lindell:

"Eric Coomer. Look at the timing of that. So here we are in Colorado, on the steps of the Capitol, and Eric Coomer, I'm not even sure on that. What is his basis? You want to talk about frivolous lawsuits, people, that's unbelievable. Eric Coomer, who are you other than some corrupt person who was with Dominion, one of the most corrupt people. He's one of them that'll definitely be with all the others when we

melt down the machines being right behind the bars going 'Let me out! Let me out!
I'm sorry!"

9.    September 7, 2022 statement by Peters:

Howse: "So Tina, you were mentioning the man that you were subpoenaed by. He
worked at one time for Dominion, is that correct?"

Peters: "That's right. He was the one who was in charge of the patents for the
algorithm that is inside the Dominion voting machine and actually bragged on an
Antifa call that he was a member of that he would make sure that Trump wouldn't
get in. That he made f-ing sure of it. And that's what got Joe Oltmann. Joe Oltmann
was on that call and that's what got him involved in the fight a few years ago. Well,
Eric Coomer is now subpoenaing me against our beloved patriot Mike Lindell and
this is going to happen November 7 right here in Grand Junction where they're
going to subpoena me and interrogate me to try to gin up some kind of information
about our patriot Mike Lindell. Not gonna happen. It's like, throw another one on
the pile like Mike says. But nevertheless, their assault keeps coming."

10.    March 10, 2023 statement by Lindell:

Lindell: "I stand by my words! I called him a criminal! I called his lawyers a criminal!
And you know what? I stand by that, because what they did to MyPillow is criminal.
What they did to me is criminal. What they did to FrankSpeech. It is criminal! And
that judge that didn't rule, it could set a precedent."

For the Plaintiff to recover from the Defendant on his claim of defamation, you must find

that the following elements have been proved by a preponderance of the evidence:

1.    The Defendant(s) published or caused to be published the statement(s) set forth

above in the same or substantially similar words; and

2.    One or more of the listeners, viewers, and/or recipients of the publication

understood the statement(s) to be defamatory; and

3.    The publication of the statement(s) caused special damages to the Plaintiff.

You must further find by clear and convincing evidence that:

4.    The statement was about the Plaintiff;

5.    The substance or gist of the statement was false at the time it was published; and

6.    At the time of publication, the Defendant knew that the statement was false or the Defendant made the statement with reckless disregard as to whether it was false or not.

If you find that any one or more of the first, second, or third elements has not been proved by a preponderance of the evidence or that any one or more of the fourth, fifth, or sixth elements has not been proved by clear and convincing evidence, then your verdict must be for the Defendant.

**DEFENDANTS' PROPOSED JURY INSTRUCTION[45]**: For the plaintiff to recover from the defendants on his claim of defamation, you must find that the following elements have been proved by a preponderance of the evidence:

1.    The defendants published or caused to be published the statement(s) set forth below in the same or substantially similar words;

2.    The statement(s) were defamatory;

3.    The statement(s) were about the plaintiff Eric Coomer; and

4.    The publication of the statement(s) caused special damages to the plaintiff.

---

[45] The Defendants' object to this instruction outright as this instruction is not proper unless the Court has ruled that the statements at issue are defamatory per quod. Further, this will confuse the jury with conflating statements and "various" defamation claims that have not yet been decided or adjudicated. Although Defendants provide some redlines, we believe the instructions at Nos. 31 and 32 are more appropriate in this matter.

71

The plaintiff, Eric Coomer, Ph.D., claims that the Defendants Michael J. Lindell, Frankspeech LLC, or My Pillow, Inc., published or caused to be published the following statements:

1.      May 3, 2021 statement by Oltmann/Howse:

BH: "But yeah, I would love to hear about this conversation. When did it take place? It was a conference call and Eric Coomer was on this call, correct?"

JO: "Yeah, so, how it came to be was I was looking for Antifa journalists. I was trying to stop them basically from writing bad things about what we were trying to do to open up Colorado. I started an organization that's gone national called FEC United. That stands for faith, education, and commerce, the three pillars of our society. The three pillars of our community. And so I was on that call back in middle to end of September. And on that call it was a weird call to be on because it became clear, there's a lot of rhetoric that gets thrown around all over the place. And as I came in and people started speaking, um, someone interrupts a guy named Eric and somebody asked this guy named Eric, who is this guy named Eric? And somebody answers 'Eric is the Dominion guy.' So, I take very very good notes. So I started taking notes, writing down all the information that I was gathering. Somebody interrupts after they said 'go ahead, Eric.' And somebody interrupts and says 'What are we gonna do if f-ing Trump wins?' And Eric responds, 'Don't worry about the election, Trump's not going to win. I made f-ing sure of it.' And then they all started laughing, right."

2.      May 9, 2021 statement by Lindell:

"It's over for Dominion, it's too late to close the gate. The cows are out of the barn. Dominion, you did your best, and Smartmatic, to take our country through China. You did your best, you corrupt people, you. You tried to suppress our voice. You did it, but you failed. And I'm telling you, you Coomers of the world. What's his name? Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody. But we're going to let you the people, that's what Frank's all about, we're going to dump it. We're not taking any chance that those nine justices, 'Nope, we don't want to look at it, because they

72

told us in early November there was not enough to overturn the election. And we don't want to get involved you know, because somebody might get upset.' Well you know what? This wasn't around in November December. This came on January 9."

3.      August 12, 2021 statement by Oltmann and Clements:

Clements: "Ok, so let's connect another dot really quick. You need to keep in mind that one of the major players is Eric Coomer. Eric Coomer was or is a vice president of Dominion systems. And what particular title does he have as vice president?"

Oltmann: "He was the Director of Security and Strategy for Dominion Voting Systems. He holds the adjudication patent that was assigned to, I think HSBC, as a guarantor on it."

Clements: "Well follow me here, there's a few other questions. You mentioned that your presiding judge was marching in Antifa rallies last summer."

Oltmann: "Yes."

Clements: "Were you not the person who disclosed screenshots of social media posts that also shows that Eric Coomer has deep ties with Antifa?"

Oltmann: "100%."

Clements: "Ok, and were you not also on a phone call with Eric Coomer, or some recording where he made a particularly controversial statement about our then president?"

Oltmann: "Yeah, so, uh, yes."

Clements: "And what was that statement?"

Oltmann: "He said that, uh,-" Waldron: "He's in full on lawyer mode."

Oltmann: "Yeah he is in lawyer mode, I'm like yes sir! 'Don't worry about the election. Trump's not going to win. I made f-ing sure of it.' I'm a Christian so I'm not going to use that word up here."

Clements: "So this is first hand knowledge. This isn't something. He's telling you, in a court of law, Eric Coomer can confront his accusers. He's been accused of something pretty salacious. But when you look at the screenshots, what are some things that show us, and perhaps you'll show us later today, that has been posted

73

by Eric Coomer? Because we've got this antifa judge with a person that's affiliated with antifa that has made a promise about the election outcome."

4.    August 12, 2021 statement by Clements:

"Alright, so you've got a couple of hitmen that were pulling the triggers. The first gentleman, if you know, is John Poulos, who is the CEO of Dominion. When he gave those remarks, it was before the legislature, under oath. John Poulos committed perjury, time and time again. The other gentleman at the end was a person we've heard about because of Joe Oltmann. Eric Coomer, who holds the patent for the feature known as adjudication, which is one of the tools in their tool chest to murder the American people's vote. And this is one of the statements he made along with, when Joe Oltmann talked about being on the call, this is what he heard. And you heard from Joe Oltmann. You can assess whether you think he's telling the truth. 'I made f-ing sure that Trump's not going to win.' That's the vice president of a company that's running elections in 28 states. You've got your election cartel, you've got your vote trafficking organizations, and you have the man that pulled the trigger."

5.    April 4, 2022 statement by Lindell:

"It started with Eric Coomer and Dominion based right here in Colorado. By the way, he just sued me as I walked up on the stage. Just sued me, I just got papers. Thanks, Eric! Now Eric will be the first one behind bars when we melt down the machines."

6.    April 6, 2022 statement by Lindell:

"So everybody, if you want to know just how corrupt, the corruption we're up against. Eric Coomer served, had served papers to me before I was going onstage at the Capitol. I've never talked about Eric Coomer. He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. I guess he's the guy that ran into a building the other day and took off and ran or whatever. Who knows what he did there, but anyway, he served papers, everybody. He has sued, everybody ready for this? Mike Lindell, Frank Speech, and My Pillow. Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Rafsenberger [sic] and Jena Griswold behind bars. You're #1 on my list. You go after my employees, go after my company again, you're disgusting. You belong behind bars. I hear you ran into a building drunk the other day or whatever you were. You know, whatever you did, "allegedly" [using sarcastic tone] I'll say that so the lawyers don't, so I don't "allegedly" accuse you of something you haven't done, but I will accuse you of this.

You've been a part of the biggest crime this world has ever seen. Eric Coomer, president of Dominion, you have even said what you did or what you were going to do. You're disgusting. You're disgusting, you're evil, you belong behind bars, and we will not stop until you are behind bars. We're going to melt down your little machines and you're going to hang on to your little prison bars. "Let me out, let me out!" Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity. It's disgusting what you've done. You and Dominion. And Jena Griswold."

