THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ERIC COOMER,

        Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC, AND MY PILLOW, INC.,

Case No. 1:22-cv-01129-NYW-SBP

        Defendants.

## DECLARATION OF CHRISTOPHER KACHOUROFF

I, Christopher I. Kachouroff, hereby declare the following:

1. I am an attorney representing Defendants Michael Lindell, Frankspeech, and My Pillow, Inc.

2. I submit this Declaration in response to the Court's Order to Show Cause dated April 23, 2025 (Doc. 309).

3. As I have now been able to determine, this Order to Show Cause arises from the fact that my co-counsel, Jennifer DeMaster, had mistakenly filed a draft of our Opposition to Plaintiff's Motion in Limine instead of the final version of the Opposition which we had carefully cite-checked and edited.

4. At the time of the April 21 Conference, I was completely unaware of this mistaken filing. I had previously prepared for the Conference by reviewing the final Opposition which I thought had been filed. When the Court questioned me about the document that had been filed – again, a draft that should not have been filed – I was taken by complete surprise because I was unaware that a draft of our Opposition had been filed instead of the final version over which Mrs. DeMaster and I had so meticulously labored.

Candidly, in the face of the Court's detailed questioning, I was utterly flustered and embarrassed, and, due to my ignorance of what was going on, found myself at a loss for words.

5. Because I did not know what had happened to put this incomplete draft before the Court, I was unable to advise the Court clearly during the Conference on what I now know to have been a mistaken filing. The Court, therefore, was apparently unaware that the filing before it was a draft mistakenly filed. It was not intended to be Defendants' actual Opposition to the Motion in Limine. I must respectfully submit that it was unfair for the Court to continue to rapidly examine me with detailed questions about this document in this posture, when I was clearly confused by the document that was before the Court.

6. I routinely use multiple AI programs as tools to analyze my own and my opposition's arguments. I use AI to analyze the structure of my outline and the logic of arguments as well as those of the opposition. Some of these tools include Microsoft's Co-Pilot, Westlaw, Google, X, and other platforms. While I find them to be incredibly useful, I do not rely on AI to do legal research or find cases. During the hearing and in its order, the Court used the phrase "generative artificial intelligence." I have never heard of that phrase before and refer to artificial intelligence as simply "AI".

7. I typically upload briefs with relevant case law to provide citations during the initial AI process. I also upload legal cases. My experience with the use of AI is that it tends to suggest other cases—some are valid, some are not. I do not rely on it for purposes of drafting legal documents because it is not really designed for that purpose. Regardless of whether I use AI in a particular pleading, I always conduct verification of citations before filing. I also review my opponent's citations. I am the only member of McSweeney, Cynkar & Kachouroff, PLLC that uses AI as a tool. I began doing so approximately one year ago.

8. Between February 22 and March 1, 2025, I was on a long overdue one-week vacation in Mexico with my family. Nevertheless, during that time, Mrs. DeMaster and I completed final revisions on

our Opposition, going through each page to check both the argument and verify the case citations. Because of the limitations on internet service where I was located, as we confirmed deletions and edits, Mrs. DeMaster simultaneously completed a citation check using her Westlaw account. Mrs. DeMaster also sent me a Westlaw citation report that allowed me to compare the citations in the Westlaw report with those in our Opposition. Correspondence confirming our work together and her Westlaw citation report is attached as Exhibit C to our Motion for Leave (Email dated February 24, 2025). These emails are true and correct copies of communication between myself and Mrs. DeMaster. I printed the drafts out and closely reviewed the final version that was to be filed.

9. Mrs. DeMaster made the filing of what she thought was our final, thoroughly reviewed and cite-checked Opposition, but she apparently filed the wrong document.

10. I prepared for the pre-trial onference by reviewing Plaintiff's Motion in Limine, the Opposition that I thought had been filed, and Plaintiff's reply. Given the requirements in this Court's pre-trial order, I placed emphasis in my preparation for the Conference on pre-trial instructions, jury instructions, exhibit and witness lists, supplementation, general questions, and voir dire. Mrs. DeMaster and I spent a great deal of time creating those documents to ensure compliance with the pre-trial order and many required case citations. As the Court knows, it rejected both parties' first submission of jury instructions because it was not in the format expected by the Court.

