THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CITE DISTRICT

ERIC COOMER,

    Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Case No. 1:22-cv-01129-NYW-SBP

    Defendants.

DEFENDANTS' MOTION TO AMEND PRETRIAL ORDER
AND TO CONTINUE TRIAL

    Defendants Michael J. Lindell, FrankSpeech LLC, and My Pillow, Inc., by and through their counsel, respectfully move this Court to continue the trial currently scheduled for June 2, 2025, pursuant to Fed. R. Civ. P. 16(e) to a later date to ensure a fair trial and adequate preparation. This motion is necessitated by extraordinary and unforeseen circumstances, including the Court's April 23, 2025 Order to Show Cause (Doc. 309), which has imposed significant burdens on defense counsel, prejudiced Defendants' trial preparation, and raised concerns about potential jury bias. For the reasons set forth below, Defendants respectfully request a continuance to safeguard their constitutional rights to due process, effective representation, and an impartial jury.

    **I.**    **Introduction**

    This high-profile defamation case has been marked by complex legal issues and significant public attention. On April 21, 2025, during the Final Pretrial/Trial Preparation Conference, the Court unexpectedly conducted a hearing regarding Defendants' Opposition to

Page **1** of **9**

Plaintiff's Motion in Limine (Doc. 283), identifying errors in the filing later determined to be the result of an inadvertent draft submission, and used Counsel's answers as the basis for a show cause order. See Decl. Kachouroff (Doc. 311-6). Two days later, the Court issued an Order to Show Cause (Doc. 309), accusing defense counsel of misconduct, including blind reliance on generative artificial intelligence, and threatening the highest level of sanctions, including referral to their respective state bars for disciplinary proceedings. See Doc. 309 at 5-6. In that order, Attorney Kachouroff believed that the Court misconstrued his statements regarding unpreparedness for addressing a motion in a formal motion's hearing versus preparedness for informal pre-trial conference discussions.

The Show Cause Order is scathing. It has triggered national media coverage, subjecting defense counsel to reputational harm, emotional distress, and significant distractions from trial preparation. Counsel has expended a majority of last week investigating the circumstances of the erroneous filing and responding to the Order, diverting critical time from compliance with the trial preparation, now just five weeks before the trial date. The public nature of the Order also raises concerns about potential jury prejudice, while the threat of sanctions has impaired counsel's ability to zealously represent Defendants. These extraordinary circumstances, combined with new pretrial obligations imposed post-conference (Doc. 307), necessitate a continuance to ensure a fair trial.

II.     **Background**

Defendants responded to Plaintiff's Motion in Limine with the inadvertent filing of Doc. 283, a draft version. As detailed in defense counsels' declarations, this inadvertent filing was due to human error. See Docs. 311-5 and 311-6.

At the April 21, 2025 Pretrial Conference, the Court unexpectedly shifted focus to Doc. 283, examining Mr. Kachouroff about its case citations. Doc. 311-6 at ¶¶ 4-5. Mr. Kachouroff, unprepared for a substantive hearing on the motion and unaware of the filing error, expressed confusion and noted that the document appeared to be a draft. *See* Hearing Tr. 92:8-13. The Court's rapid examination and accusations of reliance on generative AI for a document that had been filed 55 days earlier left counsel flustered and unable to fully respond. *See* Doc 311-6 at ¶¶ 4-5.

On April 23, 2025, the Court issued the Show Cause Order (Doc. 309), threatening the most severe of sanctions against Defendants' counsel: referrals to state bars for alleged violations of the Rules of Professional Conduct *See* Doc. 309 at 6. Respectfully, the Order misinterpreted Mr. Kachouroff's responses as defiant refusals, despite his statements that he thought the issue might arise out of filing a draft and that he needed to investigate. Doc. 311-6 at ¶14. The Order also required counsel to certify personal delivery to Defendant Michael Lindell and imposed a May 5, 2025 deadline for responses. Doc. 309 at 6. Defendants' counsel spent a great deal of time investigating the circumstances of the inadvertent filing and compiling a response. Defendants' counsel then filed their response on April 25, 2025, well before that deadline and have complied with that order to the best of their abilities.

### III.     Legal Standard

Once a final pretrial order is filed, the "court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). "[T]he burden of demonstrating manifest injustice falls upon the party moving for modification." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000) citing *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.*, 835 F.2d 1306, 1308 (10th Cir. 1987).

