# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

## PLAINTIFF'S TRIAL BRIEF REGARDING DIRECT AND VICARIOUS LIABILITY

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D. (Coomer) through counsel, submits his Trial Brief Regarding Direct and Vicarious Liability, and in support shows the following:

### I. INTRODUCTION

1. Coomer has sued Defendants Michael J. Lindell (Lindell), Frankspeech LLC (Frankspeech), and My Pillow, Inc. (My Pillow) for defamation, intentional infliction of emotional distress, and civil conspiracy.

2. This brief will clarify the means by which the entity Defendants, Frankspeech and My Pillow, may be held liable for defamation. Specifically, Plaintiff seeks to clarify that potential liability for the entities is not limited to vicarious liability, but rather that the entities can be found to be directly liable for their participation in the defamatory publications at issue.

1

3. This is true regardless of their corporate form and the application of the actual malice standard. Liability may attach directly to any person who has been involved in or takes part in the publication.[1]

## II.   ARGUMENT AND AUTHORITY

### A. Frankspeech and My Pillow are subject to direct liability.

4. Defendants Frankspeech and My Pillow are independently liable for defaming Coomer because they were involved in the publication of the defamatory statements and published the statements with knowledge the statements were false or with reckless disregard as to whether they were false.

5. In *Coomer v. Salem. Media of Colorado, Inc*, Defendant Salem Media of Colorado, Inc. (Salem) challenged whether it could be held directly or vicariously liable for defamatory statements made about Coomer by one of its radio hosts, Randy Corporon. 565 P.3d 1133, 1152 (petition for writ of certiorari pending). The Colorado Court of

---

[1] Colo. Prac., Pers. Injury Torts and Ins. 32.18 Publication (3d ed. Nov. 2024) ("[a]n editor, publisher, owner, or reporter of a newspaper or broadcasting company who has been involved in the publication" of defamatory matter may be liable). Anyone who causes or participates in the publication of defamatory matter or who aids or abets another in publishing the matter can be liable. *Coomer v. Salem Media of Colorado, Inc. et. al.*, 2025 WL 209253 *11 (Colo. App. 2025). *See also Coomer v. Byrne, et. al.*, Case No. 8:24-cv-000008-TPB-SPF, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Jan. 14, 2025) (*citing US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1040 (Del. Super. Ct. 2023) ("[A]ll who take part in the procurement, composition and publication of a libel are responsible in law and equally so.") (applying New York law and quoting *Treppel v. Biovail Corp.*, No. 03 CIV. 3002(PKL), 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005)); *Van Horne v. Muller*, 691 N.E.2d 74, 77 (Ill. App. Ct. 1998) ("[O]ne who requests, procures, or aids or abets, another to publish defamatory matter is liable as well as the publisher."), aff'd in part, rev'd in part on other grounds, 705 N.E.2d 898 (Ill. 1998) (holding that "[a]ll persons who cause or participate in the publication of libelous or slanderous matters are responsible for such publication") (quotation omitted); *Di Giorgio Corp. v. Valley Labor Citizen*, 67 Cal. Rptr. 82, 87 (Ct. App. 1968) ("[I]n the absence of a privilege, anyone who actively participates in the publication of a false and libelous statement is liable for special, general and even punitive damages."); *see also* RESTATEMENT (SECOND) OF TORTS § 581, comment c ("The rule does not relieve from liability the publisher who prints and puts upon the market a libelous newspaper, book or magazine even though its contents are prepared by a third person . . . .").

Appeals ruled Coomer had provided evidence demonstrating a reasonable likelihood of proving Salem published the statements with actual malice and could be held directly liable. *Id.* In its reasoning, the court confirmed that everyone who takes part in the publication is charged with the publication. *Id.* (*citing Zeran v. Am. Online, Inc.*, 129 F.3d 327, 332 (4th Cir. 1997) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 113 (5th ed. 1984) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 347 (1974) (treating a publisher or broadcaster as interchangeable)).

6. In another related proceeding pending in the U.S. District Court for the Middle District of Florida, Judge Barber conducted a review of precedent from multiple jurisdictions in his order denying the defendants' motion to dismiss. *See Coomer v. Byrne et. al.*, 8:24-cv-000008-TPB-SPF, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, ECF 175, pp. 11-13 (M.D. Fla. Jan. 14, 2025). Judge Barber concluded that case law from jurisdictions other than Colorado and Florida generally holds that anyone who causes or participates in the publication of defamatory matter or who aids or abets another in publishing the matter can be liable. *Id.* (*citing US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1040 (Del. Super. Ct. 2023) ("[A]ll who take part in the procurement, composition and publication of a libel are responsible in law and equally so.") (applying New York law and quoting *Treppel v. Biovail Corp.*, No. 03 CIV. 3002 (PKL), 2005 WL 2086339 at *3 (S.D.N.Y. Aug. 30, 2005)); *Van Horne v. Muller*, 691 N.E.2d 74, 77 (Ill. App. Ct. 1998) ("[O]ne who requests, procures, or aids or abets, another to publish defamatory matter is liable as well as the publisher."), aff'd in part, rev'd in part on other grounds, 705 N.E.2d 898 (Ill. 1998)

