**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-01129-NYW-SBP

ERIC COOMER,

      Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH LLC, and
MY PILLOW, INC.,

      Defendants.

## ORDER ON MOTION IN LIMINE

This matter is before the Court on Plaintiff's Motion in Limine. [Doc. 279, filed February 10, 2025]. Defendants have responded in opposition, [Doc. 283], and Plaintiff has replied, [Doc. 288]. The Court also heard oral argument on the Motion on April 21, 2025 during the Final Pretrial/Trial Preparation Conference. Defendants later filed a Response to Show Cause Order and Motion for Leave to Correct Filing ("Motion to Correct Filing"), seeking to amend their Response. [Doc. 311]. Upon review of the Parties' briefing and oral arguments, the entire docket, and the applicable case law, Plaintiff's Motion in Limine is respectfully **GRANTED in part** and **DENIED in part**. Defendants' Motion to Correct Filing is respectfully **DENIED** to the extent Defendants request leave to file a different version of their Response.

### BACKGROUND

The Court has previously discussed the background of this case, *see* [Doc. 119 at 1–5; Doc. 197 at 3–7; Doc. 261 at 2–3], and repeats it only to the extent necessary to

decide the pending Motion. In brief, Plaintiff Eric Coomer ("Plaintiff" or "Dr. Coomer") has sued Defendants Michael J. Lindell ("Mr. Lindell"), Frankspeech LLC ("Frankspeech"), and My Pillow, Inc. ("MyPillow") (together, "Defendants") for their claims that Dr. Coomer, a former employee of Dominion Voting Systems, Inc., participated in efforts to interfere with the 2020 presidential election. [Doc. 170 at ¶ 29]. Plaintiff alleges that Defendants published false and defamatory statements—which originated from nonparty Joseph Oltmann ("Mr. Oltmann")—that Plaintiff told an "Antifa conference call" that he had "made . . . sure" that President Donald J. Trump would not win the 2020 presidential election. [*Id.*].

Plaintiff proceeds to trial on three claims: (1) defamation, (2) intentional infliction of emotional distress ("IIED"), and (3) civil conspiracy. [*Id.* at ¶¶ 146–59]. He alleges that Defendants' conduct has provoked "an onslaught of harassment and credible death threats issued against him," such that "he is at risk in his home or in going to work; his presence puts his family, friends, colleagues, and his community in danger." [*Id.* at ¶ 152]. Dr. Coomer further alleges that, due to Defendants' conduct, he has "suffered significant actual and special damages including, without limitation, harm to his reputation, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss." [*Id.* at ¶ 150].

In his Motion in Limine, Dr. Coomer seeks to preclude Defendants from introducing several categories of evidence at trial. That includes evidence of: (1) Dr. Coomer's September 2021 motor vehicle accident; (2) Dr. Coomer's sex life; (3) Dr. Coomer's drug and alcohol use; (4) Dr. Coomer's religious beliefs or opinions; (5) Dr. Coomer's opinions about law enforcement, the Black Lives Matter movement, and related issues; (6) Dr. Coomer's Facebook posts about President Trump; (7) Dr. Coomer's assorted other

2

Facebook posts; and (8) the 118-page document titled "Eric Coomer: Pawn, Plant, or Perp?" *See generally* [Doc. 279]. Though the Court's analysis primarily focuses on the Motion in Limine, it begins with Defendants' Motion to Correct Filing before addressing each of these evidentiary categories in turn.

## LEGAL STANDARD

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (quotation omitted). Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence contemplate these motions, motions in limine enable the court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (further citations omitted)). A limine order can save litigants time, cost, and effort by resolving evidentiary questions in advance of trial. *Id.* "Such rulings, however, are often better left until trial when the Court can assess the question in light of the evidence presented at trial." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1201 (D. Colo. 2022). The decision of whether and how to rule on a motion in limine lies within the district court's discretion. *Jones*, 59 F.3d at 146; *cf. Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (reaffirming the "broad discretion" afforded to a "district court's evidentiary rulings"). Moreover, the Court "may alter its limine ruling based on developments at trial or on its own sound judicial discretion." *Cline*, 188 F. Supp. 2d at 1291 (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

