IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ERIC COOMER, Ph.D.,

    Plaintiff,

v.                                           Case No. 1:22-cv-01129-NYW-SKC

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

    Defendants

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF REGARDING
DIRECT AND VICARIOUS LIABILITY**

---

**I.   Introduction**

    Defendants Michael J. Lindell, Frankspeech LLC ("Frankspeech"), and My Pillow, Inc. ("My Pillow") submit this response to Plaintiff Eric Coomer's Trial Brief Regarding Direct and Vicarious Liability. Plaintiff's attempt to extend defamation liability to these corporate defendants is untenable. Plaintiff has not detailed any sufficiency of proof concerning Lindell individually and so we do not respond to what has not been argued. The authorities Plaintiff cites do not support the imposition of direct or vicarious liability on entities that neither authored nor editorially endorsed the challenged statements. Rather than relying on specific, fact-based allegations against FrankSpeech or MyPillow, Plaintiff invokes broad, repetitive citations to general principles that require factual support.

    Plaintiff's overall strategy stretches the term "publication" beyond its ordinary and legal meaning by attempting to impute liability to entities like My Pillow and FrankSpeech that had no

role in drafting, approving, or distributing the allegedly defamatory content. The term "publication" is improperly construed to include passive business support or corporate affiliation, contrary to ordinary usage and well-established defamation doctrine.

## II. Argument and Authority

### A. FrankSpeech and My Pillow are not directly liable for the alleged defamation.

Coomer asserts that FrankSpeech and My Pillow are directly liable because they "were *involved* in the publication of the defamatory statements" and acted with actual malice (Trial Brief ¶¶ 4–6 (emphasis added)). This position misconstrues both the facts and the legal standards applicable to direct publisher liability. By equating "involvement" with "liability," the Plaintiff's legal theory would broadly implicate every online platform, content provider, and advertiser in defamation lawsuits, even for minimal involvement, simply because they could be deemed "involved" in the publication due to earning user fees or advertising revenue.

In *Coomer v. Salem Media of Colorado, Inc*., 565 P.3d 1133 (Colo. App. 2025), the state appellate court decided an anti-SLAPP motion *de novo* under the "reasonable likelihood standard," noting that Plaintiff did "not need to prove [his] case at the anti-SLAPP stage." *Id*. at 1142. In evaluating Coomer's evidence, the court did not "make factual findings, make credibility determinations, [n]or weigh the evidence to resolve factual conflicts" but rather took that evidence as true for purposes of the anti-SLAPP motion. *Id.*

Plaintiff alleged that Salem published over a hundred defamatory statements against him. *Id.* at 1140. Salem did not dispute that as the broadcaster, it was treated as the publisher for purposes of defamation. *Id.* at 1149. In support, Plaintiff provided an affidavit from a former Salem talk show host that "Salem monitors its hosts and will interrupt their broadcasts if they break with Salem's image." *Id*. Under the "reasonable likelihood" standard applicable to special

motions to dismiss, the court found evidence at that preliminary stage that Salem monitored its broadcasts and could intervene, supporting direct liability. *Id*. at 1150.

By contrast, Plaintiff here must prove that FrankSpeech and My Pillow actively controlled or directed the specific content published by LindellTV, which aired the first interview of Oltmann, approximately six months after over a hundred other third party publications about Oltmann were already published and in the public domain.

FrankSpeech operates as an internet platform hosting third-party content, just like YouTube, Rumble, and Twitter. These are akin to the interactive computer service in *Zeran v. America Online, Inc*., 129 F.3d 327 (4th Cir. 1997). Plaintiff's citation to *Zeran* undercuts rather than supports his position. *Zeran* held that 47 U.S.C. § 230 of the Communications Decency Act immunizes such platforms from liability for third-party content, *even if they have "notice" of its defamatory nature*. *Id*. at 330–33 (noting that "[l]iability upon notice would defeat the dual purposes advanced by § 230 of the CDA.") Plaintiff's failure to address § 230 undermines his direct liability claim against FrankSpeech.

*Coomer v. Byrne*, 2025 WL 90097 (M.D. Fla. Jan. 14, 2025), merely restates general principles that participants in defamation can be liable. It does not address corporate entities like FrankSpeech or My Pillow, nor does it establish that passive involvement (*e.g.,* owning a platform or advertising for shows or events) constitutes direct participation. In *Byrne,* Judge Barber noted that:

> a treatise on Colorado law states that "[a]n editor, publisher, owner, or reporter of a newspaper or broadcasting company who has been involved in the publication" of defamatory matter may be liable. Colo. Prac., *Pers. Injury Torts and Ins*. § 32:18. Publication. (3d ed. Nov. 2024).

*Coomer v. Byrne*, No. 8:24-cv-8, 2025 WL 90097, at *5 (M.D.Fla., 2025). That is distinct because neither FrankSpeech nor My Pillow are editors, reporters, newspapers, or broadcasting companies.

In addition, Plaintiff's reliance on the cited cases such as *Van Horne v. Muller*, 691 N.E.2d 74 (Ill. App. Ct. 1998), and *Di Giorgio Corp. v. Valley Labor Citizen*, 67 Cal. Rptr. 82 (Ct. App. 1968), are inapposite. Those cases involved active procurement or republication, not the attenuated involvement of FrankSpeech and My Pillow alleged here. Moreover, the California case of *Di Giorgio Corp. v. Valley Labor Citizen* really has no applicability to Plaintiff's case because California is more stringent than Colorado. 67 Cal.Rptr. 82, 87 (Cal.App. 1968) (no liability unless plaintiff demands a retraction pursuant to state statute).

Next, *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002 (Del. Super. Ct. 2023), is also distinguishable. Dominion asserted that Fox Corporation was vicariously liable for its subsidiary because Fox's chief executives (i.e., the Murdochs) would "weigh in" on the "specific direction on both the tone and narrative of Fox's news coverage," and were "fundamentally involved in the day-to-day operations of [its subsidiary Fox News Network, LLC] 'via phone calls and emails with 'suggestions' on hosts, narratives, topics, and guests . . . .'" *Id.* at 1042. Nevertheless, the Delaware court denied summary judgment because there were genuine issues of material fact as to whether Fox Corporation was vicariously liable. Thus, it was for the jury to decide. *Id.*

Plaintiff's trial brief cites general agency principles in a myriad of cases such as *In re ETG Fire, LLC*, No. AP 24-1225 TBM, 2025 WL 915381. *ETG Fire* is a bankruptcy case holding that:

> for purposes of Section 523(a)(6), a corporate entity's intent may be determined by imputing to the entity the acts and intentions of the corporate entity's

>management and senior employees, *acting within the scope of such agents' employment*, in the entity's interest

2025 WL 915381, at *19 (emphasis added). Plaintiff must present comparable factual evidence that FrankSpeech or My Pillow executives, in their corporate capacities and acting within the scope of their employment, directed the publication of specific defamatory statements with knowledge or belief that they were false. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). No such facts will be present at trial.

FrankSpeech enjoys § 230 immunity. My Pillow, a retail outlet that manufactures and sells beddings materials, lacks any editorial infrastructure of a media company like the Fox News Network, and Plaintiff's brief does not specify how My Pillow "participated" in publication beyond vague assertions of agency. Taking Plaintiff's citations at face value would appear to mean that any corporate entity that advertises anywhere would be subject to defamation liability merely because their name, likeness, or a commercial appeared alongside a specific broadcast or publication. According to Plaintiff, this too is "involvement." The standard Plaintiff demands would effectively chill all corporate advertisements on any platform or event.

### B. Plaintiff must prove that FrankSpeech and My Pillow acted with "Actual Malice"

Under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), Plaintiff must prove by clear and convincing evidence that FrankSpeech and My Pillow published defamatory statements with actual malice—i.e., knowledge of falsity or reckless disregard of the truth. Plaintiff's brief asserts that both entities "knew the statements were false or published [them] with reckless disregard" (Trial Brief ¶ 10) but provides no specific factual evidence of their knowledge of falsity or recklessness. Instead, he cobbles together a reverse form of agency—that is, whenever Lindell talks about Dominion, he is talking about Plaintiff. And, whenever Lindell speaks about anything

at issue here, he speaks as an agent of My Pillow and FrankSpeech. This is fatal to Plaintiff's position.

Plaintiff cites to *Cantrell v. Forest City Publishing Co*., 419 U.S. 245, 253-54 (1974), in asserting that FrankSpeech and My Pillow are vicariously liable "irrespective" of whether they acted with actual malice as defined by *NY Times*. This is not what the court held in *Cantrell*. . In *Cantrell*, the Court reversed the court of appeals and affirmed the district court's ruling that the magazine was directly liable for the reporter's defamatory publication under traditional doctrines of *respondeat superior* noting the reporter "frequently suggested stories he would like to write for the magazine" thus showing the article was well within the scope of the reporter's employment*. Id.* at 253-254. Sufficient evidence existed there to show that the magazine's editor approved the idea of a follow-up article, and thus had control over its publication pursuant to the reporter's employment with the magazine. *Id*. Plaintiff has not offered such factual evidence, relying instead on imputed knowledge by bare assertions that Lindell was an agent (Trial Brief ¶ 9). This is insufficient for direct liability and thus requires a showing of actual malice.

Lindell is not an employee of FrankSpeech LLC, and his statements regarding his opinions about electronic voting machines are not part of his employment by My Pillow. *Zeran* further undermines Plaintiff's claim by emphasizing that knowledge of defamatory material cannot be inferred from a platform's failure to remove defamatory content, even with notice. *Zeran,* 129 F.3d, at 333. FrankSpeech's role as a platform hosting LindellTV's content does not equate to active publication with knowledge of its falsity, and My Pillow's business operations are unrelated to media publication even if it is advertising for events or on a platform like FrankSpeech. Neither My Pillow nor FrankSpeech have editorial control over Lindell's statements about U.S. elections and political issues.

C. **FrankSpeech and My Pillow are not vicariously liable.**

Plaintiff argues that FrankSpeech and My Pillow are vicariously liable for their agents' defamatory statements under *respondeat superior* (Trial Brief ¶¶ 11–15; see also, Dkt. No. 21, ¶120 at 70.) Plaintiff must prove first that an agency relationship existed with any agents of both companies and what the scope of that agency relationship was. *Fresquez v. Trinidad Inn, Inc.*, 521 P.3d 399, 404-405, 2022 COA 96, ¶¶ 14, 18 (Colo.App., 2022) (affirming trial court determination that agent lacked actual or apparent authority to bind party to arbitration agreement).

Then Plaintiff must prove that any alleged agents of either company made defamatory statements while they were acting within the actual scope of their authority or as authorized agents in furtherance of the entities' business for which the entity(ies) specifically authorized. *Fresquez.*, 521 P.3d at 405, 2022 COA 96, ¶ 21 (citing Restatement (Third) of Agency § 2.01 (2006)).

In *Coomer v. Salem Media of Colorado, Inc.*, 565 P.3d at 1152, the court found vicarious liability because the radio host's statements were clearly within the scope of his employment to produce content for Salem, a radio broadcaster. Similarly, in *Cantrell*, 419 U.S. at 253, the Supreme Court found vicarious liability because the reporter's article was authorized and published by a magazine that employed the reporter who was acting within the scope of his employment as a reporter. In contrast, Plaintiff does not specify how Lindell's statements (or those of other agents) were made within the scope of FrankSpeech or My Pillow's respective businesses. He just asserts that Lindell acted as their agents because Lindell is the face of those organizations. In other words, Lindell has no individual right of speech separate and apart from the entities.

However, FrankSpeech's purpose is to provide a platform for free speech, not to direct specific content, and My Pillow advertises pillows and other bedding products--not content for news publications. For his part, Lindell has an independent right to speech separate from his ownership or participation in other entities. He is not automatically an agent of a company simply because he founded it or his name is on it.

*Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 585–86 (Colo. App. 2024) adds nothing to Plaintiff's position. That case involves attorneys making statements as part of their authorized representation of the Trump Campaign. They were authorized, or had apparent authority, to speak on behalf of the President. Here, where Lindell engaged in First Amendment speech on matters of serious public concern about U.S. elections, Plaintiff must prove that Lindell's speech was made in his corporate capacity on behalf of FrankSpeech and My Pillow. *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir. 1983), also cited by Plaintiff, distinguishes between employees and independent contractors, denying vicarious liability for the latter absent control. If Lindell or LindellTV acted independently, neither FrankSpeech nor My Pillow are liable without evidence of active participation and control.

1. **In "furtherance of business"**

*Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005) does not assist Plaintiff's theory of liability and it is unclear what Plaintiff understands the "furtherance of business" element to mean other than that My Pillow made money from its advertising. *Keller* certainly holds that vicarious liability is limited to acts within the scope of employment and intended to further the employer's business. But *Keller* dealt with a negligent supervision claim where a manager who opened and closed a store sexually assaulted a young girl during non-working hours. *Id*. at 447.

The Supreme Court of Colorado rejected liability because the employee's sexual assault was not foreseeable or related to the employer's business. *Id*. at 450.

Similarly, Lindell's statements about election machines are unrelated to My Pillow's bedding business or FrankSpeech's platform operations, the latter of which is protected by § 230 of the Communications Decency Act. Plaintiff's assertion that the statements were "in furtherance of" the entities' business (Trial Brief ¶ 14) is not helpful without more.

*Moses v. Diocese of Colorado*, 863 P.2d 310, 329 n.27 (Colo. 1993), involved another negligent supervision action involving a priest's conduct within the scope of counseling duties at the Episcopal Church, his employer. Thus, supervision of this priest employee was *directly tied to the employer church's mission*. 863 P.2d at 327. Plaintiff has no analogous evidence that Lindell's individual speech activities were directly tied to the business mission of FrankSpeech or My Pillow.

### 2. Actual Malice and vicarious liability

*Cantrell*, 419 U.S. at 253, and *Hunt*, 720 F.2d at 647, and *Jauch v. Corley*, 830 F.2d 47, 51–52 (5th Cir. 1987), all relied upon by Plaintiff, require that the principal's liability be based on the agent's actual malice within the scope of the agent's employment. However, Plaintiff's citation to *Jauch* supports Defendants. *Jauch* reversed the lower court because:

> the district court erred in holding that under Texas law the sheriff was liable for the statements of his deputy; the court erred in holding the sheriff liable *absent a finding of actual malice on the sheriff's part* []

*Jauch v. Corley*, 830 F.2d at 49 (emphasis added). The court concluded that to "hold the sheriff liable for the deputy's remarks, the jury must find that Sheriff Corley authorized, participated in, or ratified the deputy's remarks." *Id.* at 52. Presumably, this was because the deputy was acting outside of the scope of his employment.

Moreover, as *Hunt* requires, Plaintiff must prove actual malice by clear and convincing evidence. See *NY Times.* This standard is not an objective test but rather what the defendant's state of mind was *at the time of publication*. *Hunt*, 720 F.2d at 647. Without such evidence of Mr. Lindell's state of mind nor evidence that the Defendant entities authorized or ratified the statements with knowledge of their falsity, vicarious liability does not attach, especially with the constitutional protections for speech prescribed under *New York Times Co. v. Sullivan*.

## C. Additional Defenses

### 1. Section 230 Immunity for FrankSpeech

As a platform hosting third-party content, FrankSpeech is protected by § 230 of the Communications Decency Act (CDA). Plaintiff seeks to impose liability on FrankSpeech for which § 230 specifically proscribes. As the *Zeran* decision explained,

> The relevant portion of § 230 states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.

*Zeran*, 129 F.3d at 330. Plaintiff's brief ignores this immunity, which bars liability for alleged defamatory statements posted by users. Even if FrankSpeech had notice of the statements, Zeran held that such notice does not negate immunity *Id*. at 333.

### 2. First Amendment Protections

The statements at issue address a matter of public concern and a public person, triggering the actual malice standard. *New York Times Co. v. Sullivan*, 376 U.S. at 279–80. Absent any agency relationship or vicarious liability, which is not present here, Plaintiff must prove that

FrankSpeech and My Pillow actively participated in, controlled, and published any alleged defamatory statements *about the Plaintiff* with knowledge of their falsity by clear and convincing evidence. Anything less violates First Amendment protections for robust public debate.

## II.     Conclusion

Plaintiff's Trial Brief fails to articulate clear standards for direct or vicarious liability of FrankSpeech and My Pillow. The cited cases do not support liability absent evidence of active participation or ratification of acts within the scope of employment. My Pillow is simply not a publisher and never authorized, engaged or participated in publication. Mr. Lindell's statements at issue here about U.S. elections and voting have no relation, at all, to the scope of his employment at My Pillow. FrankSpeech is further protected by § 230 immunity, and both entities are otherwise shielded by the First Amendment's "actual malice" requirement as well as the other standards set forth in Defendants' authorities.

Dated: May 16, 2025

                        Respectfully Submitted,

                        **MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

                        By */s/ Christopher I. Kachouroff*
                        Christopher I. Kachouroff (VA Bar No. 44216)
                        Robert J. Cynkar (VA Bar No. 23349)
                        13649 Office Place, Suite 101
                        Woodbridge, Virginia 22192
                        Telephone: (703) 621-3300
                        chris@mck-lawyers.com

                        Jennifer T. DeMaster (WI Bar No. 1124201)
                        361 Falls Rd., Ste 610
                        Grafton, WI 53024
                        Telephone: (414) 235-7488
                        jennifer@demasterlaw.com

                        ATTORNEYS FOR DEFENDANTS

## CERTIFICATION OF SERVICE

I certify that on May 16, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Cain & Skarnulis PLLC**

Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Ashley N. Morgan
amorgan@cstrial.com

**Recht & Kornfeld, P.C.**

David Matthew Beller
david@rklawpc.com

**Interested Parties**

**Joseph Oltmann**

Ingrid J. DeFranco
ingrid.defranco@gmail.com

**Tina Peters**

Scott E. Gessler
sgessler@gesslerblue.com

                                        By */s/ Christopher I. Kachouroff*
                                        Christopher I. Kachouroff* (VA Bar No. 44216)