**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

**PLAINTIFF'S TRIAL BRIEF REGARDING
POTENTIAL INVOCATION OF THE REPORTER'S PRIVILEGE BY THIRD PARTY
WITNESS JOSEPH OLTMANN**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D. (Coomer), through counsel, submits his Trial Brief Regarding Potential Invocation of the Reporter's Privilege by Third Party Witness Joseph Oltmann, and in support shows the following:

### I.    INTRODUCTION

1.    Plaintiff issued a subpoena to third party witness Joseph Oltmann (Oltmann) to testify at trial. **Exhibit 1**. Oltmann is the origin of the false claims at issue in this dispute. Plaintiff anticipates that if Oltmann honors the subpoena and appears to testify, that he is likely to invoke the "Reporter's privilege" as a means to avoid providing necessary testimony. Oltmann has attempted the same in various related proceedings, and has been repeatedly sanctioned in relation to these assertions. Most recently, he was held in contempt by Judge Martinez in related

1

proceeding *Coomer v. Make Your Life Epic, LLC et. al.*, Case No. 1:21-cv-03440-WJM-KAS, after he fled a deposition and refused to provide Court-ordered testimony.[1]

2.  If Oltmann attempts to assert the Reporter's Privilege in response to relevant questioning at trial, Plaintiff may request that Oltmann be ordered to respond to the questions posed. If he persists in his refusals to answer on the basis of the privilege, the Court may need to make findings on the matter outside the presence of the jury.

3.  This Trial Brief is intended to streamline that potential process by providing the Court with relevant factual background, and alerting the Court to the standards applicable to assertions of the Reporter's Privilege.

## II.   FACTUAL BACKGROUND

### A.   Oltmann's prior invocations of the Reporter's Privilege.

4.  If Oltmann honors the subpoena and appears to testify at trial, he will likely invoke the "Reporter's Privilege" pursuant to C.R.S. § 13-90-119. Specifically, Oltmann is expected to invoke the privilege with respect to two essential questions: (1) who is the "conduit" that supposedly got him access to the alleged "Antifa conference call," and (2) who provided him access to Dr. Coomer's private Facebook account?

5.  Oltmann first attempted to invoke the Reporter's Privilege with respect to these questions in related proceeding *Coomer v. Donald J. Trump for President, Inc., et. al.*, 2020CV34319, where he is a defendant. In that instance, Judge Moses held a hearing on the matter

---

[1] **Exhibit 2**, *Coomer v. Make Your Life Epic LLC et. al.*, 21-cv-03440-WJM-KAS, Order Overruling Joseph Oltmann's Objections and Adopting as Modified the Magistrate Judge's Recommendation (Sep. 4, 2024).

and heard sworn testimony from multiple witnesses.[2] After applying the necessary legal analysis, discussed more below, Judge Moses determined that Oltmann's testimony was "evasive and not credible" and that his story about the supposed "Antifa call" was "probably false."[3] As a result, Oltmann was ordered to identify the supposed "conduit" to the Antifa call.[4] He was also subsequently ordered to identify who got him access to Dr. Coomer's private Facebook account.[5] He refused to comply with the Court's orders, and was subsequently sanctioned.[6]

6. Those orders are not, nor have they ever been, on appeal. On March 17, 2025, the Colorado Supreme Court denied Oltmann's petition for certiorari requesting review of the Court of Appeals' Opinion affirming the denial of his anti-SLAPP Motion to Dismiss.[7] That case has just been remanded to the Denver District Court. Defendants there, including Oltmann, have been ordered to respond to Dr. Coomer's Complaint by June 27, 2025.[8] Given the lengthy stay associated with the anti-SLAPP Motions to Dismiss and related appeals in that case, Dr. Coomer has not yet had an opportunity to revisit Oltmann's non-compliance in that matter.

7. Despite the Denver District Court's orders on this matter, Oltmann nonetheless asserted the Reporter's Privilege in his deposition in this case in response to questions about the Facebook source.[9]

---

[2] *See generally*, **Exhibit 3**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, July 7, 2021 Hearing Transcript.

[3] *Id.*, 89:18-91:7.

[4] *Id.*, 92:14-18.

[5] **Exhibit 4**, *Coomer v. Donald J. Trump for President, Inc. et. al* August 27, 2021 Hearing Transcript, 39:21-41.12.

[6] **Exhibit 5**, *Coomer v. Donald J. Trump for President, Inc. et. al.,* Order Regarding Plaintiff's Motion for Sanctions Pursuant to C.R.C.P. 37 and C.R.C.P. 107 and Request for Order to Show Cause *(Aug. 29, 2021).*

[7] **Exhibit 6**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Order of the Court, 2024SC317 (Mar. 17, 2025).

[8] **Exhibit 7**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Order: Status Report (May 28, 2025).

[9] **Exhibit 8**, *Coomer v. Lindell et. al.*, Depo Tr. Oltmann, 345:1-24 (Dec. 16, 2022).

8.     Oltmann was also subpoenaed to testify at a deposition and produce documents in related proceeding *Coomer v. Make Your Life Epic, LLC et. al*. Oltmann asserted objections and moved to quash the subpoena. Magistrate Judge Starnella held a hearing on Oltmann's objections on April 8, 2024. At no point in that hearing did Oltmann's counsel assert the Reporter's Privilege as a basis for non-compliance with the subpoena.[10] Oltmann was ordered to produce relevant documents, to appear for a deposition in the courthouse, and to answer specific questions, including with respect to the Facebook source.[11]

9.     Oltmann appeared for his deposition on June 6, 2024, and refused to provide the court ordered testimony. Counsel for Dr. Coomer and Oltmann then raised the matter with Judge Starnella in her chambers, where she reiterated Oltmann's obligation to provide the requested testimony. When the parties returned to the deposition, they found that Oltmann had fled. The Court then held a contempt hearing.[12] At no point during the deposition or the subsequent hearing did Oltmann's counsel ever assert or even mention the Reporter's Privilege. Judge Starnella subsequently issued Recommendations that Oltmann be found in contempt, ordered to pay the parties' fees and costs, and ordered to pay coercive daily sanctions.[13] Oltmann's objections to Judge Starnella's Recommendations did not assert or even mention the Reporter's Privilege.[14]

---

[10] *See generally*, **Exhibit 9**, *Coomer v. Make Your Life Epic LLC et. al*., 21-cv-03440, Hearing Transcript (Apr. 8, 2024).

[11] *Id*., 27:22-28:9; 36:4-22; 51:10-13.

[12] *See generally*, **Exhibit 10**, *Coomer v. Make Your Life Epic LLC et. al*., 21-cv-03440, Recommendations of United States Magistrate Judge for a Finding of Civil Contempt Against Third Party Witness Joseph Oltmann (June 14, 2024).

[13] *Id*., p. 18-19.

[14] **Exhibit 11**, *Coomer v. Make Your Life Epic LLC et. al*., 21-cv-03440, Objections to Recommendations of United States Magistrate Judge for a Finding of Civil Contempt Against Third Party Witness Joseph Oltmann (June 28, 2024).

4

10. On September 4, 2024, Judge Martinez issued an Order holding Oltmann in contempt,[15] and ordering him to identify both his "conduit" to the "Antifa call" and the source that provided him access to Dr. Coomer's private Facebook account.[16] He similarly ordered Oltmann to pay $1,000/day until he purged the contempt.[17]

11. On October 2, 2024, Oltmann *for the first time* asserted that his refusal to answer questions on these matters was shielded by the Reporter's Privilege. Judge Martinez rejected this assertion.[18] Oltmann subsequently appealed to the Tenth Circuit.[19] As of this writing, that appeal remains pending.

### III. LEGAL STANDARD

**A. Application of the Reporter's Privilege.**

12. "[B]efore a newsperson should be required to disclose confidential information, a court should determine on a case-by-case basis whether the information is directly relevant and whether the First Amendment interests of the press outweigh the obligation of all citizens to provide relevant testimony in official proceedings." *Gordon v. Boyles*, 9 P.3d 1106, 1116 (Colo. 2000). (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972) (Powell, J., concurring)).

13. In *Branzburg v. Hayes*, 408 U.S. 665 (1972), the Supreme Court declined to adopt an absolute First Amendment privilege that would have insulated news reporters from compelled disclosure of confidential sources, instead holding that states were free to adopt variations of

---

[15] **Exhibit 2**, *Coomer v. Make Your Life Epic LLC et. al.*, 21-cv-03440, Order Overruling Joseph Oltmann's Objections and Adopting as Modified the Magistrate Judge's Recommendation (Sept. 4, 2024).

[16] *Id.*, pp. 9-13.

[17] *Id.*

[18] **Exhibit 12**, *Coomer v. Make Your Life Epic LLC et. al.*, Order to Show Cause, p. 2 (Oct. 3, 2024).

[19] *See generally*, *Coomer v. Make Your Life Epic LLC et. al.*, Case No. 24-1390 (10th Cir. 2024).

5

privilege, either qualified or absolute, as they saw fit. *Id*. at 705-8. The Tenth Circuit first addressed the issue in a civil context in *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977). In *Silkwood*, the Court adopted a four-factor test for assessing claims to a reporter's privilege: (1) Whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful, (2) whether the information goes to the heart of the matter, (3) whether the information is of certain relevance, and (4) the type of controversy. *Id*. at 438.

14. This test closely mirrors that established by Colorado's statutory reporter's privilege, C.R.S. § 13-90-119. Section 13-90-119(2) provides members of the mass media a privilege shielding them from having to provide testimony and from being questioned about news information that the person learned while acting in a newsperson's capacity. *Gordon v. Boyles*, 9 P.3d 1106, 1117 (Colo. 2000). The privilege, however, is qualified. *Id*. A court may compel a newsperson to disclose information if the party seeking the information can demonstrate:

    a.    That the news information is directly relevant to a substantial issue involved in the proceeding;

    b.    That the news information cannot be obtained by any other available means; and

    c.    That a strong interest of the party seeking to subpoena the newsperson outweighs the interests under the First Amendment to the United States constitution of such newsperson in not responding to a subpoena and of the general public in receiving news information.

*Id*. (citing C.R.S. § 13-90-119(3)(a-c); *Henderson v. People*, 879 P.2d 383, 393 (Colo. 1994). If there exists sufficient proof of actual malice, the identities of the declarant's sources may be relevant for the plaintiff to prove, for instance, that the statement was false or to overcome the affirmative defense of truth. *Id*. (citing *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1341

6

(Colo. 1988). In some cases, disclosure of the source may be relevant to prove that the source did not exist. *Id*. "Each case must rest on its own unique facts." *Id*. at 1118. As part of the balancing test, the trial court must weigh the evidence presented to determine whether the newsperson's statements were probably false. *Id*. at 1119-20.

15. If a newsperson defendant in a defamation case can provide evidence that a confidential source's information was at least probably truthful, then the court should favor non-disclosure. *Id* at 1120. Similarly, when the newsperson is not a party and is merely a source of information for one party in a lawsuit, the newsperson's state of mind is not at issue in the case and the equities weigh in favor of respecting the privilege. *Id*. at 1119. "By contrast, when a defendant produces little or no evidence to support his reliance on the source and the plaintiff demonstrates that the source's information was probably false, the court should favor compelling disclosure." *Id*. at 1120.

16. The Tenth Circuit addressed the statutory test established by C.R.S. § 13-90-119, as well as the additional "probable falsity" factor, in *Brokers' Choice of America, Inc. v. NBC Universal, Inc*., 757 F.3d 1125 (10th Cir. 2014). Brokers' Choice was a defamation case alleging that Dateline NBC had selectively edited hidden camera footage to create a false impression of the Plaintiff's business practices. The Plaintiff sought the unedited footage, and the defendant resisted production of the footage under the statutory privilege. The Court rejected application of the *Boyles* "probable falsity" test under the specific facts of the case and compelled disclosure of the information sought. It held, "The fact-finder is entitled to the best evidence available, particularly in a case like this, which asks whether the media's zeal to report and perhaps sensationalize should be tempered by its responsibility not to defame. For all of these reasons, BCA's factual allegations

7

are sufficient to warrant discovery of the unedited film. The Colorado statute is a shield, not a sword." *Id*. at 1142-43.

### IV. APPLICATION

**A.   Relevance of the information sought.**

17.   Defendants intend to argue that claims about the "Antifa call" were "substantially true." Final Pretrial Order, p. 7 (Doc. 308). The identities of both the conduit to the alleged "Antifa conference call" and the individual who gave Oltmann access to Dr. Coomer's Facebook account are therefore highly relevant to this issue.

18.   With respect to the "conduit," this is the only individual who could confirm any of the facts surrounding the alleged call as Oltmann has described them. He or she is, therefore, the only possible means of determining whether any aspect of Oltmann's story about the supposed call is true, or if any call even occurred in the first place. This information is relevant to one of the most important questions in this defamation case, namely the truth or falsity of the central allegations lodged against the Plaintiff.

19.   With respect to the Facebook source, the identity of this individual is also highly relevant, specifically because he or she would be able to corroborate the timing of Oltmann's "discovery" of Eric Coomer. Dr. Coomer believes the claims lodged against him were a preconceived setup, and that there is a high likelihood Oltmann identified him through this still anonymous third party at some point prior to the 2020 election. The specific bases for these suspicions were laid out for Judge Starnella in greater detail in *Coomer v. Make Your Life Epic et. al.*[20]

---

[20] **Exhibit 9**, April 8, 2024 Hearing Transcript, 41:3-42:25.

20. The identities of these individuals (assuming the supposed "conduit" even exists), are relevant to various important questions, including the story's truth, Oltmann's credibility, and his reliability as a source for Defendants. "The less credible the sources, the more likely the declarant acted with malice or a reckless disregard of the truth by broadcasting the information they provided." *Gordon v. Boyles*, 9 P.3d at 1118.

**B.  The unobtainability of the information sought by other means.**

21. With respect to this factor, "The burden is on the party seeking the information to demonstrate to the court both that no reasonably available sources of the information exist and that the party has exhausted the reasonably available sources that might provide the information sought." *Id*. (citing *Bauer v. Gannett Co*., 557 N.W.2d 608, 612 (Minn. Ct. App. 1997)).

22. Oltmann is the only source in the world who knows the identities of these individuals. Plaintiff has requested this information from him under oath repeatedly, and in every instance he has refused. Beyond these efforts, Plaintiff has gone to great lengths to try to determine if the alleged "Antifa call" ever occurred, and if so, who, if anyone, could corroborate its alleged substance. These efforts have included, but are not limited to, more than forty different depositions across five separate defamation cases filed by Dr. Coomer in multiple jurisdictions, in both state and federal court. With few exceptions, Dr. Coomer has asked every one of these deponents, including all of Oltmann's co-defendants in related proceeding *Coomer v. Donald J. Trump for President, Inc*., if they have any information relating to these matters. Without exception, every individual asked has denied having any knowledge of Oltmann's alleged sources.

23. These efforts have similarly included years-long monitoring of Oltmann's publications for any reference to any individual he claims to be a member of "Antifa," as well as

9

review and investigation of Oltmann's alleged "notes" for any identifiable individuals. These efforts have led Plaintiff to three other identifiable individuals: Heidi Beedle, Erik Maultbetsch, and Auontai Anderson. All three of these individuals have provided Dr. Coomer with sworn affidavits stating that they do not know Dr. Coomer and have never met him, nor did they ever participate in any "Antifa call" with him.[21]

**C.  Dr. Coomer's interest in the information.**

24. The Court must also weigh the interests of the party seeking the information against the First Amendment interests of the newsperson in withholding it and the public's interest in promoting the gathering of news. *Id*. at 1119. "The newsperson's privilege should give way only under circumstances where the party seeking the information has a truly significant interest at stake, such as the interest that defamation plaintiffs have in protecting their reputations." *Id*. (citing *Herbert v. Lando*, 441 U.S. 153, 169 (1979)).

25. Dr. Coomer's interest in the information sought cannot be overstated. Oltmann's story about the alleged "Antifa call" ended his career and upended his life. The resulting harm to his reputation is directly at issue in this dispute.

26. More broadly, Oltmann's claims are the origin of the Dominion Voting Systems conspiracy theory alleging that the 2020 presidential election was rigged. That conspiracy theory, in turn, gave rise to the attack on the U.S. Capitol on January 6, 2021. The origins of this story are therefore of profound public and historical significance as well.

---

[21] **Exhibit 13**, Declaration of Heidi Beedle (Aug. 24, 2021); **Exhibit 14**, Declaration of Erik Maulbetsch (Sept. 2, 2021); **Exhibit 15**, Declaration of Auontai Anderson (Sept. 1, 2021).

27.     These interests far outweigh those of Joe Oltmann, who claims these individuals will face some form of retribution if he identifies them. This assertion is without merit. First, Oltmann has no evidence to support this claim. Second, Oltmann has presented no evidence that these individuals themselves actually harbor any such concerns. Third, Dr. Coomer has taken more than forty depositions in this and related cases. None of those individuals have come to any harm. Fourth, Oltmann has also provided declarations from other individuals that he purports support his claims. No harm has come to these individuals either. Fifth, Dr. Coomer has a very strong personal interest in ensuring these individuals' safety so that they may provide testimony. Sixth, Oltmann does not actually fear for these individuals' safety. In fact, he has publicly discussed his willful withholding of this information until he determines that revealing it will present a strategic litigation advantage *for him*. For example, he has stated:

> They're trying to hone in on the Antifa call. Number one, I have an ace in the deal, because at some point, I'm going to come forward with that guy. I'm going to. I'm just telling you right now, I'm going to. And it's going to get really bad. It's going to get really bad. Because at that point, the rest of their argument falls apart. And then all the money they've spent on this lawfare, we get all of our money back. I'm just telling you.[22]

And sixth, the few specific instances of alleged threats or harassment that Oltmann has ever claimed that he has endured are themselves demonstrably exaggerations of his own imagination. As one example, Oltmann frequently rails about an incident where "they" supposedly "sent powder to [his] house," leading him to fear for his and his family's well-being. But Oltmann has admitted

---

[22] Joe Oltmann, , *Live with Clay Clark: Monkey Pox, Primary Elections Aftermath, War on Babies, and 2nd Amendment Surges* CONSERVATIVE DAILY PODCAST (Aug. 3, 2022); available at: https://caincloud.egnyte.com/dl/k3mDhIMTL1

11

that the package in question was sent by a window company that was doing remodeling on his house at the time.[23] And the "powder" in question was graphite.[24]

28. In sum, there is no merit to Oltmann's claimed fear of retribution against these individuals if he were to identify them. In reality, his protestations are merely pretext to avoid the consequences of his own decisions.

**D.     The probable falsity of Oltmann's claims.**

29. In conducting this analysis several years ago, Judge Moses found probable falsity on the basis of several different factors. These included the two-month delay between Oltmann's intercept of the conference call and his revelation that it was relevant to the election, the lack of any recording of the call, the lack of specifics about how he intercepted the call, his repeated admissions in his original November 9, 2020 podcast that he was not sure that the individual on the call was the Eric Coomer of Dominion Voting Systems, and the lack of corroboration from any of the other supposed participants on the alleged call.[25]

30. These factors remain compelling evidence of the probable falsity of Oltmann's story, but since the time of this hearing nearly four years ago, many additional reasons to doubt Oltmann's claims have come to light. These include, but are not limited to, Oltmann's admitted alteration of a screenshot of Google search results he claimed was taken on September 26, 2020, but which has been revealed to have occurred on November 11, 2020;[26] Oltmann's admission that

---

[23] The Chuck and Julie Show, YouTube, (May 5, 2021), available at: https://caincloud.egnyte.com/dl/n7HvqW10tr

[24] Joe Oltmann, May 10, 2021 Livestream, Conservative Daily Podcast, (May 10, 2021) (Former podcast co-host Max McGuire: "No police officer is going to stop working on their cases to find out who sent you graphite. The just won't do it. They don't think it's a big enough deal.").

[25] **Exhibit 3**, 89:9-90:21.

[26] **Exhibit 16**, *Coomer v. Lindell et. al*., Depo Tr. Oltmann, 294:13-18 (Dec. 16, 2022).

his story largely derives from a *second* set of previously undisclosed notes drafted just prior to his original November 9 podcast, and *not* from the notes he claims to have taken during the supposed call;[27] Oltmann's sworn admissions that he never even attempted to identify the nineteen other alleged participants on the call;[28] implausibilities surrounding the mechanics of the call itself (Oltmann has claimed it was a zoom call, yet no faces were visible);[29] the likelihood that a third party, Joey Camp, is the actual source of the story (including social media posts from Camp claiming to have "discovered" Coomer himself,[30] text messages directly from Camp to Coomer claiming to have a recording of the supposed call,[31] and Oltmann's former podcast co-host's sworn testimony that he also suspected Camp to be the true origin of the story)[32]; Oltmann's other misidentifications of relevant individuals (including his claim that Heidi Beedle was a leader of a political organization called "Our Revolution"); Oltmann's repeated efforts to avoid providing sworn testimony (including skipping a deposition, moving to quash multiple subpoenas, fleeing the courthouse in the midst of uncomfortable questioning, being held in contempt, and his efforts to evade the trial subpoena in this case);[33] Oltmann's other indisputably made up claims about Dr.

---

[27] **Exhibit 17**, *Coomer v. Lindell et. al*., Depo Tr. Oltmann, 302:20-305:10 (Dec. 16, 2022).

[28] **Exhibit 18**, *Coomer v. Lindell et. al*., Depo Tr. Oltmann, 353:15-355:14 (Dec. 16, 2022).

[29] **Exhibit 19**, *Coomer v. Make Your Life Epic, LLC et. al*., Depo. Tr. Oltmann, 50:2-54:7 (June 6, 2024)

[30] **Exhibit 20**, Joey Camp, Gab (Sep. 7, 2021) (indicating that Camp "preserved material from Eric Coomer . . . because of his connection to Antifa, not because of his connection to Dominion – which we didn't even know existed before." This necessarily places Camp's "preserv[ation]" prior to Oltmann's, which associated Coomer with Dominion from the start.

[31] **Exhibit 21**, text messages from Camp to Coomer (Feb. 28, 2022) (Plaintiff's counsel has corroborated the use of this phone number by Joey Camp to various other individuals, including in instances where he sent photos of himself).

[32] **Exhibit 22**, *Coomer v. Lindell et. al*., Depo Tr. McGuire, 131:23-132:13 (Dec. 16, 2022) (noting that "Joe has a habit of putting himself in other people's stories sometimes.")

[33] *See generally*, **Exhibits 2, 5, 10.**

Coomer (including that he was a shareholder in Dominion Voting Systems, that he had foreign bank accounts, and that he had foreign shell companies); and various other related factors.

31. For all of these reasons, any potential assertion of the Reporter's Privilege by third party witness Joseph Oltmann must be rejected.

## IV.    CONCLUSION

32. Plaintiff requests the Court review the referenced materials in anticipation of a potential hearing on Mr. Oltmann's invocation of the Reporter's Privilege.

Respectfully submitted this 2nd day of June 2025.

>       */s/ Charles J. Cain*
> Charles J. Cain, No. 51020
> ccain@cstrial.com
> Bradley A. Kloewer, No. 50565
> bkloewer@cstrial.com
> **CAIN & SKARNULIS PLLC**
> P. O. Box 1064
> Salida, Colorado 81201
> 719-530-3011/512-477-5011 (Fax)
>
> Ashley N. Morgan
> amorgan@cstrial.com
> **CAIN & SKARNULIS PLLC**
> 303 Colorado Street, Suite 2850
> Austin, Texas 78701
> 512-477-5000/512-477-5011 (Fax)
>
> Thomas J. Rogers III, No. 28809
> trey@rklawpc.com
> Mark Grueskin, No. 14621
> mark@rklawpc.com
> David M. Beller, No. 35767
> david@rklawpc.com
> **RECHTKORNFELD PC**
> 1600 Stout Street, Suite 1400
> Denver, Colorado 80202
> 303-573-1900
> **ATTORNEYS FOR PLAINTIFF**