IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

**PLAINTIFF'S NOTICE OF DEFENDANTS'
NON-COMPLIANCE WITH COURT ORDER**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

    Plaintiff Eric Coomer, Ph.D. (Coomer), through counsel, submits Notice and the Court as follows:

    1.    On May 20, 2025, the Court issued [Doc. 344] Minute Order on Pretrial Issues. In section III of the Order, the Court states, "no photographs, audio, or video recordings may be used in any public area or any other location in which court business and proceedings are conducted, including, but not limited to, the courtroom or the hallway outside of the courtroom. D.C.COLO.LCivR 83.1. The Court then highlighted, "<u>this Rule extends to any live blogging, tweeting, transcribing, transmitting, or any other type of real-time communication and/or reporting about these proceedings</u>." *Id*.

    2.    Further, on June 2, 2025, the Court issued a verbal order imposing sequestration of witnesses under FRE 615(a) and (b). In relevant part FRE 615(b) permits a court to, "prohibit

1

disclosure of trial testimony to witnesses who are excluded from the courtroom; and prohibit excluded witnesses from accessing trial testimony."

3. On the morning of June 3, 2025, Plaintiff's counsel raised the issue of reporter Will Sommer writing, "Mike Lindell is Texting Me From His Defamation Trial. But…Why?"[1] The Court reminded the parties and counsel of its earlier orders regarding sequestration and live reporting.

4. During the lunch break on June 3, 2025, Plaintiff learned Mr. Lindell's X account, "RealMikeLindell" continued to post throughout the court proceedings. In addition, and during the lunch break, Mr. Lindell interviewed live on air with LindellTV, and posted the same on X. During the interview, Mr. Lindell spoke at length about Dr. Coomer's direct examination testimony, broadcasting the same to the public and potentially other witnesses and jurors. When raised with the Court in real time, Mr. Lindell blurted out (paraphrased), "that's not true." Mr. Lindell's counsel then represented to the Court (paraphrased), "my client said that is not correct."

5. At 3:17 p.m. on June 3, 2025, Recht Kornfeld, P.C. investigator, Brion Ludvigson preserved the prior five days of postings by "RealMikeLindell." Mr. Lindell posted on June 3, 2025 at 9:21 a.m. (2 posts); 11:20 a.m. (2 posts); 1:19 p.m.; 2:17 p.m.; and 2:20 p.m.[2]

6. As stated in Mr. Ludvigson's report, while on the lunch break, Mr. Lindell taped, and at 1:19 p.m., posted (unofficial transcription):

---

[1] https://www.thebulwark.com/p/mike-lindell-is-texting-me-from-his-defamation-trial-mypillow-2020-election-dominion?utm_campaign=post&utm_medium=web.  This a/v file is also submitted to the Court for traditional filing on an external USB drive.

[2] *See* Investigative Report attached as Exhibit 1.

**ANCHOR:** Straight to Colorado. Vanessa Roussard and Mike Lindell are standing by outside the courthouse. Welcome y'all, a huge day, a huge day. Eric Coomer took the stand. I know Mike can't hear me. So Vanessa, tell us about Coomer and you and Mike, you know, take it away.

**REPORTER:** Right, so we are on lunch break right now. We do have about 30 to 45 minutes. Eric Coomer has been on the stand today talking about everything with his work with Dominion, the voting machines company, and also talking about his role on social media, where he talked a lot about his differences and hatred toward President Trump. So all of that was brought up in court today. I do have Mike here for a little bit. So I wanna get words in from him. Mike, what do you think so far about Coomer's testimony?

**MR. LINDELL:** I think if I'm the jury, I'm kind of bored. He's talking about the insides of the machines and stuff that we've never been able to see, right? And, but I mean, he's talking about all that and then…it's his lawyers, it's kind of weird. Doesn't it seem like he's almost on the defense, doesn't it, in a way? I mean, it's very strange to me. They're putting him like on the defense. You know? You put all these things on your Facebook and you called, I can't repeat the names he said about our president and going all the way back. I mean. And then they asked, you know, stuff like, you know, "how can you be biased? You're an election thing." And "oh, I have no problem being unbiased" or whatever, you know, stuff like that. I just thought it was kind of strange that he's on the defensive kind of way.

**REPORTER:** I thought the same thing. I did think the same thing. And then on the flip side, I was thinking maybe that they're prepping him for when your attorneys go up and cross-examine him and trying to get him ready. So they're setting the stage for that…for him to go ahead and admit that he did make these Facebook posts. I really don't know their strategy, but that's the only thing I can think of. But it's important to note that he did have an important role at Dominion. He said on the witness stand that he was over the new systems and modifying the systems and that he had strict professionalism. That was his words. It is a non-partisan position, he says, serving all voters. He says he leaves politics at the door, but then when his social media was brought up, and like you said, Mike, when he was asked about his posts about our great president, he made several posts, and I'm gonna bring those up right now. He said that he made posts on Facebook about President Trump, referring him to an F-tard, so you can use what word we're all thinking of with the F word, an F-tard, he agreed and said, I wrote those. And then his attorney asked them if he called President Trump the Cheeto-in-Chief. Which he replied, "I did. Yes." And this was in the 2016 timeframe. But Mike, my thing is, and you know the jury has to ask this question in their mind, too. When you have a position for a voting machine company, the high position that he held, that was supposed to be non-partisan, why would you post this to your social media accounts?

3

**MR. LINDELL:** You know, I don't know, and here's my bottom line. I don't really care. All this stuff that they're bringing up, I didn't know the guy. This is what my thing is, everybody. I didn't know the guy. I didn't know Joe Oltmann. My thing comes up, and they're trying to almost tie it to that. He said at one time, "your team." That guy wasn't on my team. I don't even know who he was. And they're bringing it, I want everybody to know, my stuff starts in April of 2021 when he attacked MyPillow, when I could no longer go on and talk about the great things MyPillow does on another network. And that cost MyPillow over $22 million in the last four years. And that was on the heels of Dominion suing MyPillow and me in February. For what? Because I want to get rid of all electronic voting machines, and you happen to be one of the brands? I'm not, you've got to realize I am not, I'm very, what would you read the word? I'm very fair. All electronic voting machines have to go, and I made that perfectly clear. Just because [inaudible] didn't sue me, like Smartmatic, Dominion, and Eric Coomer. But then they went after my employee-owned company. So these things that are coming up now, and that's why I don't even want to comment myself, I'm not even going to comment on them. So when the judge goes, "well, you're commenting on this." No, that's, let them do, they can do their own thing. Because I didn't know him then. The one thing he said is, which I'm sure my attorney's will make clearer was, he had kind of went into hiding and said, then he said he came back out in the spring of 21. Well, before I even knew his name. So he was already back home. You know what I mean? All this stuff that he's talking about, it was long before I even knew his name. And but long before he attacked MyPillow.

**REPORTER:** Right, and I want to let our viewers know that the name that Mike Lindell just brought up was the name Joe Oltmann. He was brought up yesterday by the judge to the jury. He was supposed to testify today. He told the judge that he had some business to take care of with his company and also family matters. So she ordered him to come back tomorrow.

**MR. LINDELL:** That was, he said, could he because the opposing attorneys that are going to also calling for witness said that he was not going to get called till tomorrow. Yeah, yeah, we've got to clarify that. It wasn't, so he didn't want to sit around for a whole day.

**REPORTER:** Correct, correct.

**MR. LINDELL:** You know, they, they granted him that.

**REPORTER:** So he will return tomorrow.

**MR. LINDELL:** And I like, you know, guys, I'm gonna, I'm gonna say this. I think the judge is doing a good job. I really do. I think the judge is doing a good job. And

4

I want to say that now. I think she's in, so far, you know, I haven't been to a lot of jury trials, but if I ever was one, she's doing, I think, a good job. I don't know what to compare it to. But some TV show or something.

**REPORTER:** She is doing a great job. I think we can all agree with that as well. But when it comes to Coomer on the stand today, I don't think he has gotten to the meat of it yet that we're all waiting for.

**MR. LINDELL:** There isn't any meat. That's what's gonna, I would hate to be their attorneys going, "okay, how do we tie Mike Lindell to this?" He's, you know, I didn't, I never mentioned his name once now, did I mention him? Did I mention other voting machine companies? Absolutely, I've said they all need to be melted down and turned into prison bars. I've said that for, you know, since day one. But now in retrospect, I'm glad we're here. If you know, this is the one thing, this is a blessing. You look back everybody and you see back in time, you go, "okay, this is terrible that it happened back then, how angry I was that it wasn't shut down on the dismissal." You guys, these other cases could take three, four more years, they want to drag it out. So we forget that we're using these, that our election platforms are horrific. This is a blessing, we're here today in Colorado. So this can finally get out in the gateway to getting rid of them. And I look back now, God uses all things for good for those who believe. And I'll tell you, I look back now and I go, "wow, that's why back then, you know, this is back when he was called MyPillow's lumpy and the depositions and all that." But you look back now, if that hadn't happened, if she would have ruled way back then and dismissed it, we wouldn't be here today and we may never have gotten that door open, that gateway open. That's going to happen.

**REPORTER:** Yes, so it is a blessing to be here.

*** 

7.     As stated in O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204 (10th Cir.1992) (denying Defendant's motion for sanctions):

Sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes: "(1) to compel or coerce obedience to a court order…; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]"  *Shuffler*, 720 F.2d at 1147 (citing *Shillitani v. United States*, 384 U.S. 364, 370-71, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966) and *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)); *see United States v. United Mine Workers*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Ager v. Jane C. Stormont Hosp.*, 622 F.2d 496, 500 (10th Cir.1980).  Where the purpose of the sanction is "coercive," the court must consider

5

"the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers*, 330 U.S. at 304, 67 S.Ct. at 701.

8. Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and opportunity to be heard.

Plaintiff hereby provides the Court evidence of Mr. Lindell's ongoing disregard of this Court's order and potential poisoning of other witnesses, including Mr. Oltmann, and jurors. Civil contempt in the federal courts is a component of its inherent powers

Respectfully submitted this 3rd day of June 2025.

*/s/ David M. Beller*
Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
David M. Beller, No. 35767
david@rklawpc.com
**RECHTKORNFELD PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900

Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

6

Ashley N. Morgan
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)
**ATTORNEYS FOR PLAINTIFF**