**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-01129-NYW-SBP

ERIC COOMER,

Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH, LLC, and
MY PILLOW, INC.,

Defendants.

---

**FINAL JURY INSTRUCTIONS**

---

**INSTRUCTION NO. 1**

**INTRODUCTION TO FINAL INSTRUCTIONS**

Members of the Jury:

As I previously told you, in any jury trial there are, in effect, two judges.  I am one of the judges, you are the other.  I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and decided what evidence was proper for your consideration.  It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every civil case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses.  Then I will give you some specific rules of law that apply to this particular case.  Finally, I will explain the procedures you should follow in your deliberations and the possible verdicts you may return.  You will be allowed to take these instructions with you to the jury deliberation room, so you need not take notes as I read them to you.

**INSTRUCTION NO. 2**

**GENERAL FINAL INSTRUCTIONS**

Now that you have heard the evidence and the parties' arguments, it is your duty to find the facts from all the evidence in the case.  And to those facts, you must apply and follow the laws contained in these instructions, whether you agree with them or not.  If there is any difference between the law stated by the lawyers and the law in these instructions, you are governed by my instructions.  You must follow all of these instructions and not single out some and ignore others; they are all equally important. The decision you reach by applying the law in these instructions to the facts as you find them is called a verdict.

You must not read into these instructions, or into anything I say or do, any suggestions as to what verdict you should return.  Your verdict is a matter entirely for you to decide.  You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, bias, or public opinion. It is important that you discharge your duties without discrimination, meaning that bias regarding the race, color, religious beliefs, national origin, sexual orientation, gender identity, or gender of the parties, any witnesses, and the lawyers should play no part in the exercise of your judgment.  All parties expect that you will carefully consider all the evidence, follow the law in these instructions, and reach a just verdict, regardless of the consequences.  You have taken an oath promising to do so.

**INSTRUCTION NO. 3**
**SUMMARY OF CLOSING INSTRUCTIONS**

These instructions contain the law that you must use in deciding this case.  No single instruction states all the applicable law.  All the instructions must be read and considered together.

You must not be concerned with the wisdom of any rule of law.  Regardless of any opinion you may have as to what the law should be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court.

The Court does not, by these instructions, express any opinions as to what has or has not been proved in the case, or to what are or are not the facts of the case.

**INSTRUCTION NO. 4**
**NO SPECULATION**

Any finding of fact you make must be based on probabilities, not possibilities.  You

should not guess or speculate about a fact.

**INSTRUCTION NO. 5**
**EVIDENCE IN THE CASE**

The evidence in the case consists of the sworn testimony of all the witnesses, all exhibits which have been received in evidence, and all facts which have been admitted or stipulated to.

In deciding the facts, you must consider only the evidence received at trial. Evidence offered at the trial and rejected or stricken by the Court must not be considered by you. Statements, remarks, arguments, and objections by counsel and remarks of the Court not directed to you are not evidence.

You are to consider only the evidence in the case and the reasonable inferences from that evidence. An inference is a conclusion that follows, as a matter of reason and common sense, from the evidence.

**INSTRUCTION NO. 6**

**LIMITING INSTRUCTIONS**

Some evidence in this case has been admitted only for a limited purpose.  You may consider these pieces of evidence only for that limited purpose.

The Court admitted Exhibits 190 (CNN Story/Interview of Mr. Lindell), 229A (Absolute Proof clips), 231A (Absolute Interference clips), and 247A (Kill Chain clips) for a limited purpose.  The statements made in the videos by those other than Mr. Lindell were not offered or admitted to prove the truth of those statements, and you should not consider the statements as evidence of the truthfulness of what is said.

You also heard evidence about a settlement that was reached in an unrelated defamation case between the Plaintiff and a news organization called Newsmax, which is not a party to this case.  Other than otherwise stipulated, you should not speculate about any of the details of that case or any of the terms or conditions of that settlement agreement.

**INSTRUCTION NO. 7**

**EVIDENCE IN ELECTRONIC FORMAT**

Exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. Necessary devices will be available to you in the jury room.

A court technician will show you how to operate the devices; how to locate and view the exhibits on the devices. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the Bailiff. If you need additional equipment or supplies or if you have questions about how to operate the devices, you may send a note to the Bailiff, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires maintenance or instruction, a court technician may enter the jury room with the Bailiff present for the sole purpose of assuring that the only matter discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury must not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operating the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the equipment in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the equipment for any other purpose. At my direction, technicians have taken steps to ensure that the equipment does not permit access to the Internet or to any "outside" website, database,

directory, game, or other material.  Do not attempt to alter the equipment to obtain access to such materials.  If you discover that the equipment provides or allows access to such materials, you must inform the Court immediately and refrain from viewing such materials.

Do not remove the equipment or any electronic data from the jury room, and do not copy any such data.

**INSTRUCTION NO. 8**

**STIPULATED FACTS**

Before the trial of this case, the Court held a conference with the lawyers for all the parties.  At this conference, the Parties entered into certain stipulations or agreements in which they agreed that facts could be taken as true without further proof.

The stipulated facts are as follows:

1.      Plaintiff Dr. Eric Coomer ("Dr. Coomer") was employed by Dominion Voting Systems ("DVS" or "Dominion").

2.      Dominion hired Dr. Coomer in June 2010, along with several other employees from Sequoia Voting Systems.  Dr. Coomer's job title from June 2010 to March 2013, was Director of Product Development.

3.      Dr. Coomer voluntarily left Dominion in March 2013, to take a consulting job at Sogeti as a large data analyst.  Dominion re-hired Coomer in November 2013.  From November 2013 to May 14, 2021, Dr. Coomer was employed at Dominion in the capacity as the Director of Product Strategy and Security.

4.      Dominion provided election related services to at least thirty different states during the 2020 presidential election.

5.      Defendant Michael J. Lindell ("Mr. Lindell") is the CEO of Defendant My Pillow, Inc. ("My Pillow").

6.      My Pillow is a for-profit corporation with its principal place of business in Chaska, Minnesota.  My Pillow is a retailer and sells pillows, bedding, and other goods.

7.      Lindell is also the founder of Defendant Frankspeech LLC ("Frankspeech").

8.      Frankspeech is organized under the laws of the state of Delaware.

10

9.      On January 6, 2021, the U.S. Congress certified the electoral college results and declared that Joe Biden was the winner of the 2020 presidential election.

10.      Joe Biden was sworn in as the President on January 21, 2020 and served as President of the United States until January 20, 2024.

11.      Joseph Oltmann ("Mr. Oltmann") lives in Colorado and is the host of the Conservative Daily podcast.

12.      On November 9, 2020, Mr. Oltmann published an episode of Conservative Daily podcast wherein he claimed to have "infiltrated" an "antifa conference call" on an unspecified date before the election.

13.      During the November 9 podcast, Mr. Oltmann stated that he had overheard an anonymous speaker identify another anonymous speaker as "Eric."

14.      Mr. Oltmann stated that another anonymous speaker asked, "Who is Eric?"

15.      Mr. Oltmann stated that another anonymous speaker responded, "Eric is the Dominion guy."

16.      Mr. Oltmann stated that the anonymous "Eric" stated, "Don't worry about the election. Trump's not going to win.  I made fucking sure of it."

17.      Mr. Oltmann repeated these claims on a variety of platforms and his statements were published multiple times by, in part, The Gateway Pundit, and One America News Network, among other social media personalities beginning in November 2020.

18.      Mr. Lindell did not retweet or post these stories in November or December 2020.

19.      Dr. Coomer filed a lawsuit for defamation against Mr, Oltmann and various

other non-parties, including Newsmax, on December 22, 2020.

20.    Mr. Oltmann met Mr. Lindell in late February 2021.

21.    Mr. Lindell was a guest on Mr. Oltmann's podcast on March 11, 2021.

22.    Starting on that date, Mr. Oltmann began utilizing promo code "CD21" to sell My Pillow products on the Conservative Daily podcast.

23.    On April 30, 2021, Dr. Coomer settled his defamation lawsuit with Newsmax.

24.    Dr. Coomer's settlement agreement with Newsmax did not include any provision relating to Mr. Lindell or My Pillow.

25.    Mr. Lindell produced three films in which Lindell interviewed various individuals about the 2020 election. Those videos are entitled Absolute Proof, Scientific Proof, and Absolute Interference.

26.    On May 3, 2021, Mr. Oltmann was a guest for an interview that aired on Frankspeech. During the interview, the following exchange took place:

> And so I was on that call back in middle to end of September. And on that call it was a weird call to be on because it became clear, there's a lot of rhetoric that gets thrown around all over the place. And as I came in and people started speaking, um, someone interrupts a guy named Eric and somebody asked this guy named Eric, who is this guy named Eric? And somebody answers 'Eric is the Dominion guy.' So, I take very very good notes. So I started taking notes, writing down all the information that I was gathering. Somebody interrupts after they said 'go ahead, Eric.' And somebody interrupts and says 'What are we gonna do if f-ing Trump wins?' And Eric responds, 'Don't worry about the election, Trump's not going to win. I made f-ing sure of it.' And then they all started laughing, right.

27.    On May 7, 2021, one week after Newsmax reached a legal settlement deal with Dr. Coomer, Newsmax issued an on-air retraction and apology to Dr. Coomer.

28.    On May 9, 2021, Mr. Lindell appeared in an interview that aired on

Frankspeech, where he made the following statement:

> It's over for Dominion, it's too late to close the gate.  The cows are out of
> the barn. Dominion, you did your best, and Smartmatic, to take our country
> through China.  You did your best, you corrupt people, you.  You tried to
> suppress our voice.  You did it, but you failed.  And I'm telling you, you
> Coomers of the world.  What's his name?  Yeah, Eric Coomer, if I'm you
> right now, I am, instead of going over and making deals at Newsmax, if I'm
> you, I'm turning myself in and turning in the whole operation so maybe, just
> maybe, that you get immunity and you only get to do, I don't know, ten,
> twenty years.  I mean, you are disgusting, and you are treasonous.  You are
> a traitor to the United States of America.  And you know what?  I can say
> that, just like I can about Brian Kemp and Brad Raffensberger.  These are
> things that I have evidence of.  The evidence is there.  You know, it's sitting
> there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring
> it to the FBI?'  Oh, it's getting to the Supreme Court, everybody. But we're
> going to let you the people, that's what Frank's all about, we're going to
> dump it. We're not taking any chance that those nine justices, 'Nope, we
> don't want to look at it, because they told us in early November there was
> not enough to overturn the election. And we don't want to get involved you
> know, because somebody might get upset.'  Well you know what?  This
> wasn't around in November December.  This came on January 9.

29.     On July 4, 2021, Mr. Lindell announced that he would be holding a "Cyber

Symposium" in Sioux Falls, South Dakota from August 10-12, 2021.

30.     On July 17, 2021, Mr. Lindell announced that he was offering $5 million "to

any attendee . . . that's invited to the Symposium if they can prove the data is not the

2020 election."

31.     Mr. Lindell stated that he wanted the Symposium to be "the biggest live

streamed event in history."

32.     The Cyber Symposium was held in Sioux Falls, South Dakota, August 10-

12, 2021.  During the symposium, the Frankspeech website had 13,986,053 page views.

33.     Mr. Lindell and Symposium organizers invited journalists, legislators, and

cyber security experts from across the country to attend the Cyber Symposium.

34.    The Cyber Symposium was livestreamed on Frankspeech.  Before and during the Cyber Symposium, My Pillow promoted sales of My Pillow products with promo codes.

35.    During the Cyber Symposium, the following exchange occurred on August 12, 2021 between Joe Oltmann, David Clements, and Phil Waldron:

> Clements: "Ok, so let's connect another dot really quick.  You need to keep in mind that one of the major players is Eric Coomer.  Eric Coomer was or is a vice president of Dominion systems. And what particular title does he have as vice president?"

> Oltmann: "He was the Director of Security and Strategy for Dominion Voting Systems.  He holds the adjudication patent that was assigned to, I think HSBC, as a guarantor on it."

> Clements: "Well follow me here, there's a few other questions. You mentioned that your presiding judge was marching in Antifa rallies last summer."

> Oltmann: "Yes."

> Clements: "Were you not the person who disclosed screenshots of social media posts that also shows that Eric Coomer has deep ties with Antifa?"

> Oltmann: "100%."

> Clements: "Ok, and were you not also on a phone call with Eric Coomer, or some recording where he made a particularly controversial statement about our then president?"

> Oltmann: "Yeah, so, uh, yes."

> Clements: "And what was that statement?"

> Oltmann: "He said that, uh,-"

> Waldron: "He's in full on lawyer mode."

> Oltmann: "Yeah he is in lawyer mode, I'm like yes sir! 'Don't worry about the election.  Trump's not going to win.  I made f-ing sure of it.'  I'm a Christian so I'm not going to use that word up here."

> Clements: "So this is first hand knowledge.  This isn't something.  He's telling you, in a court of law, Eric Coomer can confront his accusers.  He's

been accused of something pretty salacious.  But when you look at the screenshots, what are some things that show us, and perhaps you'll show us later today, that has been posted by Eric Coomer?  Because we've got this antifa judge with a person that's affiliated with antifa that has made a promise about the election outcome."

36.     At the Cyber Symposium on August 12, 2021, David Clements stated:

Alright, so you've got a couple of hitmen that were pulling the triggers.  The first gentleman, if you know, is John Poulos, who is the CEO of Dominion.  When he gave those remarks, it was before the legislature, under oath.  John Poulos committed perjury, time and time again.  The other gentleman at the end was a person we've heard about because of Joe Oltmann.  Eric Coomer, who holds the patent for the feature known as adjudication, which is one of the tools in their tool chest to murder the American people's vote.  And this is one of the statements he made along with, when Joe Oltmann talked about being on the call, this is what he heard.  And you heard from Joe Oltmann.  You can assess whether you think he's telling the truth.  'I made f-ing sure that Trump's not going to win.'  That's the vice president of a company that's running elections in 28 states. You've got your election cartel, you've got your vote trafficking organizations, and you have the man that pulled the trigger.

37.     Michael Lindell was not present on the stage for this discussion.

38.     Mr. Lindell was served with this lawsuit on April 5, 2022.

39.     On April 5, 2022, Mr. Lindell stated the following from the stairs of the

Colorado Capitol building:

It started with Eric Coomer and Dominion based right here in Colorado.  By the way, he just sued me as I walked up on the stage.  Just sued me, I just got papers.  Thanks, Eric!  Eric will be the first one behind bars when we melt down the machines.

40.     On April 6, 2022, Mr. Lindell stated the following during an interview on "The

Lindell Report" that aired on FrankSpeech:

Lindell: So everybody, if you want to know just how corrupt, the corruption we're up against.  Eric Coomer served, had served papers to me before I was going onstage at the Capitol.  I've never talked about Eric Coomer.

He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. . . . Who knows what he did there, but anyway, he served papers, everybody. He has sued, everybody ready for this? Mike Lindell, Frank Speech, and My Pillow. Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Raffensperger and Jena Griswold behind bars. You're #1 on my list. You go after my employees, go after my company again, you're disgusting. . . . You've been a part of the biggest crime this world has ever seen. Eric Coomer, president of Dominion, you have even said what you did or what you were going to do. You're disgusting. You're disgusting, you're evil, you belong behind bars, and we will not stop until you are behind bars. We're going to melt down your little machines and you're going to hang on to your little prison bars. "Let me out, let me out!" Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity. It's disgusting what you've done. You and Dominion. And Jena Griswold."

41.    On April 7, 2022, the following exchange occurred between Mr. Lindell and

Steve Bannon on the "War Room" podcast:

Lindell: "It's interesting enough, Steve, As I went to speak in Colorado, when we put this evidence out, about 12 days ago, 12 TV stations reached out to me and said we will no longer let you do My Pillow commercials if your face is in it. And then I got served by Eric Coomer two days ago, right when I was going to speak at the Capitol in Colorado. And I got served papers, another lawsuit, Eric Coomer, you know, he was the head of Dominion. So, instead of saying hey, we don't have anything to hide, well it's too late now. We already have what they were hiding. All it is, is another attack, Steve."

Bannon: "But why would Coomer's lawyers say, 'Hey, we've heard what Mike Lindell said in the last ten days, and we're going to go sue him again?' Why would they, logically, if they think you have the receipts, why would they do that?"

Lindell: "Because the lawyers are criminals too. We're gonna go after them now. I'm going after them. It's like a criminal crime family, Steve. It's a big criminal crime family. These machine companies, we now, I'll just bring this up so this can scare them a little bit, we have reason to believe now after I've talked to five different whistleblowers from five different states that all, all of our overseas military votes were for Biden. The ones that were emailed in, which was ninety some per cent of all emailed in. They're using

a national email system, Steve.  It's disgusting. That's gonna be a whole separate thing we're going after next.

42.    On May 23, 2022, Mr. Lindell stated the following on Joe Oltmann's "Conservative Daily" podcast:

Oltmann: "You also got sued by Eric Coomer."

Lindell: "Eric Coomer.  Look at the timing of that.  So here we are in Colorado, on the steps of the Capitol, and Eric Coomer, I'm not even sure on that.  What is his basis?  You want to talk about frivolous lawsuits, people, that's unbelievable.  Eric Coomer, who are you other than some corrupt person that was with Dominion, one of the most corrupt people. He's one of them that'll definitely be with all the rest of them when we melt down the machines being right behind the bars going 'Let me out! Let me out!  I'm sorry!'"

43.    On March 10, 2023, Mr. Lindell stated the following during an interview with Brannon Howse on "The Lindell Report" which aired on Frankspeech:

I stand by my words! I called him a criminal!  I called his lawyers a criminal! And you know what?  I stand by that, because what they did to MyPillow is criminal.  What they did to me is criminal. What they did to FrankSpeech. It is criminal!  And that judge that didn't rule, it could set a precedent.

Since the Parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.

**INSTRUCTION NO. 9**

**GLOSSARY**

"**Arbitration**" means a method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties to resolve a legal dispute and whose decision is binding unless overturned by a court.

"**Dox**" or "**doxxing**" means to "publicly identify or publish private information about someone especially as a form of punishment or revenge."

**INSTRUCTION NO. 10**

**DIRECT AND INDIRECT EVIDENCE**

Evidence may be either direct or circumstantial.  Circumstantial evidence is the proof of facts or circumstances from which the existence or nonexistence of other facts may reasonably be inferred.  All other evidence is direct evidence.  The law makes no distinction between the effect of direct evidence and circumstantial evidence.

**INSTRUCTION NO. 11**

**DEPOSITIONS AS EVIDENCE**

Certain testimony has been video recorded and introduced into evidence from a deposition.  A deposition is testimony taken under oath before the trial.  You are to consider that testimony as if it had been given by the witness from the witness stand.

**INSTRUCTION NO. 12**

**DETERMINING CREDIBILITY OF WITNESSES**

You are the sole judges of the credibility of the witnesses and the weight to be given their testimony.  You should take into consideration their means of knowledge; strength of memory and opportunities for observation; the reasonableness or unreasonableness of their testimony; the consistency or lack of consistency in their testimony; their motives; whether their testimony has been contradicted or supported by other evidence; their bias, prejudice or interest, if any; their manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the credibility of the witnesses.

Based on these considerations, you may believe all, part or none of the testimony of a witness.

**INSTRUCTION NO. 13**

**EXPERT WITNESSES**

A witness qualified as an expert by education, training, or experience may state opinions. You should judge expert testimony just as you would judge any other testimony. You may accept it or reject it, in whole or in part. You should give the testimony the importance you think it deserves, considering the witness's qualifications, the reasons for the opinions, and all of the other evidence in the case.

**INSTRUCTION NO. 14**

**INFERENCE ARISING FROM INVOCATION OF FIFTH AMENDMENT PRIVILEGE**

You may, but are not required to, draw an inference that the answer to any question that Tina Peters refused to answer by asserting a constitutional privilege against self-incrimination would have been unfavorable to one or more Defendants. You should not draw an inference if you find that Ms. Peters asserted the privilege for reasons unrelated to this case. Nor should you decide any Defendant's liability or non-liability based solely on Ms. Peters's assertion of her privilege against self-incrimination.

## INSTRUCTION NO. 15

## BURDEN OF PROOF

The Plaintiff has the burden of proving his claim(s) in this case.

"Burden of proof" means the obligation a party has to prove their claim(s) or defense(s) by a preponderance of the evidence. The party with the burden of proof can use evidence produced by any party to persuade you.

If a party fails to meet their burden of proof as to any claim or defense you must reject that claim or defense.

In this case, there are various burdens of proof with respect to different elements of the Plaintiff's claims. Namely, the burden of proof called a "preponderance of the evidence," the burden of proof called "clear and convincing evidence", and the burden of proof called "reasonable doubt." Each of these will be discussed in the next sections.

**INSTRUCTION NO. 16**

**PREPONDERANCE OF THE EVIDENCE**

1.      The Plaintiff has the burden of proving some of his claim(s) by a preponderance of

the evidence.

2.      The Defendant has the burden of proving each of his or its affirmative defense(s)

by a preponderance of the evidence.

3.      To prove something by a "preponderance of the evidence" means to prove that it

is more probably true than not.

If a party fails to meet their burden of proof as to a preponderance of the evidence

where required as to any claim, element of a claim, or defense; or if the evidence weighs

so evenly that you are unable to say that there is a preponderance on either side, you

must reject that claim or defense.

**INSTRUCTION NO. 17**

**CLEAR AND CONVINCING EVIDENCE**

Plaintiff must prove certain elements of his defamation claim by "clear and convincing evidence."  A fact or proposition has been proved by "clear and convincing evidence" if, considering all the evidence, you find it to be highly probable and you have no serious or substantial doubt.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.  But this standard does not require proof to an absolute certainty or "beyond a reasonable doubt."

**INSTRUCTION NO. 18**

**REASONABLE DOUBT – DEFINED**

Plaintiff seeks punitive damages in this case, which he must prove beyond a reasonable doubt.  Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case.  It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

## INSTRUCTION NO. 19

## DEFAMATION PER SE AS TO DEFENDANT MICHAEL J. LINDELL

Plaintiff claims that Defendant Michael J. Lindell published or caused to be published Ms. Peters's statement in Exhibit 212 and the statements I read earlier in Instruction No. 8, Paragraphs 26, 28, 35, 36, 39, 40, 41, 42, and 43. For Plaintiff to recover from Mr. Lindell on his claim of defamation per se, you must find that the following elements have been proved by a preponderance of the evidence:

1.    Defendant Lindell published or caused to be published at least one of the above statement(s) in the same or substantially similar words; and

2.    The published statement(s) caused the plaintiff actual damage.

You must further find that the following elements have been proved by clear and convincing evidence:

3.    The substance or gist of the statement(s) published by Defendant Lindell was/were false at the time they were published; and

4.    At the time of publication, Defendant Lindell knew that the statement(s) was/were false or made the statements with reckless disregard as to whether they were false.

If you find that the first or second element has not been proved by a preponderance of the evidence or that the third or fourth element has not been proved by clear and convincing evidence, then your verdict must be for the Defendant.

On the other hand, if you find that the first and second elements have been proved by a preponderance of the evidence and that the third and fourth elements have been proved by clear and convincing evidence, you must then consider Defendants' affirmative defense of substantial truth. If you find that Defendants have proved by a preponderance

of the evidence that any published statements by Defendant Lindell were substantially true, then your verdict must be for Defendant Lindell.  If you find that Defendants have failed to prove substantial truth by a preponderance of the evidence, then your verdict must be for the Plaintiff.

## INSTRUCTION NO. 20

## DEFAMATION PER SE AS TO DEFENDANT FRANKSPEECH, LLC

Plaintiff claims that Defendant Frankspeech, LLC published or caused to be published Ms. Peters's statement in Exhibit 212 and the statements I read earlier in Instruction No. 8, Paragraphs 26, 28, 35, 36, 39, 40, 41, 42, and 43. For Plaintiff to recover from Frankspeech on his claim of defamation per se, you must find that the following elements have been proved by a preponderance of the evidence:

1.    Defendant Frankspeech, through one or more of its agents or employees acting within the scope of their authority or employment, published or caused to be published at least one of the above statement(s) in the same or substantially similar words; and

2.    The published statement(s) caused the plaintiff actual damage.

You must further find that the following elements have been proved by clear and convincing evidence:

3.    The substance or gist of the statement(s) published by Defendant Frankspeech was/were false at the time they were published; and

4.    At the time of publication, Defendant Frankspeech knew that the statement(s) was/were false or made the statements with reckless disregard as to whether they were false.

If you find that the first or second element has not been proved by a preponderance of the evidence or that the third or fourth element has not been proved by clear and convincing evidence, then your verdict must be for the Defendant.

On the other hand, if you find that the first and second elements have been proved by a preponderance of the evidence and that the third and fourth elements have been proved by clear and convincing evidence, you must then consider Defendants' affirmative defense of substantial truth.  If you find that Defendants have proved by a preponderance of the evidence that any published statements by Defendant Frankspeech were substantially true, then your verdict must be for Defendant Frankspeech.  If you find that Defendants have failed to prove substantial truth by a preponderance of the evidence, then your verdict must be for the Plaintiff.

## INSTRUCTION NO. 21

## DEFAMATION PER SE AS TO DEFENDANT MY PILLOW, INC.

Plaintiff claims that Defendant My Pillow, Inc. published or caused to be published Ms. Peters's statement in Exhibit 212 and the statements I read earlier in Instruction No. 8, Paragraphs 26, 28, 35, 36, 39, 40, 41, 42, and 43. For Plaintiff to recover from Defendant My Pillow on his claim of defamation per se, you must find that the following elements have been proved by a preponderance of the evidence:

1.     Defendant My Pillow, through one or more of its agents or employees acting within the scope of their authority or employment, published or caused to be published at least one of the above statement(s) in the same or substantially similar words; and

2.     The published statement(s) caused the plaintiff actual damage.

You must further find that the following elements have been proved by clear and convincing evidence:

3.     The substance or gist of the statement(s) published by Defendant My Pillow was/were false at the time they were published; and

4.     At the time of publication, Defendant My Pillow knew that the statement(s) was/were false or made the statements with reckless disregard as to whether they were false.

If you find that the first or second element has not been proved by a preponderance of the evidence or that the third or fourth element has not been proved by clear and convincing evidence, then your verdict must be for the Defendant.

On the other hand, if you find that the first and second elements have been proved by a preponderance of the evidence and that the third and fourth elements have been

proved by clear and convincing evidence, you must then consider Defendants' affirmative

defense of substantial truth.  If you find that Defendants have proved by a preponderance

of the evidence that any published statements by Defendant My Pillow were substantially

true, then your verdict must be for Defendant My Pillow.  If you find that Defendants have

failed to prove substantial truth by a preponderance of the evidence, then your verdict

must be for the Plaintiff.

**INSTRUCTION NO. 22**

**CORPORATE LIABILITY, LIABILITY ARISING FROM EMPLOYMENT
RELATIONSHIP, AND SCOPE OF EMPLOYMENT**

Defendants Frankspeech, LLC and My Pillow, Inc. are corporate entities and can only act through their agents and employees.  Any act or omission by an agent of the corporate entity while acting within the scope of his or her authority is the act or omission of the corporate defendant.  Any act or omission by an employee of the corporate entity while acting within the scope of his or her employment is the act or omission of the corporate defendant.

An employee is acting within the scope of his or her employment when the employee is doing work that is:

1.      Assigned by his or her employer; or

2.      Proper, usual, and necessary to accomplish the assigned work; or

3.      Customary in the particular trade or business to accomplish the assigned work.

I will explain in the following instructions what it means for someone to be an agent of a corporation.

**INSTRUCTION NO. 23**

**AGENCY RELATIONSHIP – DEFINED**

An agency relationship is created when an agreement, written or oral, express or implied, between two persons establishes that one of them is to act on behalf of and subject to the control of the other.  The person who agrees to act on behalf of another is called the agent, and the other is called the principal.

**INSTRUCTION NO. 24**

**SCOPE OF AUTHORITY OF AGENT – DEFINED**

An agent is acting within the scope of his authority when the agent is carrying on

business for his principal which the principal has expressly authorized or which is within

the incidental, implied, or apparent authority of the agent.

## INSTRUCTION NO. 25

## APPARENT AUTHORITY – DEFINITION AND EFFECT

An agent has apparent authority when a principal, by words or conduct, has caused another person to reasonably believe that the principal has authorized an agent to act on the principal's behalf, even though the principal may not have done so.  When an agent has apparent authority, it is the same as if the principal had authorized the agent's actions.

**INSTRUCTION NO. 26**

**EXPRESS AUTHORITY – DEFINED**

An agent acts with express authority when the principal directly states that the

agent may perform a particular act on the principal's behalf.

**INSTRUCTION NO. 27**

**INCIDENTAL AUTHORITY – DEFINED**

In addition to any express authority given by a principal to an agent, an agent has the incidental authority to do those acts that are necessary, usual, and proper to accomplish the express authority.

**INSTRUCTION NO. 28**

**IMPLIED AUTHORITY – DEFINED**

In addition to any express authority given by a principal to an agent, an agent has implied authority to take actions:

1.     On behalf of his principal that are customary in the trade or business involved, if the principal knew or should have known of such practices; or

2.     That the agent had taken before on behalf of his principal that the principal knew of and by conduct or lack of conduct impliedly approved; or

3.     That the agent had the incidental authority to perform on the principal's behalf.

**INSTRUCTION NO. 29**

**RATIFICATION – DEFINITION AND EFFECT**

A person may act as the agent for another without authority.  If the person for whom the act was done has full knowledge of all the important facts, that person may, by words or conduct, ratify or accept the action after it was done.  Ratification after the action is the same as authorization before the action.

**INSTRUCTION NO. 30**

**SCOPE OF AUTHORITY OR EMPLOYMENT – DEPARTURE**

An agent is acting outside the scope of his authority or employment when the agent substantially departs from his principal's business by doing an act intended to accomplish an independent purpose of the agent's own or for some other purpose which is unrelated to the business of the principal and not reasonably included within the scope of the agent's authority or employment.  Such departure may be of short duration, but during such time the agent is not acting within the scope of his authority or employment.

**INSTRUCTION NO. 31**

**DEFAMATION – STATE OF MIND**

To prevail on his defamation claims, Plaintiff must prove that Defendants either published statements that they knew were false or published statements with reckless disregard for the truth or falsity of the statement.  A statement is made with reckless regard when, at the time of publication, the publisher has serious doubts as to the truth of the statement or has a high degree of awareness that the statement is probably false. You may infer a defendant's knowledge of falsity or reckless disregard for the truth from circumstantial evidence.  Circumstantial evidence of knowledge of falsity or reckless disregard for the truth may include (1) grossly inadequate investigation into the bases for a statement; (2) the speaker's hostility toward the plaintiff; (3) inconsistencies in the account(s) of the source(s) for the statement; (4) reasons to doubt the veracity or reliability of the source(s); (5) the inherent improbability of the statement's claim; and (6) other credible information contradicting the information in the statement.

**INSTRUCTION NO. 32**

**PUBLISHED – DEFINED**

A statement is "published" when it is communicated orally or in writing to and is understood by some person other than the plaintiff.  Anyone who causes or participates in the publication of a defamatory matter can be liable for the publication.

**INSTRUCTION NO. 33**

**DEFAMATORY – DEFINED**

A statement is defamatory of a person if it tends to harm the person's reputation by lowering the person in the estimation of at least a substantial and respectable minority of the community.

**INSTRUCTION NO. 34**

**FALSITY – DEFINED**

A statement is false if its substance or gist is contrary to the true facts, and reasonable people hearing or learning of the statement would be likely to think significantly less favorably about the person referred to than they would if they knew the true facts.  The fact that a statement may have contained some false information or minor factual inaccuracies does not necessarily make the substance or gist of the statement itself false.

## INSTRUCTION NO. 35

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT MICHAEL J. LINDELL

For the Plaintiff to recover from Defendant Michael J. Lindell on his claim of intentional infliction of emotional distress, you must find all of the following:

1.    Plaintiff has proved his defamation claim against Defendant Lindell as set forth in Instruction No. 19;

2.    Plaintiff has proved by a preponderance of the evidence that Defendant Lindell engaged in extreme and outrageous conduct by defaming him;

3.    Plaintiff has proved by a preponderance of the evidence that Defendant Lindell did so recklessly or with the intent of causing the Plaintiff severe emotional distress; and

4.    Plaintiff has proved by a preponderance of the evidence that Defendant Lindell's conduct caused the Plaintiff severe emotional distress.

If you find that any one or more of these four elements has not been proved, then your verdict must be for Defendant Lindell.

On the other hand, if you find that all of these four elements have been proved, then you must consider the Defendants' affirmative defense that the statements at issue were substantially true. If you find that this affirmative defense has been proved by a preponderance of the evidence, then your verdict must be for Defendant Lindell. However, if you find that this affirmative defense has not been proved, then your verdict must be for the Plaintiff.

## INSTRUCTION NO. 36

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT FRANKSPEECH LLC

For the Plaintiff to recover from Defendant Frankspeech LLC, on his claim of intentional infliction of emotional distress, you must find all of the following:

1.    Plaintiff has proved his defamation claim against Defendant Frankspeech as set forth in Instruction No. 20;

2.    Plaintiff has proved by a preponderance of the evidence that Defendant Frankspeech engaged in extreme and outrageous conduct by defaming him;

3.    Plaintiff has proved by a preponderance of the evidence that Defendant Frankspeech did so recklessly or with the intent of causing the Plaintiff severe emotional distress; and

4.    Plaintiff has proved by a preponderance of the evidence that Defendant Frankspeech's conduct caused the Plaintiff severe emotional distress.

If you find that any one or more of these four elements has not been proved, then your verdict must be for Frankspeech.

On the other hand, if you find that all of these four elements have been proved, then you must consider the Defendants' affirmative defense that the statements at issue were substantially true.  If you find that this affirmative defense has been proved by a preponderance of the evidence, then your verdict must be for Defendant Frankspeech LLC.  However, if you find that this affirmative defense has not been proved, then your verdict must be for the Plaintiff.

**INSTRUCTION NO. 37**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT MY PILLOW, INC.**

For the Plaintiff to recover from Defendant My Pillow, Inc. on his claim of intentional infliction of emotional distress, you must find all of the following:

1.    Plaintiff has proved his defamation claim against Defendant My Pillow as set forth in Instruction No. 21;

2.    Plaintiff has proved by a preponderance of the evidence that Defendant My Pillow engaged in extreme and outrageous conduct by defaming him;

3.    Plaintiff has proved by a preponderance of the evidence that Defendant My Pillow did so recklessly or with the intent of causing the Plaintiff severe emotional distress; and

4.    Plaintiff has proved by a preponderance of the evidence that Defendant My Pillow's conduct caused the Plaintiff severe emotional distress.

If you find that any one or more of these four elements has not been proved, then your verdict must be for My Pillow.

On the other hand, if you find that all of these four elements have been proved, then you must consider the Defendants' affirmative defense that the statements at issue were substantially true.  If you find that this affirmative defense has been proved by a preponderance of the evidence, then your verdict must be for Defendant My Pillow. However, if you find that this affirmative defense has not been proved, then your verdict must be for the Plaintiff.

49

**INSTRUCTION NO. 38**

**EXTREME AND OUTRAGEOUS CONDUCT**

Extreme and outrageous conduct is conduct that is so outrageous in character, and so extreme in degree, that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community.  Such outrageous conduct occurs when knowledge of all the facts by a reasonable member of the community would arouse that person's resentment against the defendant and lead that person to conclude that the conduct was extreme and outrageous.

A series of acts may constitute outrageous conduct, even though any one of the acts might be considered only an isolated unkindness or insult.  A simple act of unkindness or insult, standing alone, does not constitute outrageous conduct.  However, a single incident may constitute outrageous conduct if the incident would be so regarded by a reasonable member of the community.

**INSTRUCTION NO. 39**

**DEFINITION OF RECKLESSLY OR WITH INTENT**

A person intends to cause another severe emotional distress if that person engages in conduct for the purpose, in whole or in part, of causing severe emotional distress in another person, or knowing that his or her conduct is certain or substantially certain to have that result.

A person whose conduct causes severe emotional distress in another person has acted recklessly if, at the time, that person knew, or, because of other facts known to him or her, reasonably should have known that there was a substantial probability that his or her conduct would cause severe emotional distress in another person.

**INSTRUCTION NO. 40**

**DEFINITION OF SEVERE EMOTIONAL DISTRESS**

Severe emotional distress consists of highly unpleasant mental reactions, such as (nervous shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry) and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it.  The duration and intensity of emotional distress are factors to be considered in determining its severity.

**INSTRUCTION NO. 41**

**CIVIL CONSPIRACY**

For the Plaintiff to recover from the Defendants on his claim of civil conspiracy, you must find that all of the following have been proved by a preponderance of the evidence:

1.  The Defendants agreed, by words or conduct, to accomplish a goal through unlawful means;

2.  One or more unlawful acts were performed to accomplish the goal;

3.  The Plaintiff had damages; and

4.  The Plaintiff's damages were caused by the acts performed to accomplish this goal.

If you find that any one or more of these four elements has not been proved, then your verdict must be for the Defendants.

On the other hand, if you find that all four of these elements have been proved, then you must consider the Defendants' affirmative defense that any alleged unlawful, defamatory statements were substantially true. If you find that Defendants have proved substantial truth by a preponderance of the evidence, then your verdict must be for the Defendants. However, if you find that this affirmative defense has not been proved, then your verdict must be for the Plaintiff.

**INSTRUCTION NO. 42**

**UNLAWFUL MEANS – DEFINED**

"Unlawful means" are the alleged defamation of or intentional infliction of emotional distress on the Plaintiff.  In other words, if you find that Dr. Coomer has prevailed on his claims for defamation or intentional infliction of emotional distress, you may find "unlawful means" for purposes of civil conspiracy.  The fact that this definition of "unlawful means" is being given to you does not mean that the Court is instructing you to find that unlawful means were used.  The question of whether or not such means were used is a question of fact for you to determine.

**INSTRUCTION NO. 43**

**AFFIRMATIVE DEFENSE – SUBSTANTIAL TRUTH**

The Defendants, Michael J. Lindell, My Pillow, Inc., and Frankspeech LLC, are not legally responsible to the Plaintiff, Eric Coomer, on his claim of defamation, if the affirmative defense of substantial truth is proved by a preponderance of the evidence. This defense is proved if you find the statements published by the defendant were substantially true.   A statement is substantially true if its substance or gist is true. Substantial truth does not require every word to be true.

## INSTRUCTION NO. 44

## AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE

If you find that the Plaintiff, Eric Coomer, Ph.D. has had actual damages, then you must consider whether the Defendants Michael J. Lindell, My Pillow, Inc., and Frankspeech LLC, have proved their affirmative defense of Plaintiff's failure to mitigate or minimize damages. The Plaintiff has the duty to take reasonable steps under the circumstances to mitigate or minimize his damages. Damages, if any, caused by Plaintiff's failure to take such reasonable steps cannot be awarded to the Plaintiff.

If you find that the Defendants have not met their burden to prove this affirmative defense, then you shall make no deduction from Plaintiff's damages.

On the other hand, if you find that Defendants have proved this defense, then you must determine the amount of damages caused by the Plaintiff's failure to take such reasonable steps. This amount must not be included in your award of damages.

## INSTRUCTION NO. 45

## DAMAGES – RECOVERY OF

The Plaintiff has the burden of proving, by a preponderance of the evidence, the nature and extent of his damages.  If you find in favor of the Plaintiff, you must determine the total dollar amount of his damages, if any, that were caused by the conduct of the Defendants Michael J. Lindell, Frankspeech LLC, and My Pillow, Inc.

In determining Plaintiff's damages, you shall consider the following:

1.  Any noneconomic losses or injuries Plaintiff has had to the present time or that Plaintiff will probably have in the future, including: physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, public disgrace, indignity and impairment of the quality of life.

2.  Any economic losses Plaintiff has had to the present time or will probably have in the future, including:  reputational repair; reasonable and necessary medical, therapy and other expenses, and costs of restoring or repairing reputational harm.

If you find in favor of the Plaintiff, but do not find any actual damages, you shall award him nominal damages of one dollar.  The fact that an instruction on measure of damages has been given to you does not mean that the Court is instructing the jury to award or not to award damages.  The question of whether or not damages are to be awarded is a question for the jury's consideration.

**INSTRUCTION NO. 46**

**REPETITION BY THIRD PERSONS AS AN ELEMENT OF DAMAGES**

In awarding the Plaintiff damages, if any, you must take into account not only the damages to the Plaintiff which occurred as a result of a Defendant's original publication of the defamatory statement(s), but also any damages which may have occurred as a result of any repetition of the defamatory statement(s) by third persons. However, you must also find that such repetition was the natural consequence of the Defendants' original publication, or that the Defendants expressly or impliedly authorized its repetition.

**INSTRUCTION NO. 47**

**ACTUAL DAMAGES – DEFINED**

"Actual damage" includes any impairment of the plaintiff's reputation, personal humiliation, mental anguish and suffering, and reasonable and necessary medical and other expenses, and costs of restoring or repairing reputational harm.

**INSTRUCTION NO. 48**

**CIRCUMSTANCES THAT MITIGATE DAMAGES**

If you find that the Plaintiff is entitled to recover damages from one or more Defendants, then in determining those damages you must take into account any of the following factors that have been proved by a preponderance of the evidence.

1.     Whether the Defendants reasonably relied on the source of information on which the statements were based;

2.     Whether the Plaintiff's damages were caused, in part, by third persons who published on the same subject, before or about the same time as the Defendants published; or

3.     Whether the Defendants acted in good faith, believing the statements to be true.

**INSTRUCTION NO. 49**

**UNCERTAINTY AS TO AMOUNT OF DAMAGES**

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount.  You should use your best judgment based on the evidence.

**INSTRUCTION NO. 50**

**MULTIPLE RECOVERY PROHIBITED**

The Plaintiff has sued for the same damages on three different claims for relief. The claims for relief on which the Plaintiff has sued and on which you have been instructed are:    Defamation; Intentional Infliction of Emotional Distress; and Civil Conspiracy.

If you find for the Plaintiff on more than one claim for relief, you may award him damages only once for the same damages.

**INSTRUCTION NO. 51**

**EXEMPLARY OR PUNITIVE DAMAGES**

If you find in favor of the Plaintiff on his claim(s) of defamation then you shall
consider whether the Plaintiff should recover punitive damages against the Defendant(s).

If you find beyond a reasonable doubt that one or more Defendants acted in a
fraudulent, malicious, or willful and wanton manner, in causing the Plaintiff's damages
you shall determine the amount of punitive damages, if any, that the Plaintiff should
recover.

Punitive damages, if awarded, are to punish the Defendant(s) and to serve as an
example to others.

**INSTRUCTION NO. 52**

**WILLFUL AND WANTON – DEFINED**

"Willful and wanton conduct" means an act or omission purposefully committed by a person who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff.

**INSTRUCTION NO. 53**

**ELECTION OF FOREPERSON OR PRESIDING JUROR; DUTY TO DELIBERATE;**

**COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS VERDICT;**

**VERDICT FORM**

Now that I've explained the law you will apply in reaching your verdict, I will explain the rules and procedures you'll follow during deliberations.  You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson.  The foreperson will preside over your discussions and speak for you here in court.

A special verdict form has been prepared for your convenience.  You will take this form to the jury room.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room and try to reach agreement.  The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should.  But do not make a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times that you are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, send me a

note signed by one or more of you.  Give the note to the Bailiff and I will answer you as soon as I can, either in writing or here in court.  While you are deliberating, do not tell anyone—including me—how many jurors are voting for any side.

Fourth, your verdict must be based solely on the evidence and on the law I have given to you in these instructions.  The verdict must be unanimous.  Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case.  You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the Bailiff that you are ready to return to the courtroom.

**INSTRUCTION NO. 54**

**VERDICT FORM—JURY'S RESPONSIBILITY**

Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

**INSTRUCTION NO. 55**

**COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S**

**DELIBERATIONS**

If, during your deliberations, it becomes necessary to communicate with me, you may send a note by the Bailiff, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any means other than a signed writing.  I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

From the oath about to be taken by the Bailiff(s) you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

**INSTRUCTION NO. 56**

**USE OF NOTES**

You may use the notes taken by you during the trial. However, the notes should not be substituted for your memory.  Remember, notes are not evidence.  If your memory should differ from your notes, then you should rely on your memory and not on your notes.

**INSTRUCTION NO. 57**

**JUROR USE OF ELECTRONIC COMMUNICATION TECHNOLOGIES**

Throughout your deliberations, you may discuss with each other the evidence and the law that has been presented in this case, but you must not communicate with anyone else by any means about the case. You also cannot learn from outside sources about the case, the matters in the case, the legal issues in the case, or individuals or other entities involved in the case. This means you may not use any electronic device or media (such as a phone, computer, or tablet), the internet, any text or instant messaging service, or any social media apps (such as X (formerly known as Twitter), Facebook, Instagram, LinkedIn, YouTube, WhatsApp, and Snapchat) to research or communicate about what you've seen and heard in this courtroom.

These restrictions continue during deliberations because it is essential, under our Constitution, that you decide this case based solely on the evidence and law presented in this courtroom. Information you find on the internet or through social media may be incomplete, misleading, or inaccurate. As I noted in my instructions at the start of the trial, even using your smartphones, tablets, and computers—and the news and social media apps on those devices—may inadvertently expose you to certain notices, such as pop-ups or advertisements, that could influence your consideration of the matters you've heard about in this courtroom.

You are permitted to discuss the case with only your fellow jurors during deliberations because they have seen and heard the same evidence and instructions on the law that you have, and it is important that you decide this case solely on the evidence presented during the trial, without undue influence by anything or anyone outside of the

courtroom.  For this reason, I expect you to inform me at the earliest opportunity, should

you learn about or share any information about this case outside of this courtroom or the

jury room, or learn that another juror has done so.

**INSTRUCTION NO. 58**

**QUESTIONS DURING DELIBERATIONS**

Once you begin your deliberations, if you have a question about the evidence in this case or about the instructions or verdict forms that you have been given, your Foreperson should write the question on a piece of paper, sign it and give it to the Bailiff who will bring it to me.

The Court will then confer with the attorneys as to the appropriate way to answer your question. However, there may be some questions that, under the law, the Court is not permitted to answer. If it is improper for the Court to answer the question, the Court will tell you that. Please do not speculate about what the answer to your question might be or why the Court is not able to answer a particular question.

**INSTRUCTION NO. 59**

**DUTIES UPON RETIRING – SELECTION OF A FOREPERSON**

The original forms of the written instructions and the exhibits are a part of the court record.  Do not place any marks or notes on them.  (The instructions labeled "copy" may be marked or used in any way you see fit.)

The Bailiff will now escort you to the jury room.  After you get to the jury room you shall select one of your members to be the foreperson of the jury.  That person will be in charge of your discussions.  You must all agree on your verdict, and you must sign the original form of whatever verdict you reach.

Please notify the Bailiff when you have reached a verdict, but do not tell the Bailiff what your verdict is.  You shall keep the verdict forms, these instructions and the exhibits until the Court gives you further instructions.