**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-01129-NYW-SBP

ERIC COOMER,

    Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH LLC, and
MY PILLOW, INC.,

    Defendants.

---

### ORDER

---

This matter is before the Court on the Court's Order to Show Cause, [Doc. 309], and Defendants' Response to Show Cause Order and Motion for Leave to Correct Filing ("Response"), [Doc. 311].[1]  Pursuant to subsequent orders, [Doc. 313; Doc. 338], Defendants have submitted additional materials for the Court's consideration and certified that the record is complete, [Doc. 323; Doc. 339].  For the reasons set forth herein, the Order to Show Cause [Doc. 309] is **MADE ABSOLUTE**.

### BACKGROUND

In preparation for trial in this matter, the Court issued a Trial Preparation Order that set certain deadlines, including for the filing of motions in limine.  [Doc. 265 at 6].  The

---

[1] Where the Court refers to the filings made in Electronic Court Filing ("ECF") system in this action, it uses the convention [Doc. ____] and uses the page number as assigned by the ECF system, except when citing from the transcript of a proceeding.  When citing the transcript of a proceeding, the Court uses the ECF docket number, but cites to the page and line numbers as assigned in the original transcript.  Additionally, where the Court refers to filings in other actions, it uses the convention [ECF No. ____].

Trial Preparation Order further informed the Parties that any pending motions in limine would be discussed at the Final Pretrial/Trial Preparation Conference. [*Id.* at 1–2]. Plaintiff Eric D. Coomer ("Plaintiff" or "Dr. Coomer") filed a Motion in Limine on February 10, 2025. [Doc. 265]. Defendants Michael J. Lindell, Frank Speech LLC, and MyPillow, Inc. (collectively, "Defendants") filed a Brief in Response to the Motion in Limine ("Opposition") on February 25, 2025. [Doc. 283]. Dr. Coomer filed a Reply in Support of Motion in Limine ("Reply") on March 7, 2025. [Doc. 288]. Defendants' Opposition contained the "nearly thirty defective citations" that led to the Order to Show Cause. [Doc. 309 at 2–3].

Christopher Kachouroff ("Mr. Kachouroff") of the law firm of McSweeney Cynkar & Kachouroff PLLC appeared at the Final Pretrial/Trial Preparation Conference as lead counsel for Defendants.[2] After counsel for Dr. Coomer argued on his behalf with respect to the Motion in Limine, the Court provided Mr. Kachouroff an opportunity to respond on behalf of Defendants. *See* [Doc. 315 at 69:19–22]. Although Mr. Kachouroff equivocated about whether he was prepared to argue the Motion in Limine, [*id.* at 71:19–72:9], he substantively argued the issues, [*id.* at 69:21–80:11, 85:1–90:15]. Only after Mr. Kachouroff concluded his argument and inquired whether "there [was] anything else the Court would like me to address," did the Court raise several questions regarding the Opposition. *See* [*id.* at 90:15–19]. The discussed errors included but were not limited to:

> [M]isquotes of cited cases; misrepresentations of principles of law associated with cited cases, including discussions of legal principles that simply do not appear within such decisions; misstatements regarding whether case law originated from a binding authority such as the United States Court of Appeals for the Tenth Circuit; misattributions of case law to

---

[2] As noted in the Order to Show Cause, Ms. DeMaster also signed the Opposition. [Doc. 309 at 1–2; Doc. 283 at 15].

2

this District; and most egregiously, citation of cases that do not exist. [Doc. 309 at 3]. The Court omitted at least two errors from its discussion at the Final Pretrial/Trial Preparation Conference. First, the Court did not address a misquotation from *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1138 (10th Cir. 2006) ("*Pure* Misquote"). [Doc. 283 at 2]. The Opposition uses the parenthetical "(recognizing that 'reputation and character are inextricably intertwined' in defamation cases)," but the quotation "reputation and character are inextricably intertwined" does not appear in *Pure*. Second, the Court did not alert Defendants to an inaccurate citation to *United States v. Reaves*, 649 F.3d 862, 867–68 (8th Cir. 2011) ("*Reaves* Erroneous Citation"). *See* [Doc. 283 at 12]. *Reaves* does not support the proposition that "[c]ourts recognize that evidence often serves multiple purposes and implicates multiple evidentiary rules." *Compare* [*id.*], *with Reaves*, 649 F.3d at 867–68.

As for the errors the Court did discuss at the Final Pretrial/Trial Preparation Conference, Mr. Kachouroff was unable to respond in a manner that was satisfactory to the Court. [Doc. 315 at 90:15–112:22]. Specifically, Mr. Kachouroff indicated that he had delegated citation checking for the Opposition to his co-counsel, Jennifer DeMaster ("Ms. DeMaster"). [*Id.* at 94:16–17]. Mr. Kachouroff agreed that both he and Ms. DeMaster had signed and certified the Opposition for purpose of Rule 11 of the Federal Rules of Civil Procedure. [*Id.* at 90:19–22].[3] In addition, the Court had the following colloquy with

---

[3] The Opposition also identified Douglas G. Wardlow and Jeremiah D. Pilon. [Doc. 283 at 15–16]. As the Court noted in the Order to Show Cause, these individuals appear to be in-house counsel for Defendant My Pillow, Inc., but neither have entered an appearance in this case. [Doc. 309 at 2 n.1]. Mr. Pilon does not appear to be a member of the Bar of the United States District Court for the District of Colorado. Mr. Wardlow has since withdrawn from this case. [Doc. 318; Doc. 324].

Mr. Kachouroff:

>THE COURT: Was this motion generated by generative artificial intelligence?
>
>MR. KACHOUROFF: Not initially. Initially, I did an outline for myself, and I drafted a motion, and then we ran it through AI. And I --
>
>THE COURT: And did you double-check any of these citations once it was run through artificial intelligence?
>
>MR. KACHOUROFF: Your Honor, I personally did not check it. I am responsible for it not being checked.
>
>THE COURT: And you understood, as an officer of the court, pursuant to Rule 11 --
>
>MR. KACHOUROFF: I did, Your Honor.
>
>THE COURT: -- if you're going to use generative artificial intelligence that that did not excuse you from the obligations of Rule 11?
>
>MR. KACHOUROFF: Absolutely not. Absolutely not.
>
>THE COURT: You understood that, correct?
>
>MR. KACHOUROFF: Yes, I did, Your Honor.
>
>THE COURT: And that doesn't seem to have happened here, does it?
>
>MR. KACHOUROFF: No, Your Honor.

[Doc. 315 at 111:1–21]. At no time did Mr. Kachouroff indicate that he did not understand what "generative artificial intelligence" referred to or ask for clarification. [*Id.*].

Based on the deficiencies in the Opposition and the lack of explanation during the Final Pretrial/Trial Preparation Conference, the Court ordered Mr. Kachouroff and Ms. DeMaster to show cause why they should not be sanctioned and referred to their respective state bars for disciplinary proceedings. [Doc. 309 at 5–6]. On April 25, 2025, Mr. Kachouroff and Ms. DeMaster submitted their Response to the Order to Show Cause,

accompanied, inter alia, by a declaration from each of them. [Doc. 311; Doc. 311-5; Doc. 311-6].

In that Response, Defendants represented that counsel "was unaware of any errors or issues with his response filed 55 days earlier, and had no reasonable opportunity to investigate any problem to be able to engage in constructive discussion about Doc. No. 283." [Doc. 311 at 1]. Defendants further asserted that "[a]fter the hearing and having a subsequent opportunity to investigate Doc. 283, it was immediately clear that the document filed was not the correct version. It was a prior draft. It was inadvertent, an erroneous filing that was not done intentionally, and was filed mistakenly through human error. Counsel acted swiftly to rectify the error." [Doc. 311 at 2]. Defendants submitted additional materials for the Court's consideration and certified that the record is complete with respect to the Order to Show Cause. [Doc. 339].

For the following reasons, the Court respectfully **CONCLUDES** that sanctions are warranted against Mr. Kachouroff and the law firm of McSweeney Cynkar & Kachouroff PLLC, jointly and severally, and against Ms. DeMaster individually.

## ANALYSIS

I.    **Rule 11 of the Federal Rules of Civil Procedure**

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

5

Courts across the country—both within the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") and outside of it—recognize that Rule 11 applies to the use of artificial intelligence. *See, e.g.*, *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) ( "At [Rule 11's] core, an attorney who signs a legal document certifies that they have 'read the document, [have] conducted a reasonable inquiry into the facts and the law and are satisfied that the document is well grounded in both, and is acting without any improper motive.'" (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542, (1991))); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) ("The Court has described Respondents' submission of fake cases as an unprecedented circumstance. A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." (citation omitted)); *Ferris v. Amazon.com Servs., LLC*, No. 3:24-cv-00304-MPM-JMV, 2025 WL 1122235, at *2 (N.D. Miss. Apr. 16, 2025) (applying Rule 11 to the plaintiff's submissions of false citations through his complaint and subsequent filings). Rule 11 expressly provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*

## II. Record Before the Court

Despite Mr. Kachouroff's concessions during the Final Pretrial/Trial Preparation Conference, [Doc. 315 at 111:22–112:22], both the Response to the Order to Show

6

Cause and Mr. Kachouroff's Declaration take on a puzzlingly defiant tone and tenor, [Doc. 311; Doc. 311-6].  The Response suggests that the Court improperly and unreasonably expected counsel to be prepared to address the substance of the Opposition to the Motion in Limine, including the legal authority upon which Defendants' arguments were based, after he acknowledged that he was lead counsel and signed the pleading and after the Trial Preparation Order expressly indicated that such issues would be "discussed."[4] [Doc. 311 at 1–2; Doc. 311-6 at ¶ 5 ("I must respectfully submit that it was unfair for the Court to continue to rapidly examine me with detailed questions about this document in this posture, when I was clearly confused by the document that was before the Court.")].

Mr. Kachouroff's attempt to shift responsibility for counsel's failure to properly review and file Defendants' Opposition is both troubling and not well-taken.  Contrary to counsel's contention, Rule 11 does not require the Court to provide advance notice or a safe harbor before issuing an order to show cause why conduct specifically described in the order has not violated Rule 11(b).  Fed. R. Civ. P. 11(c)(3).  Instead, counsel has an affirmative duty—without any prompting from the Court—to comply with Rule 11 and all other Federal Rules of Civil Procedure.  Indeed, the Supreme Court has held that the

---

[4] [Doc. 265 at 1–2].  The Court is unpersuaded by Mr. Kachouroff's attempt to distinguish the terms "discussed" and "formally argued" from each other. [Doc. 311-6 at ¶ 11].  Either term reflects the expectation that counsel be prepared to address substantively any outstanding disputes regarding the admissibility of evidence raised by the Motion in Limine and Response at the Final Pretrial/Trial Preparation Conference.  To the extent that Mr. Kachouroff was unclear about his obligations based on the Court's language, Rule 16 of the Federal Rules of Civil Procedure provides express guidance, in pertinent parts: "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters . . . obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and <u>ruling in advance on the admissibility of evidence</u>, as well as "<u>disposing of any pending motions</u>." Fed. R. Civ. P. 16(c)(2)(C), (K) (emphasis added).

7

filing of papers "without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction." *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). And despite Mr. Kachouroff's suggestion, the Court did not blindside Defendants with a public, written Order to Show Cause. Rather, the Court offered Mr. Kachouroff the opportunity to explain the errors in the Opposition before the Court issued a written order. In any case, the Court has given defense counsel an opportunity to show cause, and it now turns to the substance of their Response.

A.      Submission of a Draft

Defense counsel submits that Exhibit A to their Response is the "correct response" to Plaintiff's Motion in Limine, which is submitted "*without alteration and does not include a completed certificate of service.*" [Doc. 311 at 2 (citing [Doc. 311-1])]. They further contend that "[t]he mistaken filing occurred under circumstances which were entirely inadvertent. For example, the day prior to the filing of the wrong version, defense counsel worked together to remove troublesome citations and shore up the main argument." [*Id.* at 3 (citing Doc. 311-3)]. Mr. Kachouroff declares under penalty of perjury that:

> "[b]etween February 22 and March 1, 2025, I was on a long overdue one-week vacation in Mexico with my family. Nevertheless, during that time, Mrs. DeMaster and I completed final revisions on our Opposition, going through each page to check both the argument and verify the case citations. Because of the limitations on internet service where I was located, as we confirmed deletions and edits, Mrs. DeMaster simultaneously completed a citation check using her Westlaw account. <u>Mrs. DeMaster also sent me a Westlaw citation report that allowed me to compare the citations in the Westlaw report with those in our Opposition</u>. Correspondence confirming our work together and her Westlaw citation report is attached as Exhibit C to our Motion for Leave (Email dated February 24, 2025). These emails are true and correct copies of communication between myself and Mrs. DeMaster. <u>I printed the drafts out and closely reviewed the final version that was to be filed</u>.

[Doc. 311-6 at ¶ 8 (emphasis added)]. Ms. DeMaster declares, under penalty of perjury,

8

that the correct version that should have been filed was titled "2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy."  [Doc. 311-5 at 4 at ¶ 14].  Ms. DeMaster further declares "I have included two true and accurate screen shots of the document properties for the two versions as Exhibit D to Defendants' Motion for Leave that show the time edits to both versions of the documents. . . . As can be seen, the last edit was done to the incorrect version and it was edited for six minutes.  The purpose of that very brief edit was to ensure the certificate of service date was filled out and Court caption was changed to Colorado." [*Id.* at ¶ 16].

In sum, defense counsel contend that they mistakenly filed "FINAL MIL 2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions)"—which contains the erroneous citations—instead of the corrected "2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy."  To evaluate counsel's representations, this Court attempts to square counsel's representations with the documentary record before it.

### 1. Filed Version

The data from the District's CM/ECF system related to the filed version of the Opposition, [Doc. 283], indicates that a pdf version entitled "2025.02.25 Coomer_Opp MIL.pdf" was filed on February 25, 2025, derived from a Microsoft Word document entitled "FINAL MIL 2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions)."

```
Verified Signature(s)

Document No: 10129634
Document description:Main Document
Original filename:C:\fakepath\2025.02.25 Coomer_Opp MIL.pdf
Electronic document Stamp:
[STAMP dcecfStamp_ID=1071006659 [Date=2/25/2025] [FileNumber=10129634-
0] [5cdcd47e56c99e97e11a3039f6e8daabf994c397dc2bde985031b6a2c2363b7f5a
e8727f60025614f3b2989099aa20182a1f583517682801ac6260bf862a6a90]]
```

[Screenshot of PDF document properties dialog showing:
File: [283] Response to Motion in Limine
Title: Microsoft Word - FINAL MIL 2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions)
Author: Jen DeMaster
Created: 2/25/2025 4:27:02 PM]

The filed version refers to Plaintiff as "Mr. Coomer." *See, e.g.*, [Doc. 283 at 1]. The filed version also reflects the "District of Colorado" in the case caption. [*Id.*].

### 2. Preparation of the Filed Version: 2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions).docx

The day before the filing, February 24, Ms. DeMaster sent Mr. Kachouroff an email with the time stamp of 5:08 p.m., attaching "2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions).docx," with a file size of 53K, and a Westlaw Report. [Doc. 311-3 at 2; Doc. 389-1].[5] Given the naming convention, this version is most likely the base document of the filed Opposition. The message from Ms. DeMaster to Mr. Kachouroff reads:

---

[5] Pursuant to the Court's Order to Show Cause, defense counsel submitted electronic versions of all drafts of the Response for the Court's inspection. [Doc. 309].



[Doc. 311-3 at 2 (emphasis added)].  As discussed above, Mr. Kachouroff refers to the attached document, i.e, "2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions).docx," attached to the 5:08 p.m. email, as the "final version" that he compared against the Westlaw Report, printed out, and reviewed.  [Doc. 311-6 at ¶ 8].  Ms. DeMaster's declaration similarly states that this "final" version, as sent to Mr. Kachouroff, reflects the edits and citation checks that she and Mr. Kachouroff made over the phone.  *See* [Doc. 311-5 at ¶¶ 6–8].  But the "final" version of the Opposition is substantially the same as the one filed.  *Compare* [Doc. 389-1], *with* [Doc. 283].  It again refers to Plaintiff as Mr. Coomer.  *See e.g.* [Doc. 389-1 at 1].  It reflects the District of Colorado in the caption. [*Id*].

This "final" version of the Opposition that Mr. Kachouroff reviewed does not, however, reflect any edits that now appear in the "correct" version, *compare* [*id.*], *with* [Doc. 311-2], and it is replete with the same errors as the filed version.  For instance, "2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions).docx," still misattributes the

11

case of *Ginter v. Nw. Mut. Life Ins. Co.*, 576 F. Supp. 627, 630 (D. Ky. 1984) ("*Ginter*") to the District of Colorado. *Compare* [Doc. 389-1 at 4] *with* [Doc. 283 at 4]. It includes the two errors that the Court did not bring to Defendants' attention during the Final Pretrial/Trial Preparation Conference: the *Pure* Misquote and the *Reaves* Erroneous Citation. [Doc. 283 at 3, 12]. It also contains three citations to non-existent cases that were contained in the filed version: *Perkins v. Fed. Fruit & Produce Co.*, 945 F.3d 1242, 1251 (10th Cir. 2019) ("*Perkins*"), *Estate of Martinelli v. City & Cnty. of Denver*, No. 19-cv-02737, 2021 WL 4133804, at *6–7 (D. Colo. Sept. 10, 2021) ("*Martinelli*"), and *United States v. Hoffman*, 806 F.3d 1288, 1295 (10th Cir. 2015) ("*Hoffmann*"). *Compare* [Doc. 389-1 at 6, 10, 12] *with* [Doc. 283 at 6, 10, 12]. Put simply, neither defense counsel's communications nor the "final" version of the Opposition that they reviewed corroborate the existence of the "correct" version.

The overlapping errors between the "final" version of the Opposition, [Doc. ___-2], and the filed version, [Doc. 283], also undercut several of defense counsel's representations. For one, the citations to *Perkins, Martinelli*, and *Hoffman* contradict Mr. Kachouroff's statement that "I do not rely on AI to do legal research or find cases." [Doc. 311-6 at ¶ 6]. Mr. Kachouroff further states "I did not understand what was going on *because my co-counsel and I had not relied on AI legal research and had prepared a thoroughly cite-checked final document to be filed as our Opposition.*" [*Id.* at 13]. But this statement does not square with Ms. DeMaster's declaration that:

> During multiple, lengthy phone calls, we discussed the problems of the case citations which had been added to the drafts. [Mr. Kachouroff] told me that he had been focused on the logic of the arguments and believed some of these citations were likely from AI drafts and he wanted them deleted. Both of us were concerned about their reliability. I told him I would check the citations and use Westlaw to validate authority. See Exhibit C –

12

> 2025.02.24 Emails from DeMaster to Kachouroff.  We also discussed the viability of certain arguments.

[Doc. 311-5 at ¶ 6 (emphasis added)].  Although eliminated from the proffered "correct" Opposition, *see* [Doc. 311-1], neither Mr. Kachouroff nor Ms. DeMaster provide the Court any explanation as to how those citations appeared in any draft of the Opposition absent the use of generative artificial intelligence or gross carelessness by counsel.

Given this e-mail and its attachments, it is not clear to the Court how Mr. Kachouroff could be "shocked" by the Court's inquiry or "unfamiliar" with the 17-page filed Opposition, [Doc. 311-6 at ¶ 13], when this "final" version is substantially the same as the filed Opposition, was indisputably sent to Mr. Kachouroff (and presumably reviewed in detail), and was the last documented version of the Opposition exchanged between counsel.[6] Even if Mr. Kachouroff relied on Ms. DeMaster to finish editing and filing the document, [*id.* at ¶ 27], blind reliance on another attorney can be an improper delegation of an attorney's nondelegable responsibility under Rule 11.  *See Wadsworth*, 348 F.R.D. at 495–96.  The record contains no contemporaneous written communication reflecting any edits made after this February 24, 2025 communication at 5:08 p.m. prior to filing the Opposition on February 25, 2025.

---

[6] A prior version of the Opposition exchanged between Mr. Kachouroff and Ms. DeMaster entitled "2025.02.24 Coomer Defs Opp to MIL(jd).docx," with a file size of 49K is attached to their February 24, 2025 correspondence with the time stamp of 2:42 p.m.  [Doc. 311-3 at 1].  Although Ms. DeMaster's message refers to finding and replacing "a few cases that were not accurate or properly cited," [Doc. 311-3 at 1], this document includes most of the same exemplar errors discussed above, *see* [Doc. 389-2 at 4 (incorrect citation of *Ginter*), 5 (citation to non-existent *Perkins* case) 10, 12 (citation to non-existent *Martinelli* case).  Like the filed version, this version of the Opposition also refers to Plaintiff as Mr. Coomer and correctly identifies the District of Colorado in its caption.  *See, e.g.*, [Doc. 389-2 at 1].  But it does not reflect any of the extensive edits that were ultimately contained in the "correct" version, i.e., 2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy.  *Compare* [*id.*], *with* [Doc. 311-2].

### 3.      "Correct" Version, i.e. 2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy

Counsel represent that they had developed the "correct" version of their Response, "2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy," [Doc. 311-1], by February 25, 2025 and intended to file it that day, [Doc. 311-5 at ¶ 9].  Curiously, the Appendix included with the blackline draft of the "correct" brief refers to "**Notes of changes from final rough draft to final version that was worked on <u>April 24 and completed on April 25</u> and finalized at approximately 4:10 PM CST.**"   [Doc. 311-2 (bold in original, underline added)].  April 24–25, 2025 refers to the time period between the Court's issuance of the Order to Show Cause on April 23, 2025 and the filing of Defendants' <u>Response</u>—not the time period during editing and before filing Defendants' <u>Opposition</u>.[7]  *See* [Doc. 309; Doc. 311].

But there is no evidence in the record of any version with any similar naming convention to "2025.02.24 Coomer Defs Opp to MIL2 (jd)" which would presumably have been the base document before a "copy" was made.  And importantly, there is no evidence that any document using a naming convention consistent the "correct" version or containing the extensive edits contained in the "correct" version was exchanged between Mr. Kachouroff and Ms. DeMaster on or around February 24–25, 2025.  The version with the closest naming convention was the one attached to counsel's 2:42 p.m. e-mail, i.e., "2025.02.24 Coomer Defs Opp to MIL(jd).docx," *see supra* note 6, but it is clear from the correspondence between counsel that this is an earlier version than "2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions).docx," *see* [Doc. 311-3 at 1–

---

[7] This Court assumes defense counsel would contend that this statement is simply a typographical error.

14

2].

The "correct" version of the Opposition still has substantive errors, beginning with the case caption that read "The United States District Court for the District of Cite District." [Doc. 311-1 at 1 (emphasis added)]. It is difficult to square this version being the later, "correct" one with such an error that is not present in either the filed version that was presumably a draft or the other, earlier draft version in the record. [Doc. 283 at 1; Doc. 389-2 at 1]; *see also supra* note 6. The "correct" Opposition also refers to Dr. Coomer as such, instead of Mr. Coomer—despite Mr. Kachouroff's argument that referring to Plaintiff as Dr. Coomer was improper bolstering.[8] [Doc. 315 at 72:2–76:14]. And the two errors that the Court omitted from its discussion with Mr. Kachouroff during the Final Pretrial/Trial Preparation Conference, *see supra* at 3, remain in the "correct" Opposition, *see* [Doc. 311-1 at 2, 9–10].

Some errors that were specifically discussed during that conference also remain in the "correct" version. For instance, the "correct" version still relies on *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986) for the proposition that:

> In defamation actions particularly, courts routinely admit evidence probative of truthfulness given that a plaintiff's reputation and credibility are directly at issue,

[Doc. 311-at 3]. But *Perrin* is a civil rights, not defamation, case, and it says nothing about "whether courts routinely admit evidence probative of truthfulness in defamation actions." *See generally* 784 F.2d 1040. Rather, the only reference to defamation is as an example of where the existence or nonexistence of a character trait may be directly at issue because the trait itself determines the rights and liabilities of the parties:

---
[8] The Court ultimately rejected this argument for lack of authority.

> In a defamation action, for example, the plaintiff's reputation for honesty is directly at issue when the defendant has called the plaintiff dishonest.

*Perrin*, 784 F.2d at 1045 (citations omitted). Further, the "correct" Opposition again misattributes *United States v. Hassan*, 742 F.3d 104, 133 (10th Cir. 2014) to the Tenth Circuit, when it is a case from the United States Court of Appeals for the Fourth Circuit. [Doc. 311-1 at 7]; *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014). This error is material because, unlike Tenth Circuit cases, Fourth Circuit cases are not binding on this Court. *See Hill v. Kansas Gas Serv. Co.*, 323 F.3d 858, 869 (10th Cir. 2003) (observing that courts within the Tenth Circuit are not bound by the case law from other circuits). And *United States v. Reaves*, 649 F.3d 862, 867–68 (8th Cir. 2011) is still described in its parenthetical as "analyzing evidence under multiple rules where it served overlapping purposes," [Doc. 311-1 at 10], when in actuality, the opinion only discusses Rule 608(b) of the Federal Rules of Evidence on a different page. *Reaves*, 649 F.3d at 866.

Moreover, to the extent defense counsel suggest that the Westlaw Report satisfied their Rule 11(b) duties with respect to confirming that their legal contentions were warranted by existing law, that Westlaw Report was generated against "2025.02.24 Coomer Defs Opp to MIL (jd) (final revisions).docx," not the "correct" version, i.e., "2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy." [Doc. 311-3 at 2]. Indeed, despite Mr. Kachouroff's insistence that "[p]rior to the pretrial conference, I reviewed our correct Opposition multiple times, including on my way to the funeral of a family member who had tragically and unexpectedly died on March 27, 2025. I believe the arguments we made were sound arguments and complied with Fed. R. Civ. P. 11(b)," [Doc. 311-6 at ¶ 29 (emphasis added)], there is no evidence in the record of when or how Mr. Kachouroff

16

ever obtained the "correct" version, i.e., "2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy," [Doc. 311-1], of the Opposition to review, prior to its submission on February 25, 2025 or prior to March 27, 2025.

### 4. General Practice

Finally, this Court turns to Mr. Kachouroff's statement that "Doc. 283 represents a clear deviation from what my practice has been, and given the number of errors, it is just as reasonable to presume that the document could have been a mistake, especially when I commented during the hearing that this must have been a draft." [Doc. 311-6 at ¶ 22]. But this assertion is belied by similar conduct before a different federal court. The Court takes judicial notice that, just seven days after this Court issued the Order to Show Cause, the same defense counsel team quietly filed two Notices of Errata[9] regarding their briefing in *Pelishek v. City of Sheboygan*, No. 2:23-cv-01048-WED (E.D. Wis. Apr. 30, 2025), ECF Nos. 160, 162. [Doc. 383-3; Doc. 383-4]. Those errata demonstrate the same type of errors in the filed Opposition, including citations to cases that do not exist. *See Pelishek*, ECF No. 125 at 9 (quoting *Swetlik v. Crawford*, 738 F.3d 818 (7th Cir. 2013) as discussing "falsified government records affecting taxpayer funds" when no such quote exists in the case); ECF No. 160 at 2 (correcting the *Swetlik* citation); ECF No. 143 at 23 (citing *Bohannan v. Doe*, 527 F. App'x 638, 744–45 (7th Cir. 2013),[10] 28–29 (citing *Gomez v.*

---

[9] The first filing, Notice of Errata for ECF 125, refers to Plaintiff's Brief in Support of Partial Summary Judgment filed in *Pelishek*. *Compare Pelishek*, ECF No. 125, *with id.* ECF No. 160]. The second filing, Notice of Errata for ECF 143, refers to Plaintiff's Brief in Opposition to Summary Judgment. *Compare id.* ECF No. 143, *with id.* ECF No. 162.

[10] The citation 527 F. App'x 638 appears to be associated with a case captioned *Esparza v. Cnty. of Los Angeles*, 527 F. App'x 638 (9th Cir. 2013).

17

*City of Chicago*, 2022 WL 3211422 (N.D. Ill. Aug. 9, 2022);[11] ECF No. 162 at 2–3 (removing citations to *Bohannon* and *Gomez*).

**B.     Sanctions**

Based on the record before it, and for the reasons stated herein, this Court finds that Mr. Kachouroff and Ms. DeMaster have violated Rule 11 because they were not reasonable in certifying that the claims, defenses, and other legal contentions contained in Defendants' Opposition to Motion in Limine [Doc. 283] were warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2). Nor is this Court persuaded by counsel's contention that that the "correct" version, i.e., 2025.02.24 Coomer Defs Opp to MIL2 (jd) – copy, was prepared and ready to file on February 25, 2025, and the filing of the Opposition at [Doc. 283] was simply an inadvertent error, given the contradictory statements and the lack of corroborating evidence.

Notwithstanding any suggestion to the contrary, this Court derives no joy from sanctioning attorneys who appear before it. Indeed, federal courts rely upon the assistance of attorneys as officers of the court for the efficient and fair administration of justice.[12] *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) ("[L]awyers are essential to the primary governmental function of administering justice, and have

---

[11] The citation 2022 WL 3211422 refers to a case captioned *McKenna v. Verint Ams. Inc.*, No. 22-cv-02370-FLW, 2022 WL 3211422 (D.N.J. Aug. 9, 2022).

[12] As officers of the court, attorneys owe a duty of candor to the court and to opposing counsel. *See United States v. Busch*, No. 22-2161, 2024 WL 3580452, at *14 n.25 (10th Cir. July 30, 2024) ("[L]itigants and counsel who appear before a federal court[ ] are subject to duties of candor, decorum, and respect for the tribunal and co-parties alike." (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 722 (2013) (Kennedy, J., dissenting))), *cert. denied,* 145 S. Ct. 400 (2024).

historically been officers of the courts." (quotation omitted)). "Nevertheless, the court is entitled to expect a reasonable level of competence and care on the part of the attorneys who appear before it, and to expect that claims submitted for adjudication by those attorneys will have a rational basis." *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990). That standard was not met here with the filing of Defendants' Opposition to Plaintiff's Motion in Limine. [Doc. 283].

Thus, the Court now turns to the appropriate sanction. "Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management," with deterrence as the primary goal. *Id*. Though not bound by other district courts, this Court finds that a sanction of $3,000 against Christopher I. Kachouroff and the law firm of McSweeney Cynkar & Kachouroff PLLC, jointly and severally, and $3,000 against Ms. DeMaster, individually, is the least severe sanction adequate to deter and punish defense counsel in this instance. *Id*. at 684; *see also Wadsworth*, 348 F.R.D. at 497–98 (imposing $3,000 fine on attorney who drafted filing with hallucinated citations); *Mata*, 678 F. Supp. 3d at 466 (imposing $5,000 fine jointly on two attorneys for hallucinated citations); *Mid Cent. Eng'rs Operating Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211, at *2 (sanctioning attorney $6,000 for submitting three briefs with AI-generated citations). Because Mr. Kachouroff "confirm[ed] that I did not advise Defendants that I use a myriad of AI tools in my practice such as Microsoft Word's Co-Pilot, Westlaw's AI, Google's Gemini, X's Grok, Claude, ChatGPT, Perplexity, and others," [Doc. 311-6 at ¶ 30], this Court does not extend the sanctions to Defendants

19

Michael J. Lindell, Frankspeech LLC, or My Pillow, Inc.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) The Order to Show Cause [Doc. 309] is **MADE ABSOLUTE**;

(2) The Court hereby **SANCTIONS** Christopher I. Kachouroff and the law firm of McSweeney Cynkar & Kachouroff PLLC, jointly and severally, in the amount of $3,000 pursuant to Rule 11(c)(1);

(3) The Court hereby **SANCTIONS** Jennifer T. DeMaster in the amount of $3,000 pursuant to Rule 11(c)(1); and

(4) Such sanctions are **DUE and PAYABLE** to the Registry of the United States District Court for the District of Colorado no later than August 4, 2025.

DATED: July 7, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge