# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CITE DISTRICT

ERIC COOMER,

        Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC, AND MY PILLOW, INC.,

        Defendants.

Case No. 1:22-cv-01129-NYW-SBP

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION IN LIMINE

### PRELIMINARY STATEMENT

Plaintiff Eric Coomer has alleged that he suffered millions of dollars in reputational damage based on alleged defamatory statements and "intentional infliction of emotional distress" caused by, what he claims, were Mr. Lindel's alleged "extreme and outrageous" false statements. Mr. Coomer also alleges that he suffered mental anguish, reputational injuries, and emotional damages. Despite these claims and purported injuries, Mr. Coomer now asks the Court to prohibit Defendants from introducing any character evidence that is essential to rebutting Mr. Coomer's claims, injuries, and damages. The Federal Rules do not provide Mr. Coomer the shield of protection he seeks—specifically because his entire case and damages he alleges rely on this relevant character evidence. For the following reasons, the Court should deny Mr. Coomer's omnibus motion in limine in its entirety.

### LEGAL STANDARD

The admission or exclusion of evidence lies within the sound discretion of the trial court. *Robinson*

*v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); see also *United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) (emphasizing trial court's discretion in evidentiary matters). Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" *Rivero v. Bd. of Regents of Univ. of New Mexico*, No. CIV 16-0318 JB\SCY, 2019 WL 1085179, at *78 (D.N.M. Mar. 7, 2019), aff'd, 950 F.3d 754 (10th Cir. 2020) (internal citations omitted).

"Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) (emphasis in original) (quotations omitted). The Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010) (internal quotations and citations omitted).

The trial court's discretion to balance possible unfair prejudice against probative value is broad. *United States v. Begay*, 497 F. Supp. 3d 1025, 1052 (D.N.M. 2020) (citations omitted). While Federal Rule of Evidence 404(a) generally prohibits character evidence to prove conduct in conformity therewith, Rule 405(b) expressly permits evidence of specific instances of conduct when character is an essential element of a claim or defense. The Tenth Circuit consistently holds that character evidence is particularly relevant in defamation cases where reputation is directly at issue. See *World Wide Ass'n of Specialty Programs v. Pure, Inc.,* 450 F.3d 1132, 1139 (2006) (recognizing that "reputation and character are inextricably intertwined" in defamation cases). Additionally, under Rule 608(b), specific instances of conduct may be inquired into on cross-examination if probative of truthfulness. *New Mexico ex rel.*

2

*Balderas v. Real Estate Law Center, P.C.*, 409 F.Supp.3d 1122, 1128 (2019) (allowing cross-examination about specific instances of dishonesty).

The Court must balance the probative value of evidence against the danger of unfair prejudice under Rule 403. However, evidence is not unfairly prejudicial merely because it damages a party's case – the evidence must have "an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 advisory committee notes. See also *Mata v. City of Farmington*, 798 F.Supp.2d 1215, 1227 (D.N.M. 2011) ("The prejudice must be unfair in the sense that it would affect the jury's ability to weigh the evidence rationally.") Rule 403 permits inclusion of evidence when the probative value is so crucial to a necessary issue that Mr. Coomer cannot show any prejudice "substantially outweighs" the probative value. *See United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008).

## ARGUMENT

### I. Evidence of Mr. Coomer's Credibility and Honesty is Relevant and Admissible.

Mr. Coomer seeks to exclude body camera footage showing his interactions with law enforcement during a hit-and-run investigation in September 2021, in which Mr. Coomer is shown lying to police officers about his involvement. This evidence is directly relevant to Mr. Coomer's credibility and character for truthfulness, which are central issues in this defamation case.

The Tenth Circuit has long recognized that character evidence, including specific instances of conduct, can be admitted when character is an essential element of the case. See *World Wide Ass'n,*, at 1139. In defamation actions particularly, courts routinely admit evidence probative of truthfulness given that a plaintiff's reputation and credibility are directly at issue. See *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986) (noting character evidence is admissible when it constitutes "an essential element of a charge, claim, or defense").

The District of Colorado has specifically addressed the admissibility of evidence showing untruthful conduct in similar contexts. In *Ginter v. Northwestern Mut. Life Ins. Co.*, 576 F. Supp. 627, 630 (D. Colo. 1984), the court held that "where the focal issue in a case is the plaintiff's character... evidence of specific instances of conduct becomes admissible." Similarly, in *Boeser v. Sharp* (D. Colo. 2007), the court permitted evidence of specific instances of dishonesty when relevant to evaluating credibility. The body camera footage shows Mr. Coomer initially denying involvement in the accident before later admitting to it - conduct that directly bears on his truthfulness. Courts in the Tenth Circuit have admitted evidence of uncharged acts where the evidence is relevant to showing credibility and honesty. *See e.g. United States v. Begay*, 497 F. Supp. 3d 1025, 1061 (D.N.M. 2020) (denying exclusion of prior uncharged acts under Rule 403 because the party seeking inclusion intended to offer the evidence for a proper purpose relevant to essential issues).

While Federal Rule of Evidence 608(b) generally prohibits extrinsic evidence to prove specific instances of conduct, the Court may permit questioning about such instances on cross-examination if probative of truthfulness. *See id.;* Fed. R. Evid. 608(b). The circumstances of the accident and Mr. Coomer's conduct are proper subjects for cross-examination under Rule 608(b). Further, the body cam footage should be admissible on cross examination because it concerns Mr. Coomer's mental state and pre-existing conditions effecting his psychological well-being, both of which the plaintiff here has put at issue. See *Cerca v. Thomas*, 30 F. App'x 931, 933 (10th Cir. 2002) (admitting evidence appropriate where there are multiple levels of relevance for competency, truthfulness, and pre-existing conditions to rebut a party's exclusion request).

### II. Evidence of Mr. Coomer's Statements About President Trump and Law Enforcement is Relevant to Core Issues.

Mr. Coomer seeks to exclude evidence of his social media posts and statements expressing animosity toward President Trump, law enforcement, and related political issues. This evidence is directly relevant to:

- Rebutting Mr. Coomer's claims that Defendants acted with actual malice;
- Providing context for Defendants' statements and demonstrating their reasonableness given publicly available information about Mr. Coomer;
- Challenging Mr. Coomer's allegations of severe emotional distress and reputational harm.

Under Federal Rule 405(b), specific instances of conduct are admissible when character is an essential element of a claim or defense. Here, Mr. Coomer has put his character and reputation directly at issue through his defamation and emotional distress claims alleging that the Defendants had no basis to make any statement regarding Coomer's conduct or hatred involving President Trump or his supporters in the 2020 election—including law enforcement. The Defendants' are permitted to introduce evidence of Coomer's disdain for President Trump and his law enforcement supporters specifically to show the reasonableness of Mr. Lindell's alleged statements on public concern and to rebut Coomer's "actual malice" evidence. *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1041–42 (10th Cir. 2013); citing *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).

Coomer's public statements on these topics are relevant to assessing both the truth of the alleged defamatory statements and the extent of damages claimed. Further, this evidence is directly relevant to the Defendants' state of mind regarding reasonableness and actual malice in any alleged statements at issue since every single statement relates to Mr. Coomer's involvement with President Trump's purported 2020 election loss.

5

### III. Evidence of Prior Drug/Alcohol Use and Mental Health History is Relevant to Rebut Damages Claims.

Mr. Coomer seeks to exclude evidence of his past struggles with addiction and mental health treatment. However, this evidence is directly relevant to rebut his claims of emotional distress damages allegedly caused by Defendants' conduct. Courts consistently recognize the admissibility of pre-existing mental health conditions in cases involving emotional distress claims.

When a plaintiff claims severe emotional distress damages, evidence of pre-existing mental health conditions and treatment is crucial for the jury to fairly evaluate causation and damages. The Tenth Circuit has repeatedly held that defendants must be permitted to present evidence of alternative causes for claimed emotional injuries. See *Perkins v. Fed. Fruit & Produce Co.,* 945 F.3d 1242, 1251 (10th Cir. 2019) (admitting evidence of prior emotional difficulties to challenge damages claims); *Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000) (evidence of prior mental health treatment relevant to emotional distress damages).

District courts within the Tenth Circuit have specifically addressed the admissibility of addiction and mental health evidence when relevant to damages claims. In *Mata v. City of Farmington*, 798 F.Supp.2d 1215, 1227 (D.N.M. 2011), the court allowed evidence of prior substance abuse issues as relevant to emotional distress damages. The District of Colorado in *Sanchez v. Duffy*, 416 F.Supp.3d 1131 (D. Colo. 2018) permitted evidence of prior mental health treatment to challenge causation in emotional distress claims.

In *Boeser v. Sharp*, the court recognized that when a plaintiff places mental state at issue evidence of pre-existing conditions becomes highly relevant to assessing damages. *Boeser v. Sharp*, No. CIVA03CV00031WDMMEH, 2007 WL 1430100, at *7 (D. Colo. May 14, 2007); see also *Solis-Marrufo v. Bd. of Comm'rs for Cnty. of Bernalillo*, No. CIV 11-0107 JB/KBM, 2013 WL 1658203, at *20 (D.N.M. Mar. 28, 2013) (permitting Defendants to contradict a plaintiff's asserted damages by inquiring into

pg 7 of 16

previous drug use as admissible where plaintiff's mental and emotional state at issue under Rules 403 and 405).

The Tenth Circuit notes that Rule 608 permits exclusion *only if* the Defendants' introduction is done for the "sole purpose" of attacking a witness's character for truthfulness. *Cerca v. Thomas*, 30 F. App'x 931, 933 (10th Cir. 2002); Fed. R. Evid. 608 advisory committee's note to 2003 amendment. That is not why Defendants seek introduction of this evidence. Notably, even Defendant Lindell acknowledged in his deposition testimony that he, himself, is a recovered addict and My Pillow regularly hires those with past struggles - demonstrating that this evidence is not being offered to unfairly prejudice Mr. Coomer's truthfulness, but rather to properly contextualize and contradict his damages claims as far as psychological injuries. The Court in *Mata v. City of Farmington*, 798 F. Supp. 2d 1215 (2011) specifically allowed inquiry into a plaintiff's prior incidents because they were relevant to emotional distress damages claims. The same analysis applies here: Mr. Coomer's pre-existing conditions and treatment history are essential to evaluating his claimed emotional injuries.

### IV. The 118-Page Background Document is Relevant to Multiple Defense Issues and is not being offered for its truth.

The 118-page document titled *Eric Coomer: Pawn, Plant or Perp?* that Mr. Coomer seeks to exclude is directly relevant to multiple defenses and should be admitted. While Mr. Coomer characterizes it as inadmissible hearsay, the document serves several non-hearsay purposes critical to the Defendants' defense.

A. <u>The Document Is Not Hearsay When Offered to Show Notice and State of Mind</u>

This document is not hearsay because it is not being offered for the truth of its contents. *See* Fed. R. Evid. 801(c)(2). The document is admissible solely to show the Defendants' state of mind and knowledge of information about Mr. Coomer prior to any alleged statements at issue. *United States v.*

*Cerno*, 529 F.3d at 935 (trial courts must give evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value"). Rather, the document is offered to demonstrate:

- The justification and reasonableness of Defendants' statements given publicly available information about Mr. Coomer;

- The absence of actual malice;

- That Defendants' conduct was not "extreme and outrageous" given the context.

Each of the above justifications shows the probative value of the evidence in the document Mr. Coomer seeks to exclude. Further, even if the document contains information the Court may deem inadmissible, those facets can be redacted while preserving the document's relevant and admissible aspects. Wholesale exclusion is not warranted. See *United States v. Jones*, 530 F.3d 1292, 1302 (10th Cir. 2008) (recognizing effectiveness of limiting instructions in managing potential prejudice). To the extent specific portions contain inadmissible content, those can be redacted while preserving the document's relevant and admissible aspects.

B. <u>Introduction of Character Evidence by Plaintiff's Counsel</u>

It bears noting that Plaintiff's counsel has repeatedly emphasized Plaintiff's academic credentials by prefacing his name with "Dr." throughout court filings and proceedings. This strategic use of Plaintiff's Ph.D. title constitutes an implicit attempt to bolster his credibility and professional reputation - the very character traits at issue in this defamation case. Courts have long recognized that when a party introduces evidence of good character, the opposing party is entitled to rebut with contrary character evidence. See *Michelson v. United States*, 335 U.S. 469, 479 (1948) (discussing the "door opening" principle for character evidence); *United States v. Morales*, 108 F.3d 1213, 1222 (10th Cir. 1997) (applying curative admissibility doctrine where party opens the door to otherwise inadmissible evidence).

Here, having opened the door to evidence of Plaintiff's credentials and professional standing, Plaintiff cannot now seek to exclude evidence that provides a complete picture of his character and

reputation, certainly where his character and reputation was well known and published many times prior to any alleged statements by the Defendants at issue here.

### V. Evidence About Religious Views and Social Media Posts is Relevant to Reputation.

A. <u>Admissibility of Social Media Evidence</u>.

Courts regularly admit social media evidence in defamation cases when relevant to reputation and damages. See *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167-68 (9th Cir. 2011) (holding public social media posts relevant to reputational damages analysis); see also *Lohrenz v. Donnelly*, 350 F.3d 1272, 1282-83 (D.C. Cir. 2003) (admitting evidence of plaintiff's social media posts to assess pre-existing reputation).

The Tenth Circuit has specifically addressed authentication and admissibility of social media evidence in *United States v. Hassan*, holding that social media posts are admissible when adequately authenticated and relevant to material issues. *Hassan,* 742 F.3d 104, 133 (10th Cir. 2014). Here, Mr. Coomer does not dispute the authenticity of his social media posts, which can be verified through Facebook's business records.

Coomer's role in essentially programming equipment for United States elections gives the general public heightened interest in his statements about political or public issues—specifically regarding issues of importance during the 2020 election. *Anaya v. CBS Broad. Inc.,* 626 F. Supp. 2d 1158, 1198 (D.N.M. 2009), citing *Rosenblatt v. Baer,* 383 U.S. at 85 (public has generalized and particularly heightened interest in statements and qualifications of persons responsible for public functions, including the plaintiff's honesty in relation to their government purpose and position). Coomer's position with Dominion's election and voting technology invites and permits public scrutiny of the type that Coomer alleges against the Defendants here—all of which go to Defendants' defenses of actual malice in any statements or injuries at issue here. Notably, this includes social media statements showing mental impressions of Commer about political issues surrounding the time that Coomer was involved in election management for a company (Dominion) that oversees elections in multiple U.S. states.

9

Courts within the District of Colorado have consistently admitted social media evidence in similar contexts. *See Sanchez v. Duffy*, 416 F.Supp.3d 1131, 1142 (D. Colo. 2018) (allowing Facebook posts as relevant to plaintiff's mental state and reputation); *Estate of Martinelli v. City & Cty. of Denver*, No. 19-cv-02737, 2021 WL 4133804, at *6-7 (D. Colo. Sept. 10, 2021) (admitting social media evidence as relevant to damages claims); *Peterson v. Nelnet Diversified Sols., LLC*, 400 F.Supp.3d 1122, 1131 (D. Colo. 2019) (permitting discovery and use of social media posts in emotional distress case).

B. <u>Religious Beliefs Evidence Under Rule 610.</u>

While Rule 610 prohibits evidence of religious beliefs "to attack or support the witness's credibility," it does not bar such evidence when offered for other relevant purposes. See *United States v. Hoffman*, 806 F.3d 1288, 1295 (10th Cir. 2015) (distinguishing between prohibited credibility attacks and permissible non-credibility purposes).

The advisory committee notes to Rule 610 clarify that the rule "does not bar evidence of religious beliefs when otherwise relevant." Fed. R. Evid. 601, Advisory Notes. Here, Mr. Coomer's statements about religion are not being offered to attack credibility but rather to show (1) Mr. Coomer's pre-existing public persona and reputation, (2) context for Defendants' statements, and (3) alternative causes of Mr. Coomer's alleged reputational harm.

Courts have regularly admitted evidence touching on religious beliefs when relevant to factual issues that do *not* involve credibility. *See e.g. Gulino v. Board of Education*, 236 F.Supp.2d 314, 322 (S.D.N.Y. 2002) (admitting evidence of religious statements when relevant to damages); *Bains LLC v. Arco Products Co.*, 405 F.3d 764, 772 (9th Cir. 2005) (allowing evidence of religious beliefs when relevant to substantive issues beyond credibility); *United States v. Kalaydjian*, 784 F.2d 53, 56 (2d Cir. 1986) (permitting evidence regarding religion when offered for purposes other than credibility attack).

C. <u>Non-Hearsay Treatment of Background Documents</u>

10

The 118-page background document should be admitted as it is not being offered for the truth of the matters asserted but rather for multiple non-hearsay purposes recognized by courts:

- To show notice and state of mind. See *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1127-28 (10th Cir. 2009) (admitting documents to show effect on reader's state of mind);

- To demonstrate the context and basis for Defendants' statements. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) (considering information that was available to defendants prior to alleged defamation in assessing actual malice);

- To establish the reasonableness of Defendants' conduct. See *Brown v. Petrolite Corp.*, 965 F.2d 38, 46 (5th Cir. 1992) (admitting background information to assess reasonableness of defamation defendant's actions).

The Tenth Circuit has specifically admitted background documents in defamation cases to show justification or basis for any alleged statements at issue. See e.g. *World Wide Ass'n of Specialty Programs v. Pure, Inc.,* 450 F.3d 1132, 1144 (10th Cir. 2006) (admitting background materials to show basis for statements); *Schwartz v. American College of Emergency Physicians*, 215 F.3d 1140, 1146 (10th Cir. 2000) (permitting evidence of background information available to defendants).

D. Rule 403 Balancing in Defamation Cases

Courts in the Tenth Circuit lend careful consideration to Rule 403 balancing in defamation or intentional infliction cases because, unlike other legal claims, evidence that is central to reputation and reputational or emotional damages is far more probative to these claims regardless of purported prejudice to a plaintiff. See *United States v. Caraway*, 534 F.3d 1290 (10th Cir. 2008). To aid consideration of such evidence in defamation cases, the Tenth Circuit has established three key principles:

1. Evidence is not unfairly prejudicial merely because it is damaging. *Caraway*, at 1301; see also *United States v. Cerno*, 529 F.3d at 935 (holding trial courts must give evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value").

2. When evidence is critical to core issues and its probative value substantial to assess those issues, it should rarely be excluded under Rule 403. See *United States v. Begay*, 497 F. Supp. 3d 1025, 1066 (D.N.M. 2020) (holding that prior uncharged acts were admissible because their probative value was substantial).

3. Limiting instructions can effectively address potential prejudice. See *United States v. Jones*, 530 F.3d 1292, 1302 (10th Cir. 2008) (recognizing effectiveness of limiting instructions in managing prejudice).

Recent cases from the District of Colorado demonstrate proper Rule 403 balancing in similar contexts. See e.g. *Sanchez v. Duffy*, 416 F.Supp.3d at 1145 (admitting potentially prejudicial evidence with limiting instructions because of its clearly probative value); *Peterson v. Nelnet Diversified Sols., LLC*, 400 F.Supp.3d at 1133 (finding probative value of reputation evidence outweighed potential prejudice); *Estate of Martinelli*, 2021 WL 4133804 at *8 (allowing evidence critical to damages claims despite prejudicial potential).

### VI. Alternatively, the Defendants are Entitled to Individual Analysis or Limiting Instructions Considering the Intersection of Evidentiary Principles and Cumulative Analysis.

The various categories of evidence Mr. Coomer seeks to exclude must be analyzed not only individually but also in terms of their interrelated nature and cumulative significance to the defense. Courts recognize that evidence often serves multiple purposes and implicates multiple evidentiary rules. See United States v. Reaves, 649 F.3d 862, 867-68 (8th Cir. 2011) (analyzing evidence under multiple rules where it served overlapping purposes). Indeed, Mr. Coomer's vast request to exclude broad swaths of evidence ignores fundamental principles permitting individualized admissibility including, but not limited to, authentication issues, limiting and jury instructions, timeliness, rule of completeness, and curative measures.

A. <u>Authentication and Chain of Evidence</u>

For social media and electronic evidence, authentication requirements can be satisfied through multiple methods:

- Direct testimony from witnesses with knowledge (Rule 901(b)(1));
- Distinctive characteristics and circumstantial evidence (Rule 901(b)(4));

- System metadata and digital signatures;

- Business records certifications (Rule 902(11)).

See *United States v. Hassan*, 742 F.3d 104, 133 (10th Cir. 2014) (discussing various authentication methods for social media); *Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 541-42 (D. Md. 2007) (providing comprehensive framework for authenticating electronic evidence).

B. <u>Limiting Instructions and Jury Management</u>

When evidence serves multiple purposes - some permissible and some potentially problematic - courts regularly employ limiting instructions rather than excluding the evidence entirely. See United States v. Jones, 530 F.3d 1292, 1302 (10th Cir. 2008). Suggested limiting instructions could address:

- Using religious statements only for reputation/damages analysis, not credibility;

- Considering social media posts only for their public impact, not truth of contents;

- Evaluating background documents for notice and state of mind, not truth.

The District of Colorado has approved similar limiting instructions in comparable cases. See *Peterson v. Nelnet Diversified Sols., LLC*, 400 F.Supp.3d 1122, 1135 (D. Colo. 2019) (discussing effective limiting instructions for multiple-purpose evidence).

C. <u>Temporal Considerations</u>

The timing of evidence must be considered under multiple frameworks:

- Pre-existing reputation evidence (relevant to baseline damages);

- Contemporaneous evidence during alleged defamation (relevant to actual malice);

- Subsequent evidence showing impact (relevant to causation).

see *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1144 (10th Cir. 2006) (considering timing in assessing evidentiary relevance); *Brown v. Petrolite Corp.*, 965 F.2d 38, 46 (5th Cir. 1992) (analyzing evidence's relevance based on temporal relationship to defamation).

D. Completeness Doctrine

The rule of completeness (Rule 106) may require admission of otherwise excludable evidence to provide necessary context. See *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) (discussing completeness doctrine). This particularly applies to full social media conversations and threads, complete background documents rather than excerpts, and entire video recordings of incidents that provide insight into Mr. Coomer's credibility, mental state, honesty, and reputation *prior* to the Defendants' alleged statements at issue here.

E. Curative Admissibility

If Mr. Coomer opens the door to certain topics through his own testimony or evidence, additional evidence may become admissible under the doctrine of curative admissibility. See United States v. Morales, 108 F.3d 1213, 1222 (10th Cir. 1997) (discussing curative admissibility doctrine). The doctrine of curative admissibility allows for the admission of evidence which the Court finds otherwise inadmissible, only to the extent necessary to remove any unfair prejudice to the Defendants here. *See United States v. Rucker*, 188 Fed. Appx. 772, 778 (10th Cir. 2006), citing *United States v. Morales-Quinones*, 812 F.2d 604, 609-10 (10th Cir. 1987). Curative admissibility applies only when other evidence has been improperly admitted and allows the prejudiced party to rebut such admission. To the extent this Court grants any part of Coomer's motion, the Court should note that the Defendants have the right to introduce otherwise inadmissible evidence if Coomer improperly introduces prejudicial or otherwise inadmissible evidence to support his claims.

F. Constitutional Considerations

The constitutional dimensions of defamation law affect evidentiary analysis. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964). Courts must consider:

- First Amendment protections for expression;
- Due process right to present defense evidence;
- Public figure status implications.

Indeed, the Tenth Circuit requires "breathing space" for defamation defendants to present their defense. See *Jefferson County School District v. Moody's Investor's Services*, 175 F.3d 848, 857-58 (10th Cir. 1999).

G. Practical Trial Management

Courts should consider practical trial management issues when ruling on complex evidentiary matters. This includes efficiency of evidentiary presentation, jury comprehension of factual issues, and avoiding the risk of mini trials on collateral issues.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion in Limine in its entirety. In the alternative, Defendants request the opportunity to address specific items individually rather than excluding broad categories of relevant evidence.

Dated: July 3, 2025.

Respectfully Submitted,

MCSWEENEY, CYNKAR & KACHOUROFF, PLLC

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff* (VA Bar No. 44216)
Robert J. Cynkar* (VA Bar No. 23349)
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

15

Douglas G. Wardlow (MN Bar #339544)
Jeremiah D. Pilon (MN Bar #392825)
1550 Audubon Rd.
Chaska, MN 55318
Telephone: (952) 826-8658
doug@mypillow.com
jpilon@mypillow.com

ATTORNEY FOR MY PILLOW, INC. AND MICHAEL LINDELL