THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ERIC COOMER,

           Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

           Defendants.

Case No. 1:22-cv-01129-NYW-SBP

**DEFENDANTS MICHAEL J. LINDELL'S AND FRANKSPEECH LLC'S
RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

**LEGAL STANDARD**

A judgment as a matter of law tests "whether there is a legally sufficient evidentiary basis for a reasonable jury to find for the moving party." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1215 (10th Cir. 2008). Judgment as a matter of law under Rule 50 "is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1129 (10th Cir. 2019) *citing In re: Cox Enters., Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017) (internal quotation marks omitted). "All reasonable inferences are drawn in favor of the nonmoving party and this court does not make credibility determinations or weigh the evidence." *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 983 (10th Cir. 2019) (internal quotation marks omitted).

District courts are limited by Rule 50 to granting judgment as a matter of law only on grounds raised by the parties and, when deciding Rule 50(b) motions, district courts are generally limited to granting judgment as a matter of law only on grounds a party previously raised in a Rule 50(a) motion.

*Mountain Dudes*, 946 F.3d at 1130 (10th Cir. 2019).

## ARGUMENT

### I. As a matter of law, Frankspeech, LLC is entitled to immunity under 47 U.S.C. § 230 of the Communications Decency Act (the "CDA").

The question of whether § 230 immunity applies is generally a matter of law that courts decide, not a jury. *See, e.g., Ben Ezra, Weinstein, and Company, Inc. v. America Online Inc.*, 206 F.3d 980, 984 (10th Cir. 2000). While the court may specifically order certain facets of Section 230 to be decided by a jury, the Court made no such order or finding here. Accordingly, this Court has a duty to determine this issue as a matter of law.

The CDA's first rule affirmatively states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA backs up this rule with immunity: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. § 230(e)(3). "Interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

Conversely, the term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service. 47 U.S.C. § 230(f)(3).

Under Section 230, both interactive computer services *and* information content providers are immune from liability if the information was provided by another party or evidence shows that the provider did not "create[] or develop[] the particular information at issue." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 & 1125 (9th Cir. 2003) (holding that even "information

content providers" are immune under Section 230 if they did not create or develop the information at issue).

A company such as Frankspeech, LLC, is immune under the CDA because (1) it is a provider of an interactive computer service, (2) alleged liability is based on the defendant having acted as a "publisher or speaker," and (3) information is provided by another "information content provider." *Roland v. Letgo, Inc.*, 644 F.Supp.3d 907, 913–14 (D. Colo. 2022).

The undisputed trial testimony was that Frankspeech was designed to be an interactive computer platform like YouTube or X. *See, e.g.,* testimony of Michael Lindell and Brannon Howse. It is undisputed that Frankspeech was an "interactive computer service" as defined by § 230. Next, Plaintiff has claimed that Frankspeech is liable as a "publisher or speaker." Finally, the evidence at trial was that Frankspeech published information that other content providers developed and created. There is no evidence that Frankspeech generated its own content.

The verdict shows that the jury accepted only 3 of 10 alleged defamatory statements in imposing liability against Frankspeech. Lindell made two of those statements on May 9, 2021 and April 6, 2022 (Statements Nos. 2 and 6). David Clements, a speaker at Lindell's Cyber Symposium on August 12, 2021, made the third statement (Statement No. 4). All three statements aired on Frankspeech—that is to say, Frankspeech's platform was used to air this content. Accordingly, the Defense's argument here is cabined around these three statements.

Two of those three statements are contained in interviews between Brannon Howse and Mr. Lindell (Statement Nos. 2 and 6). Mr. Howse testified that his show, Worldview Weekend, interviewed Mr. Lindell for both statements. Mr. Howse testified that his show is its own separate "organization" that *he* established in 1993 and incorporated as "American Family Policy Institute (AFPI) dba Worldview Weekend." His individual show was called "Brannon Howse Live" that was uploaded to Frankspeech

3

(Howse Dep. 11:16-12:13; 163:16-25).[1] Mr. Howse testified that *he* produced the content for his own show, clearly noting that *his* show was separate from Frankspeech and that he (Mr. Howse) had the power to change or remove his content. (*Id.* 143:2-21). There is no evidence that Frankspeech controlled Mr. Howse's show content for the May 9, 2021 statement that only Howse had editorial control over. Mr. Howse, also through his show owned by his own separate company, Worldview Weekend or AFPI, developed, edited, and created the show containing the second statement on April 6, 2022. Howse's Worldview Weekend, a wholly separate entity, is and was the "information content provider" that generated content through Brannon Howse's show and interviews with Mr. Lindell. While it is undisputed that the May 9 and April 6 statements (Nos. 2 & 6) were uploaded to Frankspeech's online services platform, Plaintiff produced no evidence at trial that Frankspeech developed or created the two interviews.

The third statement by David Clements made at the Cyber Symposium on August 12, 2021 (Statement No. 4), accused Plaintiff of "murdering the vote" with Plaintiff's adjudication software. This statement cannot be used to impose liability on Frankspeech. The undisputed trial testimony was that the Cyber Symposium was developed and created by a different entity known as Lindell Management, LLC. In addition, the Cyber Symposium was broadcast live on multiple online service providers such as RSBN and CNN, but Plaintiff introduced no evidence that Frankspeech developed, created, or had any editorial control over the Cyber Symposium, let alone Mr. Clements' statements at this event. (*See e.g.* Trial Ex. 193 showing nothing of Frankspeech). There was also no evidence at trial that Ex. 193 aired on Frankspeech, as opposed to other platforms, or can be fairly attributed to Frankspeech as content developer and creator. Once again, no facts were adduced at trial to show that Frankspeech developed, created, or had editorial control over the 2021 Cyber Symposium. Howse's testimony that Frankspeech

---

[1] At trial, the Court permitted deposition testimony in lieu of live witnesses. The Deposition transcript portions cited herein for Mr. Howse were part of the trial record during Mr. Howse's testimony by deposition video that included time stamps.

4

*tried* to stream some of the Cyber Symposium but had technical difficulties or wanted to use that event to garner attention to its new free speech platform does not provide any support to the notion that Frankspeech developed or had creative or content control over the Cyber Symposium, its speakers, or what was stated. (*See* Howse Dep.244:19-245:13).[2]

Indeed, there was no evidence at trial that Frankspeech paid *any show, person, or event,* including Brannon Howse, David Clements, or the Cyber Symposium event specifically *to create content that was published* with regard to Statement Nos. 2, 4, and 6. Kurt Olsen testified that Lindell Management LLC was the entity that developed and "put on" the Cyber Symposium. That Frankspeech promoted the event as a means to demonstrate its online platform's capabilities does not impact in the slightest way, its § 230 immunity.

Plaintiff failed to sue the proper entities that do not have CDA immunity, including Brannon Howse, Brannon Howse Live, Worldview Weekend, and Lindell Management, LLC (which actually created, developed, and put on the Cyber Symposium). *See* testimony of Kurt Olsen. Plaintiff was provided communications (and evidence was produced at trial) that Lindell Management had hired the team to put on the Cyber Symposium. (*See* Howse Dep. 318:21-319:10).

## II. As a matter of law, the jury's award of economic loss was improper and unlawful because Plaintiff produced no evidence of any economic harm.

Plaintiff testified on Days 1 and 2 of trial that his reputation was "destroyed" by defamation by 25 other individuals *by* January 2021. None of those other individuals are Defendants in this case as Frankspeech did not exist and Mr. Lindell had not heard of, nor had he mentioned, Plaintiff's name personally until May 2021—five months after Plaintiff stated his reputation was already destroyed.

---

[2] The evidence from Mr. Howse's testimony is the only evidence showing Frankspeech's "role" regarding the Cyber Symposium for purposes of Clements statement (No. 6) on August 12, 2021, where Howse testified, "I mean, that's that we were to there to do [Is this quotation accurate? It is not grammatical.] was to set up our cameras, run our switchers and stream it." (Howse Dep. 245:9-11).

Plaintiff produced no evidence of any reputational harm he might have suffered by Lindell's statements or those published by Frankspeech. Plaintiff failed to produce any evidence that this prior defamation, the reach of which was far greater than Lindell's statements, had ceased to cause him real harm and that Lindell's harm was a substantial factor in some new harm. This was because Plaintiff's expert, Doug Bania, omitted the previous defamation from his analysis while defense expert Peter Kent included it.

As a matter of law, "[t]he fact plaintiff already had a bad reputation tends to show that his or her reputation has not been substantially affected by additional derogatory communication." *Sack on Defamation*, §§ 10.5.3 & 10.5.5.2 (3d ed. 2007). Plaintiff produced no evidence of any damage Defendants Lindell and Frankspeech may have inflicted over and above his destroyed reputation. Plaintiff's only evidence was his purported expert, Doug Bania, who posited a "pay per click" reputational harm repair service that would allegedly cost millions *without regard to any particular defamatory statement*.

Importantly, Doug Bania testified that he had *not* determined what harm Plaintiff had suffered and that he had no opinion on any purported harm that was suffered. How Bania could possibly know whether his comical "reputational repair program" would actually address *any unknown harm* amounts to nothing more than pure speculation. Indeed, divorced from any notion of what Plaintiff's actual harm *might be*, the millions he claimed were required to implement the repair kit program are simply irrelevant because it literally omitted the harm it was allegedly supposed to remedy.

Apart from the fact that Plaintiff's non-scientific "expert" offered rank speculation, Plaintiff failed to produce any evidence of economic loss resulting from Defendants' Lindell or Frankspeech LLC, especially after Plaintiff admitted his reputation was destroyed months **before** Lindell uttered Plaintiff's name (and before Frankspeech existed).

### III. As a matter of law, Lindell cannot be held liable for defamation for Statements 2 & 6 because the jury found that Lindell was not reckless and thus had no actual malice.

"The First Amendment is not only about protecting the rights of individual speakers, but also about 'constraining the collective authority of temporary political majorities to exercise their power by determining for everyone what is true and false, as well as what is right and wrong.'" *281 Care Comm. v. Arneson*, 638 F.3d 621, 635-36 (8th Cir. 2011) (quoting Stephen G. Gey, *The First Amendment and the Dissemination of Socially Worthless Untruths,* 36 Fla. St. U. L. Rev. 1, 3 (2008)). It is undisputed that the three statements the jury found to be defamatory pertained to a public figure (i.e., Eric Coomer) and to matters of public concern (i.e., the November 2020 election). The jury's final verdict form addressed two statements (Statement Nos. 2 and 6) involving Lindell and it found that Lindell was not reckless. *See infra* discussion of Verdict paragraph 4(c). These statements (Nos. 2 and 6) were also held against Defendant Frankspeech. *See infra* pt. IV.

Under the First Amendment, Plaintiff's burden at trial was to prove that Defendant Lindell and Frankspeech were aware they were circulating false information or had serious doubts as to the truth of information they circulated. *NY Times v. Sullivan,* 376 U.S. 254 (1968); *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 779 n.4 (1986). This standard is referred to as "actual malice," which the Plaintiff must prove by the heaviest of standards, clear and convincing evidence. *Anaya v. CBS Broad. Inc.,* 626 F. Supp. 2d 1158, 1194 (D.N.M. 2009)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

To establish actual malice, Plaintiff was required to prove that Lindell and/or Frankspeech published statements 2, 4, and 6 "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279-80; accord *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974); *see also Hardin v. Santa Fe Reporter, Inc.,* 745 F.2d 1323, 1326 (10th Cir.1984) (noting that a defamation plaintiff's actual-malice burden is to show "that the defendant realized that his

7

statement was false or that he subjectively entertained serious doubt as to the truth of his statement") (internal citations and quotations omitted). If Lindell was not reckless, then Frankspeech could not be.

Plaintiff was required to show clear and convincing *evidence* to permit the conclusion that the defendant *in fact entertained serious doubts* as to the truth of his publication. *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968) (emphasis added); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153, 87 S. Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967) (a plaintiff cannot recover unless he presented evidence of either deliberate false publications or the Defendants' awareness of probable falsity). The jury here was obviously not persuaded.

At trial, there was no evidence that Mr. Lindell knew that statements 2 and 6 were false or that he entertained any doubts as to their truth. In fact, the evidence at trial showed that Mr. Lindell truly and honestly investigated and believed what he stated in Statements 2 and 6. *The jury found that Lindell's conduct was not reckless.*

The evidence showed that Lindell relied on numerous sources, persons, and data to believe that voting machine companies, including Dominion, were participants in a fraudulent election; and domestic officials and voting machine employees, like the Plaintiff, were trying to silence any citizen raising concerns about this through threats and lawsuits. Many statements by Lindell that Plaintiff raised addressed his concerns about targeting, lawfare, and suppression of free speech rights. Lindell called these people "blockers".[3] Even if Lindell had only relied on one source, this is not a basis to establish Lindell's actual malice. *See Fink v. Combined Commc'ns Corp.,* 679 P.2d 1108, 1111 (Colo.App.1984) (stating a publisher "without a high degree of awareness of their probable falsity, may rely on statements made by a single source even though they reflect only one side of the story") (quotations omitted); see also *Anaya v. CBS Broad. Inc.,* 626 F. Supp. 2d 1158, 1195 (D.N.M. 2009) (noting that mere evidence

---

[3] The Court excluded a portion of Lindell's February 2021 *Absolute Proof* documentary in which he defined "traitors" as blockers.

that a defendant publisher was unaware of probable falsity or was negligent in its investigation even with some information being false does not rise to the level of reckless disregard for purposes of establishing actual malice).

"The test for determining whether statements are published with reckless disregard is whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Burns v. McGraw-Hill Broadcasting Co., Inc., supra; Willis v. Perry,* 677 P.2d 961 (Colo.App.1983).

In the verdict forms, No. 4(c), the jury found that Mr. Lindell did not make statements 2 and 6 with any willful and wanton conduct. Jury Instruction No. 52 defined Willful and Wanton conduct as:

> "Willful and wanton conduct" means an act or omission purposefully committed by a person who must have realized that the conduct was dangerous, *and which conduct was done heedlessly and recklessly*, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff.

(Emphasis added.) The jury found that Mr. Lindell did not act in any such manner when it found that Lindell did not engage in this reckless conduct.  Having found that Lindell was not reckless, Mr. Lindell is entitled to First Amendment protection as a matter of law. Accordingly, Plaintiff failed to meet this burden for all statements at issue (2, 4, 6). Defendant Lindell is entitled to judgment as a matter of law under the First Amendment.

### IV. As a matter of law, Frankspeech cannot be held liable for Statements 2, 4, and 6 because there was no evidence of publication or actual malice.

Defendant Frankspeech is entitled to judgment as a matter of law for Statements 2, 4, and 6. First, as to Statements 2 and 6 by Lindell, Frankspeech LLC cannot be liable for Lindell's statements that are protected under the First Amendment, set forth in the section above. *See supra* pt. III.

Next, there is no evidence that Frankspeech entertained serious doubts about David Clements' live statement (Statement No. 4) where they had no control over, nor knowledge of, Clement's

9

information. The First Amendment required Plaintiff to prove that Frankspeech knew Clements' (No. 4) statement was false and that Frankspeech LLC was aware that it was circulating false information or had serious doubts. *NY Times v. Sullivan,* 376 U.S. 254 (1968). There is no evidence that Frankspeech even published or live streamed Clements' statement, let alone that that Frankspeech knew such statement was false. Plaintiff proffered no evidence that Frankspeech organized the Symposium where Statement 4 was made, nor that it hired Mr. Clements, knew what he would say, or even asked him to speak. The evidence Plaintiff introduced showed that Frankspeech's presence was merely to livestream an event that Frankspeech *did not create nor control*. The evidence showed that the livestream that Frankspeech, among many other platforms, attempted during the Symposium, was not even entirely successful. Notwithstanding that Plaintiff failed to introduce evidence that Clement's statement was even streamed by Frankspeech, Plaintiff certainly failed to introduce any evidence that Clements or Frankspeech knew the statement was false or had serious doubts about the truth of Clements' statement made during a widely "live streamed" event. This is especially true where Clements' statements were made "off the cuff" and never provided to any defendant beforehand. See *Garrison v. State of Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964) (emphasizing that there must be a showing that a false publication was made with a 'high degree of awareness of probable falsity.') Importantly, there was also no evidence that Frankspeech paid, hired, worked with, or even knew of Clements or what he would say during the Symposium. Without any of this, the Court must, as a matter of law, vacate any judgment holding Frankspeech liable for Statement 4 by David Clements.

Finally, as a matter of law, the Court should also vacate all awards of punitive damages against Defendant Frankspeech because Plaintiff failed to prove that Frankspeech acted with "actual malice." Accordingly, punitive damages are not available to Plaintiff. *Gertz v. Robert Welch, Inc.,* 418 U.S. at 349, 94 S. Ct. 2997 (a plaintiff required to meet the actual malice standard may not recover punitive

damages unless they prove actual malice). The Court must vacate the punitive damages award as a matter of law because the jury already found that Lindell did not act with recklessness and there was no evidence that Frankspeech knew any upload or content stream of a live, largely unplanned event, would contain any information at issue here.

## CONCLUSION

Based on the above, Defendants Michael Lindell and Frankspeech LLC are entitled to judgment as a matter of law.

Pursuant to D.C.COLO.LCivR 7.1 (a), Counsel for Defendants conferred with Plaintiff on July 14, 2025 concerning the filing of this motion. Plaintiff is opposed to this motion.

Dated: July 14, 2025.

Respectfully Submitted,

**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff
(VA Bar No. 44216)
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

Jennifer T. DeMaster
(WI Bar No. 1124201)
361 Falls Rd, Suite 610
Grafton, WI 53024
Telephone: (414) 235-7488
jennifer@demasterlaw.com

**ATTORNEYS FOR DEFENDANTS MICHAEL LINDELL AND FRANKSPEECH LLC**