IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

**PLAINTIFF'S MOTION TO AMEND FINAL JUDGMENT**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Pursuant to Federal Rule of Civil Procedure 59, Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), through counsel, submits this Motion to Amend Final Judgment requesting the Court increase the award of exemplary damages against Defendant Frankspeech LLC (Frankspeech) pursuant to C.R.S. §13-21-102(3), and in support thereof, respectfully shows the following:

**Conferral**

On July 22, 2025, Plaintiff's counsel conferred via email with Defendants' counsel regarding the relief requested herein. Plaintiff's counsel explained the nature of the relief requested and cited the statutory basis. Defendants did not take a position on the relief requested and, instead, requested a copy of the motion. Plaintiff's counsel responded by asking under what circumstances would his client agree to the imposition of additional punitive damages. As of the filing of this Motion, no response was received. Given that Plaintiff only first conferred on the

1

date the motion was due, Plaintiff will update the Court once defense counsel reviews the Motion and provides a substantive response.

## I. INTRODUCTION

Frankspeech's conduct during the pendency of this case warrants an amendment to the final judgment to increase the award of exemplary damages against Frankspeech. The jury found Frankspeech liable for conduct that included a statement it published immediately after being served with this lawsuit. The same conduct continued to occur throughout the entirety of this litigation, including and especially during trial. In fact, as of this writing, Defendants have raised $456,534 in an online fundraiser that was created for purposes of defending against Dr. Coomer's claims.[1] A separate fundraiser for an anticipated appeal of the jury's verdict has raised an additional $34,887.[2] Defendants' profiteering off this litigation and the conduct described herein effectively negates much of the deterrent effect of Colorado's exemplary damages statute. Accordingly, Dr. Coomer requests the Court exercise its discretion and amend the punitive damage award already determined by the jury.

## II. BACKGROUND

1. Dr. Coomer filed this lawsuit for defamation, intentional infliction of emotional distress, and civil conspiracy against Defendants Michael J. Lindell (Lindell), Frankspeech, and My Pillow, Inc. (My Pillow) on April 4, 2022. [Doc. 4]. Defendants were served the following day. [Doc. 5].

---

[1] **Exhibit 1**.

[2] **Exhibit 2**.

2

2. On May 20, 2025, the Court issued a Minute Order on Pretrial Issues. [Doc. 344]. The Court found that the defamatory statements at issue were defamatory per se because the statements accuse Dr. Coomer of engaging in election fraud, treason, corruption, or other criminal activity, as well as charging Dr. Coomer with engaging in conduct incompatible with his business, trade, profession, or office. [Doc. 344, at 3].

3. The Court also issued orders that "no photographs, audio, or video recordings may be used in any public area or any other location in which court business and proceedings are conducted, including, but not limited to, the courtroom or the hallway outside of the courtroom. *Id*. (*citing* D.C. COLO. LCivR 83.1). The Court further specified that "**this Rule extends to any live blogging, tweeting, transcribing, transmitting, or any other type of real-time communication and/or reporting about these proceedings**." *Id*. (emphasis in original).

4. Following a ten-day jury trial, the Court entered the Final Judgment on June 24, 2025. [Doc. 381].

5. The jury found in favor of Dr. Coomer on his claim for defamation per se as to certain statements and on his claim of intentional infliction of emotional distress. [Doc. 377]. The jury found that Dr. Coomer proved that Frankspeech defamed him by publishing the following statements:

    a. Lindell's May 9, 2021 statement:

> It's over for Dominion, it's too late to close the gate. The cows are out of the barn. Dominion, you did your best, and Smartmatic, to take our country through China. You did your best, you corrupt people, you. You tried to suppress our voice. You did it, but you failed. And I'm telling you, you Coomers of the world. What's his name? Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are

3

> treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody. But we're going to let you the people, that's what Frank's all about, we're going to dump it. We're not taking any chance that those nine justices, 'Nope, we don't want to look at it, because they told us in early November there was not enough to overturn the election. And we don't want to get involved you know, because somebody might get upset.' Well you know what? This wasn't around in November December. This came on January 9.

[Doc. 371, Instruction No. 8, ¶ 28; Doc. 377, ¶ 1c].

    b.    Clement's August 12, 2021 statement at Lindell's Cyber Symposium:

> Alright, so you've got a couple of hitmen that were pulling the triggers. The first gentleman, if you know, is John Poulos, who is the CEO of Dominion. When he gave those remarks, it was before the legislature, under oath. John Poulos committed perjury, time and time again. The other gentleman at the end was a person we've heard about because of Joe Oltmann. Eric Coomer, who holds the patent for the feature known as adjudication, which is one of the tools in their tool chest to murder the American people's vote. And this is one of the statements he made along with, when Joe Oltmann talked about being on the call, this is what he heard. And you heard from Joe Oltmann. You can assess whether you think he's telling the truth. 'I made f-ing sure that Trump's not going to win.' That's the vice president of a company that's running elections in 28 states. You've got your election cartel, you've got your vote trafficking organizations, and you have the man that pulled the trigger.

[Doc. 371, Instruction No. 8, ¶ 36; Doc. 377, ¶ 1e].

    c.    Lindell's April 6, 2022 statement:

> So everybody, if you want to know just how corrupt, the corruption we're up against. Eric Coomer served, had served papers to me before I was going onstage at the Capitol. I've never talked about Eric Coomer. He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. . . . Who knows what he did there, but anyway, he served papers, everybody. He has sued, everybody ready for this? Mike Lindell, Frank Speech, and My Pillow. Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Raffensperger

4

and Jena Griswold behind bars. You're #1 on my list. You go after my employees, go after my company again, you're disgusting. . . . You've been a part of the biggest crime this world has ever seen. Eric Coomer, president of Dominion, you have even said what you did or what you were going to do. You're disgusting. You're disgusting, you're evil, you belong behind bars, and we will not stop until you are behind bars. We're going to melt down your little machines and you're going to hang on to your little prison bars. "Let me out, let me out!" Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity. It's disgusting what you've done. You and Dominion. And Jena Griswold."

[Doc. 371, Instruction No. 8, ¶ 40; Doc. 377, ¶ 1g].

6. The jury awarded Dr. Coomer noneconomic damages in the amount of $432,000 and economic damages in the amount of $1,133,500 against Frankspeech. [Doc. 377, ¶¶ 4a.-4b.]. The jury found, beyond a reasonable doubt, that Frankspeech acted in a fraudulent, malicious, or willful and wanton manner in causing the Dr. Coomer damages. [Doc. 377, ¶ 4c.]. The jury awarded Dr. Coomer exemplary damages in the amount of $300,000. [Doc. 377, ¶ 4d.].

### III. ARGUMENT AND AUTHORITY

7. Dr. Coomer requests the Court exercise its discretion and increase the award of exemplary damages in this case because Frankspeech engaged in willful and wanton[3] conduct and such behavior further aggravated Dr. Coomer's damages during the pendency of the case. Frankspeech continued making defamatory statements about Dr. Coomer and others involved in election cybersecurity throughout the litigation and engaged in dilatory and recalcitrant litigation conduct. *See Tait ex rel. Tait v. Hartford Underwriters Ins. Co.*, 49 P.3d 337, 342-343 (Colo. App. 2001) (court properly considered insurer's litigation tactics and strategy in increasing the

---

[3] "Willful and wanton conduct" means an act or omission purposefully committed by a person who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff. C.R.S.A. § 13-21-102(1)(b).

5

exemplary damages award, including insurer's discovery violations that required hearings to insure compliance, insurer's attempted removal to federal court, and insurer's complaints about expedited trial date).

8. "The general purposes of punitive damages under section 13-21-102 are punishment of the defendant and deterrence against the commission of similar offenses by the defendant or others in the future." *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 67 (Colo. 2005) (exemplary damages increased by trial court under section 13-21-102(3) in bench trial where trial court found that insurer's conduct was exacerbated by its behavior during pretrial phase of case, including obscuring and misrepresenting who its decision makers were and failing to meet basic discovery and disclosure obligations even after being compelled to produce information).

9. The Court has discretion to increase the jury's award of exemplary damages to a sum not to exceed three times the amount of actual damages. C.R.S.A. § 13-21-102(3); *see also Hensley v. Tri-QSI Denver Corp.,* 98 P.3d 965, 968 (Colo. App. 2004) ("trial court has discretion to increase . . . exemplary damages assessed by the jury."). The statute provides that a court may do so if either:

   a. The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons during the pendency of the case; or

   b. The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation."

*Id.*

10. The jury awarded a total of $1,565,500 in actual damages[4] against Frankspeech. [Doc. 377, ¶ 4a.-4b.]. The Court thus has discretion to increase the punitive damages award up to $4,696,500. C.R.S.A. § 13-21-102(3).

11. "[T]he court, unlike the jury, [may] consider behavior after the alleged tort, but only that behavior during the pendency of the case." *Bennett v. Greeley Gas Co.*, 969 P.2d 754, 761 (Colo. App. 1998) (court could consider defendant's alleged failure to implement recommendations following the explosion underlying the lawsuit in determining whether to increase award of exemplary damages). Here, the relevant time period for the Court's analysis under section 13-21-102(3) is April 5, 2022 through June 24, 2025.

12. Unlike a jury, the trial court considers the section 13-21-102(3) factors "in the first instance as it determines the proper amount of exemplary damages." *Sky Fun 1 v. Schuttloffel*, 27 P.3d 351, 370 (Colo. 2001). In evaluating whether an increase in exemplary damages is warranted based on section 13-21-102(3), a court may take into consideration litigation conduct that is outside of the province of the jury. *See Tait ex rel. Tait v. Hartford Underwriters Ins. Co.*, 49 P.3d 337, 342-343 (Colo. App. 2001) (court properly considered insurer's litigation tactics and strategy in increasing the exemplary damages award, including insurer's discovery violations that required hearings to insure compliance, insurer's attempted removal to federal court, and insurer's complaints about expedited trial date); *Gen. Steel Domestic Sales, LLC v. Bacheller*, 291 P.3d 1, as modified (Dec. 20, 2012) (trial court did not abuse its discretion in increasing exemplary damages under section 13-21-102(3) where trial court considered litigation conduct constituted a

---

[4] "Actual damages" encompass both noneconomic and economic damages. *See James v. Coors Brewing Co.*, 73 F.Supp.2d 1250, 1254 (D. Colo. 1999) ("Compensatory or actual damages are made up of both economic and non-economic damages.").

7

pattern of attempts to delay, intimidate, and harass plaintiff, including multiple requests for independent medical examination and abuse of the discovery process).

13. As a limited liability company, Frankspeech can only act through its agent(s). *See Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 41 (Colo. 1997) ("[A] corporation can only act through its agents, and their acts within the scope of their authority are the acts of the corporation."). As such, the behavior of Frankspeech's founder,[5] sole member, and its only representative at trial, Lindell, should be considered in evaluating the factors set forth in section 13-21-102(3).

## A. Frankspeech continued its defamation campaign during the lawsuit, aggravating Dr. Coomer's damages.

14. While this lawsuit was pending, Frankspeech, through its founder and representative Lindell, continued to make public statements accusing Dr. Coomer and others in the field of election cybersecurity of corruption and criminal behavior and that merits an enhancement of the exemplary damages award. Instead of complying with Dr. Coomer's retraction request, Frankspeech's attacks on Dr. Coomer's character ramped up after this lawsuit was filed.

15. Two days after Lindell made his April 6, 2022 statement,[6] he went on Eric Metaxas' radio show to talk about the lawsuit and reiterated his claims about Coomer and Dominon's "election crimes of 2020."[7] On the program, Metaxas encouraged his audience to support Lindell by buying My Pillow products using promo code "Eric."[8]

---

[5] *See* Doc. 371, Instruction 8, ¶ 7.

[6] *See* Doc. 371, Instruction No. 8, ¶ 40; Doc. 377, ¶ 1g

[7] *See* Doc. 127-1, Plaintiff's Second Amended Complaint, ¶¶ 108-109; *see also* Eric Metaxas, THE ERIC METAXAS RADIO SHOW, (Apr. 8, 2022).

[8] *Id.*

16. That same day, Lindell received an email from Robert Herring at his My Pillow email address. The subject line of the email was "Eric Coomer information." Less than three hours later, Lindell responded, "Came through! Thank you! Mike Lindell, CEO MyPillow, Inc." The email contained an Excel spreadsheet named "Coomer contacts 1." The spreadsheet contained names and contact information for individuals from Dr. Coomer's social circles, including the names, home addresses, telephone numbers, dates of birth, and employment information for Dr. Coomer's relatives. Even more concerning, the spreadsheet included the email addresses and passwords for 197 different employees of voting system companies Smartmatic, Inc. and Election Systems & Software, LLC (ES&S). Similar to Dominion Voting Systems, those companies provide election support services across the United States and around the world.

17. Further, Lindell went on Joe Oltmann's "Conservative Daily" podcast on May 23, 2022, and said the following about Coomer's lawsuit against Defendants:

> Eric Coomer. Look at the timing of that. So here we are in Colorado, on the steps of the Capitol, and Eric Coomer, I'm not even sure on that. What is his basis? You want to talk about frivolous lawsuits, people, that's unbelievable. Eric Coomer, who are you other than some corrupt person that was with Dominion, one of the most corrupt people. He's one of them that'll definitely be with all the rest of them when we melt down the machines being right behind the bars going 'Let me out! Let me out! I'm sorry!

[Doc. 371, Instruction 8, ¶ 42].

18. On September 7, 2022, Frankspeech aired an interview of Tina Peters by Brannon Howse in which Peters described Dr. Coomer as being the person who "bragged on an Antifa call . . . that he would make sure that Trump wouldn't get in. That he made f-ing sure of it." *See* Trial Exhibit 212.

19. Lindell stated the following during an interview with Brannon Howse on "The Lindell Report" which aired on Frankspeech on March 10, 2023:

> I stand by my words! I called him a criminal! I called his lawyers a criminal! And you know what? I stand by that, because what they did to MyPillow is criminal. What they did to me is criminal. What they did to FrankSpeech. It is criminal! And that judge that didn't rule, it could set a precedent.

[Doc. 371, Instruction No. 8, ¶ 43].

20. The foregoing instances of conduct occurred after Frankspeech had notice of Dr. Coomer's allegations. Frankspeech's founder continued his behavior and Frankspeech persisted in publishing additional, defamatory statements against Coomer since the filing of this action on April 4, 2022. That alone justifies an increase in the award of exemplary damages under C.R.S.A. § 13-21-102(3).

**B.  Frankspeech's litigation conduct warrants higher punitive damages.**

21. Lindell used the jury trial as promotional material in a manner that aggravated Dr. Coomer's damages by drawing further attention to the defamatory statements about him. Lindell continued to paint Dr. Coomer as a traitor to the United States, an enemy of free and fair elections, and as being part of a criminal conspiracy. According to Lindell, that criminal conspiracy included a coordinated effort to use "lawfare" to destroy him and his companies. Lindell engaged in evasive and dilatory litigation tactics that magnified, prolonged and exacerbated Dr. Coomer's damages.

22. On March 9, 2023, Lindell sat for a deposition in his capacity as the corporate representative for Frankspeech. During his deposition, he was evasive, combative, and disrespectful. He repeated his personal attacks against Dr. Coomer and Dr. Coomer's counsel,

10

referring to them collectively as being part of a "criminal crime family"[9] and calling Dr. Coomer's attorneys, "ambulance-chasing lawyers."[10]

23. Dr. Coomer ultimately filed a Motion to Compel Deposition Testimony from Defendant Michael J. Lindell and Motion for Sanctions Pursuant to F.R.C.P. 30 and F.R.C.P. 37 due to Lindell's deposition conduct. [Doc. 172].

24. In response to media coverage concerning Lindell's conduct during his deposition, on September 8, 2023, Lindell posted on his personal X account (@realMikeLindell) that he's "had enough of ambulance chasing lawyers and lawfare!" He directed his followers to "[c]heck out the plan to save our elections" on the FrankSocial app.[11]

25. On September 11, 2023, Lindell gave a half hour interview on Alex Jones' Infowars podcast wherein he disparaged Dr. Coomer's counsel and the Court.[12] He referred to Dr. Coomer's counsel as "ambulance chasing, corrupt lawyers" and described the Court as follows: "It's really important, everybody, the judge in that case, was appointed by Biden a year ago in July and it was her first case in history was Mike Lindell and this guy named Eric Coomer suing Mike Lindell. An ex-employee of Dominion about this election stuff or whatever."[13] In the interview, Lindell requested listeners to download the Frankspeech app.[14] Defendants' campaign prompted Frankspeech fans to send harassing communications to Dr. Coomer's attorney and

---

[9] *See* Doc. 210, Exhibit 8, 297:5-298:3.

[10] *See* Doc. 210, Exhibit 8, 142:17-18, 295:23.

[11] *See* Doc. 210, Exhibit 1.

[12] *See* Doc. 210, Exhibit 8.

[13] *Id.*

[14] *Id.*

purchase 19 boxes of MyPillow 2.0 products using promo code "SCUMBAG" which were shipped to his law firm's office.[15]

26. Beyond Lindell's obstructive behavior regarding his deposition as the representative for Frankspeech, Frankspeech engaged in other efforts to delay and frustrate justice.

27. Frankspeech filed a Motion to Stay Discovery and Pretrial Deadlines on September 28, 2022. [Doc. 57]. Frankspeech filed that motion following Dr. Coomer's service of written discovery requests and deposition notices and after the Court had already held a scheduling conference in the case on July 7, 2022. Frankspeech made no mention during conferral on the proposed scheduling order or during the scheduling conference concerning a proposal to stay discovery pending the Court's order on their motion to dismiss which was filed on May 27, 2022. [Doc. 18]. Frankspeech's request was ultimately denied by the Court on November 15, 2022. [Doc. 76].

28. Frankspeech further attempted to prolong this litigation by joining the other Defendants in filing a Motion to Amend Pretrial Order and Continue Trial on April 28, 2025. [Doc. 312]. Defendants' Motion was filed seven months after the trial was set. [Doc. 265, at 1]. Frankspeech's filing of the motion required Dr. Coomer to take time away from trial preparation to prepare a response. The Court determined a continuance was not warranted and denied Defendants' motion. [Doc. 334].

29. Leading up to the trial, Lindell's smear campaign of Dr. Coomer intensified. Lindell created a website to solicit donations for Defendants' legal fees, MikeLindellTrial.com.

---

[15] *See* Doc. 210, Exhibits 7, 13, 14, and 15.

*See* Trial Exhibit 261. Lindell declared that "Eric Coomer and others tied to the machine companies have sued well over 70 individuals and companies." *Id.* He went on describe Coomer as evil, professing that Defendants would "reveal to the world . . . how evil has tried to suppress our voices through lawfare." *Id.*

30. The Frankspeech website now redirects to Lindell TV. An entire page on the website is dedicated to the trial in this lawsuit, dubbed "Most Important Trial of The Century."[16] The page includes over 35 videos with content drawing attention to this trial and the statements Defendants published about Coomer and others in the field of elections.

31. On May 22, 2025, Lindell went on "The Mike Lindell Show" and spoke at length about the upcoming jury trial in this case.[17] He brought up Dr. J. Alex Halderman's expert report in this case and dismissed it by saying that Dr. Halderman goes with "whoever pays him the money," "he's disgusting," and Lindell has "never seen a more disgusting person."[18] Lindell characterized Dr. Halderman's report as concluding there is no evidence the election was overturned and immediately responds to that conclusion by exclaiming: "Who cares about that? It doesn't matter. Overturned or not, it works both ways. It's all about deviations." He concluded the segment by directing viewers to donate to "Help Mike Lindell Defeat the DeepState" and on his GiveSendGo webpage and "share everything you can on social media."[19]

---

[16] **Exhibit 3**, https://lindelltv.com/shows/most-important-trial-of-the-century/.

[17] **Exhibit 4**, "The Battle for Election Integrity with Mike Lindell and Rick Wieble," May 22, 2025; https://caincloud.egnyte.com/dl/dBCmK8frKfGm

[18] *Id.*

[19] *Id.*

32. Lindell posted about the upcoming trial on his Facebook page on May 29, 2025 and referred to Dr. Coomer as being part of a "deep state lawfare campaign" against him.[20]

33. In an undated interview captured on May 30, 2025 of Lindell by Emerald Robinson on her show "The Absolute Truth," Robinson and Lindell discussed the upcoming trial.[21] Robinson refers to having seen emails from Coomer in other lawsuits which are "sealed" and "can't be revealed" that are "even worse in talking about how the software in the voting machines work[s]." She emphasizes that "this is the guy suing you for getting upset that, as a part of a deal he made with another network, you can't go on their show and sell your pillows. So that's the guy suing you, right?" Lindell says "Yeah, absolutely. And I didn't know his name. I didn't know who he was." Later in the interview, Lindell and Robinson discuss how Dr. J. Alex Halderman will be testifying for Coomer. Referring to Dr. Halderman's expert report in this lawsuit, Lindell comments, "I've seen his thing against me. It's disgusting. It's almost as bad as that lawyer. . . ." Robinson goes on to say: "This is not just you on trial, it's our entire election system." The interview concludes with a plea for Robinson's viewers to donate money to support Defendants' in defending this lawsuit. Robinson directs her viewers to "Go to GiveSendGo/Lindell . . . to support Michael." As Defendants' representative, Lindell emphasizes, "We really need your help. . . all that money, we're going to pour it into this trial because we have to win."

34. On May 30, 2025, Lindell TV posted on X that Lindell was "preparing to face trial . . . brought by . . . Eric Coomer . . . [as] part of a broader lawfare campaign to silence Lindell and

---

[20] **Exhibit 5**, Lindell Facebook Post on May 30, 2025; https://caincloud.egnyte.com/dl/by7mkhftF49t.

[21] **Exhibit 6**, "BREAKING: Mike Lindell Heads to Trial of the Century in Colorado on June 2nd;" https://caincloud.egnyte.com/dl/dBW38PFVXFpc.

14

destroy his company for daring to speak out against voting machines." *See* Trial Exhibit 262. Lindell is quoted in the post as saying the following: "This trial isn't just about me – it's about exposing the truth, defending our elections, and saving the American Dream." *Id.* This post prompted someone to comment the following: "Time to put Eric Coomer and everyone with Dominion on death row." *Id.*

35. Lindell repeated his claims about lawfare and his request for money in a Facebook post on May 31, 2025.[22] He posted a copy of the foregoing interview with Robinson as well as a copy of a post from Lindell TV in which Dr. Coomer is described as bringing a "politically motivated lawfare case designed to silence" Lindell.[23]

36. On June 2, 2025, over the lunch break during trial, Lindell was interviewed by Lindell TV reporter Vanessa Broussard on Emerald Robinson's show, "The Absolute Truth."[24] He commented on the jury selection process and the arguments presented outside of the presence of the jury concerning Defendants' objections to Dr. Coomer's opening statement slides.[25] Lindell commented that Dr. Coomer's counsel's argument was "packed with lies."[26]

37. While present in the courtroom during trial, Lindell violated the Court's May 29, 2025 Minute Order [Doc. 344] by posting to his X account during the proceedings and urging

---

[22] *See* **Exhibit 6**.

[23] *Id.*

[24] **Exhibit 7**, Lindell TV X Post on June 2, 2025; https://caincloud.egnyte.com/dl/GrGRcy4CwHDy.

[25] *Id.*

[26] *Id.*

15

people to donate to his legal fund. Lindell posted on June 3, 2025 at 9:21 a.m. (2 posts); 11:20 a.m. (2 posts); 1:19 p.m.; 2:17 p.m.; and 2:20 p.m.[27]

38.     On June 4, 2025, in a post to his X account, Lindell urged followers to support Defendants' legal fight by purchasing My Pillow products using the promotional code "JURY." *See* Trial Exhibit 268. To use "jury" as a promotional code is a mockery of the justice system.

39.     Frankspeech acted without regard to the consequences or the rights and safety of others, particularly Dr. Coomer. Dr. Coomer gave Frankspeech notice of the threats he received as a result of the defamatory statements published by Defendants,[28] and Dr. Coomer demanded a retraction from Frankspeech, yet it did not cease its behavior.[29] Furthermore, Frankspeech acknowledged the "high-profile" nature of this lawsuit and the fact it has drawn "significant public attention," which could raise concerns about "potential jury bias" in its motion for a continuance of the jury trial. [Doc. 312, at 1]. Frankspeech raised concerns in that pleading about the "reputational harm" and "emotional distress" its counsel allegedly faced due to media coverage of the case. Considering Frankspeech was concerned about its counsels' wellbeing due to the coverage, Frankspeech knew or should have known that its continued defamation of Dr. Coomer and public statements about the lawsuit would cause an aggravation of Dr. Coomer damages.

---

[27] *See* Exhibit 1 to Plaintiff's Notice of Defendants' Non-Compliance with Court Order [Doc. 351].

[28] *See* Doc. 4, ¶ 4, 38, 96, n.138, 99, 100, 103, 107; Doc. 170, ¶ 5, 39, 141-145.

[29] *See* Doc. 4, ¶ 117; Doc. 170, ¶ 175.

## IV. CONCLUSION

40. It is within this Court's discretion to increase the amount of the exemplary damages awarded by the jury under the circumstances involved in this case. Dr. Coomer warned Frankspeech of the damages he suffered due to its publications of defamatory content and demanded a retraction in his Original Complaint filed on April 4, 2022. In the more than three years that has passed, Frankspeech has not only continued the behavior which prompted the filing of this lawsuit, but it has utilized this lawsuit as a way to garner notoriety and financial donations.

41. Frankspeech has continued to defame Dr. Coomer and others involved in elections and engaged in litigation conduct that has exacerbated Dr. Coomer's damages. The Court should increase the exemplary damage award to punish Frankspeech for this conduct and deter future similar conduct. Otherwise, the deterrent function inherent in punitive damage awards will be effectively vitiated in this case.

## V. PRAYER

For the reasons stated herein, Eric Coomer, Ph.D. requests this Court to amend the Final Judgment to increase the exemplary damages against Frankspeech LLC to $4,696,500 or an amount within this Court's discretion. Eric Coomer, Ph.D. requests such other and further relief to which he may be entitled to receive.

Respectfully submitted this 22nd day of July 2025.

        */s/ Charles J. Cain*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
David M. Beller, No. 35767
david@rklawpc.com
**RECHTKORNFELD PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**