THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ERIC COOMER,

        Plaintiff,

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,

        Defendants.

Case No. 1:22-cv-01129-NYW-SBP

**DEFENDANT FRANKSPEECH LLC'S RESPONSE TO PLAINTIFF'S MOTION TO ALTER JUDGMENT AND INCREASE PUNITIVE DAMAGES AWARD**

**ARGUMENT**

**I.  The Seventh Amendment bars post-verdict judicial enhancement of punitive damages.**

The plaintiff seeks an order from this Court to augment the punitive damages set by the jury. That request must be denied. The Seventh Amendment does not merely preserve a jury trial in form; it guarantees the substance of a jury's verdict. Among the issues historically committed to the jury is the amount of punitive damages—a factual question within the meaning of the Seventh Amendment's Reexamination Clause. The 10th Circuit recognized in *Capital Solutions, LLC v. Konica Minolta Business Solutions USA, Inc.*, 695 F.Supp.2d 1149, 1154-56 (10th Cir. 2010), that the jury's determination on this issue is entitled to finality.

To grant plaintiff's motion would be to displace the jury's constitutional role and to substitute the court's judgment on a matter of fact. That the plaintiff invokes a state statute is of no great moment. No statute can authorize what the Constitution forbids.

    **A.  *The Seventh Amendment secures the jury's role in determining the amount of punitive damages.***

The Seventh Amendment declares:

Page 1 of 15

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, *shall be otherwise re-examined* in any Court of the United States, than according to the rules of the common law.

U.S. CONST. amend. VII (emphasis added). This provision does not merely entitle litigants to a jury's determination of liability; it secures their right to have the jury resolve every factual issue historically entrusted to it—including the measure of punitive damages. The Reexamination Clause restricts the federal courts from re-evaluating jury findings in civil cases.

Under the historical inquiry mandated by *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996), the twofold test boils down to this: (1) Was the cause of action known at common law or at least analogous to one that was? (2) Was the issue a question historically tried at law to a jury? The answer to both in this case is yes. As *Capital Solutions* held, "an award of punitive damages, including the amount of the award, has traditionally been a task for the jury," and therefore, "the right to a jury attaches not only to the issue of a plaintiff's entitlement to punitive damages, but also to the amount of such damages." *Capital Solutions,* 695 F.Supp.2d at 1154.

### B. *Judicial Enhancement would constitute an unconstitutional reexamination of a jury-found fact.*

The jury, after weighing the evidence and applying the law as instructed, awarded $300,000 in punitive damages. Plaintiff now asks the Court to increase that award to a state statutory cap. This constitutes reexamination of the jury's verdict and runs afoul of the Seventh Amendment. The Supreme Court has long held that the amount of punitive damages is a question of fact for the jury and has more than once approved the common-law method for assessing punitive awards:

> In *Day v. Woodworth*, 13 How. 363, 14 L.Ed. 181 (1852), a case decided before the adoption of the Fourteenth Amendment, Justice Grier, writing for a unanimous Court, observed:

> 'It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers; but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. By the common as well as by statute law, men are often punished for aggravated misconduct or lawless acts, by means of a civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured.'

*Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15–16 (1991). No rule permits this Court to engage in post-verdict judicial enhancement. It is not for the Court to reexamine and revise what the jury has rightly decided.

### C. *Statutory authority cannot abrogate federal constitutional rights.*

Plaintiff cites C.R.S.A. § 13-21-102(3), a state statute, in support of enhancement in federal court. The Seventh Amendment governs proceedings in federal court, and has not, after passage of the Fourteenth Amendment, been incorporated to apply to state courts:

> The States, so far as [the Seventh] amendment is concerned, are left to regulate trials in their own courts in their own way. A trial by jury in suits at common law pending in the State courts is not, therefore, a privilege or immunity of national citizenship, which the States are forbidden by the Fourteenth Amendments to abridge.

*Walker v. Sauvinet,* 92 U.S. 90, 92 (1875). Thus, there is no need for this Court to examine whether any particular state statute conflicts with the Seventh Amendment. Such a statute may be valid in a state court trial but certainly would not be applicable to a diversity trial in federal court. In diversity cases, "[f]ederal law generally governs the allocation of tasks between the court and the jury." *Vance ex rel. Wood v. Midwest Coast Transport, Inc.*, 314 F.Supp.2d 1089, 1092-1093 (D.Kan. ,2004) (citations omitted).

The principle is axiomatic: the Constitution trumps a statute. *Capital Solutions* applied that principle correctly, declining to follow a state procedure that conflicted with the Seventh

Amendment. The same conflict is present here. The Court cannot invoke statutory authorization (i.e., enhancement of punitive damages under state statute) to perform an act the Constitution prohibits. *O'Gilvie v. Int'l Playtex, Inc*., 821 F.2d 1438 (10th Cir. 1987) (Seventh Amendment "reserves to the jury the determination of damages, . . . ." (*id.* at 1447), including punitive damages.)

The jury has spoken. It was instructed on the law, heard the facts, and awarded punitive damages accordingly. Dissatisfaction with the size of the award is not a constitutional ground for disturbing it. The Seventh Amendment withholds from this Court the power to do what plaintiff asks and Defendants have the right to a determination by a jury, not what Colorado law might say. The Constitution commands that the verdict stand. The motion to amend the judgment should be denied on this ground alone.

II.  **Plaintiff is not entitled to increased exemplary damages under CRSA §13-21-102(3)(a) against Frankspeech LLC.**

   A. *Plaintiff cannot backdoor damages on claims or statements that he was unsuccessful on at trial.*

Plaintiff's attempt to invoke Colo. Rev. Stat. § 13-21-102(3)(a) after trial is not merely unavailing—it is a transparent effort to sidestep the jury's verdict. It is meritless. The statute allows for increased exemplary damages only where a defendant, after the claim arose, "continued the behavior or repeated the action . . . in a willful and wanton manner." That threshold is not met. There is no post-verdict evidence of repetition—let alone repetition that was "willful and wanton." Plaintiff offers no new facts; he merely rehashes arguments and evidence the jury heard and rejected.

Plaintiff introduced no evidence to suggest that Frankspeech republished statements 2, 4, and 6 during the pendency of litigation, nor that Frankspeech continually engaged in intentional,

extreme, and outrageous conduct during this case. In fact, Plaintiff introduced zero factual evidence at trial that Frankspeech engaged in extreme and outrageous conduct.

The jury imposed exemplary damages solely against Frankspeech—$300,000—after full consideration of the evidence, including Mr. Lindell's social media posts, public statements, and videos. Yet the jury declined to find that Mr. Lindell himself acted recklessly. It imposed no exemplary damages against him. That decision, rendered after a full trial, binds this Court. Plaintiff's motion is a veiled request to substitute judicial judgment for that of the jury. It should be rejected outright.

Equally flawed is Plaintiff's stretched suggestion that § 13-21-102(3)(a) supports a second bite at the apple. The statute does not permit courts to revive rejected theories or to reward strategic omissions. The jury found that no Defendant—including Frankspeech—was liable for a single defamatory statement made after April 6, 2022. That finding is dispositive. To pretend that post-April 6 conduct constitutes a continuation of the tortious act is to ignore the jury's verdict entirely.

Moreover, Plaintiff's invocation of statements involving Joe Oltmann, Tina Peters, and Lindell's remarks about Plaintiff's counsel has already been litigated. The jury weighed those allegations. It found them wanting in the balance. It rejected liability outright *because it likely found Oltmann's testimony credible*. That the same evidence is now dressed in statutory garb does not give it new life. Plaintiff cannot use § 13-21-102(3)(a) to relitigate what the jury has resolved.

Nor can Plaintiff convert Lindell's personal fundraising posts into corporate speech. These posts were admitted into evidence and explicitly tied to Lindell's personal defense. The jury considered them and declined to assign liability. Plaintiff argues that Lindell's personal posts

Page 5 of 15

to his X account seeking donations is the same thing as Frankspeech continuing its behavior and aggravating Plaintiff's injuries. (Pl. Br. ¶¶34 & 38). Yet Plaintiff provides no linking evidence other than Lindell himself. None. That omission is fatal. The statute does not license guilt by association.

Worse still is Plaintiff's contention that Lindell's use of the phrase "promo code 'jury'" amounts to a "mockery of the justice system." This argument is unserious. Plaintiff requested a jury trial. He received one. The jury considered that promo code and rejected it. That he now objects to rhetorical use of the word "jury"—either pretrial or post-trial with no link to any tortious conduct—is not a legal claim but a grievance against the exercise of First Amendment rights. It is not redressable under § 13-21-102(3)(a).

Plaintiff also forfeited any theory based on statements that may have been made during trial. During trial, he could have amended his pleadings under Fed. R. Civ. Pro 15 and asserted new claims based on aggravated post-pleading conduct. He did not. He either intentionally waived the maneuver, or he forfeited it. Either way, it is no longer available.

In sum, Plaintiff's motion on statements the jury's verdict excluded fails because it asks the Court to do what it may not: rewrite the jury's verdict, expand damages *post hoc*, and conflate the statements of an individual with a corporate entity without evidentiary support. Section 13-21-102(3)(a) is not a license for judicial rewriting. It is a limited statutory tool, triggered only when a defendant continues or repeats willful and wanton conduct. That did not occur here. The motion should be denied.

## B. *Frankspeech did not engage in any abusive discovery conduct relating to the claims subject to the jury's exemplary damages against them.*

Plaintiff asserts that two motions to stay, their motion to compel/sanctions, and an automatically forwarded URL address from a defunct platform somehow entitle Plaintiff to over

$4 million in exemplary damages. This argument fails on its face and is wholly contrary to the purpose of CRSA § 13-21-102(3).

First, Plaintiff argues that Mr. *"Lindell* engaged in evasive and dilatory litigation tactics" which allegedly "exacerbated" Plaintiff's injuries in "efforts to delay and frustrate justice." (Pl. Br. ¶21, 26) (emphasis added). As support, Plaintiff cites to two motions, *over a three-year period,* filed by Defendants seeking a general extension or to amend scheduling. (*Id.* ¶¶26-28). This is meritless and a far cry from the egregiously abusive bad faith discovery conduct that §13-21-102(3) contemplates.

Mr. Lindell's alleged deposition conduct that Plaintiff claims was "disrespectful" towards his lawyers when they referred to Mr. Lindell's "lumpy pillows" is not evidence of repeated conduct that aggravated injuries nor the type of abusive discovery tactics that would be a basis to increase exemplary damages *on Frankspeech.* The Plaintiff or his attorneys apparently leaked the deposition video online because they thought it presented Mr. Lindell in a bad light. Mr. Lindell's extremely long deposition included "shifts" to 30(b)(6) for both My Pillow and Frankspeech as well as his own individual deposition. To state that Mr. Lindell's statements at his deposition (which themselves would not be a basis for increased exemplary damages) were made on behalf of Frankspeech is a far cry from any statements or conduct that were the basis of exemplary damages on Frankspeech.

Colorado courts have found that discovery issues without bad faith are not relevant to the issue of exemplary damages. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.,* 445 F. Supp. 3d 1327, 1332 (D. Colo. 2020) (discussing that discovery conduct not in bad faith was irrelevant and immaterial to claims for exemplary damages).

The facts here are distinguished from the abusive and obstructive discovery conduct

present in *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59 (Colo. 2005). There, the trial court found that the defendant insurance carrier's conduct "was exacerbated by its behavior during the pretrial phase." *Id.* at 67. It "obscured and misrepresented who its decision makers were and it failed to meet its most basic discovery and disclosure obligations even after being compelled to produce information." *Id.* This a far cry from a mere two motions for a short stay of proceedings to address issues in good faith. The court in *Coors* used the defendants' misrepresentations as further repetition of wrongful conduct (there, false insurance policy statements). That, too, is a far cry from a mere two motions for a short stay over a three-year period and no findings from this Court regarding "bad faith" conduct by Frankspeech LLC. *See e.g. Netquote, Inc. v. Byrd*, No. 07-cv-00630-DME–MEH, 2009 WL 902437, at *16 (D. Colo. Apr. 1, 2009) (declining to increase exemplary damages award under § 13-21-102(3)(b) because defendant's "litigation conduct did not constitute over-the-top aggressive conduct" and there was no harm established to Plaintiff as a result of the conduct.) Plaintiff offers no evidence, nor any remotely similar authority, that Frankspeech LLC's conduct from two motions would constitute such aggressive conduct to increase damages let alone any damages to Dr. Coomer.

C. ***Plaintiff is not entitled to increased exemplary damages against Frankspeech under CRSA §13-21-102(3)(b).***

Any finding regarding increased exemplary damages under §13-21-102(3) requires the Court to find, beyond a reasonable doubt, that Frankspeech LLC committed the proscribed statutory conduct pursuant to the claims against them during the pendency of litigation. *Perez v. Sunbeam Prods., Inc.,* No. 21-CV-01915-PAB-KAS, 2025 WL 1530660, at *6-8 (D. Colo. May 29, 2025) (Standard to seek increased punitive damages under statute is beyond reasonable doubt). There yawns a vast chasm between Plaintiff meeting his burden beyond a reasonable doubt and Frankspeech's non-existent conduct that somehow may have injured Dr. Coomer.

Frankspeech LLC is a subsidiary of the Mike Lindell Media, Corp (MLMC) which also owns Lindell TV. Frankspeech LLC has a separate corporate structure and operation. Likewise, Lindell TV is a separate and distinct subsidiary of MLMC. Frankspeech LLC is not "one and the same" as Lindell TV and no evidence was introduced at trial nor in Plaintiff's brief suggesting otherwise beyond Plaintiff's assertion that a defunct social media platform URL now forwards to Lindell TV. (Pl. Br. ¶30).

Here, Plaintiff fails to show at all, let alone beyond a reasonable doubt, how Frankspeech LLC acted in a willful and wanton manner during the pendency of this action to further aggravate damages Plaintiff introduced at trial. Plaintiff asserts that a briefly posted interview between a Lindell TV reporter and Mr. Lindell on June 2, 2025 "aggravated" his injuries. This is not attributable to Frankspeech, and even still, nothing in that interview defamed or repeated the conduct held against Frankspeech LLC. Plaintiff's counsel will admit that they even gave one interview to media.

Plaintiff also excludes from his motion the "notice of non-compliance" that he filed on June 3, 2025 (Day 2 of trial) highlighting that interview. (Doc. 351 ¶6 at pp. 2 – 5). (*See* Doc. 387). Lindell personally discussed what occurred on the first days of trial, and the interview was filed by the Plaintiff's counsel. (*Id.*). Following Plaintiff's "notice of non-compliance of the court's order" (Doc. 351), Lindell TV immediately deleted the interview and both Mr. Lindell individually and Lindell TV, through Defendants' counsel, assured that no further information would be published—even though Lindell TV was not a Defendant in this matter nor subject to the Court's sequestration order more seriously than any other media outlet. The parties addressed these issues specifically on June 4, 2025. The Court declined to hold Mr. Lindell in contempt.

Plaintiff included another post by Lindell TV on X regarding Mr. Lindell personally

facing trial which they admitted as Trial Exhibit 262. Not only is Lindell TV a separate entity from Frankspeech, but nothing stated by Mr. Lindell personally is defamatory or remotely related to the statements that the jury found liable against Frankspeech, let alone exemplary damages. Mr Lindell's statements that the trial is about "exposing the truth, defending our elections, and saving the American dream" are not defamatory by any stretch and certainly unrelated to statements regarding the Plaintiff's complicity in an ANTIFA phone call. The jury's decision to award Plaintiff exemplary damages against Frankspeech LLC would have included consideration of this information from Trial Exhibit 262, so there is no basis to increase damages.

  The only evidence Plaintiff presents to show that Frankspeech LLC and Lindell TV are the same is the fact that Frankspeech LLC's defunct and inactive URL automatically directs to Lindell TV. (Pl. Br. ¶30). This does not show beyond any reasonable doubt (nor under any standard) that Frankspeech engaged in repeated and intentional conduct to cause Plaintiff any emotional distress or repost statements 2, 4, and 6. At a minimum, the jury found that Mr. Lindell's did not make Statements Nos. 2 and 6 willfully and wantonly or recklessly. (Doc. 375).

  Importantly, Plaintiff's attenuated claim that his injuries were "aggravated" by Lindell TV's one-day media coverage fails to consider the far broader and more widespread media coverage by many other larger entities that could have aggravated Plaintiff's alleged injuries. How to know whether other outlets including Associated Press, 9News, and others in Denver were in fact the "cause" of such alleged aggravated injuries? Reporting on the trial itself was not related to Plaintiff's claims at trial. Indeed, it was the *Plaintiff,* who elected to serve the Defendants this lawsuit in the most public way on the steps of the Colorado Capitol rather than a more privatized service. It was the Plaintiff who could not wait to "sue that clown," referring to Mr. Lindell.

Plaintiff's unfair assertions that media coverage—with no connection to any conduct by Frankspeech LLC—somehow entitles him to over $4 million in exemplary damages is meritless. Most media coverage surrounding Plaintiff's trial and case was highly favorable to Plaintiff. The proposition that any coverage that may not be "positive" for one party should entitle that party to an increase in exemplary damages is not found anywhere in CRSA §13-21-102(3).

   D. **Plaintiff failed to show that Frankspeech knew or should have known that generalized media coverage about Plaintiff's case would cause Plaintiff aggravated emotional distress.**

Plaintiff's logic that a complaint prayer for relief and request by Defendants' legal counsel relating to their trial preparation efforts personally is evidence that Frankspeech "knew or should have known" that so-called media coverage would aggravate Plaintiff's damages is disconnected. Plaintiff claims that he "demanded a retraction" from Frankspeech which was only contained as a prayer for relief in his complaint. Colorado courts have noted that allegations in a complaint have "little, if any, evidentiary value" when considering increasing exemplary damages under C.R.S.A. §13-21-102(3). *Perez v. Sunbeam Prods., Inc.,* No. 21-CV-01915-PAB-KAS, 2025 WL 1530660, at *8 (D. Colo. May 29, 2025) (noting in a defective products case that a related complaint had no evidentiary value since it consisted of allegations, not proof). Indeed, Plaintiff introduced *no evidence at trial,* because none existed, of any documented "demand for retraction" served on Frankspeech LLC prior to his filing the suit. Plaintiff's goal was not a retraction. It was to file suit against the "clown," Michael Lindell.

That is not all. Plaintiff argues that their responding to a short motion to delay trial "distracted and took precious time from [plaintiff's counsels'] trial preparation". Plaintiff then excoriates defendants' counsel for seeking time to sufficiently prepare for trial. (Pl. Br. ¶39). Plaintiff addresses Kachouroff and DeMaster's motion to temporarily stay trial (Doc. 312)

asserting that the motion discussed "significant public attention" and potential jury bias relating to the *parties* as well as emotional distress from said media attention. (Pl. Br. ¶39). Plaintiff's argument that defense counsel's *personal* concerns of being under the threat of the severest sanctions is completely disconnected from evidence of Frankspeech's knowledge about Plaintiff's aggravated injuries.

Plaintiff's representation of defense counsel's motion (Doc. 312) is inaccurate. Rather, defense counsel was concerned about having to conduct a trial under the threat of the most severe sanction along with potential bias against *defense counsel* that might injure their clients during trial given the Court's public ruling on the Order to Show Cause. Defense counsel noted their concern that articles personally about them could taint the jury pool and had *personally* caused them emotional distress at the prospect of potential disciplinary action from their respective bar associations including disbarment. (Doc. 312). This argument was so clearly unrelated to general media attention relating to the claims and parties that this Court wrote that it would not sanction Defendants' attorneys in a manner involving referral for disbarment and would ensure the jury had no knowledge of the articles about defense counsel, which the Court followed up on during jury selection.

### E.  Frankspeech LLC is not responsible for Mr. Lindell's individual statements.

C.R.S.A. §13-21-102(3) addresses only conduct that a defendant engages in subject to the claims against it for exemplary damages. This does not apply to defendants that were exonerated (My Pillow, Inc.) nor those who did not have exemplary/punitive damages imposed against them (Mr. Lindell). It does not apply to statements nor conduct by any other third party. C.R.S.A. §13-21-102(3).

Notwithstanding these clear statutory parameters, Plaintiff unashamedly requests the

court to substantially increase exemplary damages from the jury against *Frankspeech* for statements Lindell made individually without any evidence of republication nor involvement by Frankspeech. Lindell testified that Frankspeech had been defunct and inactive since 2024 (about a year).

      Plaintiff asserts that statements by Lindell on other third-party platforms require increased damages against Frankspeech. Specifically, Plaintiff raises a September 2023 interview with Mr. Lindell on the Alex Jones Infowars podcast where Lindell referred to Plaintiff's lawyers as "ambulance chasers" and "corrupt" in which Lindell only discusses the existence of the lawsuit. Plaintiff attempts to tie Frankspeech to this segment because Lindell told people to download the FrankSocial app during that long interview. But this request to "download an app" had nothing, whatsoever, to do with Frankspeech's involvement in statements about Coomer's lawyers being ambulance chasers. Even if it did, this is not defamatory, but a vague and undefinable statement of opinion that does not repeat the messages subject to the verdict against Frankspeech.

      Plaintiff's complaint of 19 boxes of My Pillow products shipped to Plaintiff's counsel's office is equally meritless and immaterial. Plaintiff's counsel should have returned those items to My Pillow, Inc. rather than keeping them if it upset them so much. Such conduct is not related at all to Plaintiff's damages from Clements statements—certainly where Plaintiff offers no evidence of Frankspeech's involvement. (Pl. Br. ¶25). Similarly, Lindell's deposition video, which Mr. Lindell neither obtained nor initially released, is not evidence of Frankspeech's repeated conduct sufficient to increase exemplary damages. (Pl. Br. ¶24).

      For the same reasons, Lindell's *personal* pretrial statements about lawfare and voting machine companies suing many people are not defamatory nor sufficient evidence of repeated

conduct by Frankspeech LLC—an inactive subsidiary of MLMC. Despite Plaintiff's inaccurate representation that Mr. Lindell called Plaintiff "evil," even this not attributable to any intentional conduct by Frankspeech LLC in May 2025—certainly when Frankspeech LLC had been inactive for a year.

Again, Plaintiff's efforts to use C.R.S.A. §13-21-102(3) as a bootstrap to obtain exemplary damages and additional compensation for Mr. Lindell's *personal and individual conduct* is inappropriate and fails. The jury did not find Mr. Lindell acted with wanton or willful conduct and imposed no exemplary damages against him. Mr. Lindell's opinions about Dr. Halderman prior to trial as well as requesting donations *specifically for himself* is not conduct that can be attributable nor increase exemplary damages against Frankspeech LLC.

Finally, Plaintiff again misrepresents facts by repeating his allegation that Mr. Lindell individually "violated the court's order" from May 29, 2025 by posting to his personal X account during trial. When raised to the Court at trial, Mr. Lindell explained that he has staff who manage posts on his *personal social media accounts, including X,* and he did not post anything during trial. The Court declined to punish Mr. Lindell, and Plaintiff's efforts to relitigate this allegation again is frivolous. Imposing it *against* Frankspeech *LLC* is logically flawed. The purpose exemplary damages is to "punish the wrongdoer and deter similar acts." *Vickery v. Evans*, 266 P.3d 390, 393 (Colo. 2011) (citation omitted). Plaintiff provides no authority that supports why this Court should further punish Frankspeech LLC for any conduct or statements by Mr. Lindell individually (or other third parties). For these reasons, Plaintiff's arguments fail.

### III. Conclusion

The Court should deny Plaintiff's motion on the grounds of the Seventh Amendment alone. Alternatively, the Court should deny Plaintiff's motion based on the analysis of C.R.S.A.

§13-21-102(3).

Dated: August 5, 2025.

                          Respectfully Submitted,

                          **MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

                          By */s/ Christopher I. Kachouroff*
                          Christopher I. Kachouroff
                          (VA Bar No. 44216)
                          13649 Office Place, Suite 101
                          Woodbridge, Virginia 22192
                          Telephone: (703) 621-3300
                          chris@mck-lawyers.com

                          Jennifer T. DeMaster
                          (WI Bar No. 1124201)
                          361 Falls Rd, Suite 610
                          Grafton, WI 53024
                          Telephone: (414) 235-7488
                          jennifer@demasterlaw.com

                          **ATTORNEYS FOR DEFENDANTS**