IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01129-NYW-SBP

ERIC COOMER, Ph.D.,
    Plaintiff

v.

MICHAEL J. LINDELL, FRANKSPEECH LLC,
AND MY PILLOW, INC.,
    Defendants

---

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO AMEND FINAL JUDGMENT**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), through counsel, files this Reply in Support of his Motion to Amend Final Judgment [Doc. 387], and states as follows:

**INTRODUCTION**

In its Response, Defendant Frankspeech LLC miscites case law and misapplies the Seventh Amendment. The parties' right to a trial by jury has been satisfied and now the Court has authority to impose additional exemplary damages pursuant to C.R.S. section 13-21-102(3) and the reexamination clause of the Seventh Amendment.[1] Frankspeech's actions during the pendency of this case warrant the imposition of additional exemplary damages to serve as a punishment and a deterrent.

---

[1] *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 437 n.11 (2001).

1

# ARGUMENT AND AUTHORITIES

## I. The Court has statutory authority to amend the Judgment without violating the Seventh Amendment.

1.  Defendant Frankspeech LLC (Frankspeech) miscites *Capital Solutions* and refers to it as a Tenth Circuit case when it is not, in fact, controlling.[2] *Capital Solutions* is a case from the United States District Court in the District of Kansas. 695 F.Supp.2d 1149 (D. Kan. 2010). The subsequent procedural history reflects the case was never appealed to the Tenth Circuit.

2.  *Capital Solutions* is distinguishable from the case at hand. There, the Kansas statute at issue prescribed a bifurcated process whereby the jury would first determine whether punitive damages ought to be awarded, and in a separate proceeding thereafter, the court would determine the amount of the punitive damage award. *Id.* at 1152. In *Capital Solutions*, the District of Kansas considered, for the first time, the question of whether Kansas's statute violated the Seventh Amendment guarantee of trial by jury. *Id.* The court determined the Seventh Amendment required the jury be allowed to determine the amount of the punitive damage award. *Id.* Subsequent to the *Capital Solutions* case, the Tenth Circuit did weigh in on the Kansas statute. *Jones v. United Parcel Service, Inc.*, 674 F.3d 1187, 1202 (10th Cir. 2012) (district court did not err in permitting jury to determine amount of punitive damages).

---

[2] "The 10th [sic] Circuit recognized in *Capital Solutions, LLC v. Konica Minolta Business Solutions USA, Inc.*, 695 F.Supp.2d 1149, 1154-1156 (10th [sic] Cir. 2010), that the jury's determination on this issue is entitled to finality." *See* Doc. 404, p. 1.

3. There are critical distinctions between C.R.S. section 13-21-102(3) and the Kansas statute at issue in *Capital Solutions* and *Jones*. First and foremost, under the Colorado statute, the amount of the damages, both actual and punitive, is decided by the jury before the court may modify the award. C.R.S. § 13-12-102. Second, the court's discretion is limited by the actual damages awarded by the jury.[3] Third, the court evaluates the award based on conduct by the defendant that the jury could not have properly considered in making its verdict.[4]

4. These distinctions are of import for the Seventh Amendment analysis because the Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

5. Frankspeech's right to a jury trial has been preserved, and in exercising its discretion under C.R.S. section 13-21-102(3), the Court would not be "re-examin[ing]" a "fact tried by jury." The amount of punitive damages is not a fact. In *Cooper*, the Supreme

---

[3] C.R.S.A. § 13-21-102(3) ("the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages . . ."). *See James River Ins. Co. v. Rapid Funding LLC*, No. 07-cv-1146-RBJ-BNB, 2012 WL 1931552, at *4 (D. Colo. 2012) (where jury had awarded punitive damages in first trial and defendant confessed liability to such an amount, the court limited the scope of the retrial to valuation of property and determined plaintiff did not have a Seventh Amendment right to have the jury consider punitive damages because the Court could determine the amount of punitive damages "on a 1-to-1 ratio – as a matter of law once the jury determines actual damages.").

[4] "[T]he court, unlike the jury, [may] consider behavior after the alleged tort, but only that behavior during the pendency of the case." *Bennett v. Greeley Gas Co.*, 969 P.2d 754, 761 (Colo. App. 1998) (court could consider defendant's alleged failure to implement recommendations following the explosion underlying the lawsuit in determining whether to increase award of exemplary damages). *See also Scheufler v. General Host Corp.*, 126 F.3d 1261, 1271-1272 (10th Cir. 1997) (upholding award of punitive damages in a diversity action brought by landowners for trespass and private nuisance against salt mining company in which the jury determined whether punitive damages should be awarded and district court determined the amount of those damages, taking into consideration continued tortious conduct post-trial by defendant).

3

Court noted that while "'it is the peculiar function of the jury' to set the amount of punitive damages,"[5] that did not mean "the amount of punitive damages imposed by the jury is itself a 'fact' within the meaning of the Seventh Amendment's Reexamination Clause."[6] *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 437 n.11 (2001).

6. In addition to misciting *Capital Solutions*, Frankspeech misses the portion of the District of Kansas court's opinion where the court insists that "[w]ith respect to the *Erie* analysis," it "remains firm in [its] conviction" that "the entire Kansas punitive damages scheme is substantive in nature." 695 F.Supp.2d at 1152. The Colorado exemplary damages statute is also substantive.[7] C.R.S. section 13-21-103 warrants application in federal court because it implicates "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

7. In any case, the Seventh Amendment does not apply to the states. *Gebert v. Sears, Roebuck & Co.*, 543 P.3d 409, 417 (Colo. 2023) (*citing Gasperini v. Ctr. For Humans, Inc.*, 518 U.S. 415, 432 (1996). Unlike the United States Constitution, the Colorado Constitution does not guarantee the right to a jury trial in civil cases. *Id*. at 418 (*citing Johnson v. Schonlaw*, 426 P.3d 345 (Colo. 2018). And federal courts in Colorado regularly apply statutory mechanisms that serve to modify or otherwise alter jury verdicts.

---

[5] Quoting *Barry v. Edmunds*, 116 U.S. 550, 565 (1886).

[6] Quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 432 (1996) (distinguishing between right to jury trial and reexamination provisions of the Seventh Amendment and holding "that New York's law controlling compensation awards for excessiveness of inadequacy can be given effect, without detriment to the Seventh Amendment . . .").

[7] *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

*See, e.g., Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1046 (10th Cir. 2021) ("It is clearly established that the application of a statutory damages cap to a jury award does not violate the Reexamination Clause."); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) (recognizing that many procedural devices that limit a civil jury's domain, including directed verdict, retrial, and summary judgment, are not inconsistent with the Seventh Amendment.)

8. The Colorado exemplary damages statute applies and does not run afoul of the Seventh Amendment.

## II. The Court should impose additional penalties for Frankspeech's behavior during the pendency of this litigation.

9. Frankspeech complains that Dr. Coomer implores the Court to consider behavior by Frankspeech for which the jury did not impose liability. But that is precisely the function of the statute, and the Court's analysis is not limited to considering the actions underlying the jury's findings of liability. The court may consider behavior and actions by the defendant which occurred outside of the timeframe evaluated by the jury but during the pendency of the case, which targeted persons other than the plaintiff, or which aggravated the plaintiff's damages when the defendant knew or should have known it would do so. C.R.S. § 13-21-102(3).

10. In attempting to distract from this standard, Frankspeech falsely misrepresents the procedural history of this case. For example, Frankspeech argues:

> Plaintiff also forfeited any theory based on statements that may been made during trial. During trial, he could have amended his pleadings under Fed. R. Civ. Pro 15 and asserted new claims based on aggravated post-pleading

5

conduct. He did not. He either intentionally waived the maneuver, or he forfeited it. Either way, it is no longer available.

Response [ECF 404, p. 6].

11. In fact, the Court expressly addressed this exact concern when it ruled on Plaintiff's Motion for Leave to File his Second Amended Complaint. *See generally*, Doc. 169, Order Granting Motion to Amend (July 7, 2023). In that instance, Dr. Coomer sought to add an additional claim for exemplary damages, wherein he expressly raised Frankspeech's ongoing post-pleading conduct as a basis for relief.[8] In granting the Motion, the Court stated:

> Indeed, as noted by Dr. Coomer, 'if Plaintiff had moved to amend immediately after every relevant post-Complaint publication by Defendants, then he would be requesting leave to file his Eighth Amended Complaint, not his Second.

*Id.*, p. 11. The Court went on to note that further amendment for ongoing conduct was unnecessary and stated:

> So long as the factual bases for Dr. Coomer's claims are properly disclosed pretrial, the operative pleading need not be amended each time new evidence emerges related to the conduct that restates or otherwise reaffirms the causes of action of defamation, intentional infliction of emotional distress, and civil conspiracy that have already been adequately pleaded by the First Amended Complaint.

*Id.*, p. 12.

12. Notably, in neither their Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 161, June 16, 2023], nor

---

[8] This post-pleading conduct notably includes the April 6, 2022 statement for which the jury found Frankspeech liable for exemplary damages. Dr. Coomer filed his Complaint two days prior, on April 4, 2022.

6

Defendants' Corrected Rule 12(b)(6) Motion to Dismiss Amended Complaint and Supporting Memorandum of Law [Doc. 38, July 21, 2022], did Defendants ever argue that Frankspeech was not the publisher of the statements at issue. Nor did they ever argue a section 230 defense asserting that any particular statement should be dismissed or stricken from the Complaint. Defendants' Omnibus Motion for Summary Judgment was similarly devoid of any argument that Frankspeech was not the publisher of the statements at issue, despite having expressly made that argument with respect to Defendant MyPillow. *See* Doc. 177, pp. 33-37, Defendant's Omnibus Motion for Summary Judgment (Sept. 8, 2023). Defendants failed to do so. Only at trial did Defendants first attempt to argue that Frankspeech was immune. Then, as now, those arguments are just conclusory statements which are devoid of evidentiary support, and are likely efforts to exploit Frankspeech's apparent recent corporate restructuring to create a veneer of separation.

13. Michael J. Lindell (Lindell) is the face of Frankspeech. Frankspeech cannot distance itself from Lindell now. Lindell was the only corporate representative of Frankspeech during the pendency of the case and at trial. Not only did he personally peddle election fraud conspiracies, he did so while promoting election fraud conspiracies on behalf of Frankspeech and My Pillow.

14. Moreover, Frankspeech has stipulated that many of Lindell's troubling statements were published on Frankspeech. Defendants stipulated that the statement Lindell made on April 6, 2022 aired on FrankSpeech. [Doc. 371, Instruction No. 8, ¶ 40; Doc. 377, ¶ 1g]. In that statement, Lindell not only called Dr. Coomer a criminal and said

7

that Dr. Coomer would be going behind bars, he said that Brad Raffensperger, the Georgia Secretary of State, and Jena Griswold, the Colorado Secretary of State, would be as well. *Id.* Lindell went on to expound that Dr. Coomer "did crimes against the United States and quite frankly all of humanity," stating it's "disgusting what you've done. You and Dominion. And Jena Griswold." *Id.* In the March 10, 2023 statement by Lindell that aired on Frankspeech, he complained that what Dr. Coomer did to Frankspeech was criminal. [Doc. 371, Instruction No. 8, ¶ 43].

15. Lindell did not inadvertently withhold a few documents like the defendant in *RCHFU*. This case is more similar to *Tait* and *Coors* than the *RCHFU* case cited by Frankspeech.[9] In *RCHFU*, the court granted the motion in limine with respect to alleged conduct which predated the lawsuit. *RCHFU, LLC v. Marriott Vacations Worldwide Corporation*, 445 F.Supp.3d 1327, 1332 (D. Colo. 2020). In contrast, the conduct at issue here occurred during the more-than-three years this case was pending. In *RCHFU*, the court precluded the plaintiffs from referring to or introducing evidence of the parties' discovery disputes, particularly, disputes concerning the defendant's initial failure to produce certain documents in discovery. *Id.* at 1331. In his depositions, Lindell was loud, vulgar, prone to outbursts, evasive and non-responsive. [*See* Doc. 172]. The deposition

---

[9] *See Tait ex rel. Tait v. Hartford Underwriters Ins. Co.*, 49 P.3d 337, 342-343 (Colo. App.2001) (court properly considered insurer's litigation tactics and strategy in increasing the exemplary damages award, including insurer's discovery violations that required hearings to insure compliance, insurer's attempted removal to federal court, and insurer's complaints about expedited trial date); *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 67 (Colo. 2005) (exemplary damages increased by trial court under section 13-21-102(3) in bench trial where trial court found that insurer's conduct was exacerbated by its behavior during pretrial phase of case, including obscuring and misrepresenting who its decision makers were and failing to meet basic discovery and disclosure obligations even after being compelled to produce information); *C.f. RCHFU, LLC v. Marriott Vacations Worldwide Corporation*, 445 F.Supp.3d 1327, 1332 (D. Colo. 2020).

behavior of Lindell which necessitated the filing of Plaintiff's Motion to Compel Deposition Testimony and Motion for Sanctions [Doc. 172] included conduct whereby he was acting as the corporate representative of Frankspeech. [Doc. 172, Exhibit 7].

16.     Contrary to Frankspeech's assertion, Lindell did not simply go about personal fundraising related to this case. He rehashed and further disseminated his baseless derogatory claims about Dr. Coomer to rile up his supporters and prompt them to give the Defendants money. *See* Trial Exhibit 261. Lindell repeatedly insisted his supporters give Defendants money "to pour into this trial," painting Dr. Coomer and those affiliated with him as part of a "deep state lawfare campaign." [Doc. 387, Exhibit 5].

17.     During the time this lawsuit has been pending, Frankspeech published statements about Dr. Coomer and others similarly situated in the field of election cybersecurity depicting them as criminals and traitors who belonged behind bars. Frankspeech's discovery conduct was over-the-top obstructive and it attempted to delay the trial in this matter more than once. Frankspeech's litigation conduct in this case cannot and should not be normalized.

## CONCLUSION

18. The Court has the ability to send Frankspeech a message by increasing the punitive damage award. This would not encroach on Frankspeech's right to a jury trial, and it is permissible under the reexamination clause of the Seventh Amendment.

19. Frankspeech should not profit from the behavior that was the subject of this lawsuit. If the Court does not exercise its discretion under C.R.S.A. section 13-21-102(3), then the revenue from the fundraiser associated with this lawsuit will exceed the amount of the punitive damages.[10]

## PRAYER

For the reasons stated herein, Eric Coomer, Ph.D. requests this Court to amend the Final Judgment to increase the exemplary damages against Frankspeech LLC to $4,696,500, or an amount within this Court's discretion. Eric Coomer, Ph.D. requests such other and further relief to which he may be entitled to receive.

---

[10] Doc. 387, Exhibits 1 and 2.

Respectfully submitted this 19th day of August 2025.

       */s/ Charles J. Cain*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
David M. Beller, No. 35767
david@rklawpc.com
**RECHTKORNFELD PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**

11