**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ERIC COOMER, PhD.,

      Plaintiff,

v.                                                            **Civil Action No. 1:22-cv-01129**

MICHAEL J. LINDELL, et al.,

      Defendants.

---

**MR. KACHOUROFF'S RESPONSE TO
ORDER TO SHOW CAUSE**

---

**Background**

Mr. Christopher Kachouroff responds to the Court's March 25, 2026 Order to Show Cause concerning the filing of the Response Brief (Doc. 404). FrankSpeech, LLC,[1] and attorney Jennifer DeMaster have provided affidavits which are attached to the brief. *See* Exs. A and B. Mr. Kachouroff has provided two affidavits. *See* Exs. C and D (under seal).

At the outset, Mr. Kachouroff acknowledges a real error in Doc. 404 relating to the citation of one case. It is his error and his alone. The brief stated that "[t]he 10th Circuit recognized in *Capital Solutions, LLC v. Konica Minolta Business Solutions USA, Inc.*, 695 F. Supp. 2d 1149, 1154–56 (10th Cir. 2010), that the jury's determination on

---

[1] Respectfully, the Court issued an order to Frankspeech, LLC to show cause why the Court should not impose a sanction on it for its attorney's legal mistake. Such a sanction is explicitly forbidden by Rule 11(c)(5)(A) (which provides that represented parties cannot be sanctioned for their lawyer's legal mistakes). Respectfully, the Court should withdraw its show cause order as it pertains to Frankspeech, LLC.

**Page 1 of 10**

this issue is entitled to finality." The parenthetical reference to the Tenth Circuit was incorrect. *Capital Solutions* is a decision of the United States District Court for the District of Kansas, not the United States Court of Appeals for the Tenth Circuit.

The Court also concluded that the foregoing sentence described *Capital Solutions* too broadly because that case addressed whether the jury decides punitive damages in the first instance under Kansas procedure, rather than whether a post-trial increase of punitive damages is permissible under Colorado law. Mr. Kachouroff does not dispute either point.

Doc. 404 (the "Response Brief") therefore incorrectly referred to *Capital Solutions, LLC v. Konica Minolta Business Solutions USA, Inc.,* 695 F.Supp.2d 1149 (D. Kan. 2010) as though it were a Tenth Circuit decision and as though the Tenth Circuit itself had recognized the proposition in that case. But *Capital Solutions* was still a real District of Kansas decision that expressly relied on *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438 (10th Cir. 1987), and stated that Tenth Circuit law was consistent with its Seventh Amendment analysis. The error, therefore, was one of attribution and fit, not fabrication, frivolousness, citation to nonexistent authority, or reliance on a legal proposition unwarranted by existing law.

### Purpose of Rule 11

The Court asks Defendants to show cause why the foregoing reference and citation to *Capital Solutions* case does not warrant sanctions under Rule 11. It does not warrant sanctions.

As the Supreme Court has explained, "[t]he central purpose of Rule 11 is to deter baseless filings in district court[.]" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393

**Page 2 of 10**

(1990). Even if a legal position in a pleading is clearly contrary to current law, it is not sanctionable if the position is warranted "by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015).

Rule 11(b)(2) explicitly addresses whether "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument" for changing the law. The miscitation to the Tenth Circuit in the parenthetical as the issuing court (as opposed to a citation to the Kansas district court in which that decision was rendered) certainly does not change the fact that the argument for which that case was cited is a nonfrivolous argument that is warranted by the existing law, including the existing law in the Tenth Circuit, the circuit in which *Capital Solutions* was located. Furthermore, the citation to "695 F. Supp. 2d 1149" is correct (and indicates that it is a federal district court case), as is the case name, and the year of the decision.  It is only the reference to "10th Cir." in the citation that is incorrect.

Rule 11 does not mandate citation perfection.  Nor do the corresponding Advisory Committee Notes contemplate sanctions for every minor or inconsequential citation defect; to the contrary, they caution that Rule 11 motions "should not be made or threatened for minor, inconsequential violations," and that sanctions should not be more severe than reasonably necessary to deter repetition. Fed. R. Civ. P. 11 advisory committee's note.

That distinction matters here. The legal principle for which *Capital Solutions* was cited was not fabricated or frivolous. The proposition advanced was that the Seventh

**Page 3 of 10**

Amendment protects the jury's role in determining punitive damages, including the amount of those damages. That contention is supported by existing law, including *Capital Solutions* and the Tenth Circuit (*O'Gilvie*). In *Capital Solutions*, the District of Kansas held that "the Seventh Amendment does require that the jury also be allowed to determine the amount of any punitive damages awarded," and further explained that "[t]he law of the Tenth Circuit is consistent with this conclusion," *Capital Solutions, LLC*, 695 F.Supp.2d at 1155-56 (citing *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1447–50 (10th Cir. 1987), a post-trial remittitur case). *Capital Solutions* concluded that the Seventh Amendment guaranteed the plaintiff "the right to have the entirety of its claim for punitive damages, including the determination of the amount, decided by the jury." *Id*. Thus, the Response Brief cited *Capital Solutions* for its Seventh Amendment reasoning and for its express statement that Tenth Circuit law was "consistent with this conclusion," citing *O'Gilvie*.

Thus, the Response Brief's description of *Capital Solutions* did not involve the assertion of an unsupported legal proposition. It was a citation error (but only as to the issuing court) and an imprecise description of the case's procedural posture. But the Response Brief cited a real case, which stood for a viable constitutional proposition which the case actually discussed and made clear that "'[t]he law of the Tenth Circuit is consistent with this conclusion. *See O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1447-50 (10th Cir. 1987).'" *Capital Solutions*, 695 F. Supp. 2d. at 1155.  While the Response Brief described Capital Solutions imprecisely by attributing it to the wrong court, the legal principle for which it was cited—that the Seventh Amendment requires the jury to determine punitive damages—was a proper statement of existing law.

**Page 4 of 10**

That is a meaningful distinction under Rule 11(b)(2). Rule 11 asks whether the legal contention was warranted by existing law; it does not, by its express language, support the imposition of sanctions whenever a lawyer cites the wrong court level, uses an erroneous parenthetical, or otherwise commits a citation defect while advancing a legal proposition supported by existing law, and in this case, the controlling law in the pertinent Circuit Court of Appeals.

The Court's citation to *Amarsingh*[2] does not alter that conclusion. *Amarsingh* did not involve the scope of Rule 11 or address the circumstances in which sanctions may be awarded under Rule 11.

Rather, *Amarsingh* was an appellate sanctions decision under Federal Rule of Appellate Procedure 38, in which the Tenth Circuit expressly said, "We elect to proceed under Rule 38." 2026 WL 352016, at *6–7. The *Amarsingh* Court analyzed whether sanctions were appropriate under that appellate rule concerning a "frivolous as argued" appeal where the appellate brief cited multiple nonexistent cases and misattributed quotations. *Id*. at *7.

The *Amarsingh* Court also cited *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) for two propositions, that the reliance on "fake opinions" is not proper and that under Rule 11, lawyers must verify authorities before relying on them. *Id*. at *7. *Park*, in turn, involved the citation to a non-existent case that had been generated by ChatGPT, a situation that the attorney in *Park* acknowledged. 91 F.4th at 614–16. That is not the

---

[2] *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016 (10th Cir. Feb. 9, 2026).

case here because Mr. Kachouroff did not use any generative AI to research and download cases.

The Response Brief's citation to *Capital Solutions* is clearly distinguishable from the circumstances in *Amarsingh. Capital Solutions* is a legitimate case, cited with the correct reference to the proper volume and page numbers of the reporter and which stands for a legitimate principle of law that is consistent with Tenth Circuit law. *See supra* (discussing same). *Amarsingh* thus fails to support an award of sanctions here.

Furthermore, the Court's own Order demonstrates that the citation of *Capital Solutions* does not fall within the scope of Rule 11(b)(2). The Order specifically identified two issues with the citation: first, the miscitation of *Capital Solutions,* a Kansas federal district court case, as if it were a Tenth Circuit decision; second, the imprecise description of the case by arguing its broader assertion that under the Seventh Amendment, the jury's determination was "entitled to finality." But those mistakes clearly differ from citing a case for a proposition that is unsupported by existing law. The underlying legal proposition set forth in the Response Brief—that the Seventh Amendment protects the jury's role in determining punitive damages—is clearly a statement of valid and applicable law, as demonstrated both by the reasoning of *Capital Solutions* and the Tenth Circuit authority on which *Capital Solutions* itself expressly relied.

The affidavit of Christopher I. Kachouroff submitted herewith explains that the purpose of citing *Capital Solutions* was to invoke its Seventh Amendment reasoning and its discussion of Tenth Circuit authority. The Response Brief did not contain an improper or unsupported legal principle. This explanation by no means minimizes what the Court

rightly perceives concerning imprecise citations but they are not the type of error that supports sanctions under Rule 11. As a result, Rule 11(b)(2) is not implicated and it fails to support any sanction based on the Response Brief's citation to *Capital Solutions*.

### Rule 11 and the Advisory Committee Notes

Rule 11's text, the Advisory Committee Notes, and the cases distinguishing fabricated authority from merely imperfect citation do not support expanding Rule 11 into a strict-liability regime for every miscitation. If it were expanded in this manner, then any mistaken parenthetical, reporter designation, or pincite in a brief could be reframed as a Rule 11 violation even though the underlying legal position was warranted by existing law. The Rule's text does not include such citation errors, and the Advisory Committee Notes clearly discourage such an expansion of the Rule's plain language by expressly warning against using Rule 11 as a punishment for minor or inconsequential violations or as a generalized weapon against debatable legal advocacy.

This principle is illustrated by the Court's own criticism of the post-verdict motion filed by Plaintiff's counsel:

> Plaintiff's argument that these statements aggravated his damages by drawing attention to previous defamatory statements is *wholly conclusory*. *Plaintiff has provided no explanation or evidence* that these statements led to additional harassment, further reduced his employment prospects, or even caused him renewed emotional distress. *The Court declines to comb the record or construct arguments on Plaintiff's behalf*, especially given the high burden of proof he faces at this stage. *See Adams*, 223 F. App'x at 762 n.4 ("It is not the job of this court to search the record . . . for evidence."). Plaintiff has failed to prove beyond a reasonable doubt that this conduct aggravated his damages.
>
> Nor does Frankspeech's other litigation conduct demonstrate aggravation of damages, either alone or in combination with Mr. Lindell's statements. *Plaintiff has provided no evidence* that his damages were aggravated by Mr. Lindell's deposition conduct, the motions to stay discovery and continue trial, or Mr. Lindell's alleged improper use of technology in the courtroom.

**Page 7 of 10**

> He does briefly suggest that this conduct "prolonged" his damages. [Doc. 387 at ¶ 21]. But *this argument is insufficiently developed* . . . ."

Order of 3/25/26, Doc. 413 at 25 (emphasis added). The Court's order certainly describes conduct that would support a finding that Plaintiff's lawyers had violated Rule 11(b)(1), which requires every lawyer filing a memorandum of law to certify to the Court that there is some reasonable "evidentiary support" for every legal or factual contention asserted in that memorandum. Mr. Kachouroff is not suggesting that Plaintiff's counsel be sanctioned for the conduct described in the Court's order. Rather, the point is that the Court's willingness to overlook their plain violation of that subsection of Rule 11 evidences and supports the conclusion that Rule 11 does not impose strict liability for every technical violation but is instead intended to make frequent and generous dispensations of mercy when confronted with relatively minor transgressions.

### Sanction of FrankSpeech, LLC

Even if the Court were to conclude that Rule 11 applies to the circumstances here, Rule 11 itself sharply limits the sanctions that would be permissible. Rule 11(b)(2), the only provision of Rule 11 that could possibly apply, expressly states that the Court "*must not* impose a monetary sanction" on a represented party for such a violation. Fed. R. Civ. P. 11(c)(5)(A) (emphasis added). The applicable Advisory Committee Note further explains that "[m]onetary responsibility for such violations is more properly placed solely on the party's attorneys." Thus, a monetary sanction may not be imposed on FrankSpeech LLC as the represented party.

### Sanction of Attorney Demaster

Nor should the Court impose any sanction on Jennifer DeMaster based on the Response Brief's citation to *Capital Solutions.* Mr. Kachouroff's affidavit confirms that

**Page 8 of 10**

Mr. Kachouroff alone is responsible for the citation to *Capital Solutions.* Attorney DeMaster had no involvement—she did not see, make, approve, or participate in that citation. As to Ms. DeMaster, the sworn record establishes that she did not know of and was not responsible for the citation identified by the Court and thus there is no basis on which to sanction her. Given that, there is also no reason to refer Ms. DeMaster to the state bar.

### Amount of Sanction

And as to the amount of any sanction, Rule 11(c)(4) requires that any sanction be "limited to what suffices to deter repetition of the conduct." The Tenth Circuit likewise has held that punitive monetary sanctions must be calibrated to deterrence and supported by findings of reasonableness and the imposition of the minimum deterrence necessary. *White v. General Motors Corp., Inc.*, 908 F.2d 675, 683 (10th Cir. 1990). This Court's proposed sanction of $5,000 as well as the threat of a possible referral to the state bar is unnecessarily severe and punitive.

Mr. Kachouroff frankly acknowledges the errors regarding *Capital Solutions* as he explained in his affidavit. Mr. Kachouroff also recognizes that the Court had previously sanctioned him severely, but the circumstances at issue here are not, respectfully, the same type of AI generated error in a draft pleading that was the subject of that earlier sanction.

Furthermore, Rule 11(b)(2) focuses on the citation to or reliance on unsupported legal authority and not on a minor citation error and a defect in the way *Capital Solutions'* authority was described. As set forth more fully above, the legal principle for which Mr. Kachouroff cited *Capital Solutions* is good law. On that basis, the Court

**Page 9 of 10**

should discharge the Order to Show Cause because the challenged mistakes do not fall within the scope of Rule 11(b)(2).

WHEREFORE, Mr. Kachouroff respectfully requests that the Court discharge the March 25, 2026 Order to Show Cause against him, FrankSpeech, and Ms. DeMaster. In the alternative, if the Court concludes that any sanction is warranted, Mr. Kachouroff respectfully requests that the Court recognize that Rule 11(c)(5)(A) bars a monetary sanction against FrankSpeech LLC as a represented party for any asserted Rule 11(b)(2) violation, decline joint-and-several sanctions against it and Ms. DeMaster, take into consideration his affidavit (Ex. D), and limit any sanction to the least severe measure adequate to deter repetition.

Dated: April 8, 2026.

Respectfully Submitted,

**McSweeney, Cynkar & Kachouroff, PLLC**

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff
(VA Bar No. 44216)
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

**CERTIFICATION**

Pursuant to this Court's standing order of December 1, 2025, the undersigned certifies that generative artificial intelligence was not used to draft this filing other than Westlaw. My use of Westlaw was solely for the purpose of legal research and downloading cases.

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff

**Page 10 of 10**