IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-01129-NYW-SBP

ERIC COOMER,

Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH LLC, and
MY PILLOW, INC.,

Defendants.

---

## ORDER

---

This matter is before the Court on the Order to Show Cause issued in the Court's Order on Post-Trial Motions ("Second Order to Show Cause"). [Doc. 413 at 26–29]. Defendant Frankspeech LLC ("Frankspeech") and Defendants' counsel Christopher Kachouroff ("Mr. Kachouroff") have responded. [Doc. 416; Doc. 417]. For the reasons set forth herein, the Second Order to Show Cause is **MADE ABSOLUTE in part** and **DISCHARGED in part**.

## BACKGROUND

This is a defamation case brought by Plaintiff Eric Coomer ("Plaintiff" or "Dr. Coomer") over accusations that he used his position at Dominion Voting Systems to interfere with the results of the 2020 presidential election. *See, e.g.*, [Doc. 119 at 1–5; Doc. 197 at 3–7; Doc. 413 at 2–4]. The case went to trial, and the jury delivered a partial verdict for Plaintiff. [Doc. 375; Doc. 377; Doc. 379]. The verdict included a punitive damages award against Frankspeech. [Doc. 377 at 3].

## I.    The First Order to Show Cause and Sanctions Order

Before trial, Plaintiff filed a motion in limine.  [Doc. 279].  Defendants then filed a response brief that included "nearly thirty defective citations."  [Doc. 309 at 3]; *see* [Doc. 283].  As the Court summarized,

> These defects include but are not limited to misquotes of cited cases; misrepresentations of principles of law associated with cited cases, including discussions of legal principles that simply do not appear within such decisions; *misstatements regarding whether case law originated from a binding authority such as the United States Court of Appeals for the Tenth Circuit*; misattributions of case law to this District; and most egregiously, citation of cases that do not exist.

[Doc. 309 at 3 (emphasis added)].    After questioning from the Court at the Final Pretrial/Trial Preparation Conference ("Pretrial Conference"), Mr. Kachouroff eventually admitted that he had used artificial intelligence ("AI") in drafting the response brief.  [*Id.* at 4–5].  He also represented that he had delegated citation checking for the brief to his co-counsel, Jennifer DeMaster ("Ms. DeMaster").  [*Id.* at 4].  Based on Mr. Kachouroff's statements and the pervasive citation errors in the response brief, the Court ordered Mr. Kachouroff, Ms. DeMaster, and Defendants to show cause why they should not be sanctioned.  [*Id.* at 5–6].

Defendants responded that the filed response brief "was not the correct version.  It was a prior draft."  [Doc. 311 at 2].  They claimed the filed response—and accompanying citation errors—"was inadvertent, an erroneous filing that was not done intentionally, and was filed mistakenly through human error."  [*Id.*].  In a sworn declaration, Ms. DeMaster averred that she and Mr. Kachouroff had discussed the possibility of hallucinated citations (i.e., incorrect, AI-generated citations) in the draft.  [Doc. 311-5 at ¶ 6].  She asserted that she had reviewed the draft, corrected or removed various citations in a separate version,

and verified the remaining citations using a Westlaw report. [*Id.* at ¶¶ 4, 7–8]. Mr. Kachouroff similarly declared that he "routinely use[s]" AI when drafting, but that he and Ms. DeMaster "had not relied on AI legal research and had prepared a thoroughly cite-checked final document to be filed as our Opposition." [Doc. 311-6 at ¶¶ 6–7, 13 (emphasis omitted)]. Defendants submitted the "correct" version of their response brief, [Doc. 311-1], that Mr. Kachouroff claimed "appears to account for all of the issues pointed out by the Court," [Doc. 311-6 at ¶ 26]. Defendants also submitted other versions of the brief and email communications between Mr. Kachouroff and Ms. DeMaster.

The Court was not persuaded by Mr. Kachouroff and Ms. DeMaster's claim that they simply filed the wrong version of their response. *See* [Doc. 383]. First, neither the email communications nor anything else in the record corroborated the existence of the "correct" version of the brief. [*Id.* at 14]. Ms. DeMaster ran the Westlaw report on a different version. [*Id.* at 16]. The "correct" version of the brief also used a different file naming convention than the filed version of the brief and the versions exchanged in counsel's emails—all of which contained hallucinated citations. [*Id.* at 9–14]. And although Mr. Kachouroff claimed he reviewed the "correct" version, there was no record that Ms. DeMaster (or anyone else) ever sent him the document. [*Id.* at 16–17]. Second, the "correct" version of the brief still contained substantive errors. [*Id.* at 15]. Those errors included an incomplete caption, several preexisting citation errors, and—tellingly—two citation errors that the Court did not bring to Mr. Kachouroff's attention during the Pretrial Conference. [*Id.* at 15–16]; *see also* [*id.* at 3 (discussing the two omitted errors)]. Third, Mr. Kachouroff and Ms. DeMaster engaged in similar conduct before another federal court around the same time. [*Id.* at 17]. In that case, they submitted briefing containing similar

3

citation errors to a court in the Eastern District of Wisconsin. [*Id.* (citing *Pelishek v. City of Sheboygan*, No. 2:23-cv-01048-WED (E.D. Wis. Apr. 30, 2025), ECF Nos. 160, 162)]. They attempted to withdraw their briefing shortly after this Court issued its first Order to Show Cause, [*id.*], and the Eastern District of Wisconsin court ultimately sanctioned them, *see Pelishek v. City of Sheboygan*, No. 2:23-cv-01048-WED, 2025 WL 2675094 (E.D. Wis. Sept. 18, 2025). For those reasons, the Court could not conclude that counsel merely filed the wrong version of the response, or that the "correct" version of the response was prepared and ready when the filed version was submitted. [*Id.* at 18].

Based on that finding, the Court determined that Mr. Kachouroff and Ms. DeMaster had failed to meet the "reasonable level of competence and care" expected under Rule 11 of the Federal Rules of Civil Procedure. [*Id.* at 18–19 (quoting *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990))]. The Court concluded that a $3,000 sanction on Mr. Kachouroff and his law firm and a $3,000 sanction on Ms. DeMaster was the "least severe sanction adequate to deter and punish defense counsel in this instance." [*Id.* at 19]. The Court declined to extend the sanction to Defendants themselves. [*Id.* at 19–20].

## II.    The Second Order to Show Cause

After trial, and after the Court's first sanctions order, the Parties submitted their post-trial motions. [Doc. 386; Doc. 387]. Plaintiff moved to increase the punitive damages award against Frankspeech, pursuant to Colorado law. [Doc. 387]. In relevant part, Frankspeech's response brief ("Response") argued that such an award would violate the Reexamination Clause of the Seventh Amendment. *See* [Doc. 404 at 1–4]. The brief stated, "The 10th Circuit recognized in *Capital Solutions, LLC v. Konica Minolta Business Solutions USA, Inc.*, 695 F.Supp.2d 1149, 1154-56 (10th Cir. 2010), that the jury's

determination on this issue [i.e., the amount of punitive damages] is entitled to finality."
[*Id.* at 1].

In its Order on Post-Trial Motions, the Court observed that the *Capital Solutions* citation is defective for two reasons. [Doc. 413 at 26–27 & n.5]. First, *Capital Solutions* is a district court decision, even though Frankspeech erroneously referred to it as a Tenth Circuit case. [*Id.* at 26]; *see also Cap. Sols., LLC v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 695 F. Supp. 2d 1149, 1152 (D. Kan. 2010). Second, *Capital Solutions* does not support the proposition that a jury's determination of the amount of punitive damages is "entitled to finality" under the Reexamination Clause. [Doc. 413 at 26 n.5]. The Court explained that a reasonable review should have alerted defense counsel to this mistake. [*Id.* at 27]. And given that counsel had already been sanctioned for "this exact type of error," the Court ordered Mr. Kachouroff, Ms. DeMaster, and Frankspeech to show cause why they should not be sanctioned again under Rule 11. [*Id.* at 27–28]. The Court considers their responses below.

## LEGAL STANDARD

Rule 11(b) provides that

> "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

Fed. R. Civ. P. 11(b)(2). In other words, Rule 11 imposes an "affirmative duty" on an attorney to conduct a reasonable inquiry into the legal basis for a filing before submitting it. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). The

standard under Rule 11 is one of "reasonableness under the circumstances." *Burkhart v. Kinsley Bank*, 804 F.2d 588, 589 (10th Cir. 1986) (citing Fed. R. Civ. P. 11, advisory committee's notes on 1983 amendment).  The Tenth Circuit has described the inquiry as "whether a reasonable attorney admitted to practice before the district court would file such a document." *Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019) (quotation omitted).

It is well-settled that citation to non-existent cases implicates Rule 11.  *See, e.g.*, *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023).  So too does misrepresenting a case's holdings. *See, e.g.*, *Safe Choice, LLC v. City of Cleveland*, No. 1:24-cv-02033-PAB, 2025 WL 2958211, at *4 (N.D. Ohio Oct. 17, 2025) ("[A]s it always has, misrepresenting the holdings of case law violates Rule 11." (collecting cases)); *United States v. Hayes*, 763 F. Supp. 3d 1054, 1067 (E.D. Cal. 2025) ("[M]isrepresenting the holdings of a case is making a false statement to a court." (quotation omitted)); *Platt v. Volunteers of Am. Ohio & Ind.*, No. 1:25-cv-01866-SEB-KMB, 2026 WL 670057, at *1 (S.D. Ind. Mar. 10, 2026) (similar) (collecting cases).  "Misrepresenting the legal significance of a case" may also violate Rule 11.  *Pettit v. Allina Health Sys.*, No. 23-cv-02789-JWB-JFD, 2025 WL 339275, at *9 (D. Minn. Jan. 30, 2025), *report and recommendation adopted*, 2025 WL 904403 (D. Minn. Mar. 25, 2025).  Although these errors can occur without the use of AI, the nationwide "rash of cases" involving AI-generated hallucinations and misrepresentations have made the risks of careless AI use well known.  *See Willis v. U.S. Bank Nat'l Ass'n*, No. 3:25-cv-00516-BN, 2025 WL 1224273, at *2 (N.D. Tex. Apr. 28, 2025) (quotation omitted) (collecting authorities); *see also, e.g.*, *Benjamin v. Costco*

*Wholesale Corp.*, 779 F. Supp. 3d 341, 343 (E.D.N.Y. 2025) (describing an "epidemic" of cases involving AI-generated errors). And because Rule 11(b) demands a reasonable inquiry, "[a] litigant's using AI and then failing to verify the accuracy of the results it yields violates the litigant's [Rule] 11 obligations." *Willis*, 2025 WL 1224273, at *3.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White*, 908 F.2d at 683 (citation omitted). The central purpose of Rule 11 is deterrence. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990). "The appropriate sanction should be the least severe sanction adequate to deter and punish the [violating party]." *White*, 908 F.2d at 684 (citations omitted). A Rule 11 sanction also aims to "deter . . . comparable conduct by others similarly situated." Fed. R. Civ. P. 11(b)(4). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

## ANALYSIS

As an initial matter, the Court credits the representations in the record that Mr. Kachouroff was solely responsible for the preparation of the Response, and that neither Ms. DeMaster nor Frankspeech's corporate representatives were involved. *See* [Doc. 417-1; Doc. 417-2; Doc. 417-3 at ¶¶ 3, 13]. The Second Order to Show Cause is therefore

7

**DISCHARGED** as to Ms. DeMaster and Frankspeech.    The Court turns to Mr. Kachouroff's response and supporting declarations.  [Doc. 417; Doc. 417-3; Doc. 418].

I.      **Violation of Rule 11**

Mr. Kachouroff concedes that he made a "real error" in both his description of *Capital Solutions*'s holding and his reference to it as a Tenth Circuit decision.  [Doc. 417 at 1–2].  Although he does not know why the error occurred, he asserts that *Capital Solutions*'s discussion of Tenth Circuit precedent is on point.  [Doc. 417-3 at ¶¶ 8–9].  He claims that he cite-checked the brief and did not use AI other than Westlaw for legal research.  [*Id.* at ¶ 4]; *see also* [Doc. 417 at 6 ("Mr. Kachouroff did not use any generative AI to research and download cases.")].  Finally, he argues that sanctions are unwarranted because the error was minor and "the legal principle for which [he] cited *Capital Solutions* is good law."  [Doc. 417 at 9–10].

The Court has a significant amount of skepticism that the *Capital Solutions* misrepresentation resulted only from human error.  True, the Court could write off one erroneous reference to the Tenth Circuit as a typographical error.  But the Response makes the same obvious mistake twice in quick succession:  "The 10th Circuit recognized in *Capital Solutions, LLC v. Konica Minolta Business Solutions USA, Inc.*, 695 F. Supp. 2d 1149, 1154–56 (10th Cir. 2010) . . . ."  [Doc. 404 at 1 (emphasis added)].  *Contra* [Doc. 417 at 2 (Mr. Kachouroff admitting that "[t]he parenthetical reference to the Tenth Circuit was incorrect," without noting the in-text reference)].  And this type of misattribution error—deploying an otherwise correct citation but attributing it to the wrong court—is a form of hallucination that has already occurred in this case.  For instance, in the brief that previously led to sanctions, Mr. Kachouroff claimed that the "District of Colorado" had

8

addressed an issue, citing "*Ginter v. Northwestern Mut. Life Ins. Co.*, 576 F. Supp. 627, 630 (D. Colo. 1984)" in support.  [Doc. 283 at 4].  While the case name and reporter for *Ginter* are correct, it was not issued by a court in this District.  *See Ginter v. Nw. Mut. Life. Ins. Co.*, 576 F. Supp. 627, 630 (E.D. Ky. 1984); *see also* [Doc. 309 at 4; Doc. 383 at 11–12 (noting the *Ginter* misattribution error)].  Similarly, Mr. Kachouroff's prior brief asserted that "[t]he Tenth Circuit . . . specifically addressed" a certain evidentiary issue in "*United States v. Hassan*," with a citation to "*Hassan*, 742 F.3d 104, 133 (10th Cir. 2014)."  [Doc. 283 at 9].  But *Hassan* is a Fourth Circuit decision.  *See United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014); *see also* [Doc. 383 at 16].  Viewed against this backdrop, the nature of the errors in the Response suggests that this is not the kind of mistake a human attorney would make.

Furthermore, Mr. Kachouroff's statements to the Court in this case do not inspire confidence.  He currently attests, "I did not use any Generative Artificial Intelligence program to create Document 404 with the exception of Westlaw which I used solely for the purpose of legal research."  *See* [Doc. 417-3 at ¶ 4].  But Mr. Kachouroff has previously represented that he "routinely" uses AI tools to prepare his arguments.  [Doc. 311-6 at ¶ 6].  And strikingly, despite adamantly attesting in response to the First Order to Show Cause that "I do not rely on AI to do legal research or find cases," [Doc. 311-6 at ¶ 6], Mr. Kachouroff now admits that "**the circumstances at issue here are not, respectfully, the same type of AI generated error in a draft pleading that was the subject of that earlier sanction.**"  [Doc. 417 at 9 (emphasis added)].

The Court is also unimpressed by Mr. Kachouroff's attempts to minimize his conduct.  The *Capital Solutions* citation is located prominently in the Response; it is the

9

only citation in the first paragraph of the first page of the brief.  And as the Court previously explained, the citation error is obvious.  *See* [Doc. 413 at 26–27].  Any lawyer—especially one of Mr. Kachouroff's experience—would or should recognize that a case reported in the Federal Supplement is from a district court, not a circuit court.  [*Id.*].  This error would be apparent upon even a brief inspection of the first page of the Response.   The obviousness of the error alone indicates that Mr. Kachouroff failed to reasonably review the Response before filing it.  Regardless of whether or not generative AI was used, this is not the type of error a seasoned attorney would or should make.

In and of itself, falsely citing a district court case as binding authority is a "material" error.  [Doc. 383 at 16].  This Court is bound by published Tenth Circuit and Supreme Court opinions, not the decisions of other district courts.  *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).  By holding out *Capital Solutions* as a Tenth Circuit decision, Mr. Kachouroff misrepresented the "legal significance" of its holding.  *Pettit*, 2025 WL 339275, at *9.  Yet Mr. Kachouroff asks the Court to overlook the "citation error" because his "description of *Capital Solutions* did not involve the assertion of an unsupported legal proposition."  [Doc. 417 at 4].  The Court respectfully disagrees.

The Response misstates both *Capital Solutions*'s holding and the applicable Seventh Amendment law.  In relevant part, the Response asserts, "Among the issues historically committed to the jury is the amount of punitive damages—a factual question within the meaning of the Seventh Amendment's Reexamination Clause.  The 10th Circuit recognized in *Capital Solutions* . . . that the jury's determination on this issue is entitled to finality."  [Doc. 404 at 1].  The Court has already explained why this description of *Capital Solutions*'s holding is misleading:

10

> *Capital Solutions* dealt with a Kansas statute that "prescribes a procedure by which the jury first determines whether punitive damages should be allowed, and then the court determines the amount of such damages in a separate proceeding." [*Cap. Sols.*, 695 F. Supp. 2d at 1152 (citing Kan. Stat. Ann. § 60-3702(a) (2010))]. Before trial, the court held that the Seventh Amendment's "trial by jury" clause—not the Reexamination Clause—entitled a plaintiff "to have the entirety of its claim for punitive damages, including the determination of the amount, decided by the jury." *Id.* at 155–56. In other words, *Capital Solutions* dealt with whether a jury should decide the amount of punitive damages in the first instance, as opposed to ruling that an award of punitive damages is "entitled to finality" in the post-trial context. *Compare id.*, *with* [Doc. 404 at 1].

[Doc. 413 at 26 n.5]. Mr. Kachouroff suggests that he merely gave an "imprecise description of the case's procedural posture." [Doc. 417 at 4]. But *Capital Solutions*'s holding was inextricably intertwined with its procedural posture; whether a jury must decide the amount of punitive damages *in the first instance* was the substantive constitutional question before the court. And Mr. Kachouroff still fails to acknowledge that *Capital Solutions* turned on the Seventh Amendment's "trial by jury" clause, not the Reexamination Clause. *See* [Doc. 417; Doc. 417-3].

This distinction matters because Supreme Court precedent contravenes Mr. Kachouroff's assertion that "the amount of punitive damages" is a "factual question" on which the jury's verdict is protected by the Reexamination Clause. [Doc. 404 at 1]. As this Court pointed out, the Supreme Court has held that "the level of punitive damages is not really a 'fact' 'tried' by the jury," so judicial review of the amount of an award does not offend the Reexamination Clause. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001) (quotation omitted); *see also* [Doc. 413 at 22 n.4]. *Capital Solutions* addressed *Cooper Industries* and expressly disclaimed any reliance on the Reexamination Clause. 695 F. Supp. 2d at 1154–55. But despite relying on *Capital*

11

*Solutions* and other cases analyzed in that opinion,[1] the Response still cited *Capital Solutions* in support of the argument that the Reexamination Clause "entitle[s]" a jury's punitive damages award "to finality." [Doc. 404 at 1]. Even after the Court specifically noted *Cooper Industries* in its Order on Post-Trial Motions, [Doc. 413 at 22 n.4], Mr. Kachouroff maintains that *Capital Solutions* "support[s] the proposition I made" in the Response, [Doc. 417-3 at ¶ 11]. That is simply not true.

Finally, Mr. Kachouroff argues that because his errors only relate to one case, the Court would be demanding "citation perfection" by sanctioning him. [Doc. 417 at 3]. But Mr. Kachouroff is not facing sanctions because of a technical error or "inconsequential violation[]." [*Id.* (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment)]. He is also not being singled out by this Court.[2] This is the latest incident in what is now a pattern of Mr. Kachouroff submitting briefs with citations that "misrepresent[] what courts have said." *Pelishek,* 2025 WL 2675094, at *1. As previously discussed, [Doc. 383 at 18–19], it is axiomatic that "[a]ttorneys are not merely participants in a competitive market for legal services; they are officers of the court," *FTC v. Superior Ct. Trial Laws. Ass'n*, 493 U.S. 411, 453 (1990) (Blackmun, J., concurring in part and

---

[1] For instance, the Response's Reexamination Clause argument cites *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991), and *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438 (10th Cir. 1987). [Doc. 404 at 1–4]. *Capital Solutions* covers these authorities and discusses *Cooper Industries* immediately before turning to the *O'Gilvie* case that Mr. Kachouroff claims to have relied on. *See Cap. Sols.*, 695 F. Supp. at 1153–55; [Doc. 417-3 at ¶¶ 6, 8–10].

[2] Mr. Kachouroff has been sanctioned by a separate district court, in a different case, for submitting briefs containing defective and hallucinated citations. To be sure, in *Pelishek*, the briefing at issue was primarily prepared by Ms. DeMaster. 2025 WL 2675094, at *3–4. Mr. Kachouroff then undertook a "brief gloss" to "ensure that the case citations existed." *Id.* at *6. There, as here, his cursory review failed to correct the defective citations. *See id.* at *1.

12

dissenting in part). And as officers of the court, attorneys are "essential to the primary governmental function of administering justice." *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975). The judiciary undermines its own central purpose of administering justice for the public good—and the public's confidence in the institution—when it permits attorneys to breach their duties, including diligence and candor, owed to the court and the public without consequence. *Cf. Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (quotation omitted)).

As an officer of the court, Mr. Kachouroff submitted yet another Response containing a materially incorrect citation that should have been corrected through a reasonable review, regardless of whether it was initially AI-generated or not. The Response misrepresents the holding of that same case to support an argument that is squarely foreclosed by Supreme Court precedent. All of this occurred after Mr. Kachouroff had already been sanctioned for failing to properly verify his citations in this very case and others. The Court thus finds that Mr. Kachouroff failed to conduct an inquiry that was reasonable under the circumstances before filing the Response. *Burkhart*, 804 F.2d at 589; Fed. R. Civ. P. 11(b)(2). The Court respectfully concludes that Mr. Kachouroff has violated his obligations under Rule 11(b).

## II. Appropriate Sanction

The Court accounts for the scope of the error when determining the appropriate sanction. The Court has proposed a sanction of $5,000 and referral to the State Bar of Virginia—where Mr. Kachouroff is licensed—for disciplinary proceedings. [Doc. 413 at

28].  Mr. Kachouroff responds that this sanction is "unnecessarily severe and punitive."
[Doc. 417 at 9].  He also argues that his errors in the Response are not the same as the errors in the brief that led to his previous sanction.  [*Id.*].  The Court agrees that the issues with the *Capital Solutions* citation do not rise to the level of pervasiveness of the hallucinated citations in Mr. Kachouroff's prior brief.  But it would be a mistake to describe this latest error as less serious.  The *Capital Solutions* citation and description in the Response still reflect fundamental errors regarding substantive legal representations made to the Court that warrant a sanction under Rule 11.  Further, the pattern of Mr. Kachouroff's actions supports imposing a sanction for the conduct at issue here.  As the Court has emphasized, Mr. Kachouroff has already been sanctioned twice for this exact type of error.  He had ample notice of the importance of verifying the technical and substantive accuracy of his citations—particularly if and when AI has played a role in the research and drafting process.  But, as with the Court's first Order to Show Cause, Mr. Kachouroff's responses regarding his AI use and the accuracy of his citation are unsupported by the record and relevant legal authority.  The Court cannot conclude that excusing this conduct as less pervasive or even repeating the previous sanction of $3,000 is sufficient to deter this conduct in the future.  *See* [Doc. 383].

As in its previous sanctions order, the Court considers the sanctions imposed by other district courts for similar conduct to provide a framework of reasonableness.  *See* [Doc. 383 at 19 (collecting cases imposing sanctions between $3,000 and $6,000)].  In cases involving AI-generated citations, "courts have imposed monetary sanctions ranging from $1,500 to $15,000."  *Benjamin*, 779 F. Supp. 3d at 347–48; *see also Amarsingh v. Frontier Airlines*, No. 24-1391, 2026 WL 352016, at *7 (10th Cir. Feb. 9, 2026)

14

(sanctioning pro se litigant $1,000 for hallucinated citations pursuant to Federal Rule of Appellate Procedure 38, and citing various decisions from the "related context" of Rule 11). "Courts have recently begun to issue higher [sanctions] amounts." *Safe Choice, LLC v. City of Cleveland* (*Safe Choice II*), No. 1:24-cv-02033-PAB, 2025 WL 3029553, at *5 (N.D. Ohio Oct. 30, 2025) (collecting cases with sanctions up to $10,000 and imposing $7,500 sanction); *see also Hayes*, 763 F. Supp. 3d at 1071–72 (surveying various types of sanctions, including disciplinary referral, awarding attorney's fees to opposing party, and monetary sanctions up to $10,000). Recently, a court in the District of Oregon levied a sanction of $15,000 for filings with hallucinated citations, in addition to an award of attorney's fees and expenses. *See Couvrette v. Wisnovsy*, No. 21-cv-00157-CL, 2025 WL 4109655, at *11–12 (D. Or. Dec. 12, 2025). Given the "epidemic" of cases involving citation errors like those present in the Response, *Benjamin*, 779 F. Supp. 3d at 343, and Mr. Kachouroff's conduct in this case, this Court shares other courts' concern that relatively modest monetary sanctions are insufficient to "deter attorneys from haphazardly using AI tools to craft legal arguments," *Safe Choice II*, 2025 WL 3029553, at *6.

Having reviewed the entirety of the record, the Court finds that an additional, moderately increased monetary sanction of $5,000 is sufficient to deter Mr. Kachouroff and similarly situated individuals from engaging in this conduct. *See, e.g.*, *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211, at *2 (S.D. Ind. May 28, 2025) (sanctioning attorney $6,000 for submitting three briefs with AI-generated citations). The Court will not refer Mr. Kachouroff to the Virginia Bar for disciplinary proceedings. In doing so, the Court specifically relies on Mr. Kachouroff's representation that he has stepped back from

"active trial-level litigation other than matters necessary to conclude existing obligations which include the present show-cause proceedings and limited local-counsel responsibilities in one remaining case. I do not intend to return to trial work which I have done for the past 25 years,"[3] due to health issues.[4] [Doc. 418-1 at ¶ 6]. The Court observes that Mr. Kachouroff's cumulative sanction in this case of $8,000 remains well within the normal range for attorneys engaging in similar conduct.

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    The Second Order to Show Cause [Doc. 413] is **DISCHARGED** as to Jennifer DeMaster and Frankspeech LLC;

(2)    The Second Order to Show Cause [Doc. 413] is **MADE ABSOLUTE** as to Christopher Kachouroff;

(3)    Pursuant to Rule 11(c)(1), the Court hereby **SANCTIONS** Christopher Kachouroff and the law firm of McSweeney Cynkar & Kachouroff PLLC,

---

[3] The Court notes that Mr. Kachouroff has filed a Notice of Appeal on behalf of Defendants in this action. [Doc. 421].

[4] Counsel has filed a Motion for Protec[ti]ve Order to Restrict Public Access ("Motion to Restrict"), seeking restriction of a Second Affidavit submitted by Mr. Kachouroff detailing specific health issues. [Doc. 419]. Pursuant to D.C.COLO.LCivR 7.2(c)(4), a party seeking restriction of a document must explain why no alternative to restriction is practicable and specifically consider redaction. This Court agrees that Mr. Kachouroff's private health information is appropriately restricted from public access but respectfully disagrees that the public has no justiciable interest in other statements contained in the Second Affidavit, given Mr. Kachouroff's reliance on that information to support his Response to the Second Order to Show Cause. Accordingly, the Court **ORDERS** Mr. Kachouroff to file a publicly accessible version of his Second Affidavit, with only his private health information redacted. The Motion to Restrict is otherwise **GRANTED**, and the Clerk of Court is **DIRECTED** to maintain a Level 1 restriction on the unredacted version of Mr. Kachouroff's Second Affidavit, [Doc. 418-1]. Mr. Kachouroff claims no privacy interest in the Notice of Filing, [Doc. 418], so the Clerk of Court is **DIRECTED** to unrestrict that filing.

jointly and severally, in the amount of $5,000;

(4)    Such sanctions are **DUE and PAYABLE** to the Registry of the United States

District Court for the District of Colorado no later than **May 21, 2026;**

(5)    The Motion for Protec[ti]ve Order to Restrict Public Access [Doc. 419] is

**GRANTED in part** and **DENIED in part**;

(6)    The Notice of Filing [Doc. 418] is **UNRESTRICTED**;

(7)    The Clerk of the Court is **DIRECTED** to **MAINTAIN** Mr. Kachouroff's second

affidavit [Doc. 418-1] under Level 1 Restriction; and

(8)    No later than **May 14, 2026**, Mr. Kachouroff shall **SUBMIT** a redacted

version of his second affidavit [Doc. 418-1] for public viewing, redacting only

Paragraphs 3, 4, and the specific reference to his health condition in the

first sentence of Paragraph 6.  All other statements should remain in the

public version.

DATED:  May 7, 2026                                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

17