7.    April 7, 2022 statements by Lindell:

Lindell: "I got served by Eric Coomer two days ago, right when I was going to speak at the Capitol in Colorado. And I got served papers, another lawsuit, Eric Coomer, you know, he was the head of Dominion. So, instead of saying hey, we don't have anything to hide, well it's too late now. We already have what they were hiding. All it is another attack."

Bannon: "But why would Coomer's lawyers say, 'Hey, we've heard what Mike Lindell has to say in the last ten days, and we're going to go sue him again?' Why would they, logically, if they think you have the receipts, why would they do that?"

Lindell: "Because the lawyers are criminals too. We're gonna go after them now. I'm going after them. It's like a criminal crime family, Steve. It's a big criminal crime family. These machine companies, we now, I'll just bring this up so this can scare them a little bit, we have reason to believe now after we've talked to five different whistle blowers from five different states that all, all of our overseas military votes were for Biden. The ones that were emailed in, which was ninety some per cent of all emailed in. They're using a national email system, Steve. It's disgusting."

8.    May 23, 2022 statement by Lindell:

"Eric Coomer. Look at the timing of that. So here we are in Colorado, on the steps of the Capitol, and Eric Coomer, I'm not even sure on that. What is his basis? You want to talk about frivolous lawsuits, people, that's unbelievable. Eric Coomer, who are you other than some corrupt person who was with Dominion, one of the most corrupt people. He's one of them that'll definitely be with all the others when we melt down the machines being right behind the bars going 'Let me out! Let me out! I'm sorry!"

9.    September 7, 2022 statement by Peters:

Howse: "So Tina, you were mentioning the man that you were subpoenaed by. He worked at one time for Dominion, is that correct?"

75

Peters: "That's right. He was the one who was in charge of the patents for the algorithm that is inside the Dominion voting machine and actually bragged on an Antifa call that he was a member of that he would make sure that Trump wouldn't get in. That he made f-ing sure of it. And that's what got Joe Oltmann. Joe Oltmann was on that call and that's what got him involved in the fight a few years ago. Well, Eric Coomer is now subpoenaing me against our beloved patriot Mike Lindell and this is going to happen November 7 right here in Grand Junction where they're going to subpoena me and interrogate me to try to gin up some kind of information about our patriot Mike Lindell. Not gonna happen. It's like, throw another one on the pile like Mike says. But nevertheless, their assault keeps coming."

10.  March 10, 2023 statement by Lindell:

Lindell: "I stand by my words! I called him a criminal! I called his lawyers a criminal! And you know what? I stand by that, because what they did to MyPillow is criminal. What they did to me is criminal. What they did to FrankSpeech. It is criminal! And that judge that didn't rule, it could set a precedent."

**INSTRUCTION 35**

**PUBLIC CONCERN**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** Under the First Amendment, a plaintiff cannot recover for a false and defamatory statement or statements involving matters of public concern unless the plaintiff proves by clear and convincing evidence that a defendant published the statement with actual malice. There is no issue whether any statements that Plaintiff alleges for all claims in this case involve matters of public concern. Therefore, to recover for any claims relating to the statements at issue here, Plaintiff must prove that the defendants acted with actual malice.[46]

**PLAINTIFF'S OBJECTION TO DEFENDANTS' PROPOSED JURY INSTRUCTION:** Plaintiff objects to this instruction being given because it is unnecessary in light of CJI-Civ. 22:1 and CJI-Civ. 22:2. However, to the extent an instruction is given, the following contains Plaintiff's submission.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** If a defamatory statement involves a matter of public concern, the Plaintiff must demonstrate that the statement was published with actual malice.

---

[46] CJI 22, Introductory Notes.

**INSTRUCTION 36**

**ACTUAL MALICE – INTRODUCTION**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** Each claim raised by Plaintiff in this case requires the Plaintiff to prove that Michael Lindell's statements or the statements by others were made with Actual Malice.

To recover on his claim for defamation, Intentional Infliction of Emotional Distress, and Civil Conspiracy, Plaintiff Eric Coomer must prove – by Clear and Convincing Evidence – is that the Defendants published the challenged statements with what the law refers to as "actual malice." In this case, that requires two separate showings by Eric Coomer, and there are two different ways in which he can make each of those showings.

First, Eric Coomer must demonstrate that the defendants intended, at the time the challenged statements were published, that readers would understand their words to have the specific defamatory meaning he claims, and he can meet this requirement by providing to you through clear and convincing evidence either (a) that Michael Lindell in fact intended that readers attribute the claimed defamatory meaning to the words he edited into the editorial, or (b) that Michael Lindell had a high degree of subjective awareness that readers probably would understand his words in that claimed defamatory way.

Second, Eric Coomer must demonstrate that the defendants had knowledge of the falsity of this defamatory meaning when the statements were published, and plaintiff can meet this requirement by providing to you through clear and convincing evidence either (a) that Mr. Lindell actually knew the claimed defamatory meaning was false at the time

78

the editorial was published, or (b) that Mr. Lindell had a high degree of subjective awareness that the claimed defamatory meaning was probably false at the time the editorial was published.

To be clear, if you determine that Mr. Lindell knew that statements made about Eric Coomer were false but you also find that Mr. Lindell did not intend and was not aware before publication that the words would be interpreted in that way, you must find for Defendants. Similarly, if you determine that Mr. Lindell did intend to convey the message that Plaintiff contends was defamatory but Mr. Lindell did not know that this message was false, you must find for the Defendants. You may only find for Eric Coomer if he satisfies both obligations with respect to the challenged statements.[47]

In addition to plaintiff's requirement to prove Actual Malice for his defamation claim, he must also prove Actual Malice for his Intentional Infliction of Emotional Distress claim. Namely, that the statements complained of were made with Actual Malice.[48]

---

[47] *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991); *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989); *Herbert v. Lando*, 441 U.S. 153 (1979); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29 (1971); *St. Amant v. Thompson*, 390 U.S. 727 (1968); Garrison v. Louisiana, 379 U.S. 64 (1964); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

[48] The First Amendment may bar an outrageous conduct claim under some circumstances. *See Seefried v. Hummel*, 148 P.3d 184 (Colo. App. 2005) (First Amendment's Free Exercise Clause prohibited court from hearing outrageous conduct claims brought by former senior pastor of church, former associate pastor, and limited liability company (LLC) owned by associate pastor, against church, members of church's board of directors, individually and as directors, and three church members formerly employed by LLC).

**PLAINTIFF'S OBJECTION TO DEFENDANTS' PROPOSED JURY INSTRUCTION:**[49] Plaintiff objects to this instruction being given because it is unnecessary in light of CJI-Civ. 22:1 and CJI-Civ. 22:2. However, to the extent an instruction is given, the following contains Plaintiff's submission.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** If a defamatory statement involves a matter of public concern, the Plaintiff must demonstrate that the statement was published with actual malice.

---

[49] *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861, F.3d 1081, 1110 (10th Cir. 2017).

**INSTRUCTION 37**

**ACTUAL MALICE-MEANING**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** Actual Malice is shown by demonstrating that Defendants either in fact entertained serious doubts as to the truth of the statement, or that the statements were made with reckless disregard for the truth.[50] Actual malice can be inferred from objective circumstantial evidence, which can override a Defendants' claims of good faith.[51]

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** In this case, as I told you, Plaintiff Eric Coomer must prove by clear and convincing evidence that the defendants intended or were aware that readers would attribute to their words the meaning that she claims their words conveyed.   That is, Plaintiff must show that the person who made the statement intended or knew that the words he used would convey the meaning that Plaintiff bears direct personal responsibility for rigging the 2020 presidential election.

Plaintiff may not establish this element through evidence of defamatory meaning and proof that such a statement would be false.  Instead, Plaintiff must show that the

---

[50] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *see also Coomer v. Salem Media of Colorado, Inc. et. al.*, 2025 WL 209253 *7 (Colo. App. 2025) (noting that one way to show that "a defendant in fact entertained serious doubts as to the truth of a statement is to show that any reasonable person would have entertained such doubts") (*citing Coomer v. Donald J. Trump for President, Inc. et. al.*, 552 P.3d 562, 591-92 (Colo. App. 2024).

[51] *Brown v. Petrolite Corp.*, 965 F.2d 38, 46-47 (5th Cir. 1992); *see also Coomer v. Donald J. Trump for President, Inc. et. al.*, 552 P.3d at 591 ("Actual malice can, and often must, be proved by circumstantial evidence.")

81

defendants, including non parties,either deliberately framed comments for the purpose of conveying the defamatory meaning claimed by plaintiff, or that the Defendants Mr. Lindell, MyPillow and FrankSpeech were aware that average people who heard the defendants' statements (or those made by others that a defendant republished) would in fact understand the words in the way Plaintiff claims and the Defendants proceeded to make the statements anyway.[52]

---

[52] *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 659 (1989); *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 n.30 (1984); *Masson v. New Yorker Magazine*, 501 U.S. 496, 511 (1991).

**INSTRUCTION 38**

**ACTUAL MALICE – KNOWLEDGE OF FALSITY**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[53] Knowledge of falsity is one of two potential means of demonstrating actual malice. The other is reckless disregard for the truth. Knowledge of falsity is not required if you find the Defendants acted with reckless disregard for the truth.[54]

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** In addition to demonstrating that defendants intended or were aware the statements at issue would convey to readers the meaning claimed by Plaintiff, to prove actual malice, the plaintiff also must demonstrate that defendants knew that the defamatory meaning in question was false when the editorial was published, or that they published the statements while having a high degree of subjective awareness that the meaning he claims was probably false.

What does this mean?

"Knowledge that something is false" is easy enough to understand. It means more or less the same thing as telling an intentional lie. It is not enough to meet this test for the plaintiff to convince you that a reasonable person <u>should have</u> concluded the statement was false.

---

[53] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 157-58 (1967).

[54] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 157-58 (1967); *Coomer v. Donald J. Trump for President, Inc. et. al.*, 552 P.3d 562, 591-92 (Colo. App. 2024).

83

Rather, plaintiff must show that Mr. Lindell in fact knew or actually believed the meaning of the statements in question to be false when they wrote or published them.

Plaintiff may also satisfy this element by establishing that Lindell or the other defendants had a high degree of awareness that the meaning of the statements was probably false. That state of mind is shown if Mr. Lindell or another actually recognized that the meaning of the statements he published was probably false, but went ahead and published them anyway.

In determining whether the defendants acted with subjective awareness of probable falsity, you should include the following considerations:

It is the subjective state of mind only of the particular individual actually responsible for writing the portions of the challenged statements alleged to be defamatory that is the focus of this inquiry. The state of mind of other people plays no role.

In evaluating the subjective state of mind of the writer of the words alleged to be defamatory, you should consider whether, at the time those words were written, he actually entertained serious doubts as to the truth of the challenged statements.

You must assess the defendants' subjective awareness of probable falsity at the time of publication; any information that was acquired or discovered after the statements were published is irrelevant and must be disregarded by you.

That the defendant was or might have been negligent in making the statements does not constitute subjective awareness of probable falsity. You should not evaluate this element by evaluating whether a reasonably prudent person would have made the

challenged statements, or would have been more careful in how the statement was worded, or would have investigated more before making the challenged statements. That is to say, subjective awareness of probable falsity is not measured by what the defendant reasonably should have done. Rather, it is measured by what the defendant actually knew at the time of publication.

Mere failure to discover misstatements is insufficient to show that a defendant was actually aware of the probable falsity of the statement, no matter how much time the defendant had available to investigate the situation before making the statement or whether eventually the defendant could have discovered the truth.

Knowledge of falsity or awareness of probable falsity cannot be established solely through evidence of disapproval, ill will, prejudice, hostility or contempt. Similarly, knowledge of falsity cannot be established through vague or generalized statements even by other government officials. Rather, evidence of ill will may be considered by you only if it is connected with evidence that defendants published statements they knew to be false or published with a high degree of awareness that those statements were probably false.

You must also bear in mind that a difference in interpretation of events is not evidence of actual malice. A defendant who adopts one of several possible interpretations of an event is not liable simply because other interpretations also exist. A defendant cannot be held liable for speaking under such circumstances or for failing to provide other interpretations. The defendant may be held liable only if he actually

knew that the challenged statement was false or was aware that the statement was probably false.

Proof that a mistake was made in interpreting events, documents or statements is not enough to establish the subjective awareness of probable falsity. A defendant is entitled to publish some facts harmful to plaintiff, while omitting other statements that would have been favorable to the plaintiff, as long as the defendant does not believe that the statements he does publish are probably false.[55]

If you find that the Defendants did not act with actual malice, then your verdict must be in favor of the Defendants and against Plaintiff.

---

[55] *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37-n.38, 692 (1989); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Henry v. Collins*, 380 U.S. 356, 357 (1965); *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 286 (1964); *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984); *Modern Federal Jury Instructions-Civil* ¶¶ 91-4, 91-5 (2020).

**INSTRUCTION 39**

**RECKLESS DISREGARD DEFINED**

**PLAINTIFF'S PROPOSED INSTRUCTION:** Reckless disregard cannot be fully encompassed in one infallible definition and is not limited to specific bases.[56] Instead, actual malice can be inferred from objective circumstantial evidence, which can override a defendant's protestations of good faith.[57] Circumstantial evidence of actual malice can include when a story is fabricated by a defendant or is the product of his imagination; when a defendant relies on anonymous sources; when a defendant has reason to know that a source is unreliable; when the allegations made are inherently improbable that only a reckless person would publish them; when a defendant intentionally avoids the truth; when a defendant's allegations conform to a preconceived storyline; when a defendant has an incentive or motive to make the defamatory statements; when a defendant disregards reliable sources; or when a defendant fails to investigate obvious sources of refutation or corroboration of statements, especially when there is no time pressure on their publication.[58]

---

[56] *See St. Amant*, 390 U.S. at 730; *Coomer v. Donald J. Trump for President, Inc. et. al.*, 552 P.3d 562, 591-92 (Colo. App. 2024); *Coomer v. Salem Media of Colorado, Inc. et. al.*, 2025 WL 209253 *7 (Colo. App. 2025).

[57] *See Brown v. Petrolite Corp.*, 965 F.2d 38, 46-47 (5th Cir. 1992).

[58] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 157-58 (1967); *Quigley v. Rosenthal*, 43 F.Supp.2d 1163 (D. Colo. 1999); *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994); *St. Amant*, 390 U.S. at 730; *Coomer v. Donald J. Trump for President, Inc. et. al.*, 552 P.3d 562, 591-92 (Colo. App. 2024); *Coomer v. Salem Media of Colorado, Inc. et. al.*, 2025 WL 209253 *7 (Colo. App. 2025).

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** To find that Michael Lindell acted with reckless disregard of the truth or falsity of the statement, you must determine that Mr. Lindell had serious doubts as to the truth of the statement or had a high degree of awareness that the statement was probably false.[59]

---

[59] Restatement, Second, Torts § 580A, Comment d (1977); Garrison v. State of Louisiana, 379 U.S 64 (1964).

**INSTRUCTION 40**

**PUBLISHED DEFINED**[60]

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** A statement is "published" when it is communicated orally or in writing to and is understood by some person other than the plaintiff. Anyone who causes or participates in the publication of a defamatory matter or who aids or abets another in publishing the matter can be liable for the publication.

---

[60] CJI-Civ. 22:7; Colo. Prac., Pers. Injury Torts and Ins. 32.18 Publication (3d ed. Nov. 2024) ("[a]n editor, publisher, owner, or reporter of a newspaper or broadcasting company who has been involved in the publication" of defamatory matter may be liable). Anyone who causes or participates in the publication of defamatory matter or who aids or abets another in publishing the matter can be liable. *Coomer v. Salem Media of Colorado, Inc. et. al.*, 2025 WL 209253 *11 (Colo. App. 2025). *See also Coomer v. Byrne, et. al.*, Case No. 8:24-cv-000008-TPB-SPF, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Jan. 14, 2025) (*citing US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1040 (Del. Super. Ct. 2023) ("[A]ll who take part in the procurement, composition and publication of a libel are responsible in law and equally so.") (applying New York law and quoting *Treppel v. Biovail Corp.*, No. 03 CIV. 3002(PKL), 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005)); *Van Horne v. Muller*, 691 N.E.2d 74, 77 (Ill. App. Ct. 1998) ("[O]ne who requests, procures, or aids or abets, another to publish defamatory matter is liable as well as the publisher."), aff'd in part, rev'd in part on other grounds, 705 N.E.2d 898 (Ill. 1998) (holding that "[a]ll persons who cause or participate in the publication of libelous or slanderous matters are responsible for such publication") (quotation omitted); *Di Giorgio Corp. v. Valley Labor Citizen*, 67 Cal. Rptr. 82, 87 (Ct. App. 1968) ("[I]n the absence of a privilege, anyone who actively participates in the publication of a false and libelous statement is liable for special, general and even punitive damages."); *see also* RESTATEMENT (SECOND) OF TORTS § 581, comment c ("The rule does not relieve from liability the publisher who prints and puts upon the market a libelous newspaper, book or magazine even though its contents are prepared by a third person . . . .").

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: A statement is "published" when it is communicated orally or in writing to and is understood by some person other than the plaintiff.

**INSTRUCTION 41**

**NOT DISPUTED**

**DEFAMATORY DEFINED[61]**

A statement is defamatory of a person if it tends to harm the person's reputation by lowering the person in the estimation of at least a substantial and respectable minority of the community.

---

[61] CJI-Civ. 22:8 (2024).

**INSTRUCTION 42**

**ABOUT THE PLAINTIFF DEFINED**[62]

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** A defamatory communication is made about the plaintiff if one or more readers, viewers, listeners, or recipients correctly understands, or mistakenly but reasonably understands, that it was intended to refer to the plaintiff.

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** A is defamatory if one or more readers, viewers, listeners, or recipients understands that it was intended to refer to the plaintiff.

| Deleted: made about the plaintiff |
| Deleted: correctly |
| Deleted: , or mistakenly but reasonably understands, |

---

[62] CJI-Civ. 22:9 (2024).

**INSTRUCTION 43**

**DETERMINATION OF MEANING – HOW UNDERSTOOD BY OTHERS**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** In determining the meaning of a statement and whether the statement defamed the Plaintiff, you must consider what the statement meant to the person who read or heard it. You must give the statement its plain and usual meaning. You must make this decision without regard to how the Defendant intended the statement to be understood. [63]

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: In determining the meaning of a statement and whether the statement defamed the plaintiff, you must consider what the statement meant to the person who read or heard it. You must give the statement its plain and usual meaning. You must make this decision without regard to how the publisher of a statement intended the statement to be understood. [64]

| Deleted: defendant |
| --- |

---

[63] CJI-Civ. 22:10 (2024).
[64] CJI-Civ. 22:10 (2024).

**INSTRUCTION 44**

**NOT DISPUTED**

**DETERMINATION OF MEANING – PUBLICATION
TO BE CONSIDERED AS A WHOLE[65]**

In determining the meaning of a statement and whether the statement defamed the plaintiff, you must consider the communication as a whole. You must not dwell upon specific parts of the communication. You must give each part its proper weight and give the entire communication the meaning that people of average intelligence and understanding would give it.

---

[65] CJI-Civ. 22:11 (2024).

**INSTRUCTION 45**

**NOT DISPUTED**

**DETERMINATION OF MEANING – PUBLICATION
TO BE CONSIDERED IN LIGHT OF SURROUNDING CIRCUMSTANCES**[66]

In determining the meaning of a statement and whether the statement defamed the plaintiff, you must consider the communication in light of the surrounding circumstances. The circumstances that may affect the manner in which words are understood include the type of program or production in which they occur and the nature of the discussion in which they occur and the likely expectations of readers, listeners, or viewers of the statements as a result of those circumstances.

---

[66] CJI-Civ. 22:12 (2024).

**INSTRUCTION 46**

**FALSITY – DEFINED**

**PLAINTIFF'S PROPOSED INSTRUCTION:** A statement is false if its substance or gist is contrary to the true facts, and reasonable people hearing or learning of the statement would be likely to think significantly less favorably about the person referred to than they would if they knew the true facts. The fact that a statement may have contained some false information does not necessarily make the substance or gist of the statement itself false. [67]

**DEFENDANTS' PROPOSED INSTRUCTION:** To recover on his claim for defamation, the plaintiff Eric Coomer must prove – by Clear and Convincing Evidence – that the statements about which he complains were materially false. The fact that a statement may have contained some false information does not necessarily make the substance or gist of the statement itself false.

Minor inaccuracies regarding factual information will not make a publication untrue unless the statement materially misleads the reader. Thus, the substance or gist of the publication must be false. If the "gist" or "sting" of the allegedly defamatory statement produces the same effect in the mind of the recipient as the precise truth would have produced, then the statement is "substantially true" and not materially false.

---

[67] CJI-Civ. 22:13 (2024).

It is not the burden of the Defendants to prove that the challenged statements are true or substantially true; rather, it is Eric Coomer's burden to prove that the challenged statements are materially false.[68]

---

[68] *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 779 n.4 (1986); *Masson* v. *New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991); Restatement (Second) of Torts § 581A & cmt. f (1977).

**INSTRUCTION 47**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS / EXTREME AND
OUTRAGEOUS CONDUCT**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** For the plaintiff, Eric Coomer,

Ph.D., to recover from the Defendants Michael J. Lindell, Frankspeech LLC, or My Pillow,

Inc., on his claim of extreme and outrageous conduct, you must find all of the following

have been proved by a preponderance of the evidence:

1.     The Defendant engaged in extreme and outrageous conduct;

2.     The Defendant did so recklessly or with the intent of causing the Plaintiff severe

       emotional distress; and

3.     The Defendant's conduct caused the Plaintiff severe emotional distress.


**DEFENDANTS' PROPOSED JURY INSTRUCTION**: For the plaintiff, Eric

Coomer, Ph.D., to recover from the Defendants Michael J. Lindell, Frankspeech LLC, or

My Pillow, Inc., on his claim of extreme and outrageous conduct, you must find all of the

following have been proved by a preponderance of the evidence:

1.     The defendants engaged in extreme and outrageous conduct by publishing or

       causing to be published the statements at issue in the defamation section above

       with actual malice;

2.     The defendants did so recklessly or with the intent of causing the plaintiff severe

       emotional distress; and

3.     The defendant's conduct caused the plaintiff severe emotional distress.

If you find that any one or more of these three statements has not been proved, then your verdict must be for the defendants.

On the other hand, if you find that all of these three statements have been proved, then you must consider the defendants' affirmative defense that the statements were substantially true.

If you find that this affirmative defense has been proved by a preponderance of the evidence, then your verdict must be for the defendant.

However, if you find that this affirmative defense has not been proved, then your verdict must be for the plaintiff.[69]

---

[69] CJI 23:1.

**INSTRUCTION 48**

**EXTREME AND OUTRAGEOUS CONDUCT**

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: Extreme and outrageous conduct is conduct that is so outrageous in character, and so extreme in degree, that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community. Such outrageous conduct occurs when knowledge of all the facts by a reasonable member of the community would arouse that person's resentment against the defendant, and lead that person to conclude that the conduct was extreme and outrageous.

A simple act of unkindness or insult, standing alone, does not constitute outrageous conduct. However, a single incident may constitute outrageous conduct if the incident would be so regarded by a reasonable member of the community.[70] The fact that a person knows that another person will consider the conduct to be insulting or will have his or her feelings hurt does not, by itself, make the conduct extreme and outrageous.[71]

The extreme and outrageous character of conduct may arise from a person's

_____

[70] A series of incidents or a course of conduct will more frequently give rise to outrageous conduct than a single incident. *See Lee v. Colo. Times, Inc.*, 222 P.3d 957 (Colo. App. 2009). Whether the defendant's behavior is viewed as a course of conduct or as a single incident, "it is the totality of conduct that must be evaluated to determine whether outrageous conduct has occurred." Zalnis, 645 P.2d at 294.

[71] CJI 23:2; *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970) (approving the definition from the Restatement (Second) of Torts § 46 (1965)). *See* **also Coors Brewing Co. v. Floyd**, 978 P.2d 663 (Colo. 1999) (allegations of extreme and outrageous conduct insufficient).

knowledge that another is peculiarly susceptible to emotional distress because of some physical or mental condition or peculiarity. The same conduct without that knowledge might not be extreme and outrageous. The fact that a person knows that another person will consider the conduct to be insulting or will have his or her feelings hurt does not, by itself, make the conduct extreme and outrageous.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[72]  Extreme and outrageous conduct is conduct that is so outrageous in character, and so extreme in degree, that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community. Such outrageous conduct occurs when knowledge of all the facts by a reasonable member of the community would arouse that person's resentment against the defendant, and lead that person to conclude that the conduct was extreme and outrageous.

A series of acts may constitute outrageos conduct, even though any one of the acts might be considered only an isolated unkindness or insult.  A simple act of unkindness or insult, standing alone, does not constitute outrageous conduct. However, a single incident may constitute outrageous conduct if the incident would be so regarded by a reasonable member of the community.

The extreme and outrageous character of conduct may arise from a person's knowledge that another is peculiarly susceptible to emotional distress because of some physical or mental condition or peculiarity. The same conduct without that knowledge

---

[72] CJI-Civ. 23:2.

might not be extreme and outrageous. However, the fact that a person knows that another person will consider the conduct to be insulting or will have his or her feelings hurt does not, by itself, make the conduct extreme and outrageous.

**INSTRUCTION 49**

**NOT DISPUTED**

**DEFINITION OF RECKLESSLY OR WITH INTENT**[73]

A person intends to cause another severe emotional distress if that person engages in conduct for the purpose, in whole or in part, of causing severe emotional distress in another person, or knowing that his or her conduct is certain or substantially certain to have that result.

A person whose conduct causes severe emotional distress in another person has acted recklessly if, at the time, that person knew, or, because of other facts known to him or her, reasonably should have known that there was a substantial probability that his or her conduct would cause severe emotional distress in another person.

---

[73] CJI-Civ. 23:3 (2024); *see also Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877, 882 (Colo. 1994); and *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982) (citing RESTATEMENT (2D) OF TORTS § 46 (1965)).

**INSTRUCTION 50**

**DEFINITION OF SEVERE EMOTIONAL DISTRESS**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[74] Severe emotional distress consists of highly unpleasant mental reactions, such as (nervous shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry) and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it. The duration and intensity of emotional distress are factors to be considered in determining its severity.

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: Severe emotional distress consists of highly unpleasant mental reactions, such as (nervous shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry) and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it. The duration and intensity of emotional distress are factors to be considered in determining its severity.

If a person is more susceptible to a certain kind of emotional distress than a person of ordinary sensibilities and that fact is known to another person who recklessly or intentionally causes that emotional distress, then the emotional distress is severe if it is

---

[74] CJI-Civ. 23:4 (2024); *see also Espinosa v. Sheridan United Tire*, 655 P.2d 424, 425 (Colo. App. 1982) (suggesting that RESTATEMENT (2D) OF TORTS § 46 cmt. J (1965) is part of Colorado's common law); *DeCicco v. Trinidad Area Health Ass'n*, 573 P.2d 559, 562 (1977) (grief is significant factor in outrageous conduct action); *Zalnis*, 645 P.2d at 294; *Rugg v. McCarty*, 476 P.2d 753, 754-56 (1970) (severe emotional distress does not require physical injury).

more than a person of the same or similar susceptibility would reasonably be expected to

endure under the same or similar circumstances.

## INSTRUCTION 51

### CIVIL CONSPIRACY

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[75] For the plaintiff, Eric Coomer, Ph.D., to recover from the Defendants Michael J. Lindell, Frankspeech LLC, and My Pillow, Inc., on his claim of civil conspiracy, you must find that all of the following have been proved by a preponderance of the evidence:

1.  an object to be accomplished;

2.  an agreement by two or more persons on a course of action to accomplish that object;

3.  a meeting of the minds on the object or course of action;

4.  in furtherance of that course of action, one or more unlawful overt acts; and

5.  damages to the Plaintiff as a proximate result.

**DEFENDANTS' PROPOSED JURY INSTRUCTION**[76]: For the plaintiff, Eric Coomer, to recover from the Defendants Michael J. Lindell, Frankspeech LLC, and My Pillow, Inc., on his claim of civil conspiracy, you must find that all of the following have been proved by a preponderance of the evidence:

1.  The defendants and at least one other person agreed, by words or conduct, to accomplish an unlawful goal of defaming the plaintiff with actual malice;

2.  One or more acts were performed to accomplish this unlawful goal;

---

[75] CJI-Civ. 27:1 (2024); *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 502 (1989).
[76] CJI-Civ. 27:1.

**Deleted:** Ph.D.,

**Deleted:** an object to be accomplished

**Deleted:** an agreement by two or more persons on a course of action to accomplish that object

3.      The plaintiff had damages; and

4.      The plaintiff's damages were caused by the acts performed to accomplish the goal.

If you find that any one or more of these four statements has not been proved, then

your verdict must be for the defendants.

On the other hand, if you find that all of these four statements have been proved,

then you must consider the defendants' affirmative defense of (s) of [insert any affirmative

defense that would be a complete defense to plaintiff's claim]).

If you find that (this affirmative defense has) (any one or more of these affirmative

defenses have) been proved by a preponderance of the evidence, then your verdict must

be for the defendant.

However, if you find that (this affirmative defense has not) (none of these

affirmative defenses have) been proved, then your verdict must be for the plaintiff.

**Deleted:** a meeting of the minds on the object or course of action…

**Deleted:** in furtherance of that course of action, one or more unlawful overt acts; and¶
5.      damages to the plaintiff as a proximate result

**INSTRUCTION 52**

**UNLAWFUL MEANS/OVERT ACTS – DEFINED**[77]

**PLAINTIFF'S PROPOSED INSTRUCTION:** "Unlawful overt acts" include acts that involve civil wrongs such a defamation or intentional infliction of emotional distress on the plaintiff, Dr. Eric Coomer. The fact that this definition of "unlawful overt acts" is being given to you does not mean that the court is instructing you to find that unlawful overt acts occurred. The question of whether or not such unlawful overt acts were used is a question of fact for you to determine.

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: "Unlawful means" are only the alleged defamation or unlawful acts that caused the defamation on the plaintiff, Eric Coomer. Defamation and intentional infliction of emotional distress require that you find the Defendants' statements were made with actual malice by clear and convincing evidence.

The fact that this definition of "unlawful means" is being given to you does not mean that the court is instructing you to find that unlawful means were used. The question of whether or not such unlawful means were used is a question of fact for you to determine.

| Deleted: overt acts |
| Deleted: acts that involve civil wrongs such a |
| Deleted: or intentional infliction of emotional distress |
| Deleted: Dr. |

| Deleted: overt acts |

| Deleted: |
| Deleted: overt acts |
| Deleted: occurred |
| Deleted: overt acts |

---

[77] CJI 27:2.

**INSTRUCTION 53**

**UNLAWFUL GOAL - DEFINED**

**PLAINTIFF'S OBJECTS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:** Plaintiff objects to this instruction being given because it is only proper where the phrase "unlawful goal" is used in stating the elements of liability for civil conspiracy.[78]

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: "Unlawful goal" means the alleged defamation with actual malice at issue in this case and intentionally causing the plaintiff severe emotional distress through said defamatory statements with actual malice.

The fact that this definition of "unlawful goal" is being given to you does not mean the court is instructing you to find that the defendant(s) sought to accomplish this unlawful goal. The question of whether the defendant(s) sought to accomplish such a goal is a question of fact for you to determine.

_____

[78] CJI:Civ. 27:3, n.1.

**INSTRUCTION 54**

**VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) – MY PILLOW, INC. --
DEFAMATION**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** For the Plaintiff, Eric
Coomer, to recover on his claim of defamation against the defendant, My Pillow, Inc., you
must find that all of the following have been proved:

1.    The plaintiff proved his defamation claim against the defendant, Michael Lindell,
      by the standards of proof applicable to each element of the defamation claim,
      according to my previous instructions;

2.    The plaintiff proved by a preponderance of the evidence that the defendant,
      Michael Lindell, was the employee of the defendant, My Pillow, Inc., at the time he
      made defamatory statements;

3.    The plaintiff proved by a preponderance of the evidence that the defendant,
      Michael Lindell, was acting within the scope of his employment at the time he made
      defamatory statements.

      If you find that any one or more of these three statements has not been proved,
then your verdict must be for the defendant, My Pillow, Inc., on the claim of defamation.

      On the other hand, if you find that all of these three statements have been proved,
then your verdict must be for the plaintiff on the claim of defamation against the defendant,
My Pillow, Inc.[79]

---

[79] *See* CJI 8:22.

**PLAINTIFF'S PROPOSED INSTRUCTION:**[80]   For the Plaintiff, Eric Coomer,

Ph.D., to recover on his claim of vicarious liability for defamation against the Defendant,

My Pillow, Inc., you must find that all of the following have been proved:

1.   The Plaintiff proved his defamation claim against the Defendant, Michael J.

Lindell, by the standards of proof applicable to each element of the defamation

claim, according to my previous instructions;

2.   The Plaintiff proved by a preponderance of the evidence that the Defendant,

Michael J. Lindell, was the agent of the Defendant, My Pillow, Inc., at the time he

defamed the Plaintiff;

3.   The Plaintiff proved by a preponderance of the evidence that the Defendant,

Michael J. Lindell, was acting within the scope of his authority at the time he

defamed the Plaintiff.

If you find that any one or more of the above three elements has not been proved,

then your verdict must be for the Defendant, My Pillow, Inc., on the claim of vicarious

liability for defamation.

On the other hand, if you find that all of the above three elements have been

proved, then your verdict must be for the Plaintiff on his claim of vicarious liability for

defamation against the Defendant, My Pillow, Inc.

---

[80] CJI-Civ. 8:21 (2024).

**INSTRUCTION 55**

**VICARIOUS LIABILITY (PRINCIPAL-AGENT) – FRANKSPEECH LLC –
DEFAMATION**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** For the plaintiff, Eric
Coomer, to recover on his claim of defamation against the defendant, Frankspeech LLC,
you must find that all of the following have been proved:

1.     The plaintiff proved his defamation claim against the defendant, Michael Lindell,
       by the standards of proof applicable to each element of the defamation claim,
       according to my previous instructions;

2.     The plaintiff proved, by a preponderance of the evidence, that the defendant,
       Michael Lindell, was the agent of the defendant, Frankspeech LLC, at the time of
       the defamation; and

3.     The plaintiff proved, by a preponderance of the evidence, that the defendant,
       Michael Lindell, was acting within the scope of his authority at the time he made
       defamatory statements.

       If you find that any one or more of these three statements has not been proved,
then your verdict must be for the defendant, Frankspeech LLC, on the claim of
defamation.

       On the other hand, if you find that all of these three statements have been proved,
then your verdict must be for the plaintiff on the claim of defamation against the defendant,
Frankspeech LLC.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[81]

For the plaintiff, Eric Coomer, Ph.D., to recover on his claim of vicarious liability for defamation against the Defendant, Frankspeech LLC, you must find that all of the following have been proved:

1. The Plaintiff proved his defamation claim against the Defendant, Michael J. Lindell, by the standards of proof applicable to each element of the defamation claim, according to my previous instructions;

2. The Plaintiff proved, by a preponderance of the evidence, that the Defendant, Michael J. Lindell, was the agent of the defendant, Frankspeech LLC, at the time he defamed the Plaintiff; and

3. The Plaintiff proved, by a preponderance of the evidence, that the Defendant, Michael J. Lindell, was acting within the scope of his authority at the time he defamed the Plaintiff.

If you find that any one or more of the above three elements has not been proved, then your verdict must be for the Defendant, Frankspeech LLC, on the claim of vicarious liability for defamation.

On the other hand, if you find that all of the above three elements have been proved, then your verdict must be for the Plaintiff on the claim of vicarious liability for defamation against the Defendant, Frankspeech LLC.

---

[81] *See* CJI-Civ. 8:18.

**INSTRUCTION 56**

**VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) – MY PILLOW, INC. –
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** For the Plaintiff, Eric Coomer, to recover on his claim of intentional infliction of emotional distress against the defendant, My Pillow, Inc., you must find that all of the following have been proved:

1.    The plaintiff proved his defamation claim against the defendant, Michael Lindell, by the standards of proof applicable to each element of the claim for intentional infliction of emotional distress, according to my previous instructions;

2.    The plaintiff proved by a preponderance of the evidence that the defendant, Michael Lindell, was the employee of the defendant, My Pillow, Inc., at the time that he made statements that intentionally inflicted emotional distress;

3.    The plaintiff proved by a preponderance of the evidence that the defendant, Michael Lindell, was acting within the scope of his employment at the time he made statements that intentionally inflicted emotion distress.

If you find that any one or more of these three statements has not been proved, then your verdict must be for the defendant, My Pillow, Inc., on the claim of defamation.

On the other hand, if you find that all of these three statements have been proved, then your verdict must be for the plaintiff on the claim of intentional infliction of emotional distress against the defendant, My Pillow, Inc.[82]

---

[82] *See* CJI 8:21.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:[83]**

For the Plaintiff, Eric Coomer, Ph.D., to recover on his claim of vicarious liability for extreme and outrageous conduct against the Defendant, My Pillow, Inc., you must find that all of the following have been proved:

1.    The Plaintiff proved his defamation claim against the Defendant, Michael J. Lindell, by the standards of proof applicable to each element of the claim for extreme and outrageous conduct, according to my previous instructions;

2.    The Plaintiff proved by a preponderance of the evidence that the Defendant, Michael J. Lindell, was the agent of the Defendant, My Pillow, Inc., at the time of his extreme and outrageous conduct;

3.    The Plaintiff proved by a preponderance of the evidence that the Defendant, Michael J. Lindell, was acting within the scope of his authority at the time of his extreme and outrageous conduct.

If you find that any one or more of the above three elements has not been proved, then your verdict must be for the Defendant, My Pillow, Inc., on the claim of vicarious liability for extreme and outrageous conduct.

On the other hand, if you find that all of the above three elements have been proved, then your verdict must be for the Plaintiff on the claim of vicarious liability for extreme and outrageous conduct against the Defendant, My Pillow, Inc.

---

[83] *See* CJI-Civ. 8:18 (2024).

**INSTRUCTION 57**

**VICARIOUS LIABILITY - INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS/EXTREME AND OUTRAGEOUS CONDUCT - FRANKSPEECH LLC**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** For the plaintiff, Eric
Coomer, to recover on his claim of extreme and outrageous conduct against the
defendant, Frankspeech LLC, you must find that all of the following have been proved:

1.    Frankspeech LLC engaged in extreme and outrageous conduct; plaintiff proved
      his defamation claim against the defendant, Michael Lindell, by the standards of
      proof applicable to each element of the claim for intentional infliction of emotional
      distress, according to my previous instructions;

2.    The plaintiff proved, by a preponderance of the evidence, that the defendant,
      Michael Lindell, was the agent of the defendant, Frankspeech LLC, at the time of
      the intentional infliction of emotional distress; and

3.    The plaintiff proved, by a preponderance of the evidence, that the defendant,
      Michael Lindell, was acting within the scope of his authority at the time he made
      statements that intentionally inflicted emotional distress.

      If you find that any one or more of these three statements has not been proved,
then your verdict must be for the defendant, Frankspeech LLC, on the claim of
defamation.

On the other hand, if you find that all of these three statements have been proved, then
your verdict must be for the plaintiff on the claim of intentional infliction of emotional
distress against the defendant, Frankspeech LLC.[84]

---

[84] *See* CJI 8:18.

**PLAINTIFF'S PROPOSED INSTRUCTION:[85]**

For the Plaintiff, Eric Coomer, Ph.D., to recover on his claim of vicarious liability for extreme and outrageous conduct against the Defendant, Frankspeech LLC, you must find that all of the following have been proved:

1.   The Plaintiff proved his extreme and outrageous conduct claim against the Defendant, Michael J. Lindell, by the standards of proof applicable to each element of the claim for extreme and outrageous conduct, according to my previous instructions;

2.   The Plaintiff proved, by a preponderance of the evidence, that the Defendant, Michael J. Lindell, was the agent of the defendant, Frankspeech LLC, at the time of the extreme and outrageous conduct; and

3.   The Plaintiff proved, by a preponderance of the evidence, that the Defendant, Michael J. Lindell, was acting within the scope of his authority at the time of the extreme and outrageous conduct.

If you find that any one or more of the above three elements has not been proved, then your verdict must be for the Defendant, Frankspeech LLC, on the claim of vicarious liability for extreme and outrageous conduct.

On the other hand, if you find that all of the above three elements have been proved, then your verdict must be for the Plaintiff on the claim of vicarious liability for extreme and outrageous conduct against the Defendant, Frankspeech LLC.

_____

[85] *See* CJI-Civ. 8:18 (2024).

117

**INSTRUCTION 58**

**SCOPE OF EMPLOYMENT – DEFINED**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** An employee is acting within the scope of his employment when the employee is doing work that is:

1.    Assigned by his employer; or

2.    Proper, usual, and necessary to accomplish the assigned work; or

3.    Customary in the particular trade or business to accomplish the assigned work.[86]

Furthermore, if an employee's conduct is not related to work assigned by the employer, or if it is not related to a course of conduct that is subject to the employer's control, then the employee's conduct is outside the scope of employment.[87]

**PLAINTIFF'S    OBJECTS    TO    DEFENDANTS'    PROPOSED    JURY INSTRUCTION:**  Plaintiff objects to this instruction being given.[88]

---

[86] CJI-Civ. 8:8.

[87] Restatement (Third) Of Agency § 7.07(2) and cmt. b (2006).

[88] *See Coomer v. Salem Media of Colorado, Inc. et. al.*, 2025 WL 209253, *12-13 (Colo. App. 2025) (noting that status as an "employee" is not required for respondeat superior analysis, focusing instead on agency principles.)

**INSTRUCTION 59**

**NOT DISPUTED**

**AGENCY RELATIONSHIP – DEFINED**

An agency relationship is created when an agreement, written or oral, express or implied, between two persons establishes that one of them is to act on behalf of and subject to the control of the other. The person who agrees to act on behalf of another is called the agent, and the other is called the principal.[89]

_____

[89] CJI-Civ. 8:1.

**INSTRUCTION 60**

**SCOPE OF AUTHORITY OF AGENT – DEFINED**[90]

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: An agent is acting within the scope of his authority when the agent is carrying on business for his principal which the principal has expressly authorized or which is within the apparent authority of the agent.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** An agent is acting within the scope of his authority when the agent is carrying on business for his principal which the principal has expressly authorized or which is within the incidental, implied, or apparent authority of the agent.  Further, an agent is acting within the scope of his authority or employment when his conduct is intended to further the employer's business.[91]

---

[90] CJI-Civ. 8:9.

[91] *Coomer v. Salem Media of Colorado, Inc. et. al.*, 2025 WL 209253 *15 (Colo. App. 2025) (noting that "as Keller indicates – and the Colorado Supreme Court has held – the key factor is whether the commission of that tort, intentional or not, falls within the scope of employment and is intended to further the employer's business." (*citing Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005); *Moses v. Diocese of Colo.*, 863 P.2d 310, 329, n. 27 (Colo. 1993); *Cooley v. Eskridge*, 241 P.2d 851, 856 (Colo. 1952)).

120

**INSTRUCTION 61**

**NOT DISPUTED**

**APPARENT AUTHORITY – DEFINITION AND EFFECT**

An agent has apparent authority when a principal, by words or conduct, has caused another person to reasonably believe that the principal has authorized an agent to act on the principal's behalf, even though the principal may not have done so. When an agent has apparent authority, it is the same as if the principal had authorized the agent's actions.[92]

---

[92] CJI 8:12.

**INSTRUCTION 62**

**NOT DISPUTED**

**EXPRESS AUTHORITY – DEFINED**[93]

An agent is acting within the scope of his authority when the agent is carrying on

business for his principal which the principal has expressly authorized or which is within

the apparent authority of the agent.

---

[93] CJI-Civ. 8:9 (2024).

**INSTRUCTION 63**

**INCIDENTAL AUTHORITY – DEFINED**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[94] In addition to any express authority given by a principal to an agent, an agent has the incidental authority to do those acts that are necessary, usual, and proper to accomplish the express authority.

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** In addition to any express authority given by a principal to an agent, an agent has the incidental authority to do those acts that are necessary, usual, and proper to accomplish any express authority from the principal.

Deleted: the

---
[94] CJI-Civ. 8:10 (2024).

**INSTRUCTION 64**

**IMPLIED AUTHORITY – DEFINED**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[95] In addition to any express authority given by a principal to an agent, an agent has implied authority to take actions:

1.    On behalf of his principal that are customary in the trade or business involved, if the principal knew or should have known of such practices; or

2.    That the agent had taken before on behalf of his principal that the principal knew of and by conduct or lack of conduct impliedly approved; or

3.    That the agent had the incidental authority to perform on the principal's behalf.

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: In addition to any express authority given by a principal to an agent, an agent has implied authority to take actions:

1.    On behalf of his principal that are customary in the trade or business involved, if the principal knew or should have known of such practices; and

3.    That the agent had the incidental authority to perform on the principal's behalf.

> Deleted: or

> Deleted: 2.    That the agent had taken before on behalf of his principal that the principal knew of and by conduct or lack of conduct impliedly approved; or

---

[95] CJI-Civ. 8:11 (2024).

**INSTRUCTION 65**

**NOT DISPUTED**

**RATIFICATION – DEFINITION AND EFFECT**[96]

A person may act as the agent for another without authority. If the person for whom the act was done has full knowledge of all the important facts, that person may, by words or conduct, ratify or accept the action after it was done. Ratification after the action is the same as authorization before the action.

---

[96] CJI-Civ. 8:14 (2024).

**INSTRUCTION 66**

**NOT DISPUTED**

**SCOPE OF AUTHORITY OR EMPLOYMENT – DEPARTURE**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** An agent is acting outside
the scope of his authority or employment when the agent substantially departs from his
principal's business by doing an act intended to accomplish an independent purpose of
the agent's own or for some other purpose which is unrelated to the business of the
principal and not reasonably included within the scope of the agent's authority or
employment. Such departure may be of short duration, but during such time the agent is
not acting within the scope of his authority or employment.[97]

---
[97] CJI 8:13.

126

**INSTRUCTION 67**

**NOT DISPUTED**

**AFFIRMATIVE DEFENSE – SUBSTANTIAL TRUTH**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** The defendants, Michael J. Lindell, My Pillow, Inc., and Frankspeech LLC, are not legally responsible to the plaintiff, Eric Coomer on his claim of defamation, if the affirmative defense of substantial truth is proved. This defense is proved if you find the statements published by the defendant were substantially true. A statement is substantially true if its substance or gist is true. Substantial truth does not require every word to be true.[98]

---

[98] CJI 22:16.

Deleted: 66

**INSTRUCTION 68**

**AFFIRMATIVE DEFENSE – CONSENT**

**PLAINTIFF OBJECTS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:**

Plaintiff objects to this instruction being given because Defendants did not plead the affirmative defense of consent.[99]

 **DEFENDANTS' PROPOSED JURY INSTRUCTION:** The defendants, Michael J. Lindell, My Pillow, Inc., and Frankspeech LLC, are not legally responsible to the plaintiff, Eric Coomer, on his claim of defamation, if the affirmative defense of consent is proved. This defense is proved if you find both of the following:

1.  The plaintiff by words or conduct, or both, expressly or impliedly consented to the publication of the statements; and

2.  The publication by the defendants was done in the manner and for the purposes which the defendant, as a reasonable person, reasonably believed the plaintiff had consented to.[100]

---

[99] *See* Doc. 171, page 57-60.

[100] CJI 22:22.

**INSTRUCTION 69**

**AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE**

**DEFENDANTS' PROPOSED JURY INSTRUCTION:**

If you find that the Plaintiff, Eric Coomer, Ph.D. has had actual damages, then you must consider whether the Defendants Michael J. Lindell, My Pillow, and Frankspeech have proved their affirmative defense of Plaintiff's failure to mitigate or minimize damages. The Plaintiff has the duty to take reasonable steps under the circumstances to mitigate or minimize his damages. Damages, if any, caused by Plaintiff's failure to take such reasonable steps cannot be awarded to the Plaintiff.

This affirmative defense is proved if you find the following has been proven by a preponderance of the evidence:

1. The Plaintiff failed to spend sufficient time to search for comparable employment.

2. The Plaintiff had increased damages because he failed to account for other payments received from other cases.

If you find that any one or more of these propositions has not been proved by a preponderance of the evidence, then you shall make no deduction from Plaintiff's damages.

On the other hand, if you find that these propositions have been proved by a preponderance of the evidence, then you must determine the amount of damages caused by the Plaintiff's failure to take such reasonable steps. This amount must not be included in your award of damages.

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** If you find that the Plaintiff, Eric Coomer, Ph.D. has had actual damages, then you must consider whether the Defendants Michael J. Lindell, My Pillow, and Frankspeech, have proved their affirmative defense of Plaintiff's failure to mitigate or minimize damages. The Plaintiff has the duty to take reasonable steps under the circumstances to mitigate or minimize his damages. Damages, if any, caused by Plaintiff's failure to take such reasonable steps cannot be awarded to the Plaintiff.

This affirmative defense is proved if you find the following has been proven by a preponderance of the evidence:

1.      The Plaintiff failed to spend sufficient time to search for comparable employment.

2.      ~~The Plaintiff had increased damages because he failed to account for other payments received from other cases.~~

If you find that any one or more of these propositions has not been proved by a preponderance of the evidence, then you shall make no deduction from Plaintiff's damages.

On the other hand, if you find that these propositions have been proved by a preponderance of the evidence, then you must determine the amount of damages caused by the Plaintiff's failure to take such reasonable steps. This amount must not be included in your award of damages.

**INSTRUCTION 70**

**DAMAGES – RECOVERY OF**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:[101]** Plaintiff, Eric Coomer, Ph.D., has the burden of proving, by a preponderance of the evidence, the nature and extent of his damages. If you find in favor of the plaintiff, you must determine the total dollar amount of plaintiff's damages, if any, that were caused by the conduct of the Defendants Michael J. Lindell, Frankspeech LLC, and My Pillow, Inc.

In determining these damages, you shall consider the following:

1. Any noneconomic losses or injuries plaintiff has had to the present time or that plaintiff will probably have in the future, including: physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, public disgrace, indignity and impairment of the quality of life.

2. Any economic losses plaintiff has had to the present time or will probably have in the future, including: loss of earnings or income; reputational repair; ability to earn money in the future; reasonable and necessary medical, hospital, therapy and other expenses, and costs of restoring or repairing reputational harm.

(If you find in favor of the plaintiff, but do not find any actual damages, you shall award him nominal damages of one dollar.)[102]

---

[101] CJI-Civ. 22:25 (2024); CJI-Civ. 23:6 (2024).

[102] Plaintiff objects to Defendants' proposed instruction to offset damages and/or consider damages caused by nonparties. The Court struck Defendants' designation of nonparties at fault, holding that "such an approach to comparative liability would seem to contradict the basic theory of designating a nonparty at fault in Colorado." [Doc. 261, pp. 30-34]

131

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: The fact that an instruction on measure of damages has been given to you does not mean that the Court is instructing the jury to award or not to award damages. The question of whether or not damages are to be awarded is a question for the jury's consideration.[103] Plaintiff, Eric Coomer, has the burden of proving, by a preponderance of the evidence, the nature and extent of his damages. If you find in favor of the plaintiff, you must determine the total dollar amount of plaintiff's damages, if any, that were caused by the conduct of the Defendants Michael J. Lindell, Frankspeech LLC, and My Pillow, Inc.

In determining these damages, you shall consider the following:

1.    Any noneconomic losses or injuries plaintiff has had to the present time or that plaintiff will probably have in the future, including: physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, public disgrace, indignity and impairment of the quality of life.

2.    Any economic losses plaintiff has had to the present time or will probably have in the future, including: loss of earnings or income; reputational repair; ability to earn money in the future; reasonable and necessary medical, hospital, therapy and other expenses, and costs of restoring or repairing reputational harm.

If you find in favor of the plaintiff, but do not find any actual damages, you shall award him nominal damages of one dollar.

**Deleted: (**

_____

(noting that Colorado's pro rata liability statute, C.R.S. § 13-21-111.5 likely does not even apply in a defamation action).

[103] CJI 5:1.

You may not consider any damage to, or feelings of, his family, friends, business associates, former employer, Dominion, or his relatives. It is only Eric Coomer's own injury, personal to him individually, which may be compensated.[104]

If you find that a nonparty, or a party other than one of the defendants here, is responsible for any injuries to the plaintiff, you are to offset or consider that in rendering your decision regarding damages.[105]

**Deleted:** )

---

[104] *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349 (1974); *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 915 n. 50, 917-918 (1982) (sanctions may only be imposed for injuries that were proximately caused by unprotected speech); *Sack on Defamation,* §§ 10.5.3 & 10.5.5.2 (3d ed. 2007) (First Amendment prohibits the award of damages for truthful statements in same article causing injury to his reputation and "[t]he fact plaintiff already had a bad reputation tends to show that his or her reputation has not been substantially affected by additional derogatory communication");

[105] Where appropriate, "fault" of nonparties must be considered. *See Slack v. Farmers Ins. Exch.,* 5 P.3d 280 (Colo. 2000) (section 13-21-111.5, C.R.S., requires the pro rata distribution of civil liability among intentional and negligent tortfeasors who jointly cause indivisible injuries); *Blakeland Drive Inv'rs, LLP IV v. Taghavi,* 2023 COA 30M, ¶¶ 56-59, 532 P.3d 369 (rejecting the argument that RESTATEMENT (SECOND) OF TORTS § 433B(2) (1965) creates an exception to pro rata liability under section 13-21-111.5(1) for indivisible injuries).

**INSTRUCTION 71**

**SPECIAL DAMAGES – DEFINED**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[106] "Special damages" are limited to specific monetary losses, if any, which plaintiff had as a result of defendants' statements. Special damages do not include injuries to plaintiff's reputation or feelings which do not result in specific monetary loss.

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** Eric Coomer must prove, by a preponderance of the evidence, that he suffered what the law calls special damages as a direct result of the statements at issue. If you find that Eric Coomer suffered a financial loss as a direct result of these statements, you will award plaintiff a sum of money that equals the amount of the financial loss he actually suffered as a result of a Defendant's conduct.

If you do not find that Eric Coomer has proved by a preponderance of the credible evidence that he suffered a specific financial loss as a result of the challenged statements, then Coomer cannot prevail and you must find in favor of the Defendants.[107]

---

[106] CJI-Civ. 22:14 (2024).

[107] *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 349-50 (1974); *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) ("Because the allegedly defamatory statements are not libelous *per se*, plaintiff would be required to plead and prove special damages to prevail on his libel claim.").

## INSTRUCTION 72

**REPETITION BY THIRD PERSONS AS AN ELEMENT OF DAMAGES**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[108] In awarding the Plaintiff, Eric Coomer, Ph.D., damages, if any, you must take into account not only the damages to the plaintiff which occurred as a result of the Defendants Michael J. Lindell, Frankspeech LLC, or My Pillow, Inc.'s, original publication of the defamatory statement(s), but also any damages which may have occurred as a result of any repetition of the defamatory statement(s) by third persons. However, you must also find that such repetition was the natural consequence of the Defendants' original publication, or that the Defendant expressly or impliedly authorized its repetition.

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: In awarding the Plaintiff, Eric Coomer, damages, if any, you must take into account not only the damages to the plaintiff which occurred as a result of the original publication(s), but also any damages which may have occurred as a result of any repetition of the defamatory statement(s) by third persons. However, you must also find that such repetition was the natural consequence of the original publication.[109]

---

[108] CJI-Civ. 22:24 (2024).

[109] Defendants here were not the original publishers of the majority of statements at issue. They pre-existed Lindell and the Defendants. This instruction deals with the statute of limitations for purposes of the statute (date of publication) and NOT for purposes of liability. This is improper and would be confusing.

Deleted: Ph.D.,

Deleted: Defendants Michael J. Lindell, Frankspeech LLC, or My Pillow, Inc.'s, original publication of the defamatory statement(s),

Deleted: Defendants'

Deleted: , or that the Defendant expressly or impliedly authorized its repetition

DEFENDANTS' NOTE: with the statute of limitations for purposes of the statute (date of publication) and NOT for purposes of liability. This is improper and would be confusing.

**INSTRUCTION 73**

**NOT DISPUTED**

**ACTUAL DAMAGES – DEFINED**[110]

"Actual damage" includes any impairment of the plaintiff's reputation, personal humiliation, mental anguish and suffering, loss of income, and reasonable and necessary medical, hospital and other expenses, and costs of restoring or repairing reputational harm.

---

[110] CJI-Civ. 22:14 (2024).

**INSTRUCTION 74**

**CIRCUMSTANCES THAT MITIGATE DAMAGES**

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: If you find that the plaintiff, Eric Coomer, is entitled to recover damages from the defendants Michael Lindell, My Pillow, or Frankspeech LLC, then in determining those damages you must take into account any of the following factors that have been proved by a preponderance of the evidence.

1.    Whether the defendants reasonably relied on the source of information on which the statements were based;

2.    Whether the plaintiff's damages were caused, in part, by third persons who published on the same subject, before or about the same time as the defendant published; or

3.    Whether the defendant acted in good faith, believing the statement[s] to be true.[111]


**PLAINTIFF'S PROPOSED JURY INSTRUCTION:** If you find that the plaintiff, Eric Coomer, is entitled to recover damages from the defendants Michael Lindell, My Pillow, or Frankspeech LLC, then in determining those damages you must take into account any of the following factors that have been proved by a preponderance of the evidence.

1.    Whether the defendants reasonably relied on the source of information on which the statements were based;

---

[111] CJI 22:26; *See* ECF No. 261, Order on Defs. Mot. Summ. Judgment.

2.    Whether the defendant acted in good faith, believing the statement[s] to be true.

**INSTRUCTION 75**

**NOT DISPUTED**

**UNCERTAINTY AS TO AMOUNT OF DAMAGES**[112]

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

---

[112] CJI-Civ. 5:6 (2024).

**INSTRUCTION 76**

**MULTIPLE RECOVERY PROHIBITED**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[113] The Plaintiff, Eric Coomer, Ph.D., has sued for the same damages on three different claims for relief. The claims for relief on which the Plaintiff has sued and on which you have been instructed are: Defamation; Extreme and Outrageous Conduct; and Civil Conspiracy.

If you find for the Plaintiff on more than one claim for relief, you may award him damages only once for the same damages.

**DEFENDANTS' PROPOSED JURY INSTRUCTION:** The Plaintiff, Eric Coomer, has sued for the same damages on three different claims for relief. The claims for relief on which the Plaintiff has sued and on which you have been instructed are: Defamation; Intentional Infliction of Emotional Distress; and Civil Conspiracy.

If you find for the Plaintiff on more than one claim for relief, you may only award him damages only once for the same damages.

| | Deleted: Ph.D., |
| | Deleted: Extreme and Outrageous Conduct |

---

[113] CJI-Civ. 6:14 (2024); *Macsenti v. Becker*, 2237 F.3d 1223, 1234 (10th Cir. 2001) (where plaintiff sued for negligence and intentional infliction of emotional distress, judge properly instructed the jury to award damages only once for each item of injury).

**INSTRUCTION 77**

**EXEMPLARY OR PUNITIVE DAMAGES**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION:**[114] If you find in favor of the plaintiff, Eric Coomer, Ph.D. on his claim of claim of defamation then you shall consider whether the plaintiff should recover punitive damages against the defendant.

If you find beyond a reasonable doubt that the defendant acted in a fraudulent, malicious, or willful and wanton manner, in causing the plaintiff's damages you shall determine the amount of punitive damages, if any, that the plaintiff should recover.

Punitive damages, if awarded, are to punish the defendant and to serve as an example to others.

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: If you find in favor of the plaintiff, Eric Coomer, on his claim of claim of defamation then you shall consider whether the plaintiff should recover punitive damages against the defendant.

If you find beyond a reasonable doubt that the defendants My Pillow, Frankspeech, and Michael Lindell acted in a fraudulent, malicious, or willful and wanton manner, in causing the plaintiff's damages you shall determine the amount of punitive damages, if any, that the plaintiff should recover.

Punitive damages, if awarded, are to punish the defendant and to serve as an example to others.

_____

[114] CJI-Civ. 5:4 (2024).

| Deleted: Ph.D. |
| --- |

**INSTRUCTION 78**

**FIRST AMENDMENT – INTRODUCTORY NOTE**

**DEFENDANTS' PROPOSED JURY INSTRUCTION**: In *New York Times Co. v. Sullivan* (1964), the United States Supreme Court held that the guarantees of freedom of speech and press of the First Amendment prohibits a public official, or one that performs duties that are matters of public concern, "from recovering damages for a defamatory falsehood relating to his official conduct **unless he proves that the statement was made with 'actual malice'**—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." This constitutional privilege was premised on America's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open," and on recognition that erroneous statements, especially on matters of public concern, are "inevitable" in the discussion of public affairs. *Id.* at 270. In *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), the Court explained that the term "reckless disregard," like "actual malice," requires that the Plaintiff prove that the Defendants "in fact entertained serious doubts as to the truth" of any statement or publication at issue. Generally, where a plaintiff cannot prove that any Defendant entertained serious doubts or believed what they were stating or publishing was false, then the plaintiff cannot succeed under the provisions of the First Amendment.

**PLAINTIFF OBJECTS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:**
Plaintiff objects to this instruction.[115] The proposed instruction is not in the Colorado Jury

---

[115] Colo. R. Civ. P. 51.1.

143

Instructions, unnecessary and confusing due to other instructions which do comport to the Colorado Jury Instructions, unclear, partial, argumentative, and an inaccurate statement of the law.[116]

---

[116] *Id. See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (In a case such as this involving the reporting of a third party's allegations, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.") (citing *St. Amant*, 390 U.S., at 732).