11. One of the last things to be discussed during the April 21st conference was the Motion in Limine. It is true, as the Court's order noted, that I stated several times that I was unprepared. I intended that to mean unprepared to formally argue the Motion in Limine in a formal motion's hearing. This was because instead of having a discussion at the tables, Plaintiff went to the podium. It appeared to be formal argument. The Court's pre-trial order listed a series of items that would be "discussed" (including motions *in limine*) in the Conference, not formally argued as in a motions hearing. (Doc. 265). I read the Court's

pre-trial order this way because this is the practice in the state and federal courts in Virginia, where I have practiced. That is, a pretrial conference involves an informal discussion to clarify issues and to tee up particular questions on which the Court would subsequently rule. My statements that I was "not prepared" were based on the fact that the Court appeared to be seeking to conduct a full oral argument in the pretrial Conference as opposed to informal discussion of the issues. Nevertheless, I was obviously prepared to discuss the substance of all the matters before the Court, including our Opposition to the Motion *In Limine*, as I did so during these proceedings, even jettisoning issues which were not important to our case.

12. Again, in my experience motions are not formally argued in pretrial conferences, even if their existence and the issues they raise are discussed. I have argued motions *in limine* in a full hearing but that has never been in the informal context of a pretrial preparation conference. Where a court has signaled in advance that it expects something more than what the pre-trial order conveys, I am careful to follow that signal and prepare accordingly for the pretrial conference. To the best of my knowledge, I did not have that indication here. For me, "discussion" is informal. "Argument" is not. This was my first appearance in a pretrial conference in this Court, and if the practice is different here, I apologize for my mistake. However, as I say, it does appear that I was able to answer all the Court's substantive questions about the issues.

13. What I was not able to do was answer questions about a document – a draft of our Opposition (Doc. 283) – that I did not know had been filed. I did not have a copy of the document to which the Court was referring in its questioning, which is why the Court had to provide me with a copy. I was taken completely off guard by the Court's ensuing examination, insisting on going through each citation despite me telling the Court that it may have been a draft and that I needed to look in to it. I cannot adequately convey my shock and extreme embarrassment by trying to review an unfamiliar 17-page document while trying to answer the Court's rapid examination. I could not answer the questions because

I did not understand what was going on. I thought the first few inquiries were genuine and not that the Court already suspected me of unethical behavior or of blindly relying on AI generated legal research. I did not understand what was going on *because my co-counsel and I had not relied on AI legal research and had prepared a thoroughly cite-checked final document to be filed as our Opposition*. During the Conference, I did not recall the circumstances about the creation of Doc. 283 (filed 55 days prior), until I subsequently had an opportunity to investigate the matter.

14. As the Court notes, I told the Court that this appeared to be a "draft" but the Court chose to press from citation to citation, asking me several times whether I was surprised to discover that certain cases did not exist. I truthfully answered that I was utterly surprised. Questioning my citation to cases has never happened to me in 25 years of law practice because I always cite check. Eventually, it became evident that there were errors in the document and that the Court was seeking to build its sanctions case against me. The Court could not know this but I knew that I had not done anything wrong. While answering questions, I was trying to piece together what had been filed with the Court 55 days earlier while separating all my other pleadings filed since then in my other cases. Contrary to the Court's claim, I did not refuse to answer. I simply could not answer and am certain that I told the Court that I needed to "look into it."

15. I am also sure I misspoke several times because I was caught off guard and very nervous. I was trying to determine what occurred and whether I had in fact read the correct document that was filed.

16. The Court concluded by grilling me on whether the document was generated by AI. I freely admitted that I used AI because it is a very helpful tool when used properly. The Court's order insinuates that it had to ask "directly" whether I used AI in order for me to admit using it. While this may be the Court's perspective, it is simply not true. I never volunteered that I used any number of other AI programs (including Westlaw), because I did not believe that this was an AI issue. I was trying to search my memory to determine where Doc. 283 came from.

17. Every time I tried to answer, the Court seemed to be losing its patience. At some point, I decided to engage in as little discussion as possible because I needed to find out exactly what happened. I simply told the Court I needed to "look into it." I was not refusing to answer any questions.

18. When the conference concluded I exited the Court room and called Mrs. DeMaster. We spent several hours piecing together what happened. We discovered that the wrong draft document had been inadvertently filed. Doc. 283 was a mistake and the wrong document. (It should not have been filed. As seen in the comparative version at Exhibit B, that draft underwent extensive revisions.)

19. The correct version of our Opposition is attached as Exhibit A. The document properties at Exhibit D show the documents "last edited" on the same day and is explained in Mrs. DeMaster's declaration. I have reviewed her declaration and believe it accurately reflects the circumstances under which we worked to create the correct Opposition.

20. After it examined me, the Court announced that it was going to issue a rule to show cause. Prior to the conference, I had no warning that would alert me to the filing error. Had I been alerted beforehand with time to review what had been filed, I would have promptly investigated and rectified the issue. The Court stated that "[d]espite having every opportunity to do so," I declined to explain how our Opposition became replete with such fundamental errors.

21. Respectfully, I disagree. The Court did not give me every opportunity to explain let alone a reasonable opportunity to investigate what happened. The Court knew in advance of the pretrial preparation conference that it was going to require something more out of me and did not give me the courtesy to know that it believed there was a problem. If the Court had given me advance notice of a problem with our Opposition (Doc. 283), I likely would have discovered the errors and would have immediately taken steps to withdraw the motion and replace it, and explain the circumstances around the document. Instead, it immediately demanded answers that I tried but could not give.

22. Doc. 283 represents a clear deviation from what my practice has been, and given the number of errors, it is just as reasonable to presume that the document could have been a mistake, especially when I commented during the hearing that this must have been a draft. In fact, that turned out to exactly be the case.

23. If I had been given a reasonable opportunity to investigate Doc. 283, I could have easily provided the Court with clear and correct answers as to what happened. I never had the chance because the Court conducted what felt like a show cause hearing first and then a rule to show cause based on my answers to its examination. I should have at least had the opportunity to know there was an issue and investigate.

24. After having the opportunity to investigate Doc. 283, I can affirm that it is most certainly the incorrect draft of a document that was erroneously filed. I sincerely apologize to the Court for the confusion and inconvenience caused by this erroneous filing. I have also apologized to my opposing counsel and have explained the circumstances to them.

25. The incorrect filing of Doc. 283 was not intentional, it was not made for an improper purpose, and it was not reckless. Consistent with my practice of careful attention to case citations to ensure accuracy, the correct version, attached as Exhibit A, is approximately 13 pages, significantly shorter than the 17-page incorrect filing identified as Doc. 283. In addition to this response, we are seeking leave of this Court to strike Doc. 283 and allow Defendants to file the correct Opposition pleading.

26. Since the hearing, we have confirmed the verifications and deletions were in fact done and that Westlaw was used to verify case citations. The correct version appears to account for all of the issues pointed out by the Court. As I informed the Court, I did not personally conduct cite checks at that time but this was due to my circumstances and I relied on my co-counsel to do so. Such cooperation and divvying up of tasks between counsel working on a case is a common practice. However, I did have the Westlaw

report which I have provided and which I referenced myself. I believe it was reasonable to do what we did, an example of the kind of teamwork between co-counsel that meets the highest professional standards.

27. Mrs. DeMaster is a diligent, thorough, and highly professional attorney who consistently demonstrates care and competence. As she notes, she made a mistake in choosing the final document to file.

28. Just as the best co-counsel work jointly as one team, so they are jointly responsible for their work product and their filings with the Court. As a result, I share the responsibility for this filing error and the resulting confusion. Again, I apologize for this filing error.

29. My normal practice includes manually checking all citations against Westlaw and original authorities. Prior to the pretrial conference, I reviewed our correct Opposition multiple times, including on my way to the funeral of a family member who had tragically and unexpectedly died on March 27, 2025. I believe the arguments we made were sound arguments and complied with Fed. R. Civ. P. 11(b).

30. Pursuant to paragraph 3 of the Court's order, I confirm that I did not advise Defendants that I use a myriad of AI tools in my practice such as Microsoft Word's Co-Pilot, Westlaw's AI, Google's Gemini, X's Grok, Claude, ChatGPT, Perplexity, and others.

31. Pursuant to paragraph 4 of the Court's order, I certify that I spoke to Mr. Lindell shortly after receiving a copy of the Court's order and sent him a copy of this order by email on April 23, 2025 at 9:46 p.m. EDT. He confirmed via email that he received the order.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on April 25, 2025.

*/s/ Christopher I. Kachouroff*