The 10th Circuit has articulated the "manifest injustice" standard this way:

> Even that standard isn't meant to preclude any flexibility—trials are high human dramas; surprises always emerge; and no judge worth his salt can forget or fail to sympathize with the challenges the trial lawyer confronts. For all our extensive pretrial procedures, even the most meticulous trial plan today probably remains no more reliable a guide than the script in a high school play—provisional at best and with surprising deviations guaranteed. See, e.g., Sill Corp. v. United States, 343 F.2d 411, 420 (10th Cir.1965) (pretrial orders should not be treated as "hoops of steel"). At the same time, the standard for modifying a final pretrial order is as high as it is to ensure everyone involved has sufficient incentive to fulfill the order's dual purposes of encouraging self-editing and providing reasonably fair disclosure to the court and opposing parties alike of their real trial intentions. See, e.g., Case v. Abrams, 352 F.2d 193, 195 (10th Cir.1965) ("A policy of too-easy modification not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern of the trial." (quoting A. Sherman Christenson, *The Pre–Trial Order*, 29 F.R.D. 362, 371 (1961))). This court will review a district court's decision to amend or not to amend a pretrial order only for abuse of discretion. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1222 (10th Cir.2000).

*Monfore v. Phillips*, 778 F.3d 849, 851 (10th Cir. 2015).

## IV.   Argument

### A. *Extraordinary circumstances justify a continuance.*

The Show Cause Order (Doc. 309) (entered the day after the pretrial order (Doc. 308)) and its fallout constitute extraordinary circumstances that have materially impaired Defendants' ability to prepare for trial. The Order's public accusations and threat of sanctions have created numerous factors that impact Defendants' counsel from effectively prosecuting Defendants' case.

   1.   Significant distraction from trial preparation.

As of the date of this motion, the Show Cause order and Defendants' response thereto are pending a decision by this Court. Not only has Defendants' counsel lost valuable time to comply with the dates in the pretrial order, but they are also under intense scrutiny and are still fielding

calls and questions from various people, colleagues and clients. They also have obligations in other cases.

The threat of disciplinary referrals of the severest nature which this Order threatens has caused emotional distress and family anxieties, impairing counsel's ability to effectively focus on trial preparation in this case. If this Court were to find that sanctions are appropriate, it is inconceivable how the scheduled trial in this matter could proceed with grave prejudice to Defendants.

Responding to the Court's Show Cause Order (Doc. 308) has been a significant distraction from trial preparation easily consuming a majority of the critical week of April 21 to 25, 2025. Both counsel spent a majority of their time investigating the circumstances surrounding the inadvertent filing and preparing the Motion for Leave and Response to the Show Cause Order (Doc. 311), responding to numerous media inquiries and communicating with clients about the order, all of which diverted critical focus from administrative and logistical tasks, witness preparation, trial strategy, and other cases. Prior to the pretrial conference, defense counsel was coordinating a trip for the week of April 22-25 to meet with witnesses and Mr. Lindell to prepare for the upcoming trial. Those meetings were postponed to address the Show Cause order.

Post-conference, the Court issued new directives in the form of minute entries (ECF 307), requiring Defendants to submit legal authority on their defenses, supplement witness lists, summarize the scope of witness testimony for all witnesses they intend to call, file nor more than a 15-page responsive brief to Plaintiff's sufficiency arguments, and confer on stipulated facts by May 5 and May 16, 2025. The new pretrial obligations (Doc. 307) exacerbated this burden, with deadlines overlapping with the show cause response. Counsel has already placed heavy emphasis

Page **5** of **9**

on meeting the requirements of the Show Cause order, pushing all other obligations to the side. This alone has acted as a sanction for the inadvertent filing of Doc. 283 in addition to the national publicity and time away from complying with the Court's new pretrial order (Doc. 307).

These obligations, combined with the Show Cause response, have overwhelmed counsel's capacity to prepare for trial. In fact, Defendants' counsel is trying but is now concerned that they will not be able to properly meet these timelines with the thoroughness they would have originally been able to accomplish—specifically for the Court's order to provide all authorities for defenses (Doc. 307).

2. Media coverage

The Order's accusations were made public by the Court. The Order triggered significant media coverage, portraying counsel as incompetent or unethical. It caused outlets within Colorado to refer to Defendants and their counsel by, for example, the pejorative title of "election deniers".

Media coverage has subjected counsel to relentless press inquiries, consuming time, focus, and emotional energy needed for trial preparation. Further, this publicity risks prejudicing the jury pool, as prospective jurors may form negative impressions of counsel and Defendants. Jurors may form preconceived notions about the case, Mr. Lindell, and his attorneys, further prejudicing the Defendants at trial and impacting potential juror impartiality.

While voir dire should be use to assess any prospective juror's knowledge or impartiality with respect to the Court's order, continuing the trial date would allow the passage of time for the issue to dissipate and give defense counsel more time to comply with the new pretrial obligations issued the day before the show cause order.

3. Resources.

Defendants' counsel are out-of-state attorneys. They face additional logistical burdens, including accommodations for a ten-day long trial, compounded by these pressures. Defendants' counsel has already conveyed to this Court that their resources are already taxed and thin. Prior to the pretrial conference, defense counsel was coordinating a trip to meet with witnesses and prepare Defendant Lindell for the upcoming trial which would occur the week of the conference (April 22) and the following week. It is delayed and otherwise not feasible.

B. *A continuance is necessary to ensure effective representation.*

The Show Cause Order's burdens have impaired counsel's ability to provide competent and diligent representation, as required by the ethical rules of their home state and Colo. RPC 1.1 and 1.3. The loss of preparation time, combined with emotional and logistical strains, threatens effective representation because it has already eaten away at valuable preparation time. It goes without saying, that if the Court issues the sanctions that it has signaled, it is impossible for Defense counsel to mount a defense with those sanctions hanging over their livelihoods and this case.

The public nature of the Order also risks tainting the jury pool, as media coverage may influence jurors' perceptions of counsel or Defendants and their counsel. A continuance would allow time for publicity to dissipate and permit expanded voir dire to assess juror prejudice.

C. *Plaintiff faces minimal prejudice.*

A continuance would cause minimal prejudice to Plaintiff. Plaintiff's pretrial filings are complete, his counsel is local, and he faces no comparable logistical or reputational burdens or the attendant stress of a pending show cause order. Any delay would equally affect both parties' ability to present evidence, and Plaintiff's counsel has not taken a position on Defendants'

motion to correct the filing error. On the other hand, Defendants' counsel are out-of-state attorneys who do not have the resources or the convenience of home court advantage.

V.    Conclusion

The current circumstances threaten the foundation of a fair trial. Despite Defendants' diligent efforts, the unprecedented burdens created by the Court's Show Cause Order—including the threat of a pending sanctions order with severe consequences and compounded trial obligations—have rendered timely and adequate trial preparation impossible. After meeting and conferring with opposing counsel by phone call on April 28, 2025, Plaintiff has indicated that they oppose this motion.

The Court should therefore continue the trial for a period of 45 days to ensure that these proceedings reflect the spirit and letter of fundamental fairness. Defendants respectfully request that the Court grant this Motion, modify the scheduling order, and continue the trial to a later date, along with any further relief necessary to preserve the integrity of the trial.

Dated: April 28, 2025.

Respectfully Submitted,

*/s/ Christopher I. Kachouroff*
Christopher I. Kachouroff (VA Bar No. 44216)
MCSWEENY, CYNKAR & KACHOUROFF PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

Jennifer T. DeMaster (WI Bar No. 1124201)
361 Falls Rd., Ste 610
Grafton, WI 53024
Telephone: (414) 235-7488
jennifer@demasterlaw.com

ATTORNEYS FOR MY PILLOW, INC. AND MICHAEL LINDELL

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Charles J. Cain
Cain & Skarnulis PLLC
P. O. Box 1064
Salida, CO 81201
ccain@cstrial.com

Bradley A. Kloewer
101 North F Street
Suite 207
Salida, CO 81201
bkloewer@cstrial.com

Ashley N. Morgan
303 Colorado Street
Suite 2850
Austin, TX 78701
amorgan@cstrial.com

David Matthew Beller
Recht & Kornfeld, P.C.
1600 Stout Street
Suite 1400
Denver, CO 80202
david@rklawpc.com

**Attorneys for Plaintiff**

> /s/ Christopher I. Kachouroff
> Christopher I. Kachouroff