3

(holding that "[a]ll persons who cause or participate in the publication of libelous or slanderous matters are responsible for such publication") (quotation omitted); *Di Giorgio Corp. v. Valley Labor Citizen,* 67 Cal. Rptr. 82, 87 (Ct. App. 1968) ("[I]n the absence of a privilege, anyone who actively participates in the publication of a false and libelous statement is liable for special, general and even punitive damages."); *see also* RESTATEMENT (SECOND) OF TORTS § 581, comment c ("The rule does not relieve from liability the publisher who prints and puts upon the market a libelous newspaper, book or magazine even though its contents are prepared by a third person . . . .").

7. In *US Dominion, Inc. v. Fox News Network, LLC*, Coomer's former employer, Dominion Voting Systems (Dominion) sued Fox News Network, LLC (FNN) for publishing defamatory statements of facts about Dominion. *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1040 (Del. Super. Ct. 2023) (denying FNN's motion for summary judgment and granting in part and denying in part Dominion's motion for summary judgment). Dominion sued FNN directly; Dominion did not sue the television personalities identified as the agents of FNN that bore responsibility for several of the challenged statements. *Id.* at 1015, 1045-1046. Nor did Dominion name as defendants the FNN's executives who had editorial control. *Id.* Nonetheless, the court granted Dominion's motion for summary judgment with respect to the publication element of defamation. *Id.* at 1040. The court reasoned that there was evidence FNN directed or participated in the publication because FNN controls what is broadcast on its various networks and "does this through its employees as agents of FNN," thus "regardless of who within FNN is responsible for publication, FNN did in fact publish the statements to its

4

viewers." *Id*. With respect to the actual malice element, the court determined there was a genuine issue of material fact and declined to grant either party's motion for summary judgment. *Id*. at 1054. Importantly, the court rejected FNN's arguments that it is only the speaker's state of mind that is relevant to an actual malice determination and not the employees responsible for publication. *Id*. at 1048-1049.[2]

8. It is well-established that a corporation can only act through its agents. *See Colo. Coffee Bean, LLC v. Peaberry Coffee, Inc.*, 251 P.3d 9, 29 (Colo App. 2010), as modified on denial of reh'g (Apr. 1, 2010) (*citing Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 47 (Colo. 1997); *Home Builders Co. v. Reddin*, 97 Colo. 232, 48 P.2d 800, 802 (1935) (defendant corporation "could only act through its lawfully authorized agents"). The same legal principle holds true for other types of corporate entities, including limited liability companies, such as Frankspeech. *In re ETG Fire, LLC*, No. AP 24-1225 TBM, 2025 WL 915381 (Bankr. D. Colo. Mar. 20, 2025) ("Because they are not natural persons, corporate entities, such as ETC Fire[, LLC], 'act only through 'the instrumentality of their officers or other duly authorized agents.'") (*citing Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs., LLC*, 650 B.R. 24, 35 (Bankr. S.D.N.Y. 2023); *Weston v. T&T, LLC*, 271 P.3d 552, 558 (Colo. App. 2011) ("[a]s a business entity, an LLC can only act through its agents.").

9. Accordingly, knowledge and actions may be imputed from an officer of an entity to the entity itself. *New Hampshire Ins. Co. v. TSG Ski & Golf, LLC*, 128 F.4th 1337,

---

[2] Addressing the following cases cited by FNN: *Palin v. New York Times Co.*, 940 F.3d 804, 816 (2d Cir. 2019); *Page v. Oath Inc.*, 270 A.3d 833 (Del. 2022); *Ertel v. Patriot-News Co.*, 544 Pa. 93, 67 A.2d 1038, 1043 (1996); *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018); *Flotech, Inc. v. E.I. Du Pont de Nemours & Co.,* 814 F.2d 775, 781 (1st Cir. 1987).

1351 (10th Cir. 2025) (knowledge of officer of corporation and officer of limited liability company who were acting in their capacities when they approved debt-collection letter was imputed to the business entities, and "false statements in the debt-collection letter were thus knowingly published 'by' the insureds. . . ."); *In re ETG Fire, LLC*, No. AP 24-1225 TBM, 2025 WL 915381 (Bankr. D. Colo. Mar. 20, 2025) ("an agent's knowledge and acts may properly be imputed to a corporate defendant."); *Liggett v. People*, 529 P.3d 113, 126 (Colo. 2023) ("When an agency relationship exists, knowledge obtained by [agents] within the scope of their agency is imputed to the principal."); *Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1182 (Colo. 2003) (officers are agents of the corporation and empowered to act on behalf of the corporation when acting within the proper scope of their authority).

10. Coomer will show that, at the time of publication, Frankspeech and My Pillow knew the statements were false or published the statements with reckless disregard as to whether they were false based on the actions and knowledge of each entity's agents.

**B. Frankspeech and My Pillow are subject to vicarious liability.**

11. Defendants Frankspeech and My Pillow are also vicariously liable for the conduct of their agents, who were, at all times material to this lawsuit, acting in the scope of their authority and in the furtherance of the business.

12. In *Coomer v. Salem Media of Colorado, Inc.*, the Colorado Court of Appeals rejected Salem's contention that it could not be held vicariously liable for defamation. 565 P.3d at 1152. There, Salem argued that the doctrine of *respondeat superior* traditionally applies to negligent conduct whereas defamation is an intentional tort. *Id.*

6

The court determined Coomer proved a reasonable likelihood of prevailing in showing Salem had vicarious liability for Corporon's defamatory statements. *Id.* The court referenced the Colorado Supreme Court's holding in *Keller* and reasoned that "the key factor is whether the commission of that tort, intentional or not, falls within the scope of employment and is intended to further the employer's business." *Id.* (*citing Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005)). The court analogized that a bar owner employing a bouncer may be vicariously liable to a patron if the bouncer injures a patron while forcibly removing him from the premises. *Id.* (*citing Moses v. Diocese of Colo.*, 863 P.2d 310, 329 n.27 (Colo. 1993)).

13. Another division of the Colorado Court of Appeals has also determined that Dr. Coomer's claims for defamation may proceed under a theory of vicarious liability. In *Coomer v. Donald J. Trump for President, Inc.*, the Court allowed Dr. Coomer's claim for defamation to proceed against Rudy Giuliani and Sidney Powell, two attorneys who made defamatory statements while representing the Trump Campaign. *Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 585-86 (Colo. App. 2024) (*citing* RESTATEMENT (SECOND) OF AGENCY § 254 (Am. L. Inst. 1958) ("A principal is subject to liability for a defamatory statement by . . . [an] agent if the agent was authorized, or … apparently authorized to make it."); *Am. Soc't of Mech. Eng'rs Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) ("[I]f an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement.").

14. Coomer will present evidence that the publications at issue were in furtherance of Frankspeech and My Pillow's business. This places their potential liability

7

squarely within this Court's long-standing precedent. *See, e.g., Keller*, 111 P.3d at 448 (Colo. 2005); *Moses*, 863 P.2d at 329 n.27.

15. Vicarious liability applies to defamation cases irrespective of the actual malice standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *See Cantrell v. Forrest City Pub. Co.*, 419 U.S. 245, 253 (1974) (in case involving matter of public concern, although the court of appeals concluded there was no evidence that publisher had knowledge of the inaccuracies in writer's article, the jury heard evidence the publisher approved idea for follow-up article and decided to publish it, and "[f]rom [that] evidence, the jury could reasonably conclude" the publisher "should be held vicariously liable for the damage caused by the knowing falsehoods contained in [writer's] story."); *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir. 1983) (actual malice of its employees was imputable to appellant, but it was error to include independent contractor on the charge for vicarious liability because there was no evidence that appellant controlled the independent contractor "in any manner"); *Jauch v. Corley*, 830 F.2d 47, 51-52 (5th Cir. 1987) (rejecting argument that sheriff could not be vicariously liable for defamatory statements by deputy).

### III. CONCLUSION

16. Frankspeech and My Pillow cannot escape liability for publishing defamatory statements about Coomer by virtue of their corporate form. Nor may they evade responsibility for vicarious liability on the basis the actual malice standard applies in this case. Coomer will show that the entities had knowledge of the falsity of the statements or published them with reckless disregard for whether the statements were

8

true. Frankspeech and My Pillow's scienter may be evidenced through the actions and knowledge of their agents. Frank and My Pillow's agents, including Lindell, were acting within the scope of their authority when they defamed Coomer and their injurious conduct was intended to further the business of those entities.

Respectfully submitted this 5th day of May 2025.

       /s/ Charles J. Cain
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
David M. Beller, No. 35767
david@rklawpc.com
**RECHTKORNFELD PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**