While the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has not expressly defined the showing required to prevail on a motion in limine, this Court concurs with the consensus among district courts in this Circuit that "[t]he moving party bears the burden of demonstrating . . . that the evidence at issue is inadmissible on any relevant ground." *Wheatridge Off.*, 578 F. Supp. 3d at 1201 (quotation omitted); *accord United States v. Begay*, 497 F. Supp. 3d 1025, 1082 (D.N.M. 2020) (quoting *Cline*, 188 F. Supp. 2d at 1292). To meet this burden, a movant generally must "identify the particular evidence at issue and articulate with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground." *Cline*, 188 F. Supp. 2d at 1292. "A court is well within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity." *Id.* (citing *Nat'l Union v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)). In other words, denial of a motion in limine is no guarantee that the evidence will be admitted at trial. *Wheatridge Off.*, 578 F. Supp. 3d at 1201. And the Court remains mindful that the proponent of a piece of evidence ultimately bears the burden of establishing the evidence's admissibility. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1149 (10th Cir. 2009).

## ANALYSIS

### I.   Defendants' Motion to Correct Filing

Before resolving the Parties' substantive arguments, the Court must address which version of Defendants' Response it will consider. On April 23, 2024, the Court issued an Order to Show Cause based on the numerous citation issues in Defendants' Response and defense counsel's admission that the problematic citations were supplied by

4

generative artificial intelligence.  *See* [Doc. 309]; *see also* [Doc. 315 at 86:6–108:22].  Two days later, Defendants filed their Motion to Correct Filing.  [Doc. 311].  In relevant part, the Motion to Correct Filing seeks leave to "file the revised and correct version" of Defendants' Response.  *See* [Doc. 311 at 4].  As an initial matter, Defendants' decision to combine a motion with their response to the Order to Show Cause violates Local Rule 7.1(d).  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall be filed as a separate document.").

But even if the Motion to Correct Filing complied with the Local Rules, Defendants fail to establish any excusable neglect to extend them extra time to file a new Response.  Defendants' Response was due more than two months ago, on February 24, 2025.  *See* [Doc. 265 at 6].  Rule 6 of the Federal Rules of Civil Procedure provides that when an act must be done within a specified time, the court may extend the time on a motion made after the time has expired if the party "failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  To the extent Defendants mistakenly filed the incorrect version of the Response, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."  *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

After filing the Response, Defendants had ample time before the Final Pretrial/Trial Preparation Conference to review their filing, alert the Court to their mistake, and seek leave in advance to correct it.  They did not.  As a result, this case has proceeded based on the filed version of the Response.  Plaintiff's Reply expressly addresses issues raised in the Response as it was filed.  [Doc. 288 at 1].  And the Court heard oral argument at the Final Pretrial/Trial Preparation Conference based on the arguments made in the briefing on the docket—after expressly advising the Parties that it would do so in the Trial

5

Preparation Order.[1]  [Doc. 265 at 1–2].  In the absence of excusable neglect—and given that the Motion in Limine has now been fully briefed, argued, and pending for almost three months—Defendants must stand on the Response they filed.  Moreover, upon review of the purported "correct" version of the Response, the Court discerns no substantive arguments in the amended version that were not raised in the submitted Response or during oral argument.  Accordingly, the Motion to Correct Filing, [Doc. 311], is respectfully **DENIED** only insofar as Defendants ask to file a different version of the Response for the Court's consideration.  The Court will issue a separate ruling on the Order to Show Cause in due course.

## II. Motor Vehicle Accident in September 2021

In his Motion in Limine, Plaintiff first asks the Court to exclude evidence of his involvement in a motor vehicle accident in September 2021.  [Doc. 279 at ¶¶ 15, 18].  Plaintiff avers that, when questioned by police, he initially denied any role in the accident but later admitted that he had accidentally run his car into the side of a building.  [*Id.*at ¶ 18].  He was then cited for reckless driving.  [*Id.*].  Dr. Coomer seeks to exclude testimony about the accident, the body-camera footage from police officers' subsequent encounter with Dr. Coomer, and an edited video compilation of the body-camera footage that was publicized through Mr. Oltmann's podcast.  [*Id.* at ¶¶ 15, 21].  Dr. Coomer argues that this evidence should be excluded under Rule 403 because its probative value is "non-existent" with respect to his claims.  [*Id.* at ¶ 18].  Dr. Coomer further contends that Defendants may try to inject additional prejudice or confusion by speculating that he was

---

[1] Defense counsel's attempts to shift responsibility to the Court, [Doc. 311-6 at ¶¶ 5, 11–12], are respectfully unpersuasive.

6

intoxicated during the accident. [*Id.* at ¶ 20]; *see also* [Doc. 315 at 69:21–25 (defense counsel characterizing the body-camera footage as depicting "a DUI hit-and-run where Dr. Coomer commits a felony on this video cam")].

Defendants respond that the body-camera footage is "directly relevant to Mr. Coomer's credibility and character for truthfulness, which are central issues in this defamation case." [Doc. 283 at 3]. They also argue that Federal Rule of Evidence 608(b) permits cross-examination about specific instances of conduct if they relate to the witness's truthfulness. [*Id.* at 4]. Finally, Defendants contend that the body-camera footage should be admissible on cross-examination "because it concerns Mr. Coomer's mental state and pre-existing conditions effecting [sic] his psychological well-being." [*Id.* (citation omitted)].

The Court will allow limited cross-examination of Dr. Coomer directed at his character for truthfulness in initially denying his involvement in the accident. Rule 608(b) permits cross-examination about "specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). If and when Dr. Coomer testifies, Defendants may question him about the specific September 2021 incident and any untruthful statements Dr. Coomer made regarding the incident. With respect to this narrow avenue of cross-examination, the Motion in Limine is respectfully **DENIED**.

Other testimony or evidence of the accident, however, is inadmissible. Rule 608(b) expressly precludes the use of extrinsic evidence—such as body-camera footage, edited or otherwise—to support or attack a witness's character for truthfulness. During the Final Pretrial/Trial Preparation Conference, defense counsel suggested that referring to

7

Plaintiff as "Dr. Coomer," due to his Ph.D. in nuclear engineering, constitutes credibility evidence that opens the door to Defendants' introducing rebuttal evidence. [Doc. 315 at 73:2–13]. But Defendants have provided no authority for the proposition that referring to a party by his academic title constitutes character evidence that permits Defendants to introduce unrelated, otherwise inadmissible extrinsic evidence to attack a different aspect of the party's character. As the Advisory Committee notes to Rule 608(b) explain, "the inquiry is strictly limited to character for veracity, rather than allowing evidence as to character generally." Fed. R. Evid. 608(b), advisory committee's note on proposed rules. And aside from the limited cross-examination described above, testimony about the motor vehicle accident is not directed at Dr. Coomer's credibility for truthfulness. Testimony about other aspects of the accident, along with both the unaltered and edited body-camera footage, is therefore inadmissible under Rule 608(b).

Because Defendants identify no viable alternative basis for its admissibility, the Court will exclude evidence of Dr. Coomer's motor vehicle accident under Rule 403. *See* Fed. R. Evid. 403 (permitting exclusion of evidence whose probative value is substantially outweighed by a risk of unfair prejudice). Nearly all of the events relevant to this lawsuit occurred before the September 2021 accident. *See generally* [Doc. 170 at ¶¶ 28–99]. Defendants do not explain how a vehicle accident occurring after the events that spurred this lawsuit would be probative of Dr. Coomer's "mental state and pre-existing conditions." [Doc. 283 at 4]. Evidence of the September 2021 motor vehicle accident creates a risk of prejudice to Dr. Coomer that substantially outweighs any probative value and is likely to confuse the jury. Accordingly, the Motion in Limine is respectfully **GRANTED** with respect to (1) body-camera footage of the September 2021 motor vehicle accident, (2) the

edited compilation of the body-camera footage, and (3) any testimony about the incident that does not relate to the truthfulness of Dr. Coomer's statements to police about his involvement in the accident.

### III. Dr. Coomer's Sex Life

Dr. Coomer seeks to exclude evidence of his "prior sexual preferences or activities" and internet posts "from the early 1990s relating to [the] same." [Doc. 279 at ¶ 23]. He contends that such evidence is irrelevant and unfairly prejudicial. [*Id.* at ¶¶ 23–24]. Defendants' Response does not address or dispute this argument, *see* [Doc. 283], and defense counsel clarified at the Final Pretrial/Trial Preparation Conference that he did not intend to "bring[] up" Dr. Coomer's sex life, [Doc. 315 at 76:15–17]. The Court therefore respectfully **GRANTS** this portion of the Motion in Limine as unopposed and excludes evidence of, or testimony about, Dr. Coomer's sex life.

### IV. Dr. Coomer's Drug and Alcohol Use

Dr. Coomer next asks the Court to exclude evidence of Dr. Coomer's "alleged drug and alcohol use" and "prior commitment to an inpatient drug rehabilitation facility." [Doc. 279 at ¶ 26]. Dr. Coomer argues that such evidence is irrelevant, unfairly prejudicial, and amounts to improper character evidence. [*Id.* at ¶¶ 26–27]. He asserts that "[t]here is no evidence that Dr. Coomer was engaging in illicit drug use or under the influence of alcohol at any time material to this lawsuit." [*Id.* at ¶ 27]. During the Final Pretrial/Trial Preparation Conference, Plaintiff's counsel asserted that Dr. Coomer's drug use was "remote," and that Dr. Coomer has not used heroin since 2005. [Doc. 315 at 61:20–62:14].

Defendants respond that evidence of Dr. Coomer's drug and alcohol use is relevant to rebut Dr. Coomer's claims for emotional distress damages. [Doc. 283 at 6–

9

7].  According to Defendants, evidence of Dr. Coomer's drug use would not be offered as character evidence, but "to properly contextualize and contradict his damages claims as far as psychological injuries."  [*Id.* at 7].

The Court will exclude evidence of Dr. Coomer's past drug and alcohol abuse under Rule 403.  Although courts do permit evidence of drug and alcohol use as relevant to emotional damages, those cases generally involve recent or ongoing substance abuse.  *See, e.g.*, *Solis-Marrufo v. Bd. of Comm'rs for Cnty. of Bernalillo*, No. 11-cv-00107-JB-KBM, 2013 WL 1658203, at *20 (D.N.M. Mar. 28, 2013) (permitting evidence of plaintiff's "previous and current cocaine use" over the "past five years" to rebut claims for mental and emotional distress damages); *Lowery v. City of Albuquerque*, No. 09-cv-00457-JB-WDS, 2012 WL 1378522, at *19 (D.N.M. Apr. 9, 2012) (permitting evidence of past and present drug use to rebut emotional damages because "[t]hese damages depend on the [d]efendants' conduct on the [p]laintiffs' mental state; it is, therefore, important for the jury to be aware of mind-altering substances that the [p]laintiffs may be taking").  Defendants have not asserted that Dr. Coomer struggled with substance abuse during any time relevant to this lawsuit.  And they provide no support for the contention that substance abuse that ended nearly 20 years ago is admissible to rebut damages.  At the Final Pretrial/Trial Preparation Conference, defense counsel appeared to concede this point, stating that he would not "bring[] up" Dr. Coomer's drug use at trial.  [Doc. 315 at 76:15–17].  The Court thus agrees with Plaintiff that evidence of his past substance abuse would be substantially more prejudicial than probative.  The Motion in Limine is respectfully **GRANTED** as to Dr. Coomer's drug and alcohol use.

**V.     Dr. Coomer's Religious Beliefs**

Plaintiff argues that the Court should exclude evidence or testimony about his religious beliefs and opinions under Federal Rules of Evidence 401 and 610. [Doc. 279 at ¶ 30]. At the Final Pretrial/Trial Preparation Conference, defense counsel twice stated that Defendants do not intend to present evidence of Dr. Coomer's religious beliefs. *See* [Doc. 315 at 76:15–17, 102:20–103:3]. The Court therefore **GRANTS** this portion of the Motion in Limine as unopposed.

**VI.    Dr. Coomer's Opinions About Law Enforcement and Black Lives Matter**

Plaintiff argues that evidence of his opinions about law enforcement and the Black Lives Matter movement should be excluded as irrelevant, unfairly prejudicial, and confusing to the jury. [Doc. 279 at ¶¶ 31–32]. Defendants respond that Plaintiff's opinions about law enforcement are relevant insofar as they relate to law enforcement workers who support President Trump. *See* [Doc. 283 at 5]. To the extent Defendants wish to cross-examine Dr. Coomer about his opinion of President Trump, Plaintiff does not seek to exclude that testimony. *See* [Doc. 279 at ¶¶ 34–35 (asking the Court only to preclude testimony or evidence of Plaintiff's prior Facebook posts about President Trump)]. But Defendants do not explain why Plaintiff's opinions about law enforcement in general, the Black Lives Matter movement, or other political issues would be relevant to this case. Such testimony is irrelevant to Plaintiff's claims and risks confusing the jury. The Motion in Limine is therefore **GRANTED** with respect to evidence or testimony regarding Dr. Coomer's opinions and statements about law enforcement, the Black Lives Matter movement, criminal justice reform, and the death of George Floyd.

**VII.    Dr. Coomer's Facebook Posts About President Trump**

Plaintiff next asks to exclude evidence and testimony about his past Facebook posts expressing "distaste for President Trump." [*Id.* at ¶ 34]. Plaintiff argues that because Defendants will likely ask him directly about his opinion of President Trump, evidence of the Facebook posts is unnecessarily cumulative. [*Id.* at ¶ 35]. Plaintiff also suggests that the Facebook posts will unfairly prejudice him in the eyes of any jurors who voted for President Trump. [*Id.*].

Defendants have advanced two theories for why Dr. Coomer's Facebook posts about President Trump should be admitted—one in their briefing and one at oral argument.  First, in their Response, Defendants argue that Dr. Coomer's prior Facebook posts could be used to "[p]rovid[e] context" for Defendants' statements about Dr. Coomer and rebut his claims of actual malice. [Doc. 283 at 5]. But as Plaintiff points out, Defendants have disavowed any knowledge of Dr. Coomer's Facebook posts at the time they made the alleged defamatory statements. [Doc. 288 at ¶ 4 (quoting [Doc. 288-1 at 344:2–11])]; *see also* [Doc. 315 at 91:22–92:22 (defense counsel agreeing that Defendants do not seek to introduce evidence of Dr. Coomer's Facebook posts to rebut actual malice, because "Mr. Lindell had no access to any of those statements")].

Instead, Defendants argued, for the first time, at the Final Pretrial/Trial Preparation Conference that evidence of Dr. Coomer's posts about President Trump is relevant to Dr. Coomer's credibility. [Doc. 315 at 84:19–85:20]. Under this theory, Defendants contend that if Dr. Coomer's past Facebook posts show that he is "vitriolic" toward President Trump, the jury "could reasonably infer that he's the kind of person that would actually have done this type of . . . Antifa call." [*Id.* at 85:13–20]. Thus, the argument goes, the

jury could rely on Dr. Coomer's past statements about President Trump to "disbelieve" Dr. Coomer's testimony that he never participated in the alleged "Antifa call" and conclude that Defendants' statements about Dr. Coomer were substantially true. [*Id.*].

To prevail on a defamation claim "under the First Amendment and Colorado law," a plaintiff must prove that a statement involving a matter of public concern was: (1) defamatory; (2) materially false; (3) concerned the plaintiff; (4) published to a third party; (5) published with actual malice; and (6) caused actual or special damaged. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017) (citation omitted); *see also, e.g.*, *Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993). A defamatory statement, at a minimum, must be false. *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1360 (Colo. 1983). Accordingly, Dr. Coomer bears the burden of establishing the falsity of Defendants' statements regarding his participation in an Antifa call, during which he stated that he had "made . . . sure" that President Trump would not win the 2020 presidential election. [Doc. 170 at ¶ 29].

The Court agrees with Defendants that Dr. Coomer's Facebook posts expressing opinions about President Trump are relevant to Dr. Coomer's credibility. Evidence of those opinions may help the jury evaluate Dr. Coomer's testimony that Defendants have falsely claimed he participated in election-rigging against President Trump. This is broadly consistent with Plaintiff's position in his Motion—he does not argue that all evidence of his opinions about President Trump should be excluded, just the statements in his Facebook posts. [Doc. 279 at ¶ 35]. But at this pretrial stage, the Court cannot conclude that the Facebook posts are necessarily cumulative with Dr. Coomer's own testimony for purposes of Rule 403.

13

Nor does Plaintiff explain how Facebook posts expressing opinions about President Trump would be unfairly prejudicial while Dr. Coomer's testimony about President Trump would not.  After all, "[e]vidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003) (quotation omitted).  "Unfair prejudice in the Rule 403 context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (quotation omitted).  At trial, Defendants may introduce certain statements from the Facebook posts in a manner that Plaintiff believes is cumulative, unfairly prejudicial, or otherwise inadmissible, and Dr. Coomer remains free to object at that time.  For now, though, the Court finds that Plaintiff has failed to carry his burden to show that his posts about President Trump are "inadmissible on any relevant ground."  *Wheatridge Off.*, 578 F. Supp. 3d at 1201.  The Motion in Limine is respectfully **DENIED** insofar as Defendants seek to admit Plaintiff's Facebook posts about President Trump to attack Dr. Coomer's credibility.

**VIII.   Dr. Coomer's Other Facebook Posts**

Plaintiff also seeks to preclude Defendants from admitting other Facebook posts made by Dr. Coomer about other "extraneous" matters.  [Doc. 279 at ¶ 36].  These posts could include commentary on Texans or the death of Jonathan Sackler, or a picture of Dr. Coomer dressed as a clown for Halloween.  [*Id.*].  Plaintiff contends these posts are irrelevant and inadmissible.  [*Id.*].  Defendants did not address these posts in their Response or at the Final Pretrial/Trial Preparation Conference.  *See* [Doc. 283].

14

With respect to the specific examples provided by Plaintiff—Dr. Coomer's past Halloween costume or his opinions about Texans and Jonathan Sackler—the Court respectfully **GRANTS** the Motion in Limine as unopposed. But the Court will go no further at this time. There may be numerous irrelevant and inadmissible internet posts by Dr. Coomer that have been disclosed in this lawsuit. It remains Dr. Coomer's burden, however, to "identify the particular evidence at issue and articulate with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground." *Cline*, 188 F. Supp. 2d at 1292. The Court will not exclude a general category of evidence without any information about its contents. To the extent Plaintiff asks the Court to preclude admission of other unspecified Facebook posts, the Motion in Limine is respectfully **DENIED without prejudice**.

## IX. The 118-Page "Background Document"

Plaintiff argues that the Court should exclude the 118-page document titled "Eric Coomer: Pawn, Plant, or Perp?" pursuant to a litany of evidentiary rules. [Doc. 279 at ¶¶ 37–39]; *see also* [Doc. 280]. Dr. Coomer's position boils down to two arguments. First, he argues that the document is inadmissible hearsay and further contains hearsay within hearsay. [*Id.* at ¶ 38]. Second, Dr. Coomer notes that the document contains statements about topics implicated in other sections of his Motion in Limine, including "sexual proclivities, prior drug and alcohol use, beliefs about religion, and opinions about law enforcement." [*Id.* at ¶ 39 (footnotes omitted)]. Those statements, he asserts, are likely to "distract and inflame the jury" and carry minimal probative value. [*Id.*].

At the Final Pretrial/Trial Preparation Conference, defense counsel conceded that "the only way [the document] would become admissible" is "[i]f it were used for

15

impeachment purposes." [Doc. 315 at 83:7–10]. He clarified that he would "withdraw" the document as an exhibit and "would not be seeking the admissibility of the entirety of the exhibit under any circumstance." [*Id.* at 82:22–83:3, 83:17–20]. The Motion in Limine is therefore **GRANTED** as unopposed, and the 118-page document is excluded from admission at trial. To the extent Defendants wish to use statements in the document for impeachment purposes, Plaintiff may raise contemporaneous objections if they arise.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Defendants' Response to Show Cause Order and Motion for Leave to Correct Filing [Doc. 311] is respectfully **DENIED** only insofar as Defendants ask to file a different version of the Response for the Court's consideration;

(2) Plaintiff's Motion in Limine [Doc. 279] is **GRANTED in part** and **DENIED in part**;

(3) Plaintiff's Motion is **DENIED** to the extent Defendants wish to cross-examine Plaintiff about his alleged false statements regarding his involvement in the September 2021 motor vehicle accident, and **GRANTED** as to the original and altered body-camera footage, as well as any other testimony about the accident;

(4) Plaintiff's Motion is **GRANTED** with respect to Dr. Coomer's:

    (a) sex life;

    (b) drug and alcohol use;

    (c) religious beliefs;

(d) opinions about Black Lives Matter, law enforcement, and related issues; and

(e) Facebook posts about Texans, Jonathan Sackler, and past Halloween costumes;

(5) Plaintiff's Motion is **DENIED** with respect to his Facebook posts expressing opinions about President Trump;

(6) Plaintiff's Motion is **DENIED without prejudice** as to other unspecified Facebook posts; and

(7) Plaintiff's Motion is **GRANTED** as to the "Eric Coomer: Pawn, Plant or Perp?" document.

DATED: May